# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: AIR CRASH OVER THE SOUTHERN
INDIAN OCEAN ON MARCH 8, 2014

MDL Docket No:  2712

This Document Relates To:

Misc. No. 16-1184 (KBJ)

ALL CASES

## JOINT MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS ON THE GROUND OF *FORUM NON CONVENIENS*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iv

INDEX OF EXHIBITS................................................................................x

I.      INTRODUCTION ...........................................................................1

II.     BACKGROUND ..............................................................................4

        A.      The disappearance of MH370 and the ensuing investigation ..................................4

        B.      Litigation................................................................................7

                1.      Litigation in the United States ................................................7

                2.      Litigation in Malaysia ........................................................9

III.    ARGUMENT ...................................................................................10

        A.      Malaysia Is An Available and Adequate Forum....................................11

        B.      The Private and Public Interest Factors Weigh In Favor Of
                Dismissal .........................................................................14

                1.      The private interest factors favor dismissal to Malaysia ...........................14

                        a.      The location of key evidence favors dismissal .............................15

                        b.      The availability of compulsory process and the cost
                                of obtaining attendance of witnesses favors
                                dismissal ...............................................................20

                        c.      The inability to implead relevant third-party
                                defendants in the U.S. weighs in favor of dismissal.....................22

                        d.      The alleged U.S. citizenship of three decedents does
                                not make trial in the U.S. convenient...............................23

                2.      The public interest factors also weigh in favor of dismissal
                        to Malaysia............................................................................25

                        a.      Malaysia's interests in deciding this dispute far
                                outweigh the interest of a U.S. forum............................25

                        b.      Administrative burdens and complex choice-of-law
                                issues favor dismissal......................................................31

IV.    CONCLUSION.................................................................................................................33

# TABLE OF AUTHORITIES

## Cases

*Ahmed v. Boeing Co.*, 720 F.2d 224 (1st Cir. 1983) .................................................. 2(Appendix A)

*American Dredging Co. v. Miller*, 510 U.S. 443 (1994) .......................................................... 10

*Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398 (1964) ...................................................... 30

*Baumgart v. Fairchild Aircraft Corp*, 981 F.2d 824 (5th Cir. 1993)............. 2(Appendix A), 17, 31

*Baumgart v. Fairchild Aircraft Corp., Civ. A., No. SA-90-CA--818,*
      1991 WL 487242 (W.D. Tex. Sept. 30, 1991)........................................ 2(Appendix A), 31

*BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73 (D.D.C. 2003) ................................ 20

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)............................................................. 15

*Can v. Goodrich Pump & Engine Control Systems, Inc.,*
      711 F. Supp. 2d 241 (D. Conn. 2010) .......................................................... 2(Appendix A)

*Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989) .................................................................. 10

*Chang v. Baxter Healthcare Crop.,* 599 F.3d 728 (7th Cir. 2010) ............................................. 21

*Cheng v. Boeing Co.,* 708 F.2d 1406 (9th Cir. 1983) ......................................... 2(Appendix A), 24

*Chhuawchharia v. Boeing Co.,* 657 F. Supp. 1157 (S.D.N.Y. 1982)................. 2(Appendix A), 22

*Claisse v. Boeing Co.*, No. 09-C-3722,
      2010 WL 3861073 (N.D. Ill. Sept. 28, 2010) .............................................. 2(Appendix A)

*Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008) ........................................................ passim

*Croesus EMTR Master Fund L.P. v. Fed. Republic,*
      212 F. Supp. 2d 30 (D.C. Cir. 2002)................................................................. 19, 21, 28

*Da Rocha v. Bell Helicopter Textron, Inc.,*
      451 F. Supp. 2d 1318 (S.D. Fla. 2006) .................................................. 2(Appendix A), 18

*Dahl v. United Tech. Corp.*, 632 F.2d 1027 (3d Cir. 1980)....................................... 2(Appendix A)

*De Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir. 1993)............................................... 2(Appendix A)

*Esheva v. Siberian Airlines*, 499 F. Supp. 2d 493 (2007)............................. 2(Appendix A), 26, 27

*Faat v. Honeywell Int'l, Inc.*, No., 04-4333,
    2005 WL 2475701 (D.N.J. Oct. 5, 2005)......................................................2(Appendix A)

*Fortaner v. Boeing Co.*, 504 F. App'x 573 (9th Cir. 2013).........................2(Appendix A), 11, 18

*Fosen v. United Tech. Corp.*, 484 F. Supp. 490 (S.D.N.Y.) .....................................2(Appendix A)

*Fosen v. United Tech. Corp.*, 633 F.2d 203 (2d Cir. 1980) ....................................2(Appendix A)

*Fredriksson v. Sikorsky Aircraft Corp. Inc.,* CIV No. 3:08 CV 450 (WWE),
    2009 WL 2952225 (D. Conn. Sept. 2, 2009).........................................................17, 32, 33

*Galbert v. W. Caribbean Airways*, 715 F.3d 1290 (11th Cir. 2013).........................2(Appendix A)

*Gambra v. Int'l Lease Fin. Corp.*,
    377 F. Supp. 2d 810 (C.D. Cal. 2005) .............................................2(Appendix A), 22, 25

*Giro, Inc. v. Malaysian Airline Sys. Berhad*, No. 10 CIV. 5550 (JGK),
    2011 WL 2183171 (S.D.N.Y. June 3, 2011) ...................................................................12

*Grodinsky v. Fairchild Industries, Inc.*, 507 F. Supp. 1245 (D. Md. 1981) .............2(Appendix A)

*Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602 (10th Cir. 1998)...........................2(Appendix A)

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947)....................................................................passim

*Harp v. Airblue Ltd.,* Case No. SACV 10-01780 AG(RZx),
    2012 WL 3038599 (C.D. Cal. March 28, 2012) ....................................2(Appendix A), 24

*Helog Ag v. Kaman Aerospace Corp.*, 228 F. Supp. 2d 91 (D. Conn. 2002) ...........2(Appendix A)

*In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001,* No. MDL 1448 (RWS),
    2006 WL 1288298 (S.D.N.Y. May 9, 2006) .................................................................32

*In re Air Crash at Madrid, Spain, on Aug. 20, 2008*,
    893 F. Supp. 2d 1020 (C.D. Cal. 2011) ........................................................2(Appendix A)

*In re Air Crash Disaster Near Bombay, India on Jan. 1, 1978,*
    531 F. Supp. 1175 (W.D. Wash. 1982)...........................................................................32

*In re Air Crash Disaster Over Makassar Strait*, No. 09-CV-3805,
    2011 WL 91037 (N.D. Ill. Jan. 11, 2011) .....................................................2(Appendix A)

*In re Air Crash Near Athens, Greece on August 14, 2005*,
    479 F. Supp. 2d 792 (N.D. Ill. 2007) .....................................................................passim

*In re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006,*
    574 F. Supp. 2d 272 (E.D.N.Y. 2009) .....................................2(Appendix A), 26, 27, 29

*In re Air Crash Over Mid-Atl. on June 1, 2009,*
    760 F. Supp. 2d 832 (N.D. Cal. 2010) ................................................................... passim

*In re Air Crash over Taiwan Straits on May 25, 2002,*
    331 F. Supp. 2d 1176 (C.D. Cal 2004) ................................................................... passim

*In re Air Crash Over the Mid-Atlantic,*
    792 F. Supp. 2d 1090 (N.D. Cal. 2011) ....................................................... 2(Appendix A)

*In re Bridgestone/Firestone, Inc., Prods. Liab. Action,*
    420 F.3d 702 (7th Cir. 2005) ................................................................................. 18, 31

*In re Disaster at Riyadh Airport, Saudi Arabia, on Aug. 19, 1980,*
    540 F. Supp. 1141 (D.D.C. 1982) ............................................................... 2(Appendix A)

*In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.,*
    408 F. Supp. 2d 569 (N.D. Ill. 2006) ............................................................................ 27

*In re Factor VIII or IX Concentrate Blood Prods. Litig.,*
    484 F.3d 951 (7th Cir. 2007) ........................................................................................ 23

*In re Factor VIII or IX Concentrate Blood Prods. Litig.,*
    531 F. Supp. 2d 957 (N.D. Ill. 2008) ............................................................................ 28

*In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171 (D.C. Cir. 1987) ..................... 10

*In re W. Caribbean Airways, No. 06-22748,*
    2012 WL 1884684 (S.D. Fla. May 16, 2012) .............................................. 2(Appendix A)

*In re West Caribbean Airways, S.A.,* 619 F. Supp. 2d 1299 (S.D. Fla. 2007) .......... 2(Appendix A)

*Irwin v. World Wildlife Fund, Inc.,* 448 F. Supp. 2d 29 (D.D.C. 2006) ............................... passim

*Jayaraman v. Salomon, Inc.,* No. 87 Civ. 2781 (MJL),
    1991 WL 61071 (S.D.N.Y. Apr. 5, 1991) ...................................................................... 12

*Jennings v. Boeing Co.,* 660 F. Supp. 796 (E.D. Pa. 1987) ....................................... 2(Appendix A)

*Jennings v. Boeing Co.,* 677 F. Supp. 803 (E.D. Pa. 1987) ....................................... 2(Appendix A)

*Jennings v. Boeing Co.,* 838 F.2d 1206 (3d Cir. 1988) ............................................. 2(Appendix A)

*Kamel v. Hill-Rom Co., Inc.,* 108 F.3d 799 (7th Cir. 1997) ............................................... 13, 28

*Kern v. Jeppesen Sanderson, Inc.,* 867 F. Supp. 525 (S.D. Tex. 1994) .................... 2(Appendix A)

*King v. Cessna Aircraft Co.,* No. 03-20482,
    2008 WL 276015 (S.D. Fla. Jan. 31, 2008) ................................................. 2(Appendix A)

*King v. Cessna Aircraft Co.*, 562 F.3d 1374 (11th Cir. 2009) ................................... 2(Appendix A)

*Kryvicky v. Scandinavian Airlines System*, 807 F.2d 514 (6th Cir. 1986) ............... 2(Appendix A)

*Lauritzen v. Larsen,* 345 U.S. 571 (1953) .................................................................................. 32

*Lleras v. Excelaire Services*, 354 F. App'x 585,
    2009 WL 4282112 (2d Cir. Dec. 2, 2009) .............................................. 2(Appendix A), 26

