EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| IN RE: AIR CRASH OVER THE SOUTHERN INDIAN OCEAN ON MARCH 8, 2014 |
| This Document Relates To: ALL CASES |

MDL Docket No: 2712

Misc. No. 16-1184 (KBJ)

**DECLARATION OF TAN SRI DATO SERI ABDULL HAMID EMBONG**

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     MALAYSIAN LEGAL SYSTEM.........................................................................7

III.    ATTORNEYS...........................................................................................................10

IV.     JUDICIAL POWER AND THE MALAYSIAN SYSTEM OF JUSTICE.......................11

        A.    Applicable Law...........................................................................................12

        B.    Statutory Claims.........................................................................................13

V.      THE AUTHORITY OF THE MALAYSIAN COURTS.....................................14

        A.    Jurisdiction..................................................................................................14

        B.    Statute of Limitations.................................................................................18

VI.     THE PROCESS OF COMMENCING A LAWSUIT, PROCEDURE AND
        OBTAINING EVIDENCE IN MALAYSIA ....................................................19

        A.    Initiation of Lawsuit to Judgment.........................................................19

        B.    Depositions and Discovery .....................................................................21

        C.    Court Fees...................................................................................................24

        D.    Appeals .......................................................................................................24

VII.    PUBLIC INTEREST ..............................................................................................25

VIII.   CONCLUSION.........................................................................................................26

## DECLARATION OF TAN SRI DATO SERI ABDULL HAMID EMBONG

I, Tan Sri Dato Seri Abdull Hamid Embong, do hereby solemnly and sincerely declare the following:

## I.    INTRODUCTION

1.    I make this Declaration based on my personal knowledge and experience as a former Malaysian advocate and solicitor, Senior Federal Counsel, State Legal Advisor, and a retired Judge of numerous Malaysian courts, including the High Court of Malaya, the Criminal Court in Kuala Lumpur, the Court of Appeal Malaysia, and the Federal Court of Malaysia – Malaysia's highest court.  I have also served as the Managing Judge for the States of Perak and Selangor and as a member of the Special Court established to hear actions against Malaysian politicians.  I am competent to form an opinion on issues relating to Malaysian law and I am prepared to testify if required.

2.    In addition to my experiences as an advocate and solicitor and Judge, I have served as a member on the Judicial Appointment Commission and the Judicial and Legal Service Commission, and I currently serve on the Advisory Board of the Malaysia Current Law Journal and as a member of the Executive Council of the International Centre for Law and Legal Studies.

3.    I was called to the English Bar as an Utter Barrister, or commonly known as a junior barrister, in 1976. Upon returning to Malaysia, I joined the Malaysian Government's judicial and legal services which permitted me to act as a legal officer including positions as a Federal Counsel or Deputy Public Prosecutor. I was appointed as a Federal Counsel with the Public Service Department in 1978 and a Deputy Public Prosecutor in 1980. I also served as a legal advisor with the Ministry of Land and Regional Development from 1983 to 1988 and was senior Federal

Counsel from 1989.  Further details of my working experience in the judicial and legal services in the Malaysian Government can be found in the attached *Curriculum Vitae*.

4.    My background and credentials are described in further detail in my *Curriculum Vitae*, which is attached to the Declaration as **Exhibit A**.

5.    I understand, from a review of the Complaints court Orders, that at least forty actions, as listed in Exhibit A to the separate Declaration of Saranjit Singh Surjit Singh which  I understand is to be made an Exhibit to the *forum non conveniens* motion to be filed in the U.S. Court,  have been commenced in a number of Courts of the United States in which various persons ("Plaintiffs") seek damages for the death of passengers on board Malaysia Airlines Flight MH370 which disappeared on 8 March 2014.  I understand that the U.S. cases listed on Exhibit A to the Declaration of Saranjit Singh Surjit Singh have been transferred to the United States District Court for the District of the District of Columbia under MDL Docket No. 2712 (collectively, the "U.S. Proceedings").

6.    I note from my review of the Complaints that eight of them name primarily Malaysian Airline System Berhad (Administrator Appointed) ("MAS") and/or Malaysia Airlines Berhad ("MAB"), but these same eight cases also include – in various configurations – Allianz Global Corporate & Specialty SE ("AGCS SE"), Henning Haagen (an individual), and purportedly The Boeing Company ("Boeing") in one of the cases brought against MAS and MAB.  I further note from my review of the Complaints that there are thirty-two further actions against Boeing as the sole defendant.

7.    Apart from the U.S. Proceedings, I have been advised by MAS's counsel in Malaysia of litigation arising from MH370 pending in the courts of Malaysia as set forth in some detail in the separate Declaration of Saranjit Singh Surjit Singh and Exhibit A thereto.   I have

reviewed copies of the Statements of Claim (complaints) and observe that at least twenty-nine actions have been commenced in the Malaysian courts and that twenty-seven remain pending in the High Court of Malaya at Kuala Lumpur (Civil Division). These actions have been filed by the family members and next of kin of the deceased passengers by Chinese, American and Indian nationals who were on board MH370. I have been advised that at least two actions have been resolved.

8.      I have been requested to provide a Declaration in support of a Motion to Dismiss the U.S. Proceedings on the ground of *forum non conveniens* in favor of the courts of Malaysia. In that regard, I have reviewed the following documents, among others:

> (a) Plaintiffs' Complaints filed in each of the forty U.S. Proceedings as listed more completely on Exhibit A to the Declaration of Saranjit Singh Surjit Singh;
>
> (b) The Interim Statement, Safety Investigation for MH370 (9M-MRO) dated 8 March 2015;
>
> (c) Announcement on MH370 by the Director General, Department of Civil Aviation Malaysia dated 29 January 2015;
>
> (d) The Malaysian Airline System Berhad (Administration) Act 2015; and
>
> (e) Copies of the Statements of Claim (complaints) filed and pending before the High Court of Malaya at Kuala Lumpur (Civil Division), as listed in and made Exhibits to the separate Declaration of Saranjit Singh Surjit Singh, to be made an Exhibit to the *forum non conveniens* motion in the U.S. Proceedings.

9.      Additionally, many of the following facts have been widely reported in the international print and broadcast news media, stated in various MAS and Malaysian Government press releases and reports, or contained within the interim statement issued by the "Malaysian ICAO Annex 13 Safety Investigation Team for MH370" on 8 March 2015 ("Interim Statement"). I have been advised of other facts by counsel for MAS, and I base the opinions made herein on the following information.

10.     On 8 March 2014, a Boeing 777-2H6ER aircraft, registration 9M-MRO (the "Aircraft"), was operated by MAS as Malaysia Airlines Flight MH370 as a scheduled international passenger flight from Kuala Lumpur International Airport near Kuala Lumpur, Malaysia, to Beijing Capital International Airport in Beijing, China ("MH370"). The Aircraft last made voice contact with air traffic control at 1:19 MYT on 8 March and subsequently disappeared from air traffic controllers' radar screens during flight over the South China Sea. The Aircraft was carrying a total of 239 persons on board, 227 passengers and 12 crew members.

11.     The Aircraft was operated by MAS, an air carrier organized and existing under the laws of Malaysia. The Aircraft's airworthiness was certified by the Department of Civil Aviation Malaysia ("DCA") in Malaysia.

12.     On 29 January 2015, the Director General of the DCA officially declared the disappearance of Flight MH370 an accident and that its passengers and crew are presumed dead. The DCA also advised that "[a]n analysis of the radar data and subsequent satellite communication (SATCOM) system signaling messages placed the aircraft … on an arc in the southern Indian Ocean." The DCA further stated that, based on the same data, the DCA had concluded "that the aircraft exhausted its fuel over a defined area of the southern Indian Ocean, and that the aircraft is located on the sea floor close to that defined areas" (the "Accident"). Several pieces of the Aircraft have since been recovered and conclusively identified by French, Australian and Malaysian authorities as having come from the Accident aircraft.

13.     I understand that of the 227 passengers, 152 were citizens of the Peoples Republic of China, 38 were citizens of Malaysia and the remaining passengers were from fourteen different countries.

14.    I understand that in response to the Aircraft's disappearance, the Minister of Transport Malaysia established an independent safety investigation team under Regulation 126(1) of the Malaysian Civil Aviation Regulations 1996 known as "The Malaysian ICAO Annex 13 Safety Investigation Team for MH370" to conduct the investigation into the disappearance of MH370.  Also participating in the investigation are Accredited Representatives from seven[1] international Air Accident and Incident Investigation Organizations.

15.    I have been advised that all passengers on board the Aircraft at the time of the Accident had been issued tickets for international carriage as defined in various international conventions, such as the Warsaw Convention 1929 and the Montreal Convention 1999.[2]

16.    I have been informed that if MAS, MAB, AGCS SE and Boeing succeed in having the U.S. Proceedings dismissed on the basis of *forum non conveniens* and any of the Plaintiffs in the U.S. Proceedings – who have not already done so - then bring actions in Malaysia against MAS, MAB, AGCS SE or Boeing ("Malaysia Proceedings") that:

(a) MAS, MAB, AGCS SE and Boeing will submit to the jurisdiction of the courts of Malaysia and MAS and MAB will agree to be added as parties to any actions refiled in the courts of Malaysia solely against Boeing;

(b) for a period of 120 days after the U.S. Proceedings are dismissed on the ground of *forum non conveniens*, MAS, MAB, AGCS SE and Boeing will waive any objection to the Plaintiffs seeking leave to proceed in the courts of Malaysia outside any relevant limitation period, whether under Malaysian law or under U.S. law;

(c) Boeing will make available in any actions refiled in the courts of Malaysia any evidence and witnesses in its possession, custody, or control in the United States that the Malaysian courts determine are relevant; and

---

[1]Australian Transport Safety Bureau of Australia; Air Accidents Investigation Branch of United Kingdom; Air Accident Investigation Bureau of Singapore; Bureau d'Enquêtes et d'Analyses pour la Sécurité de l'Aviation civile of France; Civil Aviation Administration of China; National Transportation Safety Board of the United States of America; and National Transportation Safety Committee of Indonesia.
[2] Convention for the Unification of Certain Rules for International Carriage by Air (Montreal, 28 May 1999).

    (d) if a judgment is entered against MAS, MAB or Boeing in the Malaysian
        Proceedings, then, subject to any appeal rights, each of them will undertake to
        pay the Judgment against it.

17.     In making this Declaration, I have read, studied, researched, and investigated the law and regulations of Malaysia in relation to my opinions.

18.     MAS's legal counsel in the United States have requested my legal opinion on matters related to the courts of Malaysia, their procedures, and the applicable law of Malaysia with regard to wrongful death and/or unlawful acts arising from a crash of a commercial aircraft during international carriage by air.  Therefore, except as stated otherwise, this Declaration is made on the bases of my professional knowledge, experience, information and expertise as a former Deputy Public Prosecutor, Senior Federal Counsel for the Government of Malaysia attached to the Attorney General's Chambers and retired Judge in Malaysia.  As a Judge in the High Court of Malaya, the Court of Appeal, and the Federal Court, I heard and decided upon numerous civil and commercial disputes.

19.     Based on my experience as a former Judge, and prior to that as a Federal Counsel and State Legal Advisor, and observer of the legal issues of Malaysia – especially regarding the Malaysian court system – I am satisfied that the courts of Malaysia ("Malaysian Courts") have jurisdiction in the matter and are an alternative forum available to the Plaintiffs for their claims and adequate for the hearing and trial of the matters arising as a result of the Accident.

20.     It is also my opinion, based on my experience, that if any of the Plaintiffs file their lawsuits against MAS, MAB or Boeing in the Malaysian Courts (if they haven't already), the Malaysian Courts are competent to try/hear those lawsuits and are capable of reaching a just and efficient decision in accordance with Malaysian law. Moreover, I am also certain that, if the Plaintiffs meet their burden of proof under the laws of Malaysia, the Plaintiffs will receive

compensation in the Malaysian Courts under the laws of Malaysia. The bases of my opinion are explained in further detail as follows:

## II.    MALAYSIAN LEGAL SYSTEM

21.    Malaysia is a Parliamentary Democracy with a Constitutional Monarch as the Head of the Federation of thirteen states and three federal territories. Its constitutional system of governance is based on a written Constitution (the "Federal Constitution") as the supreme law of the Federation.

22.    Malaysia's legal system is based on the English common law legal system. Malaysia follows English law as it existed on 7 April 1956 and it will be applied in the absence of a subsequent modification by Malaysian law. Additionally, subsequent developments in English law after 7 April 1956 are persuasive authority unless they do not accord with Malaysian public policy. In particular, the Civil Law Act 1956 (Act 67) (Revised 1972) authorizes the application of English law as it existed on 7 April 1956 in the whole of Malaysia in respect of commercial matters, including carriage by air, land and sea to the extent it is not inconsistent with subsequent changes in Malaysian law.

23.    The Federal Constitution clearly provides for separation of powers among the Executive, Legislative and Judicial branches of the government. Malaysia has a robust judiciary that is committed to the rule of law. The Malaysian courts recognize the importance of impartiality and judicial independence. *See, e.g., Dato' See Teow Chuan & Ors v. Ooi Woon Chee & Ors and other applications* [2013] 4 MLJ 351; *Metramac Corporation Sdn Bhd (formerly known as Syarikat Teratai KG Sdn Bhd) v Fawziah Holdings Sdn Bhd; Tan Sri Halim Saad & Che Abdul Daim Hj Zainuddin (interveners)* [2007] 5 MLJ 501. Court proceedings in Malaysia are typically open to the public per the Courts of Judicature Act, 1964, § 15(1).

24.     The Malaysian Judiciary comprises the Federal Court, the Court of Appeal, two High Courts of co-ordinate jurisdiction – one for West Malaysia (the High Court of Malaya) and one for East Malaysia (the High Court of Sabah and Sarawak) and the subordinate courts (the Sessions and the Magistrates' Courts). The graphic below illustrates hierarchy of the courts within the judicial system.



25.     As I noted at the outset, I have served as a judge of many different courts, including the High Court, the Court of Appeal, and the Federal Court.  The selection of judges is governed by the Federal Constitution and the Judicial Appointments Commission Act, 2009.  The Judicial Appointments Commission is tasked with selecting qualified persons for the Prime Minister's consideration. In identifying candidates, the commission takes into account, among others, the candidate's (a) integrity, competency and experience; (b) objectivity, impartiality, fairness and good moral character; (c) decisiveness, ability to make timely judgments and good legal writing skills; (d) industriousness and ability to manage cases well; and (e) physical and mental health. Judicial Appointments Commission Act, 2009, § 23(2).  Once the commission makes its selections, the commission provides a report to the Prime Minister.  The Prime Minister then

reviews the commission's recommendations and advises the Malaysian head of state, the Yang Di-Pertuan Agong, who then makes the judicial appointments. Judicial appointments are permanent and judges remain on the bench until the mandatory retirement age of 66, barring removal for breach of the code of ethics.

26.      A civil action may be initiated in the Magistrates' Courts, the Sessions Courts, and the High Courts. The civil jurisdiction of the Magistrates' and Sessions Courts is provided in the Subordinate Courts Act 1948 (Act 92). Currently, the monetary jurisdiction of these courts is limited to MYR 250,000 and MYR 1,000,000 respectively.[3] There is no limit on the jurisdiction of the High Courts as far as the monetary amount and subjects are concerned. Trial proceedings before the High Courts are held before a single judge.

27.      The jurisdiction of the High Court is provided in section 23 of the Courts of Judicature Act 1964 (the "Judicature Act"). Unlike the jurisdiction of the subordinate courts, the jurisdiction of the High Courts is extra-territorial in nature permitting suits against foreign defendants as discussed further below.

28.      Civil proceedings in the Subordinate Courts and in the High Courts are governed by the Rules of Court 2012. These rules of court have their roots in the former English Rules of the Supreme Court.

29.      The Malaysian judicial system affords plaintiffs, as far as I am aware, many of the procedural tools of the legal system in the United States, including: (a) a pleading phase (where plaintiffs are required to set forth in writing their claims against the defendant(s)); (b) mechanisms for dismissal of groundless claims; (c) fact-gathering processes to establish the relevant facts; (d) an adjudicative process in which the court determines and applies the appropriate substantive law

---

[3]As of 25 September 2016, 1 Malaysian Ringgit (MYR) = USD 0.243191. Thus, MYR 250,000 = USD 60,797.67 and MYR 1,000,000 = USD 243,190.66.

based on the evidence before it; (e) an array of remedies to vindicate protected interests; and (f) appellate review to correct error.

30.    The Malaysian Courts have tried disputes involving the Warsaw Convention 1929. As aviation accidents have been few, until 2014, only one case involving an aviation accident in Tawau, Sabah in 1995 was dealt with by our own Courts. In *Chen Lian Thai and Anor v Malaysia Airlines Berhad* [2003] 6 CLJ 433, the High Court considered the Warsaw Convention 1929 and the Carriage by Air Act 1974 on the issue of limitation of action. Reference was also made to the Limitation Act 1953. This case only dealt with matters concerning a limited threshold issue on whether the action was time barred. I believe a number of claims for damages in aviation accidents had been settled before trial.

31.    The Malaysian Courts also have experience trying claims for personal injury caused by defective products. For example, in the case of *David Chelliah v Monorail Malaysia Technology Sdn Bhd & Ors* [2009] 4 MLJ 253, the High Court allowed the plaintiff's negligence claim based on an alleged design defect in a monorail to proceed against the monorail manufacturer.

