# EXHIBIT A-2

# DECLARATION OF

# SARANJIT SINGH

**IN THE HIGH COURT OF MALAYA AT KUALA LUMPUR**
**IN THE FEDERAL TERRITORY OF MALAYSIA, MALAYSIA**
**CIVIL SUIT NO.:WA-21NCVC-43-04/2016**

**BETWEEN**

1. **HUANG MIN**
   **(NEW YORK LICENSE NO. UNITED STATES: 485714003)**
   (in her personal capacity as the mother of the decedent, ZHANG MENG and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

2. **HU HUA TIAN**
   **(CHINA RESIDENT IDENTIFICATION CARD NO.: 370481195305011824)**
   (in her personal capacity as the mother of the decedents ZHANG YAN and the grandmother of the decedents MENG NICOLE and MENG LEO and for the benefit of the members of the decedents' family as defined under the Carriage by Air Act 1974)

3. **BAO JIAN JUN**
   **(CHINA RESIDENT IDENTIFICATION CARD NO.: 320107196008013458)**
   (in his personal capacity as the brother of the decedent BAO YUAN HUA and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

4. **ZHANG MAN**
   **(CHINA RESIDENT IDENTIFICATION CARD NO.: 52020119740207002X)**
   (in her personal capacity as the daughter of the decedents CHE JUN ZHANG and ZHANG JIN QUAN and for the benefit of the members of the decedents' family as defined under the Carriage by Air Act 1974)

5. **WU XIA**
   **(CHINA RESIDENT IDENTIFICATION CARD NO.: 320106197109050424)**
   (in her personal capacity as the wife of the decedent DONG GUO WEI and and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

6. **ZHANG SHU**
   **(CHINA RESIDENT IDENTIFICATION CARD NO.: 120109197406126546)**
   (in her personal capacity as the wife of the decedent GAN TAO and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

7.  **MA MING FEI**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 110104198703242026)**
    (in her personal capacity as the wife of the decedent LI YU CHEN and for the
    benefit of the members of the decedent's family as defined under the Carriage
    by Air Act 1974)

8.  **GAO YONG FU**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 120106197412182545)**
    (in her personal capacity as the wife of the decedent LI ZHI and for the benefit
    of the members of the decedent's family as defined under the Carriage by Air
    Act 1974)

9.  **LI XIN MIN**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 110106195002124237)**
    (in his personal capacity as the husband of the decedent MA WEN ZHI and
    and for the benefit of the members of the decedent's family as defined under
    the Carriage by Air Act 1974)

10. **MAO ZHU**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 510223197506740025)**
    (in her personal capacity as the daughter of the decedent MAO TU GUI and
    and for the benefit of the members of the decedent's family as defined under
    under the Carriage by Air Act 1974)

11. **YANG FAN**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 110108198510304230)**
    (in his personal capacity as the son of the decedents TANG XUE ZHU dan
    YANG QING QUAN and for the benefit of the members of the decedents'
    family as defined under the Carriage by Air Act 1974)

12. **WANG ZAN**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.:  410502198206260514)**
    (in his personal capacity as the son of the decedent WANG LI JUN and for the
    benefit of the members of the decedent's family as defined under the Carriage
    by Air Act 1974)

13. **WANG ZHENG**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 320102197605161611)**
    (in his personal capacity as the son of the decedents WANG LIN SHI and
    XIONG DE MING and for the benefit of the members of the decedents' family
    as defined under the Carriage by Air Act 1974)

14.  **YAO YI**
     **(CHINA RESIDENT IDENTIFICATION CARD NO.: 310225197410250000)**
     (in his personal capacity as the son of the decedents YANG MEI HUA and YAO JIAN FENG and for the benefit of the members of the decedents' family as defined under the Carriage by Air Act 1974)

15.  **HU LIAN HUA**
     **(CHINA RESIDENT IDENTIFICATION CARD NO.: 130521197307061562)**
     (in her personal capacity as the wife of the decedent ZHANG ZHONG HAI and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

16.  **LOU JIANG TIAN**
     **(CHINA RESIDENT IDENTIFICATION CARD NO.: 320119196805224837)**
     (in his personal capacity as the son of the decedents LOU BAO TANG and ZHAO ZHAO FANG and for the benefit of the members of the decedents' family as defined under the Carriage by Air Act 1974)

17.  **ZHOU MENG YAO**
     **(CHINA RESIDENT IDENTIFICATION CARD NO.: 320211198403044528)**
     (in her personal capacity as the daughter of the decedents ZHOU FENG and ZHOU JIN LING and for the benefit of the members of the decedents' family as defined under the Carriage by Air Act 1974)

18.  **ZHOU KAI LAI**
     **(CHINA RESIDENT IDENTIFICATION CARD NO.: 430103197711222037)**
     (in his personal capacity as the son of the decedent ZHOU SHI JIE and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

19.  **ZHAO SHENG YUAN**
     **(CHINA RESIDENT IDENTIFICATION CARD NO.: 352231197611040917)**
     (in his personal capacity as the husband of the decedent ZHANG SHAO HUA and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

20.  **GUO LI JUN**
     **(CHINA RESIDENT IDENTIFICATION CARD NO.: 410522198803209368)**
     (in her personal capacity as the wife of the decedent SHI XIAN WEN and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

21. **JIAO JIAN**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 110223197512080597)**
    (in his personal capacity as the husband of the decedent YANG LI and for the
    benefit of the members of the decedent's family as defined under the Carriage
    by Air Act 1974)

22. **MENG YAN**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 340111197210147524)**
    (in her personal capacity as the daughter of the decedents MENG FAN QUAN
    and XU CHUAN E and the sister of MENG BING and for the benefit of the
    members of the decedents' family as defined under the Carriage by Air Act
    1974)

23. **FENG JIN SHI**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 342401197411160018)**
    (in his personal capacity as the son of the decedent FENG JI XIN and for the
    benefit of the members of the decedents' family as defined under the Carriage
    by Air Act 1974)

24. **TIAN CHAO**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 130104198904271855)**
    (in his personal capacity as the son of the decedents TIAN QING JUN and
    XIE LIPING and for the benefit of the members of the decedents' family as
    defined under the Carriage by Air Act 1974)

25. **LI YUE HUA**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 140104195803061339)**
    (in his personal capacity as the father of the decedent LI WEN BO and for the
    benefit of the members of the decedent's family as defined under the Carriage
    by Air Act 1974)

26. **WAN MIN**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 110108196602236328)**
    (in his personal capacity as the wife of the decedent GAN FU XIANG and for
    the benefit of the members of the decedent's family as defined under the
    Carriage by Air Act 1974)

27. **YAN SHU SEN**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 410105196007121034)**
    (in his personal capacity as the father of the decedent YAN PENG and for the
    benefit of the members of the decedent's family as defined under the Carriage
    by Air Act 1974)

28. **YAN GANG**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 110108195909098519)**
    (in his personal capacity as the father of the decedent YAN XIAO DAN for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

29. **ZHANG LI XIA**
    **(CHINA RESIDENT IDENTIFICATION CARD NO.: 230105196006121645)**
    (in her personal capacity as the mother of the decedent XING QIAO and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

30. **YU NA LI**
    (in her personal capacity as the mother of the decedent WEN HAO DONG and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

31. **ZHANG YAN MIN**
    (in his personal capacity as the grandfather of the decedent HU SI WAN and the father of the decedent ZHANG NA and for the benefit of the members of the decedents' family as defined under the Carriage by Air Act 1974)

32. **WANG KE FEI**
    (in his personal capacity as the father of the decedent WANG YONG GANG and for the benefit of the members of the decedent's family as defined under the Carriage by Air Act 1974)

                                                                **...PLAINTIFFS**

                                    **AND**

1. **MALAYSIAN AIRLINE SYSTEM BERHAD**
   **(Company No.: 10601-W)**

2. **MALAYSIA AIRLINES BERHAD**
   **(Company No.: 116944-X)**

3. **ALLIANZ GLOBAL CORPORATE AND SPECIALTY**

4. **DIRECTOR GENERAL OF CIVIL AVIATION MALAYSIA**

5. **DEPARTMENT OF CIVIL AVIATION MALAYSIA**

6. **ROYAL MALAYSIAN AIR FORCE**

7.    **GOVERNMENT OF MALAYSIA**

                                              **...DEFENDANTS**

**STATEMENT OF CLAIM**

A.    **PARTIES**

i.    **Plaintiffs**

1.    This action is in relation to the deceased passengers (hereinafter referred to as "*decedents*") of Malaysia Airlines aircraft with the flight code MH370 on 8.3.2014 (hereinafter referred to as "*MH370*").

2.    The Plaintiffs named below bring this action in their personal capacities and on behalf of any other persons entitled to the benefits and/or expressing a desire to take benefits of any liability enforceable (jointly and/or severally) under the *Carriage By Air Act 1974* and/or any other applicable law against the Defendants.

