# EXHIBIT A-3

# DECLARATION OF
# SARANJIT SINGH

## IN THE HIGH COURT OF MALAYA AT KUALA LUMPUR

## CIVIL DIVISION

<u>CIVIL SUIT NO:</u> _____

Between

1.   SRI DEVI A/P KANAN ((841130-14-6494)
     Administrator of the estate and dependant of
     Puspanathan a/l Subramaniam, deceased)

2.   HARESH VARMER A/L PUSPANATHAN (a minor
     suing through his guardian and mother SRI DEVI
     A/P KANAN (841130-14-6494))

3.   THASHVARMEN A/L PUSPANATHAN (a minor
     suing through his guardian and mother SRI DEVI
     A/P KANAN (841130-14-6494))

4.   SUBRAMANIAM A/L GURUSAMY (540722-10-5013)

5.   AMIRATHAN A/P ARUPILAI (540429-10-5380)

                                              ...PLAINTIFFS

And

1.   MALAYSIAN AIRLINE SYSTEM BERHAD (10601-W)
     (Under Administration)

2.   MALAYSIA AIRLINES BERHAD (1116944-X)

3.   DATO' SRI AZHARUDDIN ABDUL RAHMAN

4.   DEPARTMENT OF CIVIL AVIATION

1

5.    DATO' ALOYAH BINTI MAMAT

6.    IMMIGRATION DEPARTMENT OF MALAYSIA

7.    GENERAL TAN SRI DATO' SRI RODZALI BIN DAUD

8.    ROYAL MALAYSIAN AIR FORCE

9.    GOVERNMENT OF MALAYSIA

...DEFENDANTS

## STATEMENT OF CLAIM

### The Parties

1.    The 1st Plaintiff is the widow, dependant and administratix of the estate of Puspanathan a/l Subramaniam (NRIC No: 800524-14-5987) deceased ("the Deceased"), letter of administration having been duly granted to her on 30.9.2015 by the High Court of Kuala Lumpur, Malaysia in Petition Number 31NCVC-29-01/2015. The 1st Plaintiff brings this action on behalf of herself and the children of the deceased as well as for the benefit of the estate of the deceased and is addressed at 13-10 Condominium Laksamana Puri, Kampung Laksamana, 68100 Batu Caves, Selangor, Malaysia.

2.    The 2nd and 3rd Plaintiffs are both minors and dependants of the deceased, now aged 5 and 3, and are suing through their natural

mother and guardian, the 1st Plaintiff and have the same address as above.

3.   The 4th and 5th Plaintiffs are the parents and dependants of the deceased and have their address at No. 113 Jalan Pandan, Taman Dato Hormat, 42500 Telok Panglima Garang, Selangor, Malaysia.

4.   The 1st Defendant are and were at all material times incorporated as a registered company in Malaysia, carrying on the business of an international and domestic commercial airline transportation of passengers by air and have their business address at 1st Floor, Administration Building, Southern Support Zone, KLIA, 64000, Sepang, Selangor Darul Ehsan and at Level 10, 1 Sentral, Jalan Rakyat, Kuala Lumpur Sentral, 50470, Kuala Lumpur, Malaysia.

The 1st Defendant has been placed under administration by the Malaysian Airline System Berhad (Administration) Act 2015 Act 765 and has subsequently incorporated, registered and commenced operations in Malaysia under the 2nd Defendant, Malaysia Airlines Berhad (Company Registration: 1116944-X), carrying out the business of the 1st Defendant and has taken over control of the affairs of the 1st Defendant and is now liable for any liability arising from a breach of duties by the 1st Defendant to the Plaintiffs. The 2nd Defendant has its registered address at 1st Floor, Administration Building, Southern Support Zone, KLIA, 64000, Sepang, Selangor Darul Ehsan.

The Plaintiffs will rely on the preamble to Act 765 and various other sections to give their true effect and meaning to establish liability under the said Act.

5.  The Plaintiffs contend and will contend that the 2nd Defendant is liable in law and fact to indemnify the Plaintiffs and guarantee payment of any damages ordered to be paid by the 1st Defendant to the Plaintiffs.

6.  The 3rd Defendant is the servant, agent and/or employed as the Director General of Civil Aviation in charge of, heading, supervising, managing, administering and overseeing the whole organisation and the employees of the 4th Defendant pursuant to the Civil Aviation Act 1969 Act 3, with an address at No. 27 Persiaran Perdana, Aras 1-4 Blok Podium, 62618, Putrajaya, Malaysia.

7.  The 4th Defendant is the Department of Civil Aviation, which is to provide a safe, efficient and orderly flow of air transportation and to regulate aviation activities in Malaysia pursuant to the Civil Aviation Act 1969 Act 3, with an address at No. 27 Persiaran Perdana, Aras 1-4 Blok Podium, 62618, Putrajaya, Malaysia.

8.  The 5th Defendant was the servant, agent and/or employed as the Director General of Immigration in charge of, heading, supervising, managing, administering and overseeing the whole organisation and

the employees of the 6th Defendant pursuant to the Immigration Act 1959/63 Act 155, with an address at Headquarters of the Immigration Department Malaysia (Ministry of Home Affairs), Level 1-7 (Podium) No 15, Persiaran Perdana, Precinct 2, 62550, Putrajaya, Malaysia.

9.   The 6th Defendant is the Immigration Department of Malaysia, which is to provide the administration, facilitation, control and management of the movement of people at authorised entry and exit points, including the Kuala Lumpur International Airport, pursuant to the Immigration Act 1959/63 Act 155, with an address at Headquarters of the Immigration Department Malaysia (Ministry of Home Affairs), Level 1-7 (Podium) No 15, Persiaran Perdana, Precinct 2, 62550, Putrajaya, Malaysia.

10.   The 7th Defendant was the servant, agent and/or employed as the Chief Commander of the Royal Malaysian Air Force in charge of, heading, supervising, managing, administering and overseeing the whole organisation and the employees of the 8th Defendant, with an address at Air Force Headquarters, Ministry of Defence, Jalan Padang Tembak, 50634, Kuala Lumpur, Malaysia.

11.   The 8th Defendant is the Royal Malaysian Air Force, which, inter alia, is tasked to defend the national sovereignty, integrity and interest through the effective use of air power with an address at Air Force Headquarters, Ministry of Defence, Jalan Padang Tembak, 50634, Kuala Lumpur, Malaysia.

5

12. The 3rd, 4th, 5th, 6th, 7th and 8th Defendants are and/or were servants, agents and/or employees of the 9th Defendant and the 9th Defendant is consequently and/or vicariously liable for the acts of the 3rd, 4th, 5th, 6th, 7th and 8th Defendants and any damages or loss arising from their breach of duties towards the Plaintiffs. The 9th Defendant has an address of service at Attorney General's Chambers, No. 45, Persiaran Perdana, Presint 4, 62100, Putrajaya, Malaysia.

## Preliminaries

13. The Plaintiffs claim is against all Defendants jointly and/or severally for causing the death or wrongful death of the Deceased.

14. The Plaintiffs have obtained a written consent on 1.10.2015 from the Administrator of the 1st Defendant pursuant to the Malaysian Airline System Berhad (Administration) Act 2015 to file this action.

15. The Plaintiffs contend and will contend that they have written to the 3rd and 4th Defendants through its solicitors to name the officers/staff who were responsible and in charge of and manning DCA Civilian Radar Kota Bharu, DCA Civilian Radar Penang, KL ATCC and Sector 3 Planner KL ATCC on 7.3.2014 and 8.3.2014. The 3rd and 4th Defendants have failed to reply or supply the information sought to date.

16. The Plaintiffs contend and will contend that they have written to the 6th Defendant through its solicitors to name the immigration officers who were manning the relevant immigration counter(s) and allowed the MH370 passengers with stolen/fake passports to officially access, pass and/or travel through Malaysia. The 6th Defendants have failed to reply or supply the information sought to date.

17. The Plaintiffs contend and will contend that they have written to the 8th Defendants through its solicitors to name the officers/staff who were responsible and in charge of and manning the 8th Defendant's military radar between 7.3.2014 and 8.3.2014. The 8th Defendants have failed to reply or supply the information sought to date.

**The Facts**

18. On or about 8.3.2014, the Deceased was a passenger amongst 227 passengers and 12 crew members for reward on the 1st Defendant's Boeing 777-200ER aircraft, registered as 9M-MRO and bearing flight number MH370 ("MH370") from Kuala Lumpur International Airport ("KLIA") to Beijing, China.

19. The said carriage was an international carriage by air within the meaning of the Convention for the Unification of Certain Rules for International Carriage by Air 1999 ("Montreal Convention") to which

Malaysia is a signatory and incorporated within the Carriage by Air Act 1974 and Carriage by Air (Amendment) Act 2007.

20. The ticket for the international carriage by air of the Deceased was purchased from the 1st Defendant in Malaysia. By virtue of the said transaction, the 1st Defendant agreed to take/guarantee all measures to ensure a safe flight and passage from KLIA and, further, in its General Conditions of Carriage, expressly and/or impliedly agreed that it shall pay unlimited damages and not raise any defences to claims of compensatory damages arising out of death of its passengers.

21. Flight MH370 departed KLIA at around 12:41 a.m. with planned flight duration of around 5 hours and 34 minutes. The 4th Defendant and/or its servants/agents, Kuala Lumpur Air Traffic Control Centre ("KL ATCC"), directed Flight MH370 across Peninsular Malaysia towards IGARI waypoint (near the Gulf of Thailand and South China Sea) and towards Vietnam.

22. At around 1:19 a.m. the 4th Defendant and/or its servants/agents without directly confirming and/or securing the transfer of MH370 to Ho Chi Minh Air Traffic Control Centre ("HCM ATCC") directed MH370 to contact HCM ATCC. At the material time, MH370 was still within the 4th Defendant's delegated Malaysian airspace.

23.  At around 1:21 a.m., and without establishing any contact with HCM

ATCC, MH370 suddenly disappeared from the 4th Defendant's and/or

its servants/agents radar but remained on the 8th Defendant's military

radar. The 8th Defendant's military radar tracked and showed:

(a) MH370 to be carrying out an Air Turn Back towards Malaysia at
around 1:21 a.m.;

(b) MH370 appeared between 1:30 a.m. and 1:37 a.m. to be
heading towards Kelantan;

(c) MH370 appeared between 1:38 a.m. and 1:44 a.m. over the
state of Kelantan and heading towards the state of Perak;

(d) MH370 appeared between 1:47 a.m. and 1:48 a.m. over the
state of Penang;

(e) MH370 appeared between 1:51 a.m. and 1:52 a.m. over the
south of Penang Island;

(f) MH370 heading towards Pulau Perak, a small island over the
Straits of Malacca and recorded MH370 being over Pulau Perak
at around 2:02 a.m.; and

(g) MH370 heading towards waypoint MEKAR before disappearing at around 2:22 a.m.

