# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: AIR CRASH OVER THE SOUTHERN INDIAN OCEAN ON MARCH 8, 2014 | |
| This Document Relates To:<br>1:16-cv-00053-KBJ,<br>*Wood v. Malaysia Airlines Berhad;*<br>1:16-cv-00419-KBJ,<br>*Gaspard v. Malaysia Airlines Berhad;*<br>1:16-cv-00439-KBJ,<br>*Smith v. Malaysia Airlines Berhad;*<br>1:16-cv-01047-KBJ,<br>*Ganguli v. Malaysia Airlines Berhad;*<br>1:16-cv-01048-KBJ,<br>*Zhang v. Malaysia Airlines Berhad;*<br>1:16-cv-01061-KBJ,<br>*Kanan v. Malaysia Airlines System Berhad;*<br>1:16-cv-01063-KBJ,<br>*Huang v. Malaysia Airlines Berhad.* | MDL Docket No: 2712<br><br>Misc. No. 16-1184 (KBJ) |

**DEFENDANTS MALAYSIAN AIRLINE SYSTEM BERHAD'S (ADMINISTRATOR APPOINTED) AND MALAYSIA AIRLINES BERHAD'S MEMORANDUM IN SUPPORT OF THEIR RULE 12(b)(1) MOTION TO DISMISS PLAINTIFFS' COMPLAINTS ON THE GROUND OF FOREIGN SOVEREIGN IMMUNITY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................v

INDEX OF EXHIBITS.........................................................................................x

I.     INTRODUCTION ......................................................................................1

II.    BACKGROUND OF CLAIMS .................................................................2

III.   PLAINTIFFS HAVE ALLEGED AND CONCEDED THAT MAS AND MAB ARE AGENCIES OR INSTRUMENTALITIES OF A FOREIGN STATE ...................................................................................................2

IV.   FACTS SUPPORTING MAS AND MAB'S STATUS AS AGENCIES OR INSTRUMENTALITIES OF A FOREIGN STATE ...................................6

    A.    MAS – Malaysian Airline System Berhad (Administrator Appointed) ...................................................................................6

    B.    MAB – Malaysia Airlines Berhad ..........................................7

    C.    Facts Supporting Khazanah's Status as a Political Subdivision of the Government of Malaysia.....................................................8

V.    ARGUMENT..........................................................................................10

    A.    MAS and MAB Qualify as "Agencies or Instrumentalities" of the Government of Malaysia under the Foreign Sovereign Immunities Act and Are Presumptively Immune from the Jurisdiction of the Courts of the United States and of the States........................................10

        1.    MAS and MAB Are Entitled to Sovereign Immunity Because Each Qualifies as an "Agency or Instrumentality" of Malaysia as Defined by the FSIA.....................................11

        2.    MAS and MAB are Separate Legal Entities and Were Established under the Laws of Malaysia. ...................................11

        3.    MAS and MAB are "Organs" of the Government of Malaysia.........................................................................12

        4.    MAS Is an Agency or Instrumentality of the Government of Malaysia Because It Is and Was 100% Owned by a "Political Subdivision" at the Time of Filing of All of the Lawsuits ..........................................................................18

5.      Plaintiffs Have Conceded that MAS and MAB are Both Agencies or Instrumentalities of a Foreign State ..................................... 20

B.      THIS COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFFS CANNOT ESTABLISH ANY APPLICABLE EXCEPTION TO OR WAIVER OF IMMUNITY UNDER THE FSIA. ......................................................................... 20

1.      Plaintiffs Cannot Establish the Significant Jurisdictional Nexus between the Conduct on Which the Suit is Based and the United States – a Necessary Prerequisite to an Exception to Immunity ........................................................... 21

2.      The Temporal Impossibility of Any Exception to or Waiver of Immunity as to MAB and the Act of State Doctrine Require Dismissal .......................................................... 22

3.      Plaintiffs Cannot Establish Any Applicable Exception to Immunity as to MAS – The Commercial Activity Exception Under 28 U.S.C. § 1605(a)(2) Does Not Apply ..................... 23

        a)      Plaintiffs' Actions against MAS Are Not "Based Upon" MAS's Commercial Activity in the United States ............................................................. 24

        b)      Plaintiffs' Actions are Not "Based Upon" Any Act of MAS in the United States in Connection with a Commercial Activity of MAS Elsewhere ..................................... 26

        c)      Plaintiffs' Actions Are Not "Based Upon" an Act of MAS Outside the United States that Caused a Direct Effect in the United States ........................................... 28

4.      The Montreal Convention Does Not Preclude Immunity ......................... 29

5.      Malaysia Did Not Explicitly or Implicitly Waive MAS's Sovereign Immunity Under Section 1605(a)(1) ........................................ 31

6.      MAS Did Not Waive Sovereign Immunity in MAS's Foreign Air Carrier Permit For Flights Conducted Entirely Outside the United States ...................................................... 34

        a)      Congress Granted Courts the Exclusive Power to Decide Claims of Sovereign Immunity under the FSIA .............................................................. 35

        b)      Even if the Waiver in the Permit Conditions Is
                Valid, the Waiver Does Not Apply to a Flight from
                Malaysia to China .........................................................................41

VI.     CONCLUSION...................................................................................................44

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aboeid v. Saudi Arabian Airlines, Inc.*, No. 10-cv-2518,
    2011 WL 2222140 (E.D.N.Y. June 1, 2011) ............................................................ 42, 43

*Alpha Therapeutic Corp. v. Nippon Hoso Kyokai,*
    199 F.3d 1078 (9th Cir.1999) ...................................................................... 13

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) .................. 10, 20, 33

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC,*
    No. 14-917-CV, 2016 WL 403445 (2d Cir. Feb. 3, 2016) .............................................. 26

*Australian Government Aircraft Factories v. Lynne*, 743 F.2d 672 (9th Cir. 1984) ................... 28

*Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398 (1964) ....................................... 23

*Barnett v. Iberia Air Lines of Spain*, 660 F. Supp. 1148 (N.D. Ill. 1987)...................... 27

*Brink's Limited v. South African Airways*, 93 F.3d 1022 (2d Cir.1996) ....................... 30

*Chicago Bridge & Iron Co.*, 506 F. Supp. ...................................................... 33

*Compania Mexicana de Aviacion S.A. v. United States Dist.*
    *Court for the Central Dist. of California*, 859 F.2d 1354 (9th Cir. 1988)........... 28, 38, 42

*Dames & Moore v. Regan*, 453 U.S. 654 (1981)................................................... 10

*Diaz-Aguasviva v. Iberia Lineas Aereas de Espana*, 902 F. Supp. 314 (D.P.R. 1995).......... 13, 15

*Ehrlich v. American Airlines, Inc.,* 360 F.3d 366 (2d Cir. 2004) ................................ 29

*Enahoro v. Abubakar*, 408 F.3d 877 (7th Cir. 2005)................................................ 20

*Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370 (7th Cir.1985) ............... 33

*Gayda v. LOT Polish Airlines*, 702 F.2d 424 (2d Cir.1983)...................................... 31

*Good v. Aramco Services Co.,* 971 F. Supp. 254 (S.D.Tex.1997)................................... 31

*Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567 (2004)..................................... 12

*Gupta v. Thai Airways Intern., Ltd.*, 487 F.3d 759 (9th Cir. 2007)............................. 14

*Gutch v. Federal Republic of Germany*, 444 F. Supp. 2d 1 (D.D.C. 2006)............... 31, 32, 33, 34

*Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000 (9th Cir.1987) .................................................. 31

*Haven v. Polska*, 215 F.3d 727 (7th Cir.2000) ............................................................................ 21

*Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190 (E.D.N.Y.2012) .................................... 21

*Intelsat Global Sales and Marketing, Ltd. v. Community of Yugoslav*
    *Posts Telegraphs and Telephones*, 534 F. Supp. 2d 32 (D.D.C.2008) ............................ 20

*Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir. 2000)......................... 12, 13, 15

*Kensington Int'l Ltd v. Itoua*, 505 F.3d 147 (2d Cir. 2007) .......................................................... 21

*McNamara v. Miller*, 269 F.2d 511 (D.C. Cir. 1959) .................................................................... 20

*Murphy v. Korea Asset Mgmt. Corp.*, 421 F. Supp. 2d 627 (S.D.N.Y. 2005) ....................... 12, 13

*Murphy v. Korea Asset Mgmt. Corp.*, 190 Fed. Appx. 43 (2d Cir. 2006) ............................. 12, 13

*Musopole v. South African Airways (Pty.) Ltd.*,
    172 F. Supp. 2d  443 (S.D.N.Y. 2001)................................................................................. 14

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......................................................................... 20

*OBB Personenverkehr AG v. Sachs*, 577 U.S. --, 136 S. Ct. 390 (2015)............................... 25, 26

*Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.*,
    509 F.3d 347 (7th Cir. 2007) ............................................................................................. 12

*Papas v. Malaysian Airline System BHD*, 05-cv-02987, Filed 8/29/2005,
    ECF No. 7 (D.N.J. 2005) .................................................................................................... 15

*Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000).................... 10, 21

*Princz v. Federal Republic of Germany*, 26 F.3d 1166 (D.C. Cir. 1994)..................................... 31

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) .............................................. 10, 28

*Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003)............................... 18, 19, 41

*Rong v. Liaoning Province Gov't*, 452 F.3d 883 (D.C. Cir. 2006) ............................................... 10

*S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99 (D.D.C. 2012) ........................................... 10

*Sarei v. Rio Tinto, PLC*, 487 F.3d 1193 (9th Cir. 2007)............................................................... 23

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993).......................................................................... 26

*Shirobokova v. CSA Czech Airlines, Inc.*, 335 F. Supp. 2d 989 (D. Minn. 2004) ...................... 15

*Singh v. Caribbean Airlines, Ltd.*, 798 F.3d 1355 (11th Cir. 2015) ........................................ 14, 19

*Singh v. Caribbean Airlines Ltd.*, No. 15-679, 2016 WL 100452 (U.S. Jan. 11, 2016)......... 14, 19

*Tennessee Valley Authority v. Hill*, 437 U.S. 153 (1978) ........................................................ 39, 40

*Toole v. Sec'y of the Navy*, 446 F.3d 167 (D.C. Cir. 2006)..................................................... 20, 21

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994)...................... 18, 19

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*,
    204 F.3d 384 (2d Cir. 2000)................................................................................................. 27

*Upton v. Empire of Iran*, 459 F. Supp. 264 (D.D.C. 1978) ......................................................... 28

*USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190 (3d Cir. 2003)..................................................... 12

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983).................................................. 35

*Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230 (2d Cir. 2002) ............................ 10

*Vivas v. The Boeing Company*, Nos. 06-cv-3566, 06-cv-3567,
    06-cv-3568, 06-cv-6807 and 07-cv-0683,
    2007 WL 2409742 (N.D. Ill. 2007) ....................................................... 12, 13, 14, 15, 16

*W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400 (1990) ...................... 23

*Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229 (5th Cir.2004).......................... 31

*Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145 (2d Cir. 1991)........................................ 28

**Statutes**

28 U.S.C. § 1330.................................................................................................... 1, 4, 5, 29

28 U.S.C. § 1330(a) ..................................................................................................... 29, 30

28 U.S.C. § 1391(f)(3) ........................................................................................................ 4

28 U.S.C. § 1602.................................................................................. 1, 10, 29, 36, 39

28 U.S.C. § 1603........................................................................................... 10, 15, 29

28 U.S.C. § 1603(a) ......................................................................................................... 11

28 U.S.C. § 1603(b) ............................................................................................ 2, 11, 13

28 U.S.C. § 1603(b)(2) ......................................................................................... 10, 17, 19

