# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: AIR CRASH OVER THE SOUTHERN INDIAN OCEAN ON MARCH 8, 2014<br><br>This Document Relates To:<br><br>*Ganguli v. Malaysia Airlines Berhad, et al.,* **16-cv-1047-KBJ**<br><br>*Gaspard v. Malaysia Airlines Berhad, et al.,* **16-cv-0419-KBJ** | MDL Docket No: 2712<br><br>Misc. No. 16-1184 (KBJ) |

## PLAINTIFFS' AMENDED[1] MOTION TO COMPEL

Pursuant to Fed. R. Civ. P. 37(a), the Plaintiffs, Sanjit Ganguli and Thomas Gaspard (hereinafter "the Plaintiffs"), as duly appointed Personal Representatives of the Deceased,[2] through undersigned counsel, hereby respectfully move this Court to compel the Defendants, Malaysian Airlines System Berhad (Administer Appointed) ("MAS") and Malaysia Airlines Berhad ("MAB") (collectively, "the Defendants"), to comply with the Plaintiffs' jurisdictional discovery requests.

### INTRODUCTION

Despite expressly agreeing to engage in jurisdictional discovery—that is, discovery limited to the questions of *forum non conveniens*, Montreal Convention jurisdiction, and the

---

[1] The Plaintiffs' Motion to Compel, ECF No. 49, was filed in error. The Plaintiffs now immediately file an Amended Motion to Compel. The Plaintiffs' Amended Motion to Compel includes additional arguments supported by additional exhibits. The Plaintiffs hereby respectfully request this Court strike ECF No. 49- Plaintiffs' Motion to Compel.

[2] Mr. Ganguli is Personal Representative of the Estates of Muktesh Mukherjee and Xiaomo Bai (both deceased). Mr. Gaspard is Personal Representative of the Estates of Rui Wang, Weiwei Jiao, and Shuling Dai (all deceased).

1

Foreign Sovereign Immunities Act ("FSIA")—the Defendants continue to withhold vital discovery information on these jurisdictional questions. Specifically, the Defendants remain unwilling to provide any information about their claim—which they raised in their Answers to the Plaintiffs' complaints—that some third-party tortfeasor was responsible for the disappearance of Flight MH370. This "third-party" discovery is particularly relevant to the Defendants' motion to dismiss for *forum non conveniens* because if, as the Defendants have said, some third-party is liable for the accident—and if that third-party is Boeing—then Boeing's liability would be the critical (perhaps the only) issue in this case. And because Boeing has admitted in its discovery responses that all of the evidence pertaining to the design and manufacture of the Subject Aircraft is located at its facilities *in the United States*, the Defendants' decision to blame Boeing for the accident may well prove dispositive on the question of *forum non conveniens*. Put another way, because the Subject Aircraft has never been recovered, the only physical evidence in this case may well be the evidence Boeing maintains at its *American* facilities—a fact that would render the Defendants' request for *forum non conveniens* dismissal particularly inappropriate.

## THE FACTS AND PROCEDURAL HISTORY

The Deceased were passengers onboard Malaysia Airlines Flight MH370,[3] which disappeared on the night of March 8, 2014, en route from Kuala Lumpur, Malaysia, to Beijing, China ("the Subject Accident"). The Plaintiffs have brought suit against the Defendants in the United States under the terms of the Montreal Convention.[4]

On July 13, 2016, the parties filed a <u>Joint</u> Proposed Scheduling Order and Case Management Plan, [ECF No. 7], in which they laid out their respective positions on a number of

---

[3] The flight was operated by the Defendant, MAS. Since the Subject Accident, the Malaysian Government reorganized MAS and incorporated MAB. It is the Plaintiffs' contention that, for liability purposes, MAB should be treated as a successor entity to MAS.

