1986 WL 69761 (D.O.T.)

AMENDMENT OF FOREIGN AIR CARRIER PERMIT AND EXEMPTION AUTHORITY

Docket 43742
Order 86-1-38

**Issued by the Department of Transportation on the 21st day of January, 1986**

January 21, 1986
Served: January 24, 1986

ORDER TO SHOW CAUSE

*1 By this order, the Department of Transportation directs interested persons to show cause why it should not amend all foreign air carrier operating authority to make it clear that the required waiver of sovereign immunity extends to all of a foreign carrier's air service operations, whether or not those activities take place within foreign air transportation as defined in the Federal Aviation Act. The proposed action is limited to clarifying the scope of a condition currently imposed on the operations of foreign air carriers, and is not intended to affect any other aspect of a foreign carrier's operations, including its rights to raise other legal defenses, such as jurisdictional arguments.

Background

Recent world events have highlighted the need for the United States to examine closely the protections afforded U.S. citizens traveling in international air transportation. Accordingly, we have been examining many of the terms under which foreign air carriers operate to the United States.

U.S. citizens, as well as others, have been the victims of vicious terrorist attacks and tragic airline disasters. Some of these Americans were traveling on foreign airlines between two foreign points, under circumstances which would not constitute 'foreign air transportation' within the meaning of the Federal Aviation Act.

We expect that some U.S. citizens injured in these incidents will seek recovery from the airlines pursuant to the Warsaw Convention, which governs the recovery of damages by those injured while traveling in international air transportation.[1] Recent pleadings filed with the Department have brought to our attention a possible ambiguity in one of the terms under which foreign airlines operate to the United States which could undermine the ability of U.S. citizens to recover under the Convention. We have tentatively decided to clarify that term.[2]

Under standard practice, every foreign air carrier operating to the United States today is required to relinquish its right to the defense of sovereign immunity as a condition of holding operating authority under the following standard condition:
> [The holder shall] Waive any right it may possess to assert any defense of sovereign immunity from suit in any action or proceeding instituted against it in any court or other tribunal in the United States (or its territories or possessions) based upon any claim arising out of operations under this [permit or exemption][3]

This condition was first imposed in 1951 by the CAB, which stated:
> [a]s a matter of policy . . . proper protection of shippers and the traveling public requires that insofar as practicable a foreign air carrier shall not enjoy immunity from suit any more than does a domestic air carrier.[4]

*2 This condition reflects our policy that an airline enjoying the benefits of operating in the U.S. market should also be subject to the responsibilities that attach to doing business in the United States, and seeks to place governments operating commercial enterprises on an equal footing with private enterpreneurs engaged in the same activities. However, the exact

© 2017 Thomson Reuters. No claim to original U.S. Government Works.      1

EXHIBIT "A"

words of the condition make it possible to argue that the CAB intended that the waiver should be limited to claims arising out of a carrier's operations to and from the United States made possible as a result of the permit or exemption.

We think that such a narrow interpretation would be contrary to the CAB's intent, as quoted above. Moreover, even if the CAB had intended to limit the waiver to operations clearly in foreign air transportation, we do not agree that the waiver should be so limited. We think that the public interest, and U.S. international avation policy, demand that foreign air carriers owned by foreign governments waive any claims they otherwise enjoy to claim sovereign immunity in U.S. courts, whether or not the particular air service activity complained of takes place between the United States and some foreign place, or between two foreign places.

We think that the requirement that airlines be commercially liable for their airline activities in U.S. courts is reasonable. It is consistent with U.S. law and policy, as set forth in the Foreign Sovereign Immunities Act and enunciated by U.S. courts and administrative agencies.[5] An airline is universally recognized to be a commercial enterprise, and most foreign carriers benefit substantially from their U.S. operations. Accordingly, they should not be permitted to avoid the obligations and responsibilities that are a part of operating a business. The logic of this principle is not diluted by the fact that the airline's action took place in the context of operations between foreign points rather than directly between a foreign point and a point in the United States.

