19...

**Order** 2002-9-26



**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C.**

Issued by the Department of Transportation
On the 1st day of August, 2002

| Application of<br><br>**MALAYSIA AIRLINES**<br><br>for a foreign air carrier permit under<br>49 U.S.C. § 41301 | Docket OST-99-6211 - 3<br><br>Served: October 1, 2002 |
|---|---|

**ORDER ISSUING FOREIGN AIR CARRIER PERMIT**

**Summary**

In this order we are issuing Malaysia Airlines an initial foreign air carrier permit to engage in scheduled foreign air transportation of persons, property and mail between Malaysia and the United States pursuant to the bilateral aviation undertakings of the United States and Malaysia.

**Application**

By application filed September 8, 1999, as supplemented, Malaysia Airlines requests that we issue it an initial foreign air carrier permit to conduct scheduled foreign air transportation of persons, property and mail between Malaysia and the United States consistent with the provisions of the open-skies aviation agreement between the United States and Malaysia.[1]

Malaysia Airlines states that it has been licensed and designated by the Government of Malaysia to perform the proposed services; it is substantially owned and effectively controlled by citizens of Malaysia; and it is operationally and financially fit to perform the proposed services.

No answers were filed in response to Malaysia Airlines' foreign air carrier permit application.

---

[1] Most recently, on November 20, 2001, we granted Malaysia Airlines exemption authority consistent with our open-skies agreement with Malaysia, for a period of two years, authorizing it to engage in scheduled combination services identical to the authority at issue here. See Notice of Action Taken, dated November 20, 2001, in Docket OST-99-6242.

EXHIBIT "C"

**Decision**

We have reviewed the record in this case and have decided to grant the application using simplified Subpart B procedures.[2] The public was informed of the application by notice in the Federal Register and the Department's published weekly list of applications filed.[3] The notice described the authority sought and gave interested persons an opportunity to submit evidence and objections to the award of the authority. Simplified procedures are appropriate in this case because there are no material determinative issues of fact requiring other procedures.

We find that grant of this foreign air carrier permit is in the public interest, and that Malaysia Airlines is qualified to conduct the proposed operations.

**Public Interest Considerations**

During 1997, the United States and Malaysia concluded an open-skies bilateral aviation agreement.[4] The agreement provides broad rights and other opportunities for the designated carriers of each side, including the authority sought by Malaysia Airlines here.

**Operational and Financial Fitness**

We find that Malaysia Airlines is operationally and financially fit to conduct the operations at issue here. Malaysia Airlines commenced scheduled services to the United States in 1986 and has served the U.S. market on a continuous basis since that time. Malaysia Airlines' services to the United States will be with Malaysian-registered aircraft. Malaysia Airlines currently has over 16,000 employees and serves 100 destinations in six continents with a fleet of approximately 100 aircraft. Malaysia Airlines has been designated by its government and holds effective authority to conduct the proposed operations.[5] Malaysia Airlines has experienced management and has had no safety violations, fatal accidents or tariff violations in the last five years. By memorandum dated June 26, 2002, the Federal Aviation Administration advised us that it knows of no reason why Malaysia Airlines' request for a foreign air carrier permit should not be approved. Finally, we have verified Malaysia Airlines' compliance with 14 CFR Parts 203 (Warsaw liability waiver), 205 (Insurance requirements) and 129 (FAA Operations Specifications).

Malaysia Airlines has provided financial information which indicates that it can conduct the proposed services without jeopardizing passenger or shipper funds. Specifically, for

---

[2] 14 CFR 302.210 (a)(2) and 302.213.

[3] 67 FR 50852-50853, September 20, 1999.

[4] The Agreement was signed June 21, 1997.

[5] By diplomatic note dated January 23, 1998, the Government of Malaysia designated Malaysia Airlines to conduct scheduled and/or charter services on the Malaysian route(s) specified in the Agreement.

the year ending March 31, 2000, Malaysia Airlines reported total assets of approximately $4.7 billion, total liabilities of $3.8 billion, and owners' equity of approximately $900 million. For the year ending March 31, 2000, Malaysia Airlines reported an operating loss of approximately $20 million. For the year ending March 31, 2001, Malaysia Airlines reported total assets of approximately $3.9 billion, total liabilities of $3.5 billion, and owners' equity of $473 million. For the year ending March 31, 2001, Malaysia Airlines reported an operating loss of approximately $161 million.