*Loya v. Starwood Hotels & Resorts, Worldwide, Inc.,* 583 F.3d 656 (9th Cir. 2009) ........... 13, 24

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) ................................................. passim

*Lumenta v. Bell Helicopter Textron, Inc.,* No. 01-14-00207-CV,
    2015 WL 5076299 (Tex. App. Aug. 27, 2015) ............................................ 2(Appendix A)

*Macedo v. Boeing Co.,* 693 F.2d 683 (7th Cir. 1982) .................................................................. 29

*Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424 (11th Cir. 1996) ....................... 2(Appendix A)

*Martin v. Vogler,* No. 93 C 3870, 1993 WL 462853 (N.D. Ill. Nov. 9, 1993) ........................... 31

*Martino v. Viacao Aerea Riograndese,* No. 90-1883,
    1991 WL 13886 (E.D. La. Jan. 25, 1991) ..................................................... 2(Appendix A)

*MBI Grp., Inc., v. Credit Foncier Du Cameron,*
    558 F. Supp. 2d 21 (D.C. Cir. 2008) .................................................................... 12, 19, 25

*Melgares v. Sikorsky Aircraft Corp.*, 613 F. Supp. 2d 231 (D. Conn. 2009) ............ 2(Appendix A)

*Miskow v. Boeing Co.*, 664 F.2d 205 (9th Cir. 1981) ................................................ 2(Appendix A)

*Nai-Chao v. Boeing Co.*, 555 F. Supp. 9 (N.D. Cal. 1982) ....................................... 2(Appendix A)

*Navarrete De Pedrero v. Schweizer Aircraft Corp.*,
    635 F. Supp. 2d 251 (W.D.N.Y. 2009) ........................................................ 2(Appendix A)

*Nolan v. Boeing Co.*, 762 F. Supp. 680 (E.D. La. 1989) .................................... 2(Appendix A), 31

*Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir. 1990) ......................................... 2(Appendix A), 31

*Onita-Olojo v. Sellers*, No. 12-62064,
    2014 WL 1319304 (S.D. Fla. Mar. 31, 2014) .............................................. 2(Appendix A)

*Pain v. United Tech. Corp.*, 637 F.2d 775 (D.C. Cir. 1980) ................................................. passim

*Patricia v. Boeing Co.*, No. 09-C-3728,
    2010 WL 3861077 (N.D. Ill. Sept. 28, 2010) .............................................. 2(Appendix A)

*Pettitt v. Boeing Co.*, No. 09-C-3709,
    2010 WL 3861066 (N.D. Ill. Sept. 28 2010) .................................................. 2(Appendix A)

*Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052 (11th Cir. 2009) .............................. 2(Appendix A)

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)................................................................. passim

*Quaak v. KPMG Bedrijfsrevisoren,* 361 F.3d 11 (1st Cir. 2004) ................................................. 21

*Reers v. Deutsche Bahn AG,* 320 F. Supp. 2d 140 (S.D.N.Y. 2004) ............................................ 27

*Rubenstein v. Piper Aircraft Corp.*, 587 F. Supp. 460 (S.D. Fla. 1984).................... 2(Appendix A)

*Sarei v. Rio Tinto, PLC*, 487 F.3d 1193 (9th Cir. 2007)........................................................... 30

*Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279 (11th Cir. 2001) ............ 2(Appendix A), 23, 32

*Simcox v. McDermott Intl., Inc.,* 152 F.R.D. 689 (S.D. Tex. 1994) ............................................ 12

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) ..................... 1, 23

*Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*,
    589 F.3d 417 (7th Cir. 2009) ........................................................................................ 19

*Tazoe v. Aereas*, No. 07-21941, 2009 WL 3232908 (S.D. Fla. Aug. 24, 2009)....... 2(Appendix A)

*Tazoe v. Airbus S.A.S.*, 631 F.3d 1321 (11th Cir. 2011)............................................ 2(Appendix A)

*TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296 (D.C. Cir. 2005)............................ 12

*U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749 (7th Cir. 2008)........................................... 19

*Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988) ................................................................. 15

*Van Schijndel v. Boeing Co.*, 263 Fed. Appx. 555 (9th Cir. 2008)........................... 2(Appendix A)

*Van Schijndel v. Boeing Co.,*
    434 F. Supp. 2d 766 (C.D. Cal. 2006) ............................................ 2(Appendix A), 23, 28

*Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ. 2084 (KMW)(AJP),
    2003 WL 230741 (S.D.N.Y. Feb. 3, 2003)..................................................................... 24

*Vorbiev v. McDonnell Douglas Helicopters, Inc.*, No. 08-05539,
    2009 WL 1765675 (N.D. Cal. June 18, 2009)............................................. 2(Appendix A)

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.,* 493 U.S. 400 (1990) ..................................... 30

*Zermeno v. McDonnell Douglas Corp.*,
    246 F. Supp. 2d 646 (S.D. Tex. 2003)......................................................... 2(Appendix A)

*Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996) ............................................................ 32

*Zipfel v. Halliburton Co.*, 832 F.2d 1477 (9th Cir. 1987)........................................2(Appendix A)

*Zipfel v. Halliburton Co.*, 861 F.2d 565 (9th Cir. 1988)..........................................2(Appendix A)

## INDEX OF EXHIBITS

| Exhibit No. | Description |
|:---:|---|
| 1 | Malaysian Department of Civil Aviation Press Release (January 1, 2015) |
| 2 | Malaysian ICAO Annex 13 Safety Investigation Team for MH370, Factual Information Safety Investigation For MH370 (March 8, 2015) |
| 3 | Declaration of Mohd Fuad Bin Mohd Sharuji |
| 4 | Australian Transportation Safety Board, MH370 – Definition of Underwater Search Areas (December 3, 2015) |
| 5 | Declaration of Hillary Barr |
| 6 | Malaysian Investigation Team, Interim Statement Safety Investigation for MH370 (March 8, 2015) |
| 7 | Laws of Malaysia Act 765, Malaysian Airline System Berhad (Administration) Act 2015(January 5, 2015) |
| 8 | Declaration of Kamarudin Bin Kamilin |
| 9 | Declaration of Brendan Baxter |
| 10 | Declaration of Tan Sri Dato Seri Abdull Hamid Embong |
| 11 | Declaration of Saranjit Singh |
| 12 | Declaration of Mack H. Shultz |
| 13 | Philip Wood's IBM Employment History |
| 14 | Responses to MAS's and MAB's First Set of Interrogatories regarding Threshold Issues for Bing Meng |

## MEMORANDUM

Malaysian Airline System Berhad (Administrator Appointed) ("MAS"), Malaysia Airlines Berhad ("MAB"), Allianz Global Corporate & Specialty SE ("AGCS SE"), and The Boeing Company ("Boeing") (collectively "Defendants") submit this Memorandum in support of dismissal on the ground of *forum non conveniens*.[1]

## I.    INTRODUCTION

The disappearance of Malaysia Airlines Flight MH370 somewhere in the southern Indian Ocean tragically claimed the lives of 227 passengers and 12 crew and was Malaysia's worst aviation accident. The Malaysian government has overseen the most expansive aviation investigation in history to determine what happened on that flight, which left Malaysia's capital headed to Beijing with numerous Malaysian and Chinese passengers aboard Malaysia's national carrier. Some wreckage has washed ashore, but most of the wreckage—including the cockpit voice recorder and the flight data recorder—has not been found. The evidence that can be evaluated includes the known flight path and flight history; the history of the aircraft, the airline, the crew, the passengers, and others; and simulations and analysis regarding potential scenarios for why the aircraft flew and responded the way that it did. Virtually all of that evidence is in Malaysia. No cause has been determined, and the investigation remains active. Despite no conclusions, lawsuits have been filed worldwide, including in Malaysia where cases are being litigated on behalf of nearly all of the same decedents as in the U.S. cases.

The U.S. cases should be dismissed in favor of Malaysia on a straightforward application of the Supreme Court's decision in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), which

---

[1] By separate motion, Defendants MAS and MAB seek dismissal of all cases on the basis of immunity to suit under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et. seq. ("FSIA"). MAS also seeks dismissal of all cases on the basis of lack of jurisdiction under the Montreal Convention to which MAB and AGCS SE are filing joinders. By filing this *forum non conveniens* motion, MAS and MAB do not waive their defense of foreign sovereign immunity. The Court has discretion to decide *forum non conveniens* ahead of jurisdictional issues. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

involved a commercial aircraft that crashed in Scotland carrying Scottish citizens. Analyzing what a trial in the U.S. would look like compared to a trial in Scotland, the Court emphasized that critical evidence was in Great Britain and would be more accessible there; important third-party defendants could be impleaded there but not in the U.S.; it was burdensome for a U.S. court to apply foreign law; and Scotland plainly had a greater interest than the U.S. *Id.* at 258-61. Even though the aircraft was manufactured in the U.S., the "American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Id.* at 260-61.

Since *Piper*, numerous courts have followed and expanded upon that reasoning and dismissed lawsuits attempting to litigate foreign aviation accidents in U.S. courts. A full listing of federal court decisions since *Piper* dismissing foreign aviation accident litigation on *forum non conveniens* grounds appears in Appendix A. The most analogous recent accident is the loss of Air France Flight 447 in the Atlantic Ocean in 2009. Judge Breyer dismissed U.S. litigation in favor of France because—as in *Piper* and numerous other cases—the private and public interests plainly favored litigation in France. *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832, 841-47 (N.D. Cal. 2010). With particular emphasis on the public interest, the court explained that "[w]hen a national carrier crashes on the way home with a plurality of citizens of that nation onboard, it is difficult to conclude that the carrier's country is not the most interested nation in litigation arising from the crash." *Id.* at 845. The court went on to note that "were the tables reversed," it would be "hard to imagine" that the U.S. would not be the most interested nation. *Id.* at 847. Applying the same well-settled standards for *forum non conveniens* here, Malaysia is the proper forum for litigation involving Malaysia's national carrier, on a flight departing from Malaysia's capital with dozens of Malaysian passengers, crashing somewhere in the southern Indian Ocean and being investigated by Malaysian authorities.