## III.    ATTORNEYS

32.    An advocate and solicitor, once admitted to the Malaysian Bar, is legally qualified to appear in all Malaysian Courts to represent his client. An advocate & solicitor must have the requisite qualifications provided for in the Legal Profession Act 1976. These qualifications include being a person of good character and having satisfactorily served the period of pupilage of 9 months in Malaysia.

33.    In my opinion, to the extent Plaintiffs in the U.S. proceedings have not already done so, if they re-file their claims against MAS, MAB, AGCS SE or Boeing in Malaysia, they will be

able to obtain capable Malaysian lawyers to represent them.  Malaysian lawyers are available throughout the country, especially in Kuala Lumpur, and there are many firms in Kuala Lumpur that will be prepared to represent these Plaintiffs.  There is no reason why these Plaintiffs would not be able to source and then instruct able and experienced lawyers in Malaysia to pursue litigation arising from the Accident, as evidenced by the existing lawsuits already filed in Malaysia by virtually every Plaintiff.

34.    An advocate & solicitor in Malaysia is not entitled to have any arrangement on a "contingency" basis or any champertous arrangement either in sharing an interest in the subject matter of his client's claim or on a "no win no fees" basis.  This is provided under Section 112 of the Legal Profession Act 1976. Legal fees of advocates are commonly based on *inter alia* the time costs or fixed fees/fee agreements that take into account the novelty or difficulty of the matter or the amount of the subject matter.  The absence of a contingency fee as traditionally understood in the United States would not stand as a bar to these Plaintiffs obtaining counsel in Malaysia.  This is amply demonstrated by the fact that nearly all of the claimants in the United States proceedings have already retained Malaysian counsel and brought suit in Malaysia against MAS, MAB, AGCS SE and a number of Malaysian governmental parties.

## IV.    JUDICIAL POWER AND THE MALAYSIAN SYSTEM OF JUSTICE

35.    I have reviewed the forty Complaints filed in the U.S. Proceedings. It is my firm opinion that Malaysia's legal system would permit the Plaintiffs to bring claims against MAS, MAB or Boeing for monetary damages based on the facts alleged.

36.    In my review of the various civil actions filed in Malaysia, I have noted that the Plaintiffs in these actions have generally advanced similar causes of actions with those brought in

the U.S. Proceedings. These causes of actions can be broadly referred to as those under the Montreal Convention 1999, tort of negligence and breach of contract.

### A.    Applicable Law

37.    In my opinion, Plaintiffs' re-filing of their lawsuits in Malaysia in relation to the Accident will not pose any problems. With regard to claims against MAS there exists in Malaysia a well-settled statutory regime to compensate passengers who are killed or injured in an accident while on board an aircraft.

38.    Civil causes of action in Malaysia for personal injury and wrongful death during the course of air travel derive from international treaties and conventions to which Malaysia adheres, as given force through the Carriage by Air Act 1974 ("CAA 1974") and the amended Act of Carriage by Air (Amendment) Act 2007 ("CAA (Amendment) 2007").

39.    Malaysia has ratified four conventions in relation to the international carriage of passengers, baggage and cargo by air:

> (a) The Warsaw Convention 1929, as amended at The Hague 1955 (the "Warsaw–Hague Convention"), which is given the force of law by virtue of the First Schedule to the CAA 1974;
>
> (b) The Warsaw–Hague Convention further amended by Montreal Protocol No. 4, which is given force of law by virtue of the Fifth Schedule to the CAA 1974 (the "Amended Convention");
>
> (c) The Guadalajara Convention 1961, which is given the force of law by virtue of the Second Schedule to the CAA 1974 (the "Supplementary Convention"); and
>
> (d) The Montreal Convention 1999, which is given the force of law by virtue of the Sixth Schedule to the CAA 1974 (the "Montreal Convention") [4].

40.    In *All Nippon Airways Co Ltd v. Tokai Marine & Trading Co Ltd* [2013] 4 MLJ 744, the Malaysian Court of Appeal held that in any international carriage by air the governing

---

[4] Malaysia ratified the Montreal Convention on 29 February 2008.

law as to the air carrier was the *Warsaw Convention 1929* as amended by the Hague Convention which had the force of law in Malaysia by virtue of section 3(1) of the Malaysian *Carriage by Air Act 1974.* The holding reaffirmed that in Malaysia where the amended Warsaw Convention applies it is the exclusive remedy, to the exclusion of common law causes of action. The Montreal Convention now reiterates the Warsaw Convention's exclusiveness when it enacted Article 29, which provides "any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention."

41.     Therefore, Malaysian Courts would apply the jurisdictional and liability regimes provided in the Montreal Convention to Plaintiffs' claims against the air carrier as alleged in the Complaints filed in the U.S. Proceedings, if re-filed in Malaysia.

42.     Plaintiffs' product liability claims against Boeing could be asserted in the Malaysian courts as a tort in negligence.  Malaysian negligence law is based on English common law principles.  A plaintiff bringing a negligence claim in Malaysia must prove the existence of a duty of care, breach of that duty by the defendant, causation, and sufficient proximity between the breach and the plaintiffs' alleged damages.  See *Donoghue v Stevenson* [1932] AC 562.  The burden of proof will be on the Plaintiffs to establish each element of their claim.  As stated above, Malaysian courts have experience applying negligence law to product liability claims.

### B.    Statutory Claims

43.     In Malaysia general damages claims for compensation arising from a fatal accident are regulated and governed under Sections 7 and 8 of the Civil Law Act 1956. Section 28A of the Civil Law Act is the operative section that deals with the compensation/damages in the case of personal injury. Section 7 deals with what is commonly referred to as a dependency action where

the dependents of the deceased, as defined under Section 7 of the Civil Law Act, seek compensation for loss to them as a result of the death of the deceased caused by any wrongful act, neglect or default.  Section 8 on the other hand provides for what is called an estate claim where the estate of the deceased may make a claim against the tort-feasor.  Generally, wrongful death plaintiffs are entitled to recover under Malaysian law for funeral expenses, lost future earnings based on the decedent's pre-death earnings and age, and bereavement compensation for certain classes of surviving relatives.  I attach to this Declaration a copy of the *Civil Law Act 1956* as **Exhibit B**.

44.    For the assessment of general damages, the courts will look at previous judgments/precedents to determine the upper and lower limits of the award and take into account the nature, extent and duration of the injuries to decide how much to award.

## V.    THE AUTHORITY OF THE MALAYSIAN COURTS

45.    I do not foresee any legal/procedural problem for the Plaintiffs in re-filing their lawsuits in Malaysia. When the Plaintiffs decide to re-file their lawsuits in Malaysia, they will be required to engage Malaysian lawyers, who will advise and assist them in presenting their lawsuits in the Malaysian Courts.

### A.    Jurisdiction

46.    Jurisdiction over Plaintiffs' claims against the air carrier would be governed by the Montreal Convention, as applied under Malaysian law.  Thus an action may be brought in the Malaysian Courts, at the option of the plaintiff, if Malaysia is (1) the place where the carrier is ordinarily resident, (2) the place where the carrier has its principal place of business, (3) the place where the carrier maintains an establishment through which the contract has been made, (4) the

place of destination, or (5) in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence.[5] .

47.     Here, Malaysian Courts would exercise the Montreal Convention 1999 jurisdiction through the CAA 1974 over a lawsuit commenced by a plaintiff against the air carrier because Malaysia is the place where MAS or MAB is ordinarily resident and where it maintains its principal place of business.

48.     Additionally, it is provided in section 23(1) of the Courts of Judicature Act 1964 that the High Court shall have jurisdiction to try all civil proceedings where: (a) the cause of action arose, (b) the defendant or one of several defendants resides or has his place of business; (c) the facts on which the proceedings are based exists or are alleged to have occurred in Malaysia; or (d) any land, where the ownership of the land is disputed, is situated within the local jurisdiction of the Court.

49.     For the purposes of Plaintiffs' suits filed in the U.S. Proceedings, the High Court of Malaya would have jurisdiction to try the civil suit because MAS or MAB has its place of business in Malaysia, the offenses committed either by MAS, MAB or Boeing occurred on the high seas on board an aircraft registered in Malaysia, and the cause of action and the facts of which the proceedings are based arguably arose and occurred in Malaysia.

50.     A non-resident defendant, such as Boeing, also can be subject to the jurisdiction of Malaysian courts.  For instance, jurisdiction is established in the Malaysian courts over a foreign defendant if the foreign defendant is one of several co-defendants in the suit and one of the co-

---

[5] More completely stated as "or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement"  Montreal Convention, Article 33.2.

defendants resides or has its place of business within the local jurisdiction of the Court.  Courts of Judicature Act, 1964, § 23(1)(b).  In other words, if a plaintiff wishes to sue two defendants in Malaysia, the High Court would have jurisdiction over *both* the defendants if *either* of the defendants resides or has his place of business within the local jurisdiction of the Court.  The fact that the other defendant does not reside nor have its place of business within the local jurisdiction of the Court becomes immaterial.  In the present dispute, MAS and MAB both reside within the jurisdiction of the High Court of Malaya.

51.    Even if plaintiffs name only a foreign party as the sole defendant in a case, Malaysian courts would have jurisdiction over the foreign defendant if the foreign defendant adds a Malaysian resident as an additional defendant.  Applications to add additional co-defendants to a case are routinely granted.  So, for example, a non-resident such as Boeing could add a Malaysian resident such as MAS and MAB as a defendant in a case arising out of the loss of MH370.  I understand that MAS and MAB agree as a condition of a *forum non conveniens* dismissal to be added to any cases refiled by Plaintiffs against Boeing in Malaysia.

52.    Jurisdiction over a foreign defendant also may exist in Malaysian courts where the facts or circumstances underlying either the plaintiffs' claims or the defendants' defenses arise in Malaysia.  Courts of Judicature Act, 1964, § 23(1)(c). In the specific circumstances of this case, Boeing's defenses (such as alleging alternative causes of the loss of MH370 based on the maintenance and operation of the aircraft) would relate to events that occurred within Malaysia, and a Malaysian court would likely accept jurisdiction over Boeing on this basis.

53.    Notwithstanding the Malaysian Courts' original jurisdiction over Plaintiffs' claims, I am informed that if served, MAS, MAB, AGCS SE and Boeing will submit to the jurisdiction and will not challenge the jurisdiction of the High Court of Malaya.  Written consent suffices under

the Courts of Judicature Act to create jurisdiction and a Malaysian court will not dismiss a case if the parties agree to submit to the court's jurisdiction. Thus, it is my opinion that within Malaysia's legal framework, MAS, MAB and Boeing's consent to jurisdiction and the existing litigation in Malaysia against MAS and MAB in connection with the Accident all clearly establish that the Malaysian Courts are not only an adequate forum for the litigation of this matter, but also that they are an available forum.

54.    Moreover, the Malaysian Courts are familiar with the legal principles of the *forum non conveniens* doctrine.  The Supreme Court of Malaysia, as the Federal Court was previously known, in *American Express Bank Ltd v Mohamad Toujic Al-Ozeir* [1995] Volume 1 Current Law Journal 273, rightly noted that the fundamental principle in regard to the doctrine of *forum non conveniens* is that "there is some other tribunal, having competent jurisdiction, in which case may be tried more suitably for the interests of all parties and also for the ends of justice".

55.    In *Nam Fatt Bhd v Petrodar Operating Co Ltd* [2010] Volume 9 Current Law Journal 732, the High Court noted that in relation to *forum non conveniens,* the first stage of inquiry is to determine "the natural forum" for trying the case. To determine the natural forum, the court will determine if the "prayer in the writ had real and substantial connection" with that country of forum.

56.    These cases arise from the disappearance of an aircraft that was operated by Malaysia's national carrier, was flown by Malaysian pilots, and departed from Malaysia's capital. The disappearance resulted in the deaths of dozens of Malaysian citizens and is being investigated by the Malaysian government. Given these facts and the allegations made by the Plaintiffs in the U.S. Proceedings, it is my opinion that a Malaysian court would find that the "natural forum" for trying this case would be Malaysia.

### B.    Statute of Limitations

57.    In Malaysia, the Limitation Act 1953 is the general operative Act that provides for limitation of actions. The Act prescribes the limitation period for various causes of actions. Section 6 of the Limitation Act provides that *inter alia* an action in contract or in tort shall not be brought after the expiration of 6 years from the date on which the cause of action accrued. The defence of limitation is always available to a defendant as a defence but Section 4 mandates that for the limitation defence to be effective, the Limitation Act must be expressly pleaded as defence.

58.    The Montreal Convention also has provisions for limitation of actions and this is found in Article 35 of MC 99. Article 35 states that *"the right to damages shall be extinguished if an action is not brought within a period of 2 years from the date of arrival at the destination…"*. This provision has been incorporated in Section 7(1) of the CAA 1974 where it states that *"no action against the carrier shall be brought after more than 2 years…"*. It must however be noted that the words used under Section 7(1) differs from that used in Art 35 in that there is an omission of the word *"extinguished"*. The word used in Section 7(1) appears consonant with that used in Section 6 of the Limitation Act.

59.    In the case of *Tasja Sdn Bhd v Golden Approach Sdn Bhd (Federal Court Civil Appeal No. 02(f)-2-2010(W))*, the Federal Court had reaffirmed the importance to specifically plead the statute of limitation for it to be reckoned as a defence. Without such a specific plea, the limitation defence will not be entertained.

60.    On the assumption that MAS, MAB, AGCS SE and Boeing will not raise the defence of limitation against these Plaintiffs in the courts of Malaysia for a period of 120 days after dismissal of the U.S. Proceedings on the ground of *forum non conveniens,*

the Malaysian Courts would not on its own volition take up the limitation issue under Section 7(1) of the CAA 1974 particularly if that defence is not raised by MAS or MAB. I would, however, assume therefore that if there is a breach of the 120 day amnesty, MAS or MAB would be at liberty to raise the defence of limitation if the same is pleaded as a defence.

## VI.   THE PROCESS OF COMMENCING A LAWSUIT, PROCEDURE AND OBTAINING EVIDENCE IN MALAYSIA

### A.    Initiation of Lawsuit to Judgment

61.    In this case, because the Plaintiffs are quite clearly seeking to claim damages exceeding MYR 1,000,000.00 (approximately USD 245,000), they will be required to file their lawsuits in a High Court of Malaya.  The High Court of Malaya has both original and appellate jurisdictions for both civil and criminal matters.

62.    A party wishing to commence any civil proceedings in the High Court in Malaysia will have to use one of the following modes namely, a Writ of Summons or an Originating Summons (Order 5 of the Rules of Court 2012).

63.    Once the Writ has been duly served on the defendant (or defendants), the defendant (or defendants) is required to enter an Appearance (Order 12 of the Rules of Court 2012) within a specified time period (Order 12 rule 4 of the Rules of Court 2012).  Failure to enter an appearance may result in the plaintiff entering a judgment in default (of appearance) against the defendant (or defendants) (Order 13 of the Rules of Court 2012).

64.    Once the defendant(s) has entered an appearance, the process of exchange of pleadings will take place. The plaintiff is required to serve his Statement of Claim on the defendant(s) (Order 18 rule 1 of the Rules of Court 2012).  The defendant(s) is then required to serve his Defence on the plaintiff (Order 18 rule 2 of the Rules of the Court 2012).  The Defence

may contain a Counterclaim. The plaintiff may then be required to serve a Reply (and Defence to the Counterclaim, if any) (Order 18 rule 3 of the Rules of the Court 2012). No further pleadings subsequent to a Reply or a Defence to Counterclaim shall be served except with the leave of the Court (Order 18 rule 4 of the Rules of the Court 2012).

65.    Pursuant to Order 22B of the Malaysian Rules of Court 2012, a party may serve an offer to settle to the other party in a prescribed form. The offer to settle is on a without-prejudice basis except as to costs in what is known in some common law jurisdiction as a "*Calderbank Offer*". The offer can be made open for acceptance within a specific period or open ended in that it may be accepted at any time before the court disposes of the matter. If the offer is accepted, the court may incorporate any of the terms into a judgment. Failure to comply with the terms of the offer will entitle the other party to make an application to a judge for judgment in the terms of the accepted offer or continue the proceedings as if there had been no accepted offer to settle.

66.    If there are multiple lawsuits arising out of common questions of law and fact, there are procedures in Malaysian courts that allow the trial court to consolidate the actions for more efficient handling. See Order 4 of the Rules of Court, 2012.

67.    Malaysian courts permit expert witnesses to offer testimony about their opinions. See Section 45 of the Evidence Act 1950.

68.    Trial of a typical case usually occurs within a year of the claim being filed. If the claim is complex, involves complicated facts and issues, or requires foreign or expert witnesses, then the proceedings before the court of first instance may take two to three years.

69.    Judgments entered by Malaysian Courts can easily be enforced in Malaysia. Order 45 of the Rules of the Court 2012 provides for various modes of enforcement of judgments obtained in the High Court and these include Writ of Seizure and Sale, Garnishee Proceedings, a

Charging Order, the appointment of a Receiver and Committal Proceedings. These are cumulative and not alternative modes.  As discussed above, each of the three defendants (MAS, MAB, and Boeing) agrees to pay a judgment entered against it in any proceeding in the courts of Malaysia filed by these plaintiffs, subject to any appeal rights.

### B.    Depositions and Discovery

70.    Once pleadings are deemed closed, the process of Discovery and Inspection of Documents (Order 24 of the Rules of Court 2012) and Interrogatories (Order 26 of the Rules of Court 2012) will begin.