3.    The 1st Plaintiff, HUANG MIN (ID No.:485714003) is the mother of the decedent, ZHANG MENG. The First Plaintiff is a permanent resident of the United States of America and resides at 77 Sunflower Ridge Setauket, New York 11720. The 1st Plaintiff also brings this action on behalf of herself and:

3.1.   ZHANG ZHAO JUN, who is the father of the decedent; and

3.2.   All other lawful beneficiaries and heirs of the decedent.

4.    The 2nd Plaintiff, HU HUA TIAN (ID No.: 370481195305011824) is the grandmother of the decedent, MENG NICOLE.  The Second Plaintiff is a citizen of the People's Republic of China and is residing at No. 2-3-401, Ganjiangxili, Ganjiang Road, Nankai District, Tianjin, China. The 2nd Plaintiff brings this action on behalf of herself and:

4.1.   LUI JIN who is the uncle of the decedent;

4.2.   ZHANG JIAN GUO who is the grandfather of the decedent;

4.3.   ZHANG LU YUE who is the aunt of the decedent; and

4.4.   All other lawful beneficiaries and heirs of the decedent.

5.    The 2nd Plaintiff is also the grandmother of the decedent MENG LEO. The 2nd Plaintiff brings this action on behalf of herself and:

5.1.   LUI JIN who is the uncle of the decedent;

5.2.   ZHANG JIAN GUO who is the grandfather of the decedent;

5.3.   ZHANG LU YUE who is the aunt of the decedent; and

7

5.4.  All other lawful beneficiaries and heirs of the decedent.

6.    The 2nd Plaintiff is also the mother to the decedent, ZHANG YAN. The 2nd Plaintiff brings this action on behalf of herself and:

6.1.  LUI JIN is the brother in law of the decedent;

6.2.  ZHANG JIAN GUO is the father of the decedent;

6.3.  ZHANG LU YUE is the sister of the decedent;

6.4.  LIU HAN YILONG is the son of the decedent; and

6.5.  All other lawful beneficiaries and heirs of the decedent.

7.    The 3rd Plaintiff, BAO JIAN JUN (ID NO.: 320107196008013458) is the brother of the decedent, one BAO YUAN HUA. The Third Plaintiff is a citizen of the People's Republic of China and is residing at 19 Xiqiao Road, Room 402, Gulou District, Nanjing City, China.   The Third Plaintiff brings this action on behalf of himself and:

7.1.  BAO YUAN JUAN who is the sister of the decedent;

7.2.  XU QIN PING who is the mother of the decedent; and

8

5.4.  All other lawful beneficiaries and heirs of the decedent.

6.    The 2nd Plaintiff is also the mother to the decedent, ZHANG YAN. The 2nd Plaintiff brings this action on behalf of herself and:

6.1.  LUI JIN is the brother in law of the decedent;

6.2.  ZHANG JIAN GUO is the father of the decedent;

6.3.  ZHANG LU YUE is the sister of the decedent;

6.4.  LIU HAN YILONG is the son of the decedent; and

6.5.  All other lawful beneficiaries and heirs of the decedent.

7.    The 3rd Plaintiff, BAO JIAN JUN (ID NO.: 320107196008013458) is the brother of the decedent, one BAO YUAN HUA. The Third Plaintiff is a citizen of the People's Republic of China and is residing at 19 Xiqiao Road, Room 402, Gulou District, Nanjing City, China.   The Third Plaintiff brings this action on behalf of himself and:

7.1.  BAO YUAN JUAN who is the sister of the decedent;

7.2.  XU QIN PING who is the mother of the decedent; and

8

7.3.   All other lawful beneficiaries and heirs of the decedent.

8.   The 4th Plaintiff, ZHANG MAN (ID No.: 52020119740207002X) is the daughter of the decedent, CHE JUN ZHANG. The Fourth Plaintiff is a citizen of the People's Republic of China and resides at 1 Naoshikou Street, Building 4, 8F, Chang'an Xingrong Center, Xicheng District, Beijing and brings this action on behalf of herself and:

8.1.   ZHANG JIA who is the son of the decedent; and

8.2.   All other lawful beneficiaries and heirs of the decedent.

9.   The 4th Plaintiff is also the daughter of the decedent, ZHANG JIN QUAN and brings this action on behalf of herself and:

9.1.   ZHANG JIA who is the son of the decedent; and

9.2.   All other lawful beneficiaries and heirs of the decedent.

10.   The 5th Plaintiff, WU XIA (ID No.: 320106197109050424) is the wife of the decedent, one DONG GUO WEI. The Fifth Plaintiff is a citizen of the People's Republic of China and resides at Suite 504, Building 4, No. 124, Huayuan Community, Yongyang Town,

Lishui District, Nanjing City. The Fifth Plaintiff brings this action on behalf of herself and:

10.1. DONG ZHENG QIAN who is the son of the decedent;

10.2. DONG RONG JIE who is the father of the decedent;

10.3. DING GUANG ZHEN is the mother of the decedent; and

10.4. All other lawful beneficiaries and heirs of the decedent.

11.    The 6th Plaintiff, ZHANG SHU (ID No.: 120109197406126546) is the wife of the decedent, one GAN TAO. The Sixth Plaintiff is a citizen of the People's Republic of China and resides at 4-3-101 Shizhengli, Heping District, Tianjin. The Sixth Plaintiff brings this action on behalf of herself and:

11.1. GAN DA CAI who is the father of the decedent;

11.2. LIN YU RONG who is the mother of the decedent;

11.3. GAN QIN TIAN who is the daughter of the decedent; and

11.4. All other lawful beneficiaries and heirs of the decedent.

12.   The 7th Plaintiff, MA MING FEI (ID No. 110104198703242026) is the wife of the decedent, one LI YU CHEN. The Seventh Plaintiff is a citizen of the People's Republic of China and resides at No. 401, Unit 6, Building 3, District 3, No. 305, Guang'anmen Waidajie, Xuanwu District, Beijing and brings this action on behalf of herself and:

12.1. LI YI MING who is the father of the decedent;

12.2. SHENG ZHAO XIA who is the mother of the decedent; and

12.3. All other lawful beneficiaries and heirs of the decedent.

13.   The 8th Plaintiff, GAO YONG FU (ID No.: 120106197412182545) is the wife of the decedent, one LI ZHI. The Eighth Plaintiff is a citizen of the People's Republic of China and resides at 19 Baopingli, Xinhebei Avenue, Hongqiao District, Tianjin, China. The Eight Plaintiff brings this action on behalf of herself and:

13.1. WANG GUO HUI who is the mother of the decedent;

13.2. LI PENG who is the brother of the decedent;

13.3. LI YOU XI (previously LI XUE QING) who is the daughter of the decedent; and

11

13.4. All other lawful beneficiaries and heirs of the decedent.

14.    The 9th Plaintiff, LI XIN MIN (No. ID:110106195002124237) is the husband of the decedent, one MA WEN ZHI. The Ninth Plaintiff is a citizen of the People's Republic of China and resides at Room 2-2-402, Ruihaijiayuan Zone V, Xihongmen Toen, Daxing District, Beijing, China. The Ninth Plaintiff brings this action on behalf of himself and:

14.1. LIN YAN who is the daughter of the decedent;

14.2. MA TENG who is the son of the decedent;

14.3. MA XIU SHEN who is the father of the decedent;

14.4. SONG GUI FEN who is the step mother of the decedent;

14.5. YANG XIU RONG who is the mother of the decedent; and

14.6. All other lawful beneficiaries and heirs of the decedent.

15.    The 10th Plaintiff, MAO ZHU (No. ID: 510223197506140025) is the daughter of the decedent, one MAO TU GUI. The Tenth Plaintiff is a citizen of the People's Republic of China and resides at 17-6-3 Hongqiao Road, Qijiang District, Congqing City, China. The Tenth Plaintiff brings this action on behalf of herself and:

15.1. HU XIAN QUN who is the wife of the decedent;

15.2. LI MING YANG who is the granddaughter of the decedent; and

15.3. All other lawful beneficiaries and heirs of the decedent.

16.  The 11th Plaintiff, YANG FAN (No. ID: 110108198510304230) is the son of the decedent, one TANG XUE ZHU. The Eleventh Plaintiff is a citizen of the People's Republic of China and resides at Room 801, Building 2, Ciuweu Dongli, Haidian District, Beijing City, China. The Eleventh Plaintiff brings this action on behalf of himself and:

16.1. TANG DONG MEI who is the sister of the decedent; and

16.2. All other lawful beneficiaries and heirs of the decedent.

17.  The 11th Plaintiff is also the son of the decedent, one YANG QING YUAN and brings this action on behalf of himself and:

17.1. FENG YU PEI who is the mother of the decedent;

17.2. YANG GUO QING who is the sister of the decedent;

17.3. YANG GANG YUAN who is the brother of the decedent; and

17.4. All other lawful beneficiaries and heirs of the decedent.

18.  The 12th Plaintiff, WANG ZAN (No. ID: 410502198206260514) is the son of the decedent, one WANG LI JUN. The Twelfth Plaintiff is a citizen of the People's Republic of China and resides at Printing Factory Building No. 4, Pan-geng Street, Beiguan District, Anyang City, Henan Province, China. The Twelfth Plaintiff brings this action on behalf of himself and:

18.1. WANG LI PING who is the wife of the decedent;

18.2. YANG XIU QIN who is the mother of the decedent; and

18.3. All other lawful beneficiaries and heirs of the decedent.

19.  The 13th Plaintiff, WANG ZHENG (No. ID: 320102197605161611) is the son of the decedent, WANG LIN SHI. The Thirteenth Plaintiff is a citizen of the People's Republic of China and resides at 602, Building 9, Mafu Xincun, Baixia District, Nanjing City. The Thirteenth Plaintiff brings this action on behalf of himself and all other lawful beneficiaries and heirs of the decedent.