24. Between and around 1:30 a.m. and 1:44 a.m., the 4th Defendant's Civilian Radar in Kota Bharu tracked and located MH370 to the south of Kota Bharu Airport runway.

25. The radar displays at the 4th Defendant's KL ATCC tracked and showed:

(a) MH370 appeared between 1:30 a.m. and 1:37 a.m. to be heading towards Kelantan

(b) MH370 appeared between 1:38 a.m. and 1:44 a.m. over the state of Kelantan and heading towards the state of Perak;

(c) MH370 appeared between 1:47 a.m. and 1:48 a.m. over the state of Penang; and

(d) MH370 appeared between 1:51 a.m. and 1:52 a.m. over the south of Penang Island.

26. The tracking and appearance of MH370 have been confirmed by the 4th and 8th Defendants and are consistent with each other. At all

material times, the events were within the knowledge of the 1st, 3rd, 4th, 7th and 8th Defendants.

27. At around 1:39 a.m. HCM ATCC had contacted the 4th Defendant's KL ATCC on the whereabouts of MH370 and was informed that no verbal contact was established with MH370.

28. At around 2:03 a.m., the 4th Defendant informed HCM ATCC that the 1st Defendant had located MH370 in Cambodian airspace and upon seeking further confirmation by HCM ATCC on whether MH370 was in Phnom Penh, the 4th Defendant was unable to substantiate or confirm the 1st Defendant's location of MH370 in Cambodia.

29. At around 2:18 a.m., the 4th Defendant's KL ATCC queried if MH370's flight planned routing was supposed to enter Cambodian airspace and HCM ATCC confirmed that the planned route was only through Vietnamese airspace and had further checked with and was advised by Cambodia that there was no information and contact with MH370.

30. At around 2:33 a.m. the 1st Defendant was now confirming that MH370 was somewhere in Vietnam when MH370 had already been previously tracked by the 4th Defendant and 8th Defendant's military radars around the Straits of Malacca.

31. At around 3:30 a.m., the 1st Defendant informed the 4th Defendant's KL ATCC that the flight tracker information on MH370 was based on flight projection and not reliable aircraft positioning of MH370, making the previous locations speculative and inaccurate.

32. In a communication between the 1st and 4th Defendants KL ATCC around 5:20 a.m., the 1st and 4th Defendants agreed that based on known information MH370 never left Malaysian airspace and only at around 6:32 a.m., the 4th Defendant issued a DETRESFA message (a code word used to designate a distress phase and where an aircraft requires immediate assistance). A total of more than 5 hours passed by between the last message from MH370 and the triggering of the distress phase.

33. It was only at around 11:30 a.m., after more than 10 hours of the last verbal contact with MH370, that a Malaysian aircraft took off heading to the search areas in the South China Sea to locate MH370.

34. On or around 8.3.2014, the 1st Defendant released an official passenger manifest listing the names of the passengers who were travelling on MH370. Following the said announcement, at least two individuals, one Italian, Luigi Maraldi, and one Austrian, Christian Kozel issued statements that they were not the passengers listed on board MH370 flight manifest and that their passports were previously reported as stolen and confirmed stolen by the INTERPOL. This was

further confirmed by the 5th, 6th and 9th Defendants in a media statement on or around 9.3.2014 and 11.3.2014 and further added that:

(a) Delavar Seyed Mohammadreza, an Iranian, used an Italian passport under the name and style of Maraldi Luigi to enter Malaysia on 28.2.2014 at 8:31 p.m. and presented himself at counter K49 at KLIA for immigration clearance by the 6th Defendant's servant and/or agent and was granted clearance to enter Malaysia and, on 7.3.2014, presented himself at counter K31, at around 10:43 p.m., and obtained clearance from the 6th Defendant's servant and/or agent to leave Malaysia to board MH370; and

(b) Pouria Nour Mohammad Mehrdad, an Iranian, used an Austrian passport under the name and style of Christian Kozel to enter Malaysia on 28.2.2014 at 8:28 p.m. and presented himself at counter K42 at KLIA for immigration clearance by the 6th Defendant's servant and/or agent to enter Malaysia and was granted clearance and, on 7.3.2014, presented himself at counter K30, at around 10:07 p.m., and obtained clearance from the 6th Defendant's servant and/or agent to leave Malaysia to board MH370.

35. The 6th and 7th Defendants failed and neglected to perform proper checking and verifications of the passengers boarding MH370 at KLIA and against INTERPOL's database.

36. On or around 24.3.2014, the 1st Defendant issued a text message stating that "Malaysia Airlines deeply regrets that we have to assume beyond any reasonable doubt that MH370 has been lost and that none of those on board survived...we must now accept all evidence suggest the plane went down in the Southern Indian Ocean."

37. Subsequently, and within minutes, the 9th Defendant through the Prime Minister of Malaysia issued an official media statement stating that flight MH370 ended and crashed into the Southern Indian Ocean with no survivors with the exact location of MH370 still unknown. The Prime Minister of Malaysia confirmed that MH370 tragically ended thousands of miles away from its intended destination of Beijing, China and is known to have flown for several more hours than expected.

38. On or around 15.4.2015, the Malaysian International Civil Aviation Organisation Annex 13 Safety Investigation Team for MH370 released the Factual Information Safety Investigation for MH370 comprising the cooperation and information from the 1st, 3rd, 4th, 7th, 8th and 9th Defendant's servants and/or agents, including the Ministry of Transport ("Investigation Report").

14

39. The said Investigation Report conclusively found that there were defects with the 1st Defendant's aircraft, including the failure by the 1st Defendant and/or its servants and/or agents to replace and install the Solid State Flight Data Recorder ("SSFDR") attached with the Underwater Locator Beacons ("ULB"). The SSFDR ULB battery expired in December 2012, and the 1st Defendant had not replaced it making it almost impossible to search and locate MH370.

40. On or around 29.7.2015, French authorities announced that a part of an aircraft wing had been found on Reunion, a French Island in the Indian Ocean and on or around 5.8.2015, the 9th Defendant through the Prime Minister of Malaysia, confirmed through an official media statement that the aircraft debris found on Reunion Island belonged to the 1st Defendant's aircraft, namely MH370.

41. The events relating to MH370 was caused by the breach of contract and negligence of the 1st Defendant and the negligence and/or breach of statutory duty(ies) of the 3rd, 4th, 5th, 6th, 7th and 8th Defendants.

## PARTICULARS OF BREACH OF CONTRACT BY THE 1ST DEFENDANT AND/OR SERVANTS OR AGENTS

The 1st Defendant and/or servants or agents were in breach of contract in that they:

15

i.   Failed to take any or any adequate steps to honour the terms of contract with the Deceased;

ii.  Failed to take any or any adequate steps to ensure that the Deceased reached Beijing, China;

iii. Failed to take any or any adequate steps to ensure the Deceased reach Beijing, China safely;

iv.  Failed to take any or any adequate steps to ensure and prevent any passengers with stolen travel documents to purchase tickets;

v.   Failed to take any or any adequate steps to ensure and prevent passengers with stolen travel documents to check-in and travel on MH370;

vi.  Failed to take any or any adequate steps to prevent passengers with stolen travel documents to pass through security checks prior to boarding;

vii. Failed to take any or any adequate security checks at all verification points;

viii.    Failed to take any or any adequate steps to ensure that the aircraft was adequately and properly maintained

## PARTICULARS OF NEGLIGENCE BY THE 1ST DEFENDANT AND/OR SERVANTS OR AGENTS

The 1st Defendant and/or servants or agents were negligent in that they:

i.    Failed to take any or any adequate steps to ensure that the Deceased reached Beijing, China;

ii.    Failed to take any or any adequate steps to ensure the Deceased reach Beijing, China safely;

iii.    Failed to take any or any adequate steps to ensure and prevent any passengers with stolen travel documents to purchase tickets;

iv.    Failed to take any or any adequate steps to ensure and prevent passengers with stolen travel documents to check-in and travel on MH370;

v.    Failed to take any or any adequate steps to prevent passengers with stolen travel documents to pass through security checks prior to boarding;

vi.    Failed to take any or any adequate security checks at all verification points;

vii.    Failed to take any or any adequate steps to ensure that the aircraft was adequately and properly maintained;

viii.    Failed to take any or any adequate steps ensure that MH370 was free from all defects;

ix.    Failed to take any or any adequate steps to ensure that the Emergency Locator Transmitters were in working condition before MH370 departed for Beijing, China;

x.    Failed to take any or any adequate steps to ensure that the Emergency Locator Transmitters were of 406 MHz which are capable of detection by satellite;

xi.    Failed to take any or any adequate steps to upgrade, update or purchase Emergency Locator Transmitters of newer models that would have located MH370;

xii.   Failed to take any or any adequate steps to ensure that the Underwater Locator Beacons were in working condition before MH370 departed for Beijing, China;

xiii.   Failed to take any or any adequate steps to upgrade or update the batteries of the Underwater Locator Beacons;

xiv.   Failed to change the SSFDR ULB battery which expired in December 2012;

xv.   Failed to change the SSFDR ULB battery which would have resulted in the location, search and rescue of MH370;

xvi.   Failed to have adequate communication and location systems that would properly and correctly communicate, contact and identify the location of MH370;

xvii.   Failed to correctly identify the location of MH370 at all material times;

xviii.   Recklessly relayed and/or gave incorrect location of MH370 being in Cambodian airspace at around 2:04 a.m.;

xix.    Recklessly relayed and/or gave incorrect location of MH370 being in Cambodian airspace at around 2:04 a.m. to the 4th Defendant;

xx.    Recklessly relayed and/or gave incorrect location of MH370 being in Cambodian airspace when the 4th and 8th Defendant's radar already tracked MH370's location along the Straits of Malacca and in Malaysia;

xxi.    Recklessly relayed and/or gave incorrect location of MH370 being "somewhere east of Vietnam" at around 2:35 a.m.;

xxii.    Recklessly relayed and/or gave incorrect location of MH370 being "somewhere east of Vietnam" at around 2:35 a.m. to the 4th Defendant;

xxiii.    Recklessly relayed and/or gave incorrect location of MH370 being "somewhere east of Vietnam" when the 4th and 8th Defendant's radar already tracked MH370's location along the Straits of Malacca, in Malaysia or within Malaysia's delegated airspace;

xxiv.    Admitted that the flight tracker information on MH370 was based on flight projection and not reliable aircraft positioning of MH370, making its purported locations speculative and inaccurate;