28 U.S.C. § 1603(d) ........................................................................................... 24

28 U.S.C. § 1603(e) ...................................................................................... 24, 25

28 U.S.C. § 1604 ............................................................................ 10, 29, 30, 35

28 U.S.C. § 1605(a) ........................................................................................... 36

28 U.S.C. § 1605(a)(1) ............................................................................. 31,33,43

28 U.S.C. § 1605(a)(2) ................................................................................ passim

49 U.S.C. § 40113(a) ......................................................................................... 37

49 U.S.C. § 41301 .............................................................................................. 41

49 U.S.C. § 41304(a) ......................................................................................... 41

49 U.S.C. § 41305(b) ......................................................................................... 37

49 U.S.C. § 41308 .............................................................................................. 37

49 U.S.C. § 41703 .............................................................................................. 41

49 U.S.C. § 41706(c) ......................................................................................... 38

49 U.S.C. § 41712 .............................................................................................. 41

Foreign Sovereign Immunities Act of 1976, PL 94–583 (HR 11315),
    PL 94–583, October 21, 1976, 90 Stat 2892 ........................................ 29

Revision of Title 49, United States Code Annotated, "Transportation",
    PL 103–272,  July 5, 1994, 108 Stat 745 ........................................... 37

**Rules**

Fed. R. Civ. P. 5 ................................................................................................. 45

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 1

**U.S. Department of Transportation Orders**

*Amendment of Foreign Air Carrier Permit and Exemption Authority*,
    D.O.T. Order 86-1-38, 1986 WL 69761 (D.O.T. Jan. 21, 1986) ...................... 42

*Amendment of Foreign Air Carrier Permit and Exemption Authority*,
    D.O.T. Order 87-8-8, 1987 WL 111215 (D.O.T. July 31, 1987) .......... 37, 38, 42

D.O.T. Order, 2002-09-26, 2002 WL 31189758 (D.O.T.) ......................... 36

*Thai Airways International Public Company Ltd. Violations of*
   *49 U.S.C. §§ 41301, 41703, and 41712*, D.O.T. Order 2008-09-15,
   2008 WL 5505459 (D.O.T.) ............................................................................... 41

**Other Authorities**

1976 U.S.C.C.A.N. 6604 ........................................................................... passim

H.R. Rep. No. 94-1487 .............................................................................. passim

Laws of Malaysia, Act 125, Companies Act 1965 .................................................. 8, 9

Laws of Malaysia, The Malaysian Airline System Berhad
   (Administration) Act 2015 ..................................................................... 1, 22, 23

## INDEX OF EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 1 | Motion in Limine and Memorandum in Support, Estate of Mukherjee, Circuit Court of Cook County, Probate Court |
| 2 | Declaration of Rizani bin Hassan and Sub-Exhibits A-D |
| 3 | Declaration of Nik Azli Abu Zahar and Sub-Exhibits A-B |
| 4 | Letter Order, *Papas v. Malaysian Airline System BHD*, 05-cv-02987 |
| 5 | U.S. D.O.T. Foreign Air Carrier Permit and Permit Conditions issued to MAS on September 30, 2002 |

## MEMORANDUM

Subject to, and without waiver of, any rights, privileges, or defenses or conceding the convenience of this forum for resolution of this dispute, defendants, MALAYSIAN AIRLINE SYSTEM BERHAD (ADMINISTRATOR APPOINTED) ("MAS"), in some instances incorrectly sued as "Malaysian Airlines System Berhad," and MALAYSIA AIRLINES BERHAD ("MAB"), submit this Memorandum of law and fact in Support of their Fed. R. Civ. Pro. Rule 12(b)(1) Motion to Dismiss the above-captioned cases (the "Lawsuits") against Defendants, MAS and MAB, on the ground of immunity from suit in the Courts of the United States and of the States pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et. seq.* ("FSIA")**.**

## I.    INTRODUCTION

This Court should dismiss the above-captioned cases because MAS and MAB are immune from the jurisdiction under the FSIA because: 1) they are both agencies or instrumentalities of a foreign state; 2) there is no applicable exception to immunity; and 3) there has been no waiver of immunity necessary to the exercise of jurisdiction in any court in the United States.  As the Court is aware, all of the actions in these MDL proceedings arise from the loss of Malaysia Airlines Flight MH370 ("Flight MH370") on March 8, 2014 and the presumed death of Plaintiffs' decedents (the "Decedents").

MAS was incorporated under the laws of Malaysia in 1971 as the national airlines of Malaysia with the objective of facilitating Malaysia's economic development.  Subsequent to the Accident, the Government of Malaysia placed MAS under administration through enactment of special legislation set forth in the Laws of Malaysia, The Malaysian Airline System Berhad (Administration) Act 2015 ("Act 765").  Pursuant to Act 765 the Government of Malaysia also

called for, in the public interest, the incorporation of a new and separate entity, Malaysia Airlines Berhad ("MAB"), to operate as the national airline after MAS ceased flight operations.

As the former and current national air carriers of Malaysia, both MAS and MAB qualify as "agencies or instrumentalities" of a foreign state within the meaning of the FSIA. *See* 28 U.S.C. § 1603(b). As such, MAS and MAB are *presumptively* immune from the jurisdiction of the courts of the United States and of the States. Further, Plaintiffs in these Lawsuits cannot satisfy their burden of proving that any exception to or waiver of immunity applies as a matter of law. For these reasons, this Court must dismiss all of the above-captioned cases for lack of subject-matter and personal jurisdiction under the FSIA.

## II.    BACKGROUND OF CLAIMS

The above-captioned Lawsuits arise from the loss of Flight MH370 over the Southern Indian Ocean on March 8, 2014. MAS operated Flight MH370, a Boeing 777-2H6ER, with manufacturer's serial number 28420 and bearing the registration number 9M-MRO ("the Aircraft"). On March 8, 2014, the Aircraft departed Kuala Lumpur International Airport as a scheduled international passenger flight bound for Beijing Capital International Airport. Flight MH370 never arrived at Beijing Capital International Airport and is presumed to have crashed over the Southern Indian Ocean (the "Accident").

## III.    PLAINTIFFS HAVE ALLEGED AND CONCEDED THAT MAS AND MAB ARE AGENCIES OR INSTRUMENTALITIES OF A FOREIGN STATE

Eight lawsuits[1] have been commenced against MAS only or MAS and MAB and others in the United States by individuals who are alleged to have been appointed to act as the Personal

---

[1] One of these lawsuits, *Ries v. Malaysian Airlines System Berhad*, D.D.C. No. 1:16-cv-1062-KBJ, has since been resolved through settlement and will be dismissed. *See* ECF Doc. 21.

Representatives of over fifty Decedents.  These Lawsuits are a subset of the forty lawsuits[2] transferred to this Court for coordinated or consolidated pretrial proceedings on June 2, 2016. *In Re Air Crash Over the Southern Indian Ocean on March 8, 2014*, MDL No. 2712, 1:16-mc-01184 [ECF No. 1].

Plaintiffs were asked to stipulate that MAS and MAB are "agencies or instrumentalities" of foreign state and have refused to do so despite their allegations that: jurisdiction and/or venue is based upon the FSIA; that MAS and MAB are owned by the Government of Malaysia and are agencies or instrumentalities of a foreign state; and/or that the FSIA is applicable to their claims against MAS and MAB.  Based on the allegations of the complaints and other actions taken by Plaintiffs, judicial admission and/or judicial estoppel preclude them from contesting MAS and MAB's status as agencies or instrumentalities of a foreign state.  The Plaintiffs' various positions are as follows:

- ***Wood v. Malaysia Airlines Berhad et al., D***.D.C. No. 1:16-cv-00053-KBJ; and *Gaspard v. Malaysia Airlines Berhad, et al.,* **D.D.C. No. 1:16-cv-00419-KBJ**

Plaintiffs in the *Wood* and *Gaspard* matters allege in their Complaints that MAS and MAB are "agencies or instrumentalities" of the Government of Malaysia and that jurisdiction is premised on the FSIA and the Montreal Convention. *See*, Complaint, ¶¶ 4-8, 10-21, *Wood v. Malaysia Airlines Berhad et al., D*.D.C. No. 1:16-cv-00053-KBJ [ECF No. 1]; Complaint, ¶¶ 9-13, 15-23, *Gaspard v. Malaysia Airlines Berhad, et al.,* D.D.C. No. 1:16-cv-00419-KBJ [ECF No. 1].

- ***Ganguli v. Malaysia Airlines Berhad, et al.*, D.C.C. No. 1:16-cv-01047-KBJ**

Although Plaintiff Sanjit Ganguli initially sued both MAB and MAS, MAB was subsequently voluntarily dismissed from the case.  The *Ganguli* Complaint is silent on the issue

---

[2] Neither MAS nor MAB are defendants in the other thirty-two lawsuits.  The Boeing Company is the sole defendant in those cases.

of MAS's ownership or its status as the national air carrier of Malaysia and thus does not allege jurisdiction based on 28 U.S.C. § 1330 or identify any applicable exception to immunity under the FSIA.  *See*, Complaint, at ¶¶ 10-20, *Ganguli v. Malaysia Airlines Berhad, et al.*, D.D.C. No. 1:16-cv-01047-KBJ [ECF No. 1].  However, Plaintiff Ganguli does allege that venue is proper in the transferor court, the Northern District of Illinois, based on 28 U.S.C. § 1391(f)(3) which is the venue statute specifically applicable in "[c]ivil actions against a foreign state."  *See* Complaint at ¶ 19.  Notwithstanding the absence of allegations regarding MAS's status as an agency or instrumentality of a foreign state, pleadings filed in the Circuit Court of Cook County, Illinois, Probate Court, relating to Ganguli's decedents in this action asserted that "state-owned or state controlled companies such as Malaysia Airlines, should be treated as foreign governmental agencies" as defined by the FSIA in order to have reports published by MAS admitted into evidence as self-authenticating documents. *See* **Ex. 1**, Motion in Limine and Memorandum in Support, true and correct copies of which is attached hereto (relevant portions marked), at Memo p. 1; Memorandum pp. 2-4.  This was done to obtain a declaration of a presumption of death of his decedents earlier than provided by Illinois law.

- ***Smith v. Malaysia Airlines Berhad, et al.*, 1:16-cv-00439-KBJ; and *Zhang, et al. v. Malaysia Airlines Berhad, et al.*, 1:16-cv-01048-KBJ; *Huang v. Malaysia Airlines Berhad, et al*, No. 1:16-cv-01063-KBJ;**

In these three cases involving the same decedents Plaintiffs are all represented by the Motley Rice law firm and make differing allegations in each of their complaints regarding MAS and MAB and the bases for jurisdiction.  Plaintiffs in all three cases acknowledge in their complaints that MAS and MAB are owned by the Government of Malaysia but do not allege uniformly that the FSIA is the basis of each transferor court's original jurisdiction.

In the First Amended Complaint filed in *Huang, et al. v. Malaysia Airines Berhad, et al.*, which originated in the Southern District of New York, the Plaintiffs acknowledge that MAS and

MAB are owned by the Government of Malaysia's state investment fund in the opening paragraph, but they fail to identify 28 U.S.C. § 1330 as the basis for jurisdiction in the Southern District of New York or any particular statutory exception to immunity under the FSIA (even though they rely on, *inter alia*, the FSIA's venue provision, 1391(f)(3)).  *See*, First Amended Complaint, ¶¶ 1-13, *Huang, et al. v. Malaysia Airlines Berhad, et al.*, D.D.C. No. 1:16-cv-01063-KBJ [ECF No. 9].

In *Smith v. Malaysia Airlines Berhad, et al.* and *Zhang, et al. v. Malaysia Airlines Berhad, et al.* – separate lawsuits filed by the same attorneys based on the deaths of the same Decedents as in the *Huang, et al*. matter – the Plaintiffs specifically allege that MAS and MAB are "agencies or instrumentalities" of the Government of Malaysia and they identify both the FSIA and 28 U.S.C. § 1330 as one of the bases for jurisdiction and allege particular exceptions to immunity.  *See*, Complaint, ¶¶ 12-23, *Smith v. Malaysia Airlines Berhad, et al.*, D.D.C. No. 1:16-cv-00439-KBJ [ECF No. 1]; First Amended Complaint, ¶¶ 12-22, *Zhang, et al. v. Malaysia Airlines Berhad, et al.*, D.D.C. No. 1:16-cv-01048-KBJ [ECF No. 3].