[4] The Plaintiffs assume that the Court is by now familiar with the facts of this case and, therefore, will not recite those facts in detail here.

scheduling issues, including the question of jurisdictional discovery. On that question, all parties—including the Defendants—agreed to engage in jurisdictional discovery. [ECF No. 7 at 9, 13-14 ("Defendants suggest that discovery be managed in phases. In the initial phase, the focus should be on the threshold determination of *forum non conveniens,* jurisdiction . . . . Defendants propose that discovery on the threshold issues of *forum non conveniens,* jurisdiction and ACGS SE/Haagen motions be limited to the time frame set forth in agreed briefing schedule set forth in Paragraph e, above.")].

On July 14, 2016, the Court entered a minute order, which noted that "the parties timely submitted their written report, *in which they suggest that jurisdictional discovery may be necessary* and also propose certain deadlines for filing, but they neglect to attach to their report any proposed Scheduling Oder." [Court's 7/14/16 Minute Order[5] (emphasis added)]. The Court therefore directed the parties to file a joint proposed Scheduling Order. *Id.* On July 15, 2016, the parties filed their <u>*Joint*</u> Proposed Scheduling Order. [ECF No. 8-1]. Again, the Defendants agreed to engage in jurisdictional discovery. [ECF No. 8-1 at 2 ("Discovery is limited to the issues raised by the [jurisdictional] motions. Discovery on issues raised by the above motions shall be completed within the time for briefing.")].[6]

The Court held an Initial Scheduling Conference on July 19, 2016. At that Scheduling Conference, the Defendants again agreed to engage in jurisdictional discovery. Indeed, as detailed in the following exchange, counsel for the Defendants agreed to engage in precisely the kinds of jurisdictional discovery contemplated in both the July 13th Case Management Plan, [ECF No. 7], and the July 15th Proposed Scheduling Order, [ECF No. 8]:

---

[5] The Minute Order does not have a separate docket number.
[6] The three jurisdictional motions the Defendants sought to file with respect to the Plaintiffs' claims were: (1) Motion to Dismiss on the Ground of *Forum Non Conveniens*; (2) Motion to Dismiss for Lack of Jurisdiction under the FSIA; and (3) Motion to Dismiss for Lack of Jurisdiction under the Montreal Convention.

> The Court: But you will be prepared – I'm sorry. Let me just get your response to – I'm sorry. There's so many names. Mr. Altman's proposal that the October 1st deadline, which I understood was something you all negotiated would be the time in which your various [jurisdictional] motions would come in related to these legal issues. That any discovery that Plaintiffs deemed necessary following and in response to those motions they would work out with you to do, and then they would file their motion by the deadline that you all agreed to.
>
> Mr. Andrews: That is correct, Your Honor.
>
> The Court: All right. So I don't have to have a pre – so it's a little complicated because we have so many moving parts here. Ordinarily I have a deadline for discovery before the dispositive motions are set. But it sounds to me that you all have worked out something that permits discovery targeted to these limited issues.
>
> Mr. Andrews: *Targeted to the threshold issues on the basis of the motions that we filed*.

July 19, 2016 Hr'g Tr. at 20:9-25, 21:1-7, attached as **Exhibit A** (emphasis added).

On July 21, 2016, the Court entered a Scheduling Order, in which it permitted jurisdictional discovery in accordance with the parties' stipulations. [ECF No. 14 at 2]. At no time did the Defendants ever object to any portion of that Scheduling Order.

On October 1, 2016, the Defendants filed five motions to dismiss. Three of those motions were directed at the Plaintiffs here. These were: (1) Motion to Dismiss on the Ground of *Forum Non Conveniens* [ECF No. 37]; (2) Motion to Dismiss for Lack of Jurisdiction under the FSIA [ECF No. 39]; and (3) Motion to Dismiss for Lack of Jurisdiction under the Montreal Convention [ECF No. 38].

Pursuant to the Court's Scheduling Order and the Defendants' written and oral stipulations that they would engage in jurisdictional discovery, the parties propounded discovery

on one another.[7] All of this discovery was addressed to the questions raised in the Defendants' preliminary motions—namely, Montreal Convention jurisdiction, the FSIA, and the appropriateness of the American versus some other forum.  In response to the Defendants' discovery requests, the Plaintiffs submitted thousands of pages of verified discovery.  The Defendants, however, objected to *almost every single one of the Plaintiffs' requests*, handing over, with respect to each set of Plaintiffs, fewer than 30 pages. The parties met and conferred several times, but the Plaintiffs were unable to persuade the Defendants that their objections to the jurisdictional discovery were inappropriate in light of their previous commitments.