Our position also comports with customary international law.[6] Although the precise interpretation of the extent to which one government will grant immunity from suit to another varies among the nations, one principle seems clear: there is an international consensus that immunity of a sovereign from suit should be restricted to its public, or sovereign, acts (jure imperii). On the other hand, suits arising from the private activities of a sovereign (jure gestionis) should not be immune from suit.

Finally, we are very concerned that the ability of a foreign air carrier to claim sovereign immunity for its air service operations could provide disruptive to international civil aviation. The vast majority of non-U.S. airlines are instrumentalities of foreign governments. The United States has entered into multilateral aagreements which stipulate in great detail the commercial responsibilities of airlines providing international air transportation. Indeed, the United States is now considering ratification of the Montreal Protocols to the Warsaw Convention, which, if adopted, would permit U.S. citizens to sue foreign airlines in U.S. courts regardless of whether the air transportation has any connection with the United States, so long as the carrier maintains an establishment in the United States.[7]

**\*3** This carefully negotiated international scheme would be entirely frustrated if foreign airlines could avoid liability by claiming sovereign immunity. Indeed, since most foreign airlines are owned by foreign governments, conventions such as Warsaw would prescribe rules which apply only to U.S. airlines and the few foreign airlines that are privately owned. Continued U.S. participation in international civil aviation accords and multilateral agreements like the Warsaw Convention might be disrupted or jeopardized if foreign airlines were able to assert sovereign immunity in our courts.

Proposed Department Action

Because there is a possibility that the language currently used in foreign air carrier permits and other operating authorities may be subject to misunderstanding or misinterpretation, we have tentatively concluded that the language of our standard condition requiring a waiver of sovereign immunity should be clarified.

We propose to amend the standard condition contained in all foreign air carrier permits and all temporary exemption authority granted to all foreign air carriers so that it will read as follows:

> Waive any right it may possess to assert any defense of sovereign immunity from suit in any action or proceeding instituted against it in any court or other tribunal in the United States (or its territories or possessions) based upon any claim arising out of operations by the holder of this [permit] [exemption].

(Change underlined). By so doing, we are making it clear that foreign air carriers may not seek sovereign immunity in U.S. tribunals for their air service activities, regardless of whether those activities took place within 'foregoing air transportation'. Accordingly, the waiver of sovereign immunity applies to all such litigation brought in U.S. courts, whether or not it is

pending at the time the order is made final.

As stated at the beginning, our action here does not reflect any position on the propriety of asserting any other defense to which a foreign air carrier may be legally entitled, including jurisdictional defenses available under the Warsaw Convention. Such defenses are available equally to U.S. air carriers, privately held foreign carriers and government-owned foreign carriers.

Nor are we deciding whether the provisions of the Foreign Sovereign Immunities Act would otherwise exclude foreign air carriers from the general grant of sovereign immunity, or whether any particular carrier is or should be held liable to any plaintiff. We are merely tentatively concluding that the public interest requires that any foreign air carrier that enjoys the benefits of commercial operations to the United States must waive sovereign immunity in U.S. courts in suits arising from their air service operations.

This order shall be served on all foreign air carriers. Those carriers and any other interested persons are invited to file comments on this order in accordance with the terms of the ordering paragraphs below.

**\*4** ACCORDINGLY:

1. We direct all interested persons to show cause why we should not issue an order (a) making final the tentative findings and conclusions of this order and (b) amending the operating authorities of all foreign air carriers to clarify the terms of the required waiver of sovereign immunity in the manner indicated above;

2. We direct all interested persons having objections to the issuance of an order making final our proposed findings and conclusions to file their objections with the Documentary Services Division, Department of Transportation, 400 Seventh Street, S.W., Room 4107, Washington, D.C. 20590 in Docket 43742 and serve them upon all persons listed in paragraph 5 below, no later than 10 days after the date of service of this order. Answers to such objections shall be filed no later than 15 days after the date of service of this order;