**Ownership and Control**

We find that Malaysia Airlines is substantially owned and effectively controlled by citizens of Malaysia. Specifically, 92.23% of Malaysia Airlines' ordinary shares are owned by Malaysian nationals (including government agencies, companies and individuals).[6] No one individual or company holds more than 5% of the remaining 7.77% of Malaysia Airlines' stock. Similarly, all of Malaysia Airlines' officers and key management personnel, with the exception of one director (a citizen of the United Kingdom), are citizens of Malaysia.

In view of the foregoing, and all the facts of record, we find and conclude that:

1. It is in the public interest to issue Malaysia Airlines a foreign air carrier permit in the form attached;

2. Malaysia Airlines is fit, willing and able properly to perform the foreign air transportation described in the attached permit and to conform to the provisions of the Act, and to our rules, regulations, and requirements;

3. The public interest requires that the exercise of the privileges granted by the permit should be subject to the terms, conditions, and limitations contained in the attached permit, and to such other reasonable terms, conditions, and limitations required by the public interest as we may prescribe;

4. The issuance of this foreign air carrier permit will not constitute a major regulatory action under the Energy Policy and Conservation Act of 1975, as defined in § 313.4(a)(1) of our Regulations;[7] and

5. The public interest does not require an oral evidentiary hearing on the application.

---

[6] The four majority owner's of Malaysia Airlines are the Minister of Finance (29.16%), Kumpulan Wang Amanah Pencen (20.22%), Employees Provident Fund Board (12.69%) and Amanah Raya Nominees (8.87%). The Government of Malaysia owns one "special share" of Malaysia Airlines' stock which enables the government to ensure that certain major decisions affecting the corporate structure of the airline are consistent with government policy.

[7] This finding is based on the fact that the grant of this permit will not result in a near-term net annual change in aircraft fuel consumption of 10 million gallons or more.

ACCORDINGLY,

1. We issue, in the form attached, a foreign air carrier permit to Malaysia Airlines authorizing it to engage in scheduled foreign air transportation of persons, property and mail from points behind Malaysia via Malaysia and intermediate points to a point or points in the United States and beyond;

2. Malaysia Airlines is also authorized to engage in charter trips in foreign air transportation, subject to the terms, conditions, and limitations of the Department's regulations governing charters;

3. We grant Malaysia Airlines a waiver under 14 CFR § 212.12 from the requirement of 14 CFR § 212.9(b)(1) that the carrier obtain prior Department approval before operating Fifth Freedom cargo charter flights encompassed under the Agreement;

4. Malaysia Airlines is also authorized to engage in other charter trips in foreign air transportation, subject to the terms, conditions, and limitations of the Department's regulations governing charters;

5. The exercise of the privileges granted above is subject to Malaysia Airlines' compliance with the conditions listed in Attachment A;

6. To the extent not granted, we deny all requests for relief in Docket OST-99-6211;

7. Unless disapproved by the President of the United States under § 41307 of Title 49 of the U.S. Code, this order and the attached permit shall become effective on the 61st day after its submission for § 41307 review, or upon the date of receipt of advice from the President or his designee under Executive Order 12597 and implementing regulations that he or she does not intend to disapprove the Department's order under that section, whichever occurs earlier; [8] and

---

[8] This order was submitted for § 41307 review on August 1, 2002. On September 30, 2002, we received notification that the President's designee under Executive Order 12597 and implementing regulations did not intend to disapprove the Department's order.

8. We will serve a copy of this order on Malaysia Airlines; the Ambassador of Malaysia in the United States; the Department of State and the Federal Aviation Administration (San Francisco IFO).

By:

READ C. VAN DE WATER
Assistant Secretary for Aviation
and International Affairs

(SEAL)

*An electronic version of this document is available on the World Wide Web at*
*http://dms.dot.gov//reports/reports_aviation.asp*

Issued by
Order 2002-9-26

UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
WASHINGTON, D.C.

---

PERMIT TO FOREIGN AIR CARRIER

---

**Malaysia Airlines**

**A Flag Carrier of Malaysia**

is authorized, subject to the following provisions, the provisions of Title 49 of the U.S. Code and the orders, rules, and regulations of the Department of Transportation, to engage in scheduled foreign air transportation as follows:

A. Of persons, property and mail (combination services);

from points behind Malaysia via Malaysia and intermediate points to a point or points in the United States and beyond.