*First*, Malaysia is an available and adequate forum, and there is no credible argument otherwise. Because the forum is available and can award damages, representatives of nearly all of the decedents involved here have filed actions in the High Court of Malaya in Kuala Lumpur, and those cases are being actively litigated. The Malaysian legal system derives from British rule, and it has been held adequate in other cases.

*Second*, the private interests weigh even more heavily in favor of dismissal than in *Piper*. Evaluating what trial in the U.S. would look like, nearly all of the potential liability and damages evidence would have to be obtained from outside of the U.S., predominantly in Malaysia, and most of that would require translation or interpretation. Critical liability evidence from the Malaysian investigation would not be available for a U.S. trial. Even in the claims against Boeing, most of the complaints allege a *res ipsa loquitur* theory, attempting to rule out other potential causes, which is not a theory that relies upon design or manufacturing evidence that would be in the U.S. Further, just as in *Piper*, important third-party defendants could not be impleaded in the U.S., including likely MAS and MAB as well as Malaysian government entities that are presently defendants in Malaysia. Nothing approaching a full or fair trial could be held in the U.S. And if litigation went forward in the U.S. and Malaysia, there would be a risk of inconsistent verdicts. Only a few plaintiffs have any connections to the U.S., and those connections are minimal and do not alter the private interest balance.

*Finally*, the country with the greatest public interest is obviously Malaysia, not the U.S. Malaysia is leading the civil investigation, and the Royal Malaysian Police are conducting an independent investigation. Malaysia's government has expressed its strong interest in resolving claims, and the Malaysian courts are already handling litigation filed on behalf of almost all of the same decedents. In fact, the Malaysian court has denied plaintiffs' motion to stay those proceedings pending a decision by this court on this FNC motion. The involvement of Boeing

and U.S. agencies in the investigation, by contrast, has been limited. The public interest factors

tip heavily in favor of litigation in Malaysia.

Following *Piper* and the cases applying *Piper* over the past 35 years, dismissal in favor of

Malaysia is the proper response of a U.S. court to litigation concerning this Malaysian tragedy.

## II.    BACKGROUND

### A.    The disappearance of MH370 and the ensuing investigation

On March 8, 2014, Flight MH370 took off from Kuala Lumpur at 12:42 a.m. en route to

Beijing. At 1:19 a.m., the pilots made their last radio communication. Shortly thereafter, at 1:21

a.m., air traffic controllers lost radar contact with the aircraft while it was over the South China

Sea during its transition from Malaysia to Vietnam air traffic control.[2]

All 227 passengers and 12 crew on board are presumed dead. **Ex. 1**, DCA Press Release

at ¶ 23. The 12 crewmembers were Malaysian citizens and residents employed and trained by

MAS in Malaysia. **Ex. 2**, Factual Investigation Report at ¶ 1.5**;** *see also* **Ex. 3**, Declaration of

Mohd Fuad Bin Mohd Sharuji ("Sharuji Dec.") at ¶ 15. MAS was licensed, approved, and

regulated by the Malaysian Department of Civil Aviation to operate the Accident aircraft. *See*

**Ex. 2,** Factual Investigation Report at ¶ 1.6.3. The majority of passengers were residents and

citizens of Malaysia or China. *Id.* at ¶ 1.1. The remaining passengers were from over 10 different

countries, including only three alleged U.S. citizens, all three of whom had been residing outside

the U.S. for extended periods of time.[3]

---

[2] *See* **Ex. 1**, Malaysian Department of Civil Aviation ("DCA") Press Release at ¶ 23; *see also* **Ex. 2**, Malaysian ICAO Annex 13 Safety Investigation Team for MH370, Factual Information Safety Investigation For MH370 at ¶ 1.1 (2015) ("Factual Investigation Report").

[3] The three passenger-decedents with alleged U.S. citizenship are Philip Wood, Leo Meng, and Nicole Meng. *See* Case No. 1:16-cv-01063, *Huang* First Amended Complaint at ¶ 8; Case No. 1:16-cv-01048, *Zhang* Second Amended Complaint at ¶ 10; Case No. 1:16-cv-00439, *Smith* Complaint at ¶ 8; and Case No. 1:16-cv-00053, *Wood* Complaint at ¶ 25.

Malaysia's Minister of Transport established the Malaysian ICAO Annex 13 Safety Investigation Team for MH370 (the "Malaysian Investigation Team") to coordinate the various aspects of the investigation. *See* **Ex. 1,** DCA Press Release at ¶ 28. The Malaysian Investigation Team is headed by a Malaysian Investigator in Charge and also includes 18 additional Malaysian investigators. Malaysia also established a joint investigation team to manage the ensuing physical search for the wreckage, comprised of specialists from Malaysia, as well as the U.K., U.S., China, Japan, Korea, and Australia. *See* **Ex. 4**, Australian Transportation Safety Board ("ATSB"), MH370-Definition of Underwater Search Areas, at p. 1 (June 26, 2014) ("ATSB Report"). The immediate search for the missing aircraft took place in the South China Sea, the aircraft's location when radar contact was lost. The search area was later extended to the Straits of Malacca, to the west of Malaysia, based on military radar showing that an aircraft like MH370 had made an air turn back from the South China Sea and headed west back across the Malaysian Peninsula. Later in March 2014 analysis of satellite data suggested that after crossing the Malaysian Peninsula and then flying northwest over the Strait of Malacca, the aircraft flew south for approximately six hours and ended its flight in the southern Indian Ocean. **Ex. 5,** Declaration of Hillary Barr ("Barr Dec.") at ¶ 4.

When investigators narrowed the search area to a defined portion of the Southern Indian Ocean off the coast of Australia, the Malaysian investigators asked the ATSB to lead the physical search effort. *See* **Ex. 5**, Barr Dec. at ¶ 8; ATSB Report at p. 1. Malaysia and Australia later established the Joint Agency Coordination Centre—working closely together—to further coordinate the international search effort. Over the past two years, investigators have analyzed, among other things, Air Traffic Control recordings and the aircraft's maintenance records; conducted simulations reconstructing Flight MH370's operation; interviewed more than 120 persons from MAS, the next-of-kin of crew, and the Department of Civil Aviation; and collected

and reviewed evidence from the Royal Malaysian Police, including closed-circuit television recordings of the flight crew, the flight crew's financial records, and statements from the flight crew's relatives, health care providers, co-workers and friends. *See* **Ex. 6**, Malaysian Investigation Team, Interim Statement Safety Investigation for MH370 at ¶ 6 (March 8, 2015) ("Interim Report"); **Ex. 2**, Factual Investigation Report at ¶ 1.5; **Ex. 5**, Barr Dec. at ¶¶ 12, 13. The Malaysian Department of Civil Aviation declared the crash an "accident" on January 29, 2015, in accordance with Annexes 12 and 13 to the Convention on International Civil Aviation, explaining that all available data "supports the conclusion that MH370 ended its flight in the southern Indian Ocean" and thus "all [passengers] are presumed to have lost their lives." **Ex. 1**, DCA Press Release at ¶¶ 20-21, 23. Despite Malaysian authorities leading the most expansive aviation crash investigation in world history, the bulk of the aircraft wreckage remains missing, including the flight data recorder and the cockpit voice recorder. The Malaysian investigations remain ongoing. **Ex. 5**, Barr Dec. at ¶¶ 5, 7.

The accident aircraft was a Boeing model 777-200ER that was delivered to Malaysia Airlines in May 2002. As is usual in an accident investigation governed by Annex 13 involving Boeing aircraft, the U.S. is participating in the investigation as the state of manufacture and design of the accident airplane. It is represented by an official from the U.S. National Transportation Safety Board who is one of the seven Accredited Representatives. As is also usual in an Annex 13 accident investigation involving Boeing aircraft, Boeing is a technical adviser to the Accredited Representative from the NTSB. The Malaysian Annex 13 team controls the accident investigation and maintains the complete investigation file. Boeing's investigation role has been limited to providing technical advice, under the direction of the NTSB, to the Malaysian authorities. Boeing has not been involved with—and has no copies of documents collected or created by the investigation authorities relating to—many aspects of the

6

investigation. As far as Boeing is aware, the same is true for the NTSB, and no entity from the U.S. has access to the complete MH370 investigation file. *Id.* at ¶¶ 6, 9-10.

MAS was and currently is under administration pursuant to Laws of Malaysia Act 765, Malaysian Airline System Berhad (Administration) Act 2015 ("Act 765"). *See* **Ex. 7.** The Malaysian government enacted Malaysia Act 765 in order to:

> expeditiously administer and manage [MAS] its wholly owned subsidiary companies and its partially owned subsidiary companies providing goods or carrying out services or both that are essential to the operations of the national carrier without disruption to their operations.

*Id.* Act 765 also provided for the Malaysian government's plans to incorporate a new entity, Malaysia Airlines Berhad, as a separate and distinct entity to replace MAS after MAS's air transportation operations ceased, in order to ensure the continued existence of a national carrier to facilitate Malaysia's economic development. MAB was incorporated on November 7, 2014, under the Malaysian Companies Act of 1965. *Id.*; *see also* **Ex. 8**, Declaration of Kamarudin Bin Kamilin ("Kamilin Dec.") at ¶ 5.

### B.    Litigation

#### 1.    Litigation in the United States

As the Court is aware, representatives acting on behalf of decedents filed suit in five different jurisdictions (D.D.C., S.D.N.Y., N.D. Ill., C.D. Cal., and Cook County, Ill.). The cases also differed in that some sued only MAS, some sued only Boeing (though on differing theories), and some sued both as well as other defendants. The cases were filed by six different law firms. A brief summary is as follows:

- Two cases suing only MAS and MAB (*Wood* and *Gaspard*) and one case suing MAS, MAB, and AGCS SE (*Smith*) were filed here in the District of Columbia. *Wood* and *Gaspard* are "Podhurst cases." *Smith* is a "Motley Rice case."

- One case suing MAS alone (*Ries*) was filed in the S.D.N.Y. That case, No. 16-cv-1061, was a "Kreindler case." It has been settled and will be dismissed with

prejudice upon completion of release and settlement formalities. Another case filed in the S.D.N.Y. (*Kanan*) is a "Spagnoletti case." The third case in the S.D.N.Y. (*Huang*) was filed against MAS, MAB, AGCS SE, and Mr. Haagen, but not Boeing. *Huang* is a Motley Rice case.