71.    In Malaysia, if a witness is unable to give evidence at trial, his evidence may be obtained by deposition. The provision that gave the power to the courts in Malaysia to order a deposition to be taken can be found in Order 39 Rule 1 of the Rules of Court 2012. The deposition process involves the examination of the person before a judicial officer in formal proceedings. During the course of the examination, the substance of the testimony will be recorded in the form of deposition which is then submitted to the registry and used as evidence at trial. There will be no restriction on the place where the deposition may be taken, whether in Malaysia or in another country.

72.    As for discovery, discovery is available against both parties to the proceedings and nonparties.  As to a party, it is a process in which a party may obtain from his opponent the production of documents relevant to the action or information thereof and specific answers to the facts in issue. It is designed to adduce relevant documentary evidence and to reduce the cost of litigation. The Court clearly has discretionary power under the Order 24 rule 3 of the Rules of Court 2012 to order discovery of any documents at any stage of the proceedings the order is necessary to dispose the matter fairly. Although Section 123 of the Evidence Act allows

government agencies to object to the production of any unpublished official records, the validity of that objection would be decided by the court in an enquiry of all the available evidence. Unless the court is satisfied that there exists a valid basis of assertion of the prohibition to produce the evidence, the evidence must be produced.

73.    Apart from Discovery, a party may also after the close of pleadings apply to the Court for leave or an order to serve the Interrogatories to the other party under Order 26 of the Rules of Court 2012. Written questions will be given to the other party relating to the matter in question between the two parties pertaining to the cause to see whether the party who interrogates can obtain an admission from his opponent whose answer will make the burden of proof easier than it otherwise would have been. Such Interrogatories are to be answered by way of affidavit pursuant to the order of the Court and failure to comply with such order may attract an order for committal.  Hence, Interrogatories are also a means of discovery by facts.

74.    Additionally, as evidenced by the Judgment of the High Court of Malaya, dated the 8th of September 2016, in *Wu Siying and 75 others v. Malaysian Airline System Berhad (in Administration), et al.* case, which I have reviewed, the High Court  has granted an Order for General Discovery against MAS and various Malaysian Governmental defendants to the seventy-six next-of-kin of passengers of Chinese, American and Indian origin. These Plaintiffs, I note from Exhibit A to the Declaration of Saranjit Singh Surjit Singh, have also instituted proceedings in the US.

75.    In addition, under Order 38 rule 14 Rules of Court 2012, witnesses can also be compelled to give evidence at trial by the issuance of subpoenas and for examination of a witness too is allowed at any stage of an action. The purpose of the subpoena is to secure the attendance

of a witness or anyone and even a minister is not exempted to give evidence for the party issuing the subpoena.

76.    Malaysian court procedures also allow parties to obtain discovery from non-parties. After a lawsuit has commenced, a party may apply to the court for discovery under Order 24, Rule 7A(2) of the Rules of Court, 2012, to obtain documents in the possession of a non-party. These applications are routinely granted when based upon a proper showing.

77.    The admissibility of evidence in Malaysia is governed by the Evidence Act 1950. The Evidence Act is a codification of the English Common Law principles on evidence. The Malaysian Evidence Act was adopted from the Indian Evidence Act. There are rich volumes of Indian cases and authorities that are referred to as guidance for the provisions under the Evidence Act apart from the Malaysia cases that have been developed in the last 55 years. There are numerous provisions that govern the admissibility of evidence under the Evidence Act. According to section 136 of the Evidence Act, the court shall admit evidence if it thinks that the fact, if proved, would be relevant, and not otherwise. Admissibility of evidence in Malaysia is therefore subjected to relevancy and proof and the court is well equipped under Section 165 of the Evidence Act to put any questions as it deems fit in order to determine the relevancy and admissibility of evidence.

78.    In Malaysian trial courts, fact and expert witnesses usually reduce their direct testimony to writing in the form of witness statements. The witnesses are called to the box to verify that the statement contains their testimony and to sign the statement. The opposing party is then permitted to cross-examine the witness.

79.    Finally, Malaysia is not a party to the Hague Evidence Convention and therefore the production of evidence from Malaysia would need to take place through the use of letters of request,[6] which are executed in Malaysia pursuant to Order 66, Rules of the High Court (2012).

80.    Similarly, letters of request are the typical method used by Malaysian courts to obtain evidence from abroad.   Where a foreign party voluntarily agrees to provide evidence requested by a Malaysian court, as I understand Boeing has committed to do if these cases are dismissed for *forum non conveniens*, then letters of request are not required.

**C.    Court Fees**

81.    In Malaysia, the constituent of Court fees are charges, disbursements, expenses and remuneration incurred or incidental to the proceedings and these are called Costs. Order 59 rule 2 of Rules of Court 2012 provides that costs of incidental proceedings in an action shall be in the discretion of the Court. The Court will invite the parties to submit on the issue of Costs to assist the Court in exercising its discretion.  The costs imposed on Plaintiffs by the Malaysian courts are reasonable and I do not expect that they would pose a significant bar to proceeding there, especially as almost all of the Plaintiffs have already commenced an action in Malaysia.

**D.    Appeals**

82.    In the course of the above pre-trial stages, parties to the action are at liberty to make interlocutory applications, such as for Summary Judgment, Striking Out or Further and Better Particulars.

83.    The matter will then proceed to trial.  Once judgment has been delivered, either or both parties to the action may appeal against the judgment of the High Court to the Court of Appeal. All judgments of the High Court are appealable to the Court of Appeal comprising of three

---

[6] I am advised that in the United States these are referred to as letters rogatory.

judges who preside over appeals from the High Court. A further appeal may be taken to the Federal

Court (the Final Court of Appeal), if leave is granted by the Federal Court on question(s) of law

raised for the first time or matters concerning general public importance. The leave panel consists

of three judges whilst the full appeal panel hearing the substantive appeal consists of five Federal

Court judges.  Post-trial appeals are typically resolved within one to two years.

## VII.    PUBLIC INTEREST

84.    In my opinion, Malaysia has a significant interest in this case.  These cases arise

from the disappearance of an aircraft leased, operated and maintained by Malaysia's national

airline, during a flight originating from Kuala Lumpur, Malaysia, over the high seas on an aircraft

registered under the Laws of Malaysia, and carrying 38 Malaysian citizens. MAS is governed by

the Malaysian regulators and the aircraft was inspected and certified by Malaysian regulators.  I

understand that the MAS aircrews were Malaysian citizens who received certification and pilot

training in Malaysia.

85.    Additionally, I am aware that Malaysia's civil aviation authority was charged with

the official investigation of the Accident.  I also understand that the Malaysian police conducted

their own independent investigation of the Accident.

86.    The safety of flights originating from Malaysia is also a major concern for the

Malaysian people.

87.    The Malaysian press has reported extensively on the loss of MH370, the

investigation, the search for the aircraft, and the related litigation pending in the High Court of

Malaya.

88.    Also, Malaysia has an obvious and considerable interest in the determination of

whether MAB is the successor in interest to MAS as alleged by nearly all of the plaintiffs in the

U.S. proceedings.  The administration of MAS and the creation of a new national airline was the subject of an Act of the Malaysian Parliament.  By means of the Malaysian Airline System Berhad (Administration) Act of 2015 (Act 765), which came into force on 20 February 2015, the Malaysian Government enacted "special laws for the administration of [MAS] . . . [and] to provide for the establishment of a new entity which will replace [MAS] as the national carrier."  *See* Act 765, at Preamble, a true and correct copy of which is attached hereto as **Exhibit C**.

89.    For all of these reasons set forth in paragraphs 84 through 88, Malaysia has a significant public interest in the regulation of commercial flights, aircraft and their components originating from or used within Malaysia's borders and the interpretation and application of an Act of Parliament relating to the administration of MAS and the creation of a new national airline.

## VIII.   CONCLUSION

90.    In my opinion, the government of Malaysia and the Malaysian people have a significant interest in the litigation surrounding the Accident being heard in Malaysia.  I believe that if such cases are filed in the Courts of Malaysia, they will receive significant attention because of the substantial interest in flight security from the public and the government.  Public attention to these cases will provide support to Malaysian judges for handling these cases carefully and appropriately.  This will support an efficient, fair and appropriate result without any improper or inappropriate influence.

91.    Based on my experience in the judicial and legal service and on the bench, I believe that the courts of Malaysia are the appropriate forum for cases related to the Accident.  I believe that the proceedings related to the Accident are best conducted in Malaysia by Malaysian parties, so that the Malaysian people may observe the proceedings and directly obtain any benefits and can be responsible for determining the cause of the Accident, which occurred on a Malaysian aircraft,

involving Malaysia's national carrier, which directly affect the interests of the citizens and residents of Malaysia.

92.     Based upon my legal experience and legal education, I am of the view that the courts of Malaysia are the forum that is proper, authoritative, competent and able to hear/determine the Plaintiffs' lawsuits arising from the Accident, and that the courts of Malaysia are able to deliver a fair and just decision on the lawsuit based upon the facts presented.

93.     In sum, I believe that the courts of Malaysia are an available, adequate and natural forum for the litigation arising from the Accident.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed in Putrajaya, Wilayah Persekutuan, Malaysia, on the 27th of September 2016

**TAN SRI DATO SERI ABDULL HAMID EMBONG**

# EXHIBIT A

## TO

## DECLARATION OF

## TAN SRI DATO SERI ABDULL HAMID EMBONG

## CURRICULUM VITAE OF TAN SRI DATO' SERI ABDULL HAMID EMBONG

### (RETIRED FEDERAL COURT JUDGE)

ADDRESS: 10, JALAN P14 A1/1, PRESINT 14, 62050 PUTRAJAYA, MALAYSIA

TEL. NO: +6012-5211300        EMAIL: hamidem@gmail.com

## EDUCATION

1962 – 1968 : Attended Secondary School at the Malay College Kuala Kangsar, Perak

1970 - 1976 : Attended Barristers' course at the Inns of Court London

1976 : Obtained a Degree of Utter Barrister from the Lincolns Inn London

## WORK PROFILE

1976 : Joined the Judicial and Legal Service as a Legal Officer with the Attorney General's Department

1976 : Appointed as First Class Magistrate in the Magistrates Court in Terengganu

1977 : Appointed as Senior Assistant Registrar to Justice Syed Agil Barakbah at the High Court Alor Setar (Research Officer to the Judge)

1978 : Appointed as Federal Counsel at Public Service Department, Negotiations Division (dealing with anomalies in wages and terms of service of public officers)

1980 :  Appointed as Deputy Public Prosecutor Penang High Court

1981 : Deputy Solicitor General at the Federal Treasury (handling negotiations for loans and legal documentations)

1983 : Legal Advisor at the Ministry of Land and Regional Development (advisor to the Ministry on all legal matters relating to land)

1988 : Deputy Public Prosecutor with the Custom and Excise Department (prosecuting cases investigated by the department and advisory capacity in tax matters)

1989 : Senior Federal Counsel at the Economic Planning Unit  at the Prime Minister's Department (dealing primarily in privatisation matters)

1989 : Legal Advisor to the State of Negeri Sembilan (legal advisor to the State government including drafting of laws and state enactments)

1990 : Legal Advisor to the State of Pahang (legal advisor to the State government including drafting of laws and state enactments)

1992 : Legal Advisor to the Ministry of Home Affairs (legal advisor to the Ministry on all legal matters including the drafting of laws)

1994 : Appointed as Judicial Commissioner at Ipoh High Court

1996 : Appointed as a Judge of the High Court Malaya

2004 :  Appointed as a Judge of the Criminal Court in Kuala Lumpur

2006 : Appointed as a Judge of the Court of Appeal Malaysia

2009 : Appointed as Judge of the Federal Court Malaysia

12 February 2016 : Retired as Judge of the Federal Court Malaysia

## BOARD AND COMMISSION MEMBERSHIP:

1.  A member of the Board of Governors of the Malay College Kuala Kangsar since 2012.

2.  Was a member of the Special Court established under Article 182 of the Federal Constitution to hear cases involving the Malay Rulers.

3.  Was a member of the Judicial Appointment Commission from 2011 till 2015, i.e. a statutory commission to decide on the appointment and promotion of superior courts judges at all levels.

4.  Was a member of the Judicial and Legal Service Commission 2010 until 2014, i.e. a commission established under the Federal Constitution to appoint, confirm and promote all legal officers in the Government service.

5.  A member of the Advisory Editorial Board of the Malaysian Current Law Journal since 2012 until today.

6.  Vice President of the ASEAN Law Association Malaysian Chapter from 2012 until March 2016.

7.  Managing Judge for the states of Perak and Selangor from 2009 until retirement (i.e. responsible for the management and monitoring of all case files).

8.  Appointed as a member of the Executive Council of the International Centre for Law and Legal Studies (I Cells, i.e. a legal research and capacity building unit in the Attorney General's Chambers) since 30 March, 2016.

## JUDGEMENTS AND PUBLICATIONS:

306 judgements and opinions have been delivered at the High Court, Court of Appeal and Federal Court in a span of 21 years on the Bench involving all areas of both criminal law and civil law including torts, contracts, administrative law, corporate and banking law, land law, insurance law, maritime law, environmental law and family law. Also the interpretations of various provisions of the Federal Constitution of Malaysia. These judgements are published by various law journals in Malaysia.

## COURSES, SEMINARS AND CONFERENCE PARTICIPATION:

1.  Top Management course by the Asian Institute of Management (AIM) Manila, 1987.

2.  DNA Profiling Seminar by Judicial and Legal Training Institute (ILKAP), 1995.

3.  International Conference of Presidents of the Supreme Courts of the World, Abu Dhabi 2008.

4.  Securities Commission Seminar on the Capital Market, 2008.

5.  Seminar on Judicial Remedies and Incentive for Economic Development in a Market Economy, 2009.

6.  International Conference of Jurists, London, June 2009.

7.  Seminar on Syariah and Legal Aspect of Islamic Finance at the Federal Court, Putrajaya, 2009.

8.  Knowledge Enhancement Programme for the Judiciary by the Human Rights Commission, Malaysia, 2009.

9.  Malaysian Capital Market Seminar, 2011.

10. ASEAN Chief Justices Conference, Bali 2011.

11. Asian Judges Symposium on the Environment, Manila 2013 (paper presenter).

12. Symposium on Wildlife Crime Enforcement, Bangkok 2013 (paper presenter).

13. First Asia Pacific International Colloquium on Environmental Justice, Governance and Law, Putrajaya, December 2013 (presented paper entitled "Perspective of Accountability, Transparency and Liability in the Context of Environmental Rule of Law").

14. National Seminar on Environmental Justice, Belum, Perak, October 2015 (presented paper entitled "Environmental Justice in Malaysia: Issues and Challenges").

15. Malaysian Legal Corporate Conference-Appellate Advocacy-Kuala Lumpur, 2015 (presented keynote paper entitled "Modern Appellate Advocacy").

## BOARD APPOINTMENTS:

Director in Board of Director of Ancom Berhad (Public listed company specialising in agricultural, industrial and petrochemical products)

Date: 1 March 2016 - Current

## PERSONAL DATA:

Date of Birth      :      ███ ███ 1949

Place of Birth     :      Kuala Terengganu, Malaysia

Languages          :      Malay and English

Marital Status     :      Married to ███████████████████

Children           :      - ███████████████

                          - ███████████████

# EXHIBIT B

## TO

## DECLARATION OF

## TAN SRI DATO SERI ABDULL HAMID EMBONG



067e fm  Page 1  Friday, March 31, 2006  4:11 PM





# LAWS OF MALAYSIA

## REPRINT

## Act 67

# CIVIL LAW ACT 1956

*Incorporating all amendments up to 1 January 2006*

PUBLISHED BY
THE COMMISSIONER OF LAW REVISION, MALAYSIA
UNDER THE AUTHORITY OF THE REVISION OF LAWS ACT 1968
IN COLLABORATION WITH MALAYAN LAW JOURNAL SDN BHD AND
PERCETAKAN NASIONAL MALAYSIA BHD
**2006**







067e fm  Page 2  Friday, March 31, 2006  4:11 PM

2

# CIVIL LAW ACT 1956

First enacted   …   …   …   …   …   …   1956 (Ordinance No. 5 of 1956)

Revised   …   …   …   …   …   …   …   1972 (Act 67 w.e.f. 1 April 1972)

*PREVIOUS REPRINTS*

*First Reprint*   …   …   …   …   …   *1993*

*Second Reprint*   …   …   …   …   *1999*


PREPARED FOR PUBLICATION BY
MALAYAN LAW JOURNAL SDN BHD
AND PRINTED BY
PERCETAKAN NASIONAL MALAYSIA BERHAD
KUALA LUMPUR BRANCH
2006


3

# LAWS OF MALAYSIA

## Act 67

## CIVIL LAW ACT 1956

### ARRANGEMENT OF SECTIONS

#### PART I

#### PRELIMINARY

Section

1.    Short title

2.    Interpretation

#### PART II

#### GENERAL

3.    Application of U.K. common law, rules of equity and certain statutes

4.    Administration of insolvent estates, and winding up of companies

5.    Application of English law in commercial matters

6.    Immovable property

#### PART III

#### FATAL ACCIDENTS AND SURVIVAL
#### OF CAUSES OF ACTION

7.    Compensation to the family of a person for loss occasioned by his death

8.    Effect of death on certain causes of action

#### PART IV

#### TORTFEASORS AND AWARD OF INTEREST

9.    (*Deleted*)

10.   Proceedings against, and contribution between, joint and several tortfeasors

11.   Power of Courts to award interest on debts and damages

  


4                    *Laws of Malaysia*                    **ACT 67**

PART V

CONTRIBUTORY NEGLIGENCE AND
COMMON EMPLOYMENT

**Section**

12.    Apportionment of liability in case of contributory negligence

13.    Saving for Merchant Shipping Ordinance 1952

14.    Common employment

PART VI

FRUSTRATED CONTRACTS

15.    Adjustment of rights and liabilities of parties to frustrated contracts

16.    Provisions as to application of section 15

PART VIA

APPORTIONMENT

16A.    Interpretation

16B.    Rents, *etc.*, to accrue from day to day

16C.    Apportioned part of rent, *etc.*, to be payable when next entire portion due

16D.    Remedies for recovering apportioned parts

16E.    Exclusion of policies of assurance

16F.    Exclusion by express stipulation

16G.    Validation of past apportionments

PART VII

DISPOSAL AND DEVOLUTION OF PROPERTY

17.    General restrictions on accumulation of income

18.    Qualification of restrictions on accumulation

19.    Restriction on accumulation for the purchase of land

20.    Validation of appointments where objects are excluded or take illusory shares

21.    Executor deemed to be trustee for person entitled to residue on intestacy

22.    Charges on property of deceased to be paid primarily out of the property charged

   



067e fm  Page 5  Friday, March 31, 2006  4:11 PM

*Civil Law*                     5

Section

23.   Moneys payable under policy of assurance not to form part of the estate of the insured

24.   *Bona vacantia*

25.   Saving

PART VIII

MISCELLANEOUS

26.   Agreement by way of gaming or wagering to be null and void

27.   Infants

28.   No person chargeable with rent *bona fide* paid to holder under defective title

28A.  Damages in respect of personal injury

29.   Repeal

      FIRST SCHEDULE

      SECOND SCHEDULE

067e.fm  Page 7  Friday, March 31, 2006  4:11 PM

7

# LAWS OF MALAYSIA

## Act 67

## CIVIL LAW ACT 1956

An Act relating to the civil law to be administered in Malaysia.