20.  The 13th Plaintiff is also the son of the decedent, XIONG DE MING and brings this action on behalf of himself and:

14

17.3. YANG GANG YUAN who is the brother of the decedent; and

17.4. All other lawful beneficiaries and heirs of the decedent.

18.  The 12th Plaintiff, WANG ZAN (No. ID: 410502198206260514) is the son of the decedent, one WANG LI JUN. The Twelfth Plaintiff is a citizen of the People's Republic of China and resides at Printing Factory Building No. 4, Pan-geng Street, Beiguan District, Anyang City, Henan Province, China. The Twelfth Plaintiff brings this action on behalf of himself and:

18.1. WANG LI PING who is the wife of the decedent;

18.2. YANG XIU QIN who is the mother of the decedent; and

18.3. All other lawful beneficiaries and heirs of the decedent.

19.  The 13th Plaintiff, WANG ZHENG (No. ID: 320102197605161611) is the son of the decedent, WANG LIN SHI. The Thirteenth Plaintiff is a citizen of the People's Republic of China and resides at 602, Building 9, Mafu Xincun, Baixia District, Nanjing City. The Thirteenth Plaintiff brings this action on behalf of himself and all other lawful beneficiaries and heirs of the decedent.

20.  The 13th Plaintiff is also the son of the decedent, XIONG DE MING and brings this action on behalf of himself and:

14

20.1. XIONG HE who is the father of the decedent;

20.2. DUAN SONG RONG who is the mother of the decedent; and

20.3. All other lawful beneficiaries and heirs of the decedent.

21. The 14th Plaintiff, YAO YI (No. ID: 310225197410250000) is the son of the decedent, YANG MEI HUA. The Fourteenth Plaintiff is a citizen of People's Republic of China and resides at 86 Guanyue Road, Building 5 Room 402, Zhoupu Town, Pudong New District, Shanghai, China. The Fourteenth Plaintiff brings this action on behalf of himself and:

21.1. YAO QIANG who is the son of the decedent; and

21.2. All other lawful beneficiaries and heirs of the decedent.

22. The 14th Plaintiff is also the son of the decedent YAO JIAN FENG and brings this action on behalf of himself and:

22.1. YAO QIANG who is the son of the decedent;

22.2. YAO BO RONG who is the father of the decedent; and

22.3. All other lawful beneficiaries and heirs of the decedent.

23.    The 15th Plaintiff, HU LIAN HUA (No. ID: 130521197307061562) is the wife of the decedent, one ZHANG ZHONG HAI. The Fifteenth Plaintiff is a citizen of the People's Republic of China and resides at 418 Dongliangshe Village, Huining Town, Xingtai County, Xingtai City, Hebei Province China and brings this action on behalf of herself and:

23.1.    ZHANG ZHONG QIAN who is the brother of the decedent

23.2.    ZHANG ZHI XUE who is the father of the decedent;

23.3.    GENG QIAONV who is the mother of the decedent;

23.4.    ZHANG YU who is the son of the decedent; and

23.5.    All other lawful beneficiaries and heirs of the decedent.

24.    The 16th Plaintiff, LOU JIANG TIAN (No. ID: 320119196805224837) is the son of the decedent, LOU BAO TANG. The Sixteenth Plaintiff is a citizen of the People's Republic of China and resides at Suite 906, Tower C, Aotimingzuo, No.303, Middle Jiangdong Road, Nanjing City, China. The Sixteenth Plaintiff brings this action on behalf of himself and:

24.1. LOU JIANG YUE who is the daughter of the decedent; and

24.2. LOU JIANG HAO who is the son of the decedent; and

24.3. All other lawful beneficiaries and heirs of the decedent.

25.    The 16th Plaintiff is also the son of the decedent ZHAO ZHAO

FANG brings this action on behalf of himself and:

25.1. LOU JIANG YUE who is the daughter of the decedent;

25.2. LOU JIANG HAO who is the son of the decedent; and

25.3. All other lawful beneficiaries and heirs of the decedent.

26.    The 17th Plaintiff, ZHOU MENG YAO (No. ID: 320211198403044528)

is the daughter of the decedent, ZHOU FENG. The Seventeenth

Plaintiff is a citizen of the People's Republic of China and resides

at 18 Changxi Xincun, Yanqiao Street, Huishan District, Wuxi,

Jiangsu Province, China. The Seventeenth Plaintiff  brings this

action on behalf of herself and:

26.1. ZHOU LIANG XUE who is the father of the decedent; and

26.2. All other lawful beneficiaries and heirs of the decedent.

17

27.    The 17th Plaintiff is also the daughter of the decedent ZHOU JIN LING brings this action on behalf of herself and all other lawful beneficiaries and heirs of the decedent.

28.    The 18th Plaintiff, ZHOU KAI LAI (No. ID: 430103197711222037) is the son of the decedent, one ZHOU SHI JIE. The Eighteenth Plaintiff is a citizen of the People's Republic of China and resides at Room 301, Building 3, No. 479 Chezan North Road, Furong District, Changsha City, Hunan Province, China. The Eighteenth Plaintiff brings this action on behalf of himself and:

28.1. LI SHU FANG who is the wife of the decedent;

28.2. ZHOU YA LIAI who is the son of the decedent; and

28.3. All other lawful beneficiaries and heirs of the decedent.

29.    The 19th Plaintiff, ZHAO SHENG YUAN (No. ID: 352231197611040917) is the husband of the decedent, one ZHANG SHAO HUA. The Nineteenth Plaintiff is a citizen of the People's Republic of China and resides at 22 Liucheng West Road, Shuangcheng sub-county, Zherong County Fujian Province, China. The Nineteenth Plaintiff brings this action on behalf of himself and:

29.1. ZHANG SHI JI who is the father of the decedent;

18

29.2. LI QIU LAN who is the mother of the decedent;

29.3. ZHAO ZHEN who is the daughter of the decedent;

29.4. ZHAO XIU SHU who is the brother in law of the decedent; and

29.5. All other lawful beneficiaries and heirs of the decedent.

30.   The 20th Plaintiff, GUO LI JUN (No. ID: 410522198803209368) is the wife of the decedent, one SHI XIAN WEN. The Twentieth Plaintiff is a citizen of the People's Republic of China and resides at 3 Houxi Street, Dongbeiwu Village, Baibi sub-county, Anyang County, Henan Province, China.   The Twentieth Plaintiff brings this action on behalf of herself and as follows:

30.1. SHI FENG XIN who is the father of the decedent;

30.2. PU XING XUI who is the mother of the decedent;

30.3. SHI YU XUAN who is the son of the decedent; and

30.4. All other lawful beneficiaries and heirs of the decedent.

31.   The 21st Plaintiff, JIAO JIAN (No. ID: 110223197512080597) is the husband of the decedent, one YANG LI. The Twenty-first Plaintiff

is a citizen of the People's Republic of China and brings this action on behalf of himself and:

31.1. YANG GENGXIN who is the father of the decedent;

31.2. HAN SHUYING who is the mother of the decedent; and

31.3. All other lawful beneficiaries and heirs of the decedent.

32.   The 22nd Plaintiff, MENG YAN (No. ID: 340111197210147524) is the daughter of the decedent, MENG FAN QUAN. The Twenty-second Plaintiff is a citizen of the People's Republic of China and resides at 1801 Wangcheng Mansion, 248 Changjiang West Road, Hefei, Anhui Province, China and brings this action on behalf of herself and all other lawful beneficiaries and heirs of the decedent.

33.   The 22nd Plaintiff is also the daughter of the decedent XU CHUAN E and brings this action on behalf of herself and all other lawful beneficiaries and heirs of the decedent.

34.   The 22nd Plaintiff is also the sister of the decedent, one MENG BING and brings this action on behalf of herself and all other lawful beneficiaries and heirs of the decedent.