20

xxv.    Failed to have adequately and properly trained staff and personnel;

xxvi.    Failed to have adequately and properly trained staff who were trained to handle emergency situations;

xxvii.    Failed to take any or any adequate actions to send the search and rescue party immediately after knowing that MH370 was incommunicable;

xxviii.    Failed to take any or any adequate steps to get the 7th and 8th Defendants to track and search for MH370 on its military radars soon after it was incommunicable;

xxix.    Failed to take any or any adequate steps to get the 7th and 8th Defendants to deploy and send military aircraft(s) to locate MH370 and to know if it required immediate assistance or if it was in any danger;

xxx.    Failed to know that MH370 had already carried out an Air Turn Back towards Malaysia and may have been in distress;

xxxi.    Failed to know that MH370 was flying above Kelantan, Perak, Penang and Pulau Perak along the Straits of Malacca between 1:30 a.m. and 2:02 a.m.;

xxxii.    Failed to know that MH370 was flying towards Southern Indian Ocean;

xxxiii.   Allowed MH370 to fly for several more hours than intended and allowing the deceased to suffer anxiety, mental anguish, stress, fear before it crashed in the Southern Indian Ocean;

xxxiv.   Failed take any or any adequate steps to immediately inform the Plaintiffs of the missing MH370 and who only first found out about the incident through the media;

xxxv.    Causing the Plaintiffs to suffer mental anguish, anxiety and stress;

xxxvi.   Failed to take any or any adequate steps to keep the Plaintiffs updated and making the Plaintiffs to learn updates from the media;

xxxvii.  Failed to provide adequate care and support to the Plaintiffs following the MH370 incident;

xxxviii. Failed to take proactive actions to send an aircraft for at least 10 hours following the last communication with MH370;

xxxix.    Failed to direct the 4th Defendant to issue and initiate the distress phase immediately after losing all communications;

xl.    Failed to provide adequate and satisfactory answers to the Plaintiffs and other families causing them more stress, anxiety and mental anguish;

xli.    Preferred issuing a text message (SMS) to the Plaintiffs to declare the death of the deceased and that MH370 crashed in the Southern Indian Ocean and causing further hurt and damage to their feelings and emotions;

xlii.    Failed to look after and continue with the care and support of the Plaintiffs thereby increasing and accentuating their anger, stress, anxiety and mental anguish;

xliii.    Failed to execute its duties with due care or with due regard to the Deceased and/or the Plaintiffs rights and interest and MH370;

xliv.    Executing its duties in a manner detrimental to the rights and interest of the Deceased and/or Plaintiffs;

xlv.    Failing to take any or any adequate steps to execute its duties with reasonable skill, diligence or care in all the circumstances or at all;

By reason of their breach of duty, the 1st Defendant compromised the safety of the aircraft and all its passengers and crew.

Full and further details of the breach of duties by the 1st Defendant will be furnished after discovery.

## PARTICULARS OF NEGLIGENCE AND/OR BREACH OF STATUTORY DUTY BY THE 3rd AND 4th DEFENDANTS AND/OR SERVANTS OR AGENTS

The 3rd and 4th Defendants and/or servants or agents were negligent and/or breach of statutory duty in that they:

i.    Failed to provide a safe, efficient and orderly provision of air traffic control service, flight information service and alerting service;

ii.    Failed to have an adequately and properly trained Air Traffic Controller, Sector Planning controller, Sector Radar controller, Assistant Flight Data controller, DCA Managers and Watch Supervisors;

iii.   Failed to have sufficient number of staff/controllers between the hours of 12:00 a.m. and 6:00 a.m. on 8.3.2014;

iv.   Failed to take any or any adequate steps to properly transfer MH370 to HCM ATCC;

v.   Transferred MH370 to HCM ATCC without ensuring that MH370 had secured verbal communication with HCM ATCC;

vi.   Failed to manually record the time of transfer of MH370 on the paper Flight Progress Strip as stipulated in the Manual of Air Traffic Services Part 2-Gen Section 11 Flight Progress Strips;

vii.   Failed take any or any adequate steps to comply with Part 9 of the Manual of Air Traffic Services;

viii.   Failed to take any or any adequate steps to immediately implement, establish or set up a Rescue Coordination Centre;

ix.   Failed to take any or any adequate steps to notify and/or establish that an "Uncertainty Phase" existed as to the safety of MH370 and the persons on board MH370;

x.   Failed to implement, notify or establish the "Alert Phase" 30 minutes after MH370 failed to make a position report;

25

xi.   Failed to implement, notify or establish that the "Distress Phase" 1 hour after MH370 was due to arrive into HCM ATCC's controlled airspace or the declaration of the "Uncertainty Phase";

xii.  Failed to take any or any adequate steps to inform its other civilian radar units about MH370;

xiii. Failed to take any or any adequate steps to track, communicate or contact MH370 from its Civilian Radar in Kota Bharu;

xiv.  Failed to take any or any adequate steps to inform the 7th and 8th Defendants about MH370;

xv.   Failed to take any or any adequate steps to ask the 7th and 8th Defendants if it was tracking MH370 on its military radars;

xvi.  Failed to take any or any adequate steps to request the 7th and 8th Defendant to establish contact and communicate with MH370 soon after it was incommunicable;

xvii. Failed to take any or any adequate steps to get the 7th and 8th Defendants to track and search for MH370 on its military radars soon after it was incommunicable;

xviii.   Failed to take any or any adequate steps to get the 7th and 8th Defendants to deploy and send military aircraft(s) to locate MH370 and to know if it required immediate assistance or if it was in any danger.

xix.   Failed to take any or any adequate steps to notice that MH370 had carried out an Air Turn Back towards Malaysia and was heading back into Malaysia;

xx.   Failed to take any or any adequate steps to notice that, between and around 1:30 a.m. and 1:44 a.m., MH370 appeared on its Kota Bharu radar and was located near the Kota Bharu airport runway;

xxi.   Failed to take any or any adequate steps to notice that MH370 appeared on its radar(s) and heading towards and over the states of Kelantan, Perak and Penang;

xxii.   Failed to take any or any adequate steps to inform the 7th and 8th Defendants about the movements of an aircraft or MH370 into Malaysian airspace;

xxiii.   Failed to take any or any adequate steps to verify the 1st Defendant's information that MH370 was flying somewhere over Cambodia;

27

xxiv.    Failed to take any or any adequate steps to verify the 1st Defendant's information that MH370 was flying somewhere east of Vietnam;

xxv.    Relayed and gave incorrect information to HCM ATCC that MH370 was somewhere over Cambodia and east of Vietnam;

xxvi.    Despite knowing MH370's flight path and directing it towards the flightpath, still asked HCM ATCC what was MH370's flightpath and whether it was supposed to enter Cambodian airspace;

xxvii.    Failed to take any or any adequate steps to immediately establish, implement and initiate the search and rescue phase;

xxviii.    Failed to follow or adequately follow the Standard Operating Procedure for Search and Rescue for Kuala Lumpur Aeronautical Rescue Co-ordination Centre (ARCC);

xxix.    Failed to follow or adequately follow the Supplementary Operational Instruction (SOI) 2/2014 by the 3rd and 4th Defendants DCA Air Traffic Management Sector on Search and Rescue for Air Traffic Control Centre/Aeronautical Rescue Coordination Centre/Rescue Sub-Centre Requirement;

xxx.    Agreed with the 1st Defendant that MH370 never left Malaysian airspace;

xxxi.    Failed to take any or any adequate steps to immediately declare the Emergency Phase;

xxxii.    Only issued the DETRESFA message more than 5 hours after losing verbal contact with MH370;

xxxiii.    Failed to have adequately and properly trained staff;

xxxiv.    Failed to notify the supervisor/manager of the disappearance of MH370;

xxxv.    Failed to take any or any adequate steps as custodian of the airspace;

xxxvi.    Failed to immediately send or deploy an aircraft or search and rescue party to look for MH370 soon after losing contact with MH370;

xxxvii.    Took more than 10 hours to deploy and send an aircraft to look for MH370;

xxxviii.    Sent the search and rescue team around the South China Sea area when its radars had showed MH370 in the complete opposite location;

xxxix.    Failed to take any or any adequate steps to execute its duties with reasonable skill, diligence or care in all the circumstances or at all;

xl.    Failed to execute its duties with due care or with regard to the Deceased and/or the Plaintiffs rights and interest and MH370;

xli.    Executing its duties in a manner detrimental to the rights and interest of the Deceased and/or Plaintiffs;

xlii.    Failed to provide adequate and satisfactory answers to the Plaintiffs and other families causing them more stress, anxiety and mental anguish;

xliii.    Failed to look after and support the Plaintiffs thereby increasing and accentuating their anger, stress, anxiety and mental anguish;

xliv.    Failed to comply with the Civil Aviation Act 1969 and subsidiary legislations and specifically;

By reason of their breach of duty the 3rd and 4th Defendants compromised the safety of the aircraft and all its passengers and crew.

Full and further details of the breach of duties by the 3rd and 4th Defendants will be furnished after discovery.

## PARTICULARS OF NEGLIGENCE AND/OR BREACH OF STATUTORY DUTY BY THE 5TH AND 6TH DEFENDANTS AND/OR SERVANTS OR AGENTS

The 5th and 6th Defendants and/or servants or agents were negligent and in breach of statutory duty in that they:

i.    Allowed at least two passengers to travel on MH370 using stolen/fake passports;

ii.    Failed to take any or any adequate steps to verify, check and ascertain the true identity and passport of Christian Kozel;

iii.    Failed to take any or any adequate steps to verify, check and ascertain the true identity and passport of Maraldi Luigi;

iv.    Allowed Pouria Nour Mohammad Mehrdad to enter Malaysia using a stolen passport;

31

v.    Allowed Delavar Seyed Mohammadreza to enter Malaysia using a stolen passport;

vi.   Allowed Pouria Nour Mohammad Mehrdad to exit Malaysia and travel on MH370 using a stolen passport on MH370;

vii.  Allowed Delavar Seyed Mohammadreza to exit Malaysia and travel on MH370 using a stolen passport on MH370;

viii. Failed to take any or any adequate steps to verify, check and ascertain the passports of Christian Kozel and Maraldi Luigi with the INTERPOL database;

ix.   Failed to take any or any adequate steps to verify, check and consult with INTERPOL's Stolen and Lost Travel Documents database;

x.    Failed to take any or any adequate steps to scan the fingerprints of the persons using the passports of Christian Kozel and Maraldi Luigi;

xi.   Failed to take any or any adequate steps to verify, check and ascertain if the information of the stolen passports match with the scanned fingerprints and biometrics system;

xii.    Failed to take any or any adequate steps to inquire, question or interrogate "Christian Kozel" and "Maraldi Luigi" upon entry and exit from Malaysia;

xiii.   Failed to take any or any adequate steps to immediately disclose that the passports were stolen and only revealed such only after the release of the passenger manifest by the 1st Defendant;

xiv.    Only disclosed that there were at least two passengers travelling on stolen passports after Maraldi Luigi and Christian Kozel revealed that they were not travelling on MH370 and their passports had been reported stolen;

xv.     Failed to have adequately trained staff/officers;

xvi.    Failed to take any or any adequate steps to execute its duties with reasonable skill, diligence or care in all the circumstances or at all;

xvii.   Failed to execute its duties with due care or with regard to the Deceased and/or the Plaintiffs rights and interest and MH370;

xviii.  Executing its duties in a manner detrimental to the rights and interest of the Deceased and/or Plaintiffs;

xix.    Failed to provide adequate and satisfactory answers to the Plaintiffs and other families causing them more stress, anxiety and mental anguish;

xx.    Failed to look after and support the Plaintiffs thereby increasing and accentuating their anger, stress, anxiety and mental anguish;

xxi.    Failed to comply with the Immigration Act 1959/63 and any subsidiary legislation;

By reason of their breach of duty, the 5th and 6th Defendants caused unauthorised persons to be on board the plane and therefore compromised the safety of the aircraft and all its passengers and crew.