- ***Kanan v. Malaysia Airlines Berhad, et al.*, D.D.C. 1:16-cv-01062-KBJ**

The Complaint filed by the Plaintiffs in the *Kanan v. Malaysia Airlines Berhad, et al.* matter is almost identical to the First Amended Complaint filed by the Plaintiffs in *Huang, et al.*, and likewise acknowledges the governmental ownership of MAS and MAB but fails to allege jurisdiction based on the FSIA. *See*, Complaint, ¶¶ 1-13, *Kanan v. Malaysia Airlines Berhad, et al.*, D.D.C. 1:16-cv-01062-KBJ [ECF No. 1].

## IV. FACTS SUPPORTING MAS AND MAB'S STATUS AS AGENCIES OR INSTRUMENTALITIES OF A FOREIGN STATE

### A. MAS – Malaysian Airline System Berhad (Administrator Appointed)

MAS was incorporated under the laws of Malaysia in 1971 to serve as the national air carrier and to facilitate the economic development of the country. *See*, **Ex. 2**, Declaration of Rizani bin Hassan ("Hassan Dec."), ¶¶ 5, 8, 20-21. The Government of Malaysia owns the Special Rights Redeemable Preference Share ("Special Share") in MAS. *Id.* at ¶ 22. The Government of Malaysia is the single and only such shareholder, and this share may only be held by or transferred to the Minister of Finance of the Government of Malaysia. *Id.* The Malaysian Prime Minister appoints the Chairman of MAS's Board of Directors as well as a director from the Ministry of Finance – namely, the Secretary General of the Ministry of Finance. *Id.* at ¶ 23. The Prime Minister appoints MAS's most senior executive, the Managing Director, who also has a seat on MAS's Board of Directors and is in charge of directing and managing the day-to-day operations of MAS. *Id.* at ¶ 26. The Prime Minister nominates all other directors on MAS's Board of Directors and can remove any director or terminate any nomination. *Id.* at ¶ 23.

MAS is a "Government Linked Company" ("GLC") under Malaysian law, meaning that it is a company in which the Government of Malaysia has a direct controlling stake. A controlling stake refers to the Government of Malaysia's ability to appoint the Board of Directors and senior management positions and make other key decisions. *Id.* at ¶ 24, 34. The Government of Malaysia's ownership interest in MAS since 2004 has been held through Khazanah Nasional Berhad ("Khazanah") – literally translated as National Treasury Limited – which is the Government of Malaysia's sovereign wealth fund and a political subdivision of the Government of Malaysia. *Id.* at ¶¶ 6, 25, 36, 42-58. MAS is required to make commercial decisions in accordance with the government's needs, directives, and demands. *Id.* at ¶ 27, 29-31.

On March 8, 2014, MAS was 69.37% owned by the Government of Malaysia through Khazanah. *Id.* at ¶ 40. On August 29, 2014, in order to preclude the financial collapse of MAS and to ensure the continued operation of the national air carrier, Khazanah announced the five-year 12-point MAS Recovery Plan ("MRP") and its plans to purchase the remaining ownership of MAS from the minority shareholders and delist MAS from the Malaysian Stock Exchange. *Id.* at ¶ 7, Ex. B thereto. By December 31, 2014 Khazanah held 100% of the shares in MAS. *Id.* at ¶¶ 10, 40-41. By means of the Malaysian Airline System Berhad (Administration) Act (Act 765), which came into force on February 20, 2015, the Government of Malaysia placed MAS under administration. *Id.* at ¶ 13, Ex. C thereto. Although MAS is currently under administration, contrary to the allegations in various Plaintiffs' Complaints, MAS *is still in existence* and an administrator has been appointed by Khazanah to run the day-to-day operations of the airline, including the final confirmation and resolution of all passenger family compensation issues as a result of the Accident. *Id.* at ¶¶ 1, 13, 16, Ex. D thereto. For a full recitation of facts supporting MAS's status as an agency or instrumentality of the Government of Malaysia, *see* **Ex. 2**, Declaration of Rizani bin Hassan and supporting exhibits.

B.    **MAB – Malaysia Airlines Berhad**

Act 765, referenced above, also called for the incorporation of MAB, as a separate and independent entity with a new business model, to assure the continuity of a national air carrier for Malaysia. *See* **Ex. 3,** Declaration of Nik Azli Abu Zahar ("Zahar Dec."), ¶ 6, and Exhibit A thereto. As stated in Malaysia Act 765, the government of Malaysia determined that it was in the public interest to ensure the continued existence of a national carrier to facilitate Malaysia's economic development and to provide for transition the operations formerly performed by MAS to MAB. *Id.* at ¶ 6. MAB was incorporated on November 7, 2014, almost eight months *after* the date or Accident, and began operating as the national carrier for Malaysia on September 1, 2015,

one year and five months *after* the date of the Accident, pursuant to Act 765. *Id.* at ¶¶ 5, 7. MAB

is neither a citizen of any State of the United States, nor was MAB created under the laws of any

third country.  *Id.* at ¶ 13.

As reflected in Act 765, MAB was incorporated with the main objective of operating as

the national air carrier of Malaysia. As a Government Linked Company, MAB carries out the

business of the national carrier as a commercial enterprise while also supporting the national

development of Malaysia.  *Id.* at ¶ 14.  MAB is also strategically important to and an integral

part of the Government. Not only does MAB provide a primary component of Malaysia's

domestic and international transportation system, MAB is a component of Malaysia's national

defense system in the prosecution of any war or hostilities in which Malaysia is engaged.

Additionally, as the employer of over 14,000 people, MAB is a significant employer of the

nation's workforce and is a vital part of the Malaysian economy. *Id.* at ¶ 18.

On the date of its incorporation, MAB was wholly owned by Khazanah, the sovereign

wealth fund and investment arm of the Government of Malaysia. *Id.* at ¶ 9.  Khazanah is a

political subdivision of the Government of Malaysia.  **Ex. 2**, Hassan Dec. ¶¶ 42-58.  On the date

each of the above-captioned Lawsuits was commenced, from 30 December 2015 through 7

March 2016, MAB was and currently is a Government Linked Company through Khazanah.  **Ex.**

**3**, Zahar Dec., ¶ 10.  For a full recitation of facts supporting MAS's status as an agency or

instrumentality of the Government of Malaysia, *see* **Ex. 3**, Declaration of Nik Azli Abu Zahar

and supporting exhibits.

### C.    Facts Supporting Khazanah's Status as a Political Subdivision of the Government of Malaysia

Khazanah is a political subdivision of the Government of Malaysia as shown by the

following facts.    Khazanah was incorporated, as a separate legal entity, under the Laws of

Malaysia, Act 125, Companies Act 1965 ("Companies Act") on 3 September 1993 as a Public Limited Company and strategic investment arm of the Government of Malaysia. **Ex. 2**, Hassan Dec., ¶¶ 42, 43, 45 and Exhibit A thereto. It is neither a citizen of any State of the United States, nor was Khazanah created under the laws of any third country. *Id*. at ¶ 42. Khazanah is able to sue and be sued in its own name. Khazanah may hold property in its own name but such property is held only for the benefit of the Government of Malaysia. *Id*. at ¶ 56.

Khazanah is tasked with shaping selected strategic industries in Malaysia, and nurturing their development with the aim of pursuing the nation's long-term economic interests. *Id*. at ¶¶ 46, 47. Investments by Khazanah are directed by the Government of Malaysia's Mandate and Khazanah must ensure that any investment opportunities correlate with Malaysia's larger strategic and national objectives. *Id*. at ¶ 49. Khazanah is governed by an eleven-member Board comprised of representatives from the Government of Malaysia and the corporate sector. *Id*. at ¶ 51. Khazanah's senior most executive, its Managing Director, is appointed by the Prime Minister of Malaysia. *Id*. at ¶ 52. The Managing Director is responsible for overseeing the day-to-day operations of Khazanah and reports to Khazanah's Board of Directors, which is chaired by the Prime Minister of Malaysia who concurrently serves as the Minister of Finance. *Id*. at ¶ 53. The Second Finance Minister and Secretary General of Treasury, Ministry of Finance, are also members of Khazanah's Board. *Id*. at ¶ 54. Khazanah is funded by the retention of returns generated through its investments as well as by the issuance of bonds. *Id*. at ¶ 55. Khazanah fulfills the Government's role as investor in the realm of economic development and Khazanah is treated as a part of or an arm of the Government of Malaysia (as opposed to an agent). *Id*. at ¶ 58. For a full recitation of facts supporting Khazanah's status as a political subdivision of the Government of Malaysia, *see* **Ex. 2**, Declaration of Rizani bin Hassan and supporting exhibits.

## V.    ARGUMENT

### A.    MAS and MAB Qualify as "Agencies or Instrumentalities" of the Government of Malaysia under the Foreign Sovereign Immunities Act and Are Presumptively Immune from the Jurisdiction of the Courts of the United States and of the States

The FSIA establishes a comprehensive framework for determining whether the courts of the United States may exercise jurisdiction over a foreign state. *See* 28 U.S.C. § 1602.  The FSIA provides that "a foreign State … *shall be immune* from the jurisdiction of the courts of the United States and of the States …" 28 U.S.C. § 1604 (emphasis added). It is the *exclusive means* by which foreign countries, or their agencies or instrumentalities, may be sued in American courts, *Dames & Moore v. Regan*, 453 U.S. 654 (1981); *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992); *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000), and the *sole basis* for obtaining jurisdiction over a foreign state. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989); *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 888 (D.C. Cir. 2006).

An entity claiming protection under the FSIA bears the burden of establishing a *prima facie* case that it has sovereign status. *See e.g.*, *S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99, 107 (D.D.C. 2012); *Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 241 (2d Cir. 2002).  A "foreign State," as contemplated by the FSIA, includes: (1) a foreign state itself; (2) a political subdivision of a foreign state; (3) an organ of a foreign state or its political subdivision; or (4) an entity majority owned by a foreign State or its political subdivision. *See* 28 U.S.C. § 1603.  MAS and MAB – the former and current national air carriers of Malaysia – are "agenc[ies] or instrumentalit[ies]" of the Government of Malaysian as defined by the FSIA because they are "organs" of the Government of Malaysia and/or they are "majority owned" by a "political subdivision" of Malaysia. *See* 28 U.S.C. § 1603(b)(2).

1.    **MAS and MAB Are Entitled to Sovereign Immunity Because Each Qualifies as an "Agency or Instrumentality" of Malaysia as Defined by the FSIA.**

Under the FSIA a "foreign state" includes ". . . an agency or instrumentality of a foreign state as defined in subsection [1603] (b)."  28 U.S.C. §1603(a).  The FSIA provides that:

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an *organ of a foreign state or political subdivision thereof*, or a majority of whose shares or other ownership interest is *owned by a foreign state or political subdivision thereof*, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b) (emphasis added).  To qualify as an "agency or instrumentality" under the FSIA, an entity must meet three criteria: (1) separate juristic persona; (2) ownership by a foreign state/political subdivision, *or* constituting an organ of a foreign state or its political subdivision; and (3) establishment under the laws of the state that owns it or whose organ it is.

2.    **MAS and MAB are Separate Legal Entities and Were Established under the Laws of Malaysia.**

MAS and MAB both meet the first and third prongs of the "agency or instrumentality" definition – each company is a separate legal entity and was established under the laws of Malaysia.  *See* **Ex. 2**, Hassan Dec., ¶ 5; **Ex. 3**, Zahar Dec., ¶¶ 5-6.   The definition of a separate legal person "include[s] a corporation, association, foundation, or any other entity which, under the law of the foreign state where it was as created, can sue or be sued in its own name, contract in its own name, or hold property in its own name." H.R. Rep. No. 94-1487, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6614. MAS and MAB are separate legal persons and were both incorporated as separate juristic personas and can sue or be sued in their own names, and thus each satisfies

the first prong, . Hassan Dec., ¶¶ 4-5; Zahar Dec., ¶¶ 5-6.  Indeed, MAS and MAB have both been sued in in these cases in their own names. MAS and MAB also meet the third requirement because both are Malaysian companies incorporated under the Malaysian Companies Act of 1965 and neither are citizens of a State of the United States nor created under the laws of a third country. Hassan Dec., ¶¶ 4-5; Zahar Dec., ¶¶ 5, 13. Therefore, MAS and MAB each satisfy the first and third definitional requirements of an "agency or instrumentality" for purposes of the FSIA.