On December 9, 2016, the Court held a teleconference in order to facilitate the resolution of these discovery disputes.  At that teleconference, the Court repeatedly expressed frustration with the Defendants' position and ordered the parties to confer one final time. At that final meeting, which took place on December 20, 2016, the Defendants retreated from all but one of their previous objections and agreed to provide the Plaintiffs with the information the Plaintiffs had so long sought. The one objection the Defendants would not abandon now forms the basis of this Motion to Compel—namely, whether the Defendants should be required to tell the Plaintiffs (1) whether they believe that some third-party is, in fact, responsible for the Subject Accident; (2) if so, who that third-party is; and (3) where the evidence of this third-party liability is located. These issues are summed up in the [Gaspard] Plaintiffs' Request for Production No. 7 and the Defendants' response thereto:

> **Plaintiffs' Request No. 7:**  Produce any and all documents that support your contention, which you raised in your answer to the Complaint, that "Any and all injuries for damages for which the Plaintiff complains were caused by the separate, independent and/or negligent actions or inactions or fault of third parties over whom MAS exercised no control or right of control."

---

[7] Pursuant to the General Order and Guidelines for Civil Cases Before Judge Ketanji Brown Jackson, the Plaintiffs have not enclosed any of the discovery materials here.

> **Defendants' Response:** MAS/MAB objects to this Request on the ground that it seeks the production of information outside the scope of discovery relevant to determination of the threshold motions filed by MAS/MAB individually or jointly on October 1, 2016; it is not reasonably calculated to lead to the discovery of admissible evidence relevant to the threshold motions filed by MAS/MAB individually or jointly on October 1, 2016; and it seeks to impose a duty on MAS/MAB to provide information not within its possession, custody or control. Further, MAS/MAB objects to this Request on the ground that it is overly broad and beyond the scope of jurisdictional discovery under the Foreign Sovereign Immunities Act; it seeks to impose an undue burden on MAS/MAB as a foreign sovereign which is immune from suit; and it is not sufficiently controlled and limited consistent with the protections of the Foreign Sovereign Immunities Act.

The Defendants provided a nearly identical response to the Ganguli Plaintiffs' very similar request. *See* Ganguli Plaintiffs Request for Production No. 12 and Defendants' Answer. The Plaintiffs also propounded a number of interrogatories on the question of third-party liability. *See* Gaspard Interrogatory No. 5; Ganguli Interrogatories No. 5 and 6.[8] The Defendants objected to each of these interrogatories and raised precisely the same objections listed above.

In addition, on December 1, 2016, the Ganguli Plaintiffs served 87 Requests for Admission on MAS. MAS partially admitted *only one* of these requests—Request No. 23. As relevant here, MAS refused either to admit or deny Requests Nos. 81-87, all of which were directed to the question of third-party liability. *See* MAS Response to Ganguli Plaintiffs' Requests for Admission, Nos. 81-87 ("MAS responds as follows: Neither admit nor deny. MAS has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request to Admit."). But, despite its inability to admit or deny these requests, MAS, in its Answers to the Plaintiffs' complaints, affirmatively averred that some third-party was solely responsible for the Subject Accident. *See, e.g.*, MAS Answer to Ganguli Complaint, at 24 ("Any and all injuries or damages of which Plaintiff complains were caused by the separate, independent and/or negligent actions or inactions or fault of third parties over

---

[8] For ease of preference, the Plaintiffs will herein refer to these Requests for Production and Interrogatories as the "third-party discovery."