3. If timely and properly supported objections are filed, we will give consideration to the matters and issues raised by the objections before we take further action; provided, that we may proceed to enter an order in accordance with our tentative findings and conclusions set forth in this order if we determine that there are no factual issues present that warrant the holding of an oral evidentiary hearing or the institution of discovery procedures;[8]

4. In the event no objections are filed, we will deem all further procedural steps to have been waived, and an order will be entered which shall (1) make final our tentative findings and conclusions; and (2) subject to the disapproval of the President under section 801(a) of the Act, amend the operating authorities of all foreign air carriers to clarify the terms of the required waiver of sovereign immunity;

5. We will serve a copy of this order on all parties to Dockets 38066 and 38034, on all foreign air carriers, the Air Transport Association, the International Air Transport Association and the U.S. Department of State and Justice; and

6. We will publish this order in the Federal Register.


By: MATTHEW V. SCOCOZZA
Assistant Secretary for Policy and International Affairs


Footnotes

[1]   Warsaw Convention, October 12, 1929. 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11.

[2]   Motions dated June 7, and July 2, 1985 in Docket 38066, and Answer dated July 3, 1985 in Docket 38034.

[3]   E.g., Orders 85-11-5, 85-9-15, 85-9-21, and 85-9-22.

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

| | |
|---|---|
| 4 | El Al Israel Air., Amendment of Permit, 14 C.A.B. 962 (1951). |
| 5 | Verlinden v. Central Bank, 461 U.S. 480 (1983); El Al Israel Air., Amendment of Permit, 14 C.A.B. 962 (1951); letter from Jack B. Tate to U.S. Attorney General, 26 Dep't of State Bull. 984 (1952), reprinted in Dunhill v. Cuba, 425 U.S. 682, 711 (1976) (hereinafter cited as the Tate letter). <br> For the most part, the Foreign Sovereign Immunities Act (FSIA) adopts the restrictive theory of sovereign immunity, under which immunity is confined to suits involving the foreign sovereign's public acts and does not extend to cases arising out if its strictly commercial acts. Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2892 (codified in various sections of 28 U.S.C.). |
| 6 | State Immunity Act, 1978 (United Kingdom); Qureshi v. U.S.S.R., 33 All Pakistan Legal Decisions 377 (Sup. Ct. 1981), reprinted in 20 International Legal Materials 1060 (1981). <br> Asian—African Legal Consultative Committee, 3rd Sess., Colombo, Ceylon, Final Report of the Committee on Immunity of States in respect of Commercial and Other Transactions of a Private Charter 66-69 (1960), expected in 6 Whiteman, Digest of International Law 572-74 (1968). Representatives from Burma, Ceylon, India, Indonesia, Iraq, Japan, Pakistan, Sudan, Syria, and the United Arab Republic comprised the Asian—African Legal Consultative Committee <br> European Convention on States Immunity, entered into force June 11, 1976. The following States ratified the Convention: Austria, Belgium, Cyprus; the following states have signed the Convention: the Federal Republic of Germany, Luxembourg, the Netherlands, and the United Kingdom. |
| 7 | The Warsaw Convention, Article 28, provides that an action for damages may be brought either before a court: (1) of the carrier's domicile; (2) at the carrier's principal place of business; (3) where the carrier has a place of business through which the ticket was brought, or (4) at the place of destination. The 1971 Guatemala Protocol (ICAO Doc. 9040-LC/168-2 at 191), Article XII, added as a fifth place of jurisdiction the court where the carrier has an establishment if the passenger also has his or her domicile or permanent residence there. The Guatemala Protocol is incorporated by reference into the 1975 Montreal Protocol No. 3, Article VII (ICAO Doc. 9151-LC/171-2 at 270). |
| 8 | Because we have provided for the filing of objections to our tentative findings and conclusions, we will not entertain petitions for reconsideration of this order. |

1986 WL 69761 (D.O.T.)

**End of Document**   © 2017 Thomson Reuters. No claim to original U.S. Government Works.