B. Of property and mail (all-cargo services);

between the United States and any point or points.

The holder shall also be authorized to engage in charter trips in foreign air transportation, subject to the terms, conditions, and limitations of the Department's regulations governing charters.

In the conduct of charter operations authorized above, the holder may, without prior Department approval, carry charter traffic between the United States and a third country point, provided that, except with respect to cargo charters, such charter traffic is carried on a flight that serves Malaysia for purposes of carrying traffic between the United States and Malaysia.

This permit and the exercise of the privileges granted in it shall be subject to the terms, conditions and limitations in both the order issuing this permit and the attachment to this order, and to all applicable provisions of any treaty, convention or agreement affecting international air transportation now in effect, or that may become effective during the period this permit remains in effect, to which the United States and the holder's homeland are or shall become parties.

This permit shall be effective on 09/30/2002. . Unless otherwise terminated at an earlier date pursuant to the terms of any applicable treaty, convention or agreement, this permit shall terminate (1) upon the dissolution or liquidation of the holder to whom it was issued; (2) upon the effective date of any treaty, convention, or agreement or amendment, which shall have the effect of eliminating the bilateral right for the service authorized by this permit from the service which may be operated by airlines designated by the Government of Malaysia (or, if the right is partially eliminated, then the authority of this permit shall terminate in like part); (3) upon the effective date of any permit granted by the Department to any other carrier designated by the Government of Malaysia in lieu of the holder; or (4) upon the termination or expiration of the applicable air services agreement between the United States and Malaysia. However, clause (4) of this paragraph shall not apply if prior to such termination or expiration, the foreign air transportation authorized herein becomes the subject of another treaty, convention or agreement to which the United States and Malaysia become parties.

The Department of Transportation has executed this permit and affixed its seal on September 30, 2002.

By:

READ C. VAN DE WATER
Assistant Secretary for Aviation
and International Affairs

(SEAL)

Attachment A

## FOREIGN AIR CARRIER CONDITIONS OF AUTHORITY

In the conduct of the operations authorized, the holder shall:

(1) Not conduct any operations unless it holds a currently effective authorization from its homeland for such operations, and it has filed a copy of such authorization with the Department;

(2) Comply with all applicable requirements of the Federal Aviation Administration, including, but not limited to, 14 CFR Parts 129, 91, and 36, and with all applicable U.S. Government requirements concerning security;

(3) Comply with the requirements for minimum insurance coverage contained in 14 CFR Part 205, and, prior to the commencement of any operations under this authority, file evidence of such coverage, in the form of a completed OST Form 6411, with the Federal Aviation Administration's Program Management Branch (AFS-260), Flight Standards Service (any changes to, or termination of, insurance also shall be filed with that office);

(4) Not operate aircraft under this authority unless it complies with operational safety requirements at least equivalent to Annex 6 of the Chicago Convention;

(5) Conform to the airworthiness and airman competency requirements of its Government for international air services;

(6) Except as specifically exempted or otherwise provided for in a Department Order, comply with the requirements of 14 CFR Part 203, concerning waiver of Warsaw Convention liability limits and defenses;

(7) Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are:

(a) based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place, or for which the contract of carriage was purchased in the United States; or

(b) based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States.

In this condition, the term "international air transportation" means "international transportation" as defined by the Warsaw Convention, except that all States shall be considered to be High Contracting Parties for the purpose of this definition;

(8) Except as specifically authorized by the Department, originate or terminate all flights to/from the United States in its homeland;

(9) Comply with the requirements of 14 CFR Part 217, concerning the reporting of scheduled, nonscheduled, and charter data;

(10) If charter operations are authorized, except as otherwise provided in the applicable aviation agreement, comply with the Department's rules governing charters (including 14 CFR Parts 212 and 380); and

(11) Comply with such other reasonable terms, conditions, and limitations required by the public interest as may be prescribed by the Department, with all applicable orders or regulations of other U.S. agencies and courts, and with all applicable laws of the United States.

This authority shall not be effective during any period when the holder is not in compliance with the conditions imposed above. Moreover, this authority cannot be sold or otherwise transferred without explicit Department approval under Title 49 of the U.S. Code (formerly the Federal Aviation Act of 1958, as amended).