- One case suing only MAS (*Ganguli*) was filed in the Northern District of Illinois. That is a "Clifford case."

- One case suing MAS, MAB, AGCS SE, and attempting an amendment to add Boeing (*Zhang*) was filed in the Central District of California. That is a Motley Rice case.

- The remaining 32 cases were originally filed in the Circuit Court of Cook County, Illinois solely against defendant Boeing and were removed to the Northern District of Illinois. Two of those cases (*Wood* and *Gaspard*) involve the same decedents as the Podhurst cases filed here in the District of Columbia (*Wood* and *Gaspard*). The *Wood* and *Gaspard* cases against Boeing allege that all causes of the accident other than an aircraft defect have been ruled out. There are 28 other Podhurst cases solely against Boeing alleging the same. The *Weeks* case filed solely against Boeing alleges various purportedly known aircraft defects that caused the crash of MH370, despite the fact that the aircraft remains missing and no investigative report has identified any of those purported causes. That is the "Wisner case." There is also one case (*Kanan*) that is a Spagnoletti case.

In sum, more than 100 plaintiffs sue on behalf of 82 passenger decedents (not counting the settled Kreindler *Ries* case) against five defendants. Plaintiffs seek damages for more than 100 beneficiaries.

As noted above, the Motley Rice, Spagnoletti and some of the Podhurst plaintiffs have sued Malaysia Airlines Berhad (MAB), the new national airline of Malaysia, as the successor in interest to MAS. MAB was created by an Act of the Malaysian Parliament as a separate entity under the Malaysian Airline System Berhad (Administration) Act of 2015 (Act 765), which came into force on February 20, 2015, well after the disappearance of MH370. All information relevant to MAB's status as a separate entity—to the extent an Act of the Malaysian Parliament can be judicially challenged—and whether it is a successor in interest to MAS including potential liability for Flight MH370 is in Malaysia.

Motley Rice's plaintiffs have also sued Defendant Allianz Global Corporate & Specialty SE (AGCS SE). AGCS SE denies that it is the insurer of MAS, or that it can be made an involuntary legal representative of MAS.  *See* **Ex. 9**, Declaration of Brendan Baxter ("Baxter Dec.") at ¶¶ 20-24.  It is also a Societas Europaea ("SE") organized and existing under the laws of the European Union with its registered and principal place of business in Munich, Germany and any evidence of its status, or not, as the insurer of MAS is in Germany or the United Kingdom.  *Id.* at ¶¶ 5, 7, 20-30.  To the extent that plaintiffs seek to make AGCS SE the involuntary legal representative of MAS, any evidence relevant to its defense would be found in Malaysia where MAS is located.

## 2.    Litigation in Malaysia

Malaysia became formally independent of Great Britain on August 31, 1957. Malaysia's legal system was established under British rule and is based on the English common law legal system. Malaysia follows English law as it existed on April 7, 1956, and English law will be applied in the absence of any modification by Malaysian law. In addition, developments in English law after April 7, 1956 are persuasive authority unless they do not accord with Malaysian public policy. In particular, the Civil Law Act 1956 (Act 67) (Revised 1972) authorizes the application of English law as it existed on April 7, 1956 in the whole of Malaysia in respect of commercial matters, including carriage by air, land, and sea to the extent it is not inconsistent with changes in Malaysian law. **Ex. 10**, Declaration of Tan Sri Dato Seri Abdull Hamid Embong ("Emong Dec.") at ¶ 23.[4]

---

[4] Defendants' Malaysian law expert is Tan Sri Dato Seri Abdull Hamid Embong. He is a former Malaysian advocate and solicitor who served as a judge on the Federal Court of Malaysia—Malaysia's highest court. He has also served as a senior Federal Counsel, State Legal Advisor, and a retired Judge of numerous Malaysian courts, including the High Court of Malaya, the Criminal Court in Kuala Lumpur, the Court of Appeal Malaysia, and served as the Managing Judge for the States of Perak and Selangor and as a member of the Special Court established to hear actions against Malaysian politicians.

Malaysian law provides types of remedies similar to those available in the U.S., including a well-settled statutory regime to compensate passengers who are killed or injured in an accident while on board an aircraft. *Id.* at ¶¶ 37-44. Malaysian procedural rules provide for the collection of evidence (both documentary and testimonial) from parties and Malaysian third parties, as well as for the presentation of that evidence in court for examination by the judges and opposing counsel. *Id.* at ¶¶ 64-69. And Malaysian courts provide two levels of appeals to litigants. *Id.* at ¶ 84.

At present, there are 27 cases pending in the High Court of Malaya at Kuala Lumpur (Civil Division) relating to the loss of MH370. *See* **Ex. 11**, Declaration of Saranjit Singh ("Singh Dec.") at ¶ 7. These cases have been transferred to a single judge for coordinated proceedings. *Id.* The plaintiffs in those cases include representatives of 77 of the 82 decedents represented in the actions consolidated before this Court, and other decedents as well. *Id.* and Ex. A thereto. The defendants include MAS, MAB, ACGS SE, and a number of Malaysian governmental parties. *Id.* at ¶ 9. Those cases demonstrate that the Plaintiffs here have access to, and have even retained, Malaysian counsel, in connection with their pending actions in Malaysia. **Ex. 10**, Embong Dec. at ¶¶ 33-34. Litigation of those cases in Malaysia is active and ongoing. **Ex. 11**, Singh Dec. at ¶¶ 10-13. The Malaysian court recently rejected plaintiffs' request to stay those proceedings, explaining that those cases will proceed regardless of this Court's eventual ruling and discovery is proceeding. *See id.*

## III.    ARGUMENT

An MDL transferee court applies the procedural law of its own Circuit. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1178 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989). *Forum non conveniens* is a question of procedural law. *See American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994). A party moving

to dismiss based on *forum non conveniens* bears the burden of showing that (1) there is an adequate alternative forum, and (2) the balance of private and public interest factors favors dismissal. *See Piper Aircraft Co.*, 454 U.S. at 255 n.22. A domestic plaintiff's forum choice is entitled to considerable deference; a foreign plaintiff's forum choice is entitled to less deference. *Id.* at 255-56; *see also Irwin v. World Wildlife Fund, Inc.,* 448 F. Supp. 2d 29, 33 (D.D.C. 2006).

Applying the settled standards for *forum non conveniens*, Malaysia is clearly an available and adequate forum—notably, most of the decedents represented here have representatives in Malaysia litigating there—and as in other cases involving foreign aviation accidents, the private and public interests weigh heavily in favor of dismissal to Malaysia. Federal courts have consistently dismissed lawsuits arising from foreign aviation accidents like this one. Appendix A to this brief lists and briefly summarizes those decisions. In particular, the strongest case for *forum non conveniens* dismissal is in cases, like this one, where the carrier is traveling to or from its home country and that country is also leading the investigation, and especially where a national carrier of the alternative forum is involved. Three recent cases of particular note are *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832 (N.D. Cal. 2010), involving the Air France crash in the Atlantic, which involved a national carrier; *Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008), involving the crash of a Cypriot airliner in Greece; and *Fortaner v. Boeing Co.*, 504 F. App'x 573 (9th Cir. 2013) (unpublished), involving the crash of a Spanish airliner in Spain. Those cases were all dismissed on *forum non conveniens* grounds, and the same straightforward application of *Piper* warrants dismissal here.

### A. Malaysia Is An Available and Adequate Forum

The threshold inquiry is whether an alternative foreign forum is "available" and "adequate." *Piper Aircraft Co.*, 454 U.S. at 254-55 & n.22; *Irwin*, 448 F. Supp. 2d at 33-34. Courts have previously held that the courts of Malaysia are both available and adequate. *See*

*Giro, Inc. v. Malaysian Airline Sys. Berhad*, No. 10 CIV. 5550 (JGK), 2011 WL 2183171, at *7 (S.D.N.Y. June 3, 2011) (finding Malaysia to be available and adequate under the Supreme Court's *FNC* analysis); *Simcox v. McDermott Intl., Inc.,* 152 F.R.D. 689, 700 (S.D. Tex. 1994) (same); *Jayaraman v. Salomon, Inc.,* No. 87 Civ. 2781 (MJL), 1991 WL 61071, at *4 (S.D.N.Y. Apr. 5, 1991) (same). There is no reason to reach a different conclusion here.

Representatives for 77 of the 82 decedents represented in the actions consolidated before this Court have filed lawsuits in the High Court of Malaya against MAS and MAB, as well as Malaysian governmental entities. *See* **Ex. 11**, Singh Dec. at ¶ 6 and Exhibit A. Those actions demonstrate that Malaysian courts are available. Moreover, it is well-settled that a defendant's agreement to consent to jurisdiction in the foreign forum is dispositive in establishing the foreign forum's availability. *See Piper Aircraft Co.,* 454 U.S. at 254 n.22; *Pain v. United Tech. Corp.*, 637 F.2d 775, 785 (D.C. Cir. 1980); *MBI Grp., Inc., v. Credit Foncier Du Cameron,* 558 F. Supp. 2d 21, 31 (D.C. Cir. 2008) ("the Court will condition dismissal upon defendants' submitting to jurisdiction in Cameroon and on the Cameroonian courts' acceptance of the case"). Defendants here agree to consent to jurisdiction in Malaysia as a condition to dismissal. Even absent consent to jurisdiction, Malaysian law authorizes the courts (specifically, the High Courts of Malaya) to exercise jurisdiction over the Defendants. *See* **Ex. 10**, Embong Dec. at ¶¶ 46-56.[5]

Malaysia is also an adequate forum. As explained in *Piper*, a forum is only inadequate if the remedies afforded the plaintiff's claims are "unsatisfactory," and the example *Piper* gave was a jurisdiction that "does not permit litigation of the subject matter of the dispute." *Piper Aircraft Co.,* 454 U.S. at 254-55 & n.22; *see, e.g., TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d

---

[5] Defendants each also agree to toll any statute of limitations for 120 days after dismissal by this Court that might apply to any actions refiled by Plaintiffs in the Malaysian civil courts; to make available in those Malaysian refiled proceedings any evidence and witnesses in their control that the Malaysian court deems relevant; and to pay or cause to be paid any judgment entered against them subject to any appeal rights. See **Ex. 12**, Declaration of Mack H. Shultz, Jr. at ¶ **2**.