*[Peninsular Malaysia—7 April 1956;*
*Sabah and Sarawak—1 April 1972, P.U.(A)424/1971]*

PART I

PRELIMINARY

**Short title**

**1.** This Act may be cited as the Civil Law Act 1956.

**Interpretation**

**2.** In this Act unless the context otherwise requires—

"Court" means any court in Malaysia of competent jurisdiction, and includes any Judge thereof whether sitting in court or in chambers;

"executor" means the executor or administrator of a deceased person, and includes, as regards any obligation, any person who takes possession of or intermeddles with the property of a deceased person;

"written law" in relation to any part of Malaysia means written law as defined in the law relating to interpretation in that part of Malaysia.

PART II

GENERAL

**Application of U.K. common law, rules of equity and certain statutes**

**3.** (1) Save so far as other provision has been made or may hereafter be made by any written law in force in Malaysia, the Court shall—

067e fm  Page 8  Friday, March 31, 2006  4:11 PM

8          *Laws of Malaysia*          **ACT 67**

    *(a)*    in Peninsular Malaysia or any part thereof, apply the common law of England and the rules of equity as administered in England on the 7 April 1956;

    *(b)*    in Sabah, apply the common law of England and the rules of equity, together with statutes of general application, as administered or in force in England on 1 December 1951;

    *(c)*    in Sarawak, apply the common law of England and the rules of equity, together with statutes of general application, as administered or in force in England on 12 December 1949, subject however to subparagraph (3)(ii):

Provided always that the said common law, rules of equity and statutes of general application shall be applied so far only as the circumstances of the States of Malaysia and their respective inhabitants permit and subject to such qualifications as local circumstances render necessary.

(2)   Subject to the express provisions of this Act or any other written law in force in Malaysia or any part thereof, in the event of conflict or variance between the common law and the rules of equity with reference to the same matter, the rules of equity shall prevail.

(3)   Without prejudice to the generality of paragraphs (1)*(b)* and *(c)* and notwithstanding paragraph (1)*(c)*—

    (i)    it is hereby declared that proceedings of a nature such as in England are taken on the Crown side of the Queen's Bench Division of the High Court by way of habeas corpus or for an order of mandamus, an order of prohibition, an order of certiorari or for an injunction restraining any person who acts in an office in which he is not entitled to act, shall be available in Sabah to the same extent and for the like objects and purposes as they are available in England;

    (ii)   the Acts of Parliament of the United Kingdom applied to Sarawak under sections 3 and 4 of the Application of Laws Ordinance of Sarawak [*Cap. 2*] and specified in the Second Schedule of this Act shall, to the extent specified in the second column of the said Schedule, continue in force in Sarawak with such formal

067e fm  Page 9  Friday, March 31, 2006  4:11 PM

*Civil Law*                                                                      9

alterations and amendments as may be necessary to make the same applicable to the circumstances of Sarawak and, in particular, subject to the modifications set out in the third column of the said Schedule.

## Administration of insolvent estates, and winding up of companies

**4.** (1) In the administration by any Court of the assets of any deceased person whose estate proves to be insufficient for the payment in full of his debts and liabilities, and in the winding up of any company under any law from time to time in force relating to companies, whose assets prove to be insufficient for the payment of its debts and liabilities, and the costs of winding up, the same rules shall prevail and be observed, as to the respective rights of secured and unsecured creditors, and as to debts and liabilities provable, and as to the valuation of annuities and future and contingent liabilities respectively, as are in force for the time being, under the law of bankruptcy, with respect to the estates of persons adjudged bankrupt.

(2) All persons who, in any such case, would be entitled to prove for and receive dividends, out of the estate of any such deceased person, or out of the assets of any such company, may come in under the decree or order for the administration of the estate, or under the winding up of the company, and make such claims against the same as they may respectively be entitled to by virtue of this Act.

(3) Any absolute assignment, by writing, under the hand of the assignor, not purporting to be by way of charge only, of any debt or other legal chose in action, of which express notice in writing has been given to the debtor, trustee or other person from whom the assignor would have been entitled to receive or claim the debt or chose in action, shall be, and be deemed to have been, effectual in law, subject to all equities which would have been entitled to priority over the right of the assignee under the law as it existed in the State before the date of the coming into force of this Act, to pass and transfer the legal right to the debt or chose in action, from the date of the notice, and all legal and other remedies for the same, and the power to give a good discharge for the same, without the concurrence of the assignor.

067e.fm  Page 10  Friday, March 31, 2006  4:11 PM

10 *Laws of Malaysia* **ACT 67**

**Application of English law in commercial matters**

**5.**   (1)   In all questions or issues which arise or which have to be decided in the States of Peninsular Malaysia other than Malacca and Penang with respect to the law of partnerships, corporations, banks and banking, principals and agents, carriers by air, land and sea, marine insurance, average, life and fire insurance, and with respect to mercantile law generally, the law to be administered shall be the same as would be administered in England in the like case at the date of the coming into force of this Act, if such question or issue had arisen or had to be decided in England, unless in any case other provision is or shall be made by any written law.

   (2)   In all questions or issues which arise or which have to be decided in the States of Malacca, Penang, Sabah and Sarawak with respect to the law concerning any of the matters referred to in subsection (1), the law to be administered shall be the same as would be administered in England in the like case at the corresponding period, if such question or issue had arisen or had to be decided in England, unless in any case other provision is or shall be made by any written law.

**Immovable property**

**6.**   Nothing in this Part shall be taken to introduce into Malaysia or any of the States comprised therein any part of the law of England relating to the tenure or conveyance or assurance of or succession to any immovable property or any estate, right or interest therein.

PART  III

FATAL ACCIDENTS AND SURVIVAL
OF CAUSES OF ACTION

**Compensation to the family of a person for loss occasioned by his death**

**7.**   (1)   Whenever the death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the party who would have been liable if death had not ensued shall be

*Civil Law*                                                   11

liable to an action for damages, notwithstanding the death of the person injured, and although the death has been caused under such circumstances as amount in law to an offence under the Penal Code [*Act 574*].

(2) Every such action shall be for the benefit of the wife, husband, parent, and child, if any, of the person whose death has been so caused and shall be brought by and in the name of the executor of the person deceased.

(3) The damages which the party who shall be liable under subsection (1) to pay to the party for whom and for whose benefit the action is brought shall, subject to this section, be such as will compensate the party for whom and for whose benefit the action is brought for any loss of support suffered together with any reasonable expenses incurred as a result of the wrongful act, neglect or default of the party liable under subsection (1):

Provided that—

(i) in assessing the damages there shall not be taken into account—

(a) any sum paid or payable on the death of the person deceased under any contract of assurance or insurance, whether made before or after the coming into force of this Act;

(b) any sum payable, as a result of the death, under any written law relating to employees' provident fund;

(c) any pension or gratuity, which has been or will or may be paid as a result of the death; or

(d) any sum which has been or will or may be paid under any written law relating to the payment of any benefit or compensation whatsoever, in respect of the death;

(ii) damages may be awarded in respect of the funeral expenses of the person deceased if such expenses have been incurred by the party for whose benefit the action is brought;

(iii) no damages shall be awarded to a parent on the ground only of his having been deprived of the services of a child; and no damages shall be awarded to a husband

12              *Laws of Malaysia*              **ACT 67**

on the ground only of his having been deprived of the services or society of his wife; and

(iv) in assessing the loss of earnings in respect of any period after the death of a person where such earnings provide for or contribute to the damages under this section the Court shall—

  (a) take into account that where the person deceased has attained the age of fifty five years at the time of his death, his loss of earnings for any period after his death shall not be taken into consideration; and in the case of any other person deceased, his loss of earnings for any period after his death shall be taken into consideration if it is proved or admitted that the person deceased was in good health but for the injury that caused his death and was receiving earnings by his own labour or other gainful activity prior to his death;

  (b) take into account only the amount relating to the earnings as aforesaid and the Court shall not take into account any prospect of the earnings as aforesaid being increased at any period after the person's death;

  (c) take into account any diminution of any such amount as aforesaid by such sum as is proved or admitted to be the living expenses of the person deceased at the time of his death;

  (d) take into account that in the case of a person who was of the age of thirty years and below at the time of his death, the number of years' purchase shall be 16; and in the case of any other person who was of the age range extending between thirty one years and fifty four years at the time of his death, the number of years' purchase shall be calculated by using the figure 55, minus the age of the person at the time of death and dividing the remainder by the figure 2.

(3A) An action under this section may consist of or include a claim for damages for bereavement and, subject to subsection (3D), the sum to be awarded as damages under this subsection shall be ten thousand ringgit.

*Civil Law*                                                                 13

(3B)  A claim for damages for bereavement shall only be for the benefit—

   *(a)*   of the spouse of the person deceased; and

   *(b)*   where the person deceased was a minor and never married, of his parents.

(3C)  Where there is a claim for damages under paragraph (3B)*(b)* for the benefit of the parents of the person deceased, the sum awarded shall be divided equally between them subject to any deduction likely to be made in respect of all costs and expenses including costs not recovered from the defendant.

(3D)  The Yang di-Pertuan Agong may from time to time by order published in the *Gazette* vary the sum specified in subsection (3A).

(3E)  An order made under subsection (3D) shall be published in the *Gazette* and as soon as possible thereafter, shall be laid before the Dewan Rakyat; and if the Dewan Rakyat passes a resolution annulling the order, it shall be void but without prejudice to the validity of anything previously done thereunder or to the making of a new order as from the date of notification in the *Gazette* of the passing of the resolution.

(4)  The amount, other than the amount awarded under proviso (iii) to subsection (3) and the amount recovered under paragraph (3B)*(b)*, so recovered after deducting all costs and expenses, including the costs not recovered from the defendant, shall be divided amongst the before-mentioned parties, or any of them in such shares as the Court by its judgment or decree directs.

(5)  Not more than one action shall be brought for and in respect of the same subject matter of complaint, and every such action shall be brought within three years after the death of the person deceased.

(6)  In any such action the executor of the deceased may insert a claim for and recover any pecuniary loss to the estate of the deceased occasioned by the wrongful act, neglect, or default, which sum when recovered shall be deemed part of the assets of the estate of the deceased.

(7)  The plaint or writ or summons in any such action shall give full particulars of the person or persons for whom or on

14                    *Laws of Malaysia*                    **ACT 67**

whose behalf the action is brought, and of the nature of the claim in respect of which damages are sought to be recovered.

(8)  If there is no executor of the person deceased or there being an executor no action as in this section mentioned has, within six calendar months after the death of the person deceased, been brought by the executor, the action may be brought by all or any of the persons, if more than one, for whose benefit the action would have been brought if it had been brought by the executor, and every action so to be brought shall be for the benefit of the same person or persons and shall be subject to the same procedure as nearly as may be as if it was brought by the executor.

(9)  It shall be sufficient for any defendant in any action brought under this section to pay any money, he is advised to pay into Court as a compensation, in one sum to all persons entitled under this section for his wrongful act, neglect or default without specifying the shares into which it is to be divided.

(10)  If the said sum is not accepted and an issue is taken by the plaintiff as to its sufficiency and the Court thinks the same sufficient, the defendant shall be entitled to judgment upon that issue.

(11)  In this section unless the context otherwise requires—

"child" includes son, daughter, grandson, granddaughter, stepson and stepdaughter;

"parent" includes father, mother, grandfather and grandmother;

"pension" includes a return of contributions and any payment of a lump sum in respect of a person's employment:

Provided that in deducing any relationship referred to in this subsection any illegitimate person or any person who has been adopted, or whose adoption has been registered, in accordance with any written law shall be treated as being or as having been the legitimate offspring of his mother and reputed father or, as the case may be, of his adopters.

**Effect of death on certain causes of action**

**8.**    (1)   Subject to this section, on death of any person all causes of action subsisting against or vested in him shall survive against, or, as the case may be, for the benefit of, his estate:

Case 1:16-mc-01184-KBJ    Document 37-12    Filed 10/01/16    Page 51 of 107

Provided that this subsection shall not apply to causes of action for defamation or seduction or for inducing one spouse to leave or remain apart from the other or to any claim for damages on the ground of adultery.

(2)  Where a cause of action survives as aforesaid for the benefit of the estate of a deceased person, the damages recoverable for the benefit of the estate of that person—

    *(a)*    shall not include any exemplary damages, any damages for bereavement made under subsection 7(3A), any damages for loss of expectation of life and any damages for loss of earnings in respect of any period after that person's death;

    *(b)*    in the case of a breach of promise to marry shall be limited to such damage, if any, to the estate of that person as flows from the breach of promise to marry; and

    *(c)*    where the death of that person has been caused by the act or omission which gives rise to the cause of action, shall be calculated without reference to any loss or gain to his estate consequent on his death, except that a sum in respect of funeral expenses may be included.

(3)  No proceedings shall be maintainable in respect of a cause of action in tort which by virtue of this section has survived against the estate of a deceased person, unless proceedings against him in respect of that cause of action either—

    *(a)*    were pending at the date of his death; or

    *(b)*    are taken not later than six months after his personal representative took out representation.

(4)  Where damage has been suffered by reason of any act or omission in respect of which a cause of action would have subsisted against any person if that person had not died before or at the same time as the damage was suffered, there shall be deemed, for the purposes of this section, to have been subsisting against him before his death such cause of action in respect of that act or omission as would have subsisted if he had died after the damage was suffered.

(5)  The rights conferred by this section for the benefit of the estate of deceased persons shall be in addition to and not in

16 *Laws of Malaysia* **ACT 67**

derogation of any rights conferred on the dependants of deceased persons by section 7 and so much of this section as relates to causes of action against the estates of deceased persons shall apply in relation to causes of action under the said section as it applies in relation to other causes of action not expressly excepted from the operation of subsection (1).

(6)  In the event of the insolvency of an estate against which proceedings are maintainable by virtue of this section, any liability in respect of the cause of action in respect of which the proceedings are maintainable shall be deemed to be a debt provable in the administration of the estate, notwithstanding that it is a demand in the nature of unliquidated damages arising otherwise than by a contract, promise or breach of trust.

PART IV

TORTFEASORS AND AWARD OF INTEREST

**9.**    (*Deleted by Ordinance No. 36 of 1957*).

**Proceedings against, and contribution between, joint and several tortfeasors**

**10.**  (1)  Where damage is suffered by any person as a result of a tort (whether a crime or not)—

> (*a*)    judgment recovered against any tortfeasor liable in respect of that damage shall not be a bar to an action against any other person who would, if sued, have been liable as a joint tortfeasor in respect of the same damage;

> (*b*)    if more than one action is brought in respect of that damage by or on behalf of the person by whom it was suffered, or for the benefit of the estate, or of the wife, husband, parent or child, of that person, against tortfeasors liable in respect of the damage (whether as joint tortfeasors or otherwise) the sums recoverable under the judgments given in those actions by way of damages shall not in the aggregate exceed the amount of the damages awarded by the judgment first given; and in any of those actions, other than that in which judgment is first given, the plaintiff shall not be entitled to costs unless the Court is of opinion that there was reasonable ground for bringing the action;

*(c)* any tortfeasor liable in respect of that damage may recover contribution from any other tortfeasor who is, or would if sued have been, liable in respect of the same damage, whether as a joint tortfeasor or otherwise, so, however, that no person shall be entitled to recover contribution under this section from any person entitled to be indemnified by him in respect of the liability in respect of which the contribution is sought.

(2)  In any proceedings for contribution under this section the amount of the contribution recoverable from any person shall be such as may be found by the Court to be just and equitable having regard to the extent of that person's responsibility for the damage, and the Court shall have power to exempt any person from liability to make contribution, or to direct that the contribution to be recovered from any person shall amount to a complete indemnity.