35.   The 23rd Plaintiff, FENG JIN SHI (No. ID: 342401197411160018) is the son of the decedent, one FENG JI XIN. The Twenty-second

Plaintiff is a citizen of the People's Republic of China and resides at No.166, Renmin Road, Jin'an District, Liu'an City, Anhui Province, China and brings this action on behalf of:

35.1. LIU CHENG YING who is the wife of the decedent;

35.2. FENG JIE HAO who is the daughter of the decedent; and

35.3. All other lawful beneficiaries and heirs of the decedent.

36.   The 24th Plaintiff, TIAN CHAO (No. ID: 130104198904271855) is the son of the decedent, TIAN QING JUN. The Twenty-fourth Plaintiff is a citizen of the People's Republic of China and brings this action on behalf of himself and:

36.1. TIAN JIN QI who is the father of the decedent;

36.2. LI LA MEI who is the mother of the decedent; and

36.3. All other lawful beneficiaries and heirs of the decedent.

37.   The 24th Plaintiff, TIAN CHAO is also the son of the decedent XIE LI PING and brings this action on behalf of himself and:

37.1. LI SHU QIN who is the mother of the decedent; and

21

37.2. All other lawful beneficiaries and heirs of the decedent.

38.   The 25th Plaintiff, LI YUE HUA (No. ID: 140104195803061339) is the father of the decedent, one LI WEN BO. The Twenty-fifth Plaintiff is a citizen of the People's Republic of China and resides in Fangzhuang South Road, Tianyifu Garden, Building 1, Unit 5, Room 702, Fengtai District, Beijing, China and brings this action on behalf of himself and:

38.1. LI SHU PING who is the mother of the decedent; and

38.2. All other lawful beneficiaries and heirs of the decedent.

39.   The 26th Plaintiff, WAN MIN (No. ID: 110108196602236328) is the wife of the decedent, one GAN FU XIANG. The Twenty-sixth Plaintiff is a citizen of the People's Republic of China and brings this action on behalf of herself and:

39.1. GAN MIN SONG who is the father of the decedent;

39.2. GAN YU ZHEN who is the mother of the decedent; and

39.3. GAN TING'AN who is the son of the decedent; and

39.4. All other lawful beneficiaries and heirs of the decedent.

40. The 27th Plaintiff, YAN SHU SEN (No. ID: 410105196007121034) is the father of the decedent, one YAN PENG. The Twenty-seventh Plaintiff is a citizen of the People's Republic of China and resides at Xinyuan Shijia Building 4, Unit 2, Room 401, Jinshui District, Zhengzhou City, Henan Province, China and brings this action on behalf of himself and:

40.1. TIAN XI YUAN who is the mother of the decedent; and

40.2. All other lawful beneficiaries and heirs of the decedent.

41. The 28th Plaintiff, YAN GANG (No. ID: 110108195909098519) is the father of the decedent, one YAN XIAO DAN. The Twenty-eighth Plaintiff is a citizen of the People's Republic of China and resides at Double Garden Complex, Nanli Zone One, Building 8, Door 4, Room 501, Chaoyang District, Beijing, China and brings this action on behalf of himself and:

41.1. MA XUE YAN who is the mother of the decedent; and

41.2. All other lawful beneficiaries and heirs of the decedent.

42.    The 29th Plaintiff, ZHANG LI XIA (No. ID: 230105196006121645) is the mother of the decedent, one XING QIAO. The Twenty-ninth Plaintiff is a citizen of the People's Republic of China and resides at Hongqi Complex Building 63, Unit 1, Room 403, Shidao Wai Zone, Haerbin City, China and brings this action on behalf of herself and:

42.1. XING YU ZHI is the father of the decedent; and

42.2. All other lawful beneficiaries and heirs of the decedent.

43.    The 30th Plaintiff, YU NA LI is the mother of the decedent, one WEN HAO DONG. The Thirtieth Plaintiff is a citizen of the People's Republic of China and brings this action on behalf of herself and all other lawful beneficiaries and heirs of the decedent.

44.    The 31st Plaintiff, ZHANG YAN MIN is the grandfather of the decedent HU SI WAN and the father of ZHANG NA. The Thirty-first Plaintiff is a citizen of the People's Republic of China and brings this action on behalf of himself and:

44.1. LI XUE ZHENG who is the grandmother of the decedent, HU SI WAN and mother of the decedent; and

44.2. All other lawful beneficiaries and heirs of the decedent.

45.    The 31st Plaintiff  is also the father of the decedent ZHANG NA and brings this action on behalf of himself and:

45.1. LI XUE ZHENG who is the mother of the decedent; and

45.2. All other lawful beneficiaries and heirs of the decedent.

46.    The 32nd Plaintiff, WANG KE FEI is the father of the decedent, one WANG YONG GANG. The Thirty-second Plaintiff is a citizen of the People's Republic of China and brings this action on behalf of himself and:

46.1. CUI LI MANG who is the mother of the decedent; and

46.2. All other lawful beneficiaries and heirs of the decedent.

**ii.**    **Defendants**

47.    The 1st Defendant - Malaysian Airline System Bhd (hereinafter referred to as **"MAS"**) - is a company incorporated pursuant to the Companies Act 1965. MAS' registered address is at 3rd Floor, Administration Building 1, MAS Complex A, Sultan Abdul Aziz Shah Airport, 47200 Subang, Selangor Darul Ehsan.

48.   MAS carried on its business of being an 'international carrier by air' as "**Malaysia Airlines**". In this regard:

48.1. MASwas placed under administration pursuant to **Malaysian Airline System Berhad (Administration) Act 2015** (Act 765) (hereinafter referred to as **"Act 765"**).

48.2. On 22.2.2016, the Administrator of MAS granted consent to the Plaintiffs to commence legal proceedings against MAS.

49.   The 2nd Defendant – Malaysia Airlines Berhad (hereinafter referred to as **"MAB"**) - is a company incorporated pursuant to the Companies Act 1965. MAB's registered address is at Level 33, Tower 2, Petronas Twin Towers, Kuala Lumpur.

50.   MAB also carries on its business of being an 'international carrier by air' as "**Malaysia Airlines**". MAB is liable to indemnify and/or guarantee payment of any damages ordered against MAS and/or Allianz. Alternatively, MAB as the successor of MAS is jointly and/or severally liable with MAS.

51.   The 3rd Defendant - Allianz Global Corporate and Specialty (hereinafter referred to as **"Allianz"**) - is the insurer and/or

26

underwriter and/or otherwise managed a consortium of underwriters for the 1st Defendant and/or the 2nd Defendant.

52.  As per the *Montreal Convention 1999* and *Carriage by Air Act 1974*, in the case of the death of a "person liable", an action lies against those legally representing his or her estate. In this regard:

52.1. The term "**person**" in the *Montreal Convention 1999* and *Carriage by Air Act 1974* encompasses **both legal and natural persons**.

52.2. If because of the operation of *Act 765*, MAS as the "person" liable is deemed effectively dead under the definitions of *Montreal Convention 1999*, Allianz and/or MAB must be taken to represent the estate of MAS.

53.  The 4th and 5th Defendants are the Director General of Civil Aviation Malaysia and the Department of Civil Aviation Malaysia respectively (*hereinafter referred to as "DCA"*). Both the 4th Defendant's and the DCA's address for service is at No.27, Persiaran Perdana, Aras 1-4 Blok Podium, 62618 Putrajaya.

54.  Operating under the control of the Ministry of Transport (hereinafter referred to as *"MOT"*) DCA is the primary regulatory

27

agency and/or authority for civil aviation in Malaysia. DCA is responsible for all civilian air traffic control and the safety of civilian air traffic in Malaysia. In this regard, *inter alia*:

54.1. The DCA is responsible for air traffic services in Malaysian airspace, namely operating from two (2) Flight Information Centres; being the Kuala Lumpur Flight Information Centre (**"KL FIR"**) and the Kota Kinabalu Flight Information Centre (**"KK FIR"**); and

54.2. The DCA is also governed by the ***Civil Aviation Act 1969*** and all its subsidiary legislations and regulations therein.

54.3. Both KL FIR and KK FIR are within the control and supervision of DCA.

55. The 6th Defendant is the Royal Malaysian Air Force (***hereinafter referred to as "RMAF"***). RMAF's address for service is at Bahagian Perhubungan Awam, Markas Tentera Udara, Tingkat 18.12, Wisma Pertahanan, Jalan Padang Tembak, 50634 Kuala Lumpur. RMAF is responsible for, *inter alia,* the complete protection and defence of the Malaysian airspace.

56. The 7th Defendant is the Government of Malaysia which owns and/or substantially owns the 1st and/or the 2nd Defendant.

Government of Malaysia is also the employer and/or the principal of the 4th and/or 5th and/or 6th Defendants. In this regard:

56.1. At all material times, the 4th and/or 5th and/or 6th Defendants were directly or indirectly under the control and/or supervision of the 7th Defendant.

56.2. The 7th Defendant is vicariously liable for all acts and/or omission and/or neglect and/or breach of duty by the 4th and/or 5th and/or 6th Defendants.

B.    **FACTS**

i.    **Preliminaries**

57.    Paragraph 1 is repeated. On 29.01.2015, the Government of Malaysia declared *"MH370 an accident in accordance with the Standards of Annexes 12 and 13 to the Chicago Convention and that all 239 of the passengers and crew onboard MH370 are presumed to have lost their lives".*

58.    Prior to the said declaration in paragraph 57, on or around 15.04.2015, the Malaysian International Civil Aviation Organisation Annex 13 Safety Investigation Team for MH370 released the Factual Information Safety Investigation for MH370

(hereinafter referred to as "**_Factual Safety Investigation Report_**").