Full and further details of the breach of duties by the 5th and 6th will be furnished after discovery.

**PARTICULARS OF NEGLIGENCE BY THE 7TH AND 8TH DEFENDANTS AND/OR SERVANTS OR AGENTS**

The 7th and 8th Defendants and/or servants or agents were negligent in that they:

i.   Failed to take any or any adequate steps when their military radar detected, tracked or found an aircraft turning back towards Malaysia at around 1:21 a.m.;

ii.   Failed to take any or any adequate steps when their military radar detected, tracked or found an aircraft heading towards Kelantan between 1:30 a.m. and 1:37 a.m.;

iii.   Failed to take any or any adequate steps when their military radar detected, tracked or found an aircraft over the state of Kelantan and heading towards the state of Perak between 1:38 a.m. and 1:44 a.m.;

iv.   Failed to take any or any adequate steps when their military radar detected, tracked or found an aircraft over the state of Penang between 1:47 a.m. and 1:48 a.m.;

v.   Failed to take any or any adequate steps when their military radar detected, tracked or found an aircraft over the south of Penang Island between 1:51 a.m. and 1:52 a.m.;

vi.   Failed to take any or any adequate steps when their military radar detected, tracked or found an aircraft heading towards Pulau Perak, on the Straits of Malacca around 2:02 a.m.;

vii.    Failed to take any or any adequate steps when their military radar detected, tracked or found an aircraft heading towards waypoint MEKAR and disappearing around 2:22 a.m.

viii.    Failed to take any or any adequate steps when their military radar detected, tracked or found an aircraft zigzagging in and around Malaysian airspace;

ix.    Failed to take any or any adequate steps when their military radar detected, tracked or found MH370 carried out an Air Turn Back and headed towards Malaysia and over the states of Kelantan, Perak and Penang before heading to the Straits of Malacca;

x.    Failed to take any or any adequate steps to deploy military aircraft(s) to intercept the aircraft/MH370 flying back into Malaysia and within Malaysian airspace;

xi.    Failed to take any or any adequate steps to defend the national sovereignty, integrity and interest when it detected an aircraft/MH370 breaching Malaysia's airspace;

xii.    Failed to take any or any adequate steps to communicate or inform the 1st, 3rd and 4th Defendants that they had information on MH370;

36

xiii.   Failed to take any or any adequate steps to assist the 1st, 3rd and 4th Defendants when the 4th Defendant declared the "Uncertainty Phase";

xiv.    Allowed MH370 to fly back into Malaysia and within Malaysia and allowed it to fly towards the Southern Indian Ocean;

xv.     Failed to do anything even though they knew that MH370 was in distress and may have been in imminent danger;

xvi.    Failed to take any or any adequate steps to contact or communicate with MH370;

xvii.   Failed to take any or any adequate steps to contact, communicate or verify with the 1st, 3rd and 4th Defendants why the 1st Defendant's MH370 was attempting a return into Malaysia;

xviii.  Failed to take any or any adequate steps to immediately deploy a military aircraft to search for MH370 upon the 4th Defendant activating and issuing the DETRESFA message on MH370;

xix.    Failed to take any or any adequate steps to assist and sat and watched the disappearance of MH370 with their arms folded;

xx.    Only chose to assist in the search and rescue efforts long after MH370 had crashed into the Southern Indian Ocean;

xxi.    Failed to have adequately trained staff/officers;

xxii.    Failed to take any or any adequate steps to execute its duties with reasonable skill, diligence or care in all the circumstances or at all;

xxiii.    Failed to execute its duties with due care or with regard to the Deceased and/or the Plaintiffs rights and interest and MH370;

xxiv.    Executing its duties in a manner detrimental to the rights and interest of the Deceased and/or Plaintiffs;

xxv.    Failed to provide adequate and satisfactory answers to the Plaintiffs and other families causing them more stress, anxiety and mental anguish;

xxvi.    Failed to look after and support the Plaintiffs thereby increasing and accentuating their anger, stress, anxiety and mental anguish;

By reason of their breach of duty, the 7th and 8th Defendants compromised the safety of the aircraft and all its passengers and crew.

38

Full and further details of the breach of duties by the 7th and 8th will be furnished after discovery.

42. The Plaintiffs will rely on and refer to the doctrine of *res ipsa loquitor* against the 1st, 3rd, 4th, 5th, 6th, 7th and 8th Defendants.

43. The Plaintiffs repeat paragraphs 18 to 42 above and claim aggravated damages from the 1st, 3rd, 4th, 5th, 6th, 7th and 8th Defendants.

44. The Plaintiffs repeat paragraphs 18 to 42 above and claim exemplary damages from the 1st, 3rd, 4th, 5th, 6th, 7th and 8th Defendants.

45. As a direct and proximate result of the aforesaid and the conduct of the 1st, 3rd, 4th, 5th, 6th, 7th, 8th and 9th Defendants and/or their servants/agents, the Deceased suffered injuries and death on MH370 and each Plaintiff has suffered and continues to suffer loss and damage.

### PARTICULARS PURSUANT TO SECTION 7 AND 8

### CIVIL LAW ACT 1956

46. The Deceased was born on 24.5.1980 and was 33 years old at the time the MH370 incident. At the time of death, the Deceased was in good health and was gainfully employed by a well-established multinational firm known as Worley Parsons as an iM Governance

Specialist and was on a high-achieving career path but for the MH370 incident.

47. The Deceased was earning a salary of RM14,460.00 per month apart from other benefits and allowances accorded to him and his family. The Deceased was the sole support of the Plaintiffs and by his death they have lost the means of support and each of them has suffered loss and damage and bereavement.

Particulars of Damages for the 1st, 2nd and 3rd Plaintiffs

(a) Loss of support:                                    RM1,908,720.00

(55 years – 33 years divide by 2 = 11 years

purchase x 12 months = 132 months x

RM14,460.00)

(b) Loss of EPF Contribution from Employer:    RM229,680.00

(11 years x 12 months= 132 months

x RM1,740.00)

(c) Loss of future bonus:                             RM159,060.00

(Yearly bonus of one month's salary

paid by the deceased's employer

(RM14,460.00 x 11 years))

(d) Loss of medical benefits accorded to family:      RM33,000.00

    (Deceased's employers accorded medical

    benefits of RM3,000.00 per year x 11 years)

(e) Bereavement:      RM10,000.00

(f)  Prayers conducted for the soul of the deceased:      RM5,000.00

(g) Yearly prayers conducted for the soul of      RM50,000.00

    the deceased:

(h) Loss of husband's services:      RM250,000.00

    (Deceased shared general responsibility of

    household chores and looked after his children,

    amongst others. The 1st Plaintiff now must hire

    assistance and maid to help her)

(i)  Loss of father's services:      RM500,000.00

    (2nd and 3rd Plaintiff lost a loving and caring

    father whom they constantly and continuously

    looked up to and played with. Now the 2nd and

    3rd Plaintiffs will have no paternal guidance,

    advice and support)

(j)  Loss of consortium:      RM1,000,000.00

41

(1st Plaintiff has lost the companionship,

love and support of her husband)


(k) Loss of prospect of re-marriage:                    RM1,000,000.00

(In view of her age and that of her 2 young

children the 1st Plaintiff has no prospects to

remarry)


(l) Traumatic psychiatric injury:                       RM3,000,000.00

(Following the MH370 incident, the 1st,

2nd and 3rd Plaintiffs were shocked to learn

that their husband and father, who was

supposed to arrive safely in Beijing, was

reported to be flying for several more

hours towards several unintended destinations

before crashing into the Southern Indian Ocean.

The deceased's body has yet to be recovered

or found although a declaration was announced

in early 2015. The 1st, 2nd and 3rd Plaintiffs suffer

and continue to suffer traumatic

psychiatric injury/nervous shock/post traumatic

stress disorder.)


(m)Aggravated damages:                                  RM3,000,000.00

(n) Exemplary damages:                          RM5,000,000.00

<u>Particulars of Damages for 4th and 5th Plaintiffs</u>

(a) Loss of support to the 3rd and 4th Plaintiffs:    RM198,000.00

(55 years – 33 years divide by 2 = 11 years

purchase x 12 months = 132 months x

RM1,500.00)

(b) Loss of medical benefits accorded to family:    RM33,000.00

(Deceased's employers accorded medical

benefits of RM3,000.00 per year x 11 years)

(c) Prayers conducted for the soul of the deceased:    RM5,000.00

(d) Yearly prayers conducted for the soul of    RM50,000.00

the deceased:

(e) Traumatic psychiatric injury:    RM2,000,000.00

(Following the MH370 incident, the 4th

and 5th Plaintiffs were shocked to learn

that their son, who was supposed to arrive

safely in Beijing, was reported to be flying

for several more hours towards several

unintended destinations before crashing

43

into the Southern Indian Ocean.

The deceased's body has yet to be recovered
or found although a declaration was announced
in early 2015. The 4th and 5th Plaintiffs suffer
and continue to suffer traumatic
psychiatric injury/nervous shock/post traumatic
stress disorder.)

(f) Aggravated damages:                    RM2,000,000.00

(g) Exemplary damages:                     RM5,000,000.00

48.    Further, by his death, the life of the deceased was considerably
       shortened, in consequence whereof his estate has suffered loss and
       damage.