### 3.    MAS and MAB Are "Organs" of the Government of Malaysia.

MAS and MAB also satisfy the second prong of the definition of an "agency or instrumentality" because each entity qualifies as an "organ" of the Government of Malaysia at the relevant time, and thus are entitled to the presumption of immunity afforded to foreign states.[3]

Factors that determine whether an entity is entitled to immunity under the FSIA as an "organ" of a foreign state include: (1) whether the foreign state created the entity for a national purpose; (2) the entity's ownership structure; (3) whether the foreign state actively supervises the entity; (4) whether the foreign state requires the entity to hire public employees and pays their salaries; (5) whether the entity holds exclusive rights in the foreign state; and (6) how the entity is treated under the laws of the foreign state.  *USX Corp. v. Adriatic Ins. Co.,* 345 F.3d 190 (3d Cir. 2003) at 209; *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 846-47 (5th Cir. 2000); *Murphy v. Korea Asset Mgmt. Corp.*, 421 F. Supp. 2d 627 (S.D.N.Y.2005), *aff'd*, 190 Fed. Appx. 43 (2d Cir. 2006).

---

[3] For purposes of determining an entity's status under the FSIA, the relevant time is the dates on which the Lawsuits were filed. *Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.*, 509 F.3d 347, 349 (7th Cir. 2007) (citing *Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567 (2004). However, under the organ prong, historical facts regarding MAS prior to being placed into administration are relevant.  *See, e.g.*, *Vivas v. The Boeing Company*, Nos. 06-cv-3566, 06-cv-3567, 06-cv-3568, 06-cv-6807 and 07-cv-0683, 2007 WL 2409742, at *4 (N.D. Ill. 2007).

While these factors provide a framework for analysis, they are not applied mechanically. *See, e.g., Kelly,* 213 F.3d at 847. Courts considering whether an entity is an "organ" of a foreign state are to engage in a balancing process, without emphasizing any given factor or requiring that every factor weigh in favor of the entity claiming immunity. *Murphy*, 421 F. Supp. 2d at 641. These factors simply highlight the basic question contemplated for identifying an organ of a foreign state – whether the entity serves the sovereign interests of, and is controlled by, the foreign state in question.

It is clear that the term "organ" is to be interpreted broadly to include a wide variety of entities serving public functions, *Id.* at 640, and even entities that have a high degree of autonomy and independence may qualify as an "agency or instrumentality" of the foreign state under the "organ" prong. *Kelly*, 213 F.3d at 847 (citing *Alpha Therapeutic Corp. v. Nippon Hoso Kyokai*, 199 F.3d 1078, 1084-85 (9th Cir.1999)(opinion withdrawn upon stipulation of parties)). Previous determinations of an entity's status as an "agency or instrumentality" of a foreign state are relevant for the purpose of determining the entity's status in later-filed litigation. *Kelly*, 213 F.3d at 848; *Diaz-Aguasviva v. Iberia Lineas Aereas de Espana*, 902 F. Supp. 314, 316 (D.P.R. 1995) *vacated in part on other grounds*, 937 F. Supp. 141 (D.P.R.1996).

State-owned airlines are among the entities discussed in the legislative history of the FSIA as an example of an entity that would qualify as an "agency or instrumentality" of a foreign state under Section 1603(b). *See* H.R. Rep. 94-1487, *15-16, 1976 U.S.C.C.A.N. 6604, 6614. *See also*, *Vivas v. The Boeing Company*, *Vivas v. The Boeing Company*, Nos. 06-cv-3566, 06-cv-3567, 06-cv-3568, 06-cv-6807 and 07-cv-0683, 2007 WL 2409742 (N.D. Ill. 2007).

Following legislative history the courts have a long history of treating state-owned airlines as "agencies or instrumentalities" of a "foreign state" for purposes of the FSIA – whether

based on ownership or organ status. *Singh v. Caribbean Airlines, Ltd.*, 798 F.3d 1355, 1356-57 (11th Cir. 2015), *cert. denied sub nom. Singh v. Caribbean Airlines Ltd.*, No. 15-679, 2016 WL 100452 (U.S. Jan. 11, 2016)(airline held to be an "agency or instrumentality" where majority owned by Minister of Finance, a corporation sole incorporated under the Minister of Finance (Incorporated) Act, and a political subdivision); *Gupta v. Thai Airways Intern., Ltd.*, 487 F.3d 759, 761 n.2 (9th Cir. 2007)(airline was 79% owned by Ministry of Finance of the Kingdom of Thailand and that, under Federal law, a majority interest owned by foreign state or political subdivision is a 'foreign state'); *Musopole v. South African Airways (Pty.) Ltd.*, 172 F. Supp. 2d 443, 447 (S.D.N.Y. 2001)(holding "where a foreign government owns 80% of the beneficial interest in an entity, *particularly its national carrier*, there can be little doubt that the interests of the foreign sovereign are implicated to an extent sufficient to bring the case within the intended ambit of the statutory language" defining "agency or instrumentality" regardless of whether beneficial interest is owned directly or indirectly) (emphasis added).

Other courts have held airlines to be an "organ" of a foreign state. The district court in *Vivas v. The Boeing Co.*, Nos. 06-cv-3566, 06-cv-3567, 06-cv-3568, 06-cv-6807 and 07-cv-0683, 2007 WL 2409742 (N.D. Ill. 2007), found that the airline qualified as an "organ" of Peru, citing the following, *inter alia*, as weighing heavily in support: (i) the airline was created and terminated by Supreme Decree; (ii) it served a similar role to Air Force One; (iii) it performed the government's public purposes of transporting military personnel and providing access to remote areas of the country; (iv) it had little operational or financial autonomy and took orders from the government through a national fund for the financing of state enterprises; (v) it was wholly owned, whether directly or indirectly, and financially inseparable from the Government of Peru, and money flowed from the state to the airline and back. *Id.* at *5. The court further

noted that although the airline was able to enter contract in its own name for commercial and private purposes did not weigh strongly against finding the airline was an "organ," where entities that act and are suable in their own name were an enumerated example of an agency or instrumentality in the FSIA legislative history. *Id. See also Shirobokova v. CSA Czech Airlines, Inc.*, 335 F. Supp. 2d 989, 990-91 (D. Minn. 2004) (state-owned airline).

Prior determinations of an entity's status as an "agency or instrumentality" of a foreign state are also relevant for determining its status in later litigation. *Kelly*, 213 F.3d at 848 (noting district court's reliance on prior determination of defendant's status as agency or instrumentality to support its determination of organ status); *Diaz-Aguasviva v. Iberia Lineas Aereas de Espana*, 902 F. Supp. 314, 316 (D.P.R. 1995) (citing cases where airline was previously found to be agency or instrumentality in deciding, *sua sponte*, FSIA governed jurisdiction), *vacated in part on other grounds*, 937 F.Supp. 141 (D.P.R. 1996).

In fact, MAS has already been to be an "agency or instrumentality" of the Government of Malaysia. In 2005, the district court of New Jersey found that it was clear that MAS was an "organ" of the Government based on nearly identical facts that were in existence on the date of the Accident with respect to its ownership, structure, and the government's ability to supervise and direct the airline's operations. *See*, Letter Order, *Papas v. Malaysian Airline System BHD*, 05-cv-02987, Filed 8/29/2005, ECF No. 7 (D.N.J. 2005)(finding "no doubt exists MAS is an 'organ' of Malaysia, and is therefore an 'agency or instrumentality' of a foreign state sufficient to bring it within the purview of 28 U.S.C. § 1603").  *See* Letter Order attached hereto as **Ex. 4**. The previous determination that MAS is an organ of Malaysia and, therefore an "agency or instrumentality" of a foreign state, is relevant to determining the MAS's status in this litigation. *Kelly*, 213 F.3d at 848; *Diaz-Aguasviva*, 902 F. Supp. at 316 (D.P.R. 1995)

The same conclusion is required in these cases and the fact that the Government of Malaysia has placed MAS under administration by way of special legislation prior to the date of filing of the above-captioned cases, as in *Vivas*, further underscores MAS's organ status. The Declaration of Rizani bin Hassan, **Ex. 2**, demonstrates that, historically: (1) MAS was incorporated to serve the national purpose of operating as the national air carrier for the nation of Malaysia to facilitate the economic development of the country, (Hassan Dec., ¶¶ 5, 19-21); (2) as a "Government Linked Company," Malaysia has a controlling stake in MAS, and 100% of MAS's shares are owned by the Government of Malaysia through Khazanah (*id*. at ¶¶ 6, 11, 24); (3) while MAS operated as the national carrier, the Government actively supervised MAS and exercised control over the airline through policy decisions at the Ministry and Cabinet levels and the government determines the domestic routes MAS was required to operate and secured all international traffic rights on behalf of MAS (*id*. at ¶¶ 22-31); (4) MAS holds exclusive rights under Malaysian law, such as certain tax exemptions, the government established the financial structure by which commercial aircraft was purchased and leased to MAS, and MAS is entitled to governmental financial support for its operations when needed (*id*. at ¶ 32); (5) MAS was a component of the national defense system and the primary component of Malaysia's domestic and international transportation system (*id*. at ¶ 33); and (6) at the time of filing of each of the Lawsuits, the Government of Malaysia had enacted special legislation to place MAS under administration, enacting special legislation, Act 765, in the public interest to ensure the continuity of essential national air services (*id*. at ¶¶ 8-10, 13-14).

The same conclusion is necessary with respect to MAB's status as an organ of the Government of Malaysia. As established in the Declaration of Nik Zahar Abu Zahar, **Ex. 3**, MAB was incorporated on November 7, 2014 to perform the operations of the national carrier

for Malaysia once MAS ceased operations.   Zahar Dec., ¶¶ 5-6.   As stated in the special legislation enacted by the Government of Malaysia, Act 765, the Government  determined that it was in the public interest to ensure the continued existence of a national carrier to facilitate Malaysia's economic development and that the legislation provided an effective, efficient and seamless means to transition the operations of formerly performed by MAS to MAB. *Id.* at ¶ 6. MAB is a new and independent entity and was incorporated under a new business model pursuant to special legislation, Act 765. *Id.* at ¶¶ 5-6. As a Government Linked Company ("GLC"), owned through Khazanah, the Government has a controlling stake in MAB's operations. *Id.* at ¶¶ 9-11; *see also*, **Ex. 2**, Hassan Dec., ¶¶ 24-25 (explaining definition of GLC).

As the national air carrier of Malaysia, MAB is also strategically important to and an integral part of the Government of Malaysia. Not only does MAB provide a primary component of Malaysia's domestic and international transportation system, MAB is a component of Malaysia's national defense in the prosecution of any war or hostilities in which Malaysia is engaged. Additionally, as the employer of over 14,000 people, MAB is a significant employer of the nation's workforce and is a vital part of the Malaysian economy.  **Ex. 3**, Zahar Dec. ¶¶ 14, 17-18.  Because the Government of Malaysia called for the incorporation of MAB in the public interest and to serve the economic development of the country, MAB is likewise entitled to immunity from the jurisdiction over the courts of the United States and of the States as an "organ" of the Government of Malaysia.

Accordingly, applying the "organ" factors outlined above, MAS and MAB's current and historical ownership structure and purpose demonstrate that each entity qualifies as an "organ" of the Government of Malaysia.  As "organs" under 28 U.S.C. § 1603(b)(2), both MAS and MAB are presumptively immune from the jurisdiction the Lawsuits should be dismissed.

4.    **MAS Is an Agency or Instrumentality of the Government of Malaysia Because It Is and Was 100% Owned by a "Political Subdivision" at the Time of Filing of All of the Lawsuits.**

Additionally, or in the alternative, MAS qualifies as an "agency or instrumentality" of a foreign state and is entitled to the presumption of immunity because MAS currently is and was 100% owned by Khazanah, a political subdivision of the Government of Malaysia, at the time of filing of the Lawsuits from 30 December 2015 through 7 March 2016. In the FSIA, Congress intended a "political subdivision" to include "all governmental units beneath the central government." H.R. Rep. No. 94-1487, at 15-16. The FSIA does not define "political subdivision" and no specific test has been formulated for determining whether a particular entity qualifies as a "political subdivision" of a foreign state. Instead, the question of whether an entity is a political subdivision versus an agency or instrumentality of a foreign state turns on whether the entity is a "separate legal person" under the FSIA.