whom MAS exercised no control or right of control."); MAS Answer to Gaspard Complaint, at 18 (same). MAS cannot have it both ways, and the Plaintiffs respectfully request that the Court make this clear.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); *United States v. AB Electrolux,* No. CV 15-1039 (EGS), 2015 WL 9950141, at *1 (D.D.C. Spt. 25, 2015). Notably, discovery need not be admissible at trial so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Fed. R. Civ. P. 26(b)(1); AB Electrolux,* 2015 WL at *1. "The term relevance at the discovery stage is a broadly construed term and is given very liberal treatment." *Tequila Centinela, S.A. de C. v. Bacardi & Co. Ltd.,* 242 F.R.D. 1, 6 (D.D.C. 2007); *Smith v. Schlesinger,* 513 F.2d 462, 472-473 (D.D.C. 1973). "It is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, unless the information sought is otherwise relevant to the issues. Thus, if a claim is stricken, but a request for discovery could be construed to be based on a separate valid claim or defense, discovery will still be permissible." *Tequila,* 242 F.R.D. at 6 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)). And, while Rule 26 governs discovery generally, the Rule and its standards apply equally to jurisdictional discovery. *See Oppenheimer,* 437 U.S. at 451-352, n. 13.

"If a party objects to a request for production of documents under Federal Rule of Civil Procedure 34(a)(1), the requesting party may move for an order compelling disclosure of the withheld material." Fed. R. Civ. P. 37(a). "The party that brings the motion to compel bears the initial burden of explaining how the requested information is relevant." *United States v. All*

*Assets Held at Bank Julius Baer & Co.,* 142 F. Supp. 3d 37, 41 (D.D.C. 2015). "The burden then shifts to the non-moving party to explain why discovery should not be permitted." *Id.*

### I. The Plaintiffs' Request is germane, relevant, and within the scope of jurisdictional discovery

The Plaintiffs brought claims against the Defendants under the Montreal Convention for the wrongful deaths of the Decedents. Pursuant to Article 17 of the Montreal Convention, the air carriers—in this case, the Defendants—are "liable for damage sustained in the case of death or bodily injury to a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, Art. 17. The U.S. Supreme Court has defined the term "accident" in this context as any "unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985). The Defendants have thus far not disputed the self-evident proposition that the disappearance of Flight MH370 was an "unexpected or unusual event." Indeed, far from contesting this point, on January 29, 2015, the Defendants, through the Director General of Malaysia's Department of Civil Aviation, conceded that Flight MH370 resulted in an "accident" that killed all 239 people onboard.

Under Article 21(1) of the Montreal Convention, once the plaintiff proves that an "accident" occurred on an international flight between two "States Parties," liability for the plaintiff's injuries or death is absolute—that is, it is premised on strict liability, up to 113,000 Special Drawing Rights ("SDR").[9] Above that figure, an air carrier is liable unless it can establish that some other entity was wholly responsible for the accident. *See* Montreal Convention, Art. 21(2)(b) ("The carrier shall not be liable for damages . . . if the carrier proves

---

[9] Approximately $160,000.

Case 1:16-mc-01184-KBJ   Document 50   Filed 02/06/17   Page 9 of 16

that . . . such damage was *solel*y due to the negligence or other wrongful act or omission of a third party.") (emphasis added).

In their Answers, the Defendants have in fact alleged that some other entity was solely responsible for the Subject accident. *See, e.g.*, MAS Answer to Ganguli Complaint, at 24 ("Any and all injuries or damages of which Plaintiff complains were caused by the separate, independent and/or negligent actions or inactions or fault of third parties over whom MAS exercised no control or right of control."); MAS Answer to Gaspard Complaint, at 18 (same). [10]

Although the Defendants have thus far refused to identify the third-party they intend to blame for the Subject Accident, the only other potentially liable party in this case appears to be the Boeing Company, the manufacturer of the disappeared plane. And if, indeed, the Defendants were to argue, as they appeared to do in their Answers, that Boeing was solely responsible for the accident, then Boeing's liability would be a central (perhaps the only) theme of this trial. This focus on Boeing, however, would prove disastrous to the Defendants' *forum non conveniens* motion inasmuch as Boeing has admitted in its discovery responses that all of the evidence pertaining to its design, manufacture, and testing of the Subject Aircraft is located—and has always been located—in the United States. After all, federal courts in this Circuit have long held that the location of relevant evidence is an important factor to the *forum non conveniens* analysis. *See, e.g., Nalls v. Rolls-Royce Limited*, 702 F.2d 255, 256 (D.C. Cir. 1983) (noting that, as part of the Court's *forum non conveniens* analysis, it must evaluate "the relative ease of access to sources of proof," and holding that the United States was not the proper forum precisely because evidence pertaining to the manufacture of the subject aircraft was not located