296, 303-04 (D.C. Cir. 2005) (holding that Ukraine inadequate to confirm an arbitration award because its courts could not attach defendant's property in the U.S.). Thus, courts have held that a "foreign forum must only provide the plaintiff with 'some' remedy in order for the alternative forum to be adequate." *Loya v. Starwood Hotels & Resorts, Worldwide, Inc.,* 583 F.3d 656, 666 (9th Cir. 2009); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) ("The district court was not required to ask whether Plaintiffs could bring this lawsuit in New Zealand, but rather, whether New Zealand offers a remedy for their losses."); *Kamel v. Hill-Rom Co., Inc.,* 108 F.3d 799, 803 (7th Cir. 1997) ("A court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress.") (internal quotation omitted).

Malaysia provides far more than the minimal requirement of "some remedy" to the Plaintiffs, *see* **Ex. 10**, Embong Dec. at ¶¶ 36-44, and the fact that representatives of almost all of the decedents filed actions in Malaysia and are proceeding with those cases is strong evidence of the adequacy of those courts. That the law or the likely recovery in Malaysia may be less favorable does not render the Malaysian courts inadequate. In *Piper*, the Supreme Court recognized that plaintiffs had no resort to strict liability and would likely recover less in Scotland, but the Court held that those differences were immaterial. *Piper Aircraft Co.*, 454 U.S. at 247, 255 ("Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly.").

Given that representatives of almost all of the same decedents are already litigating in Malaysia, that Defendants consent to jurisdiction there, and that the forum is plainly adequate under the standards of the case law, Malaysia presents an available and adequate forum.

### B.    The Private and Public Interest Factors Weigh In Favor Of Dismissal

The second phase of the *forum non convenience* inquiry requires the district court to determine whether the balance of private and public interest factors favors dismissal. *Piper Aircraft Co.*, 454 U.S. at 255 n.22. Both factors heavily favor Malaysia. Nearly all of the evidence is in Malaysia or otherwise outside the U.S. It is not readily available to a U.S. court, can only be obtained at great time and expense, and much of it will not be available. Further, trial with all relevant defendants is not available in the U.S. And Malaysia plainly has the superior public interest.

### 1.    The private interest factors favor dismissal to Malaysia

To assess the balance of private interests, the Supreme Court directs courts to consider "all [] practical problems that make trial of a case easy, expeditious and inexpensive," including: (1) the relevant ease of access to sources of proof; (2) the availability of witnesses and the ability to compel witnesses to appear; and (3) access to the subject premises, if viewing the premises would be appropriate in the action. *See Piper Aircraft Co.*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)). Where, as here, the vast majority of liability evidence is located in Malaysia, and the vast majority of damages evidence is located in Malaysia and China (and precious little in the U.S.), the private interest factors heavily weigh in favor of requiring Plaintiffs to litigate their claims in Malaysia. Were the Court to defer to Plaintiffs' choice of forum, the practical problems of transporting key witnesses and evidence from Malaysia and China to the U.S., coupled with the Court's inability to compel the appearance of foreign non-party witnesses, would result in unfair, costly, and lengthy litigation out of all proportion to the American interests in this matter as defined by the Supreme Court. *Piper Aircraft Co.*, 454 U.S. at 260-61. Indeed, forcing the defendants to try these matters in U.S. courts—where they could not obtain vital testimony and other evidence critical to their defense

against Plaintiffs' claims—may even violate Due Process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 484 (1985) (noting that "inconvenience may at some point become so substantial as to achieve constitutional magnitude.")

### a.    The location of key evidence favors dismissal

In this case, the great majority of the evidence relating to liability and damages is located outside of the United States, primarily in Malaysia and China. In dismissing foreign aviation accident cases, federal courts have consistently emphasized the importance of trying cases in the forum that provides the greatest access to the most important sources of proof. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988) (the "district court must … determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action"); *Piper Aircraft Co.*, 454 U.S. at 257-58 (noting "few[] evidentiary problems would be posed if the trial were held in Scotland" and that a "large proportion of the relevant evidence is located in Great Britain"); *Lueck*, 236 F.3d at 1146 (evaluation of access to evidence should focus on "materiality and importance" and overall "accessibility and convenience to the forum").

Plaintiffs have put liability at issue in their claims against MAS and Boeing. Regarding the cause of the crash and/or the apportionment of liability amongst the defendants, the bulk of the available evidence—including everyone with personal knowledge—is in Malaysia. Everything surrounding the investigation is there, which is a significant private interest favoring Malaysia. *See*, *e.g.*, *In re Air Crash Over Mid-Atl.*, 760 F. Supp. 2d at 843 (noting that "the official accident investigation and a criminal investigation are taking place in France, and all the physical evidence that has been recovered is located there"). Significant evidence in Malaysia includes, but is not limited to:

**The Malaysian civil investigation**

o  The investigators as witnesses;

o  The records of the investigation (**Ex. 3,** Sharuji Dec. at ¶ 22 - 23**; Ex. 5,** Barr Dec. at ¶¶ 12, 13), including:

   ▪  The Air Traffic Control radio and radar recordings;

   ▪  Aircraft maintenance records,

   ▪  Airworthiness certification and related documents;

   ▪  Transcripts and notes of interviews of more than 120 persons from the DCA, MAS, next-of-kin of crew, the other interested parties; and

   ▪  Data and interviews from investigators' visits to relevant air traffic control offices and aviation authorities, including in Indonesia, Vietnam, Thailand, and Singapore. *See* **Ex. 6,** Interim Report at ¶ 6;

**The Malaysian criminal investigation**

o  The Royal Malaysian Police conducting the criminal investigation and their records (**Ex. 5**, Barr Dec. at ¶ 13);

**Witnesses to the investigations**

o  MAS employees who provided information to the Malaysian civil and/or criminal investigation (*Id.* at ¶ 12);

o  Air traffic controllers who had contact with Flight MH370 (**Ex. 3,** Sharuji Dec. at ¶ 20; **Ex. 8,** Kamilin Dec. at ¶ 18);

**Airline procedures and aircraft maintenance**

o  Records related to the licensing and certifications of MAS, the aircraft, and the crew;

o  MAS personnel with knowledge of the MAS flight operations program and procedures and flight-specific documents (**Ex. 3,** Sharuji Dec. at ¶ 18; **Ex. 8,** Kamilin Dec. at ¶ 16);

o  MAS manuals, handbooks, and operating procedures for the operation of 9M-MRO (**Ex. 3,** Sharuji Dec. at ¶ 17; **Ex. 8,** Kamilin Dec. at ¶ 15);

o  MAS emergency response manuals, policies, and procedures (**Ex. 3,** Sharuji Dec. at ¶ 25);

o  MAS personnel responsible for the safe maintenance and operation of the aircraft (**Ex. 3,** Sharuji Dec. at ¶¶ 12-13; **Ex. 8,** Kamilin Dec. at ¶¶ 10-12);

16

- o   Records related to the maintenance of 9M-MRO, including log books and documentation of repairs (**Ex. 3,** Sharuji Dec. at ¶ 14);

**Evidence regarding the crew**

- o   Evidence regarding the competency of the pilots and crew as well as the training they received (**Ex. 3,** Sharuji Dec. at ¶¶ 15-16, 19**; Ex. 8,** Kamilin Dec. at ¶¶ 13-14, 17);

- o   Individuals with knowledge regarding the flight crew's psychosocial state in the period leading up to the flight, including family, friends, health care providers, co-workers, regulators, bankers, and all related documents (**Ex. 5,** Barr Dec. at ¶¶ 12-14);

- o   The flight crew's medical and financial records (*Id.* at ¶ 13);

**Relevant third parties**

- o   Cargo operators and loaders, freight forwarders, and suppliers and consignees (*Id.* at ¶ 12);

- o   Records regarding flight reservations and ticketing which contain passenger records for MH370 (**Ex. 3,** Sharuji Dec. at ¶ 24; **Ex. 8,** Kamilin Dec. at ¶ 21);

**Corporate witnesses**

- •   MAS and MAB management, including current and most of the former Directors, as well as other executive and management level employees (**Ex. 3,** Sharuji Dec. at ¶ 21; **Ex. 8,** Kamilin Dec. at ¶ 20);

- •   Witnesses and evidence related to whether MAB is the successor in interest to MAS; and

- •   Witnesses and evidence related to whether AGCS SE is the insurer of MAS or MAB.

In aviation accident cases in particular, the location of this evidence in Malaysia weighs heavily in favor of dismissal. *See Clerides,* 534 F.3d at 629 (affirming *In re Air Crash Near Athens, Greece on August 14, 2005*, 479 F. Supp. 2d 792, 800 (N.D. Ill. 2007)) (evidence relating to flight crew, airline, and regulatory oversight); *Baumgart v. Fairchild Aircraft Corp*, 981 F.2d 824, 836 (5th Cir. 1993) (maintenance, operational, hiring and training records of airline); *Fredriksson v. Sikorsky Aircraft Corp. Inc.,* CIV No. 3:08 CV 450 (WWE), 2009 WL 2952225, at *6 (D. Conn. Sept. 2, 2009) (aircraft maintenance records and operator's former staff); *Da*

17

*Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1323-24 (S.D. Fla. 2006) (aircraft logbooks, pilot training records, and air traffic control documents and witnesses).

The potentially relevant evidence located in the United States is largely limited to Boeing's documents and employees related to the original design and manufacture of the aircraft. The existence of a manufacturer's documents and witnesses in the United States is not a significant factor weighing against *forum non conveniens* dismissal, particularly where, as here, the manufacturer has agreed to produce any documentary or testimonial evidence deemed relevant by the foreign court after refiling. *E.g.*, *Piper Aircraft Co.*, 454 U.S. at 257; *Fortaner*, 504 F. App'x at 581; *Clerides*, 534 F.3d at 629. Courts have repeatedly recognized—as reflected in *Piper* itself—that the significance of the manufacturer's evidence in the U.S. to a design claim does not tip the balance when compared with the evidence in the foreign country where the airline is, where the accident occurs, and where the investigation is held. And, Plaintiffs' *res ipsa* claim means that most of the evidence relating to Boeing's potential liability is the evidence located in Malaysia that allegedly excludes other possible causes.