(3)  For the purpose of this section—

*(a)* the expressions "parent" and "child" have the same meanings as they have for the purposes of section 7; and

*(b)* the reference in paragraph (1)*(b)*  to "the judgment first given" shall, in a case where that judgment is reversed on appeal, be construed as a reference to the judgment first given which is not so reversed and, in a case where a judgment is varied on appeal, be construed as a reference to that judgment as so varied.

(4)  Nothing in this section shall—

*(a)* affect any criminal proceedings against any person in respect of any wrongful act; or

*(b)* render enforceable any agreement for indemnity which would not have been enforceable if this section had not been enacted.

**Power of Courts to award interest on debts and damages**

**11.**  In any proceedings tried in any Court for the recovery of any debt or damages, the Court may, if it thinks fit, order that there shall be included in the sum for which judgment is given interest

18          *Laws of Malaysia*          **ACT 67**

as such rate as it thinks fit on the whole or any part of the debt or damages for the whole or any part of the period between the date when the cause of action arose and the date of the judgment:

Provided that nothing in this section—

(a)   shall authorize the giving of interest upon interest;

(b)   shall apply in relation to any debt upon which interest is payable as of right whether by virtue of any agreement or otherwise; or

(c)   shall affect the damages recoverable for the dishonour of a bill of exchange.

PART V

CONTRIBUTORY NEGLIGENCE AND
COMMON EMPLOYMENT

**Apportionment of liability in case of contributory negligence**

**12.** (1)   Where any person suffers damage as the result partly of his own fault and partly of the fault of any other person, a claim in respect of that damage shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof shall be reduced to such extent as the Court thinks just and equitable having regard to the claimant's share in the responsibility for the damage:

Provided that—

(a)   this subsection shall not operate to defeat any defence arising under a contract; and

(b)   where any contract or written law providing for the limitation of liability is applicable to the claim the amount of damages recoverable by the claimant by virtue of this subsection shall not exceed the maximum limit so applicable.

(2)   Where damages are recoverable by any person by virtue of the foregoing subsection subject to such reduction as is therein mentioned, the Court shall find and record the total damages which would have been recoverable if the claimant had not been at fault.

*Civil Law*                                              19

(3)  Section 10 shall apply in any case where two or more persons are liable or would, if they had all been sued, be liable by virtue of subsection (1) in respect of the damage suffered by any person.

(4)  Where any person dies as the result partly of his own fault and partly of the fault of any other person or persons, and accordingly if an action were brought for the benefit of the estate under section 8, the damages recoverable would be reduced under subsection (1), any damages recoverable in any action brought for the benefit of the dependants of that person under section 7 or for the benefit of the husband of that person under proviso (iii) of subsection 7(3) or of the spouse or parents under subsection 7(3B) shall be reduced to a proportionate extent.

(5)  Where in any case to which subsection (1) applies, one of the persons at fault avoids liability to any other such person or his personal representative by pleading the Limitation Act 1953 [*Act 254*], or any other written law limiting the time within which proceedings may be taken, he shall not be entitled to recover any damages or contributions from that other person or representative by virtue of the said subsection.

(6)  In this section "fault" means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this Act, give rise to the defence of contributory negligence.

## Saving for Merchant Shipping Ordinance 1952

**13.**  (1)  Section 12 shall not apply to any claims to which section 513 of the Merchant Shipping Ordinance 1952 [*Ord. No. 70 of 1952*], or the corresponding provisions of any other law apply and those provisions shall have effect as if this Act had not been passed.

(2)  The provisions mentioned in subsection (1) shall not apply to any case where the acts or omissions giving rise to the claim occurred before the coming into force of this Act.

## Common employment

**14.**  (1)  It shall not be a defence to an employer who is sued in respect of personal injuries caused by the negligence of a person

20                    *Laws of Malaysia*                    **ACT 67**

employed by him, that that person was at the time the injuries were caused in common employment with the person injured.

(2)  Any provision contained in a contract of service or apprenticeship, or in an agreement collateral thereto (including a contract or agreement entered into before the coming into force of this Act) shall be void so far as it would have the effect of excluding or limiting any liability of the employer in respect of personal injuries caused to the person employed or apprenticed by the negligence of persons in common employment with him.

(3)  For the purpose of this section "personal injury" includes any disease and any impairment of a person's physical or mental condition, and the expression "injured" shall be construed accordingly.

PART VI

FRUSTRATED CONTRACTS

**Adjustment of rights and liabilities of parties to frustrated contracts**

**15.**  (1)  Where a contract has become impossible of performance or been otherwise frustrated, and the parties thereto have for that reason been discharged from the further performance of the contract, subsections (2) to (6) shall, subject to section 16, have effect in relation thereto.

(2)  All sums paid or payable to any party in pursuance of the contract before the time when the parties were so discharged (in this Act referred to as "the time of discharge") shall, in the case of sums so paid, be recoverable from him as money received by him for the use of the party by whom the sums were paid, and, in the case of sums so payable, cease to be so payable:

Provided that, if the party to whom the sums were so paid or payable incurred expenses before the time of discharge in, or for the purpose of, the performance of the contract, the Court may, if it considers it just to do so having regard to all the circumstances of the case, allow him to retain or, as the case may be, recover the whole or any part of the sums so paid or payable, not being an amount in excess of the expenses so incurred.

067e fm  Page 21  Friday, March 31, 2006  4:11 PM

*Civil Law* 21

(3)   Where any party to the contract has, by reason of anything done by any other party thereto in, or for the purpose of, the performance of the contract, obtained a valuable benefit (other than a payment of money to which subsection (2) applies) before the time of discharge, there shall be recoverable from him by the said other party such sum (if any), not exceeding the value of the said benefit to the party obtaining it, as the Court considers just, having regard to all the circumstances of the case and, in particular—

(a)   the amount of any expenses incurred before the time of discharge by the party benefited in, or for the purpose of, the performance of the contract, including any sums paid or payable by him to any other party in pursuance of the contract and retained or recoverable by that party under subsection (2); and

(b)   the effect, in relation to the said benefit, of the circumstances giving rise to the frustration of the contract.

(4)   In estimating, for the purposes of subsections (1) to (3), the amount of any expenses incurred by any party to the contract, the Court may, without prejudice to the generality of the said subsections, include such sum as appears to be reasonable in respect of overhead expenses and in respect of any work or services performed personally by the said party.

(5)   In considering whether any sum ought to be recovered or retained under subsections (1) to (4) by any party to the contract the Court shall not take into account any sums which have, by reason of the circumstances giving rise to the frustration of the contract, become payable to that party under any contract of insurance unless there was an obligation to insure imposed by an express term of the frustrated contract or by or under any enactment.

(6)   Where any person has assumed obligations under the contract in consideration of the conferring of a benefit by any other party to the contract upon any other person, whether a party to the contract or not, the Court may, if in all the circumstances of the case it considers it just to do so, treat for the purposes of subsection (3) any benefit so conferred as a benefit obtained by the person who has assumed the obligations as aforesaid.

067e.fm  Page 22  Friday, March 31, 2006  4:11 PM

22          *Laws of Malaysia*          **ACT 67**

**Provisions as to application of section 15**

**16.** (1)  Section 15 shall apply to contracts whether made before or after the coming into force of this Act.

(2)  Section 15 shall apply to contracts to which the Government is a party in like manner as to contracts between subjects.

(3)  Where any contract to which section 15 applies contains any provisions which, upon the true construction of the contract, is intended to have effect in the event of circumstances arising which operate, or would but for the said provision operate, to frustrate the contract, or is intended to have effect whether those circumstances arise or not, the Court shall give effect to the said provision and shall only give effect to section 15 to such extent, if any, as appears to the Court to be consistent with the said provision.

(4)  Where it appears to the Court that a part of any contract to which section 15 applies can properly be severed from the remainder of the contract, being a part wholly performed before the time of discharge, or so performed except for the payment in respect of that part of the contract of sums which are or can be ascertained under the contract, the Court shall treat that part of the contract as if it were a separate contract and had not been frustrated and shall treat section 15 as only applicable to the remainder of that contract.

(5)  Section 15 shall not apply—

    *(a)*  to any charterparty, except a time charterparty or a charterparty by way of demise, or to any contract (other than a charterparty) or the corresponding provisions of any written law for the carriage of goods by sea;

    *(b)*  to any contract of insurance, save as is provided by subsection (5) thereof; or

    *(c)*  to any contract to which section 7 of the Sale of Goods Act 1893 of the United Kingdom [*56 and 57 Vict.c.71*] (which avoids contracts for the sale of specific goods which perish before the risk has passed to the buyer) or the corresponding provisions of any written law applies, or to any other contract for the sale, or for the

067e.fm  Page 23  Friday, March 31, 2006  4:11 PM

*Civil Law*                                           23

sale and delivery, of specific goods, where the contract is frustrated by reason of the fact that the goods have perished.

PART VIA

APPORTIONMENT

**Interpretation**

16A. In this Part, unless the context otherwise requires—

"annuities" includes salaries and pensions;

"dividends" includes (besides dividends strictly so called) all payments made by the name of dividend, bonus, or otherwise out of the revenue of trading or other public companies, divisible between all or any of the members of the respective companies, whether the payments are usually made or declared at any fixed times or otherwise; and all such divisible revenue shall, for the purposes of this Part, be deemed to have accrued by equal daily increment during and within the period for or in respect of which the payment of the same revenue is declared or expressed to be made, but the said word "dividends" does not include payments in the nature of a return or reimbursement of capital;

"rents" includes all periodical payments or renderings in lieu of or in the nature of rent but does not include rent payable to the State Authority (that is to say, payments of the nature included in the definition of "rent" in the National Land Code [*Act 56 of 1965*]) in respect of alienated land (as so defined).

**Rents, *etc.*, to accrue from day to day**

16B. All rents, annuities, dividends, and other periodical payments in the nature of income (whether reserved or made payable under an instrument in writing or otherwise) shall, like interest on money lent, be considered as accruing from day to day, and shall be apportionable in respect of time accordingly.

**Apportioned part of rent, *etc.*, to be payable when the next entire portion due**

16C. The apportioned part of any such rent, annuity, dividend, or other payment shall be payable or recoverable, in the case of a

24              *Laws of Malaysia*              **ACT 67**

continuing rent, annuity, or other such payment, when the entire portion of which such apportioned part forms part becomes due and payable, and not before; and in the case of a rent, annuity, or other such payment determined by re-entry, death, or otherwise, when the next entire portion of the same would have been payable if the same had not so determined, and not before.

**Remedies for recovering apportioned parts**

**16D.** All persons and their respective executors, administrators, and assigns, and also the executors, administrators, and assigns respectively of persons whose interest determine with their own deaths, shall have such or the same remedies for recovering such apportioned parts as aforesaid when payable (allowing proportionate parts of all just allowances) as they respectively would have had for recovering such entire portions as aforesaid if entitled thereto respectively:

Provided that persons liable to pay rents reserved out of or charged on lands or tenements, and the same lands or tenements, shall not be resorted to for any such apportioned part forming part of an entire or continuing rent as aforesaid specifically, but the entire or continuing rent, including such apportioned part, shall be recovered and received by the person who, if the rent had not been apportionable under this Part or otherwise, would have been entitled to such entire or continuing rent, and such apportioned part shall be recoverable from the person by the executors or other parties entitled under this Part to the same by suit.

**Exclusion of policies of assurance**

**16E.** Nothing in this Part shall render apportionable any annual sums made payable in policies of assurance of any description.

**Exclusion by express stipulation**

**16F.** This Part shall not extend to any case in which it may be expressly stipulated that no apportionment shall take place.

**Validation of past apportionments**

**16G.** No payment, composition, discharge or settlement of account made or given prior to 28 December 1928, in Malacca or

*Civil Law*                    25

Penang, or to the commencement of this Part in other States shall be deemed invalid by reason only of the fact that it was made or given in pursuance of the apportionment of a periodical payment not lawfully apportionable, if the apportionment would have been lawful, had it been made after the aforesaid date and under this Part.

PART VII

DISPOSAL AND DEVOLUTION OF PROPERTY

**General restrictions on accumulation of income**

**17.** (1)  No person may by any instrument or otherwise settle or dispose of any property in such manner that the income thereof shall, save as hereinafter mentioned, be wholly or partially accumulated for any longer period than one of the following:

    *(a)*  the life of the grantor or settlor;

    *(b)*  a term of eighteen years from the death of the grantor, or settlor;

    *(c)*  the duration of the minority or respective minorities of any person living or *en ventre sa mere* at the death of the grantor or settlor; or

    *(d)*  the duration of the minority or respective minorities only of any person who under the limitations of the instrument directing the accumulations would, for the time being, if of full age, be entitled to income directed to be accumulated.

(2)  In every case where any accumulation is directed otherwise than as in subsection (1), the direction shall (save as hereinafter mentioned) be void; and the income of the property directed to be accumulated shall, so long as the same is directed to be accumulated contrary to this section, go to and be received by the person who would have been entitled thereto if the accumulation had not been directed.

(3)  This section does not extend to any provision—

    *(a)*  for payment of the debts of any grantor, settlor or other person; or

    *(b)*  for raising portions for–




26                    *Laws of Malaysia*                    **ACT 67**

(i)   any child, children or remoter issue of any grantor or settlor; or

(ii)  any child, children or remoter issue of a person taking any interest under any settlement or other disposition directing the accumulations or to whom any interest is thereby limited,

and accordingly such provisions may be made as if no statutory restrictions on accumulation of income had been imposed.

**Qualification of restrictions on accumulation**

**18.** Where accumulations of surplus income are made during a minority under any statutory power or under the general law, the period for which the accumulations are made is not (whether the trust was created or the accumulations were made before or after the coming into force of this Act) to be taken into account in determining the periods for which accumulations are permitted to be made by section 17, and accordingly an express trust for accumulation for any permitted period shall not be deemed to have been invalidated or become invalid, by reason of accumulations also having been made as aforesaid during the minority.

**Restriction on accumulation for the purchase of land**

**19.** No person may settle or dispose of any property in such a manner that the income thereof shall be wholly or partially accumulated for the purchase of land only for any longer period than the duration of the minority or respective minorities of any person who, under the limitations of the instrument directing the accumulation, would for the time being, if he had attained his majority, be entitled to the income so directed to be accumulated.

**Validation of appointments where objects are excluded or take illusory shares**

**20.** (1) No appointment made in exercise of any power to appoint any property among two or more objects shall be invalid on the ground that—

(a)  an unsubstantial, illusory, or nominal share only is appointed to or left unappointed to devolve upon any one or more of the objects of the power; or






067e fm  Page 27  Friday, March 31, 2006  4:11 PM

*Civil Law*                                                                 27

(b)  any object of the power is thereby altogether excluded,

but every such appointment shall be valid notwithstanding that any one or more of the objects is not thereby, or in default of appointment, to take any share in the property.

(2)  This section shall not affect any provision in the instrument creating the power which declares the amount of any share from which any object of the power is not to be excluded.

(3)  This section shall apply to appointments made before or after the coming into force of this Act.

**Executor deemed to be trustee for person entitled to residue on intestacy**

**21.**  When any person dies or has died, having by his will, appointed any person to be his executor, the executor shall be deemed to be a trustee for the person, if any, who would be entitled to the estate in case the person died intestate in respect of any residue not expressly disposed of, unless it appears by the will that the person so appointed executor was intended to take the residue beneficially.

**Charges on property of deceased to be paid primarily out of the property charged**

**22.**  (1)  Where a person dies possessed of, or, entitled to, or under a general power of appointment by his will disposes of, an interest in property, which at the time of his death is charged with the payment of money, whether by way of mortgage, charge or otherwise (including a lien for unpaid purchase money), and the deceased has not by will, deed or other document signified a contrary or other intention, the interest so charged, shall as between the different persons claiming through the deceased, be primarily liable for the payment of the charge; and every part of the said interest, according to its value, shall bear a proportionate part of the charge on the whole thereof.

(2)  Such contrary or other intention shall not be deemed to be signified—

(a)  by a general direction for the payment of debts or of all the debts of the testator out of his personal estate,





28                    *Laws of Malaysia*                    **ACT 67**

or his residuary real and personal estate, or his residuary real estate; or

*(b)* by a charge of debts upon any such estate, unless the intention is further signified by words expressly or by necessary implication referring to all or some part of the charge.

(3)  Nothing in this section affects the right of a person entitled to the charge to obtain payment or satisfaction thereof either out of the other assets of the deceased or otherwise.

### Moneys payable under policy of assurance not to form part of the estate of the insured

**23.** (1)  A policy of assurance effected by any man on his own life and expressed to be for the benefit of his wife or of his children or of his wife and children or any of them, or by any woman on her own life and expressed to be for the benefit of her husband or of her children or of her husband and children or any of them, shall create a trust in favour of the objects therein named, and the moneys payable under any such policy shall not so long as any object of the trust remains unperformed form part of the estate of the insured or be subject to his or her debts.

(2)  If it is proved that the policy was effected and the premiums paid with intent to defraud the creditors of the insured, they shall be entitled to receive out of the moneys payable under the policy a sum equal to the premiums so paid.

(3)  The insured may by the policy or by any memorandum under his or her hand appoint a trustee or trustees of the moneys payable under the policy, and from time to time appoint a new trustee or new trustees thereof, and may make provision for the appointment of a new trustee or new trustees thereof and for the investment of the moneys payable under any such policy.