59.    The facts pleaded below are based on, among others, the said Factual Safety Investigation Report and documents made available to the public. In this regard:

    59.1. The Plaintiffs reserve their rights to rely on such other events, circumstances and/or facts as they become known to the Plaintiffs in the course of discovery and/or during trial and/or in any other way.

    59.2. Unless stated otherwise, time referred to herein is the local time in Malaysia (hereinafter referred to as "**MYT**").

ii.    **The Aircraft**

60.    MH370 was a Boeing 777 – 200ER (Extended Range) aircraft bearing the registration number '9M-MRO'. MH370 was assembled and/or manufactured by Boeing Corporation.

61.    MH370 was, among others:

61.1. equipped with a transponder. MH370's transponder allows for its identification by air traffic controllers and alerts air traffic controllers as to, among others, MH370's location;

61.2. equipped with two (2) crash-protected flight recorders (being one Solid State Flight Data Recorder (SSFDR) and one Solid State Cockpit Voice Recorder (SSCVR)) commonly referred to as "*black boxes*". The SSFDR and the SSCVR were equipped with underwater locator beacons ("**ULB**"). These ULB are activated by immersion in fresh or salt water and are supposed to transmit their location for up to 30 days on the 37.5 kHz frequency and operate at a depth of 20,000 feet; and

61.3. equipped with an "*Aircraft Addressing and Reporting System*" (hereinafter referred to as "*ACARS system*") and a satellite communications system ("*SATCOM*").

iii.    **ACARS**

62.    The ACARS system enabled MH370 to transmit and receive among others, information and/or communication relating to MH370's system health checks to and from ground facilities.

31

63.  MH370's ACARS system was pre-set to transmit, among others, MH370's position report every 30 minutes to MAS Operations Control Centre (*"MAS OPS"*). In this regard:

63.1. If MH370's ACARS system is silent for more than 30 minutes, MAS OPS was supposed to send a text message and/or call the cockpit.

63.2. Transmissions of information and/or communication to and from MH370 were carried out by utilising VHF frequencies and/or SATCOM.

iv.  **SATCOM**

64.  SATCOM operates by using satellites to relay radio signals between the sender and receiver. The SATCOM units on board MH370 were manufactured by Honeywell/Thales and the SATCOM terminals used the Inmarsat Classic Aero System which is owned and operated by a British Company, Inmarsat plc. The Inmarsat system utilised a constellation of satellites for nearly global coverage.

65.  Inmarsat uses a network of Ground Earth Stations (hereinafter referred to as *"GES"*) to communicate with the satellites and

32

connect SATCOM signal to other terrestrial data networks. In this regard:

65.1. There are a number of channels available for messages to be sent between the SATCOM and GES. One of the channels is called the '*common access channel*'. When it is able to do so, MH370's SATCOM will be constantly logged on to the common access channel.

65.2. When MH370's SATCOM was first powered on, it sent a log-on request to GES to initiate communication and/or service.

65.3. Subsequently, if the GES has not heard from MH370's SATCOM for an hour after the last communication, GES automatically transmits a log-on/log-off message (hereinafter referred to as "***ping***") on the common access channel using MH370's unique identifier. If MH370 receives its unique identifier, MH370 will return a short message confirming that it is still logged onto the network.

65.4. Both the initial log on request and the hourly ping messages have been termed as a "handshake".

v.    **Events on 8.3.2014 – From Departure until the last handshake.**

66.    On 08.03.2014 at 0041, MH370 departed from Kuala Lumpur International Airport (**"KLIA"**) with 227 passengers and 12 crew members. MH370 also carried 2,453 kg of Lithium batteries, 4,566 kg of mangosteens and 2,934 kg of unidentified cargo. MH370 was scheduled to land at Beijing, China at 0630.

67.    MH370's planned flight path was to head northeast from Kuala Lumpur and to enter the Vietnamese airspace between 2 navigational waypoints named "IGARI" and "BITOD".

68.    At 0043:31, KL FIR informed the Air Traffic Control Centre in Ho Chi Minh (**"HCM"**) that MH370 would arrive at waypoint IGARI at 0122.

69.    7 minutes thereafter, at 0050:11, MH370 confirmed to KL FIR that it was climbing to an altitude of 35,000 feet. MH370 then reported to KL FIR at 0101:17 and at 0107:56 that MH370 was maintaining that height.

70.    At 0107:29 MH370 transmitted its first position report through its ACARS system. The said position report will also turn out to be MH370's last transmission through its ACARS system.

71.   At 0119:26, KL FIR instructed MH370 to make contact with HCM by radio. This was acknowledged by MH370 at 0119:30. The said acknowledgement was MH370's final recorded audio transmission from the cockpit. This instruction by KL FIR to MH370 was given 3 minutes before MH370 was scheduled to arrive at waypoint IGARI. Paragraph 67 is repeated.

72.   Radar recording showed that MH370 passed through waypoint IGARI at 0120:31.

73.   The earliest sign that something was amiss surfaced less than a minute thereafter. At 0121:13. MH370's radar symbol disappeared from the radar displays of KL FIR and HCM.

74.   Review of its recordings subsequent to the event revealed that at about the same time, RMAF's alleged military radar recordings showed an alleged radar return of an unidentified aircraft at similar position to that of MH370.

75.   However, the said unidentified aircraft appeared to be turning right and almost immediately made a constant left turn and headed in the complete opposite direction from MH370's scheduled and/or intended flight path. In this regard:

75.1. No remedial steps were taken by the DCA and/or the RMAF at that material time. There is no record of any communication between RMAF and the DCA at that material time.

75.2. This unidentified aircraft was only declared as MH370 on 14.3.2014, at least 6 days after MH370 was scheduled to land at Beijing.

76.    MH370 did not make any contact with HCM.

77.    At 0137:29, 30 minutes would have passed from MH370's transmission of its position report through its ACARS system. Paragraphs 62 and 63 are repeated. In this regard:

77.1. MAS OPS did not initiate contact to the cockpit at that material time.

78.    At 0139:06, HCM informed KL FIR that verbal contact with MH370 had not been established and inquired about MH370. HCM also informed KL FIR that the radar target for MH370 was last seen at waypoint BITOD.

79.    KL FIR's first attempt to contact MH370 after its radar target disappearance was at 0141:23. This was 20 minutes after

MH370's radar sign disappeared from KL FIR's radar. KL FIR's attempt was met with no response from MH370.

80.  At 0146:47, HCM reiterated to KL FIR that MH370's observed radar signal had disappeared at waypoint 'BITOD' and no verbal contact was established with MH370.

81.  While HCM made repeated inquires to KL FIR, RMAF's military radar allegedly continued tracking MH370. From 0121:13 to 0152:35, MH370 charted an unplanned course in the Malaysian airspace. From its position over the South China Sea (northeast of Peninsular Malaysia) MH370 flew to a position slightly south of Penang island (northwest of Peninsular Malaysia).

82.  At 0157:02, after attempting to contact MH370 on many frequencies, HCM for the third time informed KL FIR that MH370 was still not contactable.

83.  At 0202:59, RMAF's alleged military radar returns still showed MH370's position. RMAF's alleged military radar returns registered MH370's position at over Pulau Perak, a small island over the Straits of Malacca. However, while this was happening, at 0203:48, KL FIR informed HCM that **MH370 was in Cambodian Airspace**. In this regard:

83.1. KL FIR's communication to HCM was based on information received from MAS OPS. HCM informed KL FIR that they would check with Cambodia.

84.    At 0203:23, MAS OPS sent a message to MH370's cockpit through MH370's ACARS system. MAS OPS requested MH370's crew to contact HCM immediately. In this regard:

84.1. The said MAS OPS' message failed to reach MH370.

84.2. The said MAS OPS' message was automatically re-transmitted every 2 minutes until 0243:33. All of those messages failed to reach MH370.

85.    At 0207:47, HCM once again contacted KL FIR and sought confirmation that MH370 was in Cambodian airspace and under the control of Phnom Penh FIR. KL FIR again informed HCM that according to MAS OPS, MH370 was **still flying and was over Cambodian airspace** at that material time.

86.    At 0208:14 HCM informed KL FIR that they do not have any information and that upon inquiry Phnom Penh FIR stated that they too did not have any information on MH370.

87. At 02:11:37, for the fourth time, HCM asked KL FIR about the status of MH370.

88. Despite all of its messages failing to reach MH370 as pleaded in paragraph 84, at 02:15, MAS OPS informed KL FIR that *__MH370 was able to exchange signals__* and was *__flying in Cambodian airspace__*.

89. At 0218:53, HCM responded to a query by KL FIR. HCM stated that MH370's flight path was not through the Cambodian airspace and was only through the Vietnamese airspace. In this regard:

89.1. HCM also confirmed again to KL FIR that HCM had checked with Cambodian civil aviation authorities and Phnom Penh FIR confirmed that they had no information on or contact with MH370.