49.    Although MH370 lost verbal communication at approximately 1:19
       a.m., MH370 continued flying for several more hours back towards and
       within Malaysia before ending in the Southern Indian Ocean causing
       the deceased to suffer pre-impact terror, pain and suffering. MH370
       and the deceased's body is yet to be found, recovered and returned to
       the Plaintiffs.

Particulars

(a) Pre-impact terror, pain and suffering and injuries:  RM1,000,000.00

(b) Cost of air fare:                                    RM

(c) Loss of baggage:                                     RM

(d) Earnings:                                            RM

(e) Aggravated damages:                                  RM1,000,000.00

(f) Exemplary damages:                                   RM5,000,000.00

50.  The Plaintiffs contend and will contend that the 1st and 2nd Defendants jointly and/or severally are therefore liable to pay the Plaintiffs damages as provided for under the Montreal Convention and further liable for damages exceeding the Montreal Convention particulars of which are pleaded herein above.

51.  The Plaintiffs will rely on the provisions of the Government Proceedings Act 1956, in particular sections 5 and 6 on the neglect and/or default of the 3rd, 5th and 7th Defendants for breach of their duties as servants, agents or employees of the 9th Defendant.

The Plaintiffs contend and will contend that the same is applicable against all other parties to be named pursuant to paragraphs 16, 17 and 18 above.

52. By reason of the matters pleaded above, the Plaintiffs seek the following reliefs from the 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th and 9th Defendants either jointly and/or severally:

    i.    General damages;

    ii.    Special damages;

    iii.    Damages pursuant to the Carriage by Air Act 1974 as amended;

    iv.    Damages pursuant to section 7 of the Civil Law Act 1956;

    v.    Damages pursuant to section 8 of the Civil Law Act 1956;

    vi.    Damages for traumatic psychiatric injury, nervous shock and post traumatic stress disorder;

    vii.    Damages pursuant to breach of statutory duty;

    viii.    Damages for misfeasance of public office;

ix.    Aggravated damages;

x.    Exemplary damages;

xi.    Interest on the sums awarded at such rate and for such period of time as this Honourable Court deems fit;

xii.    Costs;

xiii.    For a declaration that the 2nd Defendant is liable to pay all damages, costs and interest to the Plaintiffs pursuant to the Malaysian Airline System Berhad (Administration) Act 2015; and

xiv.    Such further and other reliefs as this Honourable Court deems just and proper to grant.

Dated this 19th day of February, 2016

………………………………….

Solicitors for the Plaintiffs

This **Statement of Claim** is filed by Messrs Brijnandan Singh Bhar & Co., solicitors for the Plaintiffs with an address of service at Suite 11.05, 11th Floor, Menara KH, Jalan Sultan Ismail, 50250, Kuala Lumpur.

[Tel: 03-2142 8134 Fax: 03-21413981 E-mail: courtdocs@bsbharco.com]

Ref: BSB/SB/2015/05/SRI DEVI (MH370)

# EXHIBIT A-4

# DECLARATION OF
# SARANJIT SINGH

IN THE HIGH COURT OF MALAYA AT KUALA LUMPUR

IN THE FEDERAL TERRITORY OF KUALA LUMPUR, MALAYSIA

SUIT NO. _____

BETWEEN

ERNY MASILA BT MUSTAFA
(NRIC NO: 870718-05-5262)                                    ...PLAINTIFF

AND

MALAYSIA AIRLINES SYSTEM BERHAD
(Company No. 10601-W)                                        ...DEFENDANT

STATEMENT OF CLAIM

The Parties

1.  The Plaintiff is the lawful wife of **Mohd Khairul Amri bin Selamat [NRIC No: 850212-06-5449]** (hereinafter referred to as "the Passenger"), who is 29 years old and whose place of residence is at No. 23, Jalan Akuatik 13/67, Seksyen 13, 40200 Shah Alam, Selangor, Malaysia.

2.  The Defendant is a company incorporated and established under the Companies Act 1965 in Malaysia and is a commercial airline company having its principle place of business at Level 3, Administration Building 1, MAS Complex A, Sultan Abdul Aziz Shah Airport, 47200, Subang, Selangor.

3.  The Plaintiff has duly obtained the consent of the Administrator as required by Malaysian Airline System Berhad (Administration) Act 2015 to file this suit against the Defendant.

1

**Background facts of the Claim**

4. At all material times, the Defendant was the operator of the plane MH370 ("the Aircraft") responsible for flight in issue now ("the Flight").

5. The Passenger was one of the passengers on board the flight known as MH370 operated by the Defendant departing from Kuala Lumpur International Airport (KLIA) on 08/03/2014 at about 12:41 a.m ("the Incident Date") and was bound for Beijing, China and to arrive there at 6.30 a.m (Chinese time).

6. The Passenger (a fare paying passenger) purchased and the Defendant sold a ticket to fly in the Flight. The Passenger paid the fare in full. Thereby the Passenger and the Defendant entered into a contract ("the Flight Agreement"). It was part of the conditions of carriage that the Defendant will not invoke the limitation of liability as to any claim for recoverable compensatory damage in respect of the passengers death, wounding or bodily injury.

7. The basic agreement in the Flight Agreement that the Defendant was to take on board the Passenger at KLIA on 08/03/2014 at about 12.41 a.m. and to arrive Beijing at 06.30 a.m. (Chinese time).

8. It was an express and/or necessarily implied term of the Flight Agreement that the Defendant would provide an airworthy aircraft and would take all such measures as are necessary to ensure a safe flight.

9. The Defendant having taken on board the Passenger, never arrived the destination, and no particulars of ending of the flight is known to date and the aircraft together with all its passengers and crew personnel on board have not been located.

2

10. The Defendant gave no proper account of the events that happened during the flight (**"the Account of Events"**), which are more particularly within the knowledge of the Defendant.

11. On 24/03/2014, the Defendant sent a short messaging service message ("sms") to the Plaintiff as the next of kin of the passenger that reads as follows :-

*Deeply regret that we have to assume beyond reasonable doubt that MH370 has been lost and that none of those on board survived. As you will hear in the next hour from Malaysia's Prime Minister, we must now accept that all evidence suggest the plane went down in the Southern Indian Ocean.*

12. On the 29/01/2015, the Director General of the Department of Civil Aviation Malaysia (**"the DCA"**) declared on behalf of the Government of Malaysia declared, at paragraph 23 of the announcement on MH370 by the Director General of the DCA ,as follows:-

*It is therefore, with the heaviest heart and deepest sorrow that, on behalf of the Government of Malaysia we officially declare, MH370 an accident in accordance with the standard of Annexure 12 and 13 of the Chicago Convention and that all 239 of the passengers and crew on board MH370 are presumed to have lost their lives.*

13. No personal representative has been appointed for the estate of the Passenger as at the date of filing of this action.

**Claims against the Defendant**

**_(i) Breach of contract_**

14. In breach of the Flight Agreement, the Defendant failed to arrive at Beijing. Until today, no news is known about the whereabouts of the plane and the passengers and crew on board including the Passenger.

**3**

15. In the absence of the Account of Events, the Plaintiff raise a presumption that the Defendant failed in its duty to provide an airworthy aircraft and to take all due measures to ensure a safe flight, and relies on the principle of *res ipsa loquitur*.

16. The above said breach resulted in loss of the Passenger and loss of all his future earning and support to the Plaintiff.

17. The above said losses were ones which were foreseeable by the Defendant in the event of breach by the Defendant of the aforesaid duties.

18. This part of the claim is brought under s.7 of the Civil Law Act 1956, by virtue of which the claim that would have been available to the Passenger had he been life is carried forward to the Plaintiff.

### *(ii) Breach of duty of care*

19. The Defendant owed a duty of care to the Passenger and to the Plaintiff (as dependent and wife of the Passenger) to provide an airworthy aircraft and ensure taking all due measures for a safe flight.

20. For the reasons said hereinabove, the Defendant also breached the above said duties of care.

21. In the absence of the Account of Events, the Plaintiff raise a presumption that the Defendant failed in its duty to provide an airworthy aircraft and to take all due measures to ensure a safe flight, and relies on the principle of *res ipsa loquitur*.

22. The above said breach resulted in the loss of the Passenger and loss of all his future earning and support to the Plaintiff, which the Plaintiff have been receiving prior to the incident and would have continued to receive but for the incident.

4

23. The above said losses were ones which were foreseeable by the Defendant in the event of breach by the Defendant of the aforesaid duties.

24. This part of the claim, only insofar as it relates to the duty of care owed to the Passenger, is brought under s.7 of the Civil Law Act 1956, by virtue of which the claim that would have been available to the Passenger had he been life is carried forward to the Plaintiff. The other part of the claim herein relating to the duty of care owed to the Plaintiff, it is brought as a straight tortious claim (not under s.7 of the Civil Law Act 1956).

Particulars required under section 7 of the Civil Law Act 1956

25. The Passenger was 29 years old on the Incident Date.

26. Until the Incident date, the Passenger was gainfully employed by ExecuJet Malaysia Sdn Bhd as an engineer and was earning an average sum of RM24,284.39 per month.

27. The Plaintiff were financially (and otherwise) supported by the Passenger as the husband of the Plaintiff, which the Plaintiff lost since the incident.

**(iii) _Claim under the Montreal Convention 1999_**

28. This part of the claim, only insofar it relates to the convention rights and liabilities for convention harm to the Passenger due to the Defendant's failure to arrive at Beijing, the Plaintiff claim under the Montreal Convention is brought against the Defendant pursuant to Article 17, 21, 22, 33 and 35 of the said Convention accordingly.

29. For avoidance of any doubt, the above claims in contract, in tort with respect to duty owed to the Passenger, in tort with respect to duty owed directly to the Plaintiff, and under Montreal Convention are all cumulatively and/or in the alternative

### Prayer

30. In the above premises, the Plaintiff prays this Honourable Court for the following reliefs against the Defendant:

Damages for loss of support

a) Damages be assessed for loss of support suffered by the Plaintiff resulting from the loss of the Passenger pursuant to s.7 of the Civil Law Act 1956;

b) In the alternative, damages to be assessed for losses suffered as a result of breach of duty of care directly owed by the Defendant to the Plaintiff;

c) In the further alternative, damages to be assessed under Montreal Convention 1999.

Damages for emotional sufferings

d) Aggravated damages to be assessed for injured feelings and emotions, mental distress and pain suffered by the Plaintiff as a result of loss of the Passenger.