Courts in this Circuit apply the "core functions" test which requires the Court to examine the "core function" of the entity in question and determine whether that function is governmental or commercial. *See*, *e.g.*, *Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151-153 (D.C. Cir. 1994). If the entity in question's "core function" is governmental in nature and purpose, the entity is a political subdivision of the foreign State (and considered equivalent to the foreign state itself); however, if the "core function" is commercial, the entity should be considered an agency or instrumentality of the state. *Roeder*, 333 F.3d at 234. This is the case regardless of the particular form of a given entity. *Id.*

As outlined above, as the investment-holding arm of Malaysia, Khazanah's core function and main objective is to promote economic growth and make strategic investments on the Government's behalf. *See* **Ex. 2**, Hassan Dec., ¶¶ 45, 57.  Khazanah was incorporated under the

Companies Act, 1965, in Malaysia on September 3, 1993 and is a wholly owned entity of the government of Malaysia.  *Id.* at ¶¶ 42, 43.  In addition to promoting economic growth, Khazanah's investments are directed by the Government's Mandate that it ensure that any investments correlate with Malaysia's larger strategic and national objectives. *Id.* at ¶¶ 46, 49.

 Khazanah is governed by an eleven-member Board of Directors comprised of representatives from the Government of Malaysia and the corporate sector.  *Id.* at ¶ 51. Khazanah's Board of Directors is chaired by the Prime Minister, who is also the Minister of Finance.  *Id.* at ¶ 53.  The Second Finance Minister and the Secretary General of the Treasury, Ministry of Finance, are also members of Khazanah's Board of Directors. *Id.* at ¶ 54.  All shares of Khazanah but one are owned by the Minister of Finance (Incorporated), a corporate body established pursuant to the Minister of Finance (Incorporation) Act, 1957.  *Id.* at ¶ 44. The remaining share is owned by the Federal Land Commissioner. *Id.*

 Under these facts, Khazanah is an integral part of the Government of Malaysia and it is a unit beneath the central government as opposed to an agency or instrumentality. *See, Singh v. Caribbean Airlines Ltd.*, 798 F.3d 1355, 1359 (11th Cir. 2015), *cert. denied*, *Caribbean Airlines Ltd., ---U.S.---,* 136 S. Ct. 850 (2016)(defendant airline was an agency or instrumentality of a foreign state under the FSIA because the airline was majority owned by the Minister of Finance Incorporated, an entity found to be a "political subdivision"). For these reasons, Khazanah is a political subdivision of the Government of Malaysia which qualifies MAS as an agency or instrumentality because MAS is wholly owned by Khazanah and was wholly owned at the time each of the lawsuits was filed. *See*, § 1603(b)(2); *see also*, *Transaero, Inc.*, 30 F.3d 148.

5.    **Plaintiffs Have Conceded that MAS and MAB are Both Agencies or Instrumentalities of a Foreign State**

As shown above, the Plaintiffs have invoked the jurisdictional and/or venue provisions applicable to a foreign state or an agency or instrumentality thereof.  Moreover, the Plaintiffs have alleged or otherwise pleaded facts that concede that MAS and MAB are agencies or instrumentalities of the Government of Malaysia.  Plaintiffs should be precluded on the basis of judicial admission, *McNamara v. Miller*, 269 F.2d 511, 515-16 (D.C. Cir. 1959) or judicial estoppel, *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) from contesting MAS and MAB's status as agencies or instrumentalities of the Government of Malaysia.

B.    **THIS COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFFS CANNOT ESTABLISH ANY APPLICABLE EXCEPTION TO OR WAIVER OF IMMUNITY UNDER THE FSIA**

Once a defendant makes a *prima facie* showing that it satisfies the definition of a foreign state, as MAS and MAB have done, the burden shifts to the Plaintiffs to prove an exception or waiver under the FSIA applies to strip the defendant of its presumed immunity from suit. *Enahoro v. Abubakar*, 408 F.3d 877, 882 (7th Cir. 2005). Plaintiffs cannot satisfy that burden here.  This Court may *only* exercise subject-matter jurisdiction if an exception to immunity applies. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442 (1989) ("*Amerada Hess*").

This Court must satisfy itself at the outset that an exception to or waiver of sovereign immunity under the FSIA applies. Because this motion challenges subject-matter jurisdiction and the Court's power to hear these cases, the Court must view the Plaintiffs' allegations with scrutiny that is not limited to the factual allegations contained in the complaints. *Intelsat Global Sales and Marketing, Ltd. v. Community of Yugoslav Posts Telegraphs and Telephones*, 534 F. Supp. 2d 32, 34 (D.D.C.2008)(citing *Toole v. Sec'y of the Navy*, 446 F.3d 167, 174 (D.C. Cir.

2006). Here, MAS and MAB challenge both the legal sufficiency of Plaintiffs' jurisdictional allegations and the alleged jurisdictional facts. The Court must go beyond the pleadings and resolve any disputed issues of fact necessary to a ruling on a motion to dismiss for lack of subject-matter jurisdiction. *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)(collecting cases). Additionally, because the statutory exceptions to immunity under the FSIA are in derogation of the historical immunity foreign states enjoyed from suit in the United States, those exceptions must be construed narrowly. *Haven v. Polska*, 215 F.3d 727, 731 (7th Cir.2000).

    **1.**    **Plaintiffs Cannot Establish the Significant Jurisdictional Nexus Between the Conduct on Which the Suit is Based and the United States – a Necessary Prerequisite to an Exception to Immunity**

The legislative history of the FSIA explains that exceptions to immunity operate as the equivalent of a federal long-arm statute for jurisdiction in cases against foreign states and their agencies or instrumentalities. H.R. Rep. 94-1487, 13, 1976 U.S.C.C.A.N. 6604, 6612. Therefore, each exception to immunity that is necessary to give this Court both subject-matter and personal jurisdiction over Plaintiffs' actions against MAS and MAB incorporates and requires a significant jurisdictional nexus between the conduct on which the suit is based and the United States. *Id.*; *see also, Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 204 (E.D.N.Y.2012) (citing *Kensington Int'l Ltd v. Itoua*, 505 F.3d 147, 155 (2d Cir. 2007)(both waiver and commercial activity exceptions require significant nexus between the commercial activity in the U.S. upon which the exception is based and the cause of action). Because these wrongful death actions are based on MAS's operation of an international passenger flight from Kuala Lumpur, Malaysia to Beijing, China, and has absolutely no connection with the United States, Plaintiffs cannot establish an applicable exception to immunity as a matter of law. For

this reason alone, there is no basis for any court of the United States to exercise jurisdiction to hear these claims.

### 2. The Temporal Impossibility of Any Exception to or Waiver of Immunity as to MAB and the Act of State Doctrine Require Dismissal

As an initial matter, with regard to MAB, Plaintiffs cannot establish an exception to immunity because these wrongful death lawsuits are *based on the activities or acts of MAS* as the operator of Flight MH370, and those activities or acts *predate* MAB's corporate existence. The loss of Flight MH370 occurred on March 8, 2014 and MAB was not incorporated until November 7, 2014. *See* **Ex. 2**, Zahar Dec., ¶¶ 5-7. MAB was incorporated as a separate entity under Malaysian law and not as the successor of MAS (which is currently in existence and under administration pursuant to Malaysia Act 765). *Id.* at ¶¶ 5-6 and Ex. A to Zahar Dec.

Because MAB was not incorporated until after the date of the Accident and could not have operated Flight MH370 and because MAB is not the successor-in-interest to MAS and did not assume MAS's liability for Flight MH370, Plaintiffs cannot establish any exception to or waiver of sovereign immunity with respect to MAB. Therefore, all claims against MAB should be dismissed for lack of subject-matter jurisdiction under the FSIA without further consideration.

To the extent Plaintiffs allege that MAB is the successor-in-interest to MAS and may be held liable for the acts or omissions of MAS, and request that the Court make such a determination, the Act of State Doctrine requires dismissal of these actions as to MAB. A finding that MAB is a successor-in-interest to MAS is clearly a necessary predicate to Plaintiffs' purported causes of action against MAB. Without question, Plaintiffs' allegations would require the Court to rule on the effect or validity of Act 765 itself, which provides for the functions and the powers of MAS's Administrator to: (1) Manage and compromise liabilities (§§9(1)(b) – (e) of the Act); (2) Defend MAS in litigation, include hiring counsel (§§10(h) and (g) of the Act);

(3) Effect and maintain policies of insurance (§10(j) of the Act); (4) Transfer assets from MAS to MAB (§10(o) of the Act); and (5) Liquidate the assets of MAS (§10(e) of the Act); and the *establishment of a new entity*, Malaysia Airlines Berhad, to assume only certain businesses, property, rights, liabilities of Malaysian Airline System Berhad (Preamble to Act 765 at p. 6).

Under these circumstances "[t]he act of state doctrine prevents U.S. courts from inquiring into the validity of the public acts of a recognized sovereign power committed within its own territory." *Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1208 (9th Cir. 2007) citing *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401 (1964). Considerations of international comity and principles of foreign sovereignty compel this Court to reject the Plaintiffs' requested relief – that MAB is determined to be the successor-in-interest to MAS and may be held liable for its acts and omissions – and avoid wading into the validity of Malaysia's domestic legislation. Indeed, "an action may be barred if (1) there is an 'official act of a foreign sovereign performed within its own territory'; and (2) 'the relief sought or the defense interposed [in the action would require] a court in the United States to declare invalid the [foreign sovereign's] official act.'" *Sarei* 487 F.3d at 1208, citing *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.,* 493 U.S. 400, 405 (1990). Challenges to, and interpretation of this Malaysian domestic law should be the exclusive province of the Malaysian courts.

### 3. Plaintiffs Cannot Establish Any Applicable Exception to Immunity as to MAS – The Commercial Activity Exception Under 28 U.S.C. § 1605(a)(2) Does Not Apply

Plaintiffs allege that MAS lacks immunity pursuant to the commercial activity exception found at 28 U.S.C. § 1605(a)(2). That exception does not apply to Plaintiffs' claims because their actions are neither *based upon* a commercial activity of MAS in the United States, an act performed by MAS in the United States in connection with a commercial activity elsewhere, nor an act by MAS elsewhere that causes a direct effect in the United States.

Section 1605(a)(2) provides that a foreign state shall not be immune from the jurisdiction of the courts of the United States in any case:

> In which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Section 1603(d) of the FSIA defines "commercial activity," in relevant part, as "either a regular course of commercial conduct or a particular commercial transaction or act," and § 1603(e) further defines "commercial activity carried on in the United States by a foreign state" as "commercial activity carried on by such state [as defined in 1603(d)] *and* having *substantial contact* with the United States." 28 U.S.C. § 1603(d)-(e) (emphasis added).

MAS does not dispute that it was engaged in a "commercial activity" as an air carrier or in the operation of Flight MH370. But, contrary to the assertions of certain Plaintiffs, this commercial activity does not establish an exception to immunity. All of Plaintiffs' claims for damages as a result of the death of their decedents are "based upon" MAS's operation of Flight MH370, a commercial activity or act by MAS entirely outside the United States and lacking any, let alone the "substantial contact" required under Section 1603(d)-(e). Similarly, Plaintiffs claims against MAS are not "based upon" any act of MAS outside the United States that had a legally recognizable effect in the United States. As will be shown in further detail below, none of the three clauses of the commercial activity exception apply to the facts of this case.

### a)      Plaintiffs' Actions against MAS Are Not "Based Upon" MAS's Commercial Activity in the United States

Plaintiffs actions against MAS – which arise from the Flight MH370 Accident over the Southern Indian Ocean – are quite clearly not "based upon" the "commercial activity carried on in the United States by [MAS]," 28 U.S.C. § 1605(a)(2)(cl. 1), "having substantial contact with

the United States." 28 U.S.C. § 1603(e). It is undisputed that Flight MH370, operated by MAS, departed from Kuala Lumpur, Malaysia bound for Beijing, China without any stopping point in the United States, and that the Accident occurred outside the United States.  Notwithstanding the undisputed facts, Plaintiffs, or some of them, have alleged that this  Court has subject-matter jurisdiction over their actions because the Decedent passengers allegedly purchased their tickets for carriage on Flight MH370 through travel agents located in the United States.