---

[10] The Court should know that very similar litigation is proceeding in Australia between the Defendants and a number of other representatives of deceased MH370 passengers. In those case, the Defendants, after initially alleging (as they did here) that some third-party was solely responsible for the Subject Accident, ultimately withdrew this defense. *See* **Exhibit B** (11/11/16 Amended Defence signed by MAS' attorney in Australia) & **Exhibit C** (Australian Court's orders confirming withdrawal of MAS' defense).

in the United States); *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602, 607-608 (D.C. Cir. 1983) (explaining that the Court must consider "the relative ease of access to sources of proof" as part of its *forum non conveniens* analysis); *In re Disaster at Riyadh Airport, Saudi Arabia, on Aug. 19, 1980*, 540 F. Supp. 1141, 1146-1147 (D.D.C. 1982) (same).

On the other hand, the Defendants' *forum non conveniens* arguments would be significantly undermined were they to abandon—as they did in Australia—the affirmative defenses they raised in their Answers. After all, the Ganguli Plaintiffs—and the Wood Plaintiff whose case is also pending before the Court[11]—were American residents. By abandoning their affirmative defenses, the Defendants would be, in effect, admitting liability under the Montreal Convention—making this a case about damages only. But, because the Wood and Ganguli Plaintiffs are U.S. residents—who were paid by U.S. companies, whose descendants live in the United States, and all of whose damages evidence is located in the United States—the Defendants' abandonment of their affirmative defenses would, again, focus this case on singularly American-based evidence.

Faced with this quandary, the Defendants objected to any discovery addressed to the dual questions of who, if not the Defendants, was responsible for the Subject Accident and where this mysterious other party's operations are located. But, as the Court can see, the answers to these questions are within the scope of jurisdictional discovery because, at the very least, they may prove dispositive with respect to the Defendants' *forum non conveniens* motion.

Recognizing the potential significance of this "third-party" discovery, the Plaintiffs raised this very question at the Court's July 19, 2016 Scheduling Conference. In response to the Plaintiffs' concerns on this issue, the Court wisely elected to wait and see what the Defendants' motions averred. *See* July 19, 2016 Hr'g Tr., at 56:4-9 ("COURT: Well, I kind of feel like we'll

---

[11] *Wood v. Malaysia Airlines Berhad, et. al.,*16-cv-00053-KBJ.

have to see how that plays out in terms of what it is that is said in the motions and then what the Plaintiffs feel they need in order to respond effectively to the motions."). The Plaintiffs now submit that the issue has played out precisely as expected. The Defendants, in fact, filed a motion to dismiss the Plaintiffs' complaint on the grounds of *forum non conveniens*. [ECF NO. 37]. In that motion, the Defendants, in fact, argued that the Court should dismiss these cases in part because, they insist, most of the evidence is located in Malaysia. [ECF 37-1 at 16.] At the same time, however, the Defendants have raised an Affirmative Defense to the Plaintiffs' complaints in which they alleged that some other entity—presumably Boeing—was solely responsible for the Subject Accident. *Cf.* MAS Answer to Ganguli Complaint, at 24; MAS Answer to Gaspard Complaint, at 18. The Defendants did this, of course, in order to cap their own liability at 113,000 SDRs. *See* Montreal Convention, Art. 21(2)(b). But, because of the very obvious conflict in these two positions—claiming, on the one hand, that none of the relevant evidence is in the United States while blaming, on the other, an American company whose evidence is solely within the United States—the Defendants have been understandably reluctant to provide any information in support of their affirmative defense. Indeed, as noted, they have been unwilling even to identify the mysterious third-party tortfeasor.