On the damages side of the case, Plaintiffs' threshold discovery responses confirm—as expected given that the decedents were foreign nationals and/or residents—that their damages evidence is located overwhelmingly outside of the U.S. That evidence includes the documents and witnesses necessary to evaluate the claimed economic loss (like the testimony of employers and accountants, and documents such as tax returns, bank records, pay stubs, employment records, and medical records regarding life expectancy), as well as the claimed non-economic losses (like the testimony of family, friends, and others with knowledge of the relationships between decedents and beneficiaries). Courts have consistently held that ease of access to sources of damages proof in a foreign plaintiff's or decedent's home forum weighs heavily in favor of *FNC* dismissal. *See In re Bridgestone/Firestone, Inc., Prods. Liab. Action*, 420 F.3d

18

702, 705 (7th Cir. 2005) (where "[plaintiff's] medical, employment, vehicle, and tax records are in Mexico, as is evidence of the family's pain and suffering," this factor favors the Mexican forum); *Lueck*, 236 F.3d at 1146 (granting *forum non conveniens* dismissal where evidence located abroad was "crucial to the damages portion of this suit").

This case is no different. Here, with few exceptions, the witnesses and documentary evidence needed to prove the damages that Plaintiffs are seeking on behalf of themselves and their decedents' estates—*e.g.*, employment records, financial statements, medical records, mental health records, insurance proceeds—are almost exclusively located outside the U.S. It is likely that the evidence of hundreds of witnesses and documents must be obtained from Malaysia or China, presented in Mandarin or Malay, and translated into English for this Court, with accompanying delay, cost, and potential for mistakes. If there were a trial concerning damages, it would require compelling (where possible) all of those witnesses and documents from those countries to travel to the U.S., supplying interpreters for the witnesses and translators for the documents, and conducting a trial based largely on translated or interpreted evidence. That is a significant and unreasonable burden, particularly for 82 decedents and over 100 beneficiaries. *See U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008); *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 425 (7th Cir. 2009) (noting that "[t]ranslating all of the [foreign] discovery documents into English for a U.S. court would" be "costly"). The need for translation would add substantial cost to these proceedings, in addition to consuming large amount of time and effort that might be unnecessary in Malaysia. *See MBI Grp. Inc.,* 558 F. Supp. 2d at 33; *Irwin*, 448 F. Supp. 2d at 35 (necessity of translating documents and testimony from French to English created "administrative difficulties of trying the case in the District of Columbia" that "weigh in favor of dismissal"); *Croesus EMTR Master Fund L.P. v. Fed. Republic*, 212 F. Supp. 2d 30, 39 (D.C. Cir. 2002) (necessity of translating "an abundance

19

of materials from Portugese into English" weighed against proceeding in the U.S.). The number of wrongful death beneficiaries and the voluminous damages evidence located in the foreign forums, standing alone, weighs heavily in favor of litigation in Malaysia and not the U.S. *See In re Air Crash over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1196 (C.D. Cal 2004) (voluminous damages evidence in foreign forum, by itself, made the overall ease of access to evidence greater abroad).

Bringing the evidence to the U.S. poses numerous practical problems, shown even in the most basic preliminary discovery. MAS and MAB, for example, asked for information about Plaintiffs' residency and citizenship and that of their decedents, the identity and residency of beneficiaries who claim damages, the location of damages evidence, and the existence of claims made in Malaysia. Plaintiffs' served responses were largely delinquent, incomplete, and inconsistent, and they commonly cited the need for additional time to gather the evidence and information located overseas. That was in response to very basic questions. Those difficulties will only increase if the actions remain here as more detailed interrogatories and document requests are propounded seeking information from and about the large number of beneficiaries and other relevant witnesses in Malaysia and China.

### b.    The availability of compulsory process and the cost of obtaining attendance of witnesses favors dismissal

The Supreme Court and this Circuit have recognized the importance of choosing a forum where unwilling witnesses can be compelled to appear and testify. *Gulf Oil Corp.,* 330 U.S. at 511; *Pain*, 637 F.2d at 788; *see also Clerides,* 534 F.3d at 629-30. Dismissal here is proper because, on balance, it would be far less costly and difficult to obtain the attendance of willing and unwilling witnesses in Malaysia than in the U.S., where critical damages and liability evidence is beyond this Court's compulsory process. *See Irwin*, 448 F. Supp. 2d at 35 ("The availability of process for unwilling witnesses is also a primary concern to the Court"); *BPA*

*Int'l, Inc. v. Kingdom of Sweden,* 281 F. Supp. 2d 73, 86 (D.D.C. 2003) ("Because [plaintiff's] claims arose out of actions occurring in Sweden, access to sources of proof would be much easier if the case were heard in Sweden rather than Washington, D.C."); *Croesus EMTR Master Fund L.P.,* 212 F. Supp. 2d at 39 ("Moreover, to the extent that the parties require testimony from former members of the Brazilian government, these witnesses, too, are likely to reside in Brazil, outside the reach of compulsory process").

As discussed above, the largest portion of key liability witnesses are located in Malaysia, and the largest portion of damages witnesses are in Malaysia and China. Compared to proceedings in Malaysia, the cost to transport Malaysian and Chinese witnesses to proceedings in the U.S. would be formidable. The majority of witnesses in Malaysia and China will surely require translators in order to present live testimony. Moreover, those witnesses will have to make the lengthy trip from Malaysia and China to the United States to give testimony, whereas no similar burden is involved in conducting the litigation in Malaysia.

It is also significant that this Court cannot compel production of nearly all of the critical non-party evidence (*e.g.,* evidence in the possession of Malaysian authorities) or damages evidence (*e.g.,* foreign employers, doctors, friends, medical records). Malaysia is not a party to the Hague Evidence Convention or any other similar treaty and therefore the production of evidence from Malaysia would require letters rogatory. *See* **Ex. 10**, Embong Dec. at ¶ 79. For these cases, many such requests would be needed to obtain all the relevant evidence located in Malaysia, and Malaysian enforcement of numerous letters rogatory would be expensive, burdensome, and inefficient at best. *Id.*; *Chang v. Baxter Healthcare Crop.,* 599 F.3d 728, 735 (7th Cir. 2010) ("sending a letter rogatory to the foreign court seems not to be a very satisfactory means of obtaining evidence from Taiwan") (citation and punctuation omitted); *see also Quaak v. KPMG Bedrijfsrevisoren,* 361 F.3d 11, 21 & n.4 (1st Cir. 2004) (obtaining evidence

through letters rogatory is "burdensome, costly, and time-consuming," and less certain than under the Hague Convention). Even if all letters rogatory were enforced, the superiority of live testimony and the inconvenience of obtaining evidence through such a process favor dismissal. *Gulf Oil Corp.,* 330 U.S. at 511; *Clerides,* 534 F.3d at 629-30; *Chhuawchharia v. Boeing Co.,* 657 F. Supp. 1157, 1161 (S.D.N.Y. 1982).

If these cases were re-filed in Malaysia, however, the Malaysian courts have procedures that would allow them to compel the timely and efficient production of this non-party evidence. *See* **Ex. 10**, Embong Dec. at ¶¶ 75-76. By contrast, the relevant witnesses and evidence in the U.S. are entirely or almost entirely within Defendants' control. Defendants agree as a condition of dismissal to produce any evidence and employees that a Malaysian court deems relevant. Moreover, the evidence of Defendants, as parties in any refiled proceeding, would be subject to the same compulsory process of the Malaysian court. *Id.*

Accordingly, Malaysian courts are best able to secure witnesses' testimony. Witnesses and documents within the Malaysian investigators' control, as well as other third-party evidence relating to liability and damages, would be subject to the compulsory process of the Malaysian court but likely would be beyond the power of this Court to reach. "[B]ecause th[is] district court cannot compel production of much of the [foreign] evidence … the private interest factors weigh in favor of dismissal." *Lueck*, 236 F.3d at 1147; *see also Clerides*, 534 F.3d at 629; *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 819 (C.D. Cal. 2005).

### c.    The inability to implead relevant third-party defendants in the U.S. weighs in favor of dismissal

The fairest, most efficient trial in this matter would be a single proceeding where all potential defendants can be joined with access to the available evidence. That type of proceeding here is extremely unlikely given the jurisdictional objections presented by all of the defendants other than Boeing. Further, in the actions currently being litigated in Malaysia, plaintiffs have

sued Malaysian governmental entities. *See* **Ex. 11**, Singh Dec. at ¶ 9. Those potential defendants can also not be joined in U.S. litigation. Thus, it is likely that the only defendant available in the U.S. is Boeing, and the only avenue for Boeing to pursue contribution or indemnification would be by a separate action in another jurisdiction. Further, if cases were to proceed in two different countries, there would be significant risk of inconsistent verdicts.

That is essentially the same scenario as in *Piper*, and the Supreme Court noted two reasons why it was unacceptable. First, there is the unfairness to the American defendant at not being able to join co-defendants. *See Piper Aircraft Co.*, 454 U.S. at 259 ("Joinder of the pilot's estate, Air Navigation, and McDonald is crucial to the presentation of petitioners' defense."). Second, it is burdensome to require multiple proceedings to determine liability. *Id.* ("It would be far more convenient, however, to resolve all claims in one trial."). The inability to join important third-party defendants is, thus, a common factor in cases dismissed on *forum non conveniens*. *See*, *e.g.*, *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007) (noting district court's reliance on the inability to join foreign third-party defendants as a private interest factor favoring dismissal); *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1284 n.4 (11th Cir. 2001) (noting the ineffectiveness of the "empty chair[]" defense because the trier of fact "would have available only one, rather than several, defendants to bear the brunt of its verdict and damage award"); *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 780 (C.D. Cal. 2006) ("the absence of [the operator] ... creates the risk of significant prejudice to" defendants).

### d.    The alleged U.S. citizenship of three decedents does not make trial in the U.S. convenient.

Courts give less deference to the forum choice of foreign plaintiffs suing in the U.S. *Sinochem Int'l Co.*, 549 U.S. at 430; *Piper Aircraft Co.*, 454 U.S. at 255-56; *In re Air Crash Over Mid-Atl.*, 760 F. Supp. 2d at 839; *Irwin,* 448 F. Supp. 2d at 33. The vast majority of the

Plaintiffs here represent foreign decedents. The remaining Plaintiffs/decedents with connections to the U.S. do not alter the conclusion that the private interest factors favor Malaysia.