(4)  In default of any such appointment of a trustee the policy immediately on its being effected shall vest in the insured and his or her legal personal representatives in trust for the purposes aforesaid.

(5)  If at the time of the death of the insured or at any time afterwards there is no trustee, or it is expedient to appoint a new

*Civil Law*                29

trustee or new trustees, a trustee or trustees or a new trustee or new trustees may be appointed by the High Court.

(6)  The receipt of a trustee or trustees duly appointed, or in default of any such appointment or in default of notice to the insurance office the receipt of the legal personal representative of the insured, shall be a discharge to the office for the sum secured by the policy or for the value thereof in whole or in part.

### *Bona vacantia*

**24.**  When a right to the personal estate of any person who dies intestate without next of kin has accrued to the Government, the personal estate or the proceeds thereof shall form part of the Consolidated Fund and shall be appropriated as part of the Fund to such public purposes as the Yang di-Pertuan Agong from time to time thinks proper and directs:

Provided that the Yang di-Pertuan Agong may by warrant order the transfer of the whole or any part of such personal estate or the proceeds thereof to any person who shall establish to the satisfaction of the Yang di-Pertuan Agong any equitable or moral claim thereto.

### Saving

**25.**  Nothing in this Part shall affect the disposal of any property according to Muslim law or, in Sabah and Sarawak, native law and custom.

PART  VIII

MISCELLANEOUS

### Agreement by way of gaming or wagering to be null and void

**26.**  (1)  All contracts or agreements, whether by parol or in writing, by way of gaming or wagering shall be null and void.

(2)  No action shall be brought or maintained in any Court for recovering any sum of money or valuable thing alleged to be won upon any wager or which has been deposited in the hands of any person to abide the event on which any wager has been made.

30 *Laws of Malaysia* **ACT 67**

(3)  Subsections (1) and (2) shall not be deemed to apply to any subscription or contribution, or agreement to subscribe or contribute, for or toward any plate, prize, or sum of money to be awarded to the winner of any lawful game, sport, pastime or exercise.

(4)  Any promise, express or implied, to pay any person any sum of money paid by him under or in respect of any contract or agreement rendered null and void by subsections (1) and (2), or to pay any sum of money by way of commission, fee, reward or otherwise in respect of any such contract or of any services in relation thereto or in connection therewith, shall be null and void, and no action shall be brought or maintained to recover any such sum of money.

**Infants**

**27.**  In all cases relating to the custody and control of infants the law to be administered shall be the same as would have been administered in like cases in England at the date of the coming into force of this Act, regard being had to the religion and customs of the parties concerned, unless other provision is or shall be made by any written law.

**No person chargeable with rent *bona fide* paid to holder under defective title**

**28.**  (1)  No person shall be chargeable with any rents or profits of any immovable property which he has *bona fide* paid over to any person of whom he *bona fide* held the same notwithstanding it afterwards appears that the person to whom the payment was made had no right to receive such rents or profits.

(2)  If any person erects any building or makes an improvement upon any land held by him in the *bona fide* belief that he had an estate in fee simple or other absolute estate, and that person, his executor or assign, or his under-tenant is evicted from the land by any person having a better title, the person who erected the building or made the improvement, his executor or assign shall be entitled either to have the value of the building or improvement so erected or made while the land was held by him and in that belief estimated and paid or secured to him or at the option of the person causing the eviction to purchase the interest

of that person in the land at the value thereof but not taking into account the value of the building or improvement.

(3)  The amount to be paid or secured in respect of the building or improvement shall be the estimated value of the same at the time of the eviction.

(4)  *(a)* Every tenant holding over after the determination of his tenancy shall be chargeable, at the option of his landlord, with double the amount of his rent until possession is given up by him or with double the value during the period of detention of the land or premises so detained, whether notice to that effect has been given or not.

*(b)*  Paragraph *(a)*  shall have effect in Sabah subject to section 26 of the Rent Control (Business Premises) Enactment 1965 of Sabah [*En. 1 of 1966*] and in Sarawak subject to section 19 of the Rent Control Ordinance of Sarawak [*Cap. 86*].

(5)  When any writ or summons issued by a landlord against a tenant for the recovery of immovable property is served on or comes to the knowledge of any subtenant of the plaintiff's immediate tenant, the subtenant being an occupier of the whole or any part of the premises sought to be recovered, he shall forthwith give notice thereof to his immediate landlord, under penalty of forfeiting three years' rack rent of the premises held by the subtenant to the person of whom he holds, to be recovered by that person by action in any Court having jurisdiction.

**Damages in respect of personal injury**

**28A.** (1)  In assessing damages recoverable in respect of personal injury which does not result in death, there shall not be taken into account—

(a)    any sum paid or payable in respect of the personal injury under any contract of assurance or insurance, whether made before or after the coming into force of this Act;

(b)    any pension or gratuity, which has been or will or may be paid as a result of the personal injury; or

(c)    any sum which has been or will or may be paid under any written law relating to the payment of any benefit or compensation whatsoever in respect of the personal injury.

32                        *Laws of Malaysia*                        **ACT 67**

(2)  In assessing damages under this section—

    *(a)*  no damages shall be recoverable in respect of any loss of expectation of life caused to the plaintiff by the injury;

    *(b)*  if the plaintiff's expectation of life has been reduced by the injury, the Court, in assessing damages in respect of pain and suffering caused by the injury, shall take into account any suffering caused or likely to be caused by awareness that his expectation of life has been so reduced;

    *(c)*  in awarding damages for loss of future earnings the Court shall take into account—

        (i)  that in the case of a plaintiff who has attained the age of fifty-five years or above at the time when he was injured, no damages for such loss shall be awarded; and in any other case, damages for such loss shall not be awarded unless it is proved or admitted that the plaintiff was in good health but for the injury and was receiving earnings by his own labour or other gainful activity before he was injured;

        (ii)  only the amount relating to his earnings as aforesaid at the time when he was injured and the Court shall not take into account any prospect of the earnings as aforesaid being increased at some time in the future;

        (iii)  any diminution of any such amount as aforesaid by such sum as is proved or admitted to be the living expenses of the plaintiff at the time when he was injured;

    *(d)*  in assessing damages for loss of future earnings the Court shall take into account that—

        (i)  in the case of a person who was of the age of thirty years or below at the time when he was injured, the number of years' purchase shall be 16; and

        (ii)  in the case of any other person who was of the age range extending between thirty-one years and fifty-four years at the time when he was injured, the number of years' purchase shall be calculated by using the figure 55, minus the

067e fm  Page 33  Friday, March 31, 2006  4:11 PM

*Civil Law* 33

age of the person at the time when he was injured and dividing the remainder by the figure 2.

## Repeal

**29.**  The Ordinances and Enactments set out in the First Schedule to this Act are hereby repealed to the extent specified in the third column of that Schedule.

---

FIRST SCHEDULE

[Section 29]

REPEAL

| | | |
|---|---|---|
| S.S. Cap. 42 … … | Civil Law Ordinance … … | The whole |
| S.S. Cap. 118 … … | Conveyancing and Law of Property Ordinance | S. 73 |
| F.M.S. No. 3 of 1937… | Civil Law Enactment … … | The whole |
| F.M.S. Cap. 8 … … | Probate and Administration Enactment | S. 93(ii) |
| F.M.S. Cap. 19 … … | Executors (Powers) and Fatal Accidents Enactment | The whole |
| Johore Enactment No. 22 | Probate and Administration Enactment | S. 82 |
| Johore Enactment No. 99 | Fatal Accidents Enactment … | The whole |
| Kelantan Enactment No. 15 of 1931 | Executors (Powers) and Fatal Accidents Enactment | The whole |
| Kedah Enactment No. 2 of 1360 | Fatal Accidents Enactment 1360 | The whole |
| Trengganu Enactment No. 22 of 1356 | Probate and Administration Enactment | S. 44(ii) |
| F. of M. No. 49 of 1951 | Civil Law (Extension) Ordinance 1949 | The whole |




067e fm  Page 34  Friday, March 31, 2006  4:11 PM

34                 *Laws of Malaysia*              **ACT 67**

SECOND SCHEDULE

[Subparagraph 3(3)(ii)]

ACTS OF PARLIAMENT OF THE UNITED KINGDOM WHICH
CONTINUE IN FORCE IN SARAWAK

| | Short title | Extent to which Act continues in force | Modifications |
|---|---|---|---|
| *Swk. Vol. VI page 1455 (8 and 9 Geo. 6 c. 28)* | Law Reform (Contributory Negligence) Act 1945 | Subsection 1(7), sections 2, 3, 4 and 7 | In sections 2 and 4, the references to the Workmen's Compensation Acts 1925 to 1943 and to sections thereof shall be read as references to the Workmen's Compensation Ordinance Cap. 80 of Sarawak and to the corresponding sections thereof |
| *Swk. Vol. VI page 1459 (2 and 3 Eliz. 2 c. 34)* | Law Reform (Enforcement of Contracts) Act 1954 | The whole | None |
| *Swk. Vol. VI page 1461 (12, 13 and 14 Geo. 6 c. 100)* | Law Reform (Miscellaneous Provisions) Act 1949 | Subsections 4(1), 7(1) and (2) | None |
| *6, Edw. 7 c. 41* | Marine Insurance Act 1906 | The whole except section 91 | None |





067e fm  Page 35  Friday, March 31, 2006  4:11 PM

*Civil Law* 35

| | Short title | Extent to which Act continues in force | Modifications |
|---|---|---|---|
| *21, Geo. 5 c. 2* | Marine Insurance (Gambling Policies) Act 1909 | The whole | In subsection 1(3) the reference to the consent in England of the Attorney General, in Scotland of the Lord Advocate, and in Ireland of the Attorney General for Ireland shall be construed as referring to the consent of the Public Prosecutor, Malaysia. |




067e.fm Page 36 Friday, March 31, 2006 4:11 PM



36

## LAWS OF MALAYSIA

### Act 67

### CIVIL LAW ACT 1956

### LIST OF AMENDMENTS

| Amending law | Short title | In force from |
|---|---|---|
| Ord. 36/1957 | Married Women Ordinance 1957 | 15-08-1957 |
| L.N. 332/1958 | Federal Constitution (Modification of Laws) (Ordinances and Proclamations) Order 1958 | 13-11-1958 |
| Act 30/1966 | Civil Law (Amendment) Act 1966 | 14-04-1966 |
| P.U. (A)424/1971 | Civil Law Ordinance (Extension) Order 1971 | 01-04-1972 |
| P.U. (A)16/1975 | Revision of Laws (Civil Law Act) Order 1975 | 01-04-1972 |
| Act A308 | Civil Law (Amendment) Act 1975 | 30-05-1975 |
| Act A602 | Civil Law (Amendment) Act 1984 | 01-10-1984 |

———————










067e.fm  Page 37  Friday, March 31, 2006  4:11 PM

37

# LAWS OF MALAYSIA

## Act 67

## CIVIL LAW ACT 1956

### LIST OF SECTIONS AMENDED

| Section | Amending authority | In force from |
|---|---|---|
| 3 | L.N. 332/1958 | 13-11-1958 |
| 5 | L.N. 332/1958 | 13-11-1958 |
| 6 | L.N. 332/1958 | 13-11-1958 |
| 7 | Act 30/1966 | 14-04-1966 |
| | Act A308 | 30-05-1975 |
| | Act A602 | 01-10-1984 |
| 8 | Act A602 | 01-10-1984 |
| 9 | Ord. 36/1957 | 15-08-1957 |
| 12 | Act A602 | 01-10-1984 |
| 16A | Act 30/1966 | 14-04-1966 |
| 16B | Act 30/1966 | 14-04-1966 |
| 16C | Act 30/1966 | 14-04-1966 |
| 16D | Act 30/1966 | 14-04-1966 |
| 16E | Act 30/1966 | 14-04-1966 |
| 16F | Act 30/1966 | 14-04-1966 |
| 16G | Act 30/1966 | 14-04-1966 |
| 23 | P.U.(A)16/1975 | 01-04-1972 |





067e.fm  Page 38  Friday, March 31, 2006  4:11 PM

38 *Laws of Malaysia* **ACT 67**

| Section | Amending authority | In force from |
|---------|--------------------|---------------|
| 24 | L.N. 332/1958 | 13-11-1958 |
| 28A | Act A308 | 30-05-1975 |
| | Act A602 | 01-10-1984 |

# EXHIBIT C

## TO

## DECLARATION OF

## TAN SRI DATO SERI ABDULL HAMID EMBONG



# LAWS OF MALAYSIA

## Act 765

**MALAYSIAN AIRLINE SYSTEM BERHAD
(ADMINISTRATION) ACT 2015**

2

Date of Royal Assent          ...      ...        30 December 2014

Date of publication in the
*Gazette*                  ...      ...      ...        5 January 2015

**Publisher's Copyright** Ⓒ

**PERCETAKAN NASIONAL MALAYSIA BERHAD**

All rights reserved. No part of this publication may be reproduced, stored in a retrieval system or transmitted in any form or by any means electronic, mechanical, photocopying, recording and/or otherwise without the prior permission of **Percetakan Nasional Malaysia Berhad (Appointed Printer to the Government of Malaysia).**

# LAWS OF MALAYSIA

## Act 765

## MALAYSIAN AIRLINE SYSTEM BERHAD (ADMINISTRATION) ACT 2015

---

ARRANGEMENT OF SECTIONS

---

PART I

PRELIMINARY

Section

1. Short title and commencement

2. Application

3. Interpretation

PART II

ADMINISTRATION

4. Placement of the Company, *etc*., under administration

5. Appointment of Administrator

6. Duration of administration

7. Qualifications of Administrator

8. Notification of appointment of Administrator

9. Functions of Administrator

10. Powers of Administrator

11. Effect of appointment of Administrator

12. Moratorium

13. Undue preference

14. Transition services

15. Investigation by Administrator

16. Duties of officers to assist in investigation

PART III

PROPOSAL OF ADMINISTRATOR AND APPOINTMENT OF INDEPENDENT ADVISOR

17. Administrator may re-negotiate contracts or prepare proposal or both

4 *Laws of Malaysia* **ACT 765**

Section

18. Appointment and qualifications of Independent Advisor

19. Review of proposal by Independent Advisor

20. Decision of the appointer

21. Implementation of proposal

22. Transfer of property or liabilities


PART IV

MALAYSIA AIRLINES BERHAD

23. Incorporation of Malaysia Airlines Berhad

24. Offer of employment

25. Malaysia Airlines Berhad, *etc*., not a successor employer

26. Work rules, code of conduct and regulations

27. Negotiation with trade unions and associations

28. Matters relating to productivity or effective utilization of workforce


PART V

VESTING OF PROPERTY AND LIABILITIES

29. Vesting provisions

30. Replacement vesting order


PART VI

GENERAL

31. Non-application of section 132E of the Companies Act 1965

32. Indemnity for Administrator, *etc*.

33. Immunity

34. Limits on the grant of orders of court

35. Validity of transaction

36. Things done in anticipation of the enactment of this Act

SCHEDULE

# LAWS OF MALAYSIA

## Act 765

## MALAYSIAN AIRLINE SYSTEM BERHAD (ADMINISTRATION) ACT 2015

An Act to provide special laws for the administration of the Malaysian Airline System Berhad, its wholly owned subsidiary companies, and its partially owned subsidiary companies providing goods or carrying out services or both that are essential to the operations of the Malaysian Airline System Berhad and the appointment of an administrator with the powers to administer and manage the Malaysian Airline System Berhad, its wholly owned subsidiary companies, and its partially owned subsidiary companies providing goods or carrying out services or both; to provide for the establishment of a new entity which will replace the Malaysian Airline System Berhad as the national carrier; and to provide for related matters.

[                                                    ]

WHEREAS special provisions are required in the public interest to ensure the continuity of the essential air services by the Malaysian Airline System Berhad as the national carrier and the provision of uninterrupted connectivity to and from and within Malaysia by the national carrier:

AND WHEREAS legislation is the only means to expeditiously administer and manage the Malaysian Airline System Berhad, its wholly owned subsidiary companies and its partially owned subsidiary companies providing goods or carrying out services or both that are essential to the operations of the national carrier without disruption to their operations:

AND WHEREAS the establishment of a new entity, that is the Malaysia Airlines Berhad, with a new business model is critical to ensure continuity, profitability and viability, and to assume certain businesses, property, rights, liabilities and affairs of the Malaysian Airline System Berhad:

AND WHEREAS it is in the public interest to ensure the continued existence of a national carrier to facilitate Malaysia's economic development:

AND WHEREAS legislation provides an effective, efficient and seamless means to transition the business, property, rights, liabilities and affairs of the Malaysian Airline System Berhad to the new entity:

**NOW, THEREFORE, IT IS ENACTED** by the Parliament of Malaysia as follows:

Part I

PRELIMINARY

**Short title and commencement**

**1.** (1) This Act may be cited as the Malaysian Airline System Berhad (Administration) Act 2015.

(2) This Act comes into operation on a date to be appointed by the Minister by notification in the *Gazette*.

**Application**

**2.** (1) This Act shall apply—

*(a)* for a period of five years from the date of the coming into operation of this Act; or

*(b)* until the listing and quotation of the shares of the Malaysia Airlines Berhad on the official list of Bursa Malaysia Berhad,

whichever is earlier.

(2) Notwithstanding subsection (1), the Minister may, by order published in the *Gazette*, declare an earlier cessation of this Act.

*Malaysian Airline System Berhad (Administration)*        7

(3)  Notwithstanding subsection (1), this Act may, by a resolution passed by both Houses of Parliament, be extended for a further period as may be specified in the resolution.