90. While events as pleaded in paragraphs 82 to 89 were taking place, RMAF's alleged military radar returns was still displaying MH370's movements. The last known radar position of MH370 from RMAF's military radar was allegedly at 10 nautical miles after waypoint MEKAR. Thereafter, MH370 disappeared abruptly from RMAF's radar at 0222:12.

91. At 0233:59, KL FIR asked MAS OPS about their communications with MH370. In the ensuing conversation, MAS OPS now stated that MH370 was still sending *"movement message indicating **somewhere in Vietnam**"*. In this regard:

    91.1. MAS OPS gave MH370's position at 0233:56 at coordinates N14.90000 E109 15500. In this regard:

        a.   Paragraph 84 is repeated. All automatic messages sent to MH370 by MAS OPS through the ACARS system had failed to reach the aircraft and ought to be known by MAS OPS in real time. However, MAS OPS informed KL FIR that the message went through successfully.

        b.   No ACARS system position report was sent by MH370 since the first and last report at 0107:29. However MAS OPS informed KL FIR that the aircraft movement message is being downloaded MAS OPS even provided a longitude and latitude to KL FIR.

92. At 0235:02, MAS OPS informed KL FIR for the first time that they would try to call MH370 through SATCOM.

93. Almost at the same time, HCM had enquired about the status of MH370 from KL FIR at 0234:56. In this regard:

93.1. HCM was informed that the communication between KL FIR and MAS OPS was ongoing.

93.2. At 0237:34, KL FIR informed HCM that MH370 was still flying and continuing to send position reports. KL FIR also conveyed the co-ordinates given by MAS OPS to HCM.

94. The first telephony call from MAS – OPS to MH370 through SATCOM was at 0239 at Q10 priority level of Airline Operational Communications (AOC).

95. The said telephony call would have been routed to the cockpit and should have resulted in at least a chime and an incoming visual annunciation on MH370's audio control panels. MAS – OPS' call was not answered. The logs showed that the unanswered call was cleared by MAS-OPS. Almost 5 hours would have passed before MAS – OPS makes another telephony call to the cockpit through SATCOM. In this regard:

95.1. KL FIR never attempted to contact MH370 through SATCOM.

41

95.2. Both KL FIR and MAS – OPS never attempted to contact MH370 through SATCOM at the highest priority level of Airline Operational Communications.

96. At 0253:47, upon request by HCM, another MAS aircraft in the vicinity, MH386, attempted to contact MH370 on KL FIR radar frequencies. KL FIR - having noticed MH386's attempt - also requested MH386 to contact MH370 on emergency frequency.

97. At 0330 MAS OPS informed KL FIR for the first time that all MAS OPS's information given to KL FIR earlier was **based on flight projections and are not reliable for aircraft positioning**. Paragraph 91 is repeated. By this time, KL FIR knew or ought to have known that no one had been able to communicate with MH370 since its last known communication at 0119:30.

98. At 0330:03 and again at 0348:52, KL FIR enquired whether HCM had checked with the next Flight Information Centres (being the Hainan FIR and the Sanya FIR) on MH370's planned flight path to Beijing. HCM stated neither of those FIRs had responded.

99. More than an hour thereafter, at 0518:32, KL FIR asked HCM whether any information was received from Hong Kong or Beijing civil aviation authorities.

100. At 0520:17, a Captain (whose name was redacted in the Preliminary Report) requested information on MH370. The said Captain opined that, based on known information, "*MH370 never left Malaysian airspace*".

101. KL FIR allegedly activated the Kuala Lumpur Aeronautical Rescue Co-ordination Center ("KL ARCC") at 0530. KL ARCC is the department of the DCA responsible for co-ordinating search and rescue operations for aircraft.

102. At 0541:20, HCM enquired again for any updates on MH370. This was the sixth of such enquiry by HCM to KL FIR.

103. At 0614:13, KL FIR asked HCM whether search and rescue operations had been activated. KL FIR then informed HCM that KL FIR would activate its search and rescue operations.

104. MH370 never arrived at Beijing at 06:30 as scheduled. Only then, at 06:32, KL ARCC issued a distress message (DETRESFA) for MH370.

105. MAS OPS attempted its second telephony call to MH370's cockpit at 07:13. This call too was unanswered and was cleared by MAS-OPS.

106. Throughout MH370's flight, Inmarsat's network of GES continued to ping MH370's SATCOM. The SATCOM link was available for most of the flight. The SATCOM link was lost sometime between transmission of MH370's position report through its ACARS system at 0107:48 and 0203:41.

107. SATCOM log on was initiated from MH370's terminal at 0225:27 and was completed at 0225:34. However no flight ID was sent to the GES during the log on. This marked the end of the link lost period which occurred earlier. This was the first handshake.

108. The second, third, fourth, fifth and 6th handshakes were initiated by the GES and occurred at 0341, 0441, 0541, 0641 and 0810 respectively. Each one of these handshakes received response from MH370's SATCOM.

109. The 7th and final handshake occurred at 0819:29 and was initiated from MH370's terminal. No flight ID was sent to the GES during the log on. Thereafter, MH370 did not respond to handshakes initiated by the GES.

c. **Post – Disappearance Events**

110. Paragraph 104 is repeated. Thereafter, Malaysia led and directed the search and rescue operations on 08.03.2014.

44

111. As MH370's last recorded communication occurred while its position was close to waypoint IGARI, the search and rescue operations were allegedly focused solely in the South China Sea.

112. However, on 11.3.2014 for the first time the commander of RMAF, General Rodzali Daud, among others, confirmed publicly that the RMAF military radar had allegedly tracked MH370 to a location in the Straits of Malacca.

    112.1. However, on 12.3.2014, General Rodzali Daud denied ever having made such statement.

113. On 09.03.2014, a report published by Interpol revealed that at least two passports – Austrian and Italian – recorded in its Stolen and Lost Travel Documents (SLTD) database were used by passengers on board MH 370. Interpol was further confirmed that the Austrian and Italian passports were added to its SLTD database after their theft in Thailand in 2012 and 2013 respectively.

114. On 15.3.2014, the Prime Minister of Malaysia, Dato' Sri Najib bin Tun Razak (hereinafter referred to as "*Najib*") announced for the first time that the aircraft shown on the RMAF's military primary radar was allegedly MH370. Further, Najib stated that the last

confirmed communication between MH370's SATCOM and the satellite was at 0811 thus establishing that MH370 had continued flying even after its last recorded voice communication from the cockpit at 0119:30.

115. Apart from the above, Najib had also revealed that based on the satellite data, MH370 could be in either the northern corridor (Kazakhstan to Thailand) or the southern corridor (Indonesia to the Indian Ocean).

116. On 24.3.2014, MAS sent a text message to the next of kin of the decedents stating, among others, that it must be assumed that MH370 has been lost and none of those on board MH370 survived. Shortly thereafter, an announcement was made by Najib that MH370 had "*ended up*" in the South Indian Ocean.

117. On or about 26.03.2014, Australia took charge of the search and rescue operations.

118. By 08.4.2014, about 30 days had passed from the date of MH370's disappearance. MH370's black boxes have not been located. The Factual Safety Investigation Report stated that :

118.1. The battery on the ULB for the SSFDR expired in December 2012 and that there was no evidence in the

46

maintenance records to suggest that the battery had been replaced before the expiry date;

118.2. That the battery for the SSCVR's underwater locator beacon was due to expire in June 2014; and

118.3. There was a failure by the 1st Defendant and/or its servants and/or agents to replace and install the said black boxes and the ULBs.

119. The MOT detailed its findings from its investigation done in the first three weeks of the incident in MH370 Preliminary Report dated 09.04.2014 (hereinafter referred to as "*Preliminary Report*"). The Preliminary Report was only made public on 1.5.2014.

120. The preliminary report failed to disclose, among others:

120.1. That the RMAF military radar allegedly continued to track MH370 even after MH370's radar symbol had disappeared from KL FIR and HCM's radar; and

120.2. The changes of MH370's flight direction which were referred to as "turn-back" by among others, RMAF, DCA and Najib. MH370's directional changes resulted in its final

course being northwest towards India and not Southeast towards Australia.

121.  On   01.05.2014   Datuk   Seri   Hishamuddin   bin   Hussein ("**Hishamuddin**") in a press statement made when publicly releasing the Preliminary Report:-

　　121.1. Stated that it was the Malaysian Government's policy that "*as long as the release of a particular piece of information does not hamper the investigation or search operation, in the interests of openness and transparency, the information should be made public*";

　　121.2. Publicly disclosed that the RMAF's military radar had tracked "***an aircraft" making a turn-back, across peninsular Malaysia, but that the aircraft was "categorised as friendly by the radar operator and therefore no further action was taken at the time***".

122.  Crucial information was revealed by Hishamuddin in relation to RMAF's actions and/or omissions. RMAF's military radar data was allegedly reviewed at 0830 on 8.3.2014 and was made known to both Hishamuddin and Najib by 1030 the same day and a separate search and rescue operations were allegedly commenced in the Straits of Malacca solely by Malaysia.

123. Hishamuddin also did not provide any reasons for RMAF's categorisation of the said "unknown aircraft" as "friendly". There was no explanation as to why RMAF did not notify DCA that the said "friendly" aircraft had made a turn back and began travelling in a completely opposite direction.