Exemplary damages

e) Exemplary damages to be assessed for presumed gross neglect of the Defendant in disregard of and endangering lives (in the absence of the Account of Events) and persistent failure and refusal by the Defendant to reveal truth regarding the incident.

Bereavement, costs, interest and other reliefs

f) Bereavement;

6

g) Costs;

h) Interest; and

i) Such other and further relief as this Honourable Court may deem fit;

Dated this    7th    day of   March    , 2016

Plaintiff's Solicitors

This **STATEMENT OF CLAIM** is filed by **MESSRS RUSMAH ARUNAN & ASSOCIATES**, Solicitors for the Plaintiff with its address for service at 5th Floor, Wisma RA, No 12 Jalan Dang Wangi, 50100, Kuala Lumpur.

Tel: 03-2698 4020        Fax: 03-2698 4021        Ref: RAA/CI/SK/15917/16

**7**

# EXHIBIT A-5

# DECLARATION OF
# SARANJIT SINGH

## IN THE HIGH COURT OF MALAYA AT KUALA LUMPUR
## IN THE FEDERAL TERRITORY OF MALAYSIA

**CIVIL SUIT NO:** _____ **2016**

BETWEEN

1. DRS ROBINHOT SIMANJUNTAK
   (Republic of Indonesia NIK No. 1271192301540001)
   (suing as the representative for the estate of SURTI
   DAHLIA SIMANJUNTAK, deceased)

2. LUKERTINA SIMANJUNTAK
   (Republic of Indonesia NIK No .1271194912580002)

3. MASNUR BR SIMANJUNTAK
   (Republic of Indonesia NIK No. 1271197003600001)

4. MAROJOHAN SIMANJUNTAK

5. IRIANTY

6. IRWANTONY SIMANJUNTAK                                   ...PLAINTIFFS

AND

MALAYSIAN AIRLINE SYSTEM BERHAD
(Company No. 10601-W)

(Administrator appointed)                                 .....DEFENDANT


**STATEMENT OF CLAIM**

1.  The 1st Plaintiff is the sibling of Surti Dahlia Simanjuntak (deceased) and brings this action on behalf of herself and her siblings, the 2nd to the 6th Plaintiffs, as dependents of the deceased, and also as the representative of the Estate of the deceased.

2.  At all material times the Defendant was a company duly incorporated under the laws of Malaysia and carried out business, inter-alia, as an international air carrier which performed carriage of persons by aircraft for reward.

3.    The Defendant company is currently under administration by an appointed Administrator who has acknowledged the Defendant's capability of being sued by the Plaintiffs by virtue of the consent provided pursuant to section 11(1)(e) of the *Malaysian Airline System Berhad (Administration) Act 2015* vide a letter dated 25.02.2016

4.    At all material times Malaysia and The People's Republic of China ("PRC") were State Parties to the *Convention* for *the Unification of* Certain *Rules for International* Carriage *by Air* ("the 1999 Montreal Convention") which has the force of law in Malaysia pursuant to the Carriage By Air Act *1974* (CBA Act").

5.    The provisions of the 1999 Montreal Convention applied to the carriage of the deceased Surti Dahlia Simanjuntak as the deceased held a flight ticket from Malaysia to the Republic of China, thereby engaging in "international carriage" for the purposes of the 1999 Montreal Convention and CBA Act.

6.    The deceased travelled on Malaysia Airlines flight MH370 on 08.03.2014, which did not reach its destination of Beijing and remains missing at the time of filing this suit, with all on board passengers presumed dead ("the accident").

7.    The disappearance of Malaysia Airlines flight MH370 was an accident within the meaning of Article 17 of the 1999 Montreal Convention.

8.    The 1999 Montreal Convention read together with the Civil Law Act 1956 creates a cause of action for damages against air carriers for death where loss and damage are caused by accidents and are suffered by the family and representative of the estate of the deceased.

9.    At all material times, the deceased was a citizen of the Netherlands and the Plaintiffs may seek the application of the law on damages under The Dutch Civil Code to some or all of the claims for damages in this action.

10.    By reason of the accident which caused the death of the deceased, the Plaintiffs and their family have suffered loss, grievance, expenses and damage.

11.    By virtue of the Defendant's General Conditions of Carriage, the Defendant agreed that it would not invoke the limitation of liability under the 1999 Montreal Convention in respect of any claim for recoverable compensatory damages in respect of death, wounding or other bodily injury.

12.    The Plaintiffs state that the disappearance of flight MH 370 was caused by the negligence of the Defendants and/or their employees and/or their agents as follows;

## PARTICULARS OF NEGLIGENCE

a)    Failed to properly and safely operate the Aircraft to its intended and scheduled destination;

b)    Failed to properly and safely maintain the structural and mechanical integrity of the Aircraft;

c)    Failed to employ proper and adequate flight following procedures and communication with flight crew operating the Aircraft.

13.    Further and in the alternative, the Defendant is estopped from relying on any limitation in the 1999 Montreal Convention as:-

a)    the death of the deceased could only be attributable to the negligence or other wrongful act or omission of the Defendant or its servants or agents; and

b)    such damage was not solely due to the negligence or other wrongful act or omission of a third party.

**THE PERSONS FOR WHOSE BENEFIT THIS ACTION IS BROUGHT FOR PURPOSES OF THE PROVISIONS OF SECTION 7 OF THE CIVIL LAW ACT 1956**

    i.    Plaintiffs 1 to 6 are the siblings of the deceased

14.    The deceased was aged 50 years at the time of her death and was in good health and was a businesswoman earning an accrued income exceeding €75,000 annually. The deceased contributed approximately €30,000 annually to her siblings and would continue to contribute if she was still alive.

15.    Each of the Plaintiffs, as members of the deceased's family, were in a position of financial dependence on the earnings of the deceased and thereby entitled to the benefit from the full potential future earnings of the deceased subject only to a deduction in respect of the deceased's living expenses.

**PARTICULARS OF SPECIAL DAMAGES OF THE PLAINTIFFS**

| | | |
|---|---|---|
| a) | Funeral expenses | RM 50,000.00 |
| b) | Cost of obtaining documents | RM 10,000.00 |
| c) | Such further and continuing loss will be provided At the trial of this action | |

16.    The Plaintiffs as members of the deceased's family claim for loss of support suffered together with reasonable expenses incurred as a result of the default of the Defendant in causing the death of the deceased and commencing upon that death.

17.    The High Court of Malaya at Kuala Lumpur has jurisdiction to hear this claim.

AND THE PLAINTIFFS CLAIM:-

i.      General damages for the loss of support to be assessed;

ii.     Special damages;

iii.    Interest on items (i) & (ii) above

iv.     Costs;

v.      Such further and other relief as this Honourable Court may deem just and expedient in the circumstances.

Dated this 7th March, 2016

..........................................

Isharidah,Ho,Chong & Menon

(Solicitors for the Plaintiffs)

This Statement of Claim is filed by M/S Isharidah, Ho, Chong & Menon, solicitors for the Plaintiffs whose address for service is at Unit A 11-1 & 2, Megan Avenue 1, No. 189, Jalan Tun Razak, 50400 Kuala Lumpur.

**(Ref:  IHCM/GS/620160110/rm&jk)**

# EXHIBIT B

# DECLARATION OF SARANJIT SINGH

IN THE HIGH COURT OF MALAYA AT KUALA LUMPUR
(CIVIL DIVISION)
CIVIL SUIT NO: WA-21NCVC-43-04/2016

BETWEEN

HUANG MIN & 31 OTHERS                              ...PLAINTIFFS

AND

1. MALAYSIAN AIRLINE SYSTEM
   BERHAD

2. MALAYSIA AIRLINES BERHAD

3. ALLIANZ GLOBAL CORPORATE AND
   SPECIALTY

4. KETUA PENGARAH PENERBANGAN
   AWAM MALAYSIA                                   ...DEFENDANTS

5. JABATAN PENERBANGAN AWAM
   MALAYSIA

6. TENTERA UDARA DIRAJA
   MALAYSIA

7. KERAJAAN MALAYSIA

**JUDGMENT**

1.     The present case is one of many that has been commenced by the next-of-kin of the passengers on the ill-fated flight MH370.

2.     The plaintiffs applied to stay proceedings pending a determination by a United States court on whether it has jurisdiction to hear cases commenced in the United States by the plaintiffs. The first to third defendants here are also defendants in the US action. The fourth to seventh defendants are not.

3.     The learned counsel for plaintiffs contended that the Malaysian action has been filed as a protective writ in order that the action does not become barred by limitation. Under the Montreal Convention and the Carriage by Air

Act 1974, limitation would have set in after a period of two years from the date of the putative arrival of the flight. This suit was filed a few days before the action would have expired.

4.    Counsel for the plaintiff explained in the course of submissions that, should the question of jurisdiction be decided in its favour in the US action, the plaintiffs would discontinue proceedings against the first to third defendants in Malaysia, leaving them to continue to pursue this case against the fourth to seventh defendants in Malaysia.

5.    The plaintiffs further contended that the facts of the present case amounted to special circumstances as would justify the grant of a stay of the Malaysians proceedings, based on the principles laid out in *Kosma Palm Oil Mill Sdn Bhd & Ors v Koperasi Serbaguna Makmur Sdn Bhd*[1].

*Protective writ*

6.    Although there was no specific averment contained in the affidavit deposed in support of the plaintiff's application, I am satisfied that, in the circumstances of this case, this Malaysian action has been filed at least partly as a protective writ. That this is so can be seen from the fact that the first of the three US actions had been commenced one month prior to the Malaysian writ, and that the Malaysian action had been filed just four days prior to the onset of limitation.

7.    That the form of the statement of claim sets out in detail the nature of the plaintiff's claim does not, in my judgment, make it any less a protective writ. In this regard I do not share the views of learned counsel for the first defendant, Mr Saranjit. The wide-ranging nature of the plaintiff's claim in and

---

[1] [2004] 1 MLJ 257

of itself does not militate against a finding that the suit was intended to preserve the plaintiff's rights from being barred by limitation.

*Special circumstances*

8.    As mentioned earlier, a stay of proceedings may only be granted if the applicant is able to show that special circumstances exist to justify the grant of a stay. This principle applies equally where a plaintiff, who has commenced claims against the same set of defendants based on the same facts in two or more jurisdictions, then seeks to stay one of those proceedings: see *Ledra Fisheries v Turner*[2].

9.    In the presence instance, I am satisfied that the writ in Malaysia was filed as a protective action in order to preserve the plaintiff's cause of action in Malaysia in the light of the foreshortened period of limitation applicable under the Montreal Convention. Does the fact that the action is a protective writ give rise to special circumstances within the meaning of *Kosma Palm*? In my judgment, the protective nature of the writ does not of itself give rise to special circumstances, although it does provide a valid answer to the contention that the Malaysian action amounted to an abuse of the court process.