MAS disputes that any contract of carriage was made in the United States for reasons set forth in MAS's separate Motion to Dismiss for Lack of Jurisdiction under the Montreal Convention.   Nevertheless, Plaintiffs' allegations, even if true, are legally insufficient to establish an exception to MAS's immunity under the first clause of 28 U.S.C. §1605(a)(2).   The Plaintiffs' actions are not "based upon" the purchase of a ticket, regardless of where the contract was made.  The Supreme Court, in a unanimous decision, squarely rejected the argument that the purchase of a ticket from a travel agent in the United States could satisfy the first clause of the commercial activity exception. *OBB Personenverkehr AG v. Sachs*, 577 U.S. --, 136 S. Ct. 390, 396-97 (2015) ("*Sachs*").

In *Sachs*, a plaintiff who purchased a rail pass from a travel agent in United States brought an action against the Austrian state-owned railway carrier, seeking damages for serious injuries that resulted from falling through a gap in a train platform in Austria.  Plaintiff alleged that the Austrian state-owned railway was not immune to jurisdiction in the United States under the first clause of the commercial activity exception.  The Supreme Court held that the plaintiff's action was *not* "based upon" the ticket purchase from an agent in the United States because an action is "based upon" the "particular conduct" that constitutes the "gravamen" of the suit.  The particular conduct that constituted the gravamen of the suit was injury sustained by plaintiff in

Austria.  577 U.S. at ---, 136 S.Ct. at 396 (the claims "turn on the same tragic episode *in Austria*, allegedly caused by wrongful conduct and dangerous conditions *in Austria*, which led to injuries suffered *in Austria*.").  The ruling in Sachs requires courts to focus on the *core* of the suit: the acts that *actually caused* the injuries. *Id*.  The Supreme Court clarified that while commercial activity in the United States may precede the allegedly tortious conduct that causes an injury, *it is the tortious conduct*, and not the preceding commercial activity, that forms the basis of the suit. *Id.* (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 358 (1993)) (emphasis added).  The Supreme Court concluded that "the mere fact that the sale of the Eurail pass would establish a single element of a claim is insufficient to demonstrate that the claim is 'based upon' that sale for purposes of § 1605(a)(2)." *Id.* at 395.

Under the reasoning of *Sachs*, the Plaintiffs' actions against MAS turn on the same tragic episode over the Southern Indian Ocean, allegedly caused by wrongful conduct and dangerous conditions over the Southern Indian Ocean, which led to injuries suffered over the Southern Indian Ocean.  *See also*, *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 14-917-CV, 2016 WL 403445, at *6 (2d Cir. Feb. 3, 2016)(recognizing that after *Sachs*, suits for personal injuries sustained abroad are based upon conduct that occurred abroad).  The allegation of a sale of a ticket by MAS in the United States, even if true, is legally insufficient for the purposes of 28 U.S.C. § 1605(a)(2).  Therefore MAS cannot be stripped of its immunity from the jurisdiction in these cases pursuant to the first clause of the commercial activity exception.

> **b)  Plaintiffs' Actions are Not "Based Upon" Any Act of MAS in the United States in Connection with a Commercial Activity of MAS Elsewhere**

Plaintiffs' actions against MAS are also not "based upon" an act performed in the United States in connection with MAS's commercial activity outside the United States necessary to

bring these actions within the second clause of the commercial activities exception.[4] Although the *Sachs* Court considered the first clause of the FSIA's commercial activity exception, its interpretation of the "based upon" language applies with equal force to all three clauses and requires the same conclusion under the second clause here. *See*, *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir. 2000)(interpretation of the phrase "based upon" is equally applicable to all three clauses of the commercial activity exception).

As established in the preceding section, Plaintiffs' actions are "based upon" the alleged acts of MAS outside of the United States in the course of its commercial activity outside the United States during operation of Flight MH370. Plaintiffs' actions are not "based upon" any act of MAS performed in the United States in connection with the commercial activities of MAS outside the United States that have no "substantial connection" to the United States. Any argument that the second clause of the commercial activity exception applies based on the alleged purchase of a ticket for Flight MH370 in the United States was foreclosed by the ruling in *Sachs*. The purchase of a ticket in the United States is not the act upon which Plaintiffs' actions are based. *See also*, *Barnett v. Iberia Air Lines of Spain*, 660 F. Supp. 1148, 1152-53 (N.D. Ill. 1987)(second clause of commercial activity exception was not applicable because formation of contract of carriage, even if in the United States, did not give rise to cause of action for delay that occurred in Spain).

The allegation of a sale of a ticket by MAS in the United States, even if true, is legally insufficient for the purposes of 28 U.S.C. § 1605(a)(2). MAS cannot be stripped of immunity from jurisdiction by reliance on the second clause of the commercial activity exception.

---

[4] No Plaintiff has alleged specifically that the second clause of the commercial activity exception applies to strip MAS of sovereign immunity in these lawsuits. The second clause of the commercial activity exception is addressed to foreclose any later reliance on this provision.

c)      **Plaintiffs' Actions Are Not "Based Upon" an Act of MAS Outside the United States that Caused a Direct Effect in the United States**

Finally, Plaintifs cannot deprive MAS of immunity based on the third clause of the commercial activity exception.  While it is undisputed that Plaintiffs' actions are based upon MAS's operation of Flight MH370 outside the United States, the operation of flight MH370 did not cause any "direct effect" in the United States.

The Supreme Court has determined that "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's . . . activity.'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992)(quoting *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 152 (2d Cir. 1991)).  Applying this clause in suits based upon torts committed abroad, Courts have uniformly held that the direct effect in the case of wrongful death or personal injury occurs at the location where the death or injury occurred. *Compania Mexicana de Aviacion S.A. v. United States Dist. Court for the Central Dist. of California*, 859 F.2d 1354, 1360 (9th Cir. 1988)(direct effect of a negligent act abroad is limited to the death or injury resulting from the negligent act and does not extend to indirect consequences); *Australian Government Aircraft Factories v. Lynne*, 743 F.2d 672, 674 (9th Cir. 1984)(direct effect of plane crash were in Indonesia where the loss of pilot's life and destruction of the aircraft occurred and injury to surviving relatives are indirect consequences that cannot support jurisdiction); *Upton v. Empire of Iran*, 459 F. Supp. 264 (D.D.C. 1978), *aff'd* at 607 F.2d 494 (D.C. Cir. 1979)(effect on family of American killed when Iranian Airport terminal collapsed was not a "direct effect").

Here, the immediate consequences and the "direct effect" of the loss of Flight MH370 is the death of the passengers and those deaths occurred outside of the United States.  Any injuries sustained by surviving relatives in the United States are only an indirect effect.  Insofar as any

Plaintiff alleges jurisdiction based on the third clause of the commercial activity exception it must be denied as a matter of law.

### 4.    The Montreal Convention Does Not Preclude Immunity

Plaintiffs' allegations that this Court has subject-matter jurisdiction over their actions against MAS pursuant to 28 U.S.C. § 1330(a) solely on the basis these Plaintiffs' claims are governed by an international agreement is without any legal support and must be rejected. The FSIA states in Section 1604 that:

> Subject to *existing* international agreements to which the United States is a party at the time of enactment of this Act a foreign state [as defined by Section 1603] *shall be immune* from the jurisdiction of the courts of the United States and of the States *except as* provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604 (emphasis added). The subject-matter jurisdiction statute governing actions against foreign states, 28 U.S.C. § 1330, grants, in relevant part, original jurisdiction ". . . as to any claim for relief in personam with respect to which the foreign state is *not entitled to immunity . . . under any applicable international agreement*."  28 U.S.C. § 1330(a) (emphasis added).

Section 1604 of the FSIA does not operate as an exception to immunity in these cases because the Montreal Convention did not enter into force until 2003, *Ehrlich v. American Airlines, Inc.,* 360 F.3d 366, 371 & n. 4 (2d Cir. 2004) and, therefore, was not an "existing international agreement" in 1976 when the FSIA was enacted. Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2892, codified at 28 U.S.C. § 1602 *et seq.* Plaintiffs, or some of them, however, argue that this Court has subject-matter jurisdiction pursuant to Section 1330(a) because their actions against MAS are *governed by* an *applicable* international agreement. *See, e.g.*, Complaint, ¶ 14, *Wood v. Malaysia Airlines Berhad, et al.*, 1:16-cv-00053-KBJ [ECF No. 1].

The Plaintiffs who make this argument disregard the plain text of 28 U.S.C. § 1330(a). As an initial matter, the legislative history shows that Section 1330(a) extends the jurisdiction of the Federal Courts "to any claim with respect to which the foreign state is not entitled to immunity under sections 1605-1607 . . . under any applicable international agreement *of the type contemplated by the proposed section 1604*." H.R. Rep. 94-1487, 13, 1976 U.S.C.C.A.N. 6604, 6611. Because the Montreal Convention was not in effect on the date the FSIA was enacted, it cannot be an *existing* international agreement contemplated by Section 1604.

Even if the reference to any "applicable international agreement" in 28 U.S.C. § 1330(a) is not limited to existing international agreements at the time the FSIA was enacted, Plaintiffs' argument still fails because Section 1330(a) merely grants federal courts subject-matter jurisdiction over those cases in which a foreign state "is not entitled to immunity . . . *under [the] applicable international agreement."* Section 1330(a) does *not* grant original jurisdiction to federal district courts to hear an action against a foreign state solely because the claims are *subject to* an international agreement. This is particularly true here because the applicable international agreement governing the suit is silent with respect to sovereign immunity.

There is no binding legal authority for the proposition that the Montreal Convention operates to deprive a state-owned carrier of sovereign immunity in any case governed by its terms and the Montreal Convention itself does not address sovereign immunity. Contrary to Plaintiffs' allegations, it is well-established that in cases against state-owned carriers arising out of international carriage by air, the Montreal Convention and the FSIA apply concurrently and a basis for jurisdiction under *both* are necessary to give courts in the United States the power to hear such cases. *Brink's Limited v. South African Airways*, 93 F.3d 1022, 1026-27 (2d Cir.1996);

*Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1002 n.1 (9th Cir.1987)(citing *Gayda v. LOT Polish Airlines*, 702 F.2d 424, 425 (2d Cir.1983)).

For these reasons, the Court should reject any argument that the Montreal Convention strips MAS of its right to invoke the sovereign immunity.

### 5. Malaysia Did Not Explicitly or Implicitly Waive MAS's Sovereign Immunity Under Section 1605(a)(1)

For reasons similar to those set forth above, this Court must reject Plaintiffs' allegations that Malaysia's accession to the Montreal Convention is an explicit or implicit waiver of MAS's sovereign immunity for purposes of Section 1605(a)(1) of the FSIA (the "Waiver Exception"). The Waiver Exception provides that a foreign state shall not be immune in any case, "in which the foreign state has waived its immunity either explicitly or by implication . . ." 28 U.S.C. § 1605(a)(1).

Although Section 1605(a)(1) is phrased broadly, courts have repeatedly explained that for there to be an explicit waiver, there must be "an intentional and knowing relinquishment of the legal right" on the part of the foreign state. *Gutch v. Federal Republic of Germany*, 444 F. Supp. 2d 1, 8 (D.D.C. 2006) (quoting *Walker Int'l Holdings Ltd. v. Republic of Congo,* 395 F.3d 229, 234 (5th Cir.2004)(quoting *Good v. Aramco Services Co.,* 971 F. Supp. 254, 261 (S.D.Tex.1997)). Implied waivers are also narrowly interpreted and "depend[] on the government's having at some point indicated its amenability to suit." *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994).