The Court should not permit the Defendants to have their cake and, as it were, to eat it too. Because, in the Court's words, of what the Defendants have "said in the motions"[12]—and given "what the Plaintiffs feel they need in order to respond effectively to the motions"—the Plaintiffs respectfully submit that the "third-party" discovery in question is directly relevant to the Defendants' Motion to Dismiss on the Ground of *Forum Non Conveniens*.

## II. The Plaintiffs' request is not overbroad

---

[12] *See* July 19, 2016 Hr'g Tr., at 56:4-9.

The Defendants have objected to the Plaintiffs' third party discovery, in part, on the ground that the requests are overbroad. *See* Def's Resp. to Gaspard Plaintiffs' Request For Production No. 7 ("Further, MAS/MAB objects to this Request on the ground that it is overly broad[.]"). But this conclusory legal statement is insufficient to satisfy the Defendants' burden of establishing overbreadth. To satisfy their burden, the Defendants—as the objecting parties—must make a specific, detailed showing of how exactly the request is overbroad. *Tequila,* 242 F.R.D. at 8, 10. In this respect, "the objector must do more than just state the objection, the objector must submit affidavits or offer evidence which reveals the nature of the burden." *Id.* at 8; *see also id.* at 10 ("The responding party cannot just merely state in a conclusory fashion that the requests are overbroad."). As their one-line objection makes plain, the Defendants have done nothing more than regurgitate a one-line boilerplate objection to the effect that the requests are "overbroad." As such, this Court should strike the Defendants' "overbreadth" objections and order the Defendants to produce the requested third-party discovery.

### III. The responsive information is within the Defendants' possession, custody, or control

The Defendants have similarly objected to the Plaintiffs' third-party discovery requests on the ground that the requested information is not within their possession, custody, or control. *See, e.g.*, Def's Resp. to Gaspard Plaintiffs' Request For Production No. 7 (asserting that the request "seeks to impose a duty on MAS/MAB to provide information not within its possession, custody or control."). Rule 34 allows a "party to serve on any other party a request within the scope of Rule 26(b) . . . to produce . . . any designated documents or electronically stored information . . . from which information may be obtained," which are "in the responding party's possession, custody, or control." *See* Fed. R. Civ. P. 34(a). The federal courts have consistently defined "control" to mean something more than actual "possession" and have explained, in this

context, that the question of "control" turns, in large measure, on whether the producing party has the "legal right to obtain such documents on demand." *Tequila,* 242 F.R.D. at 8; *Alexander v. FBI,* 194 F.R.D. 299, 304 (D.D.C. 2000) (citing *Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir. 1984)) (holding that, under Rule 34(a), a party must produce those documents which it has a legal right to control or obtain); *Tavoulareas v. Piro,* 93 F.R.D. 11, 20 (D.D.C. 1981) (same).

Here, the Defendants have not explained how the requested information is outside of their possession, custody, or control—nor can they. After all, it was the Defendants who, in their Answers, alleged that "[a]ny and all injuries or damages of which Plaintiff complains were caused by the separate, independent and/or negligent actions or inactions or fault of third parties over whom MAS exercised no control or right of control." MAS Answer to Ganguli Complaint, at 24; *cf.* MAS Answer to Gaspard Complaint, at 18 (same). The discovery the Plaintiffs now seek is simply the identity of the "third parties" the Defendants, in filed pleadings, have blamed for the Subject Accident—along with any and all evidence in the Defendants' possession, custody, or control in support of their affirmative defenses.

In short, because the "third-party" discovery is both relevant to the *forum non conveniens* response and necessarily within the Defendants' possession, custody, or control, the Court should strike the Defendants' "possession, custody, or control" objection and order the Defendants to produce the third-party discovery.

### IV. The Defendants have waived immunity under the FSIA

The Defendants' final objection to the Plaintiffs' request for third-party discovery is that they are immune from suit under the FSIA and, thus, should not be compelled to engage in jurisdictional discovery. *See* Def's Resp. to Gaspard Plaintiffs' Request For Production No. 7 ("Further, MAS/MAB objects to this Request on the ground that it is overly broad and beyond

13

the scope of jurisdictional discovery under the Foreign Sovereign Immunities Act; it seeks to impose an undue burden on MAS/MAB as a foreign sovereign which is immune from suit; and it is not sufficiently controlled and limited consistent with the protections of the Foreign Sovereign Immunities Act.").