There are only three decedents being represented who are of alleged U.S. citizenship-- Philip Wood (Case Nos. 1:16-cv-00053 and 1:16-cv-01149), Nicole Meng (Case Nos. 1:16-cv-00439, 1:16-cv-01048, and 1:16-cv-01063), and Leo Meng (Case Nos. 1:16-cv-00439, 1:16-cv-01048, and 1:16-cv-01063). All three decedents were residing continuously outside of the U.S. During the three years prior, Wood had been living and working in China and had recently taken a position in Malaysia. *See* **Ex. 13**, Philip Wood's IBM Employment History. Decedents Nicole Meng and Leo Meng are 3 and 1 year-old children who were U.S. citizens by birth and were living in China with their Chinese citizen parents. *See* **Ex. 14**, Responses to MAS's and MAB's First Set of Interrogatories regarding Threshold Issues for Bing Meng**,** at Answers Nos. 2 – 3. Expatriate U.S. citizens living abroad receive a diminished degree of deference to their choice of a U.S. forum. *See Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ. 2084 (KMW)(AJP), 2003 WL 230741, at *12 (S.D.N.Y. Feb. 3, 2003) (noting that the choice of forum of an expatriate U.S. citizen living abroad receives a diminished degree of deference); *see also Pain*, 637 F.2d at 797.

Regardless, the presence of plaintiffs with U.S. citizenship does not preclude dismissal "[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft Co.,* 454 U.S. at 256; *Cheng v. Boeing Co.,* 708 F.2d 1406, 1411 (9th Cir. 1983); *Pain,* 637 F.2d at 795-99. Indeed, federal courts—as occurred in the Air France case—have often dismissed claims brought by U.S. citizens for injuries sustained abroad *on forum non conveniens* grounds. *See In re Air Crash Over Mid-Atlantic*, 760 F. Supp. 2d at 838 (noting American citizenship of certain decedents); *see also Loya*, 583 F.3d at 656; *Cheng,* 708 F.2d at 1406; *Harp v. Airblue Ltd.,* Case No. SACV 10-01780 AG(RZx), 2012 WL 3038599, at **1078-79 (C.D. Cal. March 28, 2012) (American citizen's claim dismissed to Pakistan). Here,

nothing about the Plaintiffs' or decedents' connections to the U.S. will make trial in the U.S. more convenient than a trial in Malaysia, and therefore, those connections do not alter the private interest balance.

> **2.      The public interest factors also weigh in favor of dismissal to Malaysia**

The public interest factors include "having localized controversies decided at home," minimizing "[a]dministrative difficulties" such as court congestion and imposing jury duty on citizens in a "community which has no relation to the litigation," and unnecessarily burdening courts with "problems in conflict of laws." *Gulf Oil Corp.,* 330 U.S. at 508-09. Similarly, the D.C. Circuit has held that courts may (1) "validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it"; (2) "legitimately encourage trial of controversies in the localities in which they arise"; and (3) "validly consider its familiarity with governing law when deciding whether or not to retain jurisdiction over a case." *Pain,* 637 F.2d at 791-92 (footnotes omitted).

> **a.      Malaysia's interests in deciding this dispute far outweigh the interest of a U.S. forum**

The interests of Malaysia in resolving these claims weighs heavily in favor of dismissal. *See Pain,* 637 F.2d at 782 (citing *Gulf Oil Corp.*, 330 U.S. at 508-09); *Lueck*, 236 F.3d at 1147; *Gambra,* 377 F. Supp. 2d at 825. Courts "may legitimately encourage trial of controversies within the localities in which they arise." *Pain,* 637, F.2d at 791; *see also MBI Grp., Inc.,* 558 F. Supp. 2d at 34-35 (concluding that Cameroon has a much stronger interest in claims of government corruption occurring in Cameroon than the U.S. does); *Irwin,* 448 F. Supp. 2d at 36 (concluding that Gabon, where plaintiff's injury occurred, has much stronger interest in the subject matter of the dispute than D.C. does). As Judge Breyer put it, if the "tables were reversed," it is "hard to imagine" that the U.S. would not be the most interested nation.

The Malaysian connections have already been noted, but they are directly relevant to the public interest analysis. This accident occurred on an aircraft operated by Malaysia's national airline, during a flight originating from Kuala Lumpur, Malaysia, over the high seas on an aircraft registered under the Laws of Malaysia, and carrying 38 Malaysian citizens. *See* **Ex. 2,** Factual Investigation Report, at ¶ 1.6.3. It was the worst accident in Malaysian aviation history. MAS is governed by the Malaysian regulators, the aircraft was inspected and certified by Malaysian regulators and the MAS aircrews were Malaysian citizens who received certification and pilot training in Malaysia. Additionally, Malaysia's civil aviation authority was charged with the official investigation of the Accident and Malaysian police conducted their own independent investigation of the Accident. The safety of flights originating from Malaysia is also a major concern for the Malaysian people. The Malaysian press has reported extensively on the accident, the investigation, the search for the aircraft, and the litigation pending in Malaysia. Further, the Malaysian courts are pressing forward with claims on behalf of most of these same decedents, and have refused to suspend those cases pending the resolution of this FNC motion. *See* **Ex. 11**, Singh Dec. at ¶ 12. These facts establish Malaysia's strong interest in this litigation. *See* **Ex. 10**, Embong Dec. at ¶¶ 84-89; s*ee also Piper Aircraft Co.*, 454 U.S. at 260; *Clerides*, 534 F.3d at 630; *In re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006*, 574 F. Supp. 2d 272, 288-89 (E.D.N.Y. 2009), *aff'd sub nom. Lleras v. Excelaire Servs. Inc.*, No. 06 CIV 6083, 2009 WL 4282112 (2d Cir. Dec. 2, 2009); *Esheva v. Siberian Airlines*, 499 F. Supp. 2d 493, 500 (2007); *Taiwan Straits*, 331 F. Supp. 2d at 1204. The determination of rights and obligations of MAS and MAB, as agencies or instrumentalities of a foreign state, are best addressed in the courts of Malaysia. For all of these reasons, Malaysia has a significant public interest in the regulation of commercial flights, aircraft and their components originating from or used within Malaysia's borders.

The initiatives taken by the Malaysian government underscore Malaysia's compelling interest in this controversy. *See Lueck*, 236 F. 3d at 1147 (ongoing probe in New Zealand is indication of public interest); *Reers v. Deutsche Bahn AG,* 320 F. Supp. 2d 140, 160 (S.D.N.Y. 2004) (France's "active interest" is evidence by investigation into the accident). Those initiatives include the creation and work of the Malaysian Investigation Team and the work of the Malaysian DCA and Royal Malaysian Police. *See* **Ex. 10**, Embong Dec. at ¶¶ 14, 85; *Clerides*, 534 F.3d at 630 (foreign countries' "demonstrated interest" shown through criminal and official investigations into the crash)*; In re Air Crash Over Mid-Atl.*, 760 F. Supp. 2d at 845 (France's interest "especially obvious" because it conducting official civil and criminal investigations). Indeed, a foreign government's interest in a regulated industry, like airline operations, is "particularly strong." *See In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.*, 408 F. Supp. 2d 569, 589 (N.D. Ill. 2006) *aff'd* 484 F.3d 951 (7th Cir. 2007). Further, the declaration of the Director General of the DCA wherein the Malaysian government deemed Flight MH370 an accident demonstrates the significance of the Accident to Malaysia as a nation:

> The Government[] of Malaysia … ha[s] spared no expense and resources in the search for MH370. This has been done with the paramount aim to find the aircraft and seek answers. It has been done in hope of bringing some solace to the families of the passengers and crew on board MH370 . . . . .We endeavored and pursued every credible lead and reviewed all available data.

**Ex. 1,** DCA Press Release at ¶ 14. Given the Malaysian government's intense focus on civil aviation safety, the importance of air travel to the economy of Malaysia, and the media and public attention, this litigation is critically important to the Malaysian government and its constituents. *See* **Ex. 10**, Embong Dec. at ¶¶ 87-88. Those considerations weigh heavily for dismissal. *See In re Air Crash Near Peixoto De Azeveda,* 574 F. Supp. 2d at 288-89; *Esheva*, 499 F. Supp. 2d at 500; *see also Gulf Oil Corp.*, 330 U.S. at 509 ("In cases which touch the affairs of

many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.").

By contrast, no United States forum has an interest in this litigation that approaches the interest of Malaysia, let alone surpasses it. *See, e.g., Croesus EMTR Master Fund L.P.,* 212 F. Supp. 2d at 40 (dismissing case in part because "[t]he marginal nature of the United States' interest stands in stark contrast to the magnitude of Brazil's interest"). Illinois, California, New York and Washington D.C.—jurisdictions where these cases were originally filed—have no meaningful relationship to the incident and have demonstrated no interest in this litigation. Boeing's commercial aircraft operations are not located in Illinois, California, New York or Washington D.C. and virtually no relevant documents or witness are located there.[6] **Ex. 5**, Barr Dec. at ¶ 17. Nor do MAS or MAB have relevant documents or witnesses located in those jurisdictions. The fact that Boeing's corporate headquarters are located in Illinois does not give that state an overriding interest in the litigation. The Seventh Circuit held in *Clerides* that the Northern District of Illinois has "no local connection" to foreign air crash litigation against Boeing brought by foreign plaintiffs. 534 F.3d at 630; *see also Kamel*, 108 F.3d at 805 (affirming *FNC* dismissal of defendant sued in principal place of business, noting that Illinois has no more than a "mere passing" interest in the action); *In re Factor VIII or IX Concentrate Blood Prods. Litig.,* 531 F. Supp. 2d 957, 978 (N.D. Ill. 2008) (headquarters and manufacturing facility in forum was not "in any way comparable to the interests of" Argentina, where injuries occurred). Under these facts, any interest that the U.S. may have in the accident "is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be

---

[6] That Boeing manufactured the aircraft in Washington state does not give Washington, let alone Illinois, California, New York or Washington D.C., any substantial interest in this litigation that outweighs Malaysia's interest. *Van Schijndel,* 434 F. Supp. 2d at 784; *Taiwan Straits,* 331 F. Supp. 2d at 1203.

required if the case were to be tried here." *Piper Aircraft Co.,* 454 U.S. at 261; *see also Lueck,* 236 F.3d at 1147.