**Interpretation**

**3.**  In this Act, unless the context otherwise requires—

"regulatory body" means an authority that is responsible for the enforcement of laws;

"proposal" means the proposal under paragraph 17(1)*(b)*;

"rights" means all rights, powers, privileges and immunities, whether actual, contingent or prospective;

"property" includes all property, movable and immovable, and all interests, easement or rights, whether equitable or legal in, to or out of the property, choses in action, money and goodwill;

"Malaysia Airlines Berhad" means the corporation referred to in section 23;

"Minister" means the Prime Minister of Malaysia;

"officer" has the meaning assigned to it in section 4 and subsection 132(6) of the Companies Act 1965 [*Act 125*];

"appointer" means the person who appoints an Administrator under section 5;

"creditor" includes counterparties in an agreement, contract or arrangement with the Administered Companies;

"Independent Advisor" means the person appointed under section 18;

"Administrator" means the person appointed under section 5;

"Company" means the Malaysian Airline System Berhad;

8                    *Laws of Malaysia*                    Aᴄᴛ **765**

"specified subsidiary companies" means the partially owned subsidiary companies listed in paragraph 4*(c)*;

"Administered Companies" means the Company, its wholly owned subsidiary companies, and the specified subsidiary companies that have been placed under administration under section 4;

"liabilities" includes debts, charges and obligations of every description whether  present or future, actual or contingent, and whether payable or to be observed or performed in Malaysia or elsewhere.

Pᴀʀᴛ II

ADMINISTRATION

**Placement of the Company, *etc.*, under administration**

**4.**  Subject to the prior written approval of the Minister, a member of the Company, or the board of directors of the Company pursuant to a resolution of the board of directors, may place—

*(a)* the Company;

*(b)* any wholly owned subsidiary company of the Company; and

*(c)* the following partially owned subsidiary companies of the Company:

(i) Abacus Distribution Systems (Malaysia) Sdn. Bhd. (Company No. 180535-T);

(ii) Aerokleen Services Sdn. Bhd. (Company No. 277266-X); and

(iii) MAS Awana Services Sdn. Bhd. (Company No. 372384-D),

under administration in accordance with this Act.

**Appointment of Administrator**

**5.** (1) The member of the Company or the board of directors of the Company referred to in section 4 shall appoint an Administrator for the Administered Companies.

(2) The appointer may at any time after the appointment of the Administrator under subsection (1) appoint a new Administrator to replace the existing Administrator.

(3) Where the Administrator is released from his appointment, he shall, with effect from such release, be discharged from all duties and liabilities in respect of his administration or in relation to his conduct as the Administrator.

**Duration of administration**

**6.** The administration of the Administered Companies by the Administrator shall commence from the date of appointment of the Administrator under subsection 5(1) and shall continue until the administration is terminated by the appointer.

**Qualifications of Administrator**

**7.** (1) No person shall be appointed as an Administrator unless he—

    *(a)* is a natural person; and

    *(b)* has consented in writing to his appointment.

(2) The following persons shall be qualified to be appointed as an Administrator:

    *(a)* a company auditor approved under the Companies Act 1965; or

    *(b)* a person who is, in the opinion of the appointer, capable of performing the duties of an administrator.

(3)  The following persons shall not be qualified to be appointed as an Administrator:

> *(a)* an undischarged bankrupt;

> *(b)* a mortgagee of any property of the Administered Companies;

> *(c)* a person with direct or indirect shareholding in the Administered Companies;

> *(d)* a person who is, directly or indirectly, interested in any contract or arrangement to provide goods or services to the Administered Companies;

> *(e)* an auditor of the Administered Companies; or

> *(f)* an officer of the Administered Companies.

**Notification of appointment of Administrator**

**8.** (1) The Administrator shall within seven days after his appointment—

> *(a)* lodge a notice of the appointment with the Registrar of Companies; and

> *(b)* cause a notice of his appointment to be published in at least two national daily newspapers, one of which shall be in the national language.

(2)  Every invoice, order for goods or services, business letter, cheque, credit note, negotiable instrument or bill of lading which is issued by or on behalf of the Administered Companies or the Administrator after the appointment of the Administrator shall contain the words "Administrator Appointed".

(3)  Any non-compliance of subsections (1) and (2) shall not affect the validity of the acts of the Administrator in the administration of the Administered Companies.

(4)  For the purpose of this section, "Registrar of Companies" has the meaning assigned to it under section 4 of the Companies Act 1965.

*Malaysian Airline System Berhad (Administration)*    11

**Functions of Administrator**

**9.** (1) The Administrator shall have the following functions:

(a) to carry out the business and operations (including the restructuring of such operations) of the Administered Companies;

(b) to take into his custody or under his control the property, liabilities, businesses and affairs of the Administered Companies and all the property to which the Administered Companies are or appear to be entitled;

(c) to manage the property, business, liabilities and affairs of the Administered Companies in the name and on behalf of the Administered Companies, including the disposal of property and liabilities;

(d) to assume control and exercise all powers conferred on the directors under the Companies Act 1965 or by the constitution of the Administered Companies, and the powers of the directors of the Administered Companies shall then cease except in so far as the Administrator may permit;

(e) to make any arrangement or compromise on behalf of the Administered Companies with their creditors or any class of them or between the specified subsidiary companies and their members or any class of them or between the Administered Companies and their debtors or any class of them; and

(f) to perform any function that the Administered Companies or any of their officers could perform or exercise if the Administrator had not been appointed.

(2) Nothing in paragraph (1)(d) shall require the Administrator to call any meetings of the Administered Companies.

**Powers of Administrator**

**10.**    In performing his functions under section 9, the Administrator shall have the following powers:

(a) to carry on the business of the Administered Companies;

*Laws of Malaysia* **ACT 765**

*(b)* to do all things (including the carrying out of works) as may be necessary for the management, realization and preservation of the property, undertakings and affairs of the Administered Companies;

*(c)* to appoint any person as a director of any of the Administered Companies, whether to fill a vacancy or otherwise, and to remove or suspend from office any director of the Administered Companies notwithstanding the Memorandum and Articles of Association or any other law;

*(d)* to take possession of the property of the Administered Companies and for that purpose, to take such proceedings as may seem to him expedient;

*(e)* to sell or otherwise dispose of all or part of the property, business, undertaking or property of the Administered Companies by public auction or private contract;

*(f)* to raise or borrow money and grant security over the property of the Administered Companies for the raising or borrowing of such money;

*(g)* to appoint a solicitor or an accountant, or other professionally qualified person to assist him in the performance of his functions;

*(h)* to bring or defend any action or other legal proceedings in the name and on behalf of the Administered Companies;

*(i)* to refer to arbitration any question affecting the Administered Companies;

*(j)* to effect and maintain insurances in respect of the property of the Administered Companies;

*(k)* to use the common seal of the Administered Companies;

*(l)* to do all acts and to execute in the name and on behalf of the Administered Companies any deed, receipt or other document;

*(m)* to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the Administered Companies;

*(n)* to employ or terminate employees, and to determine the compensation payable to such dismissed employees;

*(o)* to transfer any property, business, liabilities and affairs of the Administered Companies to the Malaysia Airlines Berhad or any of the Malaysia Airlines Berhad's subsidiary companies;

*(p)* to purchase the shares, property and equipment of any company, in which the Administered Companies are existing shareholders, that supplies goods or services or both which are essential to ensure the uninterrupted continuation of the business vested or to be vested in the Malaysia Airlines Berhad pursuant to Part V;

*(q)* to grant or accept a surrender of a lease or tenancy of the property of the Administered Companies, and to take a lease or tenancy of any property required or convenient for the property of the Administered Companies;

*(r)* to call up any uncalled capital of the Administered Companies, alter or reduce all or part of the share capital of the Administered Companies;

*(s)* to rank and claim in the bankruptcy, insolvency or liquidation of any person indebted to the Administered Companies and to receive dividends, and to accede to trust deeds for the creditors of any such person;

*(t)* to present or defend a petition for the winding up of the Administered Companies;

*(u)* to change the location of any of the Administered Companies' registered offices;

*(v)* to appoint any agent to do any business which the Administrator is unable to do himself or which can more conveniently be done by an agent;

*(w)* to make any payment which is necessary or incidental to the performance of his functions; and

*(x)* to do all other things incidental to the performance of the Administrator's functions.

*Laws of Malaysia*

**Effect of appointment of Administrator**

**11.** (1) On the appointment of the Administrator, a moratorium shall take effect during which—

    *(a)* no petition for the winding up of the Administered Companies may be filed by any person in any court;

    *(b)* no resolution may be passed or order made for the winding up of the Administered Companies;

    *(c)* no receiver, receiver and manager or provisional liquidator, may be appointed, or if appointed, his appointment shall immediately cease and he shall vacate his office;

    *(d)* no steps may be taken—

        (i) to create, perfect or enforce any security over any property of the Administered Companies;

        (ii) to enforce a judgment over any property of the Administered Companies;

        (iii) to re-possess any property in the possession, custody or control of the Administered Companies; or

        (iv) to set off any debt owing to the Administered Companies in respect of any claim against the Administered Companies,

    except with the prior written consent of the Administrator;

    *(e)* no proceedings and no execution or other legal process in any court or tribunal may be commenced or continued with, and no distress may be levied, against the Administered Companies or their property except with the prior written consent of the Administrator;

    *(f)* any application made under section 176 of the Companies Act 1965 shall be adjourned *sine die* and any restraining order issued under subsection 176(10) of the Companies Act 1965 shall be immediately discharged and set aside; and

*Malaysian Airline System Berhad (Administration)*    15

(g) no proceedings and no execution or other legal process in any court or tribunal may be commenced, or continued with, against any person providing a guarantee or acting as a guarantor for the liability of the Administered Companies in respect of that liability except with the prior written consent of the Administrator.

(2) The Administrator shall not be liable to an action or other damages in respect of a refusal to give his consent under subsection (1).

(3) The appointment of the Administrator shall not—

(a) be regarded as placing the Administrator or the Administered Companies in breach of or in default under any contract, or in breach of confidence;

(b) be regarded as placing the Administered Companies in breach of or in default under any contract or be regarded as giving rise to a right or duty for any person to—

(i) terminate, cancel or modify an agreement;

(ii) enforce or accelerate the performance of an obligation of the Administered Companies;

(iii) require the performance of an obligation not otherwise arising for performance; or

(iv) refuse or discontinue the performance of his obligations;

(c) be regarded as placing the Administrator or the Administered Companies in breach of any law or agreement prohibiting, restricting or regulating the assignment, sale, disposition or transfer of any property or disclosure of information;

(d) release a surety from an obligation;

(e) invalidate or discharge a contract or security;

(f) be regarded as terminating, cancelling or varying any right, privilege, exemption or priorities in relation to a property of the Administered Companies; or

    *(g)* be regarded as placing the Administered Companies or the Administrator in breach of any law or any order of any court.

    (4) Nothing in this section shall prevent any civil or criminal proceedings from being instituted or continued by any regulatory body against the Administered Companies.

## Moratorium

**12.** (1) The duration of the moratorium referred to in section 11, unless the administration is sooner terminated under section 6 or paragraph 20(3)*(c)*, shall be for a period of twelve months commencing from the date of the appointment of the Administrator under subsection 5(1).

    (2) The Minister may, upon the written request of the Administrator or the appointer, extend the moratorium for a period of not more than twelve months upon being satisfied that the circumstances warrant such extension, and such power of extension shall not be exercisable more than once.

    (3) If the period of the moratorium is extended under subsection (2), the Administrator shall cause a notice of the extension to be published in at least two national daily newspapers, one of which shall be in the national language.

## Undue preference

**13.** (1) On the appointment of the Administrator, any transfer, mortgage, execution, attachment, obligation, settlement, charge, assignment, delivery of goods, payment or other act relating to any property made, incurred or done by or against the Administered Companies which, had it been made, incurred or done by or against an individual, would in his bankruptcy under the law of bankruptcy be void or voidable, may be avoided or recoverable by the Administrator.

    (2) Where a reference is made in the law of bankruptcy to a date for the purpose of determining the effect of bankruptcy on transactions mentioned in subsection (1), that date shall be the date on which this Act comes into operation.

*Malaysian Airline System Berhad (Administration)*     17

**Transition services**

**14.** (1) Where any person is under a contract or obligation to provide goods or services or both to the Administered Companies, such person shall continue to provide the goods or services or both to the Malaysia Airlines Berhad and its subsidiary companies instead of the Administered Companies, where required by the Administrator, and the Malaysia Airlines Berhad and its subsidiary companies shall pay for such goods or services or both at the same rate as would have been paid by the Administered Companies.

(2) Notwithstanding any other provisions of this Act or any other law, where the person fails to provide the goods or services or both to the Malaysia Airlines Berhad and its subsidiary companies as required under subsection (1), the Malaysia Airlines Berhad and its subsidiary companies shall have the right to recover from such person any costs incurred or damages for any loss suffered.

**Investigation by Administrator**

**15.** (1) The Administrator may require any officer of the Administered Companies to verify and submit to the Administrator a statement as to the affairs of the Administered Companies within twenty-one days.

(2) The statement shall be in such form as may be determined by the Administrator and shall contain the following information:

   *(a)* the particulars of all property and liabilities;

   *(b)* the names and addresses of the creditors;

   *(c)* the securities held by the creditors and the dates when the securities were given;

   *(d)* a statutory declaration made under the Statutory Declarations Act 1960 [*Act 13*], declaring the information in the statement of affairs as being true and correct; and

   *(e)* any other information as may be required by the Administrator.

**Duties of officers to assist in investigation**

**16.** (1) An officer of the Administered Companies shall within seven days after a request from the Administrator—

    *(a)* deliver to the Administrator all books, records and documents of the Administered Companies in the possession of the officer; and

    *(b)* if the officer knows the location of other books, records and documents relating to the Administered Companies, inform the Administrator of the location of those books, records and documents.

  (2) An officer of the Administered Companies shall—

    *(a)* attend to the Administrator at such times; and

    *(b)* give the Administrator such information concerning the Administered Companies' property, affairs and financial circumstances,

as the Administrator may reasonably require.

  (3) The Administrator shall, on the completion of the administration under this Act, return to the Administered Companies any books, records and documents received under subsection (1).

PART III

PROPOSAL OF ADMINISTRATOR AND APPOINTMENT OF
INDEPENDENT ADVISOR

**Administrator may re-negotiate contracts or prepare proposal or both**

**17.** (1) The Administrator may, in the administration of the Administered Companies, at his sole discretion, take any one or both of the following actions:

    *(a)* re-negotiate the terms and conditions of any contracts or agreements of the Administered Companies with the counterparties;

*Malaysian Airline System Berhad (Administration)*      19

(b) prepare a proposal with respect to the Administered Companies or any claims and liabilities against or of the Administered Companies.

(2) The proposal referred to in subsection (1)(b) may include any provision as the Administrator thinks fit.

(3) Without prejudice to the generality of subsection (2), the proposal may provide for the transfer of any property, business or liability of the Administered Companies to a person named in the proposal—

(a) by means of vesting under Part V; or

(b) in accordance with the relevant law applicable to effect the transfer of such property, business or liability.

(4) The Administrator shall, upon the completion of the proposal under subsection (1), submit the proposal to the Independent Advisor and the appointer.

**Appointment and qualifications of Independent Advisor**

**18.** (1) Upon being notified by the Administrator that a proposal will be prepared under section 17, the appointer shall appoint an Independent Advisor.

(2) No person shall be appointed as an Independent Advisor unless—

(a) the person has consented in writing to the appointment;

(b) the person is independent of the appointer, management and board of directors of the Administered Companies and the Malaysia Airlines Berhad, and has no interest whatsoever in the Administered Companies and the Malaysia Airlines Berhad; and

(c) the person is—

(i) an investment bank;

(ii) a firm of accountants; or

    (iii)  a person (other than a natural person) who is permitted to carry on the activity of advising on corporate finance which is a regulated activity under the Capital Markets and Services Act 2007 [*Act 671*] and who, in the opinion of the appointer, has the requisite experience or is capable of performing the duties of an Independent Advisor.

### Review of proposal by Independent Advisor

**19.** (1) The Independent Advisor shall carry out a review of the proposal prepared by the Administrator under section 17.

(2) In reviewing the proposal, the Independent Advisor may take into consideration—

    *(a)*  the interests of all persons affected by the proposal, including the creditors, the Administered Companies and the Malaysia Airlines Berhad, if applicable, giving each category of persons affected by the proposal such weightage as he thinks fit; or

    *(b)*  such other matters or consideration as the Independent Advisor may consider relevant or appropriate under the circumstances.

(3) Upon the completion of the review, the Independent Advisor shall prepare a report on his review and submit the report to the Administrator and the appointer.

### Decision of the appointer

**20.** (1) The appointer shall consider the proposal of the Administrator together with the report of the Independent Advisor submitted to the appointer under subsection 19(3).

(2) Where the appointer approves the proposal, the Administrator shall implement the proposal in accordance with its terms.

(3) Where the appointer rejects the proposal, the appointer may—

    *(a)*  direct the Administrator to revise the proposal;

*Malaysian Airline System Berhad (Administration)*    21

(b) direct the Administrator to prepare a new proposal; or

(c) terminate the administration of the Administered Companies.

## Implementation of proposal

**21.** (1) Where the approval of a regulatory body is required to implement the proposal and conditions are imposed by the regulatory body, the Administrator shall refer the conditions imposed to the appointer.