124.  2 days thereafter, on 3.5.2014, MAS for the first time asserted that MAS OPS centre had given inaccurate information that MH370 was in Cambodian airspace when it was actually in Vietnamese airspace, due to an alleged fault in its Flight Following System.

125. On or about 19.5.2014 Hishamuddin revealed for the first time that the Malaysian civil aviation authorities had allegedly instructed the RMAF to keep an eye on MH370. However, RMAF did not take any steps to investigate what was going on and did not send any aircraft up as MH370 "was not hostile" and it would be pointless to send pilots up if MH370 was not going to be shot down. In this regard:

125.1. According to retired Malaysian Navy First Admiral Imran Abdul Hamid, a team of up to 5 officers ought to have been manning military radar at the RMAF base in Butterworth

precisely to be on the lookout for any unidentified aircraft entering Malaysia's airspace; and

125.2. RMAF's failure to investigate was a breach of its Standard Operating Procedure.

126. On 29.01.2015, the Government of Malaysia declared that:

126.1. MH370 "an accident in accordance with the standard of Annexure 12 and 13 to the Chicago Convention"; and

126.2. "that all 239 of the passengers and crews on board MH370 are presumed to have lost their lives".

127. Based on the above, the Plaintiffs plead that the 1st, 2nd, 3rd, Defendants are liable to the Plaintiffs and the decedents' family members under the provisions of the Carriage by Air Act 1974 and a breach of contract and that all Defendants are liable (jointly and/or severally) to the Plaintiffs and the decedents' family members for damages arising out of negligence and/or breach of statutory duties.

**C.    CASE AGAINST THE 1ST, 2ND and 3RD DEFENDANTS**

    *i.    Montreal Convention*

128.  As pleaded above, the decedents named herein are citizens and/or permanent residents of the United States of America and/or The People's Republic of China.

129.  Malaysia, United States and China are signatories to the ***Montreal Convention 1999***. Malaysia has given effect to the same under the ***Carriage by Air Act 1974***.

130.  MAS is the "**actual carrier**" which performed "*the whole or part of the* carriage" within the meaning of the ***Montreal Convention 1999*** and the ***Carriage by Air Act 1974***.

131.  MAS contracted to carry the decedents by air from Kuala Lumpur to Beijing, China. The contracts between MAS and the decedents were contained in, among others, the decedents' flight tickets. In this regard:

    131.1. Some of the said flight tickets were sold through other airlines and/or agents. Several of the said tickets did not provide the requisite notice pursuant to the ***Montreal Convention 1999*** to the passengers.

131.2. The abovementioned notice is a pre-condition to receive the benefits and limitation on jurisdiction and liability provided to carriers by the *Montreal Convention 1999*.

131.3. The Plaintiffs thus plead that MAS is not entitled to limit their liability and/or avail itself to the protection/s afforded by the *Montreal Convention 1999* to actual carriers.

132. The Malaysian government announced that MH370 ended in the Indian Ocean and all persons on board are presumed dead. This translates into an "accident" that led to the death of all persons within the meaning of *Article 17 of the Montreal Convention 1999*.

133. Under the *Montreal Convention 1999*, MAS and/or its successor and/or the entities legally representing its estate is/are strictly liable for the injuries and death of the decedents under the *Montreal Convention 1999*. The defences provided under the *Montreal Convention 1999* are not available to MAS and/or its successor and/or entities legally representing its estate.

### *Particulars of MAS' Negligence*

134. MAS and/or its servants or agents were negligent and/or reckless in that they:

    134.1. Failed to take any or adequate steps to ensure that the decedents reached Beijing, China and/or to reach Beijing, China safely;

    134.2. Failed to take any or adequate steps to identify, ensure and/or prevent passengers with stolen travel documents to check-in and/or pass through security checks and/or verification points and/or travel on MH370;

    134.3. Allowed lithium batteries totalling 2,453 kg to be carried in a passenger aircraft (as opposed to a cargo plane) and failed to disclose and/or identify cargo weighing some 2,934 kg on the cargo manifest;

    134.4. Failed to take any or adequate steps to ensure that MH370 was adequately and properly maintained;

    134.5. Failed to take any or adequate steps to ensure that underwater locator beacons were in working condition before MH370 departed for Beijing, China;

134.6. Failed to take any or adequate steps to ensure that the underwater locator beacons were in working condition and/or failed to take any or adequate steps to ensure that the batteries were upgraded and/or replaced and/or maintained before MH370 departed for Beijing, China;

134.7. Failed, neglected and/or refused to pay for the positive tracking option provided by Inmarsat;

134.8. Failed to immediately initiate contact with MH370 once there was no receipt of the scheduled ACARS System transmission from MH370 after its first and last position report through ACARS System at 0107:29;

134.9. Failed to know MH370's actual position and/or failed to know that MH370 had deviated from its scheduled flight path and was heading in a completely different direction.

134.10. Failed to monitor and/or misread and/or misjudged the outcome of MAS OPS' transmission of message/s to MH370 whereby all messages which MAS OPS attempted to send to MH370's cockpit through the ACARS System from 0203:23 until 0243:33 failed to reach MH370. In this regard:

a.  Recklessly informing KL FIR that MH370's movement message is being downloaded although no ACARS system position report was sent by MH370 since the first and last of such report at 0107:29.

b.  Failed to immediately inform KL FIR that all of the flight tracker information provided by MAS OPS was based on flight projections and not the actual reliable aircraft positioning of MH370.

134.14.  Failed to properly maintain its Flight Following System as to avoid the fault that caused the label of Cambodia to appear when a map of Vietnam was displayed. In this regard, among others:

a.  The computer flight tracking system had inaccurately indicated that MH370 had landed safely in Nanning Airport in China.

134.15.  Failed to initiate contact with MH370 through SATCOM up until 0239.

134.16.  Failed to inform KL FIR that MAS OPS' telephony call to MH370's cockpit through SATCOM at 0239 was not

answered and the said unanswered call was cleared by MAS OPS.

134.17. Failed to immediately alert the 4th Defendant, the 5th Defendant and/or 6th Defendant and/or all other adjacent FIRs raise alarm that something was amiss once it became apparent that MH370 was not communicating with MAS OPS.

134.18. Failed to make further attempts to contact MH370's cockpit through SATCOM until the second and final attempt at 07:13 which was also not answered.

134.19. Failed to have properly and/or adequately trained personnel in particular, properly and/or adequately trained personnel to handle emergency situations;

134.20. Failed to take any or adequate steps to immediately inform the Plaintiffs of the missing MH370 who only first discovered the incident through the media;

134.21. Causing the Plaintiffs to suffer mental anguish, anxiety and stress;

134.22. Failed to provide adequate care and support to the Plaintiffs following the MH370 incident. In this regard, among others:

    a.    failed to take any adequate steps to adequately update the Plaintiffs in a timely manner as to the status of the search and rescue operations and subsequent investigation;

    b.    failed to provide adequate and satisfactory answers to the Plaintiffs and other families causing them more stress, anxiety and mental anguish;

134.23. Failed to take any or adequate steps to execute its duties with reasonable skill, diligence or care in all the circumstances;

134.24. Committed such other negligent acts as pleaded in Paragraphs 57 to 134 above; and

134.25. Committed such other negligent acts based on events, circumstances and/or facts as may become known to the Plaintiffs in the course of discovery, trial or otherwise.

135.  The Plaintiffs also rely on the principle of *res ipsa loquitor* against MAS and/or its successor and/or the entities legally representing its estate.

136.  For the reasons set out above, MAS and/or its successor and/or the entities legally representing its estate can prove neither of the exceptions in Article 21(2) of the Montreal Convention 1999.

137.  MAS and/or its successor and/or the entities legally representing its estate are therefore liable to the Plaintiffs for all compensatory damages and all damages to which the Plaintiffs may be entitled under applicable law.

### ii.  *Breach of Contract*

138.  The Plaintiffs also state that it was an express or implied term of the contract of carriage entered into by MAS with the 227 passengers on board MH370 (including the 32 relatives of the Plaintiffs) that MAS would be responsible for the airworthiness of MH370 and the safety of all the passengers on board.

***Particulars of MAS' Breach of Contract***

139. The Plaintiffs shall rely on the particulars pleaded in Paragraph 134 including all subparagraphs thereto as particulars for breach of contract and such other events, circumstances and/or facts as become known to the Plaintiffs in the course of discovery, trial or otherwise.

**D.    CASE AGAINST THE 4TH, 5TH, 6TH & 7TH DEFENDANTS**

140. MH370's disappearance and the death of all persons on board was also caused by the 4th Defendant and/or the 5th's Defendant and/or the 6th Defendant and/or 7th Defendants' negligence and/or breaches of statutory duties.