10.    On the other hand, the prevention of a multiplicity of actions is a valid policy consideration to be taken into account by the court when exercising its discretion whether or not to grant a stay of proceedings. See, for example: *HSBC Bank (M) Bhd v Jejak Maju Resources Sdn Bhd*[3]. In addition, there is the potential for there to be costs savings in the event that one action is stayed, as the two proceedings will not have to proceed concurrently.

---

[2] [2003] EWHC 1949
[3] [2015] 10 MLJ 645

11.    These are, however, not the only considerations. Against them must be weighed the need for cases to be disposed of in an expeditious and economical manner as well as the potential prejudice that may be occasioned to the fourth to seventh defendants in having the Malaysian action hanging over them for an uncertain duration, pending disposal of the jurisdictional hearing in the USA to which, it must be remembered, they are not even parties.

12.    The plaintiffs in the present instance are well entitled to have commenced this action as a protective writ. Though it may be said that the Malaysian action is a contingency to be pursued against the first to third defendants only if the US court declines jurisdiction, the principles international comity, in my view, dictate that the Malaysian courts recognise the plaintiff's choice as a valid and legitimate course of action.

13.    Now, having instituted the action in Malaysia, the plaintiff will necessarily have accepted that the progress of this case is now placed in the hands of the court, in consonance with modern approach of active judicial management of cases. See for example the decision of the Federal Court in *Syed Omar bin Syed Mohamad v Perbadanan Nasional Bhd*[4], a case decided under the Rules of High Court 1980. It would appear that this would be more so under the Rules of Court 2012.

14.    Having regard to the facts of this particular case, I am of the view that the balance of justice and convenience lies in refusing the application for stay. I am cognisant of the cautionary advice given by the House of Lords in *The Abidin Daver*[5] against the dangers of permitting a multiplicity of suits to exist[6]. Nonetheless, the exercise of the judicial discretion on whether or not to grant a

---

[4] [2013] 1 MLJ 461
[5] [1984] 1 AC 398
[6] *Ibid.* at 412B (per Lord Diplock) and 423H (per Lord Brandon). Briefly stated, they are the risk that there will exist two conflicting judgments and a rush towards disposal of the case.

stay is dependent on the factual circumstances of each case. In addition to the factors considered in the preceding paragraphs, I also note that the US action is at a very nascent stage of proceedings, and that there is nothing to prevent the plaintiffs from discontinuing the Malaysian action against the first to third defendants upon the plaintiffs obtaining a favourable outcome on the jurisdictional question before the US court.

15.    In the course of arguments, counsel referred the court to the English Court of Appeal case of *AG v Arthur Andersen & Co*[7], the facts of which are similar those of the present case. The plaintiff in that case sued both in England and New York, and sought to stay its English proceedings in order to continue its New York action. Both the High Court and the Court of Appeal accepted that the English action had been commenced as a contingency to save the action from being barred by limitation, in the event that the jurisdiction of the New York court was successfully challenged. The Court of Appeal affirmed the decision of the trial judge to grant a stay of the action in England:

> *Naturally, if a plaintiff has thought fit to commence an action, with all the hardship to the defendant which this involves in terms of expense, worry and disruption, he should in general be made to face up to the situation which he has chosen to create, and should not be permitted to conduct the action to a timetable which corresponds only to his own whimsy. Having put his hand to the plough he should continue to the end of the furrow. This is only fairness and common sense. But the same considerations must demand that in some instances the approach should be different. The question for the learned judge, and for us also when reviewing his decision, is to my mind no more than this, whether the good management of the concurrent sets of proceedings clearly requires the English court, in charge of one set of those proceedings, to decree that a temporary halt should be called—temporary, because we must wait to discover what the American court is going to do. All agree that, if the American action ultimately fails for want of jurisdiction, the English action will resume where it has left off, and that, if the American action proceeds, it is in practice inevitable that the English action will either be left to wither informally, or will formally be made subject to an indefinite*

---

[7] [1989] ECC 224

*stay. To my mind this is precisely the spirit in which the learned judge, rightly, in my opinion, set himself to approach the problems raised by this particular case.*

*If the learned judge has thus directed himself correctly, is there any basis on which his decision can properly be overturned? I confess that I would be slow indeed to interfere with the exercise of his discretion, in what is essentially a question of the commonsense management of a case in his own list. I can see nothing material to his decision that he has omitted. Mr. Waller has very properly brought home to us in his forceful argument that a plaintiff who has chosen to subject a defendant to the hardship of an action cannot fairly be allowed to please himself how fast he proceeds; and that a plaintiff who has chosen to sue in two jurisdictions cannot be allowed freely to pursue one action or another to suit his own convenience. Again, we were reminded that this is an old claim, which involves serious imputations on the professional competence of the defendant firm, who are liable to suffer increasing hardship the longer they have to wait before they can bring forward the defence which they vigorously assert. They say that it is high time for these disputes to be resolved, and few would disagree. I am very conscious of these arguments. So also was the learned judge, for he said so. Given that he had them in mind, and yet decided that the commonsense of the matter demanded that further steps in the English action should await the resolution of the question of jurisdiction in New York, I would think it unacceptable for an appellate court to intervene.*[8]

16.    The passages above are instructive because they confirm that, firstly, in coming to a decision whether or not to exercise its discretion to grant a stay, a court must balance different and often competing policy considerations. Second and importantly, it also confirms that this decision is to be driven by a proper consideration of the particular circumstances of each case. Thus, even though a stay was granted in *AG v Arthur Andersen & Co.*, this does not mean that this court is bound to grant a stay in the present instance.

17.    Reference was also made in the submissions of counsel to the more recent case of *Excalibur Ventures LLC v Texas Keystone Inc*[9]. This case, however, can be distinguished on the basis that the court there rejected the contention

---

[8] Per Mustill LJ
[9] [2011] EWHC 1624 (Comm)

that the English proceedings had been commenced purely as a protective action.

18.    For the reasons I have explained, the plaintiff's application for stay is dismissed with costs of RM3,000 to the first defendant, RM3,000 to the second defendant and RM3,000 to the fourth to the seventh defendants collectively.

10 August 2016

Azizul Azmi Adnan
Judicial Commissioner
High Court (Civil Division)
Kuala Lumpur

| | |
|---|---|
| **For the plaintiff:** | Balan Nair Thamodaran & Malini Subramaniam—Messrs Thomas Philip |
| **For the first defendant:** | Saranjit Singh, Hoe Mei Lei & Dhiya Damia—Messrs Saranjit Singh |
| **For the second defendant:** | Sanjeev Kumar—Messrs Sanjeev Kumar |
| **For the fourth to seventh defendants:** | Alice Yoke, Senior Federal Counsel |

# EXHIBIT C

# DECLARATION OF

# SARANJIT SINGH

IN THE HIGH COURT OF MALAYA AT KUALA LUMPUR
(CIVIL DIVISION)
CIVIL SUIT NO: WA-21NCVC-20-03/2016

BETWEEN

WU SIYING AND 75 OTHERS                                          ...PLAINTIFFS

AND

1. MALAYSIAN AIRLINE SYSTEM
   BERHAD

2. MALAYSIAN AIRLINES BERHAD

3. KETUA PENGARAH, JABATAN
   PENERBANGAN AWAM                                        ...DEFENDANTS

4. TENTERA UDARA DIRAJA
   MALAYSIA

5. KERAJAAN MALAYSIA

**JUDGMENT**

*Introduction*

1.      The plaintiffs in this case made an application for both general and specific discovery against the defendants. In the course of oral submissions, Mr Tommy Thomas, the learned counsel for the plaintiffs, deferred his application for specific discovery in Enclosure 11 until after the disposal of the application for general discovery in Enclosure 10. Accordingly, this judgment deals only with the application for general discovery.

2.      This case arises out of the disappearance of a Boeing 777 bearing the registration number 9M-MRO and flight code MH370 on 8 March 2014. The first defendant was the former operating entity of the national carrier, whose business has since been transferred to the second defendant pursuant to the Malaysian Airline System Berhad (Administration) Act 2015.

*The plaintiffs' application*

3.      The plaintiffs' application in Enclosure 10 was made pursuant to, *inter alia*, order 24 rule 3 of the Rules of Court 2012, which is reproduced below for ease of reference.

> *Order for discovery (O. 24, r. 3)*
>
> 3.      (1) Subject to the provisions of this rule and of rules 4 and 8, the Court may at any time order any party to a cause or matter (whether begun by writ, originating summons or otherwise) to give discovery by making and serving on any other party a list of the documents which are or have been in his possession, custody or power and may at the same time or subsequently also order him to make and file an affidavit verifying such a list and to serve a copy thereof on the other party.
>
> (2) (There is no paragraph (2))
>
> (3) (There is no paragraph (3))
>
> (4) The documents which a party to a cause or matter may be ordered to discover under paragraph (1) are as follows:
>
> > (a)      the documents on which the party relies or will rely; and
> >
> > (b)      the documents which could—
> >
> > > (i)      adversely affect his own case;
> > >
> > > (ii)      adversely affect another party's case; or
> > >
> > > (iii)      support another party's case.

4.      The plaintiffs' application for general discovery cited the following grounds in support:

(a)    that the plaintiffs are in the position of information paucity, as all the documents pertaining to the disappearance of MH370 were in the possession, custody or power of the defendants; and

(b)    the plaintiffs have reason to believe that the defendants may dispose of, conceal or destroy such documents.

*The law relating to discovery*

5.      In order to succeed in their applications, the plaintiffs must establish the three essential elements identified by the Edgar Joseph Jr SCJ (delivering the

judgment of the High Court) in *Yekambaran Marimuthu v Malayawata Steel Bhd*[1]:

> The essential elements for an order for discovery are threefold; namely, first, there must be a "document", secondly, the document must be "relevant" and thirdly, the document must be or have been in the "possession, custody or power" of the party against whom the order for discovery is sought.

6.      Guidance as to whether a document sought is relevant is found in the following passage of the Singapore High Court case of *Manilal & Sons (Pte) Ltd v Bhupendra KJ Shan (T/A JB International)*[2]:

> Under a general order of court for discovery, a party is obliged to make discovery of all documents relevant to the matters in question in the action. What are the matters in question would depend on the pleadings. A document relates to the matter in question in the action if it contains information which may — not which must — either directly or indirectly enable the party requiring the discovery either to advance his own case or to damage the case of his adversary or which may fairly lead to a train of inquiry which may have either of those two consequences: see *Compagnie Financiere et Commerciale du Pacifique v Peruvian Guano Co* (1882) 11 QBD 55 at p 62. Documents relate to matters in question in the action so long as they are likely to throw light on the case: see *Merchants' & Manufacturers' Insurance Co Ltd v Davies* [1938] 1 KB 196 at p 210.