Any contention that Malaysia's accession to the Montreal Convention is an explicit waiver of its national carrier's sovereign immunity is unfounded. As discussed above, like the Warsaw Convention which it replaced, the Montreal Convention is *silent* with respect to sovereign immunity. Although Plaintiffs argue that Articles 2 and 57 of the Montreal Convention

somehow waive sovereign immunity, those articles simply establish that the Montreal Convention governs claims arising out of international carriage by air performed by state-owned entities (Art. 2), but reserves a right for State Parties to declare that the treaty does not apply to non-commercial operations in international air carriage performed by or for the state (Art. 57). Neither article mentions "sovereign immunity" nor addresses that subject. Silence, by definition, cannot be deemed an intentional and knowing relinquishment by Malaysia of the known right to sovereign immunity.

Although treaty waivers are included in the discussion of explicit waivers in the legislative history of the FSIA, the discussion concerns treaties in which a foreign state "*renounce[s]*" its sovereign immunity. H.R. Rep. 94-1487, 18, 1976 U.S.C.C.A.N. 6604, 6617. (emphasis added). The Montreal Convention cannot be deemed a *renunciation* of the right to invoke sovereign immunity when the treaty itself does not address the subject. Nor can it be genuinely argued that Malaysia was unaware of the right to sovereign immunity from the jurisdiction of other sovereigns as a matter of international comity or pursuant to the FSIA when the Montreal Convention was drafted or when Malaysia acceded to it. This Court must reject the argument that Malaysia explicitly waived MAS's sovereign immunity from the jurisdiction in any case governed by the Montreal Convention (but otherwise having no connection to the United States) when it ratified the Montreal Convention.

A country's accession to the Montreal Convention also does not operate as an implicit waiver by that country of its' national carrier's right to invoke sovereign immunity. Even though "a court may nevertheless recognize an implicit waiver of immunity in certain circumstances," *Gutch*, 444 F. Supp. 2d at 9, the courts have been reluctant to stray beyond the three examples of implicit waiver discussed in the legislative history: (i) where a foreign state has agreed to

arbitration in another country; (ii) where the foreign state has agreed that the law of a particular country should govern a contract; or (iii) where the foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity. *See Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir.1985)**.**  None of those three circumstances exists here.

Further, while the discussions concerning 1605(a)(1) in the legislative history refer to waiver by treaty, they do so *only* in the context of *explicit* waivers. *Id.* at 377-78. "Courts have generally required convincing evidence that a treaty was intended to waive sovereign immunity before holding that a foreign state may be sued in this country." *Id.* at 378 (collecting cases); *see also*, *Amerada Hess*, 488 U.S. at 442; *Chicago Bridge & Iron Co.*, 506 F. Supp. at 986-87. Indeed, in applying the FSIA the Courts are to assume immunity, and when ambiguity exists, they are to find in favor of immunity." *Gutch*, 444 F. Supp. 2d at 9.

Against this legal background, any contention that Articles 2 and 57 of the Montreal Convention operate in combination as an implicit waiver of the right to invoke sovereign immunity simply must fail. In *Amerada Hess*, 488 U.S. at 442, the Supreme Court rejected the Plaintiffs arguments that provisions of two international treaties constituted a waiver of sovereign immunity under Section 1605(a)(1) in light of the fact that those treaties were silent with respect to immunity. As the Court explained, "[we do not see] how a foreign state can waive its immunity under § 1605(a)(1) by signing an international agreement that contains no mention of a waiver of immunity to suit in the United States courts or even the availability of a cause of action in the United States." *Id.*  Here, there is no basis for the Court to find a waiver from the vague and general language of Articles 2 and 57 of the Montreal Convention nor is

there any reason to conclude that the signatory nations anticipated when ratifying the Convention that they were eliminating their state-owned carriers' right to invoke sovereign immunity.

Accordingly, ratification of the Montreal Convention by Malaysia cannot be deemed as an indication of its national carrier's amenability to suit in the courts of the other signatory countries in any case governed by the terms of the treaty. *See, e.g.*, *Gutch*, 444 F. Supp. 2d at 9 (discussing cases). Even if the Convention is deemed ambiguous, which it is not, this Court must find in favor of immunity.

> **6.    MAS Did Not Waive Sovereign Immunity in MAS's Foreign Air Carrier Permit For Flights Conducted Entirely Outside the United States**

The terms of MAS's Foreign Air Carrier Permit (the "Permit") issued to MAS by the United States Department of Transportation ("D.O.T.") do not apply to flights, such as Flight MH370, conducted entirely between points outside the United States. MAS did not require authority from the D.O.T. to operate an international passenger flight to and from countries outside of the United States and halfway around the world. Plaintiffs, or some of them, argue that MAS has explicitly waived its sovereign immunity in these cases because it obtained a Permit from the D.O.T. in 2002 and the Conditions attached to that permit contain a limited waiver of sovereign immunity in cases based on MAS's authorized operations (the "Permit Waiver").

As a threshold issue, the D.O.T. is without authority to force a state-owned carrier to waive its right to sovereign immunity as a condition of receiving a Foreign Air Carrier Permit. In any event, Flight MH370 was *not* an operation under the authority of the Permit and therefore the Permit Conditions are not applicable to Flight MH370. Accordingly, any alleged waiver is inapplicable to MAS's operation of Flight MH370.

a)  **Congress Granted Courts the Exclusive Power to Decide Claims of Sovereign Immunity under the FSIA**

It is an infringement on the sovereignty of a foreign nation to require its state-owned air carrier to waive sovereign immunity from the jurisdiction of the Courts of the United States and of the States for claims based on the carrier's domestic or international operations entirely outside the United States for which the foreign carrier does not require authority from the United States to conduct. The FSIA "contains a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities," *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983), and was passed in order to *remove* the Executive branch from the determination of whether sovereign immunity applies in a particular case. *Id.* ("Congress passed the Foreign Sovereign Immunities Act in order to free the Government from the case-by-case diplomatic pressures, to clarify the governing standards, and to assur[e] litigants that . . . decisions are made on purely legal grounds and under procedures that insure due process")(internal quotation marks omitted).

The grant of sovereign immunity to foreign states and their agencies or instrumentalities is straightforward. Section 1604 of the FSIA provides as follows:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act [1976] a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in section 1605 to 1607 of this chapter.

28 U.S.C. § 1604. None of the exceptions to immunity, i.e., §§ 1605 to 1607, explicitly or implicitly empower any agency of the Executive branch with authority to decide, in lieu of the courts, when a claim for immunity may be asserted or to restrict the scope or alter application of the statutory exceptions to a claim of immunity.

When enacting the FSIA, Congress declared that:

the determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts....Claims of immunity should henceforth be *decided by courts* of the United States and of the States in conformity with the principles set forth in this chapter.

28 U.S.C. § 1602 (emphasis added). Accordingly, the FSIA grants to the courts alone, not agencies of the Executive branch, the power to adjudicate claims of sovereign immunity in "the interests of justice," and the D.O.T.'s imposition of a waiver of sovereign immunity as a condition for grant of a Foreign Air Carrier Permit flouts the express command of the FSIA that only courts decide a claim of sovereign immunity.

Plaintiffs assert that MAS was issued a foreign air carrier permit to conduct commercial operations between the United States and Malaysia effective on September 30, 2002. *See* D.O.T. Order 2002-09-26, 2002 WL 31189758 (D.O.T.) (the "MAS Permit", a copy of which is attached as **Ex. 5**). The MAS Permit is subject to the Foreign Air Carrier Conditions of Authority contained in Attachment A to the MAS Permit (the "Permit Conditions"). Included in the Permit Conditions is the following provision:

*In the conduct of the operations authorized,* the holder shall:

* * *

(7) Agree that *operations under this authority constitute* a waiver of sovereign immunity, for purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are:

(a) based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place, or for which the contract of carriage was purchased in the United States; or

(b) based on a claim under any international agreement or treaty *cognizable in* any court or tribunal of the United States.

In this condition, the term "international air transportation" means "international transportation" as defined by the Warsaw Convention, except that all States shall be considered to be High Contracting Parties for the purpose of this definition.

MAS Permit, at 3, **Ex. 5**.

Although the MAS Permit did not apply to MAS's operation of Flight MH370, as discussed below, this Court should reject any contention that the waiver of sovereign immunity contained in the Permit Conditions is valid. By forcing such a waiver, the D.O.T. has arrogated unto itself the power to decide when a government-owned airline could assert a claim of sovereign immunity. In adopting the waiver language contained in the MAS Permit, the D.O.T. claimed that this power was inferred from the general statutory language authorizing the D.O.T. to regulate foreign air transportation and impose conditions on permits or exemptions to engage in foreign air transportation pursuant to Section 204(a) and 402(e) of the Federal Aviation Act.[5] *Amendment of Foreign Air Carrier Permit and Exemption Authority*, D.O.T. Order 87-8-8, 1987 WL 111215, at *5 (D.O.T. July 31, 1987).[6] However, nowhere in the authorizing statute is sovereign immunity mentioned. And nowhere in the authorizing statute is the D.O.T. granted authority over operations by foreign air carriers that do not involve foreign air transportation, meaning the "transportation of passengers...by aircraft...between a place in the United States and a place outside the United States . . ."

When Congress desires to give the D.O.T. authority to exempt airlines from application of other laws, however, Congress does so expressly. 49 U.S.C. § 41308. In section 41308, the D.O.T. is given the authority to exempt a person from application of the antitrust laws. Similarly,

---

[5]  Along with other provisions of Title 49, Transportation, of the United States Code, the Federal Aviation Act of 1958 was re-codified "without substantive change" in 1994, Pub. L. No. 103-272. Section 204(a) of that Act is now 49 U.S.C. § 40113(a), and Section 402(e) is now 49 U.S.C. § 41305(b).
[6]  Hereinafter referred to as "D.O.T. Order 87-8-8."

when Congress desires to give the D.O.T. authority over activities not subject to D.O.T. jurisdiction, it does so explicitly and with conditions and instructions on use of that authority. 49 U.S.C. § 41706(c)(statutory smoking ban on aircraft engaged in foreign air transportation not applicable if objected to by foreign government on the ground it is an extraterritorial application of U.S. laws).

With respect to the conditions attached to Foreign Air Carrier Permits, the D.O.T. attempted to buttress its rationale for regulating the circumstances when a government-owned foreign air carrier could claim sovereign immunity on two facts. First, in 1951 the Civil Aeronautics Board ("CAB") imposed a waiver of sovereign immunity on foreign-government owned airlines.[7] Second, in hearings before Congressional subcommittees in 1973 and 1976 concerning congressional bills that were precursors to the FSIA, the members of the subcommittees were made aware of the waiver of sovereign immunity imposed by the CAB in 1951. From these observations, the D.O.T. concluded Congress "would have addressed problems unique to the aviation industry had it not been led to believe that foreign air carriers would not normally be entitled to sovereign immunity." D.O.T. Order 87-8-8, 1987 WL 111215 at *4.

Claiming to act "in the public interest" (D.O.T. Order 87-8-8, 1987 WL 111215 at *5), the D.O.T. took it upon itself to essentially re-write the FSIA because "[w]e [the D.O.T.] think it is reasonable, indeed obligatory, for us to see that a foreign air carrier cannot avoid jurisdiction which is otherwise proper simply because that commercial enterprise is operated by a foreign government." *Id*. The D.O.T. failed to consider, however, that Congress enacted the FSIA in

---

[7] Unlike the D.O.T.'s interpretation of the waiver at issue here, however, the 1951 waiver only applied to foreign air transportation authorized by the permit itself, i.e., air transportation to or from the United States. Importantly, Courts in the United States have not read the permit waiver as broadly as the D.O.T. purports to interpret it. *See, Compania Mexicana de Aviacion, S.A.*, 859 F.2d 1354, 1359 (9th Cir.1988)(explaining that recent amendment to waiver language made clear that intent behind waiver [was] to give U.S. courts jurisdiction over cases that have *substantial contact* with the United States [citing D.O.T. Order 87-8-8], and although not made retroactive the D.O.T. stated that the new language simply clarifies the original intent in imposing the waiver.).

1976 and "in the interests of justice" specifically delegated to the *courts* the power to determine application of the provisions of the FSIA. 28 U.S.C. § 1602. There is no conceivable legal basis for the "public interest" as envisioned by the D.O.T. to override the "interests of justice" as declared by Congress in the FSIA.