As we have shown, however, the Defendants have on several occasions expressly agreed to engage in jurisdictional discovery. That being the case, they cannot now refuse to engage in jurisdictional discovery on the grounds that they are immune from suit. More to the point, the Court has made clear that "we'll have to see how that plays out in terms of what . . . is said in the motions and then what the Plaintiffs feel they need in order to respond effectively to the motions." *See* July 19, 2016 Hr'g Tr., at 56:4-9. The Defendants have now filed a motion to dismiss in which they argued that Malaysia is a more appropriate forum than the United States—an argument premised, in part, on the Defendants' arguments about the location of evidence. [ECF 37-1 at 16.]. But, as we have said, this third-party discovery may directly contravene the Defendants' argument by showing that, in fact, much of the relevant evidence is located, not in Malaysia, but in the United States.

In essence, the Defendants are asking this Court to agree that they are immune from suit before deciding whether to grant the jurisdictional discovery that will be necessary for the Plaintiffs to respond to the Defendants' motions. But the Defendants have this exactly backwards. It is the Plaintiffs' position that the Defendants are not immune under the FSIA—that, in fact, they have waived their FSIA immunity. In either event, the Court should not decide the question of FSIA immunity *before* ordering the Defendants to produce the jurisdictional discovery they have already agreed to produce. Accordingly, the Court should strike the

Defendants' "immunity" objection and order the Defendants to produce the third-party discovery.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court overrule the Defendants' objections to the Plaintiffs' third-party discovery requests.[13] Furthermore, the Plaintiffs respectfully request that the Court instruct the Defendants to produce any and all responsive third-party discovery in their possession, custody, or control.

## CERTIFICATE OF CONFERENCE

The undersigned hereby certify that they have, in good faith, conferred with counsel for the Defendants, and that counsel for the Defendants are OPPOSED to the relief sought in this Motion.

Respectfully Submitted,

/s/   Roy K. Altman
Steven C. Marks, DC Bar No.: FL0004
FL Bar No. 516414
Roy K. Altman, FL Bar No. 116885
raltman@podhurst.com
smarks@podhurst.com
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
(305) 358-2800
*Counsel for Plaintiff, Gaspard v. Malaysia Airlines Berhad, et al*
*Case No.: 1:16-cv-01128-KBJ*

---

[13] These are: Gaspard Request for Production No. 7; Gaspard Interrogatory No. 5; Ganguli Request for Production No. 12; Ganguli Interrogatories Nos. 5 and 6; and Ganguli Requests for Admission Nos. 81-87.

/s/ Kevin P. Durkin
Kevin P. Durkin
Clifford Law Offices
120 North LaSalle Street, 31st Floor
Chicago, IL 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
kpd@cliffordlaw.com
*Counsel for Plaintiff Sanjit Ganguli in Case No. 1:16-cv-01047-KBJ.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on February 6, 2017, pursuant to Fed. R. Civ. P. 5 and LCvR5.3, a true and correct copy of the foregoing Plaintiffs' Motion to Compel was we filed with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the attorneys of record at the e-mail addresses below:

/s/   Roy K. Altman
Roy K. Altman

Telly Andrews, Esq.
Richard A. Walker, Esq.
KAPLAN, MASSMILLO & ANDREWS, LLC
200 West Madison Street, 16th Floor
Chicago, Illinois 60606
tandrews@kmalawfirm.com
rwalker@kmalawfirm.com
*(Attorneys for Malaysian Airline System Berhad (Administrator Appointed) and Malaysia Airlines Berhad)*

John D. Dillow, Esq.
Mack H. Shultz, Esq.
Eric B. Wolff, Esq.
Perkins Coie, LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
jdillow@perkinscoie.com
mshultz@perkinscoie.com
Ewolff@perkinscoie.com
*(Attorneys for The Boeing Company)*