Even if the Court were to consider the interests of the U.S. as a whole, any generalized interest in ensuring the safety of U.S.-made or owned aircraft cannot outweigh Malaysia's substantial interest in this litigation. *See Athens,* 479 F. Supp. 2d at 804. That conclusion is squarely supported by the U.S. Supreme Court's decision in *Piper.* In that case, the Supreme Court approved dismissal of a case against Piper, even though the case was pending in Pennsylvania, where Piper had its headquarters, manufacturing facilities, and evidence. In doing so, the Supreme Court conclusively rejected the notion that the U.S. forum's interests either matched the foreign forum's interests or pointed away from dismissal. To the contrary, the Supreme Court unequivocally held that "[t]he American interest in this accident *is simply not sufficient* to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Piper Aircraft Co.,* 454 U.S. at 261 (emphasis added). Since *Piper,* "courts have repeatedly exercised their discretion to hold that a defendant's manufacturing activities within the U.S. do not tilt the public interest in favor of retaining jurisdiction where overseas events are the primary catalyst for litigation initiated by foreign plaintiffs." *In re Air Crash Near Peixoto De Azeveda,* 574 F. Supp. 2d at 288; *see also Macedo v. Boeing Co.,* 693 F.2d 683, 686 (7th Cir. 1982) ("The fact that the aircraft was manufactured in the [U.S.] does not make the accident, involving a Portuguese airline, an airport in Portugal, predominantly Portuguese plaintiffs and Portuguese witnesses, any less a matter of local Portuguese interest.").

The public interest in Malaysia is even stronger in this case than in most of the cases in Appendix A that were dismissed for *forum non conveniens* because the Plaintiffs here directly challenge the force and effect of Malaysian law. They erroneously allege that the MAS corporate

reorganization, conducted pursuant to an act of the Malaysian Parliament, is invalid and has deprived them of a remedy. *See Huang* Complaint at ¶ 23; *Smith* Complaint at ¶ 34; *Zhang* Second Amended Complaint at ¶ 36 (alleging the "[Malaysian Airline System Berhad (Administration) Act 2015, Act 765] was introduced and approved to help MAS avoid its liability, responsibility and damages to MH370 (and other) passengers by the Government of Malaysia"). Other plaintiffs argue that MAB is a successor in interest to MAS, notwithstanding its creation under Act 765. *E.g.*, *Wood* Complaint at ¶ 4.

If this litigation were to remain in the United States, those allegations invite a United States court to examine and potentially invalidate Malaysian law. But "[t]he act of state doctrine prevents U.S. courts from inquiring into the validity of the public acts of a recognized sovereign power committed within its own territory." *Sarei v. Rio Tinto, PLC,* 487 F.3d 1193, 1208 (9th Cir. 2007) (citing *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401 (1964)). Considerations of international comity and principles of foreign sovereignty compel this Court to reject the Plaintiffs' request and avoid wading into the validity of a foreign state's domestic legislation. Indeed, "an action may be barred if (1) there is an 'official act of a foreign sovereign performed within its own territory'; and (2) 'the relief sought or the defense interposed [in the action would require] a court in the United States to declare invalid the [foreign sovereign's] official act.'" *Sarei,* 487 F.3d at 1208, citing *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.,* 493 U.S. 400, 405 (1990). Challenges to, and interpretation of, Malaysian law should be the exclusive province of the Malaysian courts, which is already before the Malaysian courts. The allegations concerning successor liability for MAS notwithstanding a recent Malaysian law illustrate precisely why these cases are best suited for adjudication in Malaysia.

**b.**    **Administrative burdens and complex choice-of-law issues favor dismissal**

In light of this forum's limited interest in these cases, especially compared to Malaysia, there is no reason to unnecessarily burden a U.S. court with the task of adjudicating these claims. To be sure, this is no ordinary lawsuit. Discovery and trial of Plaintiffs' claims would be technical, complex, and voluminous. Retaining this action would impose considerable and unwarranted burdens on Illinois, the District of Columbia, New York, and California and their respective citizens, whose tax dollars would have to support the expense of trying these cases. The complexity of these cases ensures that trials will consume a significant amount of court and litigant time and resources. *See Baumgart v. Fairchild Aircraft Corp., Civ. A. No. SA–90–CA–-818*, 1991 WL 487242, at *7 (W.D. Tex. Sept. 30, 1991) (trials involving 19 foreign plaintiffs would take a substantial amount of time to try and public interest factors favored dismissal even though aircraft designed, manufactured, and tested in Texas), *aff'd,* 981 F.2d 824 (5th Cir. 1993); *Nolan v. Boeing Co.*, 762 F. Supp. 680, 684 (E.D. La. 1989) ("no justification" for retaining jurisdiction when trials arising from foreign aviation accident involving 100 plaintiffs "could be expected to last months"), *aff'd,* 919 F.2d 1058 (5th Cir. 1990). Given the comparatively slight American interest in this litigation, there is no reason to impose this significant burden on them. *See Piper Aircraft Co.,* 454 U.S. at 252; *Gulf Oil Corp.,* 330 U.S. at 508-09; *In re Bridgestone/Firestone, Inc.,* 420 F.3d at 705.

Finally, the *forum non conveniens* doctrine "is designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft Co.,* 454 U.S. at 251; *Athens,* 479 F. Supp. 2d at 804-05; *see also Martin v. Vogler,* No. 93 C 3870, 1993 WL 462853, at *4 (N.D. Ill. Nov. 9, 1993). As this Circuit noted in *Pain*, courts should consider their "familiarity with governing law when deciding whether or not to retain jurisdiction over a case." 637 F.2d at 791-92 (footnote omitted).  Cases arising from foreign aircraft accidents, in particular, inevitably

"pose complex choice of law issues." *Athens,* 479 F. Supp. 2d at 804; *see also In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001,* No. MDL 1448 (RWS), 2006 WL 1288298, at *4 (S.D.N.Y. May 9, 2006).    Here, the aircraft crashed in the southern Indian Ocean, which means a U.S. court would apply the multi-factor *Lauritzen* admiralty choice-of-law test to determine whether to apply the U.S. Death on the High Seas Act ("DOHSA"), Malaysian, or Chinese law. *See, e.g., Fredriksson,* 2009 WL 2952225, at *16 & n.29 (citing *Lauritzen v. Larsen,* 345 U.S. 571 (1953)); *In re Air Crash Disaster Near Bombay, India on Jan. 1, 1978,* 531 F. Supp. 1175, 1184-91 (W.D. Wash. 1982). *Lauritzen* would require this Court to balance various factors in this air crash case that point directly to Malaysia, such as the law of the aircraft's flag or registry, the operator's domicile, the injured party's domicile, the place of the wrongful act, which likely will result in the application of Malaysian law to liability and damages issues. *See, e.g., Fredriksson*, 2009 WL 2952225, at *15-17.[7] This Court need not conduct a full choice of law analysis to grant dismissal. *See Athens,* 479 F. Supp. 2d at 805 ("the Court need not definitely resolve the issue of which forum's law will apply" where the other factors already point to dismissal). It is sufficient in assessing the public interest that the retention of this action would require the Court to "untangle problems in conflict of laws, and in law foreign to itself"—in this case, complex and hardly run-of-the-mill questions—which is a factor that "point[s] towards dismissal." *Piper Aircraft Co.,* 454 U.S. at 251 (quoting *Gulf Oil Corp.,* 330 U.S. at 509). And the Court would almost certainly have to analyze and likely apply the unfamiliar tenets of Malaysian law. "The need to apply foreign law point[s] towards dismissal." *Piper Aircraft Co.,* 454 U.S. at 260; *Satz,* 244 F.3d at 1284 (dismissal favored where "there is a possibility that the district court would have to apply Argentine law to decide this

---

[7] If U.S. law applies, that law is DOHSA, which preempts any state law wrongful death and survival claim for accidents that occurred on the high seas beyond twelve nautical miles from the short of the U.S. *See Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996) ); 46 U.S. Code § 30307.

case"); *Fredriksson,* 2009 WL 295225, at *17 (likelihood that foreign law applies "weighs against retention of the action").

For these reasons, the choice of law factor weighs in favor of dismissal. *See Lueck*, 236 F.3d at 1148 n.8.

## IV.    CONCLUSION

Plaintiffs' claims should be dismissed on the ground of *forum non conveniens* for refiling in the courts of Malaysia.

Dated: October 1, 2016.                                    Respectfully submitted,

                                    **KAPLAN, MASSAMILLO & ANDREWS**


By:/s/ Richard A. Walker
    Telly Andrews, IL Bar No. 6242431
    tandrews@kmalawfirm.com
    Richard A. Walker, IL Bar No. 6196947
    rwalker@kmalawfirm.com
    200 W. Madison Street, 16th Floor
    Chicago, Illinois 60606
    Telephone:  (312) 345-3000
    Facsimile:  (312) 345-3119

    Attorneys for Defendants Malaysian Airline
    System Berhad (Administrator Appointed);
    Malaysia Airlines Berhad; Allianz Global
    Corporate & Specialty SE

Dated: October 1, 2016.                                    **PERKINS COIE LLP**


By:/s/Mack H. Shultz
    John D. Dillow, WA Bar No. 5979
    JDillow@perkinscoie.com
    Eric B. Wolff, D.C. Bar No. 477730
    EWolff@perkinscoie.com
    Mack H. Shultz, WA Bar No. 27190
    MShultz@perkinscoie.com
    1201 Third Avenue, Suite 4900
    Seattle, WA  98101-3099
    Telephone:  (206) 359-8000
    Facsimile:  (206) 359-9000

    Attorneys for Defendant
    The Boeing Company

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 1, 2016, pursuant to Fed. R. Civ. P. 5 and LCvR 5.3, a true and correct copy of the foregoing Joint Memorandum of Law in Support of Motion to Dismiss on the Ground of *Forum Non Conveniens*, along with supporting exhibits, were filed with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the attorneys of record at the email addresses on file with the Court.


/s/ Richard A. Walker
                Richard A. Walker