(2) If the appointer thinks that the conditions are not in the interest of the Administered Companies, the appointer may—

(a) direct the Administrator to revise the proposal;

(b) direct the Administrator to prepare a new proposal; or

(c) terminate the administration of the Administered Companies.

(3) Prior to the implementation of the proposal, the Administrator shall send a copy of the proposal and the report of the Independent Advisor by registered post to the last-known address of or through electronic medium to each of the creditors of the Administered Companies affected by the proposal and any other persons affected by the terms of the proposal.

(4) Notwithstanding the provisions of any law or contract, the Administrator shall have the power to implement and do all things necessary to fully and effectively carry out and give effect to the proposal or any part of the proposal without the need for any notice to or approval or consent of any member or creditor of the Administered Companies or any other person affected by the proposal and the proposal shall be binding on the Administered Companies, the creditors of the Administered Companies and all persons affected by the terms of the proposal, including the Malaysia Airlines Berhad, if applicable.

(5) Notwithstanding anything to the contrary in any law of guarantee—

(a) the implementation of a proposal under this section shall not release or discharge any security provided by any person to secure any duty or liability owed by the Administered Companies to any of its creditor; and

(b) each such security and any such duty or liability of the person providing the security shall remain valid and enforceable against that person notwithstanding the implementation of the proposal, or any compromise, arrangement, reconstruction or amalgamation in connection with the Administered Companies.

(6) Notwithstanding the failure to notify any creditors of the Administered Companies and persons affected by the terms of the proposal in accordance with the requirements of subsection (3), such failure shall not affect the validity of the proposal.

**Transfer of property or liabilities**

**22.** (1) If the proposal directs that property or liabilities are to be transferred, the Administrator shall transfer the property or liabilities to the transferee in accordance with the vesting provisions under Part V and the terms and conditions set out in the proposal.

(2) For the purpose of this section, a reference to "Malaysia Airlines Berhad" in Part V shall be construed as a reference to the proposed transferee named in the proposal.

Part IV

MALAYSIA AIRLINES BERHAD

**Incorporation of Malaysia Airlines Berhad**

**23.** The corporation incorporated under the Companies Act 1965 by the name of "Malaysia Airlines Berhad" shall have the main objective of operating the national carrier of Malaysia and shall carry on the business of the national carrier as a commercial enterprise and such other businesses as the board of directors of the Malaysia Airlines Berhad thinks fit.

**Offer of employment**

**24.** The Malaysia Airlines Berhad may, in its sole discretion, offer employment to any person who immediately before the date of that offer is in the employment or service of the Administered Companies on such terms and conditions as the Malaysia Airlines Berhad may determine.

**Malaysia Airlines Berhad, *etc.*, not a successor employer**

**25.** (1) Notwithstanding anything to the contrary in this Act or under any law, where the Administrator assumes control of the Administered Companies, or where the Malaysia Airlines Berhad makes an offer of employment to a person in the employment or service of the Administered Companies, or where the Malaysia Airlines Berhad enters into a transition service agreement with the Administered Companies, the Administrator, appointer or the Malaysia Airlines Berhad shall not—

    *(a)* be regarded as the successor, assignee or transferee or a successor employer to the Administered Companies;

    *(b)* be liable for any obligation relating to any retirement plan or other post-employment benefit plans in respect of the employees or former employees of the Administered Companies or any predecessor of the Administered Companies that exists prior to the assumption of control or appointment; or

    *(c)* be liable for any sum which is calculated by reference to a period of time prior to the Malaysia Airlines Berhad becoming the employer of the person in question.

(2) The Malaysia Airlines Berhad, the appointer and the Administrator shall not be named as a party in any claim or application made or joined as a party in any proceeding commenced or continued by or on behalf of any employees or former employees of the Administered Companies pursuant to the Industrial Relations Act 1967 [*Act 177*], Employment Act 1955 [*Act 265*], Sabah Labour Ordinance 1950 [*Sabah Cap. 67*], Sarawak Labour Ordinance 1952 [*Sarawak Cap. 76*] or the Trade Unions Act 1959 [*Act 262*].

**Work rules, code of conduct and regulations**

**26.** The Malaysia Airlines Berhad may, if it thinks fit, impose any work rules, code of conduct and regulations in relation to its employees in accordance with all applicable laws.

**Negotiation with trade unions and associations**

**27.** (1) All matters to be discussed or negotiated between the Malaysia Airlines Berhad and—

    *(a)* any trade union duly recognized by the Malaysia Airlines Berhad in accordance with the Industrial Relations Act 1967 and the Trade Unions Act 1959; and

    *(b)* any association recognized by the Malaysia Airlines Berhad,

shall be by way of meetings, of which fourteen days' notice shall be given to the trade unions and associations by the Malaysia Airlines Berhad.

(2) A meeting to be convened under subsection (1) shall not proceed unless all of the trade unions and associations are duly represented in the meeting.

(3) If after half an hour from the time appointed for a meeting, not all of the trade unions and associations are duly represented, the meeting shall stand adjourned to the subsequent week, on the same day and time and at the same venue without any further notice.

(4) If the meeting is adjourned to a day which is a public holiday, the adjourned meeting shall be reconvened on the next working day.

(5) When the adjourned meeting is reconvened on the new date, the non-attendance by any trade union or association shall not prevent the meeting from proceeding.

(6) Any decision made during the meeting by the Malaysia Airlines Berhad and the trade unions and associations present at the meeting shall be valid and binding on the Malaysia Airlines Berhad and all of the trade unions and associations recognized by the Malaysia Airlines Berhad.

(7) In a meeting under this section, where the trade unions and associations unanimously resolve that the matter for discussion or negotiation relates solely to a specific trade union or association, the meeting shall be dissolved and a separate meeting shall be convened between the Malaysia Airlines Berhad and that specific trade union or association.

*Malaysian Airline System Berhad (Administration)*    25

(8) The separate meeting between the Malaysia Airlines Berhad and the specific trade union or association shall not discuss any matter other than the matter resolved under subsection (7).

**Matters relating to productivity or effective utilization of workforce**

**28.** (1) Notwithstanding section 27, the following matters that relate to or impact the productivity or effective utilization of the workforce in the Malaysia Airlines Berhad shall be determined by the Malaysia Airlines Berhad:

    *(a)* resourcing and allocation of resources;

    *(b)* assessment of employees;

    *(c)* leave entitlement; and

    *(d)* working hours and scheduling of work, including flight time limitation and flight duty periods.

(2) The Malaysia Airlines Berhad in determining any matters under subsection (1) shall comply with all applicable laws and international standards.

PART V

VESTING OF PROPERTY AND LIABILITIES

**Vesting provisions**

**29.** (1) The Minister may, from time to time, by order published in the *Gazette*, appoint a vesting date for each order and on such date any property or liabilities of the Administered Companies specified by the Minister in such order shall be transferred to and vested in the Malaysia Airlines Berhad without any conveyance, assignment or transfer whatsoever.

(2) The vesting pursuant to subsection (1) shall have the effect set out in the Schedule notwithstanding any written law or rule of law and shall be binding on any person affected by such vesting.

*Laws of Malaysia*     Act **765**

**Replacement vesting order**

**30.**  (1)  The Minister may issue a new vesting order ("replacement vesting order") to replace any vesting order previously issued in order to rectify any omission or error in the vesting order.

(2)  Any replacement vesting order issued under subsection (1), stating that a property or liability has been transferred to and vested in the Malaysia Airlines Berhad, shall be conclusive evidence of such transfer and vesting as of the vesting date stipulated in the replacement vesting order.

(3)  If any law stipulates a time period within which a transfer of any property or liability stated to be the subject of a replacement vesting order shall be registered or filed, that period shall commence from the vesting date stipulated in the replacement vesting order or the date the replacement vesting order is issued, whichever is later.

(4)  Any act done by the Malaysia Airlines Berhad or any other person, in reliance on a vesting order previously issued shall not be affected by any omission or error rectified in a replacement vesting order.

(5)  For the purposes of this Act, any reference to a vesting order shall be deemed to include a reference to a replacement vesting order.

Part VI

GENERAL

**Non-application of section 132e of the Companies Act 1965**

**31.**  Section 132e of the Companies Act 1965 shall not apply to any disposition by any arrangement or transaction between the Company and the Malaysia Airlines Berhad.

**Indemnity for Administrator,** *etc.*

**32.** (1) The Administrator, the appointer and any other person are entitled to be indemnified out of the Administered Companies' property for—

(a) in the case of the Administrator, his costs, expenses and remuneration as provided under the terms of his appointment;

*Malaysian Airline System Berhad (Administration)*    27

(b) in the case of the appointer, the repayment of any credit facility provided by the appointer to the Administrator or to the Administered Companies during the administration of the Administered Companies;

(c) in the case of the Malaysia Airlines Berhad, the repayment of any credit facility provided by the Malaysia Airlines Berhad to the Administrator or to the Administered Companies during the administration of the Administered Companies; or

(d) in the case of any other person, the repayment of any credit facility provided by that person to the Administrator or the Administered Companies during the administration of the Administered Companies with the approval of the appointer.

(2) Notwithstanding any other law, a right of indemnity under subsection (1) shall have priority over the property of the Administered Companies and shall be paid in priority to all other secured and unsecured debts.

**Immunity**

**33.** (1) No action, suit, prosecution or proceeding whatsoever shall lie or be brought, instituted or maintained in any court or tribunal or before any authority against–

(a) the Minister;

(b) the appointer;

(c) the Administrator;

(d) the Independent Advisor;

(e) any officer of the persons referred to in paragraphs *(b)* and *(d)*; or

(f) any person lawfully acting on behalf of the appointer, the Administrator and the Independent Advisor,

for any loss or damage for or on account of, or in respect of any act or matter done or ordered to be done or omitted to be done by him in good faith and in the exercise of any power or discharge of any duty conferred on him or it under this Act.

(2) No action, suit, prosecution or proceeding whatsoever shall lie or be brought, instituted or maintained in any court or tribunal or before any authority against the Administrator appointed under this Act and any person lawfully acting on behalf of the Administrator by any party for any loss or damage caused by any act or matter done or statement made or omitted to be done by him in good faith and in the exercise of any function or power, conferred or imposed on him under this Act except where such loss or damage is due to wilful misconduct or gross negligence of the Administrator appointed under this Act and any person lawfully acting on behalf of the Administrator.

**Limits on the grant of orders of court**

**34.** (1) Notwithstanding any law, an order of a court cannot be granted—

> *(a)* which stays, restrains or affects the powers of the Administrator under this Act;

> *(b)* which stays, restrains or affects any action taken or proposed to be taken by the Administrator under this Act; or

> *(c)* which compels the Administrator to do or perform any act,

and any such order, if granted, shall be void and unenforceable and shall not be the subject of any process of execution whether for the purpose of compelling obedience of the order or otherwise.

(2) The decisions of the appointer in sections 4 and 5, the Minister in subsection 12(2) and the Administrator in subsection 17(1) shall be final.

**Validity of transaction**

**35.** Notwithstanding any written law or rule of law, any payment made, transaction entered into, or any other act or thing done in good faith by or with the consent of the Administrator shall be valid and effective for the purposes of this Act and shall not be considered as an undue preference in the winding up of the Administered Companies.

*Malaysian Airline System Berhad (Administration)*    29

## Things done in anticipation of the enactment of this Act

**36.** (1) All acts and things done by any person in connection with the property, liabilities, businesses and affairs of the Administered Companies in preparation for or in anticipation of the enactment of this Act and any expenditure incurred in relation to the acts and things done shall be deemed to have been authorized under this Act, if the acts and things done are consistent with the general intention and purposes of this Act.

(2) The incorporation of the Malaysia Airlines Berhad and all acts and things done by any person on behalf of the Malaysia Airlines Berhad and all rights and obligations acquired or incurred on behalf of the Malaysia Airlines Berhad shall, upon the coming into operation of this Act, be deemed to be done under this Act and shall be the rights and obligations of the Malaysia Airlines Berhad.

SCHEDULE

[Section 29]

VESTING OF PROPERTY AND LIABILITIES

**Interpretation**

1. (1) In this Schedule, unless the context otherwise requires—

"transferor" and "transferee" mean the respective parties identified as such in the vesting order;

"vesting order" means the order made by the Minister under section 29;

"transfer date" means the date stated in the vesting order on which any property or liability is transferred and vested.

(2) A reference in this Schedule to "liability" means the whole or such part of a liability as is transferred by way of the vesting order.

**Effect of vesting order**

2. (1) Where a property is transferred under the vesting order—

    *(a)* in the case where the property is held by the transferor alone immediately before the transfer date, the property shall on and from the transfer date vest in the transferee; and

*Laws of Malaysia* **Act 765**

> (b) in the case where the property is held jointly by the transferor with any other person immediately before the transfer date, the property shall on and from the transfer date vest in the transferee jointly with that other person.

(2) The transferee shall, on and from the transfer date of the property, acquire and be vested with all of the transferor's present and future rights, title and interest in, and obligations with respect to, such property, free of any encumbrances save for any registered interest prevailing as at the transfer date.

(3) A vesting order stating that a property or liability has been transferred to and vested in the transferee shall be conclusive evidence of such transfer and vesting as of the transfer date.

(4) No provision in any agreement limiting or prohibiting the right of the transferor or requiring any consent to assign, sell, dispose of or transfer of a property shall have any application or effect in respect of the transfer and vesting of the property to the transferee.

(5) In relation to a liability transferred under a vesting order—

> (a) the transferee shall be deemed to assume the liability and be liable to discharge the liability; and

> (b) the transferor shall be released and discharged from the liability.

(6) In relation to a transfer under a vesting order—

> (a) an existing agreement, instrument, or an order of any court under or by virtue of which the transferor has title, ownership, interest or rights to such property or liability shall be construed and shall have effect as if the reference to the transferor in that agreement, instrument or order were substituted with a reference to the transferee;

> (b) an existing agreement to which the transferor is a party shall have effect as if the transferee had been a party to that agreement instead of the transferor;

> (c) an existing instruction, direction, mandate, power of attorney, authority, undertaking or consent, whether or not in relation to an account that was given to the transferor, either alone or jointly with another person, shall have effect as if given to the transferee either alone or jointly with the other person;

> (d) any security held immediately before the transfer date by the transferor or by a nominee or trustee of the transferor as security for the payment or discharge of any liability of any person, shall be held by the transferee or that nominee or trustee as the nominee or trustee of the transferee, with the same priority as the transferor had, and to the extent of that liability shall be available to the transferee as security for the payment or discharge of that liability; and if any

*Malaysian Airline System Berhad (Administration)*     31

such security extends to future advances or future liabilities, the security shall be held by and be available to the transferee as security for future advances by or future liabilities of the transferee in the same manner as the future advances by or future liabilities of the transferor were secured immediately before the transfer date;

*(e)* in addition to any other right, power or remedy granted to the transferee, the transferee shall have the rights, powers and remedies (and in particular the rights and powers as to taking or resisting legal or other proceedings or making or resisting applications to any authority) for ascertaining, protecting or enforcing the rights, titles and interests vested in the transferee including those rights, titles or interests in respect of any legal or other proceedings or applications to any authority pending immediately before the transfer date by or against the transferor, and resisting any claim, liability or registered interest as if they had at all times been the rights, titles and interests of the transferee;

*(f)* a judgement, award or order obtained by the transferor and not fully satisfied before the transfer date shall be enforceable by the transferee;

*(g)* no transfer to or acquisition by the transferee shall be void or voidable by reason of the application of any law;

*(h)* where the custody of any goods, things or documents is held by the transferor as bailee immediately before the transfer date, such goods, things or documents shall be deemed to have passed to the transferee and the rights and obligations of the transferor under any contract of bailment relating to such goods, things or documents shall be transferred to the transferee;

*(i)* a negotiable instrument or order for payment of money given to or drawn on or accepted by the transferor, or payable at the place of business of the transferor, whether so given, drawn or accepted before, on or after the transfer date, shall have the same effect on and from the transfer date, as if that negotiable instrument or order for payment of money had been given to or drawn on or accepted by the transferee or were payable at the place of business of the transferee; and

*(j)* any account between the transferor and its customer shall become an account between the transferee and the customer, subject to the conditions and incidents that relate to such account up to the transfer date, and such account shall be deemed for all purposes to be a single continuing account.

(7) A transfer of a property or liability under a vesting order shall not—

*(a)* be regarded as placing the transferor, transferee or any person deriving title from the transferee or any other person in breach of or default under any contract or in breach of confidence;

32                      *Laws of Malaysia*                    Aᴄᴛ **765**

    *(b)* be regarded as giving rise to a right or duty for any person to—

        (i) terminate or amend an agreement;

        (ii) enforce or accelerate the performance of an obligation; or

        (iii) require the performance of an obligation not otherwise arising for performance;

    *(c)* be regarded as placing the transferor, transferee or any other person in breach of any law, rule of law or agreement prohibiting, restricting or regulating the assignment, sale, disposal or transfer of any property or liability or disclosure of information;

    *(d)* release a surety from an obligation;

    *(e)* invalidate or discharge a contract or security; or

    *(f)* be regarded as terminating or varying any rights, privileges, exemptions (including any tax exemptions) or priorities to which the transferor was entitled and which by virtue of this Schedule have vested in the transferee or existed in favour of the transferor in relation to any property or liability transferred to the transferee pursuant to this Schedule.

DICETAK OLEH
PERCETAKAN NASIONAL MALAYSIA BERHAD,
KUALA LUMPUR
BAGI PIHAK DAN DENGAN PERINTAH KERAJAAN MALAYSIA