141. The Plaintiffs will also rely on the principle of *res ipsa loquitor* against each of these Defendants.

**Particulars of the 4th Defendant and/or DCA's Negligence and/or Breach of Statutory Duties**

142. The 4th Defendant and/or DCA and its servants and/or agents were negligent and/or breached its/their statutory duties in that it/they:

142.1.   Failed to ensure a safe provision of air traffic control system/service, flight information system/service and alerting system/service;

142.2.   Failed to adequately and/or properly train its personnel and/or failed to have adequately and/or properly trained personnel on duty on or around 08.03.2014;

142.3.   Failed to take any or adequate steps to properly transfer MH370 from KL FIR to HCM. In this regard:

   a.   Instructed MH370 to contact HCM and/or transferred MH370 about 3 minutes prior to MH370's estimated time of arrival over waypoint IGARI and/or over the transfer of control point (TCP);

   b.   Failed to follow up and ensure that MH370 had in fact established contact with HCM;

   c.   Failed to notice the disappearance of MH370's radar signal from DCA's radar;

142.4.   Failed to comply with provisions in the Manual of Air Traffic Services. In this regard, among others:

61

    a.   Failed to take any or adequate steps at the moment or immediately after radar signal for MH370 disappeared from DCA's radar. In this regard:

        i.   Failed to take any or adequate steps to inform appropriate radar units (civil and RMAF) about MH370;

        ii.   Failed to request the said radar units (civilian and RMAF) to watch out for emergency Secondary Surveillance Radar code display or the triangular radio failure pattern;

        iii.   Failed to take any or adequate steps to notice that, subsequent to MH370's disappearance from KL FIR's and HCM's radar, MH370 appeared on DCA's Kota Bharu radar and was heading in a completely different direction from its scheduled flight plan;

    iv.    Failed to take any or adequate steps to track, communicate or contact MH370 from DCA's radar unit in Kota Bharu and/or Kuala Lumpur;

b.    Failed to commence action 3 minutes after MH370 failed to make its scheduled position report;

c.    Failed to take any or adequate steps to notify and/or establish and/or declare an "Uncertainty Phase" as to the safety of MH370 and the persons on board MH370;

d.    Failed to implement, notify or establish the "Alert Phase" 30 minutes after MH370 failed to make a position report;

e.    Failed to implement, notify or establish "Distress Phase" immediately once 1 hour had passed from MH370's scheduled arrival into HCM controlled airspace;

142.5.   Failed to share accurate information with MAS and/or HCM and/or RMAF once MH370's radar signal disappeared from DCA's radar;

142.6.   Failed to act or act adequately on each occasion of HCM notifying KL FIR that MH370 had not entered Vietnamese airspace and no contact had been established with MH370;

142.7.   Failed to take any or adequate steps to verify MAS's information that MH370 was flying over somewhere in Cambodia and/or east of Vietnam: In this regard:

   a.   Failed to contact and/or attempt to contact MH370 directly through radio and/or SATCOM;

142.8.   Failed to immediately initiate a search and rescue operation in a timely manner after losing contact with MH370. In this regard, among others:

   a.   Failed to take any or adequate steps to immediately establish, implement and initiate the search and rescue phase;

   b.   Failed to comply with or adequately comply with the Standard Operating Procedure for Search

64

and Rescue for Kuala Lumpur Aeronautical Rescue Co-ordination Centre (ARCC);

c.  Failed to comply or adequately comply with the Supplementary Operational Instruction (SOI) 2/2014 by DCA Air Traffic Management Sector on Search and Rescue for Air Traffic Control Centre/Aeronautical Rescue Coordination Centre/Rescue Sub-Centre Requirement;

142.9.  Directed the search and rescue operations to take place in the South China Sea area when its radars had allegedly shown that MH370 was headed in a different direction and/or was in a completely different location;

142.10.  Failed to take any steps to communicate and/or coordinate with RMAF about MH370;

142.11.  Failed to take any or adequate steps to execute its duties with reasonable skill, diligence or care in all the circumstances or at all;

142.12.  Failure to provide transparent and adequate answers to the Plaintiffs and the other families causing them more stress, anxiety and mental anguish;

65

142.13.  Failed to provide support and care for the Plaintiffs thereby increasing their stress, anxiety and mental anguish;

142.14.  Failed to comply with the Civil Aviation Act 1969 and subsidiary legislations as particularised above;

142.15.  Committed such other negligent acts as pleaded in Paragraphs 57 to 142 above; and

142.16.  Committed such other negligent acts based on events, circumstances and/or facts as may become known to the Plaintiffs in the course of discovery, trial or otherwise.

**Particulars Of Negligence And/Or Breach Of Statutory Duties By The RMAF**

143.   RMAF and/or its servants or agents were negligent in that they:

143.1.   Failed to take any or adequate steps when their military radar allegedly detected, tracked or found an aircraft turning back towards Malaysia at 0121;

143.2.   Failed to share accurate information openly and honestly with the MAS and DCA in the immediate

minutes after 0121:13 on 08.03.2014 and failure to co-ordinate search and rescue operations immediately thereafter. In this regard:

    a.    Failed to take any or adequate steps to communicate or inform MAS or DCA that they had information on MH370.

143.3.    Failed to take any or adequate steps when their military radar allegedly detected, tracked or found an aircraft between 0130:35 and 0222:12 heading in different direction from MH370's scheduled flight plan;

143.4.    Failed to take any or adequate steps when RMAF's military radar allegedly detected, tracked or found an aircraft moving into and/around the Malaysian airspace and in particular over the states of Kelantan, Perak and Penang before heading to the Straits of Malacca;

143.5.    Failed to take any or adequate steps to deploy military aircraft(s) to investigate and/or provide assistance and/or intercept the aircraft and/or MH370;

143.6.    Failed to take any or adequate steps to defend Malaysian airspace when an aircraft and/or MH370 was detected breaching Malaysian airspace;

143.7.    Failing to take any or adequate steps to immediately investigate and/or search for MH370 upon DCA activating and issuing message of Distress Phase;

143.8.    Failed to have adequately trained personnel and/or officers;

143.9.    Failed to take any or adequate steps to execute its duties with reasonable skill, diligence or care in all the circumstances or at all;

143.10.   Failed to provide adequate and/or satisfactory answers to the Plaintiffs and/or other families causing them more stress, anxiety and mental anguish.

143.11.   Failed to inform the Plaintiffs and other families of the passengers and crew on board MH370 and the rescue teams that the search and rescue operations should have been conducted on the west coast of Peninsular Malaysia rather than over the South China Sea on 08.03.2014 and on subsequent days;

143.12.  Committed such other negligent acts as pleaded in Paragraphs 57 to 143 above; and

143.13.  Committed such other negligent acts based on events, circumstances and/or facts as may become known to the Plaintiffs in the course of discovery, trial or otherwise.

**Particulars Of Negligence Against The Government**

144.  The Government and /or its servants or agents were negligent in that they:

144.1.  Failed to inform, among others, the rescue teams data from radar indicated that MH370 had changed direction and that the search and rescue operations should have been focused on the west coast of Peninsular Malaysia on 08.03.2014 and on subsequent days;

144.2.  Committed such other negligent acts as pleaded in Paragraphs 57 at 144 above; and

69

144.3.   Committed such other negligent acts based on events, circumstances and/or facts as may become known to the Plaintiffs in the course of discovery, trial or otherwise.

145.   Additionally, the 4th Defendant, DCA and the RMAF are and/or were servants, agents and/or employees of the Government and the Government is consequently and/or vicariously liable for the acts of the 4th Defendant, DCA and the RMAF and any damages or loss arising from their breach of duties and/or negligence towards the Plaintiffs.

146.   The Plaintiffs state that as a result of the incident as mentioned in Paragraph 1 above, the acts and/or negligence and/or the breach of statutory duties by the Defendants (whether jointly or severally) as pleaded above, they have suffered loss and damage.

147.   The Plaintiffs will provide the particulars of their losses as stated in Paragraph 146 above in the course of discovery or prior to or at trial.

148.   Based on the matters above, the Plaintiffs seek the following reliefs from the 1st, 2nd and 3rd Defendants either jointly and/or severally:

148.1.    Damages pursuant to the Carriage by Air Act 1974 (as amended);

**AND** the Plaintiffs seek the following reliefs from all of the Defendants either jointly and/or severally:

a. General damages;

b. Special damages;

c. Damages pursuant to any other written law;

d. Damages for traumatic psychiatric injury, nervous shock and post-traumatic stress disorder;

e. Aggravated damages;

f. Exemplary damages;

g. Pre-judgment interest;

h. Post-judgment interest;

i. Costs;

j.  Any and all other damages to which the Plaintiffs and the family members and any other beneficiaries of the Decedents are lawfully entitled under applicable law including under conflicts and choice of law principles; and

k.  Any further relief and/or order which this Honourable Court deems fit and proper.

Dated 21st April 2016

..................................................

**Thomas Philip**
*Solicitors for the Plaintiffs*

**This STATEMENT OF CLAIM** is filed by **Messrs Thomas Philip** solicitors for the abovenamed Plaintiffs whose address for service is at No. 5-1, Jalan 22A/70A, Wisma CKL, 50480 Kuala Lumpur
Tel : 03-6201 5678    Fax : 03-6203 5678
**[Ref.:10.3201]**