7.      The defendants raised a number of different grounds for resisting the application for general discovery. I deal with these grounds in turn in the following paragraphs. Other grounds were also raised in submissions to resist the application for specific discovery. Since the application for specific discovery has been deferred by the plaintiff, I do not propose to deal with those other grounds here.

*Whether application was procedurally wrong/premature*

8.      It is common ground that the liability of the first defendant is governed by the Montreal Convention 1999, applied in Malaysia by virtue of the Carriage by

---

[1] [1994] 2 CLJ 581
[2] [1990] 2 MLJ 282

Air Act 1974. (As to whether it provides an exclusive cause of action against a carrier: see paragraph 12, *post*.)

9.    It was advanced for the first defendant that the application was in error as a matter of procedure and/or premature and that the discovery was not relevant for the purposes of ascertaining liability at this stage in the proceedings. Mr Saranjit for the first defendant argued that the first defendant had not yet elected whether to avail itself of a defence under Article 21(2) of the Convention. Until such time, the liability of a carrier for the death of a passenger under the Convention was strict, provided that it is shown that the accident which caused the death took place on board the aircraft or in the course of any of the operations of embarking or disembarking. In the present case, it is not in dispute that these preconditions (which are imposed under Article 17(1) of the Convention) have been fulfilled. Thus—argued Mr Saranjit—until and unless the first defendant makes this election (and amends its pleadings as a consequence), discovery is not relevant or necessary, for the plaintiff does not have to prove the liability of the second defendant in order to be successful in its claim. Under Article 21(2), a carrier that disputes liability in excess of 133,000 SDRs[3] bears the burden of proving that the damage was not due to its negligence or other wrongful act or omission or that the damage was solely due to the negligence or other wrongful act or omission of a third party.

10.    Having examined the first defendant's defence, I am of the view that it has not pleaded that Article 21(2) applies. In other words, the first defendant appeared to have reserved its position on whether the accident was not the result of any fault on its part, or was the result of the fault of a third party. Therefore, I would agree with Mr Saranjit that, as currently pleaded, the

---

[3] special drawing rights, which is best understood as a notional currency whose value is determined by reference to a basket of currencies

discovery sought would not be relevant or necessary for the purposes of ascertaining the liability of the first defendant; such liability is strict, and unless and until the first defendant amends its pleadings to state that the damage was not due to its negligence or other wrongful act or omission or that the damage was solely due to the negligence or other wrongful act or omission of a third party, discovery would not be relevant *for the purposes of ascertaining the liability of the first defendant under the Convention*.

11.      However, the plaintiffs also claim against the third to fifth defendants: the Director General of the Civil Aviation Department, the Royal Malaysian Air Force, and government of Malaysia. These claims are not made under the Convention. Discovery could therefore be ordered against the first defendant in so far as they relate to documents that are relevant for the plaintiffs' case against the third to fifth defendants. This is because the ordinary rules applicable in general civil proceedings apply in respect of the claims against the government-related defendants. Liability for these defendants is not strict, and will have to be proven in the conventional manner, with the plaintiff having to bear the burden of proving its case.

12.      Mr Thomas for the plaintiffs also contended that there are a line of United States authorities for the proposition that the Convention does not oust or supersede, or does not completely oust or supersede, common law causes of action. I consider that it will not be necessary for me to answer this question at this stage in proceedings, as I have found that discovery may be ordered against the first defendant in respect of the plaintiffs' causes of action against the third to fifth defendants.

*Whether the plaintiffs are merely fishing*

13.     Both Ms Loke, senior federal counsel appearing for the third to fifth defendants, and Mr Saranjit argued before me that the plaintiffs' application was a mere fishing expedition, trawling for evidence to be used in support of their claims. Such an application ought not be countenanced by the court:

> [T]he court would dismiss a plaintiff's application for discovery if it is of the view that the plaintiff was 'merely fishing for evidence to prop up his case' and to allow him discovery would be unduly oppressive to the party giving discovery — see *Leslie S Holmes v Engineering Service Inc* [1993] 1 AMR 27 at p 36.[4]

14.     An explanation of what amounts to impermissible fishing is contained in the decision of the Federal Court of Australia, exercising its appellate jurisdiction, in *WA Pines Pty Ltd v Bannerman*[5]:

> Though the power to require discovery be acknowledged, how should it be exercised? It depends upon the nature of the case and the stage of the proceedings at which the discovery is sought. In the present case, discovery is sought before there is a tittle of evidence to suggest that the Chairman did not have the requisite cause to believe which para 6 of the statement of claim would put in issue. Some assistance was sought to be derived from cases where discovery had been given to a party before he was required to give particulars of his claim: cases such as *Ross v Blake's Motors* [1951] 2 All ER 689, but in cases of that kind there is either an anterior relationship between the parties which entitles one to obtain information from the other, or **sufficient is shown to ground a suspicion that the party applying for discovery has a good case proof of which is likely to be aided by discovery**. This is not such a case. **This is a case where a bare allegation is made by para 6 of the statement of claim and, the paragraph being denied, the applicant seeks to interrogate the Chairman and ransack his documents in the hope of making a case. That is mere fishing**. As Smithers J said in *Melbourne Home of Ford Pty Ltd v Trade Practices Commission*, supra (5 TPC at 35; ATPR at 18,087: "In the absence of such evidence the proceeding is essentially speculative in nature. In such circumstances for the Court to assist the applicants by making available to them the processes of interrogatories and discovery would be to assist them in an essentially fishing exercise and from this the Court on established principles should refrain." His Honour's refusal of discovery was right and it ought not to be disturbed.

> [Emphasis added]

---

[4] *Nguang Chan aka Nguang Chan Liquor Trader & Ors v Hai-O Enterprise Bhd & Ors* [2009] 5 MLJ 40 (CA)
[5] (1980) 30 ALR 559

15.    Having examined the statement of claim of the plaintiffs, I am of the view that there are sufficient pleaded facts to show that the plaintiffs do in fact have a case that may be aided by an order of discovery, and that, as a consequence, the application for discovery is not a mere fishing exercise.

16.    By way of example, the statement of claim narrates the following fact pattern: at 1:21:13 MYT on 8 March 2014 disappeared from the civilian radar system operated by the Kuala Lumpur Flight Information Centre, which is supervised and controlled by the Department of Civil Aviation. At 2:15 MYT, the first defendant's operation control centre informed the Flight Information Centre that MH370 was able to exchange signals and that it was flying in Cambodian airspace, information that is now thought to be incorrect (based on the preliminary report on the accident issued by the Ministry of Transport). Despite the fact that the last contact with MH370 was at approximately 1:20 MYT, the Flight Information Centre only activated the Kuala Lumpur Aeronautical Rescue Co-ordination Centre at 5:30 MYT, which in turn only issued a distress message for MH370 approximately one hour later.

17.    In my judgment, this fact pattern shows that the plaintiffs' case is not mere speculation. In examining the relevancy or materiality of the plaintiffs' application for discovery to a fact in issue, the plaintiffs' case must be assumed to be true: see *Yekambaran*'s case, *op. cit.*, where his lordship cited with approval the following passage from The Principles and Practice of Discovery by Edward Bray:

> ... for the purpose of testing the materiality of the discovery to a particular issue... it is the case of the party seeking the discovery that must be assumed to be true, and not that of the party from whom the discovery is sought.

18.    The case of *Kenwood Electronics (Malaysia) Sdn Bhd v People's Audio Sdn Bhd & Ors*[6] was cited in support for the contention that the plaintiffs' application for discovery ought to be dismissed. In my view, that case can be distinguished on the facts. The ratio of that case is that no discovery ought to be ordered if the effect of compelling the defendants to disclose and produce the documents sought would be to reverse the legal burden of proof. In the present instance, compliance with an order for general discovery would not have such an effect.

*No affidavit in support*

19.    The first defendant contended that the plaintiffs' application must fail on a procedural point, as the application was not accompanied by an affidavit in support.

20.    In my judgment, there is no requirement under order 24 rule 3 of the Rules of Court 2012 for an applicant to depose an affidavit in support of an application for general discovery under order 24 rule 3, unlike an application for specific discovery under order 24 rule 7A. In any event, the plaintiffs have filed a notice of their intention to refer to the relevant supporting and reply affidavits that had been filed in connection with the application for specific discovery (which application the plaintiff has now deferred).

*Whether grounds for application baseless*

21.    Ms Loke for the third to fifth defendants contended that the grounds upon which the plaintiff sought discovery was without basis. According to her, there are ample facts contained Interim Statement dated 8 March 2015 issued by the Malaysian International Civil Aviation Organisation Annex 13 Safety Investigation Team for MH370, which was appended as an exhibit in Enclosure

---

[6] [2003] 5 MLJ 276

24. Thus, according to counsel, the plaintiff is not in a position of information paucity.

22.    In my judgment, apart from the Interim Statement, all relevant information that could possibly be used to determine the liability of the defendants are or should be in the possession, custody or power of the defendants. Of course, the Interim Statement itself would not be sufficient for the plaintiff to proceed to trial. For instance, original documents will need to be adduced for the purposes of compliance with the rules of evidence.

23.    The second ground advanced by the plaintiffs contend that the defendants are likely to dispose of or conceal or destroy documents relating to the subject matter of this suit. Here, I am in agreement with Ms Loke that there is no credible evidence to substantiate this concern.

24.    Nonetheless, the applicable test for determining whether or not discovery ought to be granted is that set out in *Yekambaran*'s case: there must be a "document", that document must be "relevant" and it must be or have been in the "possession, custody or power" of the party against whom the order for discovery is sought. I am of the view that the plaintiffs' application fulfils this test. None of the objections raised by the defendants could be sustained, for the reasons that I have explained above.

25.    Application allowed, with costs to be in the cause.

8 September 2016

Azizul Azmi Adnan
Judicial Commissioner
High Court (Civil Division)
Kuala Lumpur

*Wu Siying & Ors v Malaysian Airline System Berhad & Ors*

| | |
|---|---|
| **For the plaintiff:** | Tommy Thomas & Ganesan Nethi—Messrs Tommy Thomas |
| **For the first defendant:** | Saranjit Singh, Hoe Mei Lei & Dhiya Damia—Messrs Saranjit Singh |
| **For the second defendant:** | Kumaran—Messrs Sanjeev Kumar |
| **For the third to fifth defendants:** | Alice Loke, Senior Federal Counsel |