The D.O.T. also failed to consider that the commercial activity exceptions in the FSIA, 28 U.S.C. § 1605(a)(2), obviated the need for the waiver imposed by the CAB in 1951. Not only did the D.O.T. ignore those considerations, it purportedly even broadened the 1951 waiver. Despite the fact that the preamble to the Permit Conditions generally and the preamble to the waiver condition specifically reiterate that the conditions apply to operations authorized by the permit, the D.O.T. believes that the 1987 waiver (which is the same as the waiver in the Permit Conditions attached to the MAS Permit) is no longer confined to operations authorized by an airline's foreign air carrier permit. Rather, as interpreted by D.O.T., the current waiver eliminates the FSIA requirement that the "commercial activity" of the foreign airline have some connection with the United States before an exception applies to otherwise applicable immunity. *See* 28 U.S.C. § 1605(a)(2).

The Supreme Court has previously considered the conflict between explicit statutory language mandating a particular course of action and otherwise appropriate agency action permitting a course of action diametrically contrary to that which is statutorily mandated. In *Tennessee Valley Authority v. Hill*, 437 U.S. 153 (1978) ("*TVA*"), the Secretary of the Interior had declared the "snail darter was an endangered species whose critical habitat would be destroyed by creation of" a dam on the Little Tennessee River under construction by the Tennessee Valley Authority. *TVA*, 437 U.S. at 172. Congress had repeatedly appropriated funds for construction of the dam despite the fact that Congressional appropriations committees were

aware of the Interior Secretary's declaration regarding the snail darter. *TVA*, 437 U.S. at 169. The

Supreme Court upheld an injunction preventing completion of the dam issued by the Court of

Appeals, which relied on the explicit statutory language of the Endangered Species Act.

> One would be hard pressed to find a statutory provision whose terms were any plainer than those in § 7 of the Endangered Species Act. Its very words affirmatively command all federal agencies "to *insure* that actions *authorized, funded,* or *carried out* by them do not *jeopardize* the continued existence" of an endangered species or "*result* in the destruction or modification of habitat of such species . . . ." (Emphasis added.) This language admits of no exception. Nonetheless, petitioner urges, as do the dissenters, that the Act cannot reasonably be interpreted as applying to a federal project which was well under way when Congress passed the Endangered Species Act of 1973. To sustain that position, however, we would be forced to ignore the ordinary meaning of plain language.

*TVA*, 437 U.S. at 173 (citation omitted).

The decision of the Supreme Court in *TVA* is controlling here. The language of the FSIA

is explicit and delegates to the courts the determination of whether a foreign state agency or

instrumentality may avail itself of a claim of sovereign immunity. General language authorizing

the D.O.T. to regulate foreign air transportation and impose conditions on the exercise of that

authority cannot be interpreted to authorize the waiver at issue here because to "sustain that

position . . . [the Court] would be forced to ignore the ordinary meaning of [the] plain language"

of the FSIA. *Id.*

The D.O.T.'s unfettered usurpation of a court's power to decide questions of sovereign

immunity is contrary to the plain language of the FSIA and is not supported by any reasonable

interpretation of the D.O.T.'s statutory authority. If upheld here, nothing could prevent another

agency of the Executive branch, supposedly acting in the public interest, from eviscerating the

carefully constructed provisions of the FSIA. If Congress has concerns that foreign state-owned

airlines should not be permitted to avoid the jurisdiction of the Courts of the United States and of

the States based on sovereign immunity in cases having no connection to the United States other

than the fact that the carrier holds a permit to operate flights to and from the United States, Congress is free to amend the FSIA.[8] Unless and until it does so, however, the waiver Permit Condition should be declared invalid and ignored by this Court.

> **b)** **Even if the Waiver in the Permit Conditions is Valid, the Waiver Does Not Apply to a Flight from Malaysia to China**

Assuming that the D.O.T. had or has the authority to coerce[9] a waiver at all, read literally the purported waiver of sovereign immunity applies only with respect to "the conduct of the operations authorized" by the MAS Permit and therefore does not apply to MAS's operation of Flight MH370. *See* **Ex. 5**, MAS Permit, at 3. It is uncontested that Flight MH370 was a scheduled international passenger flight from Kuala Lumpur, Malaysia to Beijing, China. The MAS Permit, however, authorizes only "scheduled *foreign air transportation* of persons . . . from points . . . via Malaysia . . . to a point or points in the United States . . ." **Ex. 5**, MAS Permit, at p. 4. Accordingly, the purported waiver of sovereign immunity, as written, does not apply to claims based upon the loss of Flight MH370 on March 8, 2014, because the claims are not based upon operations conducted pursuant to the MAS Permit.

In the D.O.T.'s Notice to Show Cause regarding the proposed amendment to the Permit Condition waiver, "the Department of Transportation direct[ed] interested persons to show cause why it should not amend all foreign air carrier operating authority to make it clear that the required waiver of sovereign immunity extends to *all* of a foreign carrier's air service operations,

---

[8] As demonstrated by the Federal Anti-Terrorism and Effective Death Penalty Act and the Flatow Amendment, which together waived foreign sovereign immunity and created a cause of action for individuals harmed by state-sponsored acts of terrorism, Congress is aware of its power to amend the FSIA to add exceptions to immunity that are otherwise not covered. *See, e.g., Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003).

[9] The D.O.T. imposes fines upon foreign air carriers that assert before a court a claim of sovereign immunity under the FSIA if doing so is contrary to the Permit Conditions. *See Thai Airways International Public Company Ltd. Violations of 49 U.S.C. §§ 41301, 41703, and 41712*, D.O.T. Order 2008-09-15, 2008 WL 5505459 (D.O.T.) (imposing a civil penalty of $15,000). The D.O.T. has the statutory authority to suspend or revoke a foreign air carrier permit for violation of the Permit Conditions. *See* 49 U.S.C. § 41304(a).

*whether or not those activities take place within foreign air transportation as defined in the Federal Aviation Act.*" *Amendment of Foreign Air Carrier Permit and Exemption Authority*, D.O.T. Order 86-1-38, 1986 WL 69761, at *1 (D.O.T. Jan. 21, 1986) ("D.O.T. Order 86-1-38"). In response, a number of airlines and the International Air Transport Association ("IATA") objected to the breadth of the proposed waiver and the D.O.T.'s attempt to exceed the scope of its jurisdiction over foreign airlines. *See* D.O.T. Order 87-8-8.

In promulgating the current version of the Permit Condition waiver in 1987 the D.O.T. agreed that the proposed waiver in D.O.T. Order 86-1-38 was "somewhat broader than necessary to carry out our [the D.O.T.'s] intent, and may have unintended legal ramifications." Nonetheless, the D.O.T. purportedly[10] extended the scope of the waiver to include all operations of a foreign air carrier, even though unrelated to the authority granted by a permit, that met either of the provisos in subsections 7(a) or 7(b) of the Permit Conditions. The subsection 7(a) proviso requires that the air transportation operation include a point of origin, destination or agreed stopping place in the U.S. or the ticket for which was purchased in the U.S. The subsection 7(b) proviso specifies that the court action be "based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States." *See* D.O.T. Order 87-8-8.

Despite this, the Permit Conditions and the waiver condition as written are still expressly limited to the *operations authorized* and the *operations under this authority,* respectively, and based on the plain language do not apply to MAS's operation of Flight MH370. *See* MAS Permit, **Ex. 5** at Attachment A, p. 8. In *Aboeid v. Saudi Arabian Airlines, Inc.*, No. 10-cv-2518,

---

[10] In *Compania Mexicana De Aviacion, S.A. v. U.S Dist. Ct. for Central Dist. Of Cal.*, 859 F.2d 1354 (9th Cir.1988), the Ninth Circuit had to interpret the effect of the D.O.T.'s Amendment to the permit waiver and its meaning. In reversing the district court, the Ninth Circuit rejected the Plaintiffs' argument that the foreign airline waived its sovereign immunity by virtue of the D.O.T. Permit waiver, explaining that the "amendment to waiver language makes clear that the intent behind the waiver is to give United States courts jurisdiction over cases that have substantial contact with the United States." *Id.* at 1359 (internal quotations omitted). The Ninth Circuit also noted that although the amendment was not made retroactive, in enacting the amended permit waiver the D.O.T. "stated that the new language simply clarifies the original intent in imposing the waiver." *Id.* at n.4.

2011 WL 2222140, at *3 (E.D.N.Y. June 1, 2011), the district court for the Eastern District of New York was required to interpret the permit waiver in the context of whether the waiver operated to waive the foreign airline's right to a nonjury trial under the FSIA. Finding that it did not, the court noted that because "[t]he waiver provision simply refers to "sovereign immunity" without further defining the phrase . . . the provision should thus be interpreted narrowly to avoid giving it a meaning that *the defendant* [the carrier] did not intend." *Id.*

The permit waiver applied to the operations at issue in *Aboeid* because the plaintiffs alleged they were injured during the course of a round-trip journey from the United States to Sudan and back. *Id.* at *1. Accordingly, the district court did not have to consider whether the permit waiver would apply to strip the foreign airline of immunity under circumstances where, as here, the airline's operations did not involve a point in the United States. Nonetheless, the district court's observation that the permit waiver must be interpreted from the defendant's perspective and construed narrowly to avoid giving it a meaning the airline did not intend is instructive. Here, the MAS Permit Condition and the actual waiver condition are explicitly limited to operations authorized under the MAS Permit and to the extent the Permit's waiver condition is even valid, MAS only intended to waive its sovereign immunity in cases based on those operations. Accordingly, this Court should likewise interpret the MAS Permit and the waiver of sovereign immunity narrowly and find that that limited waiver is inapplicable in cases based on the loss of Flight MH370.

Finally, if this Court were to adhere to the D.O.T.'s interpretation of the waiver condition included in the Permit, the application of Section 1605(a)(1) of the FSIA in cases involving claims against foreign airlines would be dependent on where a passenger bought his/her ticket and whether the passenger asserted a claim under an international agreement or treaty. Engaging

in such a parsing of facts and allegations by the Court would be a far cry from the uniform application of the standards for determination of sovereign immunity claims under the FSIA as envisioned by Congress. It is respectfully submitted that the D.O.T. had no authority to require such a course of action and that this Court should not do so. For all of these reasons, the waiver of sovereign immunity in MAS's Permit is invalid and in any event inapplicable to MAS's operation of Flight MH370. Therefore, MAS has not waived its right to invoke sovereign immunity in these wrongful death cases having no connection with the United States, and this Court lacks subject-matter jurisdiction for this reason as well.

## VI.    CONCLUSION

For all of these reasons, MAS and MAB submit that this Court should grant Malaysian Airline System Berhad (Administrator Appointed) and Malaysia Airlines Berhad's Motion to Dismiss all of the above-captioned cases on the ground of immunity under the Foreign Sovereign Immunities Act or for lack of personal jurisdiction.

October 1, 2016                                   Respectfully submitted,

                                                  KAPLAN, MASSAMILLO & ANDREWS LLC

                                   By:     /s/ Richard A. Walker
                                           Telly Andrews, IL Bar No. 6242431
                                           tandrews@kmalawfirm.com
                                           Richard A. Walker, IL Bar No. 6196947
                                           rwalker@kmalawfirm.com
                                           200 W. Madison Street, 16th Floor
                                           Chicago, Illinois 60606
                                           Telephone:  (312) 345-3000
                                           Facsimile:   (312) 345-3119


                                           Attorneys for Malaysian Airline System Berhad (Administrator Appointed) and Malaysia Airlines Berhad

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on October 1, 2016, pursuant to Fed. R. Civ. P. 5 and LCvR 5.3, a true and correct copy of the foregoing Defendants Malaysian Airline System Berhad's (Administrator Appointed) and Malaysia Airlines Berhad's Memorandum in Support of heir Rule 12(b)(1) Motion to Dismiss Plaintiffs' Complaints on the Ground of Foreign Sovereign Immunity was filed with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the attorneys of record at the email addresses on file with the Court.

/s/ Richard A. Walker
Richard A. Walker