**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

---

MDL Docket No. 2712

_____
**Misc. No. 16-1184 (KBJ)**

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv–01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv–01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv–01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ
Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ

**PLAINTIFFS' EXHIBIT NO. 1**

Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## DECLARATION OF TOMMY THOMAS

Pursuant to 28 U.S.C. § 1746, I, TOMMY THOMAS, hereby declare as follows:

1.      I am an Advocate and Solicitor of the High Court of Malaya, and have been in active and continuous practice for some 40 years, since my admission to the Malaysian Bar in 1976. I have appeared as Counsel in various branches of the law in all the Courts of Malaysia, including the Privy Council in London, which was Malaysia's highest court until 1985. Now produced and shown to me and marked collectively as Exhibit **"TT-1"** are a copy each of my Curriculum Vitae and professional profile.

2.      I am over the age of twenty-one, of sound mind, and otherwise competent to make this Declaration.

3.      I have personal knowledge of all facts stated in this Declaration, and if called to testify, I could and would testify competently thereto. I have been asked by Messrs Steven Marks and Roy Altman of the law firm Podhurst Orseck to prepare this Declaration for their use in these litigation proceedings.

4.      I am lead Counsel in a law suit filed on 4th March 2016 at the Kuala Lumpur High Court [*Civil Suit No.: WA-21NCVC-20-03/2016*] ("KL Suit") by 76 Plaintiffs ("KL Plaintiffs"), who

are the relatives of 27 passengers on board the ill-fated Malaysian Airlines Flight MH370 ("MH370"), which disappeared on 8th March 2014. The 27 passengers were citizens of the United States of America, China and India.

5.    I was appointed as Counsel, and my firm, Messrs Tommy Thomas, as solicitors, to represent the KL Plaintiffs in the KL Suit, by the law firm of Podhurst Orseck, and its partner, Mr. Steven Marks. They are aviation law experts, and highly experienced in the conduct of airplane crash litigation.

6.    As at June 2017, solicitors for Malaysian Airline System Berhad ("MAS"), the Malaysian Department of Civil Aviation ("DCA") and the Royal Malaysian Air Force ("RMAF"), who are Defendants in the KL Suit, had served their clients' sets of documents on my firm, as ordered by the Kuala Lumpur High Court when allowing a Discovery Application by the KL Plaintiffs ("Discovery Documents").

7.    It should be noted that Malaysian civil procedure does not contain similar provisions to the generous United States procedure of pre-trial oral discovery. That may accordingly be an advantage which plaintiffs suing in the United States enjoy over plaintiffs suing in the Malaysia, such as the KL Plaintiffs.

8.    The Discovery Documents are largely in the English language. My colleagues shared the Discovery Documents with Podhurst Orseck very shortly after receipt, by way of email and

Google Drive links. Hence, the transmission of the complete set of Discovery Documents from my firm to Podhurst Orseck was free, efficient and almost instantaneous.

9.      Pursuant to the Discovery Application, the KL Plaintiffs also produced to the Defendants lists of all documents in their possession. These documents are mainly related to the Plaintiffs' claims for damages, and include medical records; financial and banking records; employment records; birth certificates; marriage certificates; educational records; family history records; biographical information; income and spending information; and the names, ages, and employment history of any relevant family members. All such information have been translated into English. All these documents are also in the possession of Podhurst Orseck.

10.     Any additional information that may be required from any of these Plaintiffs can be more easily obtained, in my opinion, by Podhurst Orseck in the United States, than by my firm in Malaysia, because none of the Plaintiffs are in Malaysia. Instead, all of them live either in China, India, or the United States. Unlike Messrs Steven Marks and Roy Altman, the lawyers at Podhurst Orseck, I have so far not met any of them. Hence I do not have any personal interaction with them, let alone the close working relationship that I understand that the lawyers at Podhurst Orseck have developed. This is particularly true with respect to the American Plaintiffs, who I have never met or corresponded with.

11.     The lawyers at Podhurst Orseck in the United States are the Plaintiffs' counsel of choice. The Malaysian High Court had, on application by the Plaintiffs, excluded the lawyers of Podhurst Orseck from admission to the Malaysian High Court. Therefore, if this litigation were

to proceed in Malaysia, all of the Plaintiffs would be deprived of their counsel of choice for the trial at the Malaysian High Court. In my view, the Defendants will have a more difficult time obtaining damages information from the Plaintiffs through us in Malaysia than they would seeking that same information through Podhurst Orseck in the United States.

12.    There are no reported decisions of the Malaysian Courts in airplane crash litigation, or for death of passengers on airplanes operated by carriers pursuant to the *Montreal Convention*.

13.    To my knowledge, no legal proceedings have ever been instituted in the Courts of Malaysia arising from the loss of a commercial airliner until the spate of suits filed after the MH370 disappearance.

14.    There are accordingly no Malaysian lawyers with experience in aviation accidents, which are governed by the *Chicago Convention on International Civil Aviation,* the *Convention for the Unification of Certain Rules for International Carriage by Air* (Montreal Convention) and ICAO protocols. The KL Suit is a highly complex suit, with novel issues of law and numerous disputes of fact in a highly specialized and technical field. 3 years of sustained international efforts and investigations have not yielded MH370's final resting place, let alone identified who is at fault for its disappearance. It is at this trial that the latter question will have to be answered.

A.    **RELATIONSHIP BETWEEN MAS AND MAB**

(i)    **Liability of the 1ˢᵗ Defendant : MAS**

15.    The 1ˢᵗ Defendant, MAS in the KL Suit was the owner and operator of MH370. MAS was accordingly the *"carrier"* within the meaning of the Montreal Convention.

16.    By Section 6 of the Malaysian *Carriage by Air Act*, 1974, Parliament expressly confirmed the application in Malaysia of the Montreal Convention.  Articles 17, 21 and 39 of the Convention, when read together, provide that :-

    (i)    a carrier shall not be able to exclude under any circumstances its liability for damages up to 113,000 Special Drawing Rights ("SDR"), or RM609,700.00, per passenger ("the cap"); and

    (ii)    a carrier can only claim the benefit of the said cap if that carrier is able to prove that :-

        (a)    such damage was not due to the negligence or other wrongful act or omission of the carrier, its servants or agents; or

        (b)    such damage was solely due to the negligence or other wrongful act or omission of a third party.

Now produced and shown to me and marked as Exhibit **"TT-2"** is the _Carriage by Air Act, 1974_.

17.      Thus, as the "_carrier_" for MH370 pursuant to the Montreal Convention, MAS is under strict liability for damages up to the cap of RM609,700 per passenger. Using that formula, MAS' liability to the 76 KL Plaintiffs (representing the estates of 28 passengers) under the cap alone amounts to a minimum sum of RM17 million.

18.      MAS' liability under the cap for all 227 passengers on board MH370 amounts to approximately RM138.5 million.

19.      Further, in order to take advantage of the cap on damages provided by the Montreal Convention, MAS must discharge the burden of proof imposed on them by Article 21 thereof to show that the loss of MH370 :-

     (i)    was not due to the negligence or other wrongful act of MAS; or

     (ii)   was solely due to the negligence or omission of the 3rd, 4th or 5th Defendants, or another third party.

20.      Otherwise, MAS is liable to the KL Plaintiffs and the estates of all other passengers on board MH370, for all personal injury and wrongful death damages.

21.     Thus, immediately upon the disappearance of MH370 in March 2014, MAS had actual knowledge that it faced a massive potential liability under the Montreal Convention, in the form of damages, payable to the estates of the 239 persons on board MH370.

### (ii)     Liability of the 2nd Defendant : MAB

22.     On or about 17-7-2014, a second MAS aircraft bearing flight number MH17 ("MH17") was lost enroute from Kuala Lumpur to Amsterdam.

23.     Following the twin losses of MH17 and MH370 in 4 months, MAS experienced a significant loss of business. Consequently, MAS declared severe financial losses exceeding USD230 million (RM 920 million) in the first and second quarters of 2014 alone. Now produced and shown to me and marked as Exhibit "**TT-3**" is a copy of an article titled '*Malaysia Airlines Financial Losses Grow*' published in the  New York Times on 28-8-2014, which confirms this statement.

24.     In August 2014, trading in shares of MAS on the Kuala Lumpur Stock Exchange (*the Bursa Malaysia*) was suspended to allow MAS to carry out a capital reduction exercise, as a precursor to its de-listing and imminent nationalization. Now produced and shown to me and marked as Exhibit "**TT-4**" is a copy of an article titled '*MAS shares suspended pending "material announcement"* published in the Flight Global magazine on 8-8-2014, which confirms this statement.

25.     On 7-11-2014, the 2nd Defendant, MAB, was incorporated.

26.    MAS and MAB share 10 common Directors (of a total of 13 for MAS and 14 for MAB), and all MAB staff were previously employed by MAS. Now produced and shown to me and marked as Exhibit **"TT-5"** and **"TT-6"** respectively are a copy each of company searches conducted on MAS on 10-6-2016 and on MAB on 15-6-2016.

27.    On 20-2-2015, the *Malaysian Airline System Berhad (Administration) Act*, 2015 ("MAS Act") came into force. The Preamble to the MAS Act expressly provides that MAB is the successor company to MAS :-

> *"AND WHEREAS the establishment of a new entity, that is the [Malaysia Airlines], with a new business model is critical to ensure continuity, profitability and viability, and to assume certain businesses, property, rights, __liabilities__ and affairs of [MAS]"*
> …
> *"AND WHEREAS legislation provides an effective, efficient and seamless means to transition the business, property, rights, __liabilities__ and affairs of MAS to the new entity"*

Now produced and shown to me and marked as Exhibit **"TT-7"** is the MAS Act, 2015

28.    Sections 22 and 29 of the MAS Act provide that any transfer of MAS' rights and liabilities to MAB must be carried out by way of a Vesting Order, which must also be gazetted. Our research suggests that only 1 such Vesting Order, entitled the '*Malaysian Airline System*

_Berhad (Administration) Vesting Order_, 2015' dated 1-9-2015 ("Vesting Order") has been made and gazetted todate.

29.    The Vesting Order (running to 703 pages) states that MAS transferred the following assets to MAB :-

(i)    All MAS buildings located at the Kuala Lumpur, Subang, Penang, Sarawak, Sabah and Langkawi airports in Malaysia;

(ii)    Substantial shareholdings in various companies, including _inter alia_ the long-established MAS subsidiaries MAS Kargo and Firefly (the budget airline division of MAS);

(iii)    Outstanding accounts receivable from 531 different 3rd parties to MAS;

(iv)    42 different MAS bank accounts, presumably together with all monies therein standing to MAS' credit; and

(v)    MAS' intellectual property and trademarks in the form of the 'Malaysian Airlines' logo, and specifically including the trademarks to 'MH17' and 'MH370'.

30.    It therefore seems from the Vesting Order that MAS has transferred and/or assigned the bulk of its properties, shareholdings in other companies, monies in bank accounts, sums due from third parties and even its trademarks with regard to MH17 and MH370, to MAB.

31.    According to a 'Fact Sheet' on Malaysia Airlines' website, MAB now owns 75 commercial passenger aircraft, consisting of 6 Airbus A380's, 15 A330's, and 54 Boeing 737's. We have reason to believe that all these 75 aircraft were previously owned by MAS and subsequently transferred to MAB. Now produced and shown to me and marked as Exhibit "**TT-8**" is a printout of the 'Fact Sheet' obtained from 'http://www.malaysiaairlines.com/en/ corporate-info /malaysia_aviation_group.html'.

32.    It appears in these circumstances that MAS has transferred all or substantially all its assets and aircraft to MAB despite possessing actual knowledge that MAS was strictly liable to meet the Montreal Convention cap sum of RM138.5 million for the 227 passengers on board MH370, as well as further claims by passengers on board Flight MH17.

33.    These pre-planned transfers of assets and aircraft from MAS to MAB were made against the background of the former's impending insolvency. If that is in fact the case, the transfers of the MAS assets to MAB amount to asset-stripping from MAS, carried out by the MAS Administrator and the management of MAB to allow MAS to evade its Montreal Convention liabilities to the Plaintiffs and in anticipation of the decision of the Malaysian High Court. Any decision of that Court in favour of the KL Plaintiffs and all other plaintiffs suing in

Malaysia would, in those circumstances, amount to a mere paper judgment, which would remain unsatisfied.

34.      Under the MAS Act, in the event MAS is found liable for the KL Plaintiffs' losses, such liability would be borne by MAB as the successor company to MAS. However, the Vesting Order is silent on the transfer of MAS' liabilities arising from MH370 to MAB.

35.      The cause of the disappearance of MH370 is not known and will be determined at trial. Neither MAS nor MAB have, in their respective Defences, pointed to any other party which caused the loss of MH370. Thus, based on its pleadings, MAS will be liable to the Plaintiffs for all other damages exceeding the Montreal Convention cap.

### (iii)    MAS' Insurance Coverage

36.      Article 50 of the Montreal Convention requires MAS, as carrier, to have adequate insurance coverage. Todate, MAS has not disclosed in any legal proceedings in Malaysia whether it was in fact insured, and whether its insurance coverage is adequate.

37.      However, it has been widely reported in the media that MAS' lead insurer Allianz of Germany started making payments estimated at about USD 100 million upon MH370's loss, as far back as 19-3-2014. Now produced and shown to me and marked as Exhibit "**TT-9**" is a copy of a Reuters News Agency article dated 19-3-2014 on Allianz' confirmation that it had already started paying out MH370 insurance monies.

38.    By a press statement dated 25-2-2016, Mohammad Faiz Azmi, the administrator of MAS appointed pursuant to the MAS Act ("Administrator"), confirmed that :

> *"[MAS] has insurance coverage in place to meet its obligation to pay compensation to next-of-kin as per its obligations under applicable International Conventions and law"*

Now produced and shown to me and marked as Exhibit "**TT-10**" is a copy of a Bernama report dated 25-2-2016 containing the said statement.

39.    The KL Plaintiffs are concerned that MAS, if insurance monies were paid out in March 2014, and by reason of the transfers of its assets to MAB, may no longer have sufficient assets to satisfy any monetary judgment for damages that may subsequently be ordered by the Kuala Lumpur Court.

40.    I have also read a Press Statement dated 4-3-2014 made by the Minister of Transport on behalf of the Government of Malaysia. The relevant portion of that Statement, which was widely disseminated and globally reported as being the publicly declared position of the Government, reads as follows :-

> *"all the families and next-of-kin, regardless of nationality, file their claims under the Montreal Convention against MAS... The Government of Malaysia remains ever*

*conscious that the families and next-of-kin of the passengers and crew of MH370 need to be accorded their legitimate rights as provided under the relevant international instruments and domestic laws."*

Now produced and shown to me and marked as Exhibit "**TT-11**" is a copy of the Minister of Transport's Press Statement dated 4-3-2014.

## B.    APPLICABLE LEGAL REGIME FOR AN AWARD OF DAMAGES

41.    Unlike the courts of the United States, the Malaysian courts will have to deal with all issues of law and fact with regard to liability and damages, whether under the Montreal Convention or otherwise, in the MH370 litigation for the very first time. All arguments and submissions put forward by counsel for all the parties to that litigation will, by definition, be novel and untested.

42.    For this reason, it is not at all clear to any of the litigants in Malaysia how the Malaysian court will even begin to address the very complicated choice of law questions that will apply to this case, nor is it clear what damages law will apply to the wrongful death claims presented in this litigation, as described more fully below. For this and other reasons, there is a lack of certainty with respect to what the ultimate outcomes of the Malaysian proceedings will be, which might not be present in more mature jurisdictions such as the United States, England and Australia, which have the benefit of an established body of jurisprudence, in the form of reported Court decisions in cases on the *Montreal Convention* and airplane crashes.

43.     The extent of the inherent uncertainty stemming from the novelty of the _Montreal Convention_ in Malaysian Courts, is perhaps best illustrated by the fact that even the choice of law to be used in determining what heads of damages may be claimed by the Plaintiffs, and other relatives of MH370 passengers, and how those damages ought to be assessed, remains to be determined.

44.     This uncertainty arises because Section 5 of the Malaysian _Carriage by Air Act,_ 1974, which gives domestic force of law to the _Montreal Convention_ in Malaysia, excludes any Malaysian "_written law or rule of law_" on the liability for a fatal accident due to a wrongful act. The relevant portion of Section 5 reads :-

> "_5.     Any liability imposed by ... paragraph 1 of Article 17 of the Montreal Convention on a carrier in respect of the death of a passenger shall be in substitution for any liability of the carrier in respect of the death of that passenger either under any written law or any rule of law in force in Malaysia relating to fatal accidents due to a wrongful act, neglect or default..._"

45.     Malaysian law on the liability and calculation of damages for fatal accidents caused by wrongful acts is found in Section 7 of the _Civil Law Act_, 1956. On liability, Section 7 (1) provides :-

*Compensation to the family of a person for loss occasioned by his death*

*7. (1) **Whenever the death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would**, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, **the party who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured**, and although the death has been caused under such circumstances as amount in law to an offence under the Penal Code [Act 574].*

Now produced and shown to me and marked as Exhibit **"TT-12"** is a copy of Section 7 of the *Civil Law Act*, 1956.

46.    Malaysian law on calculation of damages in dependency claims, brought by surviving relatives to seek compensation for the monetary losses caused by the loss of support and services rendered to them by the deceased is thus summarized in Section 7 of the Civil Law Act, 1956.

47.    There are 2 principal heads of general damages under a dependency claim : loss of support (or dependency) and loss of service. Further, the spouse of a deceased or the parents of a deceased who was a minor and never married are also entitled to damages for bereavement in the sum of RM10,000-00 pursuant to Sections 7 (3A) and (3B).

48.    Loss of support is the most important component in any dependency awards. In assessing damages for it, the starting point would be Section 7 (3), which reads :-

> *"The damages which the party who shall be liable under subsection (1) to pay to the party for whom and for whose benefit the action is brought shall, subject to this section, be such **as will compensate the party for whom and for whose benefit the action is brought for any loss of support suffered** together with any reasonable expenses incurred as a result of the wrongful act, neglect or default of the party liable under subsection (1)…"*

(My emphasis)

49.    Damages for loss of support is quantified by multiplying a *"multiplier"* (or described in Section 7(3)(iv)(d) of the <u>*Civil Law Act*</u>, 1956 as "years of purchase"), *i.e.* the duration which the dependant would have been supported by the deceased, and a *"multiplicand"*, *i.e.* the annual amount of contribution each dependant was receiving prior to the deceased's death.

50.    The multiplier is fixed under Section 7 (3)(iv)(a) and (d), and calculated in the following manner :-

|  | **AGE OF THE DECEASED AT THE TIME OF DEATH** | **MULTIPLIER** |
|---|---|---|
| (i) | 30 and below | 16 |

| (ii) | Between 31 and 54 | [55 - (Age of the Deceased)] / 2 |
| (iii) | Above 55 | 0 |

51.     The deceased's loss of earnings is vital in determining what would be the applicable multiplicand. After determining the deceased's loss of earnings, the Courts will deduct therefrom a sum representing his living expenses, which may be specifically proved or admitted. Alternatively, if it is proved that the deceased would have incurred living expenses but the details of such expenses are lacking, the courts in such circumstances could follow the *"percentage approach"* where a discretionary percentage was being used to discount the loss of earnings of the deceased to reflect diminution of his living expenses: see e.g. *Rebecca Mathew & Ors v Syarikat Kerjasama Serbaguna Gema Wong Siong Bhd* [1990] 1 MLJ 443. Now produced and shown to me and marked as Exhibit **"TT-13"** is a copy of the reported decision in *Rebecca Mathews*.

52.     Dependants can also claim for ***reasonable expenses incurred*** as a result of the wrongful act, which includes expenses incurred in substitution of the services of a wife to her children.

53.     The Malaysian position on damages if applied to the Plaintiff, Phillip Wood (assuming he is 50 years old as at the time of his passing in March 2014), would result in 9 dependency claim brought by his dependants for loss of support being assessed from a starting figure of (55 – 50) / 2 = **2.5 times his annual income.**

(i)    **MAS' Position : Malaysian law applies**

54.    MAS at Paragraph 50 of their Defence filed in the KL Suit has expressly taken the position that any damages awarded to the Plaintiffs in the KL Suit should be calculated using Malaysian law on damages, found in Section 7 of the *Civil Law Act*, 1956.

(ii)    **Plaintiffs' Position : Malaysian law does not apply**

55.    As Section 5 of our *Carriage by Air Act*, 1974 expressly excludes the use of Malaysian statutory law on damages (that is, Sections 7 and 8 of our *Civil Law Act*, 1956), we have no alternative statutory law on the calculation of damages which could be used in a Montreal Convention claim in our courts. As a result, in my opinion, common law and equity would be applied to fill the lacuna, that is, judge made law.

56.    Malaysia, as a member of the Commonwealth, inherited its laws and legal system from England, and is part of the wider common law world. Our Courts apply the doctrine of *stare decisis*, and have always referred to and/or adopted English judge-made law. Hence, in such a situation, which is common in our courts, reference is made to the reputable common law systems for guidance and precedent. Invariably, English law, followed by other Commonwealth countries such as Australia, Canada, Singapore, Hong Kong and India. Hence our consideration of the likely first port of call for a Malaysian Court : the English damages regime.

57.    It should be noted that Section 3 (1) of the _Civil Law Act_, 1956 provides that _"save so far as other provision has been made or may hereafter be made by any written law in force in Malaysia, the Court shall...apply the common law of England and the rules of equity as administered in England on 7 April 1956"_. No provision has been made by any written law in force in Malaysia which deals with assessment of damages for claims under the Montreal Convention.  Now produced and shown to me and marked as Exhibit **"TT-14"** is a copy of the Section 3(1) of the _Civil Law Act, 1956_.

### (iii)    Damages in England

58.    Section 3 of the _Carriage by Air Act_, 1961 of England, provides that damages for loss of life awarded by their courts for Montreal Convention claims are calculated on the same basis as damages awarded in wrongful death claims under their _Fatal Accidents Act_, 1976, that is, damages for loss of support and damages for loss of services. Now produced and shown to me and marked respectively as Exhibit **"TT-15"** is a copy of the Section 3 of the English _Carriage by Air Act_, 1961

59.    This approach requires their courts to use the 'Ogden' actuarial tables (which have been approved by the England's apex court, the House of Lords) to calculate the dependency claims for loss of support. The common factual assumptions relied on by the English Courts are that 75% of the deceased's income will be used to support their dependents (consistent with the 'rule of thumb' commonly used by the English courts), and the use of a discount rate of 2.5% to take into account that damages will be paid in a lump sum following trial as opposed to by way of

future instalment payments. Now produced and shown to me and marked as Exhibit **"TT-16"** is a copy of the 2016 Ogden Actuarial Tables.

60.     Hence, for easy reference, the formula used in England can be simplified as follows :-

**Loss of Support = 75% of annual income x 'Ogden' multiplier**

| AGE OF THE DECEASED AT THE TIME OF DEATH | OGDEN MULTIPLIER |
|:---:|:---:|
| 30 | 29.6 |
| 55 | 20.56 |

61.     The English Courts customarily also apply a slight adjustment to account for contingencies other than mortality (also known as taking into account the vicissitudes of life) and allowance for the risk that the deceased might have died of other causes in between the dates of death and conclusion of the trial. I have not considered such factors herein because the relevant facts will only emerge during trial.

62.     The English position on damages if applied to Phillip Wood (assuming he is 55 years old at the date of the trial) would result in his dependency claim for loss of support being assessed from a starting figure of **15 times his annual income.**

(iv)    **Damages in Singapore**

63.    Damages for wrongful act causing death or dependency claims in Singapore are governed by Sections 20 to 22 of the *Civil Law Act (Cap. 43)* ("Singapore Act"). In every action involving a claim for damages for wrongful act causing death, the Court may award such damages as are proportionate to the losses resulting from the death to the dependents. Now produced and shown to me and marked as Exhibit **"TT-17"** is a copy of Sections 20 to 22 of the *Civil Law Act (Cap. 43)*.

64.    Singapore uses the same approach as England and Malaysia in assessing damages for wrongful acts causing death. However, the heads of damages which are awarded by Singapore Courts are broader than both England and Malaysia. Hence, in a recent decision of the Singapore Court of Appeal (Singapore's apex court) in *Zhu Xiu Chun (alias Mying Mying Kyi) v Rockwills Trustee Ltd* [2016] 5 SLR 412, damages were awarded for :-

(i)    Loss of support (dependency)

(ii)    Loss of service;

(iii)    Funeral expenses;

(iv)    Coroners' inquiry fees;

(v)    Any monies which the deceased would have been likely to give the dependant claimants by way of maintenance, a gift, bequest or devise, or inheritance;

(vi)    Costs of family holidays which the deceased might have taken the dependants on; and

(vii)   Increased spending money for dependent minors once they reach university age (the Court assumed those children would attend university).

Now produced and shown to me and marked as Exhibit **"TT-18"** is a copy of the reported decision in *Zhu Xiu Chun*.

65.    I am not able to provide an estimate of damages which might be awarded to the dependents of Plaintiff Phillip Wood using Singapore law, but I can say that it will be higher, and would include more heads under which damages would be awarded under Malaysian law.

66.    Needless to say, the resolution of these choice of law questions will be extremely complicated, their resolution is at this point unknown, and there is no precedent in Malaysia by which we might reasonably predict how the Malaysian Court hearing the KL Suit and other MH370 claims brought in this jurisdiction, will carry out its choice of law analysis, and which state's law on damages which will be applied. Further, having regard to what is at stake, any reasoned decision of a trial judge in the Kuala Lumpur High Court will be subject to appellate challenge, first, in the Court of Appeal and finally in our apex court, the Federal Court.  This makes the task of prediction even more problematic. Hence, I cannot render an opinion on how the Malaysian Court will rule on any of these issues.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on this 21st day of July, 2017.

..................................................

**TOMMY THOMAS**

**101, Jalan Ara, Bangsar Baru**

**59100 Bangsar**

**Kuala Lumpur**

**Malaysia**

**Tel: 603-2287 3540**

**Fax: 603-2284 8892**

**E-mail: tt@tommythomas.net**

Before me,

..................................
Commissioner for Oaths

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

24 of 24                    2 1 JUL 2017

12.30 p.m.

EXHIBIT "TT-1"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

_____

MDL Docket No. 2712

_____
Misc. No. 16-1184 (KBJ)

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-1"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
COMMISSIONER FOR OATHS
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

Exhibit _____TT- 1_____                          **25**

# PROFILE

As a barrister of 40 years standing, Tommy Thomas has had the privilege of appearing as counsel in landmark cases in various branches of the law in all the courts of Malaysia, including the Privy Council in London, which was Malaysia's highest court until 1985. Thomas has had more than 150 reported cases and countless unreported cases. He has been singled out consistently and regularly as one of Malaysia's leading litigation lawyers by independent international publications such as The Asia Pacific Legal 500, Which Lawyer, Who's Who Legal (The International Who's Who of Business Lawyers), Commercial Litigation Lawyers of Asia and Chambers Asia.

In the corporate field, he has appeared in Company, Liquidation, Receivership and Insolvency matters. In the commercial sphere, he has acted in Banking, Hire Purchase, Contract, Intellectual Property, Sale of Goods, Wills, Trusts and Land Law cases. Thomas has appeared in complex litigation involving bonds and other sophisticated financial instruments. In Public Law, Thomas specialises in constitutional and administrative law cases. He has also been very active in statutory interpretation disputes ranging from petroleum, asset management, securities law and local government.

Thomas has acted in groundbreaking high profile litigation involving two State Governments in relation to their off shore oil and gas claims. He has also acted for two other State Governments in constitutional and judicial review disputes. He has represented regulatory authorities as lead counsel in their complicated civil litigation matters at the apex court. Thomas is regularly consulted by other law firms and appointed senior counsel in their litigation. He often appears as lead counsel for the Malaysian Bar in intricate and controversial cases.

He is presently involved in the largest litigation arising out of the ill-fated MH 370 disappearance in 2014, the trial of which will commence in the High Court at Kuala Lumpur.

He was a member of the Bar Council for over a decade. He was Editor of its publication, Insaf from 1984 to 1987 and Secretary in 1995-1997.

Thomas regards himself as a social scientist, having abiding interests in economics, politics and history. He has written extensively and presented papers on these subjects at various fora. He has published 2 books of essays on these subjects.

**26**

# CURRICULUM VITAE

| | | |
|---|---|---|
| **NAME** | : | **TOMMY THOMAS** |
| **BORN** | : | 21st May 1952, Kuala Lumpur |
| **ADDRESS** | : | 101, Jalan Ara, Bangsar, 59100 Kuala Lumpur, Malaysia. |
| | : | Tel.:    60-3-2287 3540 |
| | | Fax.:    60-3-2284 8892 |
| | | Email :  tt@tommythomas.net |

**EDUCATION :**

SCHOOL

1959 - 1963   Pasar Road English School (1)

1964 - 1969   Victoria Institution

TERTIARY

1970 - 1973   University of Manchester, England. LL.B.

1973 - 1974   College of Law, London,
England (Bar Finals).

1974 - 1975   London School of Economics &
Political Science, England.
M.Sc. (International Relations).

**PROFESSIONAL
QUALIFICATIONS:**

1974   Called to the English Bar : Barrister - Middle
Temple.

1976   Called to the Malayan Bar.

1989   Called to the Singapore Bar.

1990   Called to the British Columbia Bar (Canada)

**27**

| | 1990 | Called to the British Columbia Bar (Canada) |

**WORKING
EXPERIENCE:**

| | 1975 - 1976 | Chambering Pupil |
| | | Skrine & Co. |
| | 1976 - 1982 | Legal Assistant |
| | | Skrine & Co. |
| | 1982 - 1988 | Partner |
| | | Skrine & Co. |
| | 1989 - 1991 | Chambering Pupil & Associate |
| | | Russell & Dumolin, |
| | | Vancouver, Canada. |
| | 1992 - 1999 | Partner |
| | | Skrine & Co. |
| | From 2000 | Partner |
| | | Tommy Thomas |

**PROFESSIONAL
ASSOCIATIONS** : Bar Council

Member 1984 - 1988; 1993 – 2001

: Member of the Bar (Disciplinary Proceedings)

Review Committee 1985 - 1986 under the Chairmanship
of Tun Hussein Onn

: Editor of Insaf (Publication of the Bar Council).
1986 – 1987

: Secretary, Bar Council
1995 – 1997

:      Represented the Bar Council on the
- High Level Finance Committee on Corporate Governance appointed by the Minister of Finance - 1997 to 1998.

- Committee established by the Official Receiver - 1995 to 1997.

- Committee set up by the Registrar of Companies - 1995 to 1997.

:      Chairman of Company Law Forum, 2000 – 2001.

:      Malaysian Institute of Corporate Governance.
- Director, 1995-2001.

:      United Nations Development Programme (UNDP).
- Senior Consultant, Corporate Governance Initiative, 2000 on the Asian Financial Crisis of 1997/8.

:      Malaysian Economic Association.
Life Member.

:      Malaysian Branch of Royal Historical Society.
Life Member.

:      Published two books of essays in law and the social sciences.

\* \* \* \* \* \*

EXHIBIT "TT-2"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

---

MDL Docket No. 2712

---

Misc. No. 16-1184 (KBJ)

---

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16−cv−01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16−cv−01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16−cv−01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-2"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

Exhibit _TT - 2_



# LAWS OF MALAYSIA

———

ONLINE VERSION OF UPDATED
TEXT OF REPRINT

———

## Act 148

# CARRIAGE BY AIR ACT 1974

*As at 1 June 2015*

2

# CARRIAGE BY AIR ACT 1974

Date of Royal Assent       ...     ...     ...     30 July 1974

Date of Publication in the *Gazzette*    ......    ...     29 August 1974

Latest amendment made by
Act A1310 which came
into operation on      ...     ...     ...     ...     8 October 2007

### *PREVIOUS REPRINTS*

| | | | | |
|---|---|---|---|---|
| *First Reprint* | ... | ... | ... | *1997* |
| *Second Reprint* | ... | ... | ... | *2001* |
| *Third Reprint* | ... | ... | ... | *2006* |

3

# LAWS OF MALAYSIA

## Act 148

## CARRIAGE BY AIR ACT 1974

———————

### ARRANGEMENT OF SECTIONS

———————

Section

1. Short title, application and commencement

2. Interpretation

3. Convention to have force of law

4. Designation of State Parties

5. Fatal accidents

6. Limitations of liability

7. Time for bringing proceedings

8. Contributory negligence

9. Power to exclude aircraft in use for military purposes

10. Actions against State Parties

11. Supplementary Convention to have force of law

11A. Amended Convention and Montreal Convention to have force of law

12. Application to carriage by air not governed by Carriage by Air Conventions

13. Act to bind Federal and State Governments

14. Repeal

FIRST SCHEDULE

SECOND SCHEDULE

THIRD SCHEDULE

FOURTH SCHEDULE

FIFTH SCHEDULE

SIXTH SHEDULE

5

## LAWS OF MALAYSIA

### Act 148

### CARRIAGE BY AIR ACT 1974

An Act to give effect to certain Conventions relating to carriage by air and to provide for matters connected therewith and ancillary thereto.

*[19 December 1974]*

**BE IT ENACTED** by the Seri Paduka Baginda Yang di-Pertuan Agong with the advice and consent of the Dewan Negara and Dewan Rakyat in Parliament assembled, and by the authority of the same, as follows:

**Short title, application and commencement**

**1.** (1) This Act may be cited as the Carriage By Air Act 1974 and shall extend throughout Malaysia.

(2) Except as provided in subsection (3), this Act shall come into force on such day as the Yang di-Pertuan Agong may by order certify to be the day on which the Convention comes into force as regards Malaysia.

(3) Section 11 shall come into force on such day as the Yang di-Pertuan Agong may by order certify to be the day on which the Supplementary Convention comes into force as regards Malaysia.

(4) Section 11A shall come into force on such day as the Yang di-Pertuan Agong may by order certify to be the day on which the Amended Convention and the Montreal Convention come into force as regards Malaysia.

**Interpretation**

**2.**  In this Act, unless the context otherwise requires —

"Amended Convention" means the Convention as further amended by the Montreal Protocol No. 4 of 1975 as set out in the Fifth Schedule;

"Carriage by Air Conventions" means the Convention, the Supplementary Convention, the Amended Convention and the Montreal Convention;

"Convention" means the Convention for the unification of certain rules relating to international carriage by air known as "the Warsaw Convention as amended at The Hague 1955" as set out in the First Schedule;

"court" includes (in an arbitration allowed by the Convention) an arbitrator;

"Minister" means the Minister responsible for civil aviation;

"Montreal Convention" means the Convention, signed at Montreal on the 28 May 1999, for the unification of certain rules relating to international carriage by air, as set out in the Sixth Schedule;

"Montreal Protocol No. 4 of 1975" means the protocol, signed at Montreal on 25 September 1975, to amend the Warsaw Convention as amended at the Hague;

"State Party" means, a High Contracting Party in relation to the Convention and the Amended Convention, or a State Party in relation to the Montreal Convention, as the case may be;

"Supplementary Convention" means the Convention, supplementary to the Warsaw Convention, signed at Guadalajara on the 18 September 1961, for the unification of certain rules relating to

*Carriage by Air*                    7

international carriage by air performed by a person other than the contracting carrier, as set out in the Second Schedule.

**Convention to have force of law**

**3.** (1) Subject to this section, the provisions of the Convention shall, so far as they relate to the rights and liabilities of carriers, carriers' servants and agents, passengers, consignors, consignees and other persons, and subject to the provisions of this Act, have the force of law in Malaysia in relation to any carriage by air to which the Convention applies, irrespective of the nationality of the aircraft performing that carriage.

(2)   This section shall not apply so as to affect rights or liabilities arising out of an occurrence before the coming into force of this section.

**Designation of State Parties**

**4.** (1) The Yang di-Pertuan Agong may by order from time to time certify who are the State Parties to the Carriage by Air Conventions, in respect of what territories they are respectively parties and to what extent they have availed themselves of the provisions of the Additional Protocol at the end of the Convention or Additional Protocol at the end of the Amended Convention or Article 57 of the Montreal Convention, and any such order shall, except in so far as it has been superseded by a subsequent order, be conclusive evidence of the matters so certified.

(1A) The Yang di-Pertuan Agong may by order from time to time certify any revision of the limits of liability established pursuant to Article 24 of the Montreal Convention.

(2)   Paragraph (2) of Article 40ᴀ of the Convention and the Amended Convention shall not be read as extending references to the Convention or the Amended Convention to the territory of a State

Party (except such as are references to the territory of any State, whether a State Party or not) to include any territory in respect of which that State Party is not a party.

(3)   An order made under this section shall, except so far as it has been superseded by a subsequent order, be conclusive evidence of the matters so certified.

(4)   An order under this section may contain such transitional and other consequential provisions as appear to the Yang di-Pertuan Agong to be expedient.

**Fatal accidents**

**5.**  Any liability imposed by Article 17 of the Convention, Article 17 of the Amended Convention or paragraph 1 of Article 17 of the Montreal Convention on a carrier in respect of the death of a passenger shall be in substitution for any liability of the carrier in respect of the death of that passenger either under any written law or any rule of law in force in Malaysia relating to fatal accidents due to a wrongful act, neglect or default and the provisions set out in the Third Schedule shall have effect with respect to the person by and for whose benefit the liability so imposed is enforceable and with respect to the manner in which it may be enforced.

**Limitations of liability**

**6.** (1) It is hereby declared that the limitations on liability in Article 22 of the Convention, Article 22 of the Amended Convention and Articles 21, 22 and 44 of the Montreal Convention apply whatever the nature of the proceedings by which liability may be enforced and that, in particular—

> *(a)*   those limitations apply where proceedings are brought by a tortfeasor to obtain a contribution from another torfeasor; and

*Carriage by Air*                                   9

(b)   the limitation for each passenger in paragraph (1) of Article 22 of the Convention, paragraph (1) of Article 22 of the Amended Convention and Article 21 and paragraph 1 of Article 22 of the Montreal Convention applies to the aggregate liability of the carrier in all proceedings which may be brought against the carrier under the appropriate law in force in the relevant part of Malaysia, together with any proceedings brought against the carrier outside Malaysia.

(2)   A court before which proceedings are brought to enforce a liability which is limited by Article 22 of the Convention, Article 22 of the Amended Convention or Articles 21, 22 and 44 of the Montreal Convention may at any stage of the proceedings make any such order as appears to the court to be just and equitable in view of the provisions of that Article and of any other proceedings which have been, or are likely to be, commenced in Malaysia or elsewhere to enforce the liability in whole or in part.

(3)   Without prejudice to subsection (2), a court before which proceedings are brought to enforce a liability which is limited by Article 22 of the Convention, Article 22 of the Amended Convention or Articles 21, 22 and 44 of the Montreal Convention shall, where the liability is, or may be, partly enforceable in other proceedings in Malaysia or elsewhere, have jurisdiction to award an amount less than the court would have awarded if the limitation applied solely to the proceedings before the court, or to make any part of its award conditional on the result of any other proceedings.

(4)   The Minister may, from time to time, by order published in the *Gazette* specify the respective amounts which for the purposes of Article 22 of the Convention, and, in particular of paragraph (5) of that Article, are to be taken as equivalent to the sums expressed in francs which are mentioned in that Article.

(5)   References in this section to Article 22 of the Convention or the Amended Convention include, subject to any necessary

10                    *Laws of Malaysia*                    **ACT 148**

modifications, references to that Article as applied by Article 25A of the Convention or the Amended Convention.

(6)   In paragraphs (1)*(a)* and *(b)* and in subsections (2) and (3) references to Article 22 of the Convention or the Amended Convention shall include, subject to any necessary modifications, references to Article VI of the Supplementary Convention.

**Time for bringing proceedings**

**7.** (1)   No action against a carrier's servant or agent which arises out of damage to which any of the Carriage by Air Conventions relates shall, if he was acting within the scope of his employment, be brought after more than two years, reckoned from the date of arrival at the destination or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

(2)   Article 29 of the Convention, Article 29 of the Amended Convention and Article 35 of the Montreal Convention  shall not be read as applying to any proceedings for contribution between tortfeasors, but no action shall be brought by a tortfeasor to obtain a contribution from a carrier in respect of a tort to which Article 29 of the Amended Convention and Article 35 of the Montreal Convention  applies after the expiration of two years from the time when judgment is obtained against the person seeking to obtain the contribution.

(3)   Subsections (1) and (2) and Article 29 of the Convention, Article 29 of the Amended Convention and Article 35 of the Montreal Convention shall have effect as if references in those provisions to an action included references to an arbitration; and the provisions of the appropriate law in force in the relevant part of Malaysia which determine the time at which an arbitration is deemed to be commenced shall apply for the purposes of this subsection.

(4)    In this section references to a carrier include references to an actual carrier as defined in paragraph (*c*) of Article I of the Supplementary Convention as well as to a contracting carrier as defined in paragraph (*b*) of that Article and to an actual carrier as defined in Article 39 of the Montreal Convention.


## Contributory negligence

**8.**    It is hereby declared that for the purposes of Article 21 of the Convention, Article 21 of the Amended Convention and Article 20 of the Montreal Convention, section 12 of the Civil Law Act 1956 [*Act 67*] is a provision of the law of Malaysia under which a court may exonerate the carrier wholly or partly from his liability.


## Power to exclude aircraft in use for military purposes

**9.** (1) The Yang di-Pertuan Agong may from time to time by order direct that this section shall apply, or shall cease to apply, to Malaysia or any other State, specified in the order.

(2)    The Carriage By Air Conventions shall not apply to the carriage of persons, cargo and baggage for the military authorities of a State to which this section applies in aircraft registered in that State if the whole capacity of the aircraft has been reserved by or on behalf of those authorities.


## Actions against State Parties

**10.** (1) Each State Party to any of the Carriage by Air Conventions shall for the purposes of any action brought in a court in Malaysia in accordance with Article 28 of the Convention, Article 28 of the Amended Convention of Articles 33 and 46 of the Montreal Convention to enforce a claim in respect of carriage undertaken by him, be deemed to have submitted to the jurisdiction of that court, and accordingly rules of court may provide for the manner in which

any action is to be commenced and carried on; but nothing in this section shall authorize the issue of execution against the property of any State Party to any of the Carriage by Air Conventions.

(1A)  This section shall not apply to a State Party who has availed himself of the Additional Protocol at the end of the Convention or the Additional Protocol at the end of the Amended Convention in relation to Article 28 of the Convention or Article 28 of the Amended Convention, or of Article 57 of the Montreal Convention in relation to Articles 33 and 46 of the Montreal Convention.

(2)    The reference to Article 28 of the Convention and Article 28 of the Amended Convention in this section includes a reference to Article VIII of the Supplementary Convention.

**Supplementary Convention to have force of law**

**11.** (1) Subject to this section, the provisions of the Supplementary Convention shall, so far as they relate to the rights and liabilities of carriers, carriers' servants and agents, passengers, consignors, consignees and other persons, and subject to the provisions of this Act, have the force of law in Malaysia in relation to any carriage by air to which the Supplementary Convention applies, irrespective of the nationality of the aircraft performing that carriage.

(2)    This section shall not apply so as to affect rights or liabilities arising out of an occurrence before the coming into force of this section.

**Amended Convention and Montreal Convention to have force of law**

**11A.** (1) Subject to this section, the provisions of the Amended Convention and the Montreal Convention shall, so far as they relate to the rights and liabilities of carriers, carriers' servants and agents, passengers, consignors, consignees and other persons, and subject to the provisions of this Act, have the force of law in Malaysia in

relation to any carriage by air to which the Amended Convention and the Montreal Convention apply, irrespective of the nationality of the aircraft performing that carriage.

(2)    This section shall not apply so as to affect rights or liabilities arising out of an occurrence before the coming into force of this section.

**Application to carriage by air not governed by Carriage by Air Conventions**

**12.** (1) The Yang di-Pertuan Agong may by order apply the provisions of the Carriage by Air Conventions together with any other provisions of this Act, to carriage by air, not being carriage by air to which the relevant Convention applies of such description as may be specified in the order, subject to such exceptions, adaptations and modifications, if any, as may be so specified.

(2)    Any order made under this section may contain such transitional and other consequential provisions as appear to the Yang di-Pertuan Agong to be expedient.

(3)    Any order made under subsection (1) or (2) shall be laid before both Houses of Parliament as soon as may be after it is made.

**Act to bind Federal and State Governments**

**13.** This Act shall bind the Governments of Malaysia and every State thereof.

**Repeal**

**14.** (1) The Enactments specified in the Fourth Schedule are repealed.

(2)    The Carriage By Air Act 1932 [*22 & 23 Geo. 5c. 36*], the

14                    *Laws of Malaysia*                    **ACT 148**

Carriage By Air Act 1961 [*9 & 10 Eliz. 2c. 27*], the Carriage By Air
(Supplementary Provisions) Act 1962 [*10 & 11 Eliz. 2c. 43*], all of
the United Kingdom, and all orders and other subsidiary legislation
made under those Acts shall cease to have effect in any part of
Malaysia, and such cessation shall be deemed to be a repeal for the
purposes of the Interpretation Acts 1948 and 1967 [*Act 388*].

---

FIRST SCHEDULE

[Section 2]

THE WARSAW CONVENTION AS AMENDED AT THE HAGUE 1955

CONVENTION

FOR THE UNIFICATION OF CERTAIN RULES RELATING TO
INTERNATIONAL CARRIAGE BY AIR

CHAPTER I

SCOPE—DEFINITIONS

**Article 1**

(1)  This Convention applies to all international carriage of persons, baggage, or
cargo performed by aircraft for reward. It applies equally to gratuitous carriage by
aircraft performed by an air transport undertaking.

(2)  For the purposes of this Convention, the expression international carriage
means any carriage in which, according to the agreement between the parties, the
place of departure and the place of destination, whether or not there be a break in
the carriage or a transhipment, are situated either within the territories of two High
Contracting Parties or within the territory of a single High Contracting Party if
there is an agreed stopping place within the territory of another State, even if that
State is not a High Contracting Party. Carriage between two points within the
territory of a single High Contracting Party without an agreed stopping place within
the territory of another State is not international carriage for the purposes of this
Convention.

(3)  Carriage to be performed by several successive air carriers is deemed, for the purposes of this Convention, to be one undivided carriage if it has been regarded by the parties as a single operation, whether it had been agreed upon under the form of a single contract or of a series of contracts, and it does not lose its international character merely because one contract or a series of contracts is to be performed entirely within the territory of the same State.

### Article 2

(1)  This Convention applies to carriage performed by the State or by legally constituted public bodies provided it falls within the conditions laid down in Article 1.

(2)  This Convention shall not apply to carriage of mail and postal packages.

CHAPTER II

DOCUMENTS OF CARRIAGE

*Section 1*—PASSENGER TICKET

### Article 3

(1)  In respect of the carriage of passengers a ticket shall be delivered containing:

> *(a)* an indication of the places of departure and destination;

> *(b)* if the places of departure and destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place;

> *(c)* a notice to the effect that, if the passenger's journey involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers for death or personal injury and in respect of loss of or damage to baggage.

(2)  The passenger ticket shall constitute *prima facie* evidence of the conclusion and conditions of the contract of carriage. The absence, irregularity or loss of the passenger ticket does not affect the existence or the validity of the contract of carriage which shall, none the less, be subject to the rules of this Convention. Nevertheless, if, with the consent of the carrier, the passenger embarks without a passenger ticket having been delivered, or if the ticket does not include the notice

16                     *Laws of Malaysia*                     **ACT 148**

required by subparagraph (1)*(c)* of this Article, the carrier shall not be entitled to avail himself of the provisions of Article 22.

*Section 2*—BAGGAGE CHECK

**Article 4**

(1)  In respect of the carriage of registered baggage, a baggage check shall be delivered, which, unless combined with or incorporated in a passenger ticket which complies with the provisions of Article 3, paragraph (1), shall contain:

> *(a)* an indication of the places of departure and destination;
>
> *(b)* if the places of departure and destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place;
>
> *(c)* a notice to the effect that, if the carriage involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers in respect of loss of or damage to baggage.

(2)  The baggage check shall constitute *prima facie* evidence of the registration of the baggage and of the conditions of the contract of carriage. The absence, irregularity or loss of the baggage check does not affect the existence or the validity of the contract of carriage which shall, none the less, be subject to the rules of this Convention. Nevertheless, if the carrier takes charge of the baggage without a baggage check having been delivered or if the baggage check (unless combined with or incorporated in the passenger ticket which complies with Article 3, subparagraph (1)*(c)*) does not include the notice required by subparagraph (1)*(c)* of this Article he shall not be entitled to avail himself of Article 22, paragraph (2).

*Section 3*—AIR WAYBILL

**Article 5**

(1)  Every carrier of cargo has the right to require the consignor to make out and hand over to him a document called an "air waybill"; every consignor has the right to require the carrier to accept this document.

*Carriage by Air*                    17

(2) The absence, irregularity or loss of this document does not affect the existence or the validity of the contract of carriage which shall, subject to Article 9, be none the less governed by the rules of this Convention.

### Article 6

(1) The air waybill shall be made out by the consignor in three original parts and be handed over with the cargo.

(2) The first part shall be marked "for the carrier", and shall be signed by the consignor. The second part shall be marked "for the consignee"; it shall be signed by the consignor and by the carrier and shall accompany the cargo. The third part shall be signed by the carrier and handed by him to the consignor after the cargo has been accepted.

(3) The carrier shall sign prior to the loading of the cargo on board the aircraft.

(4) The signature of the carrier may be stamped; that of the consignor may be printed or stamped.

(3)    If, at the request of the consignor, the carrier makes out the air waybill, he shall be deemed, subject to proof to the contrary, to have done so on behalf of the consignor.

### Article 7

The carrier of cargo has the right to require the consignor to make out separate waybills when there is more than one package.

### Article 8

The air waybill shall contain:

   *(a)* an indication of the places of departure and destination;

   *(b)* if the places of departure and destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place;

   *(c)* a notice to the consignor to the effect that, if the carriage involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers in respect of loss of or damage to cargo.

### Article 9

If, with the consent of the carrier, cargo is loaded on board the aircraft without an air waybill having been made out, or if the air waybill does not include the notice required by Article 8, paragraph *(c),* the carrier shall not be entitled to avail himself of Article 22, paragraph (2).

### Article 10

(1) The consignor is responsible for the correctness of the particulars and statements relating to the cargo which he inserts in the air waybill.

(2) The consignor shall indemnify the carrier against all damage suffered by him, or by any other person to whom the carrier is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements furnished by the consignor.

### Article 11

(1) The air waybill is *prima facie* evidence of the conclusion of the contract, of the receipt of the cargo and of the conditions of carriage.

(2) The statements in the air waybill relating to the weight, dimensions and packing of the cargo, as well as those relating to the number of packages, are *prima facie* evidence of the facts stated; those relating to the quantity, volume and condition of the cargo do not constitute evidence against the carrier except so far as they both have been and are stated in the air waybill to have been, checked by him in the presence of the consignor, or relate to the apparent condition of the cargo.

### Article 12

(1) Subject to his liability to carry out all his obligations under the contract of carriage, the consignor has the right to dispose of the cargo by withdrawing it at the aerodrome of departure or destination, or by stopping it in the course of the journey on any landing, or by calling for it to be delivered at the place of destination or in the course of the journey to a person other than the consignee named in the air waybill, or by requiring it to be returned to the aerodrome of departure. He must not exercise this right of disposition in such a way as to prejudice the carrier or other consignors and he must repay any expenses occasioned by the exercise of this right.

(2) If it is impossible to carry out the orders of the consignor the carrier must so inform him forthwith.

(3) If the carrier obeys the orders of the consignor for the disposition of the cargo without requiring the production of the part of the air waybill delivered to the

latter, he will be liable, without prejudice to his right of recovery from the consignor, for any damage which may be caused thereby to any person who is lawfully in possession of that part of the air waybill.

(4)  The right conferred on the consignor ceases at the moment when that of the consignee begins in accordance with Article 13. Nevertheless, if the consignee declines to accept the waybill or the cargo, or if he cannot be communicated with, the consignor resumes his right of disposition.

## Article 13

(1)  Except in the circumstances set out in the preceding Article, the consignee is entitled, on arrival of the cargo at the place of destination, to require the carrier to hand over to him the air waybill and to deliver the cargo to him, on payment of the charges due and on complying with the conditions of carriage set out in the air waybill.

(2)  Unless it is otherwise agreed, it is the duty of the carrier to give notice to the consignee as soon as the cargo arrives.

(3)  If the carrier admits the loss of the cargo, or if the cargo has not arrived at the expiration of seven days after the date on which it ought to have arrived, the consignee is entitled to put into force against the carrier the rights which flow from the contract of carriage.

## Article 14

The consignor and the consignee can respectively enforce all the rights given them by Articles 12 and 13, each in his own name, whether he is acting in his own interest or in the interest of another, provided that he carries out the obligations imposed by the contract.

## Article 15

(1)  Articles 12, 13 and 14 do not affect either the relations of the consignor or the consignee with each other or the mutual relations of third parties whose rights are derived either from the consignor or from the consignee.

(2)  Articles 12, 13 and 14 can only be varied by express provision in the air waybill.

(3)  Nothing in this Convention prevents the issue of a negotiable air waybill.

20                   *Laws of Malaysia*                   **ACT 148**

### Article 16

(1) The consignor must furnish such information and attach to the air waybill such documents as are necessary to meet the formalities of customs, octroi or police before the cargo can be delivered to the consignee. The consignor is liable to the carrier for any damage occasioned by the absence, insufficiency or irregularity of any such information or documents, unless the damage is due to the fault of the carrier or his servants or agents.

(2) The carrier is under no obligation to enquire into the correctness or sufficiency of such information or documents.

CHAPTER III

LIABILITY OF THE CARRIER

### Article 17

The carrier is liable for damage sustained in the event of the death or wounding of a passenger or any bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

### Article 18

(1) The carrier is liable for damage sustained in the event of the destruction or loss of, or of damage to, any registered baggage or any cargo, if the occurrence which caused the damage so sustained took place during the carriage by air.

(2) The carriage by air within the meaning of the preceding paragraph comprises the period during which the baggage or cargo is in charge of the carrier, whether in an aerodrome or on board an aircraft, or, in the case of a landing outside an aerodrome, in any place whatsoever.

(3) The period of the carriage by air does not extend to any carriage by land, by sea or by river performed outside an aerodrome. If, however, such a carriage takes place in the performance of a contract for carriage by air, for the purpose of loading, delivery or transhipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the carriage by air.

### Article 19

The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.

### Article 20

The carrier is not liable if he proves that he and his servants or agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures.

### Article 21

If the carrier proves that the damage was caused by or contributed to by the negligence of the injured person the court may, in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability.

### Article 22

(1) In the carriage of persons the liability of the carrier for each passenger is limited to the sum of two hundred and fifty thousand francs. Where, in accordance with the law of the court seised of the case, damages may be awarded in the form of periodical payments the equivalent capital value of the said payments shall not exceed two hundred and fifty thousand francs. Nevertheless, by special contract, the carrier and the passenger may agree to a higher limit of liability.

(2) *(a)* In the carriage of registered baggage and of cargo, the liability of the carrier is limited to a sum of two hundred and fifty francs per kilogramme, unless the passenger or consignor has made, at the time when the package was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that that sum is greater than the passenger's or consignor's actual interest in delivery at destination.

*(b)* In the case of loss, damage or delay of part of the registered baggage or cargo, or of any object contained therein, the weight to be taken into consideration in determining the amount to which the carrier's liability is limited shall be only the total weight of the package concerned. Nevertheless, when the loss, damage or delay of a part of the registered baggage or cargo, or of an object contained therein, affects the value of other packages covered by the same baggage check or the same air waybill, the total weight of such package shall also be taken into consideration in determining the limit of liability.

(3) As regards objects of which the passenger takes charge himself the liability of the carrier is limited to five thousand francs per passenger.

(4) The limits prescribed in this Article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff. The foregoing provision shall not apply if the amount of the damages awarded,

excluding court costs and other expenses of the litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later.

(5) The sums mentioned in francs in this Article shall be deemed to refer to a currency unit consisting of sixty-five and a half milligrammes of gold of millesimal fineness nine hundred. These sums may be converted into national currencies in round figures. Conversion of the sums into national currencies other than gold shall, in case of judicial proceedings, be made according to the gold value of such currencies at the date of the judgment.

### Article 23

(1) Any provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this Convention shall be null and void, but the nullity of any such provision does not involve the nullity of the whole contract which shall remain subject to the provisions of this Convention.

(2) Paragraph (1) of this Article shall not apply to provisions governing loss or damage resulting from the inherent defect, quality or vice of the cargo carried.

### Article 24

(1) In the cases covered by Articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention.

(2) In the cases covered by Article 17 the provisions of the preceding paragraph also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

### Article 25

The limits of liability specified in Article 22 shall not apply, if it is proved that the damage resulted from an act or omission of the carrier, his servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result; provided that, in the case of such act or omission of a servant or agent, it is also proved that he was acting within the scope of his employment.

### Article 25A

(1) If an action is brought against a servant or agent of the carrier arising out of damage to which this Convention relates, such servant or agent, if he proves that he acted within the scope of his employment, shall be entitled to avail himself of the limits of liability which that carrier himself is entitled to invoke under Article 22.

*Carriage by Air* 23

(2)  The aggregate of the amounts recoverable from the carrier, his servants and agents, in that case, shall not exceed the said limits.

(3)  The provisions of paragraphs (1) and (2) of this Article shall not apply if it is proved that the damage resulted from an act or omission of the servant or agent done with intent to cause damage or recklessly and with knowledge that damage would probably result.

### Article 26

(1)  Receipt by the person entitled to delivery of baggage or cargo without complaint is prima facie evidence that the same has been delivered in good condition and in accordance with the document of carriage.

(2)  In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt in the case of baggage and fourteen days from the date of receipt in the case of cargo. In the case of delay the complaint must be made at the latest within twenty-one days from the date on which the baggage or cargo have been placed at his disposal.

(3)  Every complaint must be made in writing upon the document of carriage or by separate notice in writing despatched within the times aforesaid.

(4)  Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.

### Article 27

In the case of the death of the person liable, an action for damages lies in accordance with the terms of this Convention against those legally representing his estate.

### Article 28

(1)  An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court having jurisdiction where the carrier is ordinarily resident, or has his principal place of business, or has an establishment by which the contract has been made or before the court having jurisdiction at the place of destination.

(2)  Questions of procedure shall be governed by the law of the court seised of the case.

24              *Laws of Malaysia*              **ACT 148**

### Article 29

(1) The right to damages shall be extinguished if an action is not brought within two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

(2) The method of calculating the period of limitation shall be determined by the law of the court seised of the case.

### Article 30

(1) In the case of carriage to be performed by various successive carriers and falling within the definition set out in the third paragraph of Article 1, each carrier who accepts passengers, baggage or cargo is subjected to the rules set out in this Convention, and is deemed to be one of the contracting parties to the contract of carriage in so far as the contract deals with that part of the carriage which is performed under his supervision.

(2) In the case of carriage of this nature, the passenger or his representative can take action only against the carrier who performed the carriage during which the accident or the delay occurred, save in the case where, by express agreement, the first carrier has assumed liability for the whole journey.

(3) As regards baggage or cargo, the passenger or consignor will have a right of action against the first carrier, and the passenger or consignee who is entitled to delivery will have a right of action against the last carrier, and further, each may take action against the carrier who performed the carriage during which the destruction, loss, damage or delay took place. These carriers will be jointly and severally liable to the passenger or to the consignor or consignee.

### CHAPTER IV

### PROVISIONS RELATING TO COMBINED CARRIAGE

### Article 31

(1) In the case of combined carriage performed partly by air and partly by any other mode of carriage, the provisions of this Convention apply only to the carriage by air, provided that the carriage by air falls within the terms of Article 1.

(2) Nothing in this Convention shall prevent the parties in the case of combined carriage from inserting in the document of air carriage conditions relating to other modes of carriage, provided that the provisions of this Convention are observed as regards the carriage by air.

*Carriage by Air*                                           25

CHAPTER V

GENERAL AND FINAL PROVISIONS

### Article 32

Any clause contained in the contract and all special agreements entered into before the damage occurred by which the parties purport to infringe the rules laid down by this Convention, whether by deciding the law to be applied, or by altering the rules as to jurisdiction, shall be null and void. Nevertheless for the carriage of cargo arbitration clauses are allowed, subject to this Convention, if the arbitration is to take place within one of the jurisdictions referred to in the first paragraph of Article 28.

### Article 33

Nothing contained in this Convention shall prevent the carrier either from refusing to enter into any contract of carriage, or from making regulations which do not conflict with the provisions of this Convention.

### Article 34

Articles 3 to 9 inclusive relating to documents of carriage shall not apply in the case of carriage performed in extraordinary circumstances outside the normal scope of an air carrier's business.

### Article 35

The expression "days" when used in this Convention means current days not working days.

### Article 40A

(1) *(This paragraph is not reproduced. It defines "High Contracting Party".)*

(2) For the purposes of the Convention the word territory means not only the metropolitan territory of a State but also all other territories for the foreign relations of which that State is responsible.

*(Articles 36, 37, 38, 39, 40 and 41 and the concluding words of the Convention are not reproduced. They deal with the coming into force of the Convention and the language of the text.)*

26 *Laws of Malaysia* **ACT 148**

*ADDITIONAL PROTOCOL*

*(With reference to Article 2)*

The High Contracting Parties reserve to themselves the right to declare at the time of ratification or of accession that the first paragraph of Article 2 of this Convention shall not apply to international carriage by air performed directly by the State, its colonies, protectorates or mandated territories or by any other territory under its sovereignty, suzerainty or authority.

———————

SECOND SCHEDULE

[Section 2]

CONVENTION SUPPLEMENTARY TO THE WARSAW CONVENTION FOR THE UNIFICATION OF CERTAIN RULES RELATING TO INTERNATIONAL CARRIAGE BY AIR PERFORMED BY A PERSON OTHER THAN THE CONTRACTING CARRIER

**Article I**

In this Convention:

(a) "Warsaw Convention" means the Convention for the Unification of Certain Rules Relating to International Carriage By Air signed at Warsaw on 12 October 1929, or the Warsaw Convention as amended at The Hague 1955, according to whether the carriage under the agreement referred to in paragraph (b) is governed by the one or by the other;

(b) "contracting carrier" means a person who as a principal makes an agreement for carriage governed by the Warsaw Convention with a passenger or consignor or with a person acting on behalf of the passenger or consignor.

(c) "actual carrier" means a person, other than the contracting carrier, who, by virtue of authority from the contracting carrier, performs the whole or part of the carriage contemplated in paragraph (b) but who is not with respect to such part a successive carrier within the meaning of the Warsaw Convention. Such authority is presumed in the absence of proof to the contrary.

### Article II

If an actual carrier performs the whole or part of carriage which, according to the agreement referred to in Article I, paragraph (b), is governed by the Warsaw Convention, both the contracting carrier and the actual carrier shall, except as otherwise provided in this Convention, be subject to the rules of the Warsaw Convention, the former for the whole of the carriage contemplated in the agreement, the latter solely for the carriage which he performs.

### Article III

1.  The acts and omissions of the actual carrier and of his servants and agents acting within the scope of their employment shall, in relation to the carriage performed by the actual carrier, be deemed to be also those of the contracting carrier.

2.  The acts and omissions of the contracting carrier and of his servants and agents acting within the scope of their employment shall, in relation to the carriage performed by the actual carrier, be deemed to be also those of the actual carrier. Nevertheless, no such act or omission shall subject the actual carrier to liability exceeding the limits specified in Article 22 of the Warsaw Convention. Any special agreement under which the contracting carrier assumes obligations not imposed by the Warsaw Convention or any waiver of rights conferred by that Convention or any special declaration of interest in delivery at destination contemplated in Article 22 of the said Convention, shall not affect the actual carrier unless agreed to by him.

### Article IV

Any complaint to be made or order to be given under the Warsaw Convention to the carrier shall have the same effect whether addressed to the contracting carrier or to the actual carrier. Nevertheless, orders referred to in Article 12 of the Warsaw Convention shall only be effective if addressed to the contracting carrier.

### Article V

In relation to the carriage performed by the actual carrier, any servant or agent of that carrier or of the contracting carrier shall, if he proves that he acted within the scope of his employment, be entitled to avail himself of the limits of liability which are applicable under this Convention to the carrier whose servant or agent he is unless it is proved that he acted in a manner which, under the Warsaw Convention, prevents the limits of liability from being invoked.

### Article VI

In relation to the carriage performed by the actual carrier, the aggregate of the

amounts recoverable from that carrier and the contracting carrier, and from their servants and agents acting within the scope of their employment, shall not exceed the highest amount which could be awarded against either the contracting carrier or the actual carrier under this Convention, but none of the persons mentioned shall be liable for a sum in excess of the limit applicable to him.

### Article VII

In relation to the carriage performed by the actual carrier, an action for damages may be brought, at the option of the plaintiff, against that carrier or the contracting carrier, or against both together or separately. If the action is brought against only one of those carriers, that carrier shall have the right to require the other carrier to be joined in the proceedings, the procedure and effects being governed by the law of the court seised of the case.

### Article VIII

Any action for damages contemplated in Article VII of this Convention must be brought, at the option of the plaintiff, either before a court in which an action may be brought against the contracting carrier, as provided in Article 28 of the Warsaw Convention, or before the court having jurisdiction at the place where the actual carrier is ordinarily resident or has his principal place of business.

### Article IX

1. Any contractual provision tending to relieve the contracting carrier or the actual carrier of liability under this Convention or to fix a lower limit than that which is applicable according to this Convention shall be null and void, but the nullity of any such provision does not involve the nullity of the whole agreement, which shall remain subject to the provisions of this Convention.

2. In respect of the carriage performed by the actual carrier, the preceding paragraph shall not apply to contractual provisions governing loss or damage resulting from the inherent defect, quality or vice of the cargo carried.

3. Any clause contained in an agreement for carriage and all special agreements entered into before the damage occurred by which the parties purport to infringe the rules laid down by this Convention, whether by deciding the law to be applied, or by altering the rules as to jurisdiction, shall be null and void. Nevertheless, for the carriage of cargo arbitration clauses are allowed, subject to this Convention, if the arbitration is to take place in one of the jurisdictions referred to in Article VIII.

### Article X

Except as provided in Article VII, nothing in this Convention shall affect the rights and obligations of the two carriers between themselves.

*Carriage by Air* 29

*(Articles XI to XVIII and the concluding words of the Convention are not reproduced. They deal with the coming into force of the Convention and language of the text.)*

----

### THIRD SCHEDULE

[Section 5]

PROVISIONS AS TO LIABILITY OF CARRIER IN THE
EVENT OF THE DEATH OF A PASSENGER

1.    The liability shall be enforceable for the benefit of such of the members of the passenger's family as sustained damage by reason of his death.

In this paragraph the expression "member of a family" means wife or husband, parent, step-parent, grandparent, brother, sister, half-brother, half-sister, child, stepchild, grandchild:

Provided that, in deducing any such relationship as aforesaid, any illegitimate person and any adopted person shall be treated as being, or as having been, the legitimate child of his mother and reputed father, or as the case may be, of his adopters.

2.    An action to enforce the liability may be brought by the personal representative of the passenger or by any person for whose benefit the liability is under the last preceding paragraph enforceable, but only one action shall be brought in Malaysia in respect of the death of any one passenger, and every such action by whomsoever brought shall be for the benefit of all such persons so entitled as aforesaid as either are domiciled in Malaysia or, not being domiciled there, expressing a desire to take the benefit of the action.

3.    Subject to subsections 6(2) and (3), the amount recovered in any such action, after deducting any costs not recovered from the defendant, shall be divided between the persons entitled in such proportions as the Court (or, where the action is tried with a jury, the jury) direct.

----

30                    *Laws of Malaysia*                    **ACT 148**

FOURTH SCHEDULE

[Subsection 14(1)]

The Carriage by Air Enactment 1935 F.M.S. Enactment No. 6 of 1935.

The Carriage by Air Enactment 1935 Johore Enactment No. 3 of 1935.

The Carriage by Air Enactment 1935 Kelantan Enactment No. 5 of 1935.

The Carriage by Air Enactment 1954 Kedah Enactment No. 6 of 1954.

The Carriage by Air Enactment 1953 Perlis Enactment No. 7 of 1953.

---

FIFTH SCHEDULE

[Section 2]

MONTREAL PROTOCOL No. 4
TO AMEND THE CONVENTION FOR THE UNIFICATION OF CERTAIN
RULES RELATING TO INTERNATIONAL CARRIAGE BY AIR
SIGNED AT WARSAW ON 12 OCTOBER 1929
AS AMENDED BY THE PROTOCOL DONE AT THE HAGUE ON 28
SEPTEMBER 1955 SIGNED AT MONTREAL ON 25 SEPTEMBER 1975

CHAPTER I

SCOPE – DEFINITIONS

**Article 1**

(1)  This Convention applies to all international carriage of persons, baggage or cargo performed by aircraft for reward. It applies equally to gratuitous carriage by aircraft performed by an air transport undertaking.

(2)  For the purposes of this Convention, the expression "international carriage" means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two High Contracting Parties or within the territory of a single High Contracting Party if there is an agreed stopping place within the territory of another State, even if that State is not a High Contracting Party. Carriage between two points within the territory of a

*Carriage by Air*                          31

single High Contracting Party without an agreed stopping place within the territory of another State is not international carriage for the purposes of this Convention.

(3) Carriage to be performed by several successive air carriers is deemed, for the purposes of this Convention, to be one undivided carriage if it has been regarded by the parties as a single operation, whether it had been agreed upon under the form of a single contract or a series of contracts, and it does not lose its international character merely because one contract or a series of contracts is to be performed entirely within the territory of the same State.

### Article 2

(1) This Convention applies to carriage performed by the State or by legally constituted public bodies provided it falls within the conditions laid down in Article 1.

(2) In the carriage of postal items, the carrier shall be liable only to the relevant postal administration in accordance with the rules applicable to the relationship between the carriers and the postal administrations.

(3) Except as provided in paragraph (2) of this Article, the provisions of this Convention shall not apply to the carriage of postal items.

CHAPTER II

DOCUMENTS OF CARRIAGE

SECTION 1

PASSENGER TICKET

### Article 3

(1) In respect of the carriage of passengers a ticket shall be delivered containing:

  *(a)* an indication of the place of departure and the place of destination;

  *(b)* if the place of departure and the place of destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place;

  *(c)* a notice to the effect that, if the passenger's journey involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the

32                    *Laws of Malaysia*                    **ACT 148**

Convention governs and in most cases limits the liability of carriers for death or personal injury and in respect of loss of or damage to baggage.

(2)    The passenger ticket shall constitute *prima facie* evidence of the conclusion and conditions of the contract of carriage. The absence, irregularity or loss of the passenger ticket does not affect the existence or the validity of the contract of carriage which shall, none the less, be subject to the rules of this Convention. Nevertheless, if, with the consent of the carrier, the passenger embarks without a passenger ticket having been delivered, or if the ticket does not include the notice required by paragraph (1)*(c)* of this Article, the carrier shall not be entitled to avail himself of the provisions of Article 22.

SECTION 2

BAGGAGE CHECK

**Article 4**

(1)    In respect of the carriage of registered baggage, a baggage check shall be delivered, which, unless combined with or incorporated in a passenger ticket which complies with the provisions of Article 3, paragraph (1), shall contain:

 *(a)* an indication of the place of departure and the place of destination;

 *(b)* if the place of departure and the place of destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place;

 *(b)* a notice to the effect that, if the carriage involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers in respect of loss or damage to baggage.

(2)    The baggage check shall constitute *prima facie* evidence of the registration of the baggage and of the conditions of the contract of carriage. The absence, irregularity or loss of the baggage check does not affect the existence or the validity of the contract of carriage which shall, none the less, be subject to the rules of this Convention. Nevertheless, if the carrier takes charge of the baggage without a baggage check having been delivered or if the baggage check [unless combined with or incorporated in the passenger ticket which complies with the provisions of Article 3, paragraph (1)*(c)*] does not include the notice required by paragraph (1)*(c)* of this Article, he shall not be entitled to avail himself of the provision of Article 22, paragraph (2).

*Carriage by Air*                33

SECTION 3

DOCUMENTATION RELATING TO CARGO

**Article 5**

(1)  In respect of the carriage of cargo an air waybill shall be delivered.

(2)  Any other means which would preserve a record of the carriage to be performed may, with the consent of the consignor, be substituted for the delivery of an air waybill. If such other means are used, the carrier shall, if so requested by the consignor, deliver to the consignor a receipt for the cargo permitting identification of the consignment and access to the information contained in the record preserved by such other means.

(3)  The impossibility of using, at points of transit and destination, the other means which would preserve a record of the carriage referred to in paragraph (2) of this Article does not entitle the carrier to refuse to accept the cargo for carriage.

**Article 6**

(1)  The air waybill shall be made out by the consignor in three original parts.

(2)  The first part shall be marked "for the carrier"; it shall be signed by the consignor. The second part shall be marked "for the consignee"; it shall be signed by the consignor and the carrier. The third part shall be signed by the carrier and handed by him to the consignor after the cargo has been accepted.

(3)  The signature of the carrier and that of the consignor may be printed or stamped.

(4)  If, at the request of the consignor, the carrier makes out the air waybill, he shall be deemed, subject to proof to the contrary, to have done so on behalf of the consignor.

**Article 7**

Where there is more than one package:

 *(a)* the carrier of the cargo has the right to require the consignor to make out separate air waybills;

 *(b)* the consignor has the right to require the carrier to deliver separate receipts when the other means referred to in paragraph (2) of Article 5 are used.

34 *Laws of Malaysia* **ACT 148**

### Article 8

The air waybill and receipt for the cargo shall contain:

> *(a)* an indication of the place of departure the place of and destination;
>
> *(b)* if the place of departure and the place of destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place; and
>
> *(c)* an indication of the weight of the consignment.

### Article 9

Non-compliance with the provisions of Articles 5 to 8 shall not affect the existence or the validity of the contract of carriage, which shall, none the less, be subject to the rules of this Convention including those relating to limitation of liability.

### Article 10

(1) The consignor is responsible for the correctness of the particulars and statements relating to the cargo inserted by him or on his behalf in the air waybill or furnished by him or on his behalf to the carrier for insertion in the receipt for the cargo or for insertion in the record preserved by the other means referred to in paragraph (2) of Article 5.

(2) The consignor shall indemnify the carrier against all damage suffered by him, or by any other person to whom the carrier is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements furnished by the consignor or on his behalf.

(3) Subject to the provisions of paragraphs (1) and (2) of this Article, the carrier shall indemnify the consignor against all damage suffered by him, or by any other person to whom the consignor is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements inserted by the carrier or on his behalf in the receipt for the cargo or in the record preserved by the other means referred to in paragraph (2) of Article 5.

### Article 11

(1) The air waybill or the receipt for the cargo is *prima facie* evidence of the conclusion of the contract, of the acceptance of the cargo and of the conditions of carriage mentioned therein.

*Carriage by Air* 35

(2)  Any statements in the air waybill or the receipt for the cargo relating to the weight, dimensions and packing of the cargo, as well as those relating to the number of packages, are *prima facie* evidence of the facts stated; those relating to the quantity, volume and condition of the cargo do not constitute evidence against the carrier except so far as they both have been, and are stated in the air waybill to have been, checked by him in the presence of the consignor, or relate to the apparent condition of the cargo.

### Article 12

(1)  Subject to his liability to carry out all his obligations under the contract of carriage, the consignor has the right to dispose of the cargo by withdrawing it at the airport of departure or destination, or by stopping it in the course of the journey on any landing, or by calling for it to be delivered at the place of destination or in the course of the journey to a person other than the consignee originally designated, or by requiring it to be returned to the airport of departure. He must not exercise this right of disposition in such a way as to prejudice the carrier or other consignors and he must repay any expenses occasioned by the exercise of this right.

(2)  If it is impossible to carry out the orders of the consignor the carrier must so inform him forthwith.

(3)  If the carrier obeys the orders of the consignor for the disposition of the cargo without requiring the production of the part of the air waybill or the receipt for the cargo delivered to the latter, he will be liable, without prejudice to his right of recovery from the consignor, for any damage which may be caused thereby to any person who is lawfully in possession of that part of the air waybill or the receipt for the cargo.

(4)  The right conferred on the consignor ceases at the moment when that of the consignee begins in accordance with Article 13. Nevertheless, if the consignee declines to accept the cargo, or if he cannot be communicated with, the consignor resumes his right of disposition.

### Article 13

(1)  Except when the consignor has exercised his right under Article 12, the consignee is entitled, on the arrival of the cargo at the place of destination, to require the carrier to deliver the cargo to him, on payment of the charges due and on complying with the conditions of carriage.

(2)  Unless it is otherwise agreed, it is the duty of the carrier to give notice to the consignee as soon as the cargo arrives.

(3)  If the carrier admits the loss of the cargo, or if the cargo has not arrived at the expiration of seven days after the date on which it ought to have arrived, the

consignee is entitled to enforce against the carrier the rights which flow from the contract of carriage.

### Article 14

The consignor and the consignee can respectively enforce all the rights given to them by Articles 12 and 13, each in his own name, whether he is acting in his own interest or in the interest of another, provided that he carries out the obligations imposed by the contract of carriage.

### Article 15

(1)  Articles 12, 13 and 14 do not affect the relations of the consignor and the consignee with each other or the mutual relations of third parties whose rights are derived either from the consignor or from the consignee.

(2)  The provisions of Articles 12, 13 and 14 can only be varied by express provision in the air waybill or the receipt for the cargo.

### Article 16

(1)  The consignor must furnish such information and such documents as are necessary to meet the formalities of customs, octroi or police before the cargo can be delivered to the consignee. The consignor is liable to the carrier for any damage occasioned by the absence, insufficiency or irregularity of any such information or documents, unless the damage is due to the fault of the carrier, his servants or agents.

(2)  The carrier is under no obligation to enquire into the correctness or sufficiency of such information or documents.

### CHAPTER III

### LIABILITY OF THE CARRIER

### Article 17

The carrier is liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

### Article 18

(1)  The carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, any registered baggage, if the occurrence which caused the damage so sustained took place during the carriage by air.

*Carriage by Air* 37

(2)  The carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the occurrence which caused the damage so sustained took place during the carriage by air.

(3)  However, the carrier is not liable if he proves that the destruction, loss of, or damage to, the cargo resulted solely from one or more of the following:

   *(a)*  inherent defect, quality or vice of that cargo;

   *(b)*  defective packing of that cargo performed by a person other than the carrier or his servants or agents;

   *(c)*  an act of war or an armed conflict;

   *(d)*  an act of a public authority carried out in connection with the entry, exit or transit of the cargo.

(4)  The carriage by air within the meaning of the preceding paragraphs of this Article comprises the period during which the baggage or cargo is in the charge of the carrier, whether in an airport or on board an aircraft or, in the case of a landing outside an airport, in any place whatsoever.

(5)  The period of the carriage by air does not extend to any carriage by land, by sea or by river performed outside an airport. If, however, such carriage takes place in the performance of a contract for carriage by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the carriage by air.

### Article 19

The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.

### Article 20

In the case of passengers and baggage, and in the case of damage occasioned by delay in the carriage of cargo, the carrier shall not be liable if he proves that he and his servants and agents have taken all necessary measures to avoid the damage or that it was impossible for them to take such measures.

### Article 21

(1) In the carriage of passengers and baggage, if the carrier proves that the damage was caused by or contributed to by the negligence of the person suffering the damage the Court may, in accordance with the provisions of its own law,

exonerate the carrier wholly or partly from his liability.

(2)  In the carriage of cargo, if the carrier proves that the damage was caused by or contributed to by the negligence or other wrongful act or omission of the person claiming compensation, or the person from whom he derives his rights, the carrier shall be wholly or partly exonerated from his liability to the claimant to the extent that such negligence or wrongful act or omission caused or contributed to the damage.

### Article 22

(1)  In the carriage of persons the liability of the carrier for each passenger is limited to the sum of 16,600 Special Drawing Rights. Where, in accordance with the law of the court seised of the case, damages may be awarded in the form of periodical payments, the equivalent capital value of the said payments shall not exceed this limit. Nevertheless, by special contract, the carrier and the passenger may agree to a higher limit of liability.

(2) *(a)* In the carriage of registered baggage, the liability of the carrier is limited to a sum of 17 Special Drawing Rights per kilogramme, unless the passenger or consignor has made, at the same time when the package was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that that sum is greater than the passenger's or the consignor's actual interest in delivery at destination.

*(b)*  In the carriage of cargo, the liability of the carrier is limited to a sum of 17 Special Drawing Rights per kilogramme, unless the consignor has made, at the same time when the package was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that that sum is greater than the consignor's actual interest in delivery at destination.

*(c)*  In the case of loss, damage or delay of part of registered baggage or cargo, or of any object contained therein, the weight to be taken into consideration in determining the amount to which the carrier's liability is limited shall be only the total weight of the package or packages concerned. Nevertheless, when the loss, damage or delay of a part of the registered baggage or cargo, or of an object contained therein, affects the value of other packages covered by the same baggage check or the same air waybill, the total weight of such package or packages shall also be taken into consideration in determining the limit of liability.

(3)  As regards objects of which the passenger takes charge himself the liability of the carrier is limited to 332 Special Drawing Rights per passenger.

*Carriage by Air*                                    39

(4) The limits prescribed in this Article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff. The foregoing provision shall not apply if the amount of the damages awarded, excluding court costs and other expenses of the litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later.

(5) The sums mentioned in terms of the Special Drawing Right in this Article shall be deemed to refer to the Special Drawing Right as defined by the International Monetary Fund. Conversion of the sums into national currencies shall, in case of judicial proceedings, be made according to the value of such currencies in terms of the Special Drawing Right at the date of judgment.

(6) The value of a national currency, in terms of the Special Drawing Right, of a High Contracting Party which is a Member of the International Monetary Fund, shall be calculated in accordance with the method of valuation applied by the International Monetary Fund, in effect at the date of the judgment for its operations and transactions. The value of a national currency, in terms of the Special Drawing Right, of a High Contracting Party which is not a Member of the International Monetary Fund, shall be calculated in a manner determined by that High Contracting Party. Nevertheless, those States which are not Members of the International Monetary Fund and whose law does not permit the application of the provision of paragraph (2)*(b)* of Article 22 may, at the time of ratification or accession or at any time thereafter, declare that the limit of liability of the carrier in judicial proceedings in their territories is fixed at a sum of two hundred and fifty monetary units per kilogramme. This monetary unit corresponds to sixty-five and a half milligrammes of gold of millesimal fineness nine hundred. This sum may be converted into the national currency concerned in round figures. The conversion of this sum into national currency shall be made according to the law of the State concerned.

**Article 23**

(1) Any provision tending to relieve the carrier of liability or to fix a lower limit than that laid down in this Convention shall be null and void, but the nullity of any such provision does not involve the nullity of the whole contract, which shall remain subject to the provisions of this Convention.

(2) Paragraph (1) of this Article shall not apply to provisions governing loss or damage resulting from the inherent defect, quality or vice of the cargo carried.

40                          *Laws of Malaysia*                    **ACT 148**

### Article 24

(1) In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention, without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.

(2) In the carriage of cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and limits of liability set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. Such limits of liability constitute maximum limits and may not be exceeded whatever the circumstances which give rise to the liability.

### Article 25

In the carriage of passengers and baggage, the limits of liability specified in Article 22 shall not apply if it is proved that the damage resulted from an act or omission of the carrier, his servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result; provided that, in the case of such act or omission of a servant or agent, it is also proved that he was acting within the scope of his employment.

### Article 25A

(1) If an action is brought against a servant or agent of the carrier arising out of damage to which this Convention relates, such servant or agent, if he proves that he acted within the scope of his employment, shall be entitled to avail himself of the limits of liability which that carrier himself is able to invoke under Article 22.

(2) The aggregate of the amounts recoverable from the carrier, his servants or agents, in that case, shall not exceed the said limits.

(3) In the carriage of passengers and baggage, the provisions of paragraphs (1) and (2) of this Article shall not apply if it is proved that the damage resulted from an act or omission of the servant or agent done with intent to cause damage or recklessly and with knowledge that damage would probably result.

### Article 26

(1) Receipt by the person entitled to delivery of baggage or cargo without complaint is *prima facie* evidence that the same have been delivered in good condition and in accordance with the document of carriage.

*Carriage by Air*                                41

(2)  In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt in the case of baggage and fourteen days from the date of receipt in the case of cargo. In the case of delay the complaint must be made at the latest within twenty-one days from the date on which the baggage or cargo has been placed at his disposal.

(3)  Every complaint must be made in writing upon the document of carriage or by separate notice in writing despatched within the times aforesaid.

(4)  Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.

### Article 27

In the case of the death of the person liable, an action for damages lies in accordance with the terms of this Convention against those legally representing his estate.

### Article 28

(1)  An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court having jurisdiction where the carrier is ordinarily resident, or has his principal place of business, or has an establishment by which the contract has been made or before the court having jurisdiction at the place of destination.

(2)  Questions of procedure shall be governed by the law of the court seised of the case.

### Article 29

(1)  The right to damages shall be extinguished if an action is not brought within two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

(2)  The method of calculating the period of limitation shall be determined by the law of the court seised of the case.

### Article 30

(1)  In the case of carriage to be performed by various succesive carriers and falling within the definition set out in the third paragraph of Article 1, each carrier who accepts passengers, baggage or cargo is subjected to the rules set out in this Convention, and is deemed to be one of the contracting parties to the contract of

42                          *Laws of Malaysia*                          **ACT 148**

carriage in so far as the contract deals with that part of the carriage which is performed under his supervision.

(2)  In the case of carriage of this nature, the passenger or his representative can take action only against the carrier who performed the carriage during which the accident or the delay occurred, save in the case where, by express agreement, the first carrier has assumed liability for the whole journey.

(3)  As regards baggage or cargo, the passenger or consignor will have a right of action against the first carrier, and the passenger or consignee who is entitled to delivery will have a right of action against the last carrier, and further, each may take action against the carrier who performed the carriage during which the destruction, loss, damage or delay took place. These carriers will be jointly and severally liable to the passenger or to the consignor or consignee.

### Article 30A

Nothing in this Convention shall prejudice the question whether a person liable for damage in accordance with its provisions has a right of recourse against any other person.

### CHAPTER IV

### PROVISIONS RELATING TO COMBINED CARRIAGE

### Article 31

(1)  In the case of combined carriage performed partly by air and partly by any other mode of carriage, the provisions of this Convention apply only to the carriage by air, provided that carriage by air falls within the terms of Article 1.

(2)  Nothing in this Convention shall prevent the parties in the case of combined carriage from inserting in the document of air carriage conditions relating to other modes of carriage, provided that the provisions of this Convention are observed as regards the carriage by air.

### CHAPTER V

### GENERAL AND FINAL PROVISIONS

### Article 32

Any clause contained in the contract and all special agreements entered into before the damage occurred by which the parties purport to infringe the rules laid down by this Convention, whether by deciding the law to be applied, or by altering the rules

*Carriage by Air*                    43

as to jurisdiction, shall be null and void. Nevertheless for the carriage of cargo, arbitration clauses are allowed, subject to this Convention, if the arbitration is to take place within one of the jurisdictions referred to in the first paragraph of Article 28.

### Article 33

Except as provided in paragraph (3) of Article 5, nothing in this Convention shall prevent the carrier either from refusing to enter into any contract of carriage or from making regulations which do not conflict with the provisions of this Convention.

### Article 34

The provisions of Articles 3 to 8 inclusive relating to documents of carriage shall not apply in the case of carriage performed in extraordinary circumstances outside the normal scope of an air carrier's business.

### Article 35

The expression "days" when used in this Convention means current days not working days.

### Article 36

The Convention is drawn up in French in a single copy which shall remain deposited in the archives of the Ministry of Foreign Affairs of Poland and of which one duly certified copy shall be sent by the Polish Government to the Government of each of the High Contracting Parties.

### Article 40A

(1) [*This paragraph is not reproduced. It defines "High Contracting Party".*]

(2) For the purposes of the Convention the word "territory" means not only the metropolitan territory of a State but also all other territories for the foreign relations of which that state is responsible.

[*Articles 37, 38, 39, 40 and 41 and the concluding words of the Convention are not reproduced. They deal with the coming into force of the Convention.*]

ADDITIONAL PROTOCOL

(With reference to Article 2)

The High Contracting Parties reserve to themselves the right to declare at the time

44 *Laws of Malaysia* **ACT 148**

of ratification or of accession that the first paragraph of Article 2 of this Convention shall not apply to international carriage by air performed directly by the State, its colonies, protectorates or mandated territories or by any other territory under its sovereignty, suzerainty or authority.

———————

SIXTH SCHEDULE

[Section 2]

THE MONTREAL CONVENTION, 1999

CONVENTION FOR THE UNIFICATION OF CERTAIN RULES
RELATING TO INTERNATIONAL CARRIAGE BY AIR
SIGNED AT MONTREAL ON 28 MAY 1999

THE STATES PARTIES TO THIS CONVENTION

RECOGNIZING the significant contribution of the Convention for the Unification of Certain Rules Relating to International Carriage by Air signed in Warsaw on 12 October 1929, hereinafter referred to as the "Warsaw Convention", and other related instruments to the harmonization of private international air law;
RECOGNIZING the need to modernize and consolidate the Warsaw Convention and related instruments;

RECOGNIZING the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution;

REAFFIRMING the desirability of an orderly development of international air transport operations and the smooth flow of passengers, baggage and cargo in accordance with the principles and objectives of the Convention on International Civil Aviation, done at Chicago on 7 December 1944;

CONVINCED that collective State action for further harmonization and codification of certain rules governing international carriage by air through a new Convention is the most adequate means of achieving an equitable balance of interests;

HAVE AGREED as follows:

*Carriage by Air*                                         45

CHAPTER I

GENERAL PROVISIONS

Article 1

Scope of Application

1. This Convention applies to all international carriage of persons, baggage or cargo performed by aircraft for reward. It applies equally to gratuitous carriage by aircraft performed by an air transport undertaking.

2. For the purposes of this Convention, the expression "international carriage" means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party. Carriage between two points within the territory of a single State Party without an agreed stopping place within the territory of another State is not international carriage for the purposes of this Convention.

3. Carriage to be performed by several successive carriers is deemed, for the purposes of this Convention, to be one undivided carriage if it has been regarded by the parties as a single operation, whether it had been agreed upon under the form of a single contract or of a series of contracts, and it does not lose its international character merely because one contract or a series of contracts is to be performed entirely within the territory of the same State.

4. This Convention applies also to carriage as set out in Chapter V, subject to the terms contained therein.

Article 2

Carriage Performed by State and Carriage of Postal Items

1. This Convention applies to carriage performed by the State or by legally constituted public bodies provided it falls within the conditions laid down in Article 1.

2. In the carriage of postal items, the carrier shall be liable only to the relevant postal administration in accordance with the rules applicable to the relationship between the carriers and the postal administrations.

3. Except as provided in paragraph 2 of this Article, the provisions of this Convention shall not apply to the carriage of postal items.

46 *Laws of Malaysia* **ACT 148**

CHAPTER II

DOCUMENTATION AND DUTIES OF THE PARTIES RELATING TO THE CARRIAGE OF
PASSENGERS, BAGGAGE AND CARGO

**Article 3**

Passengers and Baggage

1.    In respect of carriage of passengers, an individual or collective document of carriage shall be delivered containing:

*(a)* an indication of the place of departure the place of and destination;

*(b)* if the place of departure and the place of destination are within the territory of a single State Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place.

2.    Any other means which preserves the information indicated in paragraph 1 may be substituted for the delivery of the document referred to in that paragraph. If any such other means is used, the carrier shall offer to deliver to the passenger a written statement of the information so preserved.

3.    The carrier shall deliver to the passenger a baggage identification tag for each piece of checked baggage.

4.    The passenger shall be given written notice to the effect that where this Convention is applicable it governs and may limit the liability of carriers in respect of death or injury and for destruction or loss of, or damage to, baggage, and for delay.

5. Non-compliance with the provisions of the foregoing paragraphs shall not affect the existence or the validity of the contract of carriage, which shall, nonetheless, be subject to the rules of this Convention including those relating to limitation of liability.

**Article 4**

Cargo

1. In respect of the carriage of cargo, an air waybill shall be delivered.

2. Any other means which preserves a record of the carriage to be performed may be substituted for the delivery of an air waybill. If such other means are used, the carrier shall, if so requested by the consignor, deliver to the consign or a cargo receipt permitting identification of the consignment and access to the information contained in the record preserved by such other means.

*Carriage by Air*                    47

### Article 5

Contents of Air Waybill or Cargo Receipt

The air waybill or the cargo receipt shall include:

>   *(a)* an indication of the place of departure and the place of destination;
>
>   *(b)* if the place of departure and the place of destination are within the territory of a single State Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place; and
>
>   *(c)* an indication of the weight of the consignment.

### Article 6

Document Relating to the Nature of the Cargo

The consignor may be required, if necessary to meet the formalities of customs, police and similar public authorities, to deliver a document indicating the nature of the cargo. This provision creates for the carrier no duty, obligation or liability resulting therefrom.

### Article 7

Description of Air Waybill

1. The air waybill shall be made out by the consignor in three original parts.

2. The first part shall be marked "for the carrier"; it shall be signed by the consignor. The second part shall be marked "for the consignee"; it shall be signed by the consignor and by the carrier. The third part shall be signed by the carrier who shall hand it to the consignor after the cargo has been accepted.

3. The signature of the carrier and that of the consignor may be printed or stamped.

4. If, at the request of the consignor, the carrier makes out the air waybill, the carrier shall be deemed, subject to proof to the contrary, to have done so on behalf of the consignor.

### Article 8

Documentation for Multiple Packages

When there is more than one package:

>   *(a)* the carrier of cargo has the right to require the consignor to make out separate air waybills;

48            *Laws of Malaysia*            **ACT 148**

*(b)* the consignor has the right to require the carrier to deliver separate cargo receipts when the other means referred to in paragraph 2 of Article 4 are used.

### Article 9

#### Non-compliance with Documentary Requirements

Non-compliance with the provisions of Articles 4 to 8 shall not affect the existence or the validity of the contract of carriage, which shall, nonetheless, be subject to the rules of this Convention including those relating to limitation of liability.

### Article 10

#### Responsibility for Particulars of Documentation

1.  The consignor is responsible for the correctness of the particulars and statements relating to the cargo inserted by it or on its behalf in the air waybill or furnished by it or on its behalf to the carrier for insertion in the cargo receipt or for insertion in the record preserved by the other means referred to in paragraph 2 of Article 4. The foregoing shall also apply where the person acting on behalf of the consignor is also the agent of the carrier.

2.  The consignor shall indemnify the carrier against all damage suffered by it, or by any other person to whom the carrier is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements furnished by the consignor or on its behalf.

3.  Subject to the provisions of paragraphs 1 and 2 of this Article, the carrier shall indemnify the consignor against all damage suffered by it, or by any other person to whom the consignor is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements inserted by the carrier or on its behalf in the cargo receipt or in the record preserved by the other means referred to in paragraph 2 of Article 4.

### Article 11

#### Evidentiary Value of Documentation

1.  The air waybill or the cargo receipt is *prima facie* evidence of the conclusion of the contract, of the acceptance of the cargo and of the conditions of carriage mentioned therein.

2.  Any statements in the air waybill or the cargo receipt relating to the weight, dimensions and packing of the cargo, as well as those relating to the number of packages, are *prima facie* evidence of the facts stated; those relating to the quantity, volume and condition of the cargo do not constitute evidence against the carrier except so far as they both have been, and are stated in the air waybill or the cargo

*Carriage by Air*                                    49

receipt to have been, checked by it in the presence of the consignor, or relate to the apparent condition of the cargo.

### Article 12

#### Right of Disposition of Cargo

1.   Subject to its liability to carry out all its obligations under the contract of carriage, the consignor has the right to dispose of the cargo by withdrawing it at the airport of departure or destination, or by stopping it in the course of the journey on any landing, or by calling for it to be delivered at the place of destination or in the course of the journey to a person other than the consignee originally designated, or by requiring it to be returned to the airport of departure. The consignor must not exercise this right of disposition in such a way as to prejudice the carrier or other consignors and must reimburse any expenses occasioned by the exercise of this right.

2.   If it is impossible to carry out the instructions of the consignor, the carrier must so inform the consignor forthwith.

3.   If the carrier carries out the instructions of the consignor for the disposition of the cargo without requiring the production of the part of the air waybill or the cargo receipt delivered to the latter, the carrier will be liable, without prejudice to its right of recovery from the consignor, for any damage which may be caused thereby to any person who is lawfully in possession of that part of the air waybill or the cargo receipt.

4.   The right conferred on the consignor ceases at the moment when that of the consignee begins in accordance with Article 13. Nevertheless, if the consignee declines to accept the cargo, or cannot be communicated with, the consignor resumes its right of disposition.

### Article 13

#### Delivery of the Cargo

1.   Except when the consignor has exercised its right under Article 12, the consignee is entitled, on arrival of the cargo at the place of destination, to require the carrier to deliver the cargo to it, on payment of the charges due and on complying with the conditions of carriage.

2.   Unless it is otherwise agreed, it is the duty of the carrier to give notice to the consignee as soon as the cargo arrives.

3.   If the carrier admits the loss of the cargo, or if the cargo has not arrived at the expiration of seven days after the date on which it ought to have arrived, the consignee is entitled to enforce against the carrier the rights which flow from the contract of carriage.

50                    *Laws of Malaysia*                    **ACT 148**

### Article 14

#### Enforcement of the Rights of Consignor and Consignee

The consignor and the consignee can respectively enforce all the rights given to them by Articles 12 and 13, each in its own name, whether it is acting in its own interest or in the interest of another, provided that it carries out the obligations imposed by the contract of carriage.

### Articles 15

#### Relations of Consignor and Consignee or Mutual Relations of Third Parties

1.   Articles 12, 13 and 14 do not affect either the relations of the consignor and the consignee with each other or the mutual relations of third parties whose rights are derived either from the consignor or from the consignee.

2.   The provisions of Articles 12, 13 and 14 can only be varied by express provision in the air waybill or the cargo receipt.

### Article 16

#### Formalities of Customs, Police or Other Public Authorities

1.   The consignor must furnish such information and such documents as are necessary to meet the formalities of customs, police and any other public authorities before the cargo can be delivered to the consignee. The consignor is liable to the carrier for any damage occasioned by the absence, insufficiency or irregularity of any such information or documents, unless the damage is due to the fault of the carrier, its servants or agents.

2.   The carrier is under no obligation to enquire into the correctness or sufficiency of such information or documents.

### CHAPTER III

#### LIABILITY OF THE CARRIER AND EXTENT OF COMPENSATION FOR DAMAGE

### Article 17

#### Death and Injury of Passengers—Damage to Baggage

1.   The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

2.   The carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage upon condition only that the event which caused the

*Carriage by Air*                                    51

destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier. However, the carrier is not liable if and to the extent that the damage resulted from the inherent defect, quality or vice of the baggage. In the case of unchecked baggage, including personal items, the carrier is liable if the damage resulted from its fault or that of its servants or agents.

3.    If the carrier admits the loss of the checked baggage, or if the checked baggage has not arrived at the expiration of twenty-one days after the date on which it ought to have arrived, the passenger is entitled to enforce against the carrier the rights which flow from the contract of carriage.

4.    Unless otherwise specified, in this Convention the term "baggage" means both checked baggage and unchecked baggage.

### Article 18

#### Damage to Cargo

1.    The carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air.

2.    However, the carrier is not liable if and to the extent it proves that the destruction, or loss of, or damage to, the cargo resulted from one or more of the following:

  *(a)*  inherent defect, quality or vice of that cargo;

  *(b)*  defective packing of that cargo performed by a person other than the carrier or its servants or agents;

  *(c)*  an act of war or an armed conflict;

  *(d)*  an act of public authority carried out in connection with the entry, exit or transit of the cargo.

3.    The carriage by air within the meaning of paragraph 1 of this Article comprises the period during which the cargo is in the charge of the carrier.

4.    The period of the carriage by air does not extend to any carriage by land, by sea or by inland waterway performed outside an airport. If, however, such carriage takes place in the performance of a contract for carriage by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the carriage

*Laws of Malaysia*                    **ACT 148**

by air. If a carrier, without the consent of the consignor, substitutes carriage by another mode of transport for the whole or part of a carriage intended by the agreement between the parties to be carriage by air, such carriage by another mode of transport is deemed to be within the period of carriage by air.

### Article 19

#### Delay

The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

### Article 20

#### Exoneration

If the carrier proves that the damage was caused or contributed to by the negligence or other wrongful act or omission of the person claiming compensation, or the person from whom he or she derives his or her rights, the carrier shall be wholly or partly exonerated from its liability to the claimant to the extent that such negligence or wrongful act or omission caused or contributed to the damage. When by reason of death or injury of a passenger compensation is claimed by a person other than the passenger, the carrier shall likewise be wholly or partly exonerated from its liability to the extent that it proves that the damage was caused or contributed to by the negligence or other wrongful act or omission of that passenger. This Article applies to all the liability provisions in this Convention, including paragraph 1 of Article 21.

### Article 21

#### Compensation in Case of Death or Injury of Passengers

1.   For damages arising under paragraph 1 of Article 17 not exceeding 100,000 Special Drawing Rights for each passenger, the carrier shall not be able to exclude or limit its liability.

2.   The carrier shall not be liable for damages arising under paragraph 1 of Article 17 to the extent that they exceed for each passenger 100,000 Special Drawing Rights if the carrier proves that:

   *(a)* such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or

   *(b)* such damage was solely due to the negligence or other wrongful act or omission of a third party.

*Carriage by Air*                                                53

### Article 22

Limits of Liability in Relation to Delay, Baggage and Cargo

1.    In the case of damage caused by delay as specified in Article 19 in the carriage of persons, the liability of the carrier for each passenger is limited to 4,150 Special Drawing Rights.

2.    In the carriage of baggage, the liability of the carrier in the case of destruction, loss, damage or delay is limited to 1,000 Special Drawing Rights for each passenger unless the passenger has made, at the time when the checked baggage was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless it proves that the sum is greater than the passenger's actual interest in delivery at destination.

3.    In the carriage of cargo, the liability of the carrier in the case of destruction, loss, damage or delay is limited to a sum of 17 Special Drawing Rights per kilogramme, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless it proves that the sum is greater than the consignor's actual interest in delivery at destination.

4.    In the case of destruction, loss, damage or delay of part of the cargo, or of any object contained therein, the weight to be taken into consideration in determining the amount to which the carrier's liability is limited shall be only the total weight of the package or packages concerned. Nevertheless, when the destruction, loss, damage or delay of a part of the cargo, or of an object contained therein, affects the value of other packages covered by the same air waybill, or the same receipt or, if they were not issued, by the same record preserved by the other means referred to in paragraph 2 of Article 4, the total weight of such package or packages shall also be taken into consideration in determining the limit of liability.

5.    The foregoing provisions of paragraphs 1 and 2 of this Article shall not apply if it is proved that the damage resulted from an act or omission of the carrier, its servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result; provided that, in the case of such act or omission of a servant or agent, it is also proved that such servant or agent was acting within the scope of its employment.

6.    The limits prescribed in Article 21 and in this Article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff, including interest. The foregoing provision shall not apply if the amount

*Laws of Malaysia*                    **ACT 148**

of the damages awarded, excluding court costs and other expenses of the litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later.

### Article 23

#### Conversion of Monetary Units

1.   The sums mentioned in terms of Special Drawing Right in this Convention shall be deemed to refer to the Special Drawing Right as defined by the International Monetary Fund. Conversion of the sums into national currencies shall, in case of judicial proceedings, be made according to the value of such currencies in terms of the Special Drawing Right at the date of the judgment. The value of a national currency, in terms of the Special Drawing Right, of a State Party which is a Member of the International Monetary Fund, shall be calculated in accordance with the method of valuation applied by the International Monetary Fund, in effect at the date of the judgment, for its operations and transactions. The value of a national currency, in terms of the Special Drawing Right, of a State Party which is not a Member of the International Monetary Fund, shall be calculated in a manner determined by that State.

2.   Nevertheless, those States which are not Members of the International Monetary Fund and whose law does not permit the application of the provision of paragraph 1 of this Article may, at the time of ratification or accession or at any time thereafter, declare that the limit of liability of the carrier prescribed in Article 21 is fixed at a sum of 1,500,000 monetary units per passenger in judicial proceedings in their territories; 62,500 monetary units per passenger with respect to paragraph 1 of Article 22; 15,000 monetary units per passenger with respect to paragraph 2 of Article 22; and 250 monetary units per kilogramme with respect to paragraph 3 of Article 22. This monetary unit corresponds to sixty-five and a half milligrammes of gold of millesimal fineness nine hundred. These sums may be converted into the national currency concerned in round figures. The conversion of these sums into national currency shall be made according to the law of the State concerned.

3.   The calculation mentioned in the last sentence of paragraph 1 of this Article and the conversion method mentioned in paragraph 2 of this Article shall be made in such manner as to express in the national currency of the State Party as far as possible the same real value for the amounts in Articles 21 and 22 as would result from the application of the first three sentences of paragraph 1 of this Article. States Parties shall communicate to the Depositary the manner of calculation pursuant to paragraph 1 of this Article, or the result of the conversion in paragraph 2 of this Article as the case may be, when depositing an instrument of ratification, acceptance, approval of or accession to this Convention and whenever there is a change in either.

*Carriage by Air* 55

### Article 24

#### Review of Limits

1.   Without prejudice to the provision of Article 25 of this Convention and subject to paragraph 2 below, the limits of liability prescribed in Articles 21, 22 and 23 shall be reviewed by the Depositary at five-year intervals, the first such review to take place at the end of the fifth year following the date of entry into force of this Convention, or if the Convention does not enter into force within five years of the date it is first open for signature, within the first year of its entry into force, by reference to an inflation factor which corresponds to the accumulated rate of inflation since the previous revision or in the first instance since the date of entry into force of the Convention. The measure of the rate of inflation to be used in determining the inflation factor shall be the weighted average of the annual rates of increase or decrease in the Consumer Price Indices of the States whose currencies comprise the Special Drawing Right mentioned in paragraph 1 of Article 23.

2.   If the review referred to in the preceding paragraph concludes that the inflation factor has exceeded 10 per cent, the Depositary shall notify States Parties of a revision of the limits of liability. Any such revision shall become effective six months after its notification to the States Parties. If within three months after its notification to the States Parties a majority of the States Parties register their disapproval, the revision shall not become effective and the Depositary shall refer the matter to a meeting of the States Parties. The Depositary shall immediately notify all States Parties of the coming into force of any revision.

3.   Notwithstanding paragraph 1 of this Article, the procedure referred to in paragraph 2 of this Article shall be applied at any time provided that one-third of the States Parties express a desire to that effect and upon condition that the inflation factor referred to in paragraph 1 has exceeded 30 per cent since the previous revision or since the date of entry into force of this Convention if there has been no previous revision. Subsequent reviews using the procedure described in paragraph 1 of this Article will take place at five-year intervals starting at the end of the fifth year following the date of the reviews under the present paragraph.

### Article 25

#### Stipulation on Limits

A carrier may stipulate that the contract of carriage shall be subject to higher limits of liability than those provided for in this Convention or to no limits of liability whatsoever.

### Article 26

#### Invalidity of Contractual Provisions

Any provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this Convention shall be null and void, but the nullity of

56                          *Laws of Malaysia*                          **ACT 148**

any such provision does not involve the nullity of the whole contract, which shall remain subject to the provisions of this Convention.

### Article 27

#### Freedom to Contract

Nothing contained in this Convention shall prevent the carrier from refusing to enter into any contract of carriage, from waiving any defenses available under the Convention, or from laying down conditions which do not conflict with the provisions of this Convention.

### Article 28

#### Advance Payments

In the case of aircraft accidents resulting in death or injury of passengers, the carrier shall, if required by its national law, make advance payments without delay to a natural person or persons who are entitled to claim compensation in order to meet the immediate economic needs of such persons. Such advance payments shall not constitute a recognition of liability and may be offset against any amounts subsequently paid as damages by the carrier.

### Article 29

#### Basis of Claims

In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. In any such action, punitive, exemplary or any other non compensatory damages shall not be recoverable.

### Article 30

#### Servants, Agents—Aggregation of Claims

1.    If an action is brought against a servant or agent of the carrier arising out of damage to which the Convention relates, such servant or agent, if they prove that they acted within the scope of their employment, shall be entitled to avail themselves of the conditions and limits of liability which the carrier itself is entitled to invoke under this Convention.

2.    The aggregate of the amounts recoverable from the carrier, its servants and agents, in that case, shall not exceed the said limits.

*Carriage by Air*                                    57

3.    Save in respect of the carriage of cargo, the provisions of paragraphs 1 and 2 of this Article shall not apply if it is proved that the damage resulted from an act or omission of the servant or agent done with intent to cause damage or recklessly and with knowledge that damage would probably result.

### Article 31

#### Timely Notice of Complaints

1.    Receipt by the person entitled to delivery of checked baggage or cargo without complaint is *prima facie* evidence that the same has been delivered in good condition and in accordance with the document of carriage or with the record preserved by the other means referred to in paragraph 2 of Article 3 and paragraph 2 of Article 4.

2.    In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt in the case of checked baggage and fourteen days from the date of receipt in the case of cargo. In the case of delay, the complaint must be made at the latest within twenty-one days from the date on which the baggage or cargo have been placed at his or her disposal.

3.    Every complaint must be made in writing and given or dispatched within the times aforesaid.

4.    If no complaint is made within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on its part.

### Article 32

#### Death of Person Liable

In the case of the death of the person liable, an action for damages lies in accordance with the terms of this Convention against those legally representing his or her estate.

### Article 33

#### Jurisdiction

1.    An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

58 *Laws of Malaysia* **ACT 148**

2.  In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.

3.  For the purposes of paragraph 2:

   (a) "commercial agreement" means an agreement, other than an agency agreement, made between carriers and relating to the provision of their joint services for carriage of passengers by air;

   (b) "principal and permanent residence" means the one fixed and permanent abode of the passenger at the time of the accident. The nationality of the passenger shall not be the determining factor in this regard.

4.  Questions of procedure shall be governed by the law of the court seised of the case.

### Article 34

#### Arbitration

1.  Subject to the provisions of this Article, the parties to the contract of carriage for cargo may stipulate that any dispute relating to the liability of the carrier under this Convention shall be settled by arbitration. Such agreement shall be in writing.

2.  The arbitration proceedings shall, at the option of the claimant, take place within one of the jurisdictions referred to in Article 33.

3.  The arbitrator or arbitration tribunal shall apply the provisions of this Convention.

4.  The provisions of paragraphs 2 and 3 of this Article shall be deemed to be part of every arbitration clause or agreement, and any term of such clause or agreement which is inconsistent therewith shall be null and void.

### Article 35

#### Limitation of Actions

1.  The right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the

*Carriage by Air* 59

date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

2.   The method of calculating that period shall be determined by the law of the court seised of the case.

### Article 36

#### Successive Carriage

1.   In the case of carriage to be performed by various successive carriers and falling within the definition set out in paragraph 3 of Article 1, each carrier which accepts passengers, baggage or cargo is subject to the rules set out in this Convention and is deemed to be one of the parties to the contract of carriage in so far as the contract deals with that part of the carriage which is performed under its supervision.

2.   In the case of carriage of this nature, the passenger or any person entitled to compensation in respect of him or her can take action only against the carrier which performed the carriage during which the accident or the delay occurred, save in the case where, by express agreement, the first carrier has assumed liability for the whole journey.

3.   As regards baggage or cargo, the passenger or consignor will have a right of action against the first carrier, and the passenger or consignee who is entitled to delivery will have a right of action against the last carrier, and further, each may take action against the carrier which performed the carriage during which the destruction, loss, damage or delay took place. These carriers will be jointly and severally liable to the passenger or to the consignor or consignee.

### Article 37

#### Right of Recourse against Third Parties

Nothing in this Convention shall prejudice the question whether a person liable for damage in accordance with its provisions has a right of recourse against any other person.

### CHAPTER IV

### COMBINED CARRIAGE

### Article 38

#### Combined Carriage

1.   In the case of combined carriage performed partly by air and partly by any other mode of carriage, the provisions of this Convention shall, subject to

60                     *Laws of Malaysia*                  **ACT 148**

paragraph 4 of Article 18, apply only to the carriage by air, provided that the carriage by air falls within the terms of Article 1.

2.   Nothing in this Convention shall prevent the parties in the case of combined carriage from inserting in the document of air carriage conditions relating to other modes of carriage, provided that the provisions of this Convention are observed as regards the carriage by air.

## CHAPTER V

### CARRIAGE BY AIR PERFORMED BY A PERSON OTHER THAN THE CONTRACTING CARRIER

#### Article 39

##### Contracting Carrier—Actual Carrier

The provisions of this Chapter apply when a person (hereinafter referred to as "the contracting carrier") as a principal makes a contract governed by this Convention with a passenger or consignor or with a person acting on behalf of the passenger or consignor, and another person (hereinafter referred to as "the actual carrier") performs, by virtue of authority from the contracting carrier, the whole or part of the carriage, but is not with respect to such part a successive carrier within the meaning of this Convention. Such authority shall be presumed in the absence of proof to the contrary.

#### Article 40

##### Respective Liability of Contracting and Actual Carriers

If an actual carrier performs the whole or part of carriage which, according to the contract referred to in Article 39, is governed by this Convention, both the contracting carrier and the actual carrier shall, except as otherwise provided in this Chapter, be subject to the rules of this Convention, the former for the whole of the carriage contemplated in the contract, the latter solely for the carriage which it performs.

#### Article 41

##### Mutual Liability

1.   The acts and omissions of the actual carrier and of its servants and agents acting within the scope of their employment shall, in relation to the carriage performed by the actual carrier, be deemed to be also those of the contracting carrier.

2.   The acts and omissions of the contracting carrier and of its servants and agents acting within the scope of their employment shall, in relation to the carriage

performed by the actual carrier, be deemed to be also those of the actual carrier. Nevertheless, no such act or omission shall subject the actual carrier to liability exceeding the amounts referred to in Articles 21, 22, 23 and 24. Any special agreement under which the contracting carrier assumes obligations not imposed by this Convention or any waiver of rights or defenses conferred by this Convention or any special declaration of interest in delivery at destination contemplated in Article 22 shall not affect the actual carrier unless agreed to by it.

### Article 42

#### Addressee of Complaints and Instructions

Any complaint to be made or instruction to be given under this Convention to the carrier shall have the same effect whether addressed to the contracting carrier or to the actual carrier. Nevertheless, instructions referred to in Article 12 shall only be effective if addressed to the contracting carrier.

### Article 43

#### Servants and Agents

In relation to the carriage performed by the actual carrier, any servant or agent of that carrier or of the contracting carrier shall, if they prove that they acted within the scope of their employment, be entitled to avail themselves of the conditions and limits of liability which are applicable under this Convention to the carrier whose servant or agent they are, unless it is proved that they acted in a manner that prevents the limits of liability from being invoked in accordance with this Convention.

### Article 44

#### Aggregation of Damages

In relation to the carriage performed by the actual carrier, the aggregate of the amounts recoverable from that carrier and the contracting carrier, and from their servants and agents acting within the scope of their employment, shall not exceed the highest amount which could be awarded against either the contracting carrier or the actual carrier under this Convention, but none of the persons mentioned shall be liable for a sum in excess of the limit applicable to that person.

### Article 45

#### Addressee of Claims

In relation to the carriage performed by the actual carrier, an action for damages may be brought, at the option of the plaintiff, against that carrier or the contracting carrier, or against both together or separately. If the action is brought against only one of those carriers, that carrier shall have the right to require the other carrier to

be joined in the proceedings, the procedure and effects being governed by the law of the court seised of the case.

### Article 46

#### Additional Jurisdiction

Any action for damages contemplated in Article 45 must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before a court in which an action may be brought against the contracting carrier, as provided in Article 33, or before the court having jurisdiction at the place where the actual carrier has its domicile or its principal place of business.

### Article 47

#### Invalidity of Contractual Provisions

Any contractual provision tending to relieve the contracting carrier or the actual carrier of liability under this Chapter or to fix a lower limit than that which is applicable according to this Chapter shall be null and void, but the nullity of any such provision does not involve the nullity of the whole contract, which shall remain subject to the provisions of this Chapter.

### Article 48

#### Mutual Relations of Contracting and Actual Carriers

Except as provided in Article 45, nothing in this Chapter shall affect the rights and obligations of the carriers between themselves, including any right of recourse or indemnification.

### CHAPTER VI

#### OTHER PROVISIONS

### Article 49

#### Mandatory Application

Any clause contained in the contract of carriage and all special agreements entered into before the damage occurred by which the parties purport to infringe the rules laid down by this Convention, whether by deciding the law to be applied, or by altering the rules as to jurisdiction, shall be null and void.

### Article 50

#### Insurance

States Parties shall require their carriers to maintain adequate insurance covering their liability under this Convention. A carrier may be required by the State Party

*Carriage by Air* 63

into which it operates to furnish evidence that it maintains adequate insurance covering its liability under this Convention.

### Article 51

#### Carriage Performed in Extraordinary Circumstances

The provisions of Articles 3 to 5, 7 and 8 relating to the documentation of carriage shall not apply in the case of carriage performed in extraordinary circumstances outside the normal scope of a carrier's business.

### Article 52

#### Definition of Days

The expression "days" when used in this Convention means calendar days, not working days.

### CHAPTER VII

### FINAL CLAUSES

### Article 53

#### Signature, Ratification and Entry into Force

For the purpose of this Convention, a "Regional Economic Integration Organization" means any organization which is constituted by sovereign States of a given region which has competence in respect of certain matters governed by this Convention and has been duly authorized to sign and to ratify, accept, approve or accede to this Convention. A reference to a "State Party" or "States Parties" in this Convention, otherwise than in paragraph 2 of Article 1, paragraph 1 *(b)* of Article 3, paragraph *(b)* of Article 5, Articles 23, 33, 46 and paragraph *(b)* of Article 57, applies equally to a Regional Economic Integration Organization. For the purpose of Article 24, the references to "a majority of the States Parties" and "one-third of the States Parties" shall not apply to a Regional Economic Integration Organization.

### Article 55

#### Relationship with other Warsaw Convention Instruments

This Convention shall prevail over any rules which apply to international carriage by air:

1.   Between States Parties to this Convention by virtue of those States commonly being Party to:

64 *Laws of Malaysia* **ACT 148**

(a) the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 (hereinafter called the Warsaw Convention);

(b) the Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929, Done at The Hague on 28 September 1955 (hereinafter called The Hague Protocol);

(c) the Convention, Supplementary to the Warsaw Convention, for the Unification of Certain Rules Relating to International Carriage by Air Performed by a Person Other than the Contracting Carrier, signed at Guadalajara on 18 September 1961 (hereinafter called the Guadalajara Convention);

(d) the Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 as Amended by the Protocol Done at The Hague on 28 September 1955 Signed at Guatemala City on 8 March 1971 (hereinafter called the Guatemala City Protocol);

(e) Additional Protocol Nos. 1 to 3 and Montreal Protocol No. 4 to amend the Warsaw Convention as amended by The Hague Protocol or the Warsaw Convention as amended by both The Hague Protocol and the Guatemala City Protocol Signed at Montreal on 25 September 1975 (hereinafter called the Montreal Protocols); or

2. Within the territory of any single State Party to this Convention by virtue of that State being Party to one or more of the instruments referred to in subparagraphs *(a)* to *(e)* above.

#### Article 57

##### Reservations

No reservation may be made to this Convention except that a State Party may at any time declare by a notification addressed to the Depositary that this Convention shall not apply to:

(a) international carriage by air performed and operated directly by that State Party for non-commercial purposes in respect to its functions and duties as a sovereign State; and/or

(b) the carriage of persons, cargo and baggage for its military authorities on aircraft registered in or leased by that State Party, the whole capacity of which has been reserved by or on behalf of such authorities.

*Carriage by Air*                    65

[*Paragraphs 53 (save for part of paragraph 2), 54 and 56 and the concluding words of the Convention are not reproduced. They deal with signature, ratification, coming into force, denunciation and territorial extent where a State has more than one system of law*].

———————————

66

# LAWS OF MALAYSIA

## Act 148

## CARRIAGE BY AIR ACT 1974

LIST OF AMENDMENTS

| Amending law | Short title | In force from |
|---|---|---|
| Act A1310 | Carriage by Air (Amendment) Act 2007 | 8-10-2007 |

———————————

**94**

67

# LAWS OF MALAYSIA

## Act 148

## CARRIAGE BY AIR ACT 1974

LIST OF SECTIONS AMENDED

| Section | Amending authority | In force from |
|---|---|---|
| 1 | Act A1310 | 8-10-2007 |
| 2 | Act A1310 | 8-10-2007 |
| 4 | Act A1310 | 8-10-2007 |
| 5 | Act A1310 | 8-10-2007 |
| 6 | Act A1310 | 8-10-2007 |
| 7 | Act A1310 | 8-10-2007 |
| 8 | Act A1310 | 8-10-2007 |
| 9 | Act A1310 | 8-10-2007 |
| 10 | Act A1310 | 8-10-2007 |
| 11A | Act A1310 | 8-10-2007 |
| 12 | Act A1310 | 8-10-2007 |
| Fourth Schedule | Act A1310 | 8-10-2007 |
| Fifth Schedule | Act A1310 | 8-10-2007 |
| Sixth Schedule | Act A1310 | 8-10-2007 |

EXHIBIT "TT-3"

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

---

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

---

MDL Docket No. 2712

---

Misc. No. 16-1184 (KBJ)

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## <u>CERTIFICATE IDENTIFYING EXHIBIT</u>

I, hereby certify that the document marked as Exhibit **"TT-3"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI

COMMISSIONER FOR OATHS
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

95
~~38~~

Exhibit ___TT-3___

**The New York Times**     http://nyti.ms/1plRfiC

INTERNATIONAL BUSINESS

# Malaysia Airlines Financial Losses Grow

By REUTERS   AUG. 28, 2014

KUALA LUMPUR — Malaysia Airlines on Thursday reported a 75 percent wider loss in second-quarter earnings as passenger bookings continued to fall in response to the loss of two aircraft in separate disasters this year.

The airline said its net loss in the quarter ended in June grew to 307.04 million Malaysian ringgit, or $97.6 million, from $55.9 million a year earlier, though the result was an improvement from the net loss of $140.8 million in the first quarter.

The second-quarter earnings are the first to fully reflect the effect on sales of the unexplained disappearance of Flight MH370 in March. The airline also warned of poor second-half earnings, saying that average weekly bookings had declined 33 percent, with numerous flight cancellations immediately after the shooting down of Flight MH17 over Ukraine in July.

The airline is set to be taken private by its majority shareholder, the state fund Khazanah Nasional, in a move to revamp its business — effectively giving the government full control. An announcement of a reorganization plan was expected this week.

Malaysia Airlines said the MH17 incident had derailed "all the hard work and effort" to regain market confidence it had put in after the loss of MH370. "The fact that both incidents have occurred within such a short span of time had exacerbated the situation and severely damaged the airline's brand and business reputation, accelerating the need to restructure the company," it said.

Operating expenses rose 2 percent on higher fuel costs, which increased because of a 9 percent gain in capacity and the weakening of the ringgit against

**96**
~~**39**~~

the dollar, the airline reported. Both passenger numbers and yields fell on intense competition in its home market and internationally, Malaysia Airlines said.

Even before the aircraft tragedies, the carrier had been squeezed between high-end rivals and Asian budget carriers. The company — one of Southeast Asia's most prestigious airlines in the 1990s — has not made an annual profit since 2010.

The impact of the March 8 disappearance of Flight MH370, bound for Beijing from Kuala Lumpur, had tipped the carrier into what was then its worst quarterly performance in more than two years. Sales in China declined 60 percent in March after the incident, it said earlier this year.

Malaysia Airlines has had to cut fares on most of its routes in an attempt to lure back nervous passengers, though it is too early to gauge its success. It has almost doubled its commission payments to Australia-based travel agents to revive sales there, according to Australian media reports. The carrier is undercutting its luxury rivals: A Malaysia Airlines flight to Hong Kong next week is around 16 percent cheaper than a flight on the same route on Cathay Pacific. Similar flights to Tokyo in the first week of September are 19 percent cheaper than on Japan Airlines.

But it may have less success competing for budget fliers. AirAsia, the Malaysia-based low-cost carrier, last week announced a one-week sale, with flights to Australia from $29 and domestic fares as low as $12. AirAsia X, its long-haul arm, is the only other airline other than Malaysia Airlines to have direct flights from Kuala Lumpur to Australia — a flight to Sydney in September costs as little as $126, compared with $580 on Malaysia Airlines.

© 2016 The New York Times Company

EXHIBIT "TT-4"

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

_____

**MDL Docket No. 2712**

_____
**Misc. No. 16-1184 (KBJ)**

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-4"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

12 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI

COMMISSIONER FOR OATHS
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

ADVERTISING

**97**
~~40~~

Exhibit _TT-4_



🔍    <u>SIGN IN / REGISTER</u>    ☰

<u>NEWS</u> > <u>AIRLINES</u> > FINANCE > MAS SHARES SUSPENDED PENDING "MATERIAL ANNOUNCEMENT"

# MAS shares suspended pending "material announcement"



08 AUGUST, 2014 | BY: GREG WALDRON | SINGAPORE

The shares of Malaysian Airlines (MAS) have been suspended from trading on Friday 8 August.

In a brief announcement on Bursa Malaysia, the carrier says the shares have been suspended "pending a material announcement."

Persistent media reports from Malaysia indicate that MAS's 69.4% shareholder – state investment firm Khazanah Nasional – is looking at options to try and turn the struggling carrier around.

The carrier suffered an operating loss of MYR439 million ($136 million) for its fiscal first quarter ended 31 March.

This result, 58% worse than the previous corresponding period, partially reflected the impact of the loss of MH370 in early March. Prior to MH370, MAS has also been loss-making for several years.

As the MH370 story began to die down, reports emerged that Khazanah was looking at its options for the struggling carrier, which has suffered at the hands of local low-cost rival AirAsia, as well as competition from Middle Eastern carriers. A falling local currency

**98**
~~41~~

also hurt MAS.

Then, on 17 July, another Boeing 777-200ER was lost, when flight MH17 was shot down over Eastern Ukraine.

---

## Related Content

MAS to undergo 'comprehensive review and restructuring'

Malaysia to privatise ailing MAS

MH17: Ukraine lifts ceasefire as initial wreck search ends

ANALYSIS ANALYSIS: Asia-Pacific airline market review July 2014

MH370 deep-water search to begin in September

MH17: ICAO task force pursues accurate threat analysis

ANALYSIS ANALYSIS: How will MAS survive its latest crisis?

## Malaysia Airlines Data Snapshot

## $4465M Total Revenue (2014)

## 80 In Service Fleet

DATA SOURCE FG DASHBOARD

ADVERTISING

## Malaysia Airlines Ownership



| REGISTER TO SEE MORE |



**Malaysia Airlines**

EXHIBIT "TT-5"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

_____

MDL Docket No. 2712

_____
**Misc. No. 16-1184 (KBJ)**

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv–01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-5"**
referred to in the Declaration of **TOMMY THOMAS** was affirmed on

2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI

MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

Exhibit ___TT-5___

**99**



SURUHANJAYA SYARIKAT MALAYSIA
COMPANIES COMMISSION OF MALAYSIA
( Agensi di bawah KPDNKK )

1 / 25

Although all efforts has been carried out to ensure that the information provided is
accurate and up to date, the Registrar of Companies will not be liable for any losses
arising from any inaccurate or omitted information

<u>CORPORATE INFORMATION</u>

Company Name          : MALAYSIA AIRLINES BERHAD

Last Old Name         : Nil

Date of Change        : Nil

Company Number        : **1116944-X**

Incorporation Date    : 07-11-2014

Registration Date     : 07-11-2014

Type                  : LIMITED BY SHARES
                      : PUBLIC LIMITED

Status                : EXISTING

Registered Address    : 1ST FLOOR, ADMINISTRATION BUILDING
                        SOUTHERN SUPPORT ZONE
                        KLIA
                        SEPANG
                        SELANGOR

Postcode              : 64000

Origin                : MALAYSIA

Business Address      :

Postcode              :

Nature of Business    : TRANSPORT OF PASSENGERS BY AIR OVER REGULAR ROUTES
                        AND ON REGULAR SCHEDULES.



SURUHANJAYA SYARIKAT MALAYSIA
COMPANIES COMMISSION OF MALAYSIA
( Agensi di bawah KPDNKK )

2 / 25

## SUMMARY OF SHARE CAPITAL

Company Name       : MALAYSIA AIRLINES BERHAD
Company Number     : 1116944-X

| TOTAL AUTHORIZED (RM) 5,000,050,000.00 | AMT | DIVIDED INTO | NOMINAL VALUE (Sen) |
|---|---|---|---|
| ORDINARY | 5,000,000,000.00 | 5,000,000,000 | 100 |
| PREFERENCE | 50,000.00 | 50,000 | 100 |
| OTHERS | 0.00 | 0 | 0 |

| TOTAL ISSUED (RM) 1,000,000.00 | CASH | OTHERWISE THAN CASH | NOMINAL VALUE (Sen) |
|---|---|---|---|
| ORDINARY | 1,000,000 | 0 | 100 |
| PREFERENCE | 0 | 0 | 100 |
| OTHERS | | | |

**101**



**SURUHANJAYA SYARIKAT MALAYSIA**
**COMPANIES COMMISSION OF MALAYSIA**
( Agensi di bawah KPDNKK )

3 / 25

## DIRECTORS/OFFICERS

Company Name      : MALAYSIA AIRLINES BERHAD
Company Number    : **1116944-X**

| Name/Address | IC/Passport | Designation | Date of Appointment |
|---|---|---|---|
| MOHMAD ISA BIN HUSSAIN, DATO' DR<br>LOT 11369<br>JALAN ANGGERIK<br>KAMPUNG DATO ABU BAKAR BAGINDA<br>43000  KAJANG<br>SELANGOR | 580311-07-5215 | ALT DIRECTOR | 08-04-2016 |
| MD NOR BIN MD YUSOF, TAN SRI<br>NO. 67, LAKE VIEW<br>SAUJANA RESORT<br>SEKSYEN U2<br>40150  SHAH ALAM<br>SELANGOR | 471213-05-5111 | DIRECTOR | 06-08-2015 |
| MOHAMADON BIN ABDULLAH, DR<br>NO. 1<br>JALAN TELAWI LAPAN<br>BANGSAR BARU<br>BANGSAR<br>59100  KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 471226-01-5821 | DIRECTOR | 06-08-2015 |
| DAVID LAU NAI PEK<br>B-5-4<br>SRI PENNY CONDO<br>NO. 2B, JALAN TUN ISMAIL<br>51480  KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 521107-13-5321 | DIRECTOR | 06-08-2015 |
| TAN YOON JENS @ PFF KUAN<br>NO. 22<br>LEBOH TAMARIND<br>TAMAN SELATAN<br>41200  KLANG<br>SELANGOR | 511212-10-5511 | DIRECTOR | 06-08-2015 |

**102**



**SURUHANJAYA SYARIKAT MALAYSIA**
**COMPANIES COMMISSION OF MALAYSIA**
( Agensi di bawah KPDNKK )

4 / 25

<u>DIRECTORS/OFFICERS</u>

Company Name      : MALAYSIA AIRLINES BERHAD
Company Number   : **1116944-X**

| Name/Address | IC/Passport | Designation | Date of Appointment |
|---|---|---|---|
| SUKARTI BIN WAKIMAN, TAN SRI DATUK SERI PANGLIMA<br>NO. 9<br>KAMPUNG BERUNGIS<br>BATU 22, JALAN TUARAN<br>89208  TUARAN<br>SABAH | 540109-12-5083 | DIRECTOR | 06-08-2015 |
| MOHAMAD MORSHIDI BIN ABDUL GHANI,TAN SRI DATUK AMAR HAJI<br>NO. 381<br>JALAN BUNGA KASTURI<br>KAMPUNG PINANG JAWA<br>93050  KUCHING<br>SARAWAK | 560812-13-5599 | DIRECTOR | 06-08-2015 |
| MOHD IRWAN SERIGAR BIN ABDULLAH, TAN SRI DR.<br>NO. 26<br>JALAN P14 A1/1<br>PRESINCT 14<br>62050  PUTRAJAYA<br>W.P. PUTRAJAYA | 570307-03-5529 | DIRECTOR | 06-08-2015 |
| MOHAMMAD IZANI BIN ASHARI<br>NO. 1<br>JALAN TIARA KEMENSAH 1<br>TIARA KEMENSAH<br>TAMAN MELAWATI<br>53100  KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 601020-03-5571 | DIRECTOR | 06-08-2015 |
| MOHAMMED SHAZALLI BIN RAMLY, DATU'<br>NO. 44<br>JALAN SS 17/2F<br>47500  SUBANG JAYA<br>SELANGOR | 611012-08-5025 | DIRECTOR | 06-08-2015 |
| SHERANJIV A/L M SAMMANTHAN<br>NO. 8, FLORA MURNI<br>JALAN KIARA 3<br>MONT KIARA<br>50480  KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 680313-05-5435 | DIRECTOR | 11-04-2016 |



**SURUHANJAYA SYARIKAT MALAYSIA**
**COMPANIES COMMISSION OF MALAYSIA**
( Agensi di bawah KPDNKK )

5 / 25

## DIRECTORS/OFFICERS

Company Name     : MALAYSIA AIRLINES BERHAD
Company Number   : **1116944-X**

| Name/Address | IC/Passport | Designation | Date of Appointment |
|---|---|---|---|
| OMAR SIDDIQ BIN AMIN NOER RASHID<br>NO. 12<br>JALAN SS 1/25<br>47300  PETALING JAYA<br>SELANGOR | 730812-12-5015 | DIRECTOR | 03-09-2015 |
| CHRISTOPH ROMANUS MULLER<br>LANSON PLACE<br>BUKIT CEYLON<br>10, JALAN CEYLON<br>50200  KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | C4V8R0KL7 | DIRECTOR | 16-03-2015 |
| PETER BRENDAN BELLEW<br>B-23A-06<br>BLOCK B<br>SENI MONT KIARA<br>2A, CHANGKAT DUTA KIARA<br>MONT' KIARA<br>50480  KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | PT7527023 | DIRECTOR | 19-04-2016 |
| CHRISTOPH ROMANUS MUELLER<br>LANSON PLACE<br>NO. 10, JALAN CEYLON<br>50200  KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | C4V8R0KL7 | MANAGER | 06-08-2015 |
| SABRINA ALBAKRI BINTI ABU BAKAR, DATO'<br>NO. 15, JALAN P/??D<br>SEKSYEN 6, WANGSA MAJU<br>53000  KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 701031-04-????? | SECRETARY | 14-07-2015 |

EXHIBIT "TT-6"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

MDL Docket No. 2712

Misc. No. 16-1184 (KBJ)

This Document Relates To:
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## <u>CERTIFICATE IDENTIFYING EXHIBIT</u>

I, hereby certify that the document marked as Exhibit **"TT-6"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on



2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI

MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

Exhibit TT-6

**104**



**SURUHANJAYA SYARIKAT MALAYSIA**
COMPANIES COMMISSION OF MALAYSIA
( Agensi di bawah KPDNKK )

1 / 61

Although all efforts has been carried out to ensure that the information provided is accurate and up to date, the Registrar of Companies will not be liable for any losses arising from any inaccurate or omitted information

### CORPORATE INFORMATION

Company Name        : MALAYSIAN AIRLINE SYSTEM BERHAD

Last Old Name       : MALAYSIA AIRLINES BERHAD

Date of Change      : 30-11-1971

Company Number      : **10601-W**

Incorporation Date  : 03-04-1971

Registration Date   : 03-04-1971

Type                : LIMITED BY SHARES
                    : PUBLIC LIMITED

Status              : EXISTING

Registered Address  : GROUND FLOOR, ADMINISTRATION BUILDING 2
                    MAS COMPLEX A
                    SULTAN ABDUL AZIZ SHAH AIRPORT
                    SUBANG
                    SELANGOR

Postcode            : 47200

Origin              : MALAYSIA

Business Address    : 3RD FLOOR, ADMINISTRATION BULDING 1
                    MAS COMPLEX A
                    SULTAN ABDUL AZIZ SHAH AIRPORT
                    SUBANG JAYA
                    SELANGOR

Postcode            : 47200

Nature of Business  : AIR TRANSPORTATION AND PROVISION OF RELATED SERVICES

**105**



SURUHANJAYA SYARIKAT MALAYSIA
COMPANIES COMMISSION OF MALAYSIA
( Agensi di bawah KPDNKK )

2 / 61

## SUMMARY OF SHARE CAPITAL

Company Name          : MALAYSIAN AIRLINE SYSTEM BERHAD
Company Number        : 10601-W

| TOTAL AUTHORIZED (RM) 10,041,900,001.00 | AMT | DIVIDED INTO | NOMINAL VALUE(Sen) |
|---|---|---|---|
| ORDINARY | 9,000,000,000.00 | 90,000,000,000 | 10 |
| ORDINARY B | 1.00 | 1 | 100 |
| PREFERENCE | 1,000,000,000.00 | 100,000,000,000 | 1 |
| PREFERENCE A | 100,000.00 | 1,000,000 | 10 |
| PREFERENCE B | 41,800,000.00 | 418,000,000 | 10 |
| OTHERS | 0.00 | 0 | 0 |

| TOTAL ISSUED (RM) 1,159,238,920.01 | CASH | OTHERWISE THAN CASH | NOMINAL VALUE(Sen) |
|---|---|---|---|
| ORDINARY | 10,899,145,335 | 693,243,865 | 10 |
| ORDINARY B | 0 | 0 | 100 |
| PREFERENCE | 1 | 0 | 1 |
| PREFERENCE A | 0 | 0 | 10 |
| PREFERENCE B | 0 | 0 | 10 |
| OTHERS | 0 | 0 | 0 |

**106**



SURUHANJAYA SYARIKAT MALAYSIA
COMPANIES COMMISSION OF MALAYSIA
( Agensi di bawah KPDNKK )

3 / 61

<u>DIRECTORS/OFFICERS</u>

Company Name      : MALAYSIAN AIRLINE SYSTEM BERHAD
Company Number    : 10601-W

| Name/Address | IC/Passport | Designation | Date of Appointment |
|---|---|---|---|
| MOHAMMAD FAIZ BIN MOHAMMAD AZMI; DATO'<br>LEVEL 10<br>1 SENTRAL<br>JALAN RAKYAT<br>KUALA LUMPUR SENTRAL<br>PO BOX 10192<br>50706 KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 630306-71-5997 | ADMINISTRATOR | 25-05-2015 |
| FAUZIAH BINTI YAACOB, DATO'<br>NO. 8 JALAN SUBANG PERMAI 7<br>DESA SUBANG PERMAI<br>SEKSYEN U6<br>40150 SHAH ALAM<br>SELANGOR | 550730-10-5688 | ALT DIRECTOR | 05-06-2014 |
| MD NOR BIN MD YUSOF, TAN SRI<br>67<br>LAKEVIEW SAUJANA RESORT<br>SEC. U2<br>40150 SHAH ALAM<br>SELANGOR | 471213-05-5111 | DIRECTOR | 01-08-2011 |
| MOHAMADON BIN ABDULLAH, DR<br>NO. 1 JALAN TELAWI LAPAN<br>BANGSAR BARU<br>BANGSAR<br>59100 KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 471226-01-5821 | DIRECTOR | 22-06-2012 |
| DAVID LAU NAI PEK<br>B-3-4<br>SRI KENNY CONDO<br>NO.28 JALAN TUN ISMAIL<br>50480 KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 521107-13-5321 | DIRECTOR | 09-08-2011 |



SURUHANJAYA SYARIKAT MALAYSIA
COMPANIES COMMISSION OF MALAYSIA
(Agensi di bawah KPDNKK)

4 / 61

**DIRECTORS/OFFICERS**

Company Name        : MALAYSIAN AIRLINE SYSTEM BERHAD
Company Number      : 10601-W

| Name/Address | IC/Passport | Designation | Date of Appointment |
|---|---|---|---|
| TAN BOON SENG @ KRISHNAN, TAN SRI<br>22 LEBOH TAMARIND<br>TAMAN SELATAN<br>41200   KLANG<br>SELANGOR | 521212-10-5511 | DIRECTOR | 09-08-2011 |
| SUKARTI BIN WAKIMAN, TAN SRI DATUK SERI PANGLIMA<br>NO. 9, KG BERUNGIS,<br>BATU 22, JALAN TUARAN<br>89208   TUARAN<br>SABAH | 540109-12-5083 | DIRECTOR | 13-01-2015 |
| AHMAD JAUHARI BIN YAHYA<br>9, LENGKOK ZAABA 2<br>60000   KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 540618-10-6067 | DIRECTOR | 19-09-2011 |
| MOHAMAD MORSHIDI BIN ABDUL GHANI,TAN SRI DATUK AMAR HAJI<br>381 JALAN JAWA<br>KAMPUNG PINANG JAWA<br>KUCHING,SARAWAK<br>93050   KUCHING<br>SARAWAK | 560812-13-5599 | DIRECTOR | 13-01-2015 |
| MOHD IRWAN SERIGAR BIN ABDULLAH, DATO' DR.<br>26 JALAN P14 A1/1<br>PRESINCT 14<br>62050   PUTRAJAYA<br>W.P. PUTRAJAYA | 570307-03-5529 | DIRECTOR | 22-10-2012 |
| MOHAMMAD IZANI BIN ASHARI<br>1 JALAN TIARA KEMENSAH 1<br>TIARA KEMENSAH<br>SAUJANA MELAWATI<br>53100   KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 601020-03-5571 | DIRECTOR | 12-09-2014 |

**108**



**SURUHANJAYA SYARIKAT MALAYSIA**
**COMPANIES COMMISSION OF MALAYSIA**
(Agensi di bawah KPDNKK)

5 / 61

## DIRECTORS/OFFICERS

Company Name        : MALAYSIAN AIRLINE SYSTEM BERHAD
Company Number      : 10601-W

| Name/Address | IC/Passport | Designation | Date of Appointment |
|---|---|---|---|
| MOHAMMED SHAZALLI BIN RAMLY,DATO'<br>44,JALAN SS17/2F<br>47500  SUBANG JAYA<br>SELANGOR | 611012-08-5025 | DIRECTOR | 12-01-2015 |
| MOHD SHAHAZWAN BIN MOHD HARRIS<br>NO. 11 PJU 7/29<br>MUTIARA DAMANSARA<br>47810  PETALING JAYA<br>SELANGOR | 711224-10-6383 | DIRECTOR | 17-06-2013 |
| CHRISTOPH ROMANUS MUELLER<br>LANCE PLACE<br>NO. 10 JALAN CEYLON<br>50200  KUALA  LUMPUR<br>WILAYAH PERSEKUTUAN | C4V8ROKL7 | DIRECTOR | 12-01-2015 |
| CHRISTOPH ROMANUS MUELLER<br>LANSON PLACE<br>NO. 10 JALAN CEYLON<br>50200  KUALA  LUMPUR<br>WILAYAH PERSEKUTUAN | C4V8ROKL7 | MANAGER | 01-05-2015 |
| RIZANI BIN HASSAN<br>B-2-13 ANJUNG VILLA CONDOMINIUM<br>JALAN 1/48A SENTUL PERDANA<br>BANDAR BARU SENTUL<br>51000  KUALA LUMPUR<br>WILAYAH PERSEKUTUAN | 620623-02-5851 | SECRETARY | 06-11-2012 |

EXHIBIT "TT-7"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

_____

MDL Docket No. 2712

_____
Misc. No. 16-1184 (KBJ)

This Document Relates To:
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No.1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv–01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-7"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI

MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

**109**

Exhibit __TT- 7__



# LAWS OF MALAYSIA

## Act 765

### MALAYSIAN AIRLINE SYSTEM BERHAD (ADMINISTRATION) ACT 2015

.

**110**

2

| | | | |
|---|---|---|---|
| Date of Royal Assent | ... | ... | 30 December 2014 |
| Date of publication in the *Gazette* | ... | ... | 5 January 2015 |

Publisher's Copyright ©
PERCETAKAN NASIONAL MALAYSIA BERHAD
All rights reserved. No part of this publication may be reproduced, stored in a retrieval system or transmitted in any form or by any means electronic, mechanical, photocopying, recording and/or otherwise without the prior permission of Percetakan Nasional Malaysia Berhad (Appointed Printer to the Government of Malaysia).

**111**

# LAWS OF MALAYSIA

## Act 765

## MALAYSIAN AIRLINE SYSTEM BERHAD (ADMINISTRATION) ACT 2015

### ARRANGEMENT OF SECTIONS

PART I

PRELIMINARY

Section

1. Short title and commencement
2. Application
3. Interpretation

PART II

ADMINISTRATION

4. Placement of the Company, *etc.*, under administration
5. Appointment of Administrator
6. Duration of administration
7. Qualifications of Administrator
8. Notification of appointment of Administrator
9. Functions of Administrator
10. Powers of Administrator
11. Effect of appointment of Administrator
12. Moratorium
13. Undue preference
14. Transition services
15. Investigation by Administrator
16. Duties of officers to assist in investigation

PART III

PROPOSAL OF ADMINISTRATOR AND APPOINTMENT OF INDEPENDENT ADVISOR

17. Administrator may re-negotiate contracts or prepare proposal or both

4           *Laws of Malaysia*         ACT **765**

Section

18.    Appointment and qualifications of Independent Advisor

19.    Review of proposal by Independent Advisor

20.    Decision of the appointer

21.    Implementation of proposal

22.    Transfer of property or liabilities


PART IV

MALAYSIA AIRLINES BERHAD

23.    Incorporation of Malaysia Airlines Berhad

24.    Offer of employment

25.    Malaysia Airlines Berhad, *etc.*, not a successor employer

26.    Work rules, code of conduct and regulations

27.    Negotiation with trade unions and associations

28.    Matters relating to productivity or effective utilization of workforce


PART V

VESTING OF PROPERTY AND LIABILITIES

29.    Vesting provisions

30.    Replacement vesting order


PART VI

GENERAL

31.    Non-application of section 132E of the Companies Act 1965

32.    Indemnity for Administrator, *etc.*

33.    Immunity

34.    Limits on the grant of orders of court

35.    Validity of transaction

36.    Things done in anticipation of the enactment of this Act

SCHEDULE

**113**

# LAWS OF MALAYSIA

## Act 765

## MALAYSIAN AIRLINE SYSTEM BERHAD (ADMINISTRATION) ACT 2015

An Act to provide special laws for the administration of the Malaysian Airline System Berhad, its wholly owned subsidiary companies, and its partially owned subsidiary companies providing goods or carrying out services or both that are essential to the operations of the Malaysian Airline System Berhad and the appointment of an administrator with the powers to administer and manage the Malaysian Airline System Berhad, its wholly owned subsidiary companies, and its partially owned subsidiary companies providing goods or carrying out services or both; to provide for the establishment of a new entity which will replace the Malaysian Airline System Berhad as the national carrier; and to provide for related matters.

[                               ]

WHEREAS special provisions are required in the public interest to ensure the continuity of the essential air services by the Malaysian Airline System Berhad as the national carrier and the provision of uninterrupted connectivity to and from and within Malaysia by the national carrier:

AND WHEREAS legislation is the only means to expeditiously administer and manage the Malaysian Airline System Berhad, its wholly owned subsidiary companies and its partially owned subsidiary companies providing goods or carrying out services or both that are essential to the operations of the national carrier without disruption to their operations:

6                *Laws of Malaysia*                Act 765

AND WHEREAS the establishment of a new entity, that is the Malaysia Airlines Berhad, with a new business model is critical to ensure continuity, profitability and viability, and to assume certain businesses, property, rights, liabilities and affairs of the Malaysian Airline System Berhad:

AND WHEREAS it is in the public interest to ensure the continued existence of a national carrier to facilitate Malaysia's economic development:

AND WHEREAS legislation provides an effective, efficient and seamless means to transition the business, property, rights, liabilities and affairs of the Malaysian Airline System Berhad to the new entity:

**NOW, THEREFORE, IT IS ENACTED** by the Parliament of Malaysia as follows:

PART I

PRELIMINARY

**Short title and commencement**

**1.** (1) This Act may be cited as the Malaysian Airline System Berhad (Administration) Act 2015.

(2) This Act comes into operation on a date to be appointed by the Minister by notification in the *Gazette.*

**Application**

**2.** (1) This Act shall apply—

(*a*) for a period of five years from the date of the coming into operation of this Act; or

(*b*) until the listing and quotation of the shares of the Malaysia Airlines Berhad on the official list of Bursa Malaysia Berhad,

whichever is earlier.

(2) Notwithstanding subsection (1), the Minister may, by order published in the *Gazette*, declare an earlier cessation of this Act.

(3) Notwithstanding subsection (1), this Act may, by a resolution passed by both Houses of Parliament, be extended for a further period as may be specified in the resolution.


**Interpretation**

**3.** In this Act, unless the context otherwise requires—

"regulatory body" means an authority that is responsible for the enforcement of laws;

"proposal" means the proposal under paragraph 17(1)*(b)*;

"rights" means all rights, powers, privileges and immunities, whether actual, contingent or prospective;

"property" includes all property, movable and immovable, and all interests, easement or rights, whether equitable or legal in, to or out of the property, choses in action, money and goodwill;

"Malaysia Airlines Berhad" means the corporation referred to in section 23;

"Minister" means the Prime Minister of Malaysia;

"officer" has the meaning assigned to it in section 4 and subsection 132(6) of the Companies Act 1965 [*Act 125*];

"appointer" means the person who appoints an Administrator under section 5;

"creditor" includes counterparties in an agreement, contract or arrangement with the Administered Companies;

"Independent Advisor" means the person appointed under section 18;

"Administrator" means the person appointed under section 5;

"Company" means the Malaysian Airline System Berhad;

8 *Laws of Malaysia* ACT **765**

"specified subsidiary companies" means the partially owned subsidiary companies listed in paragraph 4*(c)*;

"Administered Companies" means the Company, its wholly owned subsidiary companies, and the specified subsidiary companies that have been placed under administration under section 4;

"liabilities" includes debts, charges and obligations of every description whether  present or future, actual or contingent, and whether payable or to be observed or performed in Malaysia or elsewhere.

PART II

ADMINISTRATION

**Placement of the Company, *etc.*, under administration**

**4.**  Subject to the prior written approval of the Minister, a member of the Company, or the board of directors of the Company pursuant to a resolution of the board of directors, may place—

*(a)* the Company;

*(b)* any wholly owned subsidiary company of the Company; and

*(c)* the following partially owned subsidiary companies of the Company:

(i) Abacus Distribution Systems (Malaysia) Sdn. Bhd. (Company No. 180535-T);

(ii) Aerokleen Services Sdn. Bhd. (Company No. 277266-X); and

(iii) MAS Awana Services Sdn. Bhd. (Company No. 372384-D),

under administration in accordance with this Act.

*Malaysian Airline System Berhad (Administration)*     9

**Appointment of Administrator**

**5.** (1) The member of the Company or the board of directors of the Company referred to in section 4 shall appoint an Administrator for the Administered Companies.

(2) The appointer may at any time after the appointment of the Administrator under subsection (1) appoint a new Administrator to replace the existing Administrator.

(3) Where the Administrator is released from his appointment, he shall, with effect from such release, be discharged from all duties and liabilities in respect of his administration or in relation to his conduct as the Administrator.

**Duration of administration**

**6.** The administration of the Administered Companies by the Administrator shall commence from the date of appointment of the Administrator under subsection 5(1) and shall continue until the administration is terminated by the appointer.

**Qualifications of Administrator**

**7.** (1) No person shall be appointed as an Administrator unless he—

    *(a)* is a natural person; and

    *(b)* has consented in writing to his appointment.

(2) The following persons shall be qualified to be appointed as an Administrator:

    *(a)* a company auditor approved under the Companies Act 1965; or

    *(b)* a person who is, in the opinion of the appointer, capable of performing the duties of an administrator.

(3) The following persons shall not be qualified to be appointed as an Administrator:

    *(a)* an undischarged bankrupt;

    *(b)* a mortgagee of any property of the Administered Companies;

    *(c)* a person with direct or indirect shareholding in the Administered Companies;

    *(d)* a person who is, directly or indirectly, interested in any contract or arrangement to provide goods or services to the Administered Companies;

    *(e)* an auditor of the Administered Companies; or

    *(f)* an officer of the Administered Companies.

**Notification of appointment of Administrator**

**8.** (1) The Administrator shall within seven days after his appointment—

    *(a)* lodge a notice of the appointment with the Registrar of Companies; and

    *(b)* cause a notice of his appointment to be published in at least two national daily newspapers, one of which shall be in the national language.

(2) Every invoice, order for goods or services, business letter, cheque, credit note, negotiable instrument or bill of lading which is issued by or on behalf of the Administered Companies or the Administrator after the appointment of the Administrator shall contain the words "Administrator Appointed".

(3) Any non-compliance of subsections (1) and (2) shall not affect the validity of the acts of the Administrator in the administration of the Administered Companies.

(4) For the purpose of this section, "Registrar of Companies" has the meaning assigned to it under section 4 of the Companies Act 1965.

*Malaysian Airline System Berhad (Administration)*    11

**Functions of Administrator**

**9.** (1) The Administrator shall have the following functions:

*(a)* to carry out the business and operations (including the restructuring of such operations) of the Administered Companies;

*(b)* to take into his custody or under his control the property, liabilities, businesses and affairs of the Administered Companies and all the property to which the Administered Companies are or appear to be entitled;

*(c)* to manage the property, business, liabilities and affairs of the Administered Companies in the name and on behalf of the Administered Companies, including the disposal of property and liabilities;

*(d)* to assume control and exercise all powers conferred on the directors under the Companies Act 1965 or by the constitution of the Administered Companies, and the powers of the directors of the Administered Companies shall then cease except in so far as the Administrator may permit;

*(e)* to make any arrangement or compromise on behalf of the Administered Companies with their creditors or any class of them or between the specified subsidiary companies and their members or any class of them or between the Administered Companies and their debtors or any class of them; and

*(f)* to perform any function that the Administered Companies or any of their officers could perform or exercise if the Administrator had not been appointed.

(2) Nothing in paragraph (1)*(d)* shall require the Administrator to call any meetings of the Administered Companies.

**Powers of Administrator**

**10.**    In performing his functions under section 9, the Administrator shall have the following powers:

*(a)* to carry on the business of the Administered Companies;

12            *Laws of Malaysia*             ACT **765**

*(b)* to do all things (including the carrying out of works) as may be necessary for the management, realization and preservation of the property, undertakings and affairs of the Administered Companies;

*(c)* to appoint any person as a director of any of the Administered Companies, whether to fill a vacancy or otherwise, and to remove or suspend from office any director of the Administered Companies notwithstanding the Memorandum and Articles of Association or any other law;

*(d)* to take possession of the property of the Administered Companies and for that purpose, to take such proceedings as may seem to him expedient;

*(e)* to sell or otherwise dispose of all or part of the property, business, undertaking or property of the Administered Companies by public auction or private contract;

*(f)* to raise or borrow money and grant security over the property of the Administered Companies for the raising or borrowing of such money;

*(g)* to appoint a solicitor or an accountant, or other professionally qualified person to assist him in the performance of his functions;

*(h)* to bring or defend any action or other legal proceedings in the name and on behalf of the Administered Companies;

*(i)* to refer to arbitration any question affecting the Administered Companies;

*(j)* to effect and maintain insurances in respect of the property of the Administered Companies;

*(k)* to use the common seal of the Administered Companies;

*(l)* to do all acts and to execute in the name and on behalf of the Administered Companies any deed, receipt or other document;

*(m)* to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the Administered Companies;

*Malaysian Airline System Berhad (Administration)*    13

*(n)* to employ or terminate employees, and to determine the compensation payable to such dismissed employees;

*(o)* to transfer any property, business, liabilities and affairs of the Administered Companies to the Malaysia Airlines Berhad or any of the Malaysia Airlines Berhad's subsidiary companies;

*(p)* to purchase the shares, property and equipment of any company, in which the Administered Companies are existing shareholders, that supplies goods or services or both which are essential to ensure the uninterrupted continuation of the business vested or to be vested in the Malaysia Airlines Berhad pursuant to Part V;

*(q)* to grant or accept a surrender of a lease or tenancy of the property of the Administered Companies, and to take a lease or tenancy of any property required or convenient for the property of the Administered Companies;

*(r)* to call up any uncalled capital of the Administered Companies, alter or reduce all or part of the share capital of the Administered Companies;

*(s)* to rank and claim in the bankruptcy, insolvency or liquidation of any person indebted to the Administered Companies and to receive dividends, and to accede to trust deeds for the creditors of any such person;

*(t)* to present or defend a petition for the winding up of the Administered Companies;

*(u)* to change the location of any of the Administered Companies' registered offices;

*(v)* to appoint any agent to do any business which the Administrator is unable to do himself or which can more conveniently be done by an agent;

*(w)* to make any payment which is necessary or incidental to the performance of his functions; and

*(x)* to do all other things incidental to the performance of the Administrator's functions.

**Effect of appointment of Administrator**

**11.** (1) On the appointment of the Administrator, a moratorium shall take effect during which—

> *(a)* no petition for the winding up of the Administered Companies may be filed by any person in any court;

> *(b)* no resolution may be passed or order made for the winding up of the Administered Companies;

> *(c)* no receiver, receiver and manager or provisional liquidator, may be appointed, or if appointed, his appointment shall immediately cease and he shall vacate his office;

> *(d)* no steps may be taken—

>> (i) to create, perfect or enforce any security over any property of the Administered Companies;

>> (ii) to enforce a judgment over any property of the Administered Companies;

>> (iii) to re-possess any property in the possession, custody or control of the Administered Companies; or

>> (iv) to set off any debt owing to the Administered Companies in respect of any claim against the Administered Companies,

> except with the prior written consent of the Administrator;

> *(e)* no proceedings and no execution or other legal process in any court or tribunal may be commenced or continued with, and no distress may be levied, against the Administered Companies or their property except with the prior written consent of the Administrator;

> *(f)* any application made under section 176 of the Companies Act 1965 shall be adjourned *sine die* and any restraining order issued under subsection 176(10) of the Companies Act 1965 shall be immediately discharged and set aside; and

*Malaysian Airline System Berhad (Administration)*    15

    *(g)* no proceedings and no execution or other legal process in any court or tribunal may be commenced, or continued with, against any person providing a guarantee or acting as a guarantor for the liability of the Administered Companies in respect of that liability except with the prior written consent of the Administrator.

(2) The Administrator shall not be liable to an action or other damages in respect of a refusal to give his consent under subsection (1).

(3) The appointment of the Administrator shall not—

    *(a)* be regarded as placing the Administrator or the Administered Companies in breach of or in default under any contract, or in breach of confidence;

    *(b)* be regarded as placing the Administered Companies in breach of or in default under any contract or be regarded as giving rise to a right or duty for any person to—

        (i) terminate, cancel or modify an agreement;

        (ii) enforce or accelerate the performance of an obligation of the Administered Companies;

        (iii) require the performance of an obligation not otherwise arising for performance; or

        (iv) refuse or discontinue the performance of his obligations;

    *(c)* be regarded as placing the Administrator or the Administered Companies in breach of any law or agreement prohibiting, restricting or regulating the assignment, sale, disposition or transfer of any property or disclosure of information;

    *(d)* release a surety from an obligation;

    *(e)* invalidate or discharge a contract or security;

    *(f)* be regarded as terminating, cancelling or varying any right, privilege, exemption or priorities in relation to a property of the Administered Companies; or

16          *Laws of Malaysia*          Act **765**

   *(g)* be regarded as placing the Administered Companies or the Administrator in breach of any law or any order of any court.

   (4) Nothing in this section shall prevent any civil or criminal proceedings from being instituted or continued by any regulatory body against the Administered Companies.

**Moratorium**

**12.** (1) The duration of the moratorium referred to in section 11, unless the administration is sooner terminated under section 6 or paragraph 20(3)*(c)*, shall be for a period of twelve months commencing from the date of the appointment of the Administrator under subsection 5(1).

   (2) The Minister may, upon the written request of the Administrator or the appointer, extend the moratorium for a period of not more than twelve months upon being satisfied that the circumstances warrant such extension, and such power of extension shall not be exercisable more than once.

   (3) If the period of the moratorium is extended under subsection (2), the Administrator shall cause a notice of the extension to be published in at least two national daily newspapers, one of which shall be in the national language.

**Undue preference**

**13.** (1) On the appointment of the Administrator, any transfer, mortgage, execution, attachment, obligation, settlement, charge, assignment, delivery of goods, payment or other act relating to any property made, incurred or done by or against the Administered Companies which, had it been made, incurred or done by or against an individual, would in his bankruptcy under the law of bankruptcy be void or voidable, may be avoided or recoverable by the Administrator.

   (2) Where a reference is made in the law of bankruptcy to a date for the purpose of determining the effect of bankruptcy on transactions mentioned in subsection (1), that date shall be the date on which this Act comes into operation.

**Transition services**

**14.** (1) Where any person is under a contract or obligation to provide goods or services or both to the Administered Companies, such person shall continue to provide the goods or services or both to the Malaysia Airlines Berhad and its subsidiary companies instead of the Administered Companies, where required by the Administrator, and the Malaysia Airlines Berhad and its subsidiary companies shall pay for such goods or services or both at the same rate as would have been paid by the Administered Companies.

(2) Notwithstanding any other provisions of this Act or any other law, where the person fails to provide the goods or services or both to the Malaysia Airlines Berhad and its subsidiary companies as required under subsection (1), the Malaysia Airlines Berhad and its subsidiary companies shall have the right to recover from such person any costs incurred or damages for any loss suffered.

**Investigation by Administrator**

**15.** (1) The Administrator may require any officer of the Administered Companies to verify and submit to the Administrator a statement as to the affairs of the Administered Companies within twenty-one days.

(2) The statement shall be in such form as may be determined by the Administrator and shall contain the following information:

*(a)* the particulars of all property and liabilities;

*(b)* the names and addresses of the creditors;

*(c)* the securities held by the creditors and the dates when the securities were given;

*(d)* a statutory declaration made under the Statutory Declarations Act 1960 [*Act 13*], declaring the information in the statement of affairs as being true and correct; and

*(e)* any other information as may be required by the Administrator.

**Duties of officers to assist in investigation**

**16.** (1) An officer of the Administered Companies shall within seven days after a request from the Administrator—

(*a*) deliver to the Administrator all books, records and documents of the Administered Companies in the possession of the officer; and

(*b*) if the officer knows the location of other books, records and documents relating to the Administered Companies, inform the Administrator of the location of those books, records and documents.

(2) An officer of the Administered Companies shall—

(*a*) attend to the Administrator at such times; and

(*b*) give the Administrator such information concerning the Administered Companies' property, affairs and financial circumstances,

as the Administrator may reasonably require.

(3) The Administrator shall, on the completion of the administration under this Act, return to the Administered Companies any books, records and documents received under subsection (1).

PART III

PROPOSAL OF ADMINISTRATOR AND APPOINTMENT OF
INDEPENDENT ADVISOR

**Administrator may re-negotiate contracts or prepare proposal or both**

**17.** (1) The Administrator may, in the administration of the Administered Companies, at his sole discretion, take any one or both of the following actions:

(*a*) re-negotiate the terms and conditions of any contracts or agreements of the Administered Companies with the counterparties;

*Malaysian Airline System Berhad (Administration)*    19

(b) prepare a proposal with respect to the Administered Companies or any claims and liabilities against or of the Administered Companies.

(2) The proposal referred to in subsection (1)*(b)* may include any provision as the Administrator thinks fit.

(3) Without prejudice to the generality of subsection (2), the proposal may provide for the transfer of any property, business or liability of the Administered Companies to a person named in the proposal—

(a) by means of vesting under Part V; or

(b) in accordance with the relevant law applicable to effect the transfer of such property, business or liability.

(4) The Administrator shall, upon the completion of the proposal under subsection (1), submit the proposal to the Independent Advisor and the appointer.

**Appointment and qualifications of Independent Advisor**

**18.** (1) Upon being notified by the Administrator that a proposal will be prepared under section 17, the appointer shall appoint an Independent Advisor.

(2) No person shall be appointed as an Independent Advisor unless—

(a) the person has consented in writing to the appointment;

(b) the person is independent of the appointer, management and board of directors of the Administered Companies and the Malaysia Airlines Berhad, and has no interest whatsoever in the Administered Companies and the Malaysia Airlines Berhad; and

(c) the person is—

(i) an investment bank;

(ii) a firm of accountants; or

20                    *Laws of Malaysia*                    ACT **765**

(iii) a person (other than a natural person) who is permitted to carry on the activity of advising on corporate finance which is a regulated activity under the Capital Markets and Services Act 2007 [*Act 671*] and who, in the opinion of the appointer, has the requisite experience or is capable of performing the duties of an Independent Advisor.

**Review of proposal by Independent Advisor**

**19.** (1) The Independent Advisor shall carry out a review of the proposal prepared by the Administrator under section 17.

(2) In reviewing the proposal, the Independent Advisor may take into consideration—

(a) the interests of all persons affected by the proposal, including the creditors, the Administered Companies and the Malaysia Airlines Berhad, if applicable, giving each category of persons affected by the proposal such weightage as he thinks fit; or

(b) such other matters or consideration as the Independent Advisor may consider relevant or appropriate under the circumstances.

(3) Upon the completion of the review, the Independent Advisor shall prepare a report on his review and submit the report to the Administrator and the appointer.

**Decision of the appointer**

**20.** (1) The appointer shall consider the proposal of the Administrator together with the report of the Independent Advisor submitted to the appointer under subsection 19(3).

(2) Where the appointer approves the proposal, the Administrator shall implement the proposal in accordance with its terms.

(3) Where the appointer rejects the proposal, the appointer may—

(a) direct the Administrator to revise the proposal;

*(b)* direct the Administrator to prepare a new proposal; or

*(c)* terminate the administration of the Administered Companies.

### Implementation of proposal

**21.** (1) Where the approval of a regulatory body is required to implement the proposal and conditions are imposed by the regulatory body, the Administrator shall refer the conditions imposed to the appointer.

(2) If the appointer thinks that the conditions are not in the interest of the Administered Companies, the appointer may—

*(a)* direct the Administrator to revise the proposal;

*(b)* direct the Administrator to prepare a new proposal; or

*(c)* terminate the administration of the Administered Companies.

(3) Prior to the implementation of the proposal, the Administrator shall send a copy of the proposal and the report of the Independent Advisor by registered post to the last-known address of or through electronic medium to each of the creditors of the Administered Companies affected by the proposal and any other persons affected by the terms of the proposal.

(4) Notwithstanding the provisions of any law or contract, the Administrator shall have the power to implement and do all things necessary to fully and effectively carry out and give effect to the proposal or any part of the proposal without the need for any notice to or approval or consent of any member or creditor of the Administered Companies or any other person affected by the proposal and the proposal shall be binding on the Administered Companies, the creditors of the Administered Companies and all persons affected by the terms of the proposal, including the Malaysia Airlines Berhad, if applicable.

(5) Notwithstanding anything to the contrary in any law of guarantee—

*(a)* the implementation of a proposal under this section shall not release or discharge any security provided by any person to secure any duty or liability owed by the Administered Companies to any of its creditor; and

22          *Laws of Malaysia*         ACT **765**

(*b*) each such security and any such duty or liability of the person providing the security shall remain valid and enforceable against that person notwithstanding the implementation of the proposal, or any compromise, arrangement, reconstruction or amalgamation in connection with the Administered Companies.

(6) Notwithstanding the failure to notify any creditors of the Administered Companies and persons affected by the terms of the proposal in accordance with the requirements of subsection (3), such failure shall not affect the validity of the proposal.

## Transfer of property or liabilities

**22.** (1) If the proposal directs that property or liabilities are to be transferred, the Administrator shall transfer the property or liabilities to the transferee in accordance with the vesting provisions under Part V and the terms and conditions set out in the proposal.

(2) For the purpose of this section, a reference to "Malaysia Airlines Berhad" in Part V shall be construed as a reference to the proposed transferee named in the proposal.

PART IV

MALAYSIA AIRLINES BERHAD

## Incorporation of Malaysia Airlines Berhad

**23.** The corporation incorporated under the Companies Act 1965 by the name of "Malaysia Airlines Berhad" shall have the main objective of operating the national carrier of Malaysia and shall carry on the business of the national carrier as a commercial enterprise and such other businesses as the board of directors of the Malaysia Airlines Berhad thinks fit.

## Offer of employment

**24.** The Malaysia Airlines Berhad may, in its sole discretion, offer employment to any person who immediately before the date of that offer is in the employment or service of the Administered Companies on such terms and conditions as the Malaysia Airlines Berhad may determine.

*Malaysian Airline System Berhad (Administration)*    23

**Malaysia Airlines Berhad, *etc.*, not a successor employer**

**25.** (1) Notwithstanding anything to the contrary in this Act or under any law, where the Administrator assumes control of the Administered Companies, or where the Malaysia Airlines Berhad makes an offer of employment to a person in the employment or service of the Administered Companies, or where the Malaysia Airlines Berhad enters into a transition service agreement with the Administered Companies, the Administrator, appointer or the Malaysia Airlines Berhad shall not—

    *(a)* be regarded as the successor, assignee or transferee or a successor employer to the Administered Companies;

    *(b)* be liable for any obligation relating to any retirement plan or other post-employment benefit plans in respect of the employees or former employees of the Administered Companies or any predecessor of the Administered Companies that exists prior to the assumption of control or appointment; or

    *(c)* be liable for any sum which is calculated by reference to a period of time prior to the Malaysia Airlines Berhad becoming the employer of the person in question.

(2) The Malaysia Airlines Berhad, the appointer and the Administrator shall not be named as a party in any claim or application made or joined as a party in any proceeding commenced or continued by or on behalf of any employees or former employees of the Administered Companies pursuant to the Industrial Relations Act 1967 [*Act 177*], Employment Act 1955 [*Act 265*], Sabah Labour Ordinance 1950 [*Sabah Cap. 67*], Sarawak Labour Ordinance 1952 [*Sarawak Cap. 76*] or the Trade Unions Act 1959 [*Act 262*].

**Work rules, code of conduct and regulations**

**26.** The Malaysia Airlines Berhad may, if it thinks fit, impose any work rules, code of conduct and regulations in relation to its employees in accordance with all applicable laws.

24    *Laws of Malaysia*    ACT **765**

**Negotiation with trade unions and associations**

**27.** (1) All matters to be discussed or negotiated between the Malaysia Airlines Berhad and—

   *(a)* any trade union duly recognized by the Malaysia Airlines Berhad in accordance with the Industrial Relations Act 1967 and the Trade Unions Act 1959; and

   *(b)* any association recognized by the Malaysia Airlines Berhad,

shall be by way of meetings, of which fourteen days' notice shall be given to the trade unions and associations by the Malaysia Airlines Berhad.

(2) A meeting to be convened under subsection (1) shall not proceed unless all of the trade unions and associations are duly represented in the meeting.

(3) If after half an hour from the time appointed for a meeting, not all of the trade unions and associations are duly represented, the meeting shall stand adjourned to the subsequent week, on the same day and time and at the same venue without any further notice.

(4) If the meeting is adjourned to a day which is a public holiday, the adjourned meeting shall be reconvened on the next working day.

(5) When the adjourned meeting is reconvened on the new date, the non-attendance by any trade union or association shall not prevent the meeting from proceeding.

(6) Any decision made during the meeting by the Malaysia Airlines Berhad and the trade unions and associations present at the meeting shall be valid and binding on the Malaysia Airlines Berhad and all of the trade unions and associations recognized by the Malaysia Airlines Berhad.

(7) In a meeting under this section, where the trade unions and associations unanimously resolve that the matter for discussion or negotiation relates solely to a specific trade union or association, the meeting shall be dissolved and a separate meeting shall be convened between the Malaysia Airlines Berhad and that specific trade union or association.

*Malaysian Airline System Berhad (Administration)*    25

(8) The separate meeting between the Malaysia Airlines Berhad and the specific trade union or association shall not discuss any matter other than the matter resolved under subsection (7).

## Matters relating to productivity or effective utilization of workforce

**28.** (1) Notwithstanding section 27, the following matters that relate to or impact the productivity or effective utilization of the workforce in the Malaysia Airlines Berhad shall be determined by the Malaysia Airlines Berhad:

  (a) resourcing and allocation of resources;

  (b) assessment of employees;

  (c) leave entitlement; and

  (d) working hours and scheduling of work, including flight time limitation and flight duty periods.

(2) The Malaysia Airlines Berhad in determining any matters under subsection (1) shall comply with all applicable laws and international standards.

PART V

VESTING OF PROPERTY AND LIABILITIES

## Vesting provisions

**29.** (1) The Minister may, from time to time, by order published in the *Gazette*, appoint a vesting date for each order and on such date any property or liabilities of the Administered Companies specified by the Minister in such order shall be transferred to and vested in the Malaysia Airlines Berhad without any conveyance, assignment or transfer whatsoever.

(2) The vesting pursuant to subsection (1) shall have the effect set out in the Schedule notwithstanding any written law or rule of law and shall be binding on any person affected by such vesting.

**Replacement vesting order**

**30.** (1)  The Minister may issue a new vesting order ("replacement vesting order") to replace any vesting order previously issued in order to rectify any omission or error in the vesting order.

(2)  Any replacement vesting order issued under subsection (1), stating that a property or liability has been transferred to and vested in the Malaysia Airlines Berhad, shall be conclusive evidence of such transfer and vesting as of the vesting date stipulated in the replacement vesting order.

(3)  If any law stipulates a time period within which a transfer of any property or liability stated to be the subject of a replacement vesting order shall be registered or filed, that period shall commence from the vesting date stipulated in the replacement vesting order or the date the replacement vesting order is issued, whichever is later.

(4)  Any act done by the Malaysia Airlines Berhad or any other person, in reliance on a vesting order previously issued shall not be affected by any omission or error rectified in a replacement vesting order.

(5)  For the purposes of this Act, any reference to a vesting order shall be deemed to include a reference to a replacement vesting order.

PART VI

GENERAL

**Non-application of section 132E of the Companies Act 1965**

**31.**  Section 132E of the Companies Act 1965 shall not apply to any disposition by any arrangement or transaction between the Company and the Malaysia Airlines Berhad.

**Indemnity for Administrator,** *etc.*

**32.** (1) The Administrator, the appointer and any other person are entitled to be indemnified out of the Administered Companies' property for—

    *(a)* in the case of the Administrator, his costs, expenses and remuneration as provided under the terms of his appointment;

*(b)* in the case of the appointer, the repayment of any credit facility provided by the appointer to the Administrator or to the Administered Companies during the administration of the Administered Companies;

*(c)* in the case of the Malaysia Airlines Berhad, the repayment of any credit facility provided by the Malaysia Airlines Berhad to the Administrator or to the Administered Companies during the administration of the Administered Companies; or

*(d)* in the case of any other person, the repayment of any credit facility provided by that person to the Administrator or the Administered Companies during the administration of the Administered Companies with the approval of the appointer.

(2) Notwithstanding any other law, a right of indemnity under subsection (1) shall have priority over the property of the Administered Companies and shall be paid in priority to all other secured and unsecured debts.

**Immunity**

**33.** (1) No action, suit, prosecution or proceeding whatsoever shall lie or be brought, instituted or maintained in any court or tribunal or before any authority against—

*(a)* the Minister;

*(b)* the appointer;

*(c)* the Administrator;

*(d)* the Independent Advisor;

*(e)* any officer of the persons referred to in paragraphs *(b)* and *(d)*; or

*(f)* any person lawfully acting on behalf of the appointer, the Administrator and the Independent Advisor,

for any loss or damage for or on account of, or in respect of any act or matter done or ordered to be done or omitted to be done by him in good faith and in the exercise of any power or discharge of any duty conferred on him or it under this Act.

(2) No action, suit, prosecution or proceeding whatsoever shall lie or be brought, instituted or maintained in any court or tribunal or before any authority against the Administrator appointed under this Act and any person lawfully acting on behalf of the Administrator by any party for any loss or damage caused by any act or matter done or statement made or omitted to be done by him in good faith and in the exercise of any function or power, conferred or imposed on him under this Act except where such loss or damage is due to wilful misconduct or gross negligence of the Administrator appointed under this Act and any person lawfully acting on behalf of the Administrator.

**Limits on the grant of orders of court**

**34.** (1) Notwithstanding any law, an order of a court cannot be granted—

    *(a)* which stays, restrains or affects the powers of the Administrator under this Act;

    *(b)* which stays, restrains or affects any action taken or proposed to be taken by the Administrator under this Act; or

    *(c)* which compels the Administrator to do or perform any act,

and any such order, if granted, shall be void and unenforceable and shall not be the subject of any process of execution whether for the purpose of compelling obedience of the order or otherwise.

(2) The decisions of the appointer in sections 4 and 5, the Minister in subsection 12(2) and the Administrator in subsection 17(1) shall be final.

**Validity of transaction**

**35.** Notwithstanding any written law or rule of law, any payment made, transaction entered into, or any other act or thing done in good faith by or with the consent of the Administrator shall be valid and effective for the purposes of this Act and shall not be considered as an undue preference in the winding up of the Administered Companies.

*Malaysian Airline System Berhad (Administration)*    29

## Things done in anticipation of the enactment of this Act

**36.** (1) All acts and things done by any person in connection with the property, liabilities, businesses and affairs of the Administered Companies in preparation for or in anticipation of the enactment of this Act and any expenditure incurred in relation to the acts and things done shall be deemed to have been authorized under this Act, if the acts and things done are consistent with the general intention and purposes of this Act.

(2) The incorporation of the Malaysia Airlines Berhad and all acts and things done by any person on behalf of the Malaysia Airlines Berhad and all rights and obligations acquired or incurred on behalf of the Malaysia Airlines Berhad shall, upon the coming into operation of this Act, be deemed to be done under this Act and shall be the rights and obligations of the Malaysia Airlines Berhad.

SCHEDULE

[Section 29]

VESTING OF PROPERTY AND LIABILITIES

**Interpretation**

1. (1) In this Schedule, unless the context otherwise requires—

"transferor" and "transferee" mean the respective parties identified as such in the vesting order:

"vesting order" means the order made by the Minister under section 29;

"transfer date" means the date stated in the vesting order on which any property or liability is transferred and vested.

(2) A reference in this Schedule to "liability" means the whole or such part of a liability as is transferred by way of the vesting order.

**Effect of vesting order**

2. (1) Where a property is transferred under the vesting order—

   (a) in the case where the property is held by the transferor alone immediately before the transfer date, the property shall on and from the transfer date vest in the transferee; and

*(b)* in the case where the property is held jointly by the transferor with any other person immediately before the transfer date, the property shall on and from the transfer date vest in the transferee jointly with that other person.

(2) The transferee shall, on and from the transfer date of the property, acquire and be vested with all of the transferor's present and future rights, title and interest in, and obligations with respect to, such property, free of any encumbrances save for any registered interest prevailing as at the transfer date.

(3) A vesting order stating that a property or liability has been transferred to and vested in the transferee shall be conclusive evidence of such transfer and vesting as of the transfer date.

(4) No provision in any agreement limiting or prohibiting the right of the transferor or requiring any consent to assign, sell, dispose of or transfer of a property shall have any application or effect in respect of the transfer and vesting of the property to the transferee.

(5) In relation to a liability transferred under a vesting order—

*(a)* the transferee shall be deemed to assume the liability and be liable to discharge the liability; and

*(b)* the transferor shall be released and discharged from the liability.

(6) In relation to a transfer under a vesting order—

*(a)* an existing agreement, instrument, or an order of any court under or by virtue of which the transferor has title, ownership, interest or rights to such property or liability shall be construed and shall have effect as if the reference to the transferor in that agreement, instrument or order were substituted with a reference to the transferee;

*(b)* an existing agreement to which the transferor is a party shall have effect as if the transferee had been a party to that agreement instead of the transferor;

*(c)* an existing instruction, direction, mandate, power of attorney, authority, undertaking or consent, whether or not in relation to an account that was given to the transferor, either alone or jointly with another person, shall have effect as if given to the transferee either alone or jointly with the other person;

*(d)* any security held immediately before the transfer date by the transferor or by a nominee or trustee of the transferor as security for the payment or discharge of any liability of any person, shall be held by the transferee or that nominee or trustee as the nominee or trustee of the transferee, with the same priority as the transferor had, and to the extent of that liability shall be available to the transferee as security for the payment or discharge of that liability; and if any

such security extends to future advances or future liabilities, the security shall be held by and be available to the transferee as security for future advances by or future liabilities of the transferee in the same manner as the future advances by or future liabilities of the transferor were secured immediately before the transfer date;

*(e)* in addition to any other right, power or remedy granted to the transferee, the transferee shall have the rights, powers and remedies (and in particular the rights and powers as to taking or resisting legal or other proceedings or making or resisting applications to any authority) for ascertaining, protecting or enforcing the rights, titles and interests vested in the transferee including those rights, titles or interests in respect of any legal or other proceedings or applications to any authority pending immediately before the transfer date by or against the transferor, and resisting any claim, liability or registered interest as if they had at all times been the rights, titles and interests of the transferee;

*(f)* a judgement, award or order obtained by the transferor and not fully satisfied before the transfer date shall be enforceable by the transferee;

*(g)* no transfer to or acquisition by the transferee shall be void or voidable by reason of the application of any law;

*(h)* where the custody of any goods, things or documents is held by the transferor as bailee immediately before the transfer date, such goods, things or documents shall be deemed to have passed to the transferee and the rights and obligations of the transferor under any contract of bailment relating to such goods, things or documents shall be transferred to the transferee;

*(i)* a negotiable instrument or order for payment of money given to or drawn on or accepted by the transferor, or payable at the place of business of the transferor, whether so given, drawn or accepted before, on or after the transfer date, shall have the same effect on and from the transfer date, as if that negotiable instrument or order for payment of money had been given to or drawn on or accepted by the transferee or were payable at the place of business of the transferee; and

*(j)* any account between the transferor and its customer shall become an account between the transferee and the customer, subject to the conditions and incidents that relate to such account up to the transfer date, and such account shall be deemed for all purposes to be a single continuing account.

(7) A transfer of a property or liability under a vesting order shall not—

*(a)* be regarded as placing the transferor, transferee or any person deriving title from the transferee or any other person in breach of or default under any contract or in breach of confidence;

32                        *Laws of Malaysia*                        ACT **765**

   *(b)* be regarded as giving rise to a right or duty for any person to—

       (i) terminate or amend an agreement;

       (ii) enforce or accelerate the performance of an obligation; or

       (iii) require the performance of an obligation not otherwise arising for performance;

   *(c)* be regarded as placing the transferor, transferee or any other person in breach of any law, rule of law or agreement prohibiting, restricting or regulating the assignment, sale, disposal or transfer of any property or liability or disclosure of information;

   *(d)* release a surety from an obligation;

   *(e)* invalidate or discharge a contract or security; or

   *(f)* be regarded as terminating or varying any rights, privileges, exemptions (including any tax exemptions) or priorities to which the transferor was entitled and which by virtue of this Schedule have vested in the transferee or existed in favour of the transferor in relation to any property or liability transferred to the transferee pursuant to this Schedule.

DICETAK OLEH
PERCETAKAN NASIONAL MALAYSIA BERHAD.
KUALA LUMPUR
PNMB  BAGI PIHAK DAN DENGAN PERINTAH KERAJAAN MALAYSIA

EXHIBIT "TT-8"

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

_____

MDL Docket No. 2712

_____
Misc. No. 16-1184 (KBJ)


**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

**Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ**
**Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ**
**Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ**

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-8"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

'2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR



MALAYSIA AVIATION GROUP

Exhibit ___TT- 8___



Home (/my/en.html) › Corporate Info (/my/en/corporate-info.html) › Malaysia Aviation Group

# Introduction of the Malaysia Aviation Group

Announcing the establishment of the Malaysia Aviation Group (MAG), a global aviation group with subsidiaries and equity investments, organised into four distinct business segments: Air Transportation Services, Ground Services, Aircraft Leasing and Talent Development. The group structure will drive better transparency and focused management across the respective operating subsidiaries, creating profit centre subsidiaries of the company's separate businesses. This will ultimately ensure P&L accountability and unlock the value of the various assets by driving new levels of operational efficiency. The more process oriented Group will also have beneficial effects for customers being more focused on their specific needs.

Malaysia Aviation Group CEO, Christoph Mueller said, "We are very pleased to announce the new group structure into separate and distinct companies. This will align structures and processes more consistently to the needs of our customer groups and raise the Group's overall efficiency and focus, reduce complexity and increase decision-making speeds. Looking forward the new structure will support every business unit's capability to access the capital market with its own value proposition."

Apart from ensuring better transparency and governance, across the operating subsidiaries via management of their respective accounting statements, the newly established group will also have the added advantage of allowing flexibility of the individual companies to explore collaborative opportunities and agility for capital raising opportunities making the subsidiaries more competitive and responsive, strengthening the position of the Group in its various markets and business segments.

The largest contributing business segment in the Group will be Air Transportation Services which houses Malaysia Airlines Berhad, Firefly and MASwings, network carriers serving the global and domestic markets and all passenger segments. Also under the umbrella is the division MAB Kargo providing standard, express and special cargo. This division will apply for its own Airline Operating Certificate and will operate as separate company as of 2017. The group will also include ground handling services, engineering, training facilities as well as a dedicated aircraft leasing company to provide customized and competitive aviation leasing solutions to the Group.

The team of board members of MAB, who remain unchanged, will also sit on the board of the Malaysia Aviation Group.

**Malaysia Aviation Group Corporate Structure as at 19 May 2016**

142
~~53~~



<u>Fact Sheet</u>

**Malaysia Airlines Berhad**

Malaysia Airlines Berhad is the national carrier of Malaysia, offering the best way to fly to, from and around Malaysia. The airline flies 40,000 guests daily on memorable journeys inspired by Malaysia's diverse richness. Malaysia Airlines embodies the incredible diversity of Malaysia, capturing its rich traditions, cultures, cuisines and warm hospitality on board, while opening up more of Malaysia's destinations than any other airline.

| | |
|---|---|
| Incorporation date | : 7 November 2014 |
| Projected revenue 2016 | : RM8,600 million |
| Employees | : 8,146 |
| Destinations | : 53 |
| Fleet | : A380-800: 06 |
| | : A330-300: 15 |
| | : B737-800: 54 |

**Firefly**

Firefly, operating out of the Penang and Subang hubs, provides connections to various points within Malaysia, Southern Thailand, Singapore and Sumatera of Indonesia. The airline aims to bring communities closer by overcoming geographical constraints through its network of point-to-point flights and link the world to its communities.

| | |
|---|---|
| Incorporation date | : 13 June 1995 |
| Projected revenue 2016 | : RM400 million |
| Employees | : 914 |
| Destinations | : 15 |
| Fleet | : ATR 72-500: 12 |
| | : ATR 72-600: 06 |
| Website (http://www.fireflyz.com.my/) | |

**MASwings**

MASwings, East Malaysia 's first commuter airline, caters to the air travel needs of Sarawak and Sabah's travelling population by providing affordable fares, convenient schedule and connections within the two states in Borneo. As a subsidiary of the Malaysia Aviation Group, MASwings also links with Malaysia Airlines Berhad for greater connectivity globally.

**143**
~~54~~

| | |
|---|---|
| Incorporation date | : 17 May 2007 |
| Projected revenue 2016 | : RM300 million |
| Employees | : 370 |
| Destinations | : 23 |
| Fleet | : ATR 72-500: 10 |
| | : DHT: 6 |

Website (http://www.maswings.com.my/en)

## MAB Kargo

MAB kargo, the cargo division of the Malaysia Aviation Group, operates scheduled, chartered air cargo services, ground handling services as well as airport to seaport cargo logistics via ground transportation. It also delivers through freighter services and belly space capacity on Malaysia Airlines.

| | |
|---|---|
| Incorporation date | : 17 September 2015 |
| Projected revenue 2016 | : RM1,300 million |
| Employees | : 775 |
| Destinations | : 15 |
| Fleet | : A330-200F: 2 (excluding 1 wet lease: A330-200F 9M-MUC) |

Website (http://www.maskargo.com/)

## AeroDarat Services

AeroDarat Services Sdn Bhd (formerly known as MAB Ground Handling Services Sdn Bhd), provides ground handling services in KL International Airport and 15 other airports across Malaysia, including ramp and cargo services. AeroDarat focuses on enhancing the efficiency and effectiveness of ground handling services to Malaysia Airlines' passengers and aircraft as well as third party airlines.

| | |
|---|---|
| Incorporation date | : 22 May 2015 |
| Projected revenue 2016 | : RM300 million |
| Employees | : 2,439 |

## MAB Engineering

MAB Engineering is an internationally recognised Maintenance Repair and Overhaul (MRO) facility that carries out maintenance work for the Group as well as line and hangar maintenance services for international carriers, including some 100 third party customers.

| | |
|---|---|
| Incorporation date | : 22 May 2015 |
| Projected revenue 2016 | : RM300 million |
| Employees | : 554 |

## MAB Leasing / MAB Pesawat

These are dedicated aircraft leasing companies established to provide customized and competitive aviation leasing solutions and asset management to the Group's airlines. MAB Leasing and MAB Pesawat's fleet include all owned and managed aircraft operated by the Group, featuring a range of narrow-bodied and wide-body aircraft.

Incorporation date            : 30 November 2015

### Highlights & News
(/my/en/highlights.html)

> Introduction of the Malaysia Aviation Group
> (/my/en/highlights/introduction_of_mag_highlight.html)

| | |
|---|---|
| Incorporation date | : 17 September 2015 |
| Employees | : 2,439 |

### Travel Advisory
(/my/en/travel_advisory.html)

> The Government of India's Policy Concerning Non-Machine Readable Passports (/my/en/travel_advisory/trave_advisory_into_india.html)
> Foreign Nationals Required to Produce Passports on Malaysian Domestic Flights
> (/my/en/travel_advisory/domestic_flight_passport_req.html)

### Corporate Info
(/my/en/corporate-info.html)

MAB Academy offers quality education and training for the Malaysia Aviation Group as well as other international airlines, and organizations. The company is continuing established programs for cockpit and cabin crew and an *ab ignitio* training for aviation mechanics and engineers and is expected to commence operations as independent company in late 2016.

Malaysia Aviation Group (/my/en/corporate-info/malaysia_aviation_group.html)

Leadership (/my/en/corporate-info/leadership.html)

Awards (/my/en/corporate-info/awards.html)

Careers (/my/en/corporate-info/careers.html)

Partner Airlines (/my/en/corporate-info/partner-airlines.html)

Press Room (/my/en/corporate-info/press-room.html)

Malaysia Airlines Academy (/my/en/corporate-info/malaysia-airlines-academy.html)

### Commercial Services
(/my/en/commercial-services.html)

Corporate Travel (/my/en/commercial-services/corporate-travel.html)

Government Travel (/my/en/commercial-services/government-travel.html)

Flight Simulator (/my/en/commercial-services/flight-simulator.html)

Charter Services (/my/en/commercial-services/charter-services.html)

MAB Academy (/my/en/highlights.html)

MAB Academy offers quality education and training for the Malaysia Aviation Group as well as other international airlines, and organizations. The company is continuing established programs for cockpit and cabin crew and an *ab ignitio* training for aviation mechanics and engineers and is expected to commence operations as independent company in late 2016.

Website (/my/en/corporate-info/malaysia-airlines-academy.html)

Sitemap (/my/en/footer/sitemap.html)    Legal (/my/en/footer/legal.html)    Privacy Policy (/my/en/footer/privacy-policy.html)
Accessibility (/my/en/footer/accessibility.html)

**144**
**55**

© Malaysia Airlines Berhad (1116944-

EXHIBIT "TT-9"

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

_____

MDL Docket No. 2712

_____

**Misc. No. 16-1184 (KBJ)**

**This Document Relates To:**
**Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ**
**Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ**
**Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ**
**Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ**
**Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ**
**Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ**
**Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ**
**Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ**
**Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ**
**Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ**
**Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ**
**Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ**
**Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ**
**Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ**
**Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ**
**Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ**
**Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ**
**Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ**
**Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ**
**Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ**
**Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ**
**Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ**
**Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ**
**Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ**
**Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ**
**Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ**
**Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ**
**Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ**
**Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ**
**Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ**
**Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ**

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-9"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

12 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

**145
36**

| | | | |
|---|---|---|---|
| Albanian Shqip | Dari دری | Kiswahili Kiswahili | Russian Русский |
| Amharic አማርኛ | English English | Macedonian Македонски | Serbian Српски |
| Arabic العربية | French Français | Pashto پښتو | Spanish Español |
| Bengali বাংলা | German Deutsch | Persian فارسی | Turkish Turkce |
| Bosnian B/H/S | Greek Ελληνικα | Polish Polski | Ukrainian Українська |
| Bulgarian Български | Hausa Hausa | Portuguese Português do Brasil | Urdu اردو |
| Chinese | Hindi हिन्दी | Portuguese Português para África | |
| Croatian Hrvatski | Indonesian Bahasa Indonesia | Romanian Română | |



TOP STORIES  BUSINESS

Exhibit  TT-9

AVIATION

# Allianz insurer starts pay-outs on missing Malaysian airliner claims

German insurance company Allianz has started making payments on claims related to missing Malaysian Airline flight MH370. The company says it is seeking to complete claims payments by the end of the week.



HOPE SPRINGS ETERNAL

Allianz and other co-reinsurers of the Malaysian Airlines aviation hull and liability policy had made initial payments linked to the disappearance of Malaysian Airlines flight MH370, the German insurance company announced late on Tuesday.

The company, which is Malaysia Airlines' lead insurer, was confirming an earlier report in the German business daily Handelsblatt. In its Wednesday edition, Handelsblatt reported that payments in the case would amount to about $100 million (72 million euros) for the aircraft and the 239 people on board.

Allianz declined to comment on the exact sum of claims and how much of it would be passed on to other insurers in the consortium.

"This is in agreement with the insurance broker, Willis, and is in line with normal market practice and our contractual obligations where an aircraft is reported missing," Allianz said in a statement.

Malaysian Airlines flight MH370 disappeared on March 8 en route to Beijing. The Malaysian government believes the Boeing 777 plane was deliberately diverted and flew for several hours after leaving its scheduled flight path. An international land and sea search is now covering an area the size of Australia. Authorities have yet to establish a clear motive to explain its disappearance.

**Watch video**                02:05

MH370 - looking for a needle in a haystack

Allianz insurer starts pay-outs on missing Malaysian airliner claims | Business News | DW.COM | 19.03.2014

uhe/kms (AFP, Reuters)

DW RECOMMENDS

**Search area for missing Malaysia Airlines plane the size of Australia**
Authorities searching for the missing Malaysia Airlines flight MH370 have said they are now covering an area the size of Australia. Passengers demanding more information have threatened to start a hunger strike. (18.03.2014)

**China slams Malaysian probe into missing plane**
More than a week after Flight MH370 vanished in midair, China has become increasingly critical of what it considers to be the mishandling of information and the slow pace of the investigation by Malaysian authorities. (18.03.2014)

AUDIOS AND VIDEOS ON THE TOPIC

**MH370 – looking for a needle in a haystack**

EXHIBIT "TT-10"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

MDL Docket No. 2712

Misc. No. 16-1184 (KBJ)

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ


## CERTIFICATE IDENTIFYING EXHIBIT


I, hereby certify that the document marked as Exhibit **"TT-10"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

12 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

6/9/2016                      Malaysian National News Agency :: BERNAMA

**147**
~~58~~

Exhibit   TT - 10

# Bernama.com
## Malaysian National News Agency

### Malaysia Airlines Reiterates Fair And Equitable Compensation To MH370 Families
General
February 25, 2016 09:30 AM

KUALA LUMPUR, Feb 25 (Bernama) -- Malaysia Airlines on Wednesday reiterated its commitment of "fair and equitable compensation" to the families of those on board the missing flight MH370, China's Xinhua news agency reported.

A families' support group, Voice370, has voiced concern that the incorporation of Malaysia's national flag carrier into a new company and related national law would hinder the compensation claiming process, with the approaching two-year deadline set by the Montreal Convention to file claims.

Malaysia Airlines was privatised by Malaysia's sovereign wealth fund Khazanah and rebranded as Malaysia Airlines Berhad last year.

Mohammad Faiz Azmi, appointed by Khazanah to oversee the restructuring, reiterated in a statement on Wednesday the airlines' "continued commitment to uphold all its obligations to those affected by the MH370 tragedy."

The airlines said it has kept families informed of the two-year limitation period under the Montreal Convention, which in the case of MH370 ends on March 8, 2016, urging those who have yet to file their claims to do so by the deadline.

Malaysia Airlines stressed its commitment as well as its ability to compensate the families.

"Malaysia Airlines remains committed to continue engaging the next-of-kin in good faith with regard to ensuring a fair and equitable compensation," said the statement.

"Malaysia Airlines has insurance coverage in place to meet its obligation to pay compensation to next-of-kin as per its obligations under applicable International Conventions and law," it added.

Flight MH370 disappeared on March 8, 2014, en route from Kuala Lumpur to Beijing with a total of 239 passengers on board, most of them Chinese. Malaysian and French authorities said last year that an aircraft flaperon found on the French Indian Ocean island of La Reunion belonged to the missing plane.

-- BERNAMA

Print

Copyright © 2016 BERNAMA. All rights reserved.

EXHIBIT "TT-11"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

_____

MDL Docket No. 2712

_____
**Misc. No. 16-1184 (KBJ)**

**This Document Relates To:**
**Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ**
**Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ**
**Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ**
**Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ**
**Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ**
**Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ**
**Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ**
**Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ**
**Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ**
**Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ**
**Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ**
**Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ**
**Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ**
**Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ**
**Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ**
**Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ**
**Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ**
**Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ**
**Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ**
**Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ**
**Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ**
**Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ**
**Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ**
**Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ**
**Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ**
**Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ**
**Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ**
**Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ**
**Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ**
**Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ**
**Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ**

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-11"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR



MINISTER OF TRANSPORT
MINISTRY OF TRANSPORT MALAYSIA
NO 26, JALAN TUN HUSSEIN,
PRESINT 4, 62100 PUTRAJAYA,
MALAYSIA



148

Exhibit    TT- 11

Friday, March 4 2016
FOR IMMEDIATE RELEASE

## MEDIA STATEMENT
## BY YB DATO' SRI LIOW TIONG LAI
## MINISTER OF TRANSPORT, MALAYSIA

### Liow: MH370 families advised to file their claims under Montreal Convention before March 8

It has undoubtedly been a difficult and trying twenty-four months for the families and loved ones of the passengers and crew of Malaysia Airlines Flight MH370.

As we approach the second anniversary of this unfortunate event, I have been informed by Malaysia Airlines System Berhad (MAS) that less than 60 compensation claims have been settled in relation to the 227 passengers and 12 crew on board the flight, whereas to date, 169 families have commenced final compensation process.

With regard to the passengers of MH370, according to Article 35 of the 1999 Convention for the Unification of Certain Rules for International Carriage by Air (Montreal Convention), the right to damages against MAS shall be extinguished if an action is not brought within a period of two years from the date on which the aircraft ought to have arrived in Beijing, that is on 8 March 2014.

**149**
~~60~~

Therefore, as previously stated by MAS, the limitation period under the Montreal Convention ends on 8 March 2016. This right to claim damages under the Montreal Convention is available to the families and next-of-kin of the passengers of MH370.

Hence, I urge all the families and next-of-kin, regardless of nationality, to file their claims under the Montreal Convention against MAS by March 8, 2016 to preserve their legal rights as provided under the Convention.

The Government of Malaysia remains ever conscious that the families and next-of-kin of the passengers and crew of MH370 need to be accorded their legitimate rights as provided under the relevant international instruments and domestic laws.

[END]

EXHIBIT "TT-12"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

MDL Docket No. 2712

Misc. No. 16-1184 (KBJ)

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv−01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16−cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16−cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16−cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-12"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

12 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

18TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

**150**

Exhibit __ TT-13 __

# CIVIL LAW
# ACT 1956 (ACT 67)

(AS AT 5TH JANUARY 2015)

Compiled by:
Legal Research Board



# International Law Book Services

WISMA ILBS,
No. 10, Jalan PJU 8/5G,
Bandar Damansara Perdana,
47820 Petaling Jaya,
Selangor Darul Ehsan.
Tel: 03-77274121/77274122/77273890/77283890
Fax: 03-77273884
E-mail: gbc@pc.jaring.my
Website: www.malaysialawbooks.com

# 2015

### 6. Immovable property.

Nothing in this Part shall be taken to introduce in Malaysia or any of the States comprised therein any part of the law of England relating to the tenure or conveyance or assurance of or succession to any immovable property or any estate, right or interest therein.

PART III

FATAL ACCIDENTS AND SURVIVAL OF
CAUSES OF ACTION

### 7. Compensation to the family of a person for loss occasioned by his death.

(1) Whenever the death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the party who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death has been caused under such circumstances as amount in law to an offence under the Penal Code.

(2) Every such action shall be for the benefit of the wife, husband, parent, and child, if any, of the person whose death has been so caused and shall be brought by and in the name of the executor of the person deceased.

(3) The damages which the party who shall be liable under subsection (1) to pay to the party for whom and for whose benefit the action is brought shall, subject to this section, be such as will compensate the party for whom and for whose benefit the action is brought for any loss of support suffered together with any reasonable expenses incurred as a result of the wrongful act, neglect or default of the party liable under subsection (1):

*[Am. Act A602]*

Provided that—

9

(i) in assessing the damages there shall not be taken into account—

    (*a*) any sum paid or payable on the death of the person deceased under any contract of assurance, whether made before or after the coming into force of this Act;

    (*b*) any sum payable, as a result of the death, under any written law relating to employees' provident fund;

    (*c*) any pension or gratuity, which has been or will or may be paid as a result of the death; or

    (*d*) any sum which has been or will or may be paid under any written law relating to the payment of any benefit or compensation whatsoever, in respect of the death;

(ii) damages may be awarded in respect of the funeral expenses of the person deceased if such expenses have been incurred by the party for whose benefit the action is brought;

(iii) no damages shall be awarded to a parent on the ground only of his having been deprived of the services of a child; and no damages shall be awarded to a husband on the ground only of his having been deprived of the services or society of his wife; and

(iv) in assessing the loss of earnings in respect of any period after the death of a person where such earnings provide for or contribute to the damages under this section the Court shall:

    (*a*) take into account that where the person deceased has attained the age of fifty five years at the time of this death, his loss of earnings for any period after his death shall not be taken into consideration; and in the case of any other person deceased, his loss of earnings for any period

after his death shall be taken into consideration if it is proved or admitted that the person deceased was in good health but for the injury that caused his death and was receiving earnings by his own labour or other gainful activity prior to his death;

(*b*) take into account only the amount relating to the earnings as aforesaid and the Court shall not take into account any prospect of the earnings as aforesaid being increased at any period after the person's death;

(*c*) take into account any diminution of any such amount as aforesaid by such sum as is proved or admitted to be the living expenses of the person deceased at the time of his death;

(*d*) take into account that in the case of a person who was of the age of thirty years and below at the time of his death, the number of years' purchase shall be 16; and in the case of any other person who was of the age range extending between thirty one years and fifty four years at the time of his death, the number of years' purchase shall be calculated by using the figure 55, minus the age of the person at the time of death and dividing the remainder by the figure 2.

(3A) An action under this section may consist of or include claim for damages for bereavement and, subject to subsection (3D), the sum to be awarded as damages under this subsection shall be ten thousand ringgit.

(3B) A claim for damages for bereavement shall only be for the benefit—

(*a*) of the spouse of the person deceased; and

(*b*) where the person deceased was a minor and never married, of his parents.

**154**

(3c) Where there is a claim for damages under paragraph (3B)(*b*) for the benefit of the parents of the person deceased, the sum awarded shall be divided equally between them subject to any deduction likely to be made in respect of all costs and expenses including costs not recovered from the defendant.

(3D) The Yang di-Pertuan Agong may from time to time by order published in the *Gazette* vary the sum specified in subsection (3A).

(3E) An order made under subsection (3D) shall be published in the *Gazette* and as soon as possible thereafter, shall be laid before the Dewan Rakyat; and if the Dewan Rakyat passes a resolution annulling the order, it shall be void but without prejudice to the validity of anything previously done thereunder or to the making of a new order as from the date of notification in the *Gazette* of the passing of the resolution.

(4) The amount, other than the amount awarded under proviso (iii) to subsection (3) and the amount recovered under paragraph (3B)(*b*), so recovered after deducting all costs and expenses, including the costs not recovered from the defendant, shall be divided amongst the before-mentioned parties, or any of them in such shares as the Court by its judgment or decree directs.

(5) Not more than one action shall be brought for and in respect of the same subject matter of complaint, and every such action shall be brought within three years after the death of the person deceased.

(6) In any such action the executor of the deceased may insert a claim for and recover any pecuniary loss to the estate of the deceased occasioned by the wrongful act, neglect, or default, which sum when recovered shall be deemed part of the assets of the estate of the deceased.

(7) The plaint or writ or summons in any such action shall give full particulars of the person or persons for whom

12

or on whose behalf the action is brought, and of the nature of the claim in respect of which damages are sought to be recovered.

(8) If there is no executor of the person deceased or there being an executor no action as in this section mentioned has, within six calendar months after the death of the person deceased, been brought by the executor, the action may be brought by all or any of the persons, if more than one, for whose benefit the action would have been brought if it had been brought by the executor, and every action so to be brought shall be for the benefit of the same person or persons and shall be subject to the same procedure as nearly as may be as if it was brought by the executor.

(9) It shall be sufficient for any defendant in any action brought under this section to pay any money, he is advised to pay into Court as a compensation, in one sum to all persons entitled under this section for his wrongful act, neglect or default without specifying the shares into which it is to be divided.

(10) If the said sum is not accepted and an issue is taken by the plaintiff as to its sufficiency and the Court thinks the same sufficient, the defendant shall be entitled to judgment upon that issue.

(11) In this section unless the context otherwise requires—

"child" includes son, daughter, grandson, granddaughter, stepson and stepdaughter;

"parent" includes father, mother, grandfather and grandmother;

"pension" includes a return of contributions and any payment of a lump sum in respect of a person's employment:

Provided that in deducing any relationship referred to in this subsection any illegitimate person or any person who

has been adopted or whose adoption has been registered, in accordance with any written law shall be treated as being or as having been the legitimate offspring of his mother and reputed father or, as the case may be, of his adopters.

### 8. Effect of death on certain causes of action.

(1)  Subject to this section, on death of any person all causes of action subsisting against or vested in him shall survive against, or, as the case may be, for the benefit of, his estate:

Provided that this subsection shall not apply to causes of action for defamation or seduction or for inducing one spouse to leave or remain apart from the other or to any claim for damages on the ground of adultery.

(2) Where a cause of action survives as aforesaid for the benefit of the estate of a deceased person, the damages recoverable for the benefit of the estate of that person—

(a) shall not include any exemplary damages, any damages for bereavement made under subsection 7(3A), any damages for loss of expectation of life and any damages for loss of earnings in respect of any period after that person's death;

(b) in the case of a breach of promise to marry shall be limited to such damage, if any, to the estate of that person as flows from breach of promise to marry; and

(c) where the death of that person has been caused by the act or omission which gives rise to the cause of action, shall be calculated without reference to any loss or gain to his estate consequent on his death, except that a sum in respect of funeral expenses may be included.

(3) No proceedings shall be maintainable in respect of a cause of action in tort which by virtue of this section has survived against the estate of a deceased person, unless

EXHIBIT "TT-13"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

---

MDL Docket No. 2712

---

Misc. No. 16-1184 (KBJ)

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

    I, hereby certify that the document marked as Exhibit **"TT-13"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

12 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

[1990] 1 MLJ 443 (HC)     Exhibit TT-157

In the result, Keruntum's application, except in so far as the order striking out para 9(d) of PPES' statement of claim, is dismissed with costs to PPES.

*Application dismissed.*

Solicitors: *Reddi & Co Advocates; Szetu & Co Advocates.*

Reported by *Mathavan Devadas*

---

# Rebecca Mathew & Ors v Syarikat Kerjasama Serbaguna Gema Wong Siong Bhd & Anor

HIGH COURT (ALOR SETAR) — CIVIL SUIT NO 643 OF 1985
KC VOHRAH J
26 OCTOBER 1989

*Damages (Personal Injury or Death) — Dependency claim — Liability admitted — Quantum of damages for loss support — Civil Law Act 1956, s 7*

On 3 October 1982, Alex Mathew ('the deceased') died as a result of a collision between his car and a motor lorry of the first defendant which was driven by the second defendant. His wife and two children brought an action to recover damages under s 7 of the Civil Law Act 1956 as dependants against the defendants. At the hearing, the claim of the second plaintiff ('the son') was dropped as he has since died. Liability was admitted by the defendants. The issue before the court was the calculation of the quantum on damages by reference to the loss suffered by the first and the third plaintiffs as a result of the death of the deceased.

**Held:**
The approach to be taken in this case was to find the net income of the deceased and deduct from that a percentage representing the deceased's personal living expenses; the remainder is the value of the dependency for the plaintiffs.

**Cases referred to**
1  *Chan Heng Wah & Anor v Peh Thiam Choh & Anor* [1986] 2 MLJ 175; [1988] 1 MLJ 74 (folld)
2  *Lita Maddox v Calito C Guinto & Anor* [1987] 2 MLJ 757 (refd)

**Legislation referred to**
Civil Law Act 1956 s 7

*Alex Anthony* for the plaintiffs.
*Bala Mahesan* for the defendants.

*Cur Adv Vult*

**KC Vohrah J:** Alex Mathew died as a result of a collision on 3 October 1982 between his car and a motor lorry of the first defendant which was driven by the second defendant. His wife and two children brought an action to recover damages under s 7 of the Civil Law Act 1956 as dependants against the defendants, but at the hearing, the claim of the second plaintiff (the son) was dropped as he has since died. What remains is the case of the third plaintiff (hereinafter the 'wife') who remarried on 1 February 1988

and that of the first plaintiff (hereinafter the 'daughter') who is now 10 years old and living with her mother in India.

Liability being admitted by the defendants, it is now necessary to calculate the quantum of damages by reference to the loss suffered by these two plaintiffs as a result of the death of Alex Mathew. In regard to special damages, this has been agreed at $2,140.

As regards the dependency claim, the wife's claim, it is agreed, is from the date of the death of Alex Mathew (3 October 1982) to the date she remarried (1 February 1988), a period of 63 months. Part of the daughter's claim will be over the same period and both counsel agree that the award for this period would be 75% in favour of the wife and 25% the daughter.

Both counsel have also agreed that the additional period in respect of the daughter's dependency for the pre-trial period would be the intervening period between the date of her mother's remarriage and the date of trial, this being 21 months. As for the post-trial period, both counsel agree that it should be eight years.

I now come to the lost support to the two dependants in monetary terms. Counsel for the plaintiffs advocates the totalling up of all the moneys spent by the deceased from his earnings on the plaintiffs in order to calculate the loss of the value of the dependency. This would involve the tedious process of adding up all sorts of sundry expenditure which in most circumstances would be based on guess work. And in the present case, the evidence is too scanty to be of help to the court for it to arrive at a sensible sum using the approach that is advocated.

With respect, in the circumstances of this case, I think the more sensible approach is the one advanced by counsel for the defendants; find the net income of the deceased and deduct from that a percentage representing the deceased's personal living expenses; the remainder is the value of the dependency for the plaintiffs. He cites the Singapore case of *Chan Heng Wah v Peh Thiam Choh & Anor*[1] which went on appeal to the Court of Appeal as an example of this approach. The Singapore case is concerned with an estate claim and there is an exhaustive examination of relevant authorities in both the High Court and the Court of Appeal judgments as regards the approach to be taken in deducting living expenses of a deceased; the clear conclusion is that the approach of deducting a percentage leaving the remainder as surplus income for the dependants is a modern trend for both estate and dependency claims. To my mind, such a practical and sensible approach can safely be adopted in this case, there being no contrary local structures and no circumstances in this case against such an approach.

Available documents and oral evidence show earnings and major deductions in respect of Alex Mathew for

the years 1981 and 1982. The evidence was not clear as to how much the deceased would have earned at the time of the trial and in the circumstances I would have to rely merely on the 1981 and 1982 figures.

His gross earnings for 1981 as shown in the employer's return of income of the deceased to the Tax Department (the 1981 EA Form) came to $40,914.04. From this must be deducted the income tax he had to pay on his earnings and it was agreed that he probably paid $7,790 as tax. From the remainder of $33,124.04 must then be deducted his Employees' Provident Fund contribution of $3,871 (this appears in the 1981 EA Form) leaving a net income of $29,253.04 for the year 1981. This works out to $2,437.75 per month for 1981.

In regard to 1982, the income from 1 January to 3 October 1982 (date of death of deceased), the employer's return of the deceased's income to the Tax Department (the 1982 EA Form) for the year 1982 showed a gross income of $39,391.75. Probable income tax that was paid has been agreed at $4,307 and the Employees' Provident Fund contribution that was made by the deceased (shown in the 1982 EA Form) was $3,871. Thus, the net income of the deceased for nine months in 1982 was $31,213.75. This works out to $3,468.19 per month.

Averaging the income of the two years, there being nothing available for the court on which to determine the amount during the trial period, the nett income is $2,953 per month to the nearest dollar. There must be reduced from this amount of $2,953 the personal living expenses of the deceased on the basis of what I had discussed earlier. Alex Mathew was a planter. Estate life is perhaps relatively quiet when compared to life in the urban area and personal expenses for a family man would probably not have been much. But he was a deputy manager of a big estate when he died and it is probable he had a fairly active social life where he would have had to incur personal expenses not required of other lower-ranking planters. It seems to me that, in the circumstances, a deduction of 25% from the net amount where the family comprised the husband, wife and two children seems appropriate and just. This would probably have covered his personal expenses (see the examples of personal expenditure mentioned in the Singapore case and in the cases cited therein and also mentioned in the Brunei case of *Lita Maddox* v *Calito C Guinto & Anor*[3]).

There is no deduction for the cost of shared benefits such as housing and food, enjoyed as part of the family group. If this is an estate claim, I would have to make a deduction of a pro-rata share of the cost of shared benefits but this is a dependency claim and no deduction on that account should be made. Twenty five per cent of the net amount is $738 (to the nearest dollar). Thus, the surplus amount per month for the dependants is $(2,953 — 738) which is $2,215.

*Damages for wife and daughter from date of death of deceased to date of the remarriage of wife (63 months)*

Thus, the general damages for the wife and daughter for 63 months is $2,215 x 63, ie $139,545.00. As stated earlier it was agreed by the parties that the wife would be entitled to 75% of that, ie $104,659 (to the nearest dollar). The daughter is entitled to 25% of that, ie $34,886 (to the nearest dollar).

*Damages for daughter between date of remarriage of wife to date of trial (21 months)*

My view is the agreed ratio of 75:25 as between wife and daughter in regard to the award for the period of 63 month should equally apply to the 21-month period intervening between the date of remarriage of the wife to the date of trial and the dependency amount per month for the daughter in that event would be 25% of the surplus amount of $2,215. This works out to $554 per month (to the nearest dollar). The damages for 21 months will be $11,634.

*Damages for daughter for post-trial period at eight years*

I can see nothing in the evidence that requires any change to be made to the dependency amount of $554 (rounded to $550) per month in regard to the daughter for the agreed post-trial period of eight years. Using the annuity tables following the practice in respect of causes of action arising before 1 October 1984, the damages come to $42,657 (to nearest dollar).

To summarize the damages awarded:

| | | | | |
|---|---|---|---|---|
| (1) | Special damages as agreed | — | | $2,140 |
| | Agreed interest at 4% from date of accident to date of trial | | | |
| (2) | (a) Pre-trial general damages for wife | — | | $104,659 |
| | (b) Pre-trial general damages for daughter No question of interest arises | — | | $46,520 |
| (3) | Post-trial damages for daughter | — | | $42,657 |

Whatever is awarded to the daughter (first plaintiff) is to held in trust by the public trustee who shall release a sum of $500 every three months to the third plaintiff for the use of the first plaintiff until she reaches the age of majority, the first release to be made three months from today, with liberty to apply. Costs to the plaintiffs.

*Order accordingly.*

Solicitors: *Alex R Anthony & Associates; Bala Mahesan.*

Reported by *Kevin Mathews*

EXHIBIT "TT-14"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

MDL Docket No. 2712

Misc. No. 16-1184 (KBJ)

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16−cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16−cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16−cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-14"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

Exhibit _TT-14_ 3

# CIVIL LAW
# ACT 1956 (ACT 67)

(AS AT 5TH JANUARY 2015)

Compiled by:
Legal Research Board



# International Law Book Services

WISMA ILBS,
No. 10, Jalan PJU 8/5G,
Bandar Damansara Perdana,
47820 Petaling Jaya,
Selangor Darul Ehsan.
Tel: 03-77274121/77274122/77273890/77283890
Fax: 03-77273884
E-mail: gbc@pc.jaring.my
Website: www.malaysialawbooks.com

# 2015

**160**

PART II

GENERAL

### 3. Application of U.K. common law, rules of equity and certain statutes.

(1) Save so far as other provision has been made or may hereafter be made by any written law in force in Malaysia, the Court shall—

> (*a*) in Peninsular Malaysia or any part thereof, apply the common law of England and the rules of equity as administered in England on 7 April 1956;

> (*b*) in Sabah, apply the common law of England and the rules of equity, together with statutes of general application, as administered or in force in England on 1 December 1951;

> (*c*) in Sarawak, apply the common law of England and the rules of equity, together with statutes of general application, as administered or in force in England on 12 December 1949, subject however to subparagraph (3)(ii):

Provided always that the said common law, rules of equity and statutes of general application shall be applied so far only as the circumstances of the States of Malaysia and their respective inhabitants permit and subject to such qualifications as local circumstances render necessary.

(2) Subject to the express provisions of this Act or any other written law in force in Malaysia or any part thereof, in the event of conflict or variance between the common law and the rules of equity with reference to the same matter, the rules of equity shall prevail.

(3) Without prejudice to the generality of paragraphs (1)(*b*) and (*c*) and notwithstanding paragraph (1)(*c*)—

> (i) it is hereby declared that proceedings of a nature such as in England are taken on the Crown side of the Queen's Bench Division of the High Court by way

6

of *habeas corpus* or for an order of *mandamus*, an order of prohibition, an order of *certiorari* or for an injunction restraining any person who acts in an office in which he is not entitled to act, shall be available in Sabah to the same extent and for the like objects and purposes as they are available in England;

(ii) the Acts of Parliament of the United Kingdom applied to Sarawak under sections 3 and 4 of the Application of Laws Ordinance of Sarawak and specified in the Second Schedule to this Act shall, to the extent specified in the second column of the said Schedule, continue in force in Sarawak with such formal alterations and amendments as may be necessary to make the same applicable to the circumstances of Sarawak and, in particular, subject to the modifications set out in third column of the said Schedule.

## 4. Administration of insolvent estates, and winding up of companies.

(1) In the administration by any Court of the assets of any deceased person whose estate proves to be insufficient for the payment in full of his debts and liabilities, and in the winding up of any company under any law from time to time in force relating to companies, whose assets prove to be insufficient for the payment of its debts and liabilities, and the costs of winding up, the same rules shall prevail and be observed, as to the respective rights of secured and unsecured creditors, and as to debts and liabilities provable, and as to the valuation of annuities and future and contingent liabilities respectively, as are in force for the time being, under the law of bankruptcy, with respect to the estates of persons adjudged bankrupt.

(2) All persons who, in any such case, would be entitled to prove for and receive dividends, out of the estate of any such deceased person, or out of the assets of any such company, may come in under the decree or order for the administration of the estate, or under the winding up of the company, and

EXHIBIT "TT-15"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

MDL Docket No. 2712

Misc. No. 16-1184 (KBJ)

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv−01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16−cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16−cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Co., C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16−cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

**Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ**
**Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ**
**Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ**


## CERTIFICATE IDENTIFYING EXHIBIT


I, hereby certify that the document marked as Exhibit **"TT-15"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

'2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI

MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

Exhibit   TT-15

# Carriage by Air Act 1961

## 1961 (9 and 10 Eliz. 2 C. 27)

Thomson Reuters (Legal) Limited.

UK Statutes Crown Copyright. Reproduced by permission of the Controller of Her Majesty's Stationery Office.

An Act to give effect to the Convention concerning international carriage by air known as "the Warsaw Convention as amended at The Hague, 1955", to enable the rules contained in that Convention to be applied, with or without modification, in other cases and, in particular, to non-international carriage by air; and for connected purposes.

[22nd June 1961]

**Notes**

[1]  Act saved by Nuclear Installations Act 1965 (c. 57), s. 12(4)(b) Power to apply Act given by Hovercraft Act 1968 (c. 59), s. 1(1)(i) Act applied with modifications (in relation to hovercraft) by S.I. 1986/1305, arts. 3, 5, Sch. 1

**Extent**

Preamble: United Kingdom

Law In Force

**[ 1.—  Convention to have the force of law**

(1) The applicable provisions of the Carriage by Air Conventions have the force of law in the United Kingdom in relation to any carriage by air to which they apply, irrespective of the nationality of the aircraft performing that carriage.

(2) Subsection (1) does not apply in relation to Community air carriers to the extent that the provisions of the Council Regulation have the force of law in the United Kingdom.

(3) Subsection (1) is subject to the other provisions of this Act.

(4) If more than one of the Carriage by Air Conventions applies to a carriage by air, the applicable provisions that have the force of law in the United Kingdom are those of whichever is the most recent applicable Convention in force.

(5) The Carriage by Air Conventions are—
    (a)  the Convention known as "the Warsaw Convention as amended at The Hague, 1955" ("the Convention");
    (b)  that Convention as further amended by Protocol No. 4 of Montreal, 1975 ("the Convention as amended"); and
    (c)  the Convention known as "the Montreal Convention 1999" ("the Montreal Convention").



(6) "The applicable provisions" means—

    (a)  the provisions of the Convention set out in Schedule 1,

    (b)  the provisions of the Convention as amended set out in Schedule 1A, and

    (c)  the provisions of the Montreal Convention set out in Schedule 1B,

so far as they relate to the rights and liabilities of carriers, carriers' servants and agents, passengers, consignors, consignees and other persons.

(7) In this Act a reference to an Article of, or Protocol to, any of the Carriage by Air Conventions is a reference to that Article or Protocol as it appears in the Schedule in which it is set out.

(8) If there is any inconsistency between the text in English in Part I of Schedule 1 or 1A and the text in French in Part II of that Schedule, the French text shall prevail. ] [1]

**Notes**

[1]   Substituted by Carriage by Air Acts (Implementation of the Montreal Convention 1999) Order 2002/263 art.2(2) (June 28, 2004 as specified in the London Gazette dated May 7, 2004)

**Commencement**

s. 1: June 1, 1967 (SI 1967/479 art. 1)

**Extent**

s. 1(1)-(8): United Kingdom

☑ Law In Force

## 2.—  Designation of High Contracting Parties.

(1)  Her Majesty may by Order in Council from time to time certify who are the High Contracting Parties to [ any of the Carriage by Air Conventions ] [1] , in respect of what territories they are respectively parties and to what extent they have availed themselves of the provisions of [ — ] [2]

    [ (a)  the Additional Protocol at the end of the Convention;

    (b)  the Additional Protocol at the end of the Convention as amended; or

    (c)  Article 57(a) of the Montreal Convention. ] [2]

[ (1A) Her Majesty may by Order in Council certify any revision of the limits of liability established under the Montreal Convention. ] [3]

[ (2) The provisions of the Carriage by Air Conventions mentioned in subsection (2A) shall not be read as extending references in the applicable provisions to the territory of a High Contracting Party (except such as are references to the territory of any State, whether a High Contracting Party or not) to include any territory in respect of which that High Contracting Party is not a party.

(2A) The provisions are—

    (a)  Article 40A(2) of the Convention;

    (b)  Article 40A(2) of the Convention as amended; and

    (c)  paragraph 1 of Article 56 of the Montreal Convention.

] [4]

(3) An Order in Council under this section shall, except so far as it has been superseded by a subsequent Order, be conclusive evidence of the matters so certified.

(4) An Order in Council under this section may contain such transitional and other consequential provisions as appear to Her Majesty to be expedient.

**Notes**

[1] Words substituted by Carriage by Air Acts (Implementation of the Montreal Convention 1999) Order 2002/263 art.2(3)(a) (June 28, 2004 as specified in the London Gazette dated May 7, 2004)

[2] S.2(1)(a)-(c) substituted for words by Carriage by Air Acts (Implementation of the Montreal Convention 1999) Order 2002/263 art.2(3)(b) (June 28, 2004 as specified in the London Gazette dated May 7, 2004)

[3] Added by Carriage by Air Acts (Implementation of the Montreal Convention 1999) Order 2002/263 art.2(4) (June 28, 2004 as specified in the London Gazette dated May 7, 2004)

[4] S.2(2)-(2A) substituted for s.2(2) by Carriage by Air Acts (Implementation of the Montreal Convention 1999) Order 2002/263 art.2(5) (June 28, 2004 as specified in the London Gazette dated May 7, 2004)

**Commencement**

s. 2: June 22, 1961

**Extent**

s. 2(1)-(4): United Kingdom

---

☒ Law In Force

## 3. Fatal accidents.

References in section one of the Fatal Accidents Act, 1846, as it applies in England and Wales, and [ in Article 3(1) of the Fatal Accidents (Northern Ireland) Order 1977 ][1] to a wrongful act, neglect or default shall include references to any occurrence which gives rise to a liability under [—][2]

        [(a)  Article 17 of the Convention;
        (b)  Article 17 of the Convention as amended; or
        (c)  Article 17.1 of the Montreal Convention. ][2]

**Notes**

[1] Words substituted by S.I. 1977/1251, Sch. 1.

[2] S.3(a)-(c) substituted for words by Carriage by Air Acts (Implementation of the Montreal Convention 1999) Order 2002/263 art.2(6) (June 28, 2004 as specified in the London Gazette dated May 7, 2004)

**Commencement**

s. 3: June 22, 1961

**Extent**

s. 3(a)-(c): United Kingdom

---



EXHIBIT "TT-16"

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

MDL Docket No. 2712

Misc. No. 16-1184 (KBJ)

**This Document Relates To:**
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv−01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16−cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16−cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16−cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

**Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ**
**Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ**
**Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ**


## CERTIFICATE IDENTIFYING EXHIBIT


I, hereby certify that the document marked as Exhibit **"TT-16"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

12 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI

MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

Exhibit TT-16

Government Actuary's Department

# Actuarial Tables

With explanatory notes
for use in

# Personal Injury and Fatal Accident Cases

Seventh edition

The Stationery Office

MEMBERS OF THE WORKING PARTY
RESPONSIBLE FOR THE SEVENTH EDITION

**Chairman: Robin de Wilde QC**

| | |
|---|---|
| George Russell, FIA | The Deputy Government Actuary |
| Professor Andrew Burrows QC, FBA | Professor of Law, Oxford University; Formerly of The Law Commission |
| Harvey McGregor QC | Invited by the Chairman |
| Rowland Hogg, FCA | Invited by the Chairman |
| Anthony Carus, FIA | Invited by the Chairman |
| Ian Sinho | Invited by the Chairman |
| Hugh Gregory, FCA | Invited by the Chairman |
| Michael Jarvis, FCA | Invited by the Chairman |
| William Latimer-Sayer, Barrister | Invited by the Chairman |
| Douglas Russell, Solicitor | Invited by the Chairman |
| Dr Victoria Wass | Cardiff Business School, Cardiff University, Invited by the Chairman |
| Grahame Codd, Solicitor | Association of Personal Injuries Lawyers |
| Chinu Patel, FIA | Institute and Faculty of Actuaries |
| John Pollock, FFA | Institute and Faculty of Actuaries |
| James Campbell QC | Faculty of Advocates |
| Richard Methuen QC | Personal Injuries Bar Association |
| Simon Levene | Professional Negligence Bar Association |
| Alistair Kinley | Forum of Insurance Lawyers |
| Andrew Underwood, Solicitor | Forum of Insurance Lawyers |
| Graeme Garrett, Solicitor | The Law Society of Scotland |
| J W Bailie | President, Law Society of Northern Ireland |
| Brendan Garland | General Council of the Bar of Northern Ireland |
| John Mead | NHS Litigation Authority |
| Adrian Gallop, FIA | Government Actuary's Department |
| Harry Trusted, Barrister | Secretary to the Working Party |
| Cara Guthrie, Barrister | Assistant Secretary to the Working Party |

Government Actuary's Department

Actuarial Tables

With explanatory notes
for use in

# Personal Injury and Fatal Accident Cases

Prepared by an
Inter-disciplinary Working Party
of Actuaries, Lawyers, Accountants
and other interested parties

Seventh edition

LONDON: The Stationery Office

**168**



information & publishing solutions

Published by TSO (The Stationery Office) and available from:

**Online**
www.tsoshop.co.uk

**Mail, Telephone, Fax & E-mail**
TSO
PO Box 29, Norwich, NR3 1GN
Telephone orders/General enquiries: 0870 600 5522
Fax orders: 0870 600 5533
E-mail: customer.services@tso.co.uk
Textphone: 0870 240 3701

**TSO@Blackwell and other Accredited Agents**

*© Crown copyright 2011*

*Copyright in the typographical arrangement and design is vested in the Crown.*

*Applications for reproduction should be made in writing to the Copyright Unit,*
*The Stationery Office, St Clements House, 2-16 Colegate, Norwich NR3 1BQ*

*First published 1984*

*Second edition 1994*

*Third edition 1998*

*Fourth edition 2000*

*Fifth edition 2004*

*Sixth edition 2007*

*Seventh edition 2011*

ISBN 978 0 11 560146 0

Table of Contents

|  |  | *Page* |
|---|---|---|
| Members of Working Party responsible for the Seventh Edition |  | Inside front cover |
| Introduction to the Seventh Edition |  | 5 |
| Explanatory Notes |  |  |
|  | Section A General | 8 |
|  | Section B Contingencies other than mortality | 14 |
|  | Section C Summary of Personal Injury applications | 19 |
|  | Section D Application of tables to Fatal Accident cases | 23 |
|  | Section E Concluding remarks | 31 |

**Tables 1 to 26**

| Table 1 | Multipliers for pecuniary loss for life (males) | 34 |
|---|---|---|
| Table 2 | Multipliers for pecuniary loss for life (females) | 36 |
| Table 3 | Multipliers for loss of earnings to pension age 50 (males) | 38 |
| Table 4 | Multipliers for loss of earnings to pension age 50 (females) | 39 |
| Table 5 | Multipliers for loss of earnings to pension age 55 (males) | 40 |
| Table 6 | Multipliers for loss of earnings to pension age 55 (females) | 41 |
| Table 7 | Multipliers for loss of earnings to pension age 60 (males) | 42 |
| Table 8 | Multipliers for loss of earnings to pension age 60 (females) | 43 |
| Table 9 | Multipliers for loss of earnings to pension age 65 (males) | 44 |
| Table 10 | Multipliers for loss of earnings to pension age 65 (females) | 45 |
| Table 11 | Multipliers for loss of earnings to pension age 70 (males) | 46 |
| Table 12 | Multipliers for loss of earnings to pension age 70 (females) | 47 |
| Table 13 | Multipliers for loss of earnings to pension age 75 (males) | 48 |
| Table 14 | Multipliers for loss of earnings to pension age 75 (females) | 49 |
| Table 15 | Multipliers for loss of pension commencing age 50 (males) | 50 |
| Table 16 | Multipliers for loss of pension commencing age 50 (females) | 51 |
| Table 17 | Multipliers for loss of pension commencing age 55 (males) | 52 |
| Table 18 | Multipliers for loss of pension commencing age 55 (females) | 53 |
| Table 19 | Multipliers for loss of pension commencing age 60 (males) | 54 |
| Table 20 | Multipliers for loss of pension commencing age 60 (females) | 55 |
| Table 21 | Multipliers for loss of pension commencing age 65 (males) | 56 |
| Table 22 | Multipliers for loss of pension commencing age 65 (females) | 57 |
| Table 23 | Multipliers for loss of pension commencing age 70 (males) | 58 |
| Table 24 | Multipliers for loss of pension commencing age 70 (females) | 59 |
| Table 25 | Multipliers for loss of pension commencing age 75 (males) | 60 |
| Table 26 | Multipliers for loss of pension commencing age 75 (females) | 62 |

**Tables 27 and 28 (Tables for term certain)**

| Table 27 | Discounting factors for term certain | 64 |
|---|---|---|
| Table 28 | Multipliers for pecuniary loss for term certain | 66 |
| Actuarial formulae and basis | | 69 |

## INTRODUCTION to the 7th Edition of the OGDEN TABLES

*"When it comes to the explanatory notes we must make sure that they are readily comprehensible. We must assume the most stupid circuit judge in the country and before him are the two most stupid advocates. All three of them must be able to understand what we are saying".*

Sir Michael Ogden, QC,
on his explanatory notes to the
First Edition of the Ogden Tables[1].

1.   The Working Party has been eager to see a new set of these Tables published, as there have been changes in the official projections of future mortality rates for the UK since the previous, sixth, edition was published which produce significant changes in the values of some of the multipliers. The Working Party is grateful that the Ministry of Justice has agreed to fund the production of this edition of the Ogden Tables.

**Purpose of the tables**

2.   These tables are designed to assist those concerned with calculating lump sum damages for future losses in personal injury and fatal accident cases in the UK.

3.   The methodology is long-established whereby multipliers are applied to the present day value of a future annual loss (net of tax in the case of a loss of earnings and pension) with the aim of producing a lump sum equivalent to the capitalised value of the future losses. In essence, the multiplier is the figure by which an annual loss is multiplied in order to calculate a capitalised sum, taking into account accelerated receipt, mortality risks and, in relation to claims for loss of earnings and pension, discounts for contingencies other than mortality.

4.   This methodology was endorsed by the House of Lords in the famous case of Wells v Wells [1999] 1 AC 345. In that case the Court determined that the discount rate should be based on the yields on Index Linked Government Stock. The discount rate is now fixed by the Lord Chancellor of the day pursuant to his powers under the Damages Act 1996. The above method was further endorsed by Lord Chancellor Irvine in his decision of July 2001, when he fixed the Discount Rate as being 2.5%. He also gave his reasons for his decision, which reasons appear now to be less than happy in the light of the financial turmoil which has since occurred. I will deal with this below. In my view, this present rate is long out of date and does not reflect the substantial reduction in yields on Index Linked Government Stocks since 2001. The present Lord Chancellor Clarke has agreed to review it although his decision may not be available for several months.

**First decision of the Working Party**

5.   It was decided that, with funding now obtained, a new set of Tables, based on the most recent mortality rates produced by the Office for National Statistics (ONS), with as few other revisions as possible, should be issued as quickly as was realistically achievable.

**Second decision of the Working Party**

6.   It was decided that, due to the passage of time and the changed circumstances since the Tables were first produced, the text of the Explanatory Notes will require a substantial re-write in order to bolster its usefulness to practitioners. Not only is there a need to change the language, but the effect of other decided cases has made this a task of importance. The intention of the Working party is to accomplish this re-writing in the next (eighth) Edition, which will rely on the further updated mortality projections due to be produced by the ONS later in 2011. It is hoped that the eighth edition will be available in autumn 2012.

**Third decision of the Working Party**

7.   Developments in Guernsey and the review of the discount rate currently being carried out by the Lord Chancellor (see further below in respect of both matters) caused the Working Party to decide to include in this Edition tables with discount rate columns which range between minus 2 per cent and plus 3 per cent.

8.   It is not, we believe, the purpose of these Tables or the role of the Working Party to advocate a discount rate, but merely to provide the tools so that, whatever the rate should be, personal injury and fatal accident claims may be quantified.

9.   The revised spread of discount rates will assist comparison between lump sums and periodical payments, a process required by the Damages Act 1996, to be more accurately appreciated. The present value of periodical payments is substantially higher than lump sums calculated using the current discount rate of 2.5%. Brooke LJ remarked in paragraph 34 of the Flora v Wakom [2006] EWCA Civ 1103, [2007] 1 WLR 282 judgment: 'The fact that these two quite different

---

[1]  Memoirs of Sir Michael Ogden, QC, 'Variety is the Spice of Legal Life', p.182; The Book Guild, 2002

**171**

mechanisms now sit side by side in the same Act of Parliament does not in my judgment mean that the problems that infected the operation of the one should be allowed to infect the operation of the other.' This imbalance is a factor which any Lord Chancellor ought to take into account.

**Fourth decision of the Working Party**

10. The Working Party decided not to increase further the number of tables to reflect different possible retirement ages. The multipliers for retirement ages which do not conform strictly with the 5 yearly intervals between 50 and 75 can be calculated with reasonable accuracy by interpolation. We would be interested to learn of other views on this decision which might cause us to think again.

**Helmot v Simon**

11. The judgment in **Helmot v Simon [2009-10]** GLR 465 in the Court of Appeal of the Island of Guernsey (14th September 2010), presided over by Sumption J.A., could be truly described as a decision which has had after-effects. The results have rippled the waters within the English legal establishment, even though the decision creates no precedent in England.

12. The first point to make about the case is that the Damages Act 1996 (as amended) does not apply in Guernsey. Consequentally, neither the 2.5% discount rate prescribed under the power provided by section 1 applies nor is there any power to make an award by way of a periodical payment.

13. The original lump sum award made at first instance on 14 January 2010 was for damages in the sum of £9.3 million plus interest. The court used a single discount rate of 1% for all future losses. The claimant had argued for differential rates of 0.5% for non-earnings-related losses and of minus 1.5% for earnings-related losses. Some eight months later these arguments succeeded on appeal and the final amount of the award was increased to more than £14 million. Permission has been granted to appeal the decision to the Privy Council.

14. The consequences in England and Wales have been profound. The Lord Chancellor has indicated his intention to reconsider the discount rate and at the time of writing is in the process of doing so. It has also emphasised the disparity between lump sum awards and the provision of periodical payments, to the detriment of lump sum awards, when the discount rate is inappropriate, it not having been revised for a period of 10 years.

**Mortality data**

15. Projections of future mortality rates are usually produced on a two-yearly basis by the ONS as part of the production of national population projections for the United Kingdom and its constituent countries. Multipliers published in the sixth edition of the Ogden Tables were calculated using mortality rates from the 2004-based projections; this new edition provides multipliers based on mortality rates from the most recent, 2008-based, projections. The 2006-based projections showed rather higher projected life expectancies at many ages than those in the 2004-based projections. The 2008-based projections suggest slightly higher projected life expectancies than those in the 2006-based projections, but which are of relatively little significance in terms of the values of the multipliers at most ages.

16. There is much debate among demographers about whether the factors that have led to the significant improvements in mortality in recent years can continue unabated, thus adding some uncertainty to any projections of future mortality. While the Working Party has continued to use the official projections made by the ONS of future mortality rates in the UK, we propose to monitor developments as new evidence becomes available.

**Contingencies other than mortality**

17. We have persuaded Dr Victoria Wass to join the Working Party. She has suggested changes to the definition of 'disabled' and also clarified some of the language in the Explanatory Notes. We anticipate some further suggestions for amendment in the eighth Edition.

18. The Working Party notes that there have been a number of cases in which judges have made significant adjustments to the suggested discount factors. In particular the approach of the trial judges to the calculation of future loss of earnings in **Conner v Bradman [2007] EWHC 2789 (QB)** and **Clarke v Maltby [2010] EWHC 1201 (QB)** has generated some debate. These issues will be discussed in detail when drafting the eighth Edition and consideration given to whether or not the Explanatory Notes need amendment, especially as regards the circumstances in which it might be appropriate to depart from the suggested non-mortality reduction factors and the size of any adjustments that are made. In the meantime, practitioners performing such calculations are referred to the helpful article by Dr Wass, *"Discretion in the Application of the New Ogden Six Multipliers: The Case of Conner v Bradman and Company"*, published in JPIL Issue 2/2008 pp 154-163 which highlights some of the relevant issues.

**172**

**Fatal Accidents Act calculations and the 'Actuarially Recommended Approach'**

19.  This is dealt with in detail in Section D of the Explanatory Notes. To those comments I would add one qualification which is that the Court of Appeal in **Fletcher v A Train & Sons Ltd [2008] EWCA Civ 413, [2008] 4 All ER 699** was sufficiently concerned with the consequence of following the reasoning of the House of Lords in **Cookson v Knowles [1979] AC 566** that it unanimously gave the unsuccessful Appellant permission to appeal to the House of Lords on the point; the appeal was subsequently compromised.

20.  The Scottish Parliament has since enacted the Damages (Scotland) Act 2011 dealing with the same point and in so doing has demonstrated that it agrees with the point that our predecessors had made on this topic.

21.  Section 7(1)(d) of the Damages (Scotland) Act 2011 provides for the multiplier to be calculated at the date of the proof (trial) and the losses over the period between the fatal accident and the proof to be calculated separately, subject to a factor for possible early death, with interest added. Multipliers are determined from the tables based on the age of the deceased had he/she survived to the date of proof. This is the same as our actuarially recommended approach.

**Concluding Remarks**

22.  The changes to the Explanatory Notes in this Edition are minor; it is the figures that have been updated.

23.  As I have previously stated, the figures for the Tables themselves are produced by the Government Actuary's Department according to long-established principles.

24.  The other matters discussed are the subject of careful and detailed analysis by the members of the Working Party. Its discussions are never less than uninhibited and I am grateful to those members of the Working Party (listed inside the front cover) who give their time and energy to attend the meetings and ensure that all is done which ought to be done.

25.  I begin to believe that the journey made by Jason and the Argonauts in search of the Golden Fleece is as nothing in comparison with the desire of those involved in these Tables to make the assessment of future losses as simple and accurate as they possibly can be, whilst remaining as clear as we can be in explaining the actual process of calculating the figures. I am conscious that we may not always succeed in that ambition.

1 August 2011

Robin de Wilde, Q.C.

**173**

# EXPLANATORY NOTES

## SECTION A: GENERAL

### Purpose of tables

1.    The tables have been prepared by the Government Actuary's Department. They provide an aid for those assessing the lump sum appropriate as compensation for a continuing future pecuniary loss or consequential expense or cost of care in personal injury and fatal accident cases.

### Application of tables

2.    The tables set out multipliers. These multipliers enable the user to assess the present capital value of future annual loss (net of tax) or annual expense calculated on the basis of various assumptions which are explained below. Accordingly, to find the present capital value of a given annual loss or expense, it is necessary to select the appropriate table, find the appropriate multiplier and then multiply the amount of the annual loss or expense by that figure.

3.    Tables 1 to 26 deal with annual loss or annual expense extending over three different periods of time. In each case there are separate tables for men and women.

    –    In Tables 1 and 2 the loss or expense is assumed to begin immediately and to continue for the whole of the rest of the claimant's life

    –    In Tables 3 to 14 the loss or expense is assumed to begin immediately but to continue only until the claimant's retirement or earlier death.

    –    In Tables 15 to 26 it is assumed that the annual loss or annual expense will not begin until the claimant reaches retirement but will then continue for the whole of the rest of his or her life. These tables all make due allowance for the chance that the claimant may not live to reach the age of retirement.

### Mortality assumptions

4.    The tables are based on a reasonable estimate of the future mortality likely to be experienced by average members of the population alive today and are based on projected mortality rates for the United Kingdom as a whole. The Office for National Statistics publishes population projections on a regular basis which include estimates of the extent of future improvements in mortality. Tables 1 to 26 in this edition show the multipliers which result from the application of these projected mortality rates which were derived from the principal 2008-based population projections for the United Kingdom, which were published in October 2009. (Further details of these projections can be found on the ONS website at http://www.ons.gov.uk/ons/rel/npp/national-population-projections/2008-based-projections/index.html.)

5.    The tables do not assume that the claimant dies after a period equating to the expectation of life, but take account of the possibilities that the claimant will live for different periods, e.g. die soon or live to be very old. The mortality assumptions relate to the general population of the United Kingdom. However, unless there is clear evidence in an individual case to support the view that the individual is atypical and will enjoy longer or shorter expectation of life, no further increase or reduction is required for mortality alone.

### Use of tables

6.    To find the appropriate figure for the present value of a particular loss or expense, the user must first choose that table which relates to the period of loss or expense for which the individual claimant is to be compensated and to the gender of the claimant, or, where appropriate, the claimant's dependants.

7.    If, for some reason, the facts in a particular case do not correspond with the assumptions on which one of the tables is based (e.g. it is known that the claimant will have a different retiring age from that assumed in the tables), then the tables can only be used if an appropriate allowance is made for this difference; for this purpose the assistance of an actuary should be sought, except for situations where specific guidance is given in these explanatory notes.

### Rate of return

8.    The basis of the multipliers set out in the tables is that the lump sum will be invested and yield income (but that over the period in question the claimant will gradually reduce the capital sum, so that at the end of the period it is exhausted). Accordingly, an essential factor in arriving at the right figure is the choice of the appropriate rate of return.

9.    The annual rate of return currently to be applied is 2½% (net of tax), as fixed by the Lord Chancellor on 25 June 2001, and reassessed on 27 July 2001, under the provisions of the Damages Act 1996 Section 1. An annual rate of return

of 2½% was also set for Scotland by the Scottish Ministers on 8 February 2002. The Lord Chancellor may make a fresh determination of this rate, after receiving advice from the Government Actuary and the Treasury (and, in Scotland, the Scottish Ministers after consultation with the Government Actuary). In order to allow the Tables to continue to be used should a new discount rate be specified, the tables are accordingly shown for a range of possible annual rates of return ranging from –2% to 3%, in steps of 0.5%, rather than the range 0.0% to 5.0% as in the 6th edition. This change has been made because multipliers at negative rates are useful for the financial evaluation of periodical payments in the exercise which is required by the Damages Act in all cases for comparison with lump sums. In addition, it is recognised that multipliers based on discount rates of more than 3% are currently not generally required, and a recent case heard in the Channel Islands (**Helmot v Simon [2009-10] GLR 465**) has made an award based on negative discount rates.

10. The figures in the 0% column show the multiplier without any discount for interest and provide the expectations of life (Tables 1 and 2) or the expected period over which a person would have provided a dependency (up to retirement age Tables 3 to 14 or from pension age Tables 15 to 26). These are supplied to assist in the calculation of multipliers in Fatal Accidents Act cases (see Section D).

11. Section 1(2) of the Damages Act 1996 makes provision for the Courts to make variations to the discount rate if any party to the proceedings shows that it is more appropriate in the case in question. Variations to the discount rate under this provision have, however, been rejected by the Court of Appeal in the cases of **Warriner v Warriner [2002] EWCA Civ 81, [2002] 1 WLR 1703** and **Cooke & Others v United Bristol Health Care & Others [2003] EWCA Civ 1370, [2004] 1 WLR 251.**

12. Previous editions of these tables explained how the current yields on index-linked government bonds could be used as an indicator of the appropriate real rate of return for valuing future income streams. Such considerations were endorsed by the House of Lords in Wells v Wells and the same argumentation was adopted by the Lord Chancellor when he set the rate on commencement of Section 1 of the Damages Act 1996. In cases outwith the scope of these tables, the advice of an actuary should be sought.

**Different retirement ages**

13. In paragraph 7 above, reference was made to the problem that will arise when the claimant's retiring age is different from that assumed in the tables. Such a problem may arise in valuing a loss or expense beginning immediately but ending at retirement; or in valuing a loss or expense which will not begin until the claimant reaches retirement but will then continue until death. Tables are provided for retirement ages of 50, 55, 60, 65, 70 and 75. Where the claimant's actual retiring age would have been between two of the retirement ages for which tables are provided, the correct multiplier can be obtained by consideration of the tables for retirement age immediately above and below the actual retirement age, keeping the period to retirement age the same. Thus a woman of 42 who would have retired at 58 can be considered as being in between the cases of a woman of 39 with a retirement age of 55 and a woman of 44 with a retirement age of 60. The steps to take are as follows:

   (1)  Determine between which retirement ages, for which tables are provided, the claimant's actual retirement age $R$ lies. Let the lower of these ages be $A$ and the higher be $B$.

   (2)  Determine how many years must be subtracted from the claimant's actual retirement age to get to $A$ and subtract that period from the claimant's age. If the claimant's age is $x$, the result of this calculation is $(x-A-R)$.

   (3)  Look up this new reduced age in the Table corresponding to retirement age $A$ at the appropriate rate of return. Let the resulting multiplier be $M$.

   (4)  Determine how many years must be added to the claimant's actual retirement age to get to $B$ and add that period to the claimant's age. The result of this calculation is $(x+B-R)$.

   (5)  Look up this new increased age in the Table corresponding to retirement age $B$ at the appropriate rate of return. Let the resulting multiplier be $N$.

   (6)  Interpolate between $M$ and $N$. In other words, calculate:

$$(B-R) \times M + (R-A) \times N$$

and divide the result by $[(B-R) + (R-A)]$, (or equivalently $[B-A]$).

14. In the example given in paragraph 13, the steps would be as follows:

   (1)  $R$ is 58, $A$ is 55 and $B$ is 60.

   (2)  Subtracting 3 years from the claimant's age gives 39.

175

    (3)  Looking up age 39 in Table 6 (for retirement age 55) gives 13.10 at a rate of return of 2½%.

    (4)  Adding 2 years to the claimant's age gives 44.

    (5)  Looking up age 44 in Table 8 (for retirement age 60) gives 13.03 at a rate of return of 2½%.

    (6)  Calculating 2 x 13.10 + 3 x 13.03 and dividing by (60-58) + (58-55) [equals 5] gives 13.06 as the multiplier.

15.  When the loss or expense to be valued is that from the date of retirement to death, and the claimant's date of retirement differs from that assumed in the tables, a different approach is necessary, involving the following three steps.

    (1)  Assume that there is a present loss which will continue for the rest of the claimant's life and from Table 1 or 2 establish the value of that loss or expense over the whole period from the date of assessment until the claimant's death.

    (2)  Establish the value of such loss or expense over the period from the date of assessment until the claimant's expected date of retirement following the procedure explained in paragraphs 13 and 14 above.

    (3)  Subtract the second figure from the first. The balance remaining represents the present value of the claimant's loss or expense between retirement and death.

16.  If the claimant's actual retiring age would have been earlier than 50, or later than 75, the advice of an actuary should be sought.

**Younger ages**

17.  Tables 1 and 2, which concern pecuniary loss for life, and Tables 15 to 26, which concern loss of pension from retirement age, have been extended down to age 0. In some circumstances the multiplier at age 0 is slightly lower than that at age 1; this arises because of the relatively high incidence of deaths immediately after birth.

18.  Tables for multipliers for loss of earnings (Tables 3 to 14) have not been extended below age 16. In order to determine the multiplier for loss of earnings for someone who has not yet started work, it is first necessary to determine an assumed age at which the claimant would have commenced work and to find the appropriate multiplier for that age from Tables 3 to 14, according to the assumed retirement age. This multiplier should then be multiplied by the deferment factor from Table 27 which corresponds to the appropriate rate of return and the period from the date of the trial to the date on which it is assumed that the claimant would have started work. A similar approach can be used for determining a multiplier for pecuniary loss for life where the loss is assumed to commence a fixed period of years from the date of the trial. For simplicity the factors in Table 27 relate purely to the impact of compound interest and ignore mortality. At ages below 30 this is a reasonable approximation but at higher ages it would normally be appropriate to allow explicitly for mortality and the advice of an actuary should be sought.

**Contingencies**

19.  Tables 1 to 26 make reasonable provision for the levels of mortality which members of the population of the United Kingdom alive today may expect to experience in future. The tables do not take account of other risks and vicissitudes of life, such as the possibility that the claimant would for periods have ceased to earn due to ill-health or loss of employment. Nor do they take account of the fact that many people cease work for substantial periods to care for children or other dependants. Section B suggests ways in which allowance may be made to the multipliers for loss of earnings, to allow for certain risks other than mortality.

**Impaired lives**

20.  In some cases, medical evidence may be available which asserts that a claimant's health impairments are equivalent to adding a certain number of years to their current age, or to treating the individual as having a specific age different from their actual age. In such cases, Tables 1 and 2 can be used with respect to the deemed higher age. For the other tables the adjustment is not so straightforward, as adjusting the age will also affect the assumed retirement age, but the procedures described in paragraphs 13 to 15 may be followed, or the advice of an actuary should be sought. In other cases, the medical evidence may state that the claimant is likely to live for a stated number of years. This is often then treated as requiring payment to be made for a fixed period equal to the stated life expectancy and using Table 28 to ascertain the value of the multiplier. In general, this is likely to give a multiplier which is too high since this approach does not allow for the distribution of deaths around the expected length of life. For a group of similarly impaired lives of the same age, some will die before the average life expectancy and some after; allowing for this spread of deaths results in a lower multiplier than assuming payment for a term certain equal to the life expectancy. In such cases, it is preferable to look up the age in the 0% column in Table 1 or 2 for which the value of the multiplier at 0% is equal to the stated life expectancy. The relevant multipliers are then obtained from the relevant tables using this age. Take, for example, an impaired male life which is

# 176

stated to have a life expectancy of 20 years. By interpolation, the age for which the multiplier in the 0% column in Table 1 is 20 is:

$$(20 - 19.74)/(20.57 - 19.74) \times 66 + (20.57 - 20)/(20.57 - 19.74) \times 67$$

which equals 66.7 years.

The value of the whole of life multiplier is then obtained from the 2.5% column of Table 1 for age 66.7 years:

$$(67 - 66.7) \times 15.38 + (66.7 - 66) \times 14.90$$

which equals 15.04 (compared to 15.78 for the value for a term certain of 20 years using the 2.5% column of Table 28).

### Fixed periods

21.  In cases where pecuniary loss is to be valued for a fixed period, the multipliers in Table 28 may be used. These make no allowance for mortality or any other contingency but assume that regular frequent payments (e.g. weekly or monthly) will continue throughout the period. These figures should in principle be adjusted if the periodicity of payment is less frequent, especially if the payments in question are annually in advance or in arrears.

### Variable future losses or expenses

22.  The tables do not provide an immediate answer when the annual future loss or expense is likely to change at given points in time in the future. The most common examples will be where:

    (a)  the claimant's lost earnings would have increased on a sliding scale or changed due to promotion; or

    (b)  the claimant's future care needs are likely to change in the future, perhaps because it is anticipated that a family carer will not be able to continue to provide help.

In such situations it is usually necessary to split the overall multiplier, whether for working life or whole of life, into segments, and then to apply those smaller segmented multipliers to the multiplicand appropriate for each period.

There are a variety of methods which could be used for splitting a multiplier, especially where the age at which a payment is increased or decreased, or stops or begins, is one which is tabulated in Tables 1 to 26. The following examples serve to illustrate how multipliers might be split using the "apportionment method". This method can be extended for use in cases where none of the ages at which payments change are tabulated.

### Example 1 – Variable future earnings

23.  The claimant is female, a graduate with a degree, aged 25 at date of settlement/trial. Her probable career progression, in the absence of injury, would have provided her with salary increases at ages 30, 35 and 40; thereafter she would have continued at the same level to age 60, when she would have stepped down from full-time work to work part-time until 70. Post accident she is now incapable of working.

The multiplicands for lost future earnings are:

| | |
|---|---|
| Age 25 to 30: | £16,000 a year |
| Age 30 to 35: | £25,000 a year |
| Age 35 to 40: | £35,000 a year |
| Age 40 to 60: | £40,000 a year |
| Age 60 to 70: | £20,000 a year |

The multipliers for each stage of her career are calculated as follows:

    (1)  The working-life will be 45 years and the Multiplier from Table 12 for that period taking into account mortality risks but without any discounts for any other contingencies will be 26.73.

    (2)  The multiplier for a term certain of 45 years (ignoring mortality risks) from Table 28 is 27.17.

    (3)  The multiplier from Table 28 should be split so that each individual segment of the whole working life period (45 years) is represented by a figure. So, the first 5 years is represented by a multiplier for a term certain of 5 years, namely 4.70; the next 5 years is represented by a multiplier of 4.16 (being the difference between the figure for a term certain of 10 years, namely 8.86 and the figure for a term certain of 5 years, namely 4.70); the

next 5 years by 3.68 (i.e. the 15 year figure of 12.54 less the 10 year figure of 8.86); the next 20 years by 10.89 (i.e. the difference between the 35 year figure which is 23.43 and the 15 year figure of 12.54); then, the final 10 years by the balance of 3.74 (the residual figure being 27.17 less 23.43).

(4) Each of those smaller segmented multipliers can be shown as a percentage or fraction of the whole: so, for the first 5 years the segmented multiplier of 4.70 is 17.30% of the whole figure of 27.17, and so on for each segment of the 45 year period.

(5) The working life multiplier from Table 12 can now be split up in identical proportions to the way in which the Table 28 multiplier has been treated above: thus the first 5 year period is now represented by a multiplier of 4.62, which is calculated by taking 17.30% of 26.73. Each segmented multiplier is calculated in the same way.

(6) Having now obtained multipliers for each segment of working life, taking into account mortality risks, it is then necessary to discount those figures for "contingencies other than mortality". The discount factor from Table C (using the column for a female, not disabled, with degree level education) is 0.89. So, the figure of 4.62 for the first 5 year period now becomes 4.11 (i.e. 4.62 x 0.89). Again, treat each segmented multiplier in the same way.

(7) The multiplicand for each segment of working life is now multiplied by the appropriate segmented multiplier to calculate the loss for that period. The sum total of those losses represents the full sum for loss of future earnings (ignoring any mitigation).

(8) The figures are set out in tabular form below and give a total lump sum award of £716,260:

| Ages | Period (years) | Table 28 | % Split | Table 12 | Discounted Multipliers (Table C) (x 0.89) | Net Annual Earnings £ | £ Loss |
|---|---|---|---|---|---|---|---|
| 25 – 30 | 5 | 4.70 | 17.30 | 4.62 | 4.11 | 16,000 | 65,760 |
| 30 – 35 | 5 | 4.16 | 15.31 | 4.09 | 3.64 | 25,000 | 91,000 |
| 35 – 40 | 5 | 3.68 | 13.54 | 3.62 | 3.22 | 35,000 | 112,700 |
| 40 – 60 | 20 | 10.89 | 40.08 | 10.71 | 9.53 | 40,000 | 381,200 |
| 60 – 70 | 10 | 3.74 | 13.77 | 3.68 | 3.28 | 20,000 | 65,600 |
| Totals: | 45 years | 27.17 | 100.0 | 26.73 | 23.79 | | **716,260** |

*N.B the figures in the above table have been rounded at each step of the calculation so the totals shown are not necessarily the sum of the individual multipliers in the columns*

**Example 2 – Variable future care costs**

24. A male aged 20 years at the date of settlement trial requires personal care support for life. He has a normal life expectation for his age. Significant changes in his care regime are anticipated at age 30 and again at age 50.

The multiplicands for care costs are:

Age 20 to 30:            £30,000 a year

Age 30 to 50:            £60,000 a year

Age 50 for rest of life:            £80,000 a year

The multipliers for each stage of the care regime are calculated as follows:

(1) The life expectation will be 67.22 years (from the 0% column of Table 1) and the multiplier for that period taking into account mortality risks (from Table 1) will be 32.10.

(2) The multiplier for a term certain of 67.22 years (ignoring mortality risks) from Table 28 lies between 32.75 (for 67 years) and 32.94 (for 68 years) and is calculated thus:

(68 – 67.22) x 32.75 + (67.22 – 67) x 32.94 = 32.79.

**178**

(3) The multiplier from Table 28 should be split so that each individual segment of the whole period of life expectation is represented by a figure. So, the first 10 years (20-30) are represented by a multiplier of 8.86; the next 20 years (30-50) are represented by a multiplier of 12.33 (being the difference between the 30 year figure of 21.19 and the 10 year figure of 8.86); then, the final years (50 to death) are represented by the balance of 11.60 (being the difference between the term certain multiplier of 32.79 and the 30 year figure of 21.19).

(4) Each of those smaller segmented multipliers can be shown as a percentage or fraction of the whole: so, for the first 10 years the segmented multiplier of 8.86 is 27.02% of the whole figure of 32.79, and so on for each segment of the life period.

(5) The life multiplier from Table 1 can now be split up in the way in which the Table 28 multiplier was treated above and in identical proportions: thus the first 10 year period is now represented by a multiplier of 8.67 which is calculated by taking 27.02% of 32.10.

(6) The figures are set out in tabular form below and give a total lump sum award of £1,893,100:

| Age (years) | Table 28 (67.22 years) Split multipliers | % Split (of Table 28 figure) | Table 1 (multiplier allowing for mortality) | Care costs £ a year | Total £ |
|---|---|---|---|---|---|
| 20 – 30 | 8.86 | 27.02% | 8.67 | 30,000 | 260,100 |
| 30 – 50 | 12.33 | 37.60% | 12.07 | 60,000 | 724,200 |
| 50 till death | 11.60 | 35.38% | 11.36 | 80,000 | 908,800 |
| Totals | 32.79 (no mortality discount) | 100.00% | 32.10 life multiplier | | 1,893,100 |

*N.B. the figures in the above table have been rounded at each step of the calculation*

**Spouses' pensions**

25. If doubt exists whether the tables are appropriate to a particular case which appears to present significant difficulties of substance, it would be prudent to take actuarial advice. This might be appropriate in relation to the level of spouses' benefits, if these are to be assessed, since these are not readily valued using Tables 1 to 26. As a rough rule of thumb, if spouses' benefits are to be included when valuing pension loss from normal pension age, the multipliers in Tables 15 to 26 should be increased by 5% for a female claimant (i.e. benefits to the male spouse) and by 14% for a male claimant if the spouse's pension would be half of the pension that the member was receiving at death. If the spouse's pension would be payable at a rate of two-thirds the member's pension at death the multipliers should be increased by 7% for a female claimant and by 18% for a male claimant.

13

## SECTION B: CONTINGENCIES OTHER THAN MORTALITY

26.   As stated in paragraph 19, the tables for loss of earnings (Tables 3 to 14) take no account of risks other than mortality. This section shows how the multipliers in these tables may be reduced to take account of these risks.

27.   Tables of factors to be applied to the existing multipliers were first introduced in the Second Edition of the Ogden Tables. These factors were based on work commissioned by the Institute of Actuaries and carried out by Professor S Haberman and Mrs D S F Bloomfield (*Work time lost to sickness, unemployment and stoppages: measurement and application* (1990). Journal of the Institute of Actuaries 117, 533-595). Although there was some debate within the actuarial profession about the details of the work, and in particular about the scope for developing it further, the findings were broadly accepted and were adopted by the Government Actuary and the other actuaries who were members of the Working Party when the Second Edition of the Tables was published and remained unchanged until the 6th edition.

28.   Some related work was published in 2002 by Lewis, McNabb and Wass (*Methods of calculating damages for loss of future earnings*, Journal of Personal Injury Law, 2002 Number 2). For the publication of the 6th Edition of the Ogden Tables, the Ogden Working Party was involved in further research into the impact of contingencies other than mortality carried out by Professor Richard Verrall, Professor Steven Haberman and Mr Zoltan Butt of City University, London and, in a separate exercise, by Dr Victoria Wass of Cardiff University. Their findings were combined to produce the tables of factors given in section B of the 6th edition and repeated here.

29.   The Haberman and Bloomfield paper relied on data from the Labour Force Surveys for 1973, 1977, 1981 and 1985 and English Life Tables No. 14 (1980-82). The Labour Force Survey (LFS) was originally designed to produce a periodic cross-sectional snapshot of the working age population and collects information on an extensive range of socio-economic and labour force characteristics. Since the winter of 1992/3, the LFS has been carried out on a quarterly basis, with respondents being included in the survey over 5 successive quarters. The research of Professor Verrall *et al* and Dr Wass used data from the Labour Force Surveys conducted from 1998 to 2003 to estimate the probabilities of movement of males and females between different states of economic activity, dependent on age, sex, employment activity and level of disability. These probabilities permit the calculation of the expected periods in employment until retirement age, dependent on the initial starting state of economic activity, disability and educational attainment. These can then be discounted at the same discount rate that is used for obtaining the relevant multiplier from Tables 3 to 14, in order to give a multiplier which takes into account only those periods the claimant would be expected, on average, to be in work. These discounted working life expectancy multipliers can be compared to those obtained assuming the person remained in work throughout, to obtain reduction factors which give the expected proportion of time to retirement age which will be spent in employment.

30.   The factors described in subsequent paragraphs are for use in calculating loss of earnings up to retirement age. The research work did not investigate the impact of contingencies other than mortality on the value of future pension rights. Some reduction to the multiplier for loss of pension would often be appropriate when a reduction is being applied for loss of earnings. This may be a smaller reduction than in the case of loss of earnings because the ill-health contingency (as opposed to the unemployment contingency) may give rise to significant ill-health retirement pension rights. A bigger reduction may be necessary in cases where there is significant doubt whether pension rights would have continued to accrue (to the extent not already allowed for in the post-retirement multiplier) or in cases where there may be doubt over the ability of the pension fund to pay promised benefits. In the case of a defined contribution pension scheme, loss of pension rights may be allowed for simply by increasing the future earnings loss (adjusted for contingencies other than mortality) by the percentage of earnings which the employer contributions to the scheme represent.

31.   The methodology proposed in paragraphs 33 to 42 describes one method for dealing with contingencies other than mortality. If this methodology is followed, in many cases it will be appropriate to increase or reduce the discount in the tables to take account of the nature of a particular claimant's disabilities. It should be noted that the methodology does not take into account the pre-accident employment history. The methodology also provides for the possibility of valuing more appropriately the possible mitigation of loss of earnings in cases where the claimant is employed after the accident or is considered capable of being employed. This will in many cases enable a more accurate assessment to be made of the mitigation of loss. However, there may be some cases when the *Smith v Manchester Corporation* or *Blamire* approach remains applicable or otherwise where a precise mathematical approach is inapplicable.

32.   The suggestions which follow are intended as a 'ready reckoner' which provides an initial adjustment to the multipliers according to the employment status, disability status and educational attainment of the claimant when calculating awards for loss of earnings and for any mitigation of this loss in respect of potential future post-injury earnings. Such a ready reckoner cannot take into account all circumstances and it may be appropriate to argue for higher or lower adjustments in particular cases. In particular, it can be difficult to place a value on the possible mitigating income when considering the potential range of disabilities and their effect on post work capability, even within the interpretation of disability set out in paragraph 35. However, the methodology does offer a framework for consideration of a range of possible figures with the maximum being effectively provided by the post injury multiplier assuming the claimant was not disabled and the minimum being the case where there is no realistic prospect of post injury employment.

**180**

**The deduction for contingencies other than mortality**

33.   Under this method, multipliers for loss of earnings obtained from Tables 3 to 14 are multiplied by factors to allow for the risk of periods of non-employment and absence from the workforce because of sickness.

34.   The research by Professor Verrall *et al* and Dr Wass referred to in paragraphs 28 and 29 demonstrated that the key issues affecting a person's future working life are employment status, disability status and educational attainment.

35.   The definitions of employed/not employed, disabled/not disabled and educational attainment used in this analysis and which should be used for determining which factors to apply to the multipliers to allow for contingencies other than mortality are as follows:

| | |
|---|---|
| Employed | Those who at the time of the accident are employed, self-employed or on a government training scheme |
| Not employed | All others (including those temporarily out of work, full-time students and unpaid family workers) |
| Disabled | A person is classified as being disabled if all three of the following conditions in relation to the ill-health or disability are met: |

    (i)   has an illness or a disability which has or is expected to last for over a year or is a progressive illness

    (ii)   satisfies the Equality Act 2010 definition that the impact of the disability substantially limits the person's ability to carry out normal day-to-day activities

    (iii)   their condition affects either the kind or the amount of paid work they can do

| | |
|---|---|
| Not disabled | All others |

Normal day-to-day activities are those which are carried out by most people on a daily basis, and we are interested in disabilities/health problems which have a substantial adverse effect on respondent's ability to carry out these activities.

There are several ways in which a disability or health problem may affect the respondent's day to day activities:

*Mobility* – for example, unable to travel short journeys as a passenger in a car, unable to walk other than at a slow pace or with jerky movements, difficulty in negotiating stairs, unable to use one or more forms of public transport, unable to go out of doors unaccompanied.

*Manual dexterity* – for example, loss of functioning in one or both hands, inability to use a knife and fork at the same time, or difficulty in pressing buttons on a keyboard

*Physical co-ordination* – for example, the inability to feed or dress oneself; or to pour liquid from one vessel to another except with unusual slowness or concentration.

*Problems with bowel/bladder control* – for example, frequent or regular loss of control of the bladder or bowel. Occasional bedwetting is not considered a disability.

*Ability to lift, carry or otherwise move everyday objects (for example, books, kettles, light furniture)* – for example, inability to pick up a weight with one hand but not the other, or to carry a tray steadily.

*Speech* – for example, unable to communicate (clearly) orally with others, taking significantly longer to say things. A minor stutter, difficulty in speaking in front of an audience, or inability to speak a foreign language would not be considered impairments.

*Hearing* – for example, not being able to hear without the use of a hearing aid, the inability to understand speech under normal conditions or over the telephone.

*Eyesight* – for example, while wearing spectacles or contact lenses – being unable to pass the standard driving eyesight test, total inability to distinguish colours (excluding ordinary red/green colour blindness), or inability to read newsprint.

*Memory or ability to concentrate, learn or understand* – for example, intermittent loss of consciousness or confused behaviour, inability to remember names of family or friends, unable to write a cheque without assistance, or an inability to follow a recipe.

# 181

*Perception of risk of physical danger* – for example, reckless behaviour putting oneself or others at risk, mobility to cross the road safely. This excludes (significant) fear of heights or underestimating risk of dangerous hobbies.

Three levels of educational attainment are defined for the purposes of the tables as follows:

D             Degree or equivalent or higher

GE-A          GCSE grades A to C up to A levels or equivalents

O             Below GCSE C or CSE 1 or equivalent or no qualifications

The following table gives a more detailed breakdown of the allocation of various types of educational qualification to each of the three categories above and are based on the allocations used in the research by Professor Verrall *et al* and Dr Wass.

**Categories of highest educational attainment**

| D<br>Degree or equivalent<br>or higher | GE-A<br>GCSE grades A to C<br>up to A levels<br>or equivalent | O<br>Below GCSE C or<br>CSE 1 or equivalent<br>or no qualifications |
|---|---|---|
| Any degree (first or higher) | A or AS level or equivalent | CSE below grade 1 |
| Other higher education qualification below degree level | O level, GCSE grade A-C or equivalent | GCSE below grade C |
| Diploma in higher education | | |
| NVQ level 4 or 5 | NVQ level 2 or 3 | NVQ level 1 or equivalent |
| HNC/HND, BTEC higher etc | BTEC/SCOTVEC first or general diploma | BTEC first or general certificate |
| | OND/ONC, BTEC/SCOTVEC national | SCOTVEC modules or equivalent |
| RSA higher diploma | RSA diploma, advanced diploma or certificate | RSA other |
| Teaching, Nursing etc | GNVQ intermediate or advanced | GNVQ/ GVSQ foundation level |
| | City and Guilds craft or advanced craft | City and Guilds other |
| | SCE higher or equivalent Trade apprenticeship | YT/ YTP certificate |
| | Scottish 6th year certificate (CSYS) | Other qualifications |
| | | No qualification |
| | | Don't know |

*Note: "educational attainment" is used here as a proxy for skill level, so that those in professional occupations such as law, accountancy, nursing etc who do not have a degree ought to be treated as if they do have one.*

36. The research also considered the extent to which a person's future working life expectancy is affected by individual circumstances such as occupation and industrial sector, geographical region and education. The researchers concluded that the most significant consideration was the highest level of education achieved by the claimant and that, if this was allowed for, the effect of the other factors was relatively small. As a result, the Working Party decided to propose adjustment factors which allow for employment status, disability status and educational attainment only. This is a change from earlier editions of the Ogden Tables where adjustments were made for types of occupation and for geographical region.

37. A separate assessment is made for (a) the value of earnings the claimant would have received if the injury had not been suffered and (b) the value of the claimant's earnings (if any) taking account of the injuries sustained. The risk of non-employment is significantly higher post-injury due to the impairment. The loss is arrived at by deducting (b) from (a).

# 182

38.  In order to calculate the value of the earnings the claimant would have received, if the injury had not been suffered, the claimant's employment status and the disability status need to be determined as at the date of the accident (or the onset of the medical condition) giving rise to the claim, so that the correct table can be applied. For the calculation of future loss of earnings (based on actual pre-accident earnings and also future employment prospects), Tables A and C should be used for claimants who were not disabled at the time of the accident, and Tables B and D should be used for those with a pre-existing disability. In all of these tables the three left hand columns are for those who were employed at the time of the accident and the three right hand columns are for those who were not.

39.  In order to calculate the value of the actual earnings that a claimant is likely to receive in the future (i.e. after settlement or trial), the employment status and the disability status need to be determined as at the date of settlement or trial. For claimants with a work-affecting disability at that point in time, Tables B and D should be used. The three left hand columns will apply in respect of claimants actually in employment at date of settlement or trial and the three right hand columns will apply in respect of those who remain non-employed at that point in time.

40.  The factors in Tables A to D allow for the interruption of employment for bringing up children and caring for other dependants.

41.  In the case of those who at the date of the accident have not yet reached the age at which it is likely they would have started work, the relevant factor will be chosen based on a number of assessments of the claimant's likely employment had the injury not occurred. The relevant factor from the tables would be chosen on the basis of the level of education the claimant would have been expected to have attained, the age at which it is likely the claimant would have started work, together with an assessment as to whether the claimant would have become employed or not. The work multiplier will also have to be discounted for early receipt using the appropriate factor from Table 27 for the number of years between the claimant's age at the date of trial and the age at which it is likely that he/she would have started work.

42.  Tables A to D include factors up to age 54 only. For older ages the reduction factors increase towards 1 at retirement age for those who are employed and fall towards 0 for those who are not employed. However, where the claimant is older than 54, it is anticipated that the likely future course of employment status will be particularly dependent on individual circumstances, so that the use of factors based on averages would not be appropriate. Hence reduction factors are not provided for these older ages.

Table A
Loss of Earnings to pension Age 65 (Males – Not disabled)

| Age at date of trial | Employed | | | Not employed | | |
| | D | GE-A | O | D | GE-A | O |
|---|---|---|---|---|---|---|
| 16-19 | | 0.90 | 0.85 | | 0.85 | 0.82 |
| 20-24 | 0.92 | 0.92 | 0.87 | 0.89 | 0.88 | 0.83 |
| 25-29 | 0.93 | 0.92 | 0.89 | 0.89 | 0.88 | 0.82 |
| 30-34 | 0.92 | 0.91 | 0.89 | 0.87 | 0.86 | 0.81 |
| 35-39 | 0.90 | 0.90 | 0.89 | 0.85 | 0.84 | 0.80 |
| 40-44 | 0.88 | 0.88 | 0.88 | 0.82 | 0.81 | 0.78 |
| 45-49 | 0.86 | 0.86 | 0.86 | 0.77 | 0.77 | 0.74 |
| 50 | 0.83 | 0.83 | 0.83 | 0.72 | 0.72 | 0.70 |
| 51 | 0.82 | 0.82 | 0.82 | 0.70 | 0.70 | 0.68 |
| 52 | 0.81 | 0.81 | 0.81 | 0.67 | 0.67 | 0.66 |
| 53 | 0.80 | 0.80 | 0.80 | 0.63 | 0.63 | 0.63 |
| 54 | 0.79 | 0.79 | 0.79 | 0.59 | 0.59 | 0.59 |

Table B
Loss of Earnings to pension Age 65 (Males – Disabled)

| Age at date of trial | Employed | | | Not employed | | |
|---|---|---|---|---|---|---|
| | D | GE-A | O | D | GE-A | O |
| 16-19 | | 0.55 | 0.32 | | 0.49 | 0.25 |
| 20-24 | 0.61 | 0.55 | 0.38 | 0.53 | 0.46 | 0.24 |
| 25-29 | 0.60 | 0.54 | 0.42 | 0.48 | 0.41 | 0.24 |
| 30-34 | 0.59 | 0.52 | 0.40 | 0.43 | 0.34 | 0.23 |
| 35-39 | 0.58 | 0.48 | 0.39 | 0.38 | 0.28 | 0.20 |
| 40-44 | 0.57 | 0.48 | 0.39 | 0.33 | 0.23 | 0.15 |
| 45-49 | 0.55 | 0.48 | 0.39 | 0.26 | 0.20 | 0.11 |
| 50 | 0.53 | 0.49 | 0.40 | 0.24 | 0.18 | 0.10 |
| 51 | 0.53 | 0.49 | 0.41 | 0.23 | 0.17 | 0.09 |
| 52 | 0.54 | 0.49 | 0.41 | 0.22 | 0.16 | 0.08 |
| 53 | 0.54 | 0.49 | 0.42 | 0.21 | 0.15 | 0.07 |
| 54 | 0.54 | 0.50 | 0.43 | 0.20 | 0.14 | 0.06 |

Table C
Loss of Earnings to Pension Age 60 (Females – Not disabled)

| Age at date of trial | Employed | | | Not employed | | |
|---|---|---|---|---|---|---|
| | D | GE-A | O | D | GE-A | O |
| 16-19 | | 0.81 | 0.64 | | 0.77 | 0.59 |
| 20-24 | 0.89 | 0.82 | 0.68 | 0.84 | 0.76 | 0.60 |
| 25-29 | 0.89 | 0.84 | 0.72 | 0.83 | 0.75 | 0.61 |
| 30-34 | 0.89 | 0.85 | 0.75 | 0.81 | 0.75 | 0.63 |
| 35-39 | 0.89 | 0.86 | 0.78 | 0.80 | 0.74 | 0.63 |
| 40-44 | 0.89 | 0.86 | 0.80 | 0.78 | 0.72 | 0.60 |
| 45-49 | 0.87 | 0.85 | 0.81 | 0.72 | 0.64 | 0.52 |
| 50 | 0.86 | 0.84 | 0.81 | 0.64 | 0.55 | 0.43 |
| 51 | 0.85 | 0.84 | 0.81 | 0.60 | 0.51 | 0.40 |
| 52 | 0.84 | 0.84 | 0.81 | 0.56 | 0.46 | 0.36 |
| 53 | 0.83 | 0.83 | 0.81 | 0.50 | 0.41 | 0.32 |
| 54 | 0.83 | 0.83 | 0.82 | 0.44 | 0.35 | 0.27 |

Table D
Loss of Earnings to Pension Age 60 (Females – Disabled)

| Age at date of trial | Employed | | | Not employed | | |
|---|---|---|---|---|---|---|
| | D | GE-A | O | D | GE-A | O |
| 16-19 | | 0.43 | 0.25 | | 0.35 | 0.19 |
| 20-24 | 0.64 | 0.44 | 0.25 | 0.58 | 0.33 | 0.17 |
| 25-29 | 0.63 | 0.45 | 0.25 | 0.50 | 0.32 | 0.16 |
| 30-34 | 0.62 | 0.46 | 0.30 | 0.44 | 0.31 | 0.15 |
| 35-39 | 0.61 | 0.48 | 0.34 | 0.42 | 0.28 | 0.14 |
| 40-44 | 0.60 | 0.51 | 0.38 | 0.38 | 0.23 | 0.13 |
| 45-49 | 0.60 | 0.54 | 0.42 | 0.28 | 0.18 | 0.11 |
| 50 | 0.60 | 0.56 | 0.47 | 0.23 | 0.15 | 0.10 |
| 51 | 0.61 | 0.58 | 0.49 | 0.21 | 0.14 | 0.09 |
| 52 | 0.61 | 0.60 | 0.51 | 0.20 | 0.13 | 0.08 |
| 53 | 0.62 | 0.62 | 0.54 | 0.18 | 0.11 | 0.07 |
| 54 | 0.63 | 0.66 | 0.57 | 0.16 | 0.09 | 0.06 |

The factors in Tables A to D will need to be reviewed if the discount rate changes.

**Different pension ages**

43.   The factors in the preceding tables assume retirement at age 65 for males and age 60 for females. It is not possible to calculate expected working life times assuming alternative retirement ages from the LFS data, since the employment data in the LFS are collected only for the working population, assumed aged between 16 and 64 for males and between 16 and 59 for females. Where the retirement age is different from age 65 for males or age 60 for females, it is suggested that this should be ignored and the reduction factor and the adjustments thereto be taken from the above tables for the age of the claimant as at the date of trial with no adjustment i.e. assume that the retirement age is age 65 for males and age 60 for females. However, if the retirement age is close to the age at the date of trial, then it may be more appropriate to take into account the circumstances of the individual case.

44.   It should be noted that the reduction factors in Tables A, B, C and D are based on data for the period 1998 to 2003. Whilst the reduction factors and adjustments allow for the age-specific probabilities of moving into, or out of, employment over future working life time, based on data for the period 1998-2003, the methodology assumes that these probabilities remain constant over time; there is no allowance for changes in these age-specific probabilities beyond this period. It is also assumed that there will be no change in disability status or educational achievement after the date of the accident. Future changes in the probabilities of moving into, and out of, employment are especially difficult to predict with any certainty. It is the intention that the factors should be reassessed from time to time as new data become available.

## SECTION C: SUMMARY OF PERSONAL INJURY APPLICATIONS

45.   To use the tables the guidance below should be followed:

(1)   Choose the table relating to the appropriate sex of the claimant and period of loss or expense (e.g. loss for life, or loss of earnings to a set retirement age). Where loss of earnings is concerned, and none of the tables is relevant because the claimant's expected age of retirement differs from that assumed in the tables, the procedure in paragraphs 13 to 16 of the explanatory notes should be followed.

(2)   Choose the appropriate discount column (currently 2½%).

(3)   In that column find the appropriate figure for the claimant's age at trial ("the basic multiplier").

### Loss of earnings

(4) When calculating **loss of earnings,** the tables should be used when a multiplier/multiplicand approach is appropriate. If it is, the basic multiplier should be adjusted to take account of contingencies other than mortality. These contingencies include the claimant's employment and disability status and educational qualifications. The basic multiplier should be multiplied by the appropriate figure taken from Tables A to D. It may be necessary at this stage to modify the resulting figure further to allow for circumstances specific to the claimant.

This process gives "the adjusted table multiplier".

(5) Multiply the net annual loss (the multiplicand) by the adjusted table multiplier to arrive at a figure which represents the capitalised value of the future loss of earnings.

(6) If the claimant has a residual earning capacity, allowance should be made for any post-accident vulnerability on the labour market: the following paragraphs show one way of doing this, although there may still be cases where a conventional **Smith v City of Manchester** award is appropriate.

Where it is appropriate to do so, repeat steps 1 to 5 above, replacing the pre-accident employment and disability status with the post-accident employment and disability status in step 4 and replacing the net annual loss by the assumed new level of net earnings in step 5. It will only be necessary to reconsider the claimant's educational attainments if these have changed between the accident and the date of trial or settlements.

The result will represent the capitalised value of the claimant's likely post-accident earnings. It is important to note that, when carrying out this exercise, the *degree* of residual disability may have a different effect on residual earnings depending on its relevance to the claimant's likely field of work. For example, the loss of a leg may have less effect on a sedentary worker's earnings than on a manual worker's.

(7) Deduct the sum yielded by step 6 from that yielded by step 5 to obtain the net amount of loss of earnings allowing for residual earning capacity. Where the above methodology is used there will usually be no need for a separate **Smith v City of Manchester** award.

### Life time losses

(8) Where a **loss** will continue **for life,** follow steps 1 to 3 above to find the appropriate multiplier in the table.

Where the normal life expectancy given by the table is inapplicable the approach set out in paragraph 20, using the lifetime tables rather than Table 28, is the correct approach.

(9) This figure may need adjustment to allow for the particular circumstances of the claimant.

(10) Multiply the annual loss or expense by the multiplier as adjusted.

### Variable annual losses

(11) In cases where there will be different losses at different periods it may be necessary to split the multiplier. The approach set out at paragraphs 22 to 24 should be followed.

### Fixed period and Deferred losses

(12) Where a loss will continue over a fixed period, the appropriate multiplier can be found in Table 28.

(13) Where a loss will not commence until some future date, multiply the appropriate multiplier by a discount figure taken from Table 27 (the use of which is explained in paragraph 18). This paragraph does not apply to loss of pensions, which have their own tables.

## Examples

46. The following are examples of the use of the tables in illustrative personal injury cases with simplified assumptions.

## Example 3

47. The claimant is female, aged 35 at the date of the trial. She has three A levels, but not a degree, and was in employment at the date of the accident at a salary of £25,000 a year net of tax. She was not disabled before the accident. As a result of her injuries, she is now disabled and has lost her job but has found part-time employment at a salary of £5,000 a year net of tax. Her loss of earnings to retirement age of 60 is assessed as follows:

# 186

(1) Look up Table 8 for loss of earnings to pension age 60 for females.

(2) The appropriate rate of return is determined to be 2½% (the rate currently set under Section 1 of the Damages Act 1996).

(3) Table 8 shows that, on the basis of a 2½% rate of return, the multiplier for a female aged 35 is 18.43.

(4) Now take account of risks other than mortality. Allowing for the claimant being employed, not disabled and having achieved A levels at the date of trial, Table C would require 18.43 to be multiplied by 0.86, resulting in a revised multiplier of 15.85.

(5) The damages for loss of earnings are assessed as £396.250 (15.85 x £25,000).

(6) Allow for mitigation of loss of earnings in respect of post-injury earnings. As before, Table 8 shows that, on the basis of a 2½% rate of return, the multiplier for a female aged 35 is 18.43.

(7) Now take account of risks other than mortality. Allowing for the claimant being employed, disabled and having achieved A levels at the date of trial, Table D would require 18.43 to be multiplied by 0.48, resulting in a revised multiplier of 8.85.

(8) The amount of mitigation for post-injury earnings is assessed as £44,250 (8.85 x £5,000).

(9) Hence award for loss of earnings after allowing for mitigation is
£396,250 − £44,250 = £352,000.

## Example 4

48. The claimant is male, aged 48 at the date of the trial. He has no educational qualifications. His retirement age was 65, he was employed at the time of the accident and his pre-retirement multiplicand has been determined as £20,000 a year net of tax. He was not disabled before the accident. As a result of his injuries, he is now disabled and has lost his job. The multiplicand for costs of care is deemed to be £50,000 a year. He is unemployed at the date of trial but has been assessed as capable of finding work with possible future earnings of £5,000 a year net of tax. His loss of earnings to retirement age of 65 is assessed as follows:

(1) Look up Table 9 for loss of earnings to pension age 65 for males.

(2) The appropriate rate of return is determined to be 2½% (the rate currently set under Section 1 of the Damages Act 1996).

(3) Table 9 shows that, on the basis of a 2½% rate of return, the multiplier for a male aged 48 is 13.42.

(4) Now take account of risks other than mortality. Allowing for the claimant being employed, not disabled and having no educational qualifications at the date of trial, Table A would require 13.42 to be multiplied by 0.86, resulting in a revised multiplier of 11.54.

(5) The damages for loss of earnings are assessed as £230.800 (11.54 x £20,000).

(6) Allow for mitigation of loss of earnings in respect of post-injury earnings. As before, Table 9 shows that, on the basis of a 2½% rate of return, the multiplier for a male aged 48 is 13.42.

(7) Now take account of risks other than mortality. Allowing for the claimant being unemployed and disabled with no educational qualifications at the date of trial, Table B would require 13.42 to be multiplied by 0.11, resulting in a revised multiplier of 1.48.

(8) The amount of mitigation for post-injury earnings is assessed as £7,400 (1.48 x £5,000).

(9) Hence award for loss of earnings after allowing for mitigation is
£230,800 − £7,400 = £223,400.

49. The damages for cost of care are assessed as follows:

(1) Look up Table 1 for the multiplier at age 48.

(2) The appropriate rate of return is 2½%.

(3) Table 1 shows that, on the basis of a 2½% rate of return, the multiplier at age 48 is 23.51.

(4)  No adjustment is made for risks other than mortality.

(5)  The damages for cost of care are assessed at £1,175,500 (23.51 x £50,000).

### Example 5

50.  The claimant is female, aged 14 at the date of the trial. She is expected to achieve a degree and to be in employment thereafter on a salary, in current terms, of £30,000 a year net of tax. She was not disabled before the accident. As a result of her injuries, she is now disabled – she is still expected to achieve a degree and to be in employment, but with an average salary in current terms of £20,000 net of tax. She will be aged 21 when she completes her degree. Her loss of earnings to retirement age of 60 is assessed as follows:

(1)  Look up Table 8 for loss of earnings to pension age 60 for females.

(2)  The appropriate rate of return is determined to be 2½% (the rate currently set under Section 1 of the Damages Act 1996).

(3)  Table 8 shows that, on the basis of a 2½% rate of return, the multiplier for a female graduate aged 21 is 24.83. This needs to be discounted back to age 14. The factor at 2½% for a period for deferment for seven years is 0.8413 from Table 27, giving a total multiplier of 24.83 x 0.8413 = 20.89.

(4)  Now take account of risks other than mortality. Allowing for the claimant at age 21 assessed as achieving a degree, being employed and not disabled, Table C would require 20.89 to be multiplied by 0.89, resulting in a revised multiplier of 18.59.

(5)  The damages for loss of earnings are assessed as £557,700 (18.59 x £30,000).

(6)  Allow for mitigation of loss of earnings in respect of post-injury earnings. As before, Table 8 shows that, on the basis of a 2½% rate of return, the multiplier for a female graduate aged 21 is 24.83. As before, after discounting for seven years to age 14 the multiplier is reduced to 24.83 x 0.8413 = 20.89.

(7)  Now take account of risks other than mortality. Allowing for the claimant at age 21 assessed as achieving a degree, being employed and disabled, Table D would require 20.89 to be multiplied by 0.64, resulting in a revised multiplier of 13.37.

(8)  The amount of mitigation for post-injury earnings is assessed as £267,400 (13.37 x £20,000).

(9)  Hence award for loss of earnings after allowing for mitigation is
£557,700 – £267,400 = £290,300.

### Example 6

51.  The claimant is male, aged 40 at the date of the trial. He has achieved O levels. He was unemployed at the time of the accident. His potential pre-retirement multiplicand has been determined as £15,000 a year net of tax. He was disabled before the accident. As a result of his injuries, he has been assessed as having no future prospect of employment. His loss of earnings to retirement age of 65 is assessed as follows:

(1)  Look up Table 9 for loss of earnings to pension age 65 for males.

(2)  The appropriate rate of return is determined to be 2½% (the rate currently set under Section 1 of the Damages Act 1996).

(3)  Table 9 shows that, on the basis of a 2½% rate of return, the multiplier for a male aged 40 is 18.09.

(4)  Now take account of risks other than mortality. Allowing for the claimant being unemployed, disabled and having achieved O levels at the date of trial, Table A would require 18.09 to be multiplied by 0.23, resulting in a revised multiplier of 4.16.

(5)  The damages for loss of earnings are assessed as £62,400 (4.16 x £15,000).

(6)  As the claimant has been assessed as having no future prospect of employment following the accident, there is no mitigation of loss of earnings in respect of post-injury earnings.

(7)  Hence award for loss of earnings after allowing for mitigation is £62,400.

**188**

## SECTION D: APPLICATION OF TABLES TO FATAL ACCIDENT CASES

52.  The current approach of the courts, except in Scotland, is to assess the multiplier as at the date of death (**Cookson v Knowles [1979] AC 556**).

53.  That approach was criticised by the Law Commission in their Report 263 (*Claims for Wrongful Death*). The Law Commission recommended that multipliers should be assessed as at the date of trial and that the multipliers derived from the Ogden Tables should only take effect from the date of trial. The Law Commission stressed that the current approach incorporates an actuarial flaw in that it incorporates a discount for early receipt in the period prior to trial or assessment.

54.  The Working Party, then under the Chairmanship of the late Sir Michael Ogden QC, considered that the Law Commission's criticism was valid. In the Fourth Edition of the Tables published in August 2000, the Working Party set out guidance in Section D of the Explanatory Notes on how damages should be calculated in such cases. We refer to that guidance below as the actuarially recommended approach. We note that the actuarially recommended approach has been adopted in the Damages (Scotland) Act 2011. For further details see paragraphs 20-21 in the Introduction.

55.  However the courts have considered themselves bound by **Cookson v Knowles** and hence have not followed the actuarially recommended approach (**White v Esab [2002] PIQR Q6, H v S [2002] EWCA Civ 792, [2003] QB 965** and **Fletcher v A Train & Sons Ltd [2008] EWCA Civ 413, [2008] 4 All ER 699**).

**The Basic Law in England and Wales**

56.  Under the Fatal Accidents Act the loss is that of the dependants, i.e. those who relied upon the deceased for support. They may claim that part of the deceased's income (whether earnings, pension, unearned income or state benefits) that the deceased would have spent on them. They may also claim the loss of the services such as DIY, domestic/household or childcare which the deceased would have undertaken and from which they would have benefited. The position of each dependant must be considered separately.

57.  Each head of dependency must be considered separately. For each head of claim for each dependant the court calculates a multiplicand. This is calculated on the basis of what is known at the date of trial. For pre-trial losses, the actual loss to date of trial is calculated. Interest is added. For post-trial losses the multiplicand is calculated as at the date of trial.

58.  A multiplier for the period of dependency is applied to the multiplicand to arrive at an overall lump sum for each head of dependency.

59.  The remainder of Section D deals with how to approach the calculations in fatal accident claims. Three approaches are put forward. Paragraphs 60 to 63 set out the current approach. The actuarially recommended approach is then set out at paragraphs 64 to 81. Example 7 illustrates the application of both these approaches whilst Examples 8 and 9 show the actuarially recommended approach applied to more complex situations – these examples make up paragraphs 82 to 87. The final paragraphs of section D, 88 to 90, offer an alternative approach using multipliers selected from the date of death.

**The Current approach**

60.  Under the approach currently followed by the courts, the multiplier is calculated as at the date of death. However, when making that calculation the court is entitled to take into account matters that have arisen between death and trial. For example, **Williamson v Thorneycroft [1940] 2 KB 658** in which the deceased's widow died after her husband but before trial, her dependency terminated at her death. See also **Corbett v Barking, Havering & Brentwood HA [1991] 2 QB 408**.

61.  There are two periods to be determined:–

  (i)  The expected period from date of death in which the deceased would have been capable of providing the dependency;

  (ii)  The expected period from the date of the death in which the dependant would have been able to receive the dependency.

  The shorter of those two periods provides the basis for the multiplier.

62.  In respect of each of those periods consideration must be given as to what discount should be made for contingencies other than mortality. The most obvious contingencies other than mortality fall into the following three categories:–

23

(i) Factors relating to the deceased. For example, the deceased's health may have been such as to seriously affect his ability to provide services or work until retirement age. In relation to earnings the starting point for the adjustment factor should be the figures contained in Tables A to D.

(ii) Factors relating to the dependant. For example, at trial it may be proved that a dependant has a significantly reduced life expectancy.

(iii) Factors relating to the relationship of the deceased and the dependant. For example, an unmarried couple who were on the point of separation before the deceased died. See also section 3 (4) of the Act and Drew v Abassi, Court of Appeal 24 May 1995.

63. The assessment of the multiplier involves the following steps:–

(1) Determine the expected period from the date of death for which the deceased would have been capable of providing the dependency.

(2) Discount that period for early receipt using the appropriate Table as at the date of death and a discount rate of 2½%.

(3) Apply any adjustment to the above figure to reflect contingencies other than mortality.

(4) Determine the expected period from date of death for which the dependant would have been able to receive the dependency.

(5) Discount that period for early receipt using the appropriate Table as at the date of death at a discount rate of 2½%.

(6) Apply any adjustment to the figure in (5) to reflect contingencies other than mortality.

(7) Take the lower of the figures in (3) and (6) above. That is the overall multiplier from date of death.

(8) Subtract the period elapsed from date of death to date of trial. Losses in this period will be treated as in effect special damages and will attract an award of interest.

(9) The balance of the multiplier will be the multiplier for the post trial multiplicand.

**The Actuarially Recommended approach**

64. Whereas in personal injury cases the problem to be solved is that of setting a value on an income stream during the potential life of one person (the claimant), the situation is generally more complicated in fatal accident cases. Here the compensation is intended to reflect the value of an income stream during the lifetime of one or more dependants of the deceased (or the expected period for which the dependants would have expected to receive the dependency, if shorter) but limited according to the expectation of how long the deceased would have been able to provide the financial support, had he or she not been involved in the fatal accident.

65. In principle, therefore, the compensation for post-trial dependency should be based on the present value at the date of the trial of the dependency during the expected future joint lifetime of the deceased and the dependant or claimant (had the deceased survived naturally to the date of the trial), subject to any limitations on the period of dependency and any expected future changes in the level of dependency, for example, on attaining retirement age. In addition there should be compensation for the period between the date of accident and the date of trial.

66. A set of actuarial tables to make such calculations accurately would require tables similar to Tables 1 to 26 but for each combination of ages as at the date of the trial of the deceased and the dependant to whom compensation is to be paid. The Working Party concluded that this would not meet the criterion of simplicity of application which was a central objective of these tables and recommends that, in complex cases, or cases where the accuracy of the multiplier is thought by the parties to be of critical importance and material to the resulting amount of compensation (for example in cases potentially involving very large claims where the level of the multiplicand is unambiguously established), the advice of a professionally qualified actuary should be sought. However, for the majority of cases, a certain amount of approximation will be appropriate, bearing in mind the need for a simple and streamlined process, and taking into consideration the other uncertainties in the determination of an appropriate level of compensation. The following paragraphs describe a methodology using Tables 1 to 26 which can be expected to yield satisfactory answers.

**190**

**(i)  Damages for the period from the fatal accident to the date of trial**

67.  The period of pre-trial dependency will normally be equal to the period between the date of the fatal accident and the date of the trial, substituting where appropriate the lower figure of the expected period for which the deceased would have provided the dependency, had he or she not been killed in the accident, or if the period of dependency would have been limited in some way, for example, if the dependant is a child.

68.  A deduction may be made for the risk that the deceased might have died anyway, in the period between the date of the fatal accident and the date at which the trial takes place. In many cases this deduction will be small and could usually be regarded as *de minimis*. The need for a deduction becomes more necessary the longer the period from the date of accident to the date of trial and the older the deceased at the date of death. As an illustration of the order of magnitude of the deduction, Table E shows some examples of factors by which the multiplier should be multiplied for different ages of the deceased and for different periods from the date of accident to the date of the trial.

TABLE E
Factor by which pre-trial damages should be multiplied to allow for the likelihood that the deceased would not in any case have survived to provide the dependency for the full period to the date of trial.

| Age of deceased at date of accident | Period from date of accident to date of trial or date of cessation of dependency, if earlier (years) | | | | | |
|---|---|---|---|---|---|---|
| | Male deceased | | | Female deceased | | |
| | 3 | 6 | 9 | 3 | 6 | 9 |
| 10 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| 20 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| 30 | 1.00 | 1.00 | 0.99 | 1.00 | 1.00 | 1.00 |
| 40 | 1.00 | 0.99 | 0.99 | 1.00 | 1.00 | 0.99 |
| 50 | 0.99 | 0.99 | 0.98 | 1.00 | 0.99 | 0.99 |
| 60 | 0.99 | 0.97 | 0.94 | 0.99 | 0.98 | 0.97 |
| 65 | 0.98 | 0.95 | 0.91 | 0.99 | 0.97 | 0.95 |
| 70 | 0.97 | 0.92 | 0.86 | 0.98 | 0.95 | 0.91 |
| 75 | 0.94 | 0.87 | 0.78 | 0.96 | 0.91 | 0.84 |
| 80 | 0.90 | 0.79 | 0.67 | 0.93 | 0.84 | 0.75 |

*N.B. The factor for a period of zero years is clearly 1.00. Factors for other ages and periods not shown in the table may be obtained approximately by interpolation.*

69.  The resultant multiplier, after application of any discount for the possibility of early death of the deceased before the date of trial, even had the accident not taken place, is to be applied to the multiplicand, which is determined in the usual way. Interest will then be added up to the date of trial on the basis of special damages.

**(ii)  Damages from the date of trial to retirement age**

70.  The assessment of the multiplier involves the following steps:

(1)  Determine the expected period from the date of the trial for which the deceased would have been able to provide the dependency (see paragraph 71).

(2)  Determine the expected period for which the dependant would have been able to receive the dependency (see paragraphs 71 and 72).

(3)  Take the lesser of the two periods.

(4)  Treat the resulting period as a term certain for which the multiplier is to be determined and look up the figure in Table 28 for this period at the appropriate rate of interest.

(5)  Apply any adjustment for contingencies other than mortality in accordance with Section B.

(6)  If necessary, make an allowance for the risk that the deceased might have died anyway before the date of the trial (see paragraph 73).

71.  The expected periods at (1) and (2) of paragraph 70 may be obtained from the 0% column of the appropriate table at the back of this booklet. For (1), Tables 3 to 14 will be relevant, according to the sex of the deceased and the expected age of retirement. The age at which the table should be entered is the age which the deceased would have been at the date of the trial. For (2) Tables 1 and 2 can be used, according to the sex of the dependant and looking up the table at the age of the dependant at the date of the trial.

72.  If the period for which the dependency would have continued is a short fixed period, as in the case of a child, the figure at (2) would be the outstanding period at the date of the trial.

73.  A deduction may be made for the risk that the deceased might have died anyway before the date of trial. The need for such a deduction becomes more necessary the longer the period from the date of accident to the date of trial and the older the deceased at the date of death. As an illustration of the order of magnitude of the deduction, Table F shows some examples of the factor by which the multiplier, determined as above, should be multiplied for different ages of the deceased and for different periods from the date of accident to the date of the trial.

**TABLE F**
**Factor by which post-trial damages should be multiplied to allow for the likelihood that the deceased would not in any case have survived to the date of trial in order to provide any post-trial dependency.**

| Age of deceased at date of accident | Period from date of accident to date of trial (years) | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Male deceased | | | Female deceased | | |
| | 3 | 6 | 9 | 3 | 6 | 9 |
| 10 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| 20 | 1.00 | 1.00 | 0.99 | 1.00 | 1.00 | 1.00 |
| 30 | 1.00 | 0.99 | 0.99 | 1.00 | 1.00 | 0.99 |
| 40 | 0.99 | 0.99 | 0.98 | 1.00 | 0.99 | 0.99 |
| 50 | 0.99 | 0.97 | 0.95 | 0.99 | 0.98 | 0.97 |
| 60 | 0.97 | 0.93 | 0.88 | 0.98 | 0.96 | 0.92 |
| 65 | 0.96 | 0.90 | 0.82 | 0.97 | 0.93 | 0.88 |
| 70 | 0.93 | 0.84 | 0.71 | 0.96 | 0.89 | 0.80 |
| 75 | 0.88 | 0.73 | 0.55 | 0.92 | 0.81 | 0.66 |
| 80 | 0.83 | 0.59 | 0.37 | 0.86 | 0.68 | 0.48 |

*N.B. The factor for a period of zero years is clearly 1.00. Factors for other ages and periods not shown in the table may be obtained approximately by interpolation.*

74.  The resulting multiplier, after application of any discount for the possibility of early death of the deceased before the date of trial, even had the accident not taken place, is to be applied to the appropriate multiplicand, determined in relation to dependency as assessed for the period up to retirement age.

75.  If there are several dependants, to whom damages are to be paid in respect of their own particular lifetime (or for a fixed period of dependency), separate multipliers should be determined for each and multiplied by the appropriate multiplicand using the procedure in paragraphs 70 to 74. The total amount of damages is then obtained by adding the separate components. If a single multiplicand is determined, but the damages are to be shared among two or more dependants so long as they are each alive, or during a period of common dependency, then the multiplier will be calculated using the procedure in paragraphs 70 to 74. However, at step (2) of paragraph 70 the expected period will be the longest of the expected periods for which the dependency might last.

**(iii)  Damages for the period of dependency after retirement age**

76.  The method described in paragraphs 70 to 75 for pre-retirement age dependency cannot satisfactorily be applied directly to post-retirement age dependency with a sufficient degree of accuracy. We therefore propose a method which

involves determining the multiplier by looking at dependency for the rest of life from the date of trial and then subtracting the multiplier for dependency up to retirement age.

77.    The assessment of the multiplier for whole of life dependency involves the following steps:

   (1)    Determine the expectation of life which the deceased would have had as at the date of trial, or such lesser period for which the deceased would have been able to provide the dependency (see paragraph 78).

   (2)    Determine the expected period for which the dependant would have been able to receive the dependency (see paragraph 78).

   (3)    Take the lesser of the two periods.

   (4)    Treat the resulting period as a term certain for which the multiplier is to be determined and look up the figure in Table 28 for this period at the appropriate rate of interest.

78.    The expected periods at (1) and (2) of paragraph 77 may be obtained from the 0% column of the appropriate table at the back of this booklet. For (1) Tables 1 or 2 will be relevant, according to the sex of the deceased. The age at which the table should be entered is the age which the deceased would have attained at the date of the trial. For (2) Tables 1 and 2 can be used, according to the sex of the dependant and looking up the table at the age of the dependant at the date of the trial.

79.    Deduct the corresponding multiplier for post-trial pre-retirement dependency, as determined in paragraphs 70 to 75, but without any adjustment for contingencies other than mortality, or that the deceased may have died anyway before the date of trial. The result is the multiplier for post-retirement dependency, which must then be applied to the appropriate multiplicand, assessed in relation to dependency after retirement age. The adjustment for contingencies other than mortality in respect of the damages for the period of dependency after retirement age will often be less than that required for pre-retirement age damages (see paragraph 30).

80.    A deduction may finally be made for the risk that the deceased might have died anyway before the date of trial. The need for such a deduction becomes more necessary the longer the period from the date of accident to the date of trial and the older the deceased at the date of death. As an illustration of the order of magnitude of the deduction, Table F shows some examples of the factor by which the multiplier, determined as above, should be multiplied for different ages of the deceased and for different periods from the date of accident to the date of the trial. The factors for this purpose are exactly the same deductions as used in the calculation at paragraphs 70 to 75.

81.    The layout of paragraphs 70 to 80 is based on the assumption that the dependency provided by the deceased would have changed at retirement age. This may not be appropriate in some cases, particularly in the important case of the deceased wife and mother whose contribution has been solely in the home or in the case of an adult child caring for an elderly parent or parents. In cases like this, where the deceased might have provided the dependency throughout their lifetime, paragraphs 76 to 80 should be ignored and paragraphs 70 to 75 used, with the difference that the expected period required at step (1) of paragraph 70 should be a whole of life expectancy, taken from Tables 1 and 2. This is also the approach to use when the deceased was already a pensioner.

## Examples

82.    Paragraphs 83 and 84 give calculations of damages awards for Example 7, calculated using first the current approach and then the actuarially recommended approach.

## Example 7

83.    The dependant is female, aged 38 at the date of the trial, which is taking place 3 years after the date of the fatal accident which killed her husband, at that time aged 37, on whom she was financially dependent. The deceased had A levels, was in employment and in good health with no disability at the time of the fatal accident. The dependant was, at the date of death, and is at the date of trial, in good health. Their relationship was stable. The Court has determined a multiplicand of £30,000 up to the deceased's normal retirement age of 65 with no financial dependency post age 65, nor any services dependency. The damages are to be calculated as follows:

### The Current approach

   (1)    The deceased would have been capable of providing the financial dependency to the dependant for the period of 28 years from the date of his death aged 37 to his 65th birthday.

   (2)    The appropriate Table is 9. Using the 2.5% column the multiplier = 19.64.

(3) Adjustment factor for contingencies other than mortality (in accordance with Section B) for an employed male aged 37 with A levels and who is not disabled = 0.9 to give a multiplier of 19.64 x 0.9 = 17.68.

(4) The expected period for which the dependant would have been able to receive the dependency was between the ages of 35 and 63.

(5) The appropriate Tables are 8 and 10, and using the 2.5% column the multiplier = 19.91.

(6) The parties were married so section 3 (4) does not apply. The relationship was stable. The dependant was and is in good health. The court is unlikely to make much of an adjustment to the figure in (5) above to reflect contingencies other than mortality.

(7) The lower of the two figures is that in (3) above, namely 17.68.

(8) The period that has elapsed between date of death and date of trial is 3 years. The pre-trial loss is therefore £30,000 x 3 = £90,000.

(9) Interest at half rate from date of death to date of trial: 3 years at 3% a year = 9%.
£90,000 x 9% = £8,100.

(10) The post trial multiplier is 14.68 (17.68 – 3).

(11) The post trial loss is therefore 14.68 x £30,000 = £440,400.

(12) Total financial dependency is therefore £90,000 + £8,100 + £440,400 = £538,500.

**The Actuarially Recommended approach**

84. Applying this approach to Example 7 set out above:

*Pre-trial damages:*

(1) Period between fatal accident and trial: 3 years.

(2) Factor for possible early death (Table E for male aged 37 and 3 years) = 1.00.

(3) Pre-trial damages = 3 x 1.00 x £30,000 = £90,000 (plus interest as special damages).

(4) Interest at half rate from date of death to date of trial: 3 years at 3% a year = 9%.
£90,000 x 9% = £8,100.

*Post-trial damages:*

(1) Expected period for which the deceased would have provided the dependency (Table 9 at 0% for male aged 40, the age as at the date of trial): 24.13.

(2) Expected period for which the dependant would have been able to receive the dependency (Table 2 at 0% for female aged 38): 51.38.

(3) Lesser of two periods at (1) and (2) = 24.13.

(4) Multiplier for term certain of 24.13 years at 2½% rate of return = 18.18.

(5) Adjustment factor for contingencies other than mortality (in accordance with Section B) for an employed male aged 40 with A levels and who was not disabled = 0.88 to give a multiplier of 18.18 x 0.88 = 16.00.

(6) Adjustment factor for the risk that the deceased might have died anyway before the date of trial (Table F for male aged 37 and 3 years): 0.99 to give a multiplier of 16.00 x 0.99 = 15.84.

(7) Post-trial damages = 15.84 x £30,000 = £475,200.

(8) Total financial dependency is therefore £90,000 + £8,100 + £475,200 = £573,300.

85. Examples 8 and 9 in the following paragraphs set out two further examples to show the application of the actuarially recommended approach to more complex examples.

**Example 8**

86.  The dependant is female, aged 50 at the date of the trial, which is taking place 4 years after the date of the fatal accident which killed the man, at that time aged 47, on whom she was financially dependent. The deceased was in employment at the time of the fatal accident, was not disabled and had achieved A levels. The Court has determined a multiplicand, up to the deceased's normal retirement age of 60, of £50,000 and has decided that post-retirement damages should be payable based on a multiplicand of £30,000. The damages are to be calculated as follows:

*Pre-trial damages:*

(1)  Period between fatal accident and trial: 4 years.

(2)  Factor for possible early death (Table E for male aged 47 and 4 years): 0.99.

(3)  Pre-trial damages = 4 x 0.99 x £50,000 = £198,000 (plus interest as special damages).

*Post-trial pre-retirement damages:*

(1)  Expected period for which the deceased would have provided the dependency (Table 7 at 0% for male aged 51, the age as at the date of trial): 8.81.

(2)  Expected period for which the dependant would have been able to receive the dependency (Table 2 at 0% for female aged 50): 38.73.

(3)  Lesser of two periods at (1) and (2) = 8.81.

(4)  Multiplier for term certain of 8.81 years at 2½% rate of return (interpolating between the values for 8 and 9 in Table 28) = (9 – 8.81) x 7.26 + (8.81 – 8) x 8.07 = 7.92.

(5)  Adjustment factor for contingencies other than mortality (in accordance with Section B) for an employed male aged 51 with A levels and who was not disabled = 0.82 to give a multiplier of 7.92 x 0.82 = 6.49.

(6)  Adjustment factor for the risk that the deceased might have died anyway before the date of trial (Table F for male aged 47 and 4 years): 0.99 to give a multiplier of 6.49 x 0.99 = 6.43.

(7)  Post-trial pre-retirement damages = 6.43 x £50,000 = £321,500.

*Post-retirement damages:*

(1)  Expectation of life of deceased at date of trial (Table 1 at 0% for male aged 51): 34.45.

(2)  Expected period for which the dependant would have been able to receive the dependency (Table 2 at 0% for female aged 50): 38.73.

(3)  Lesser of two periods at (1) and (2) = 34.45.

(4)  Multiplier for term certain of 34.45 years at 2½% rate of return (interpolating between the values for 34 and 35 in Table 28) = (35 – 34.45) x 23.01 + (34.45 – 34) x 23.43 = 23.20.

(5)  Deduct multiplier for post-trial pre-retirement damages before application of adjustment factors for contingencies other than mortality and for the risk that the deceased might have died anyway before the date of trial: 23.20 – 7.92 = 15.28.

(6)  Adjustment factor for the risk that the deceased might have died anyway before the date of trial (Table F for male aged 47 and 4 years): 0.99 to give a multiplier of 15.28 x 0.99 = 15.13.

(7)  Post-retirement damages = 15.13 x £30,000 = £453,900.

**Example 9**

87.  There are two dependants, respectively a child aged 10 and a male aged 41 at the date of the trial, which is taking place 3 years after the date of the fatal accident which killed the woman, at that time aged 35, on whom both were financially dependent. She had a degree and worked in London for a computer company. The Court has determined a multiplicand, up to the deceased's normal retirement age of 62, of £50,000 for the male dependant and £10,000 for the child, up to the age of 21, and has decided that post-retirement damages should be payable based on a multiplicand of £20,000. The damages are to be calculated as follows:

29

**195**

*Pre-trial damages:*

(1)  Period between fatal accident and trial: 3 years.

(2)  Factor for possible early death (Table E for female aged 35 and 3 years): 1.00.

(3)  Pre-trial damages = 3 x 1.00 x (£50,000 + £10,000) = £180,000 (plus interest as special damages).

*Post-trial pre-retirement damages:*

(1)  Expected period for which the deceased would have provided the dependency should be based on female aged 38 at the date of trial with retirement age of 62. First calculate as though deceased were aged 36 and had retirement age of 60 (Table 8 at 0% for female aged 36): 23.66.

Then calculate as though deceased were aged 41 and had retirement age of 65 (Table 10 at 0% for female aged 41): 23.47.

Interpolate for age 38 with retirement age of 62 = (3 x 23.66 + 2 x 23.47)/5 = 23.58.

(2)  Expected period for which the male dependant would have been able to receive the dependency (Table 1 at 0% for male aged 41): 44.71.

Expected period for which child would have been able to receive the dependency = 11.00.

(3)  Lesser of two periods at (1) and (2) = 11.00 (in case of child)
= 23.58 (in case of man).

(4)  Multiplier for term certain of 11 years at 2½% (Table 28): 9.63.

Multiplier for term certain of 23.58 years at 2½% rate of return (interpolating between the values for 23 and 24 in Table 28)

= (24 – 23.58) x 17.55 + (23.58 – 23) x 18.11= 17.87.

(5)  Adjustment factor for contingencies other than mortality (in accordance with Section B) for an employed female aged 38 with a degree and who was not disabled = 0.89 (does not apply to child) to give a multiplier of 17.87 x 0.89 = 15.90.

(6)  Adjustment factor for the risk that the deceased might have died anyway before the date of trial (Table F for female aged 35 and 3 years): 1.00, so multipliers are 9.63 and 15.90 respectively.

(7)  Pre-retirement damages = 9.63 x £10,000 + 15.90 x £50,000
= £96,300 + £795,000 = £891,300.

*Post-retirement damages:*

(1)  Expectation of life of deceased at date of trial (Table 2 at 0% for female aged 38): 51.38.

(2)  Expected period for which the dependant would have been able to receive the dependency (Table 1 at 0% for male aged 41): 44.71 (no post retirement dependency for child).

(3)  Lesser of two periods at (1) and (2) = 44.71.

(4)  Multiplier for term certain of 44.71 years at 2½% rate of return (interpolating between the values for 42 and 43 in Table 28)

= (45 – 44.71) x 26.83 + (44.71 – 44) x 27.17 = 27.07.

(5)  Deduct multiplier for post-trial pre-retirement damages before application of adjustment factors for contingencies other than mortality and for the risk that the deceased might have died anyway before the date of trial: 27.07 – 17.87 = 9.20.

(6)  Adjustment factor for the risk that the deceased might have died anyway before the date of trial (Table F for female aged 35 and 3 years) = 1.00, so multiplier is 9.20 x 1.00 = 9.20.

(7)  Post-retirement damages = 9.20 x £20,000 = £184,000.

**196**

An Alternative approach

88. If the court wishes to select multipliers from the date of death, it is essential to ensure that the period before the trial does not include a discount for early receipt. This could be achieved by selecting multipliers from the 0% columns of the appropriate tables and then applying the discount for early receipt to the period after the trial (using the discount rate set under Section 1 of the Damages Act 1996). The calculation of the multiplier involves the following steps:

(1) Determine the expected period for which the deceased would have provided the dependency at the date of death.

(2) Deduct the period between accidental death and date of trial to give post-trial period.

(3) Determine the expected post-trial period for which the dependant would have been able to receive the dependency.

(4) Take the lesser of two periods at (2) and (3).

(5) Take the multiplier for term certain for the period calculated at (4) at 2½% rate of return (from Table 28).

(6) Apply any adjustment factor to the figure in (5) to reflect contingencies other than mortality (in accordance with Section B) . This will give the multiplier for the post-trial multiplicand.

89. Applying this approach to Example 7 set out above:

(1) Expected period for which the deceased would have provided the dependency (Table 9 at 0% for male aged 37, the age as at the date of death): 27.06.

(2) Deduct period between accidental death and date of trial of 3 years to give post-trial period: 24.06.

(3) Expected post-trial period for which the dependant would have been able to receive the dependency (Table 2 at 0% for female aged 38): 51.38.

(4) Lesser of two periods at (2) and (3) = 24.06.

(5) Multiplier for term certain of 24.06 years at 2½% rate of return (Table 28) = 18.14.

(6) Adjustment factor for contingencies other than mortality (in accordance with Section B) for an employed male aged 37 with A levels and who was not disabled = 0.90 to give a multiplier of 18.14 x 0.90 = 16.33.

(7) Pre-trial damages = 3 x £30,000 = £90,000 (plus interest as special damages of £8,100).

(8) Post-trial damages = 16.33 x £30,000 = £489,900.

(9) Total financial dependency therefore £90,000 + £8,100 + £489,900 = £588,000.

90. As can be seen the three methodologies (the current approach, the actuarially recommended approach and this alternative approach) give three different amounts of damages in relation to Example 7, namely £538,500 for the current approach used by the courts, £573,300 using the actuarially recommended approach and £588,000 using this alternative approach. The size of the disparities between the three methods depends on the length of the period between the date of death and the date of trial; if the example had assumed a period of 6 years the differences would have been greater.


SECTION E: CONCLUDING REMARKS


91. These tables are designed to assist the courts to arrive at suitable multipliers in a range of possible situations. However, they do not cover all possibilities and in more complex situations, such as where there are significant pension rights, advice should be sought from a Fellow of the Institute and Faculty of Actuaries.

GEORGE RUSSELL FIA
Deputy Government Actuary
London
August 2011

**197**

.

TABLES

Table 1        Multipliers for pecuniary loss for life (males)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 264.76 | 195.32 | 147.14 | 113.22 | 88.96 | 71.35 | 58.34 | 48.60 | 41.17 | 35.41 | 30.89 | 0 |
| 1 | 259.11 | 191.95 | 145.15 | 112.06 | 88.31 | 71.00 | 58.18 | 48.54 | 41.18 | 35.46 | 30.96 | 1 |
| 2 | 252.28 | 187.68 | 142.46 | 110.35 | 87.22 | 70.30 | 57.73 | 48.24 | 40.98 | 35.33 | 30.87 | 2 |
| 3 | 245.58 | 183.46 | 139.78 | 108.64 | 86.12 | 69.58 | 57.26 | 47.94 | 40.78 | 35.19 | 30.78 | 3 |
| 4 | 239.02 | 179.29 | 137.12 | 106.93 | 85.01 | 68.86 | 56.78 | 47.62 | 40.56 | 35.05 | 30.68 | 4 |
| 5 | 232.59 | 175.19 | 134.48 | 105.22 | 83.89 | 68.12 | 56.30 | 47.29 | 40.34 | 34.90 | 30.58 | 5 |
| 6 | 226.29 | 171.15 | 131.87 | 103.52 | 82.78 | 67.39 | 55.80 | 46.96 | 40.12 | 34.75 | 30.47 | 6 |
| 7 | 220.14 | 167.18 | 129.29 | 101.83 | 81.66 | 66.65 | 55.31 | 46.63 | 39.89 | 34.59 | 30.36 | 7 |
| 8 | 214.13 | 163.28 | 126.74 | 100.15 | 80.55 | 65.90 | 54.80 | 46.28 | 39.65 | 34.42 | 30.24 | 8 |
| 9 | 208.23 | 159.43 | 124.21 | 98.48 | 79.43 | 65.15 | 54.29 | 45.93 | 39.41 | 34.25 | 30.13 | 9 |
| 10 | 202.47 | 155.64 | 121.71 | 96.81 | 78.31 | 64.39 | 53.78 | 45.58 | 39.16 | 34.08 | 30.00 | 10 |
| 11 | 196.83 | 151.92 | 119.23 | 95.15 | 77.19 | 63.63 | 53.25 | 45.22 | 38.91 | 33.90 | 29.87 | 11 |
| 12 | 191.33 | 148.26 | 116.79 | 93.50 | 76.07 | 62.86 | 52.72 | 44.85 | 38.65 | 33.72 | 29.74 | 12 |
| 13 | 185.95 | 144.67 | 114.37 | 91.87 | 74.96 | 62.09 | 52.19 | 44.47 | 38.39 | 33.53 | 29.61 | 13 |
| 14 | 180.69 | 141.14 | 111.98 | 90.24 | 73.84 | 61.32 | 51.65 | 44.10 | 38.12 | 33.34 | 29.47 | 14 |
| 15 | 175.56 | 137.67 | 109.62 | 88.63 | 72.73 | 60.55 | 51.11 | 43.71 | 37.84 | 33.14 | 29.32 | 15 |
| 16 | 170.55 | 134.27 | 107.30 | 87.02 | 71.61 | 59.77 | 50.56 | 43.32 | 37.57 | 32.94 | 29.17 | 16 |
| 17 | 165.66 | 130.93 | 105.00 | 85.44 | 70.51 | 58.99 | 50.01 | 42.93 | 37.28 | 32.73 | 29.02 | 17 |
| 18 | 160.89 | 127.66 | 102.74 | 83.86 | 69.41 | 58.22 | 49.46 | 42.53 | 37.00 | 32.52 | 28.87 | 18 |
| 19 | 156.25 | 124.45 | 100.52 | 82.31 | 68.31 | 57.44 | 48.91 | 42.14 | 36.71 | 32.31 | 28.71 | 19 |
| 20 | 151.72 | 121.31 | 98.32 | 80.76 | 67.22 | 56.66 | 48.35 | 41.73 | 36.41 | 32.10 | 28.55 | 20 |
| 21 | 147.28 | 118.22 | 96.15 | 79.23 | 66.13 | 55.88 | 47.78 | 41.32 | 36.11 | 31.87 | 28.39 | 21 |
| 22 | 142.94 | 115.17 | 94.00 | 77.70 | 65.04 | 55.09 | 47.21 | 40.90 | 35.81 | 31.64 | 28.22 | 22 |
| 23 | 138.69 | 112.17 | 91.87 | 76.18 | 63.94 | 54.30 | 46.63 | 40.48 | 35.49 | 31.41 | 28.04 | 23 |
| 24 | 134.54 | 109.22 | 89.77 | 74.67 | 62.85 | 53.51 | 46.05 | 40.05 | 35.17 | 31.17 | 27.86 | 24 |
| 25 | 130.49 | 106.33 | 87.69 | 73.17 | 61.76 | 52.71 | 45.46 | 39.61 | 34.85 | 30.92 | 27.67 | 25 |
| 26 | 126.54 | 103.50 | 85.65 | 71.69 | 60.68 | 51.91 | 44.87 | 39.17 | 34.51 | 30.67 | 27.48 | 26 |
| 27 | 122.69 | 100.72 | 83.63 | 70.22 | 59.59 | 51.11 | 44.28 | 38.73 | 34.18 | 30.42 | 27.28 | 27 |
| 28 | 118.90 | 97.98 | 81.63 | 68.74 | 58.51 | 50.30 | 43.67 | 38.27 | 33.83 | 30.15 | 27.08 | 28 |
| 29 | 115.20 | 95.28 | 79.64 | 67.28 | 57.42 | 49.49 | 43.06 | 37.81 | 33.48 | 29.88 | 26.87 | 29 |
| 30 | 111.59 | 92.63 | 77.69 | 65.83 | 56.34 | 48.68 | 42.45 | 37.34 | 33.12 | 29.60 | 26.65 | 30 |
| 31 | 108.09 | 90.04 | 75.78 | 64.40 | 55.27 | 47.87 | 41.83 | 36.87 | 32.76 | 29.32 | 26.44 | 31 |
| 32 | 104.68 | 87.52 | 73.89 | 62.99 | 54.20 | 47.06 | 41.22 | 36.40 | 32.39 | 29.04 | 26.21 | 32 |
| 33 | 101.36 | 85.04 | 72.04 | 61.60 | 53.15 | 46.26 | 40.60 | 35.92 | 32.02 | 28.75 | 25.99 | 33 |
| 34 | 98.10 | 82.61 | 70.21 | 60.21 | 52.09 | 45.45 | 39.98 | 35.44 | 31.65 | 28.46 | 25.75 | 34 |
| 35 | 94.92 | 80.21 | 68.39 | 58.83 | 51.03 | 44.63 | 39.35 | 34.95 | 31.26 | 28.15 | 25.51 | 35 |
| 36 | 91.82 | 77.86 | 66.60 | 57.46 | 49.98 | 43.82 | 38.71 | 34.45 | 30.87 | 27.84 | 25.27 | 36 |
| 37 | 88.78 | 75.55 | 64.83 | 56.10 | 48.93 | 43.00 | 38.07 | 33.95 | 30.47 | 27.53 | 25.01 | 37 |
| 38 | 85.81 | 73.27 | 63.08 | 54.74 | 47.87 | 42.18 | 37.42 | 33.44 | 30.06 | 27.20 | 24.75 | 38 |
| 39 | 82.89 | 71.03 | 61.35 | 53.39 | 46.82 | 41.35 | 36.77 | 32.91 | 29.65 | 26.86 | 24.48 | 39 |
| 40 | 80.05 | 68.83 | 59.63 | 52.05 | 45.76 | 40.51 | 36.11 | 32.39 | 29.22 | 26.52 | 24.20 | 40 |
| 41 | 77.27 | 66.67 | 57.94 | 50.72 | 44.71 | 39.68 | 35.44 | 31.85 | 28.79 | 26.17 | 23.91 | 41 |
| 42 | 74.56 | 64.55 | 56.28 | 49.41 | 43.67 | 38.84 | 34.77 | 31.31 | 28.35 | 25.81 | 23.62 | 42 |
| 43 | 71.92 | 62.47 | 54.63 | 48.10 | 42.62 | 38.01 | 34.10 | 30.76 | 27.90 | 25.45 | 23.32 | 43 |
| 44 | 69.34 | 60.43 | 53.01 | 46.81 | 41.59 | 37.17 | 33.42 | 30.21 | 27.45 | 25.08 | 23.01 | 44 |
| 45 | 66.82 | 58.43 | 51.41 | 45.52 | 40.55 | 36.33 | 32.73 | 29.65 | 26.99 | 24.70 | 22.69 | 45 |
| 46 | 64.36 | 56.46 | 49.83 | 44.25 | 39.52 | 35.49 | 32.05 | 29.08 | 26.53 | 24.31 | 22.37 | 46 |
| 47 | 61.96 | 54.53 | 48.28 | 42.99 | 38.49 | 34.65 | 31.35 | 28.51 | 26.05 | 23.91 | 22.04 | 47 |
| 48 | 59.63 | 52.64 | 46.74 | 41.74 | 37.47 | 33.81 | 30.66 | 27.94 | 25.57 | 23.51 | 21.70 | 48 |
| 49 | 57.35 | 50.79 | 45.24 | 40.50 | 36.45 | 32.97 | 29.97 | 27.36 | 25.09 | 23.10 | 21.36 | 49 |
| 50 | 55.14 | 48.99 | 43.76 | 39.29 | 35.45 | 32.14 | 29.27 | 26.78 | 24.60 | 22.69 | 21.01 | 50 |
| 51 | 52.99 | 47.23 | 42.31 | 38.09 | 34.45 | 31.31 | 28.58 | 26.19 | 24.11 | 22.27 | 20.65 | 51 |
| 52 | 50.90 | 45.51 | 40.89 | 36.91 | 33.47 | 30.48 | 27.88 | 25.61 | 23.61 | 21.85 | 20.29 | 52 |
| 53 | 48.87 | 43.83 | 39.49 | 35.74 | 32.49 | 29.67 | 27.19 | 25.02 | 23.11 | 21.42 | 19.92 | 53 |
| 54 | 46.90 | 42.19 | 38.12 | 34.60 | 31.53 | 28.85 | 26.50 | 24.43 | 22.61 | 20.99 | 19.55 | 54 |
| 55 | 44.99 | 40.60 | 36.79 | 33.47 | 30.58 | 28.04 | 25.81 | 23.85 | 22.11 | 20.56 | 19.18 | 55 |
| 56 | 43.15 | 39.04 | 35.48 | 32.37 | 29.64 | 27.25 | 25.13 | 23.26 | 21.60 | 20.12 | 18.80 | 56 |
| 57 | 41.35 | 37.53 | 34.19 | 31.28 | 28.71 | 26.45 | 24.45 | 22.67 | 21.09 | 19.68 | 18.42 | 57 |
| 58 | 39.59 | 36.04 | 32.93 | 30.19 | 27.78 | 25.65 | 23.76 | 22.08 | 20.58 | 19.23 | 18.02 | 58 |
| 59 | 37.87 | 34.57 | 31.67 | 29.11 | 26.85 | 24.85 | 23.07 | 21.47 | 20.05 | 18.77 | 17.62 | 59 |
| 60 | 36.17 | 33.12 | 30.42 | 28.04 | 25.92 | 24.04 | 22.36 | 20.86 | 19.51 | 18.30 | 17.20 | 60 |
| 61 | 34.52 | 31.69 | 29.19 | 26.97 | 25.00 | 23.23 | 21.65 | 20.24 | 18.96 | 17.81 | 16.77 | 61 |
| 62 | 32.91 | 30.30 | 27.98 | 25.92 | 24.08 | 22.43 | 20.95 | 19.62 | 18.41 | 17.33 | 16.34 | 62 |
| 63 | 31.36 | 28.95 | 26.80 | 24.89 | 23.17 | 21.63 | 20.25 | 19.00 | 17.86 | 16.84 | 15.90 | 63 |
| 64 | 29.85 | 27.63 | 25.65 | 23.88 | 22.28 | 20.85 | 19.55 | 18.38 | 17.31 | 16.35 | 15.47 | 64 |
| 65 | 28.40 | 26.37 | 24.54 | 22.90 | 21.42 | 20.08 | 18.87 | 17.77 | 16.77 | 15.86 | 15.03 | 65 |
| 66 | 27.02 | 25.14 | 23.46 | 21.94 | 20.57 | 19.33 | 18.20 | 17.17 | 16.24 | 15.38 | 14.60 | 66 |
| 67 | 25.68 | 23.96 | 22.41 | 21.01 | 19.74 | 18.59 | 17.54 | 16.58 | 15.70 | 14.90 | 14.16 | 67 |
| 68 | 24.38 | 22.81 | 21.39 | 20.10 | 18.93 | 17.86 | 16.88 | 15.99 | 15.17 | 14.42 | 13.73 | 68 |
| 69 | 23.13 | 21.69 | 20.39 | 19.21 | 18.12 | 17.14 | 16.23 | 15.40 | 14.64 | 13.93 | 13.29 | 69 |

*continued*

Table 1    Multipliers for pecuniary loss for life (males) *continued*

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | -2.0% | -1.5% | -1.0% | -0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 70 | 21.91 | 20.60 | 19.41 | 18.32 | 17.32 | 16.41 | 15.58 | 14.81 | 14.10 | 13.44 | 12.84 | 70 |
| 71 | 20.70 | 19.52 | 18.43 | 17.44 | 16.53 | 15.69 | 14.92 | 14.21 | 13.55 | 12.94 | 12.38 | 71 |
| 72 | 19.52 | 18.44 | 17.46 | 16.56 | 15.72 | 14.96 | 14.25 | 13.60 | 12.99 | 12.43 | 11.91 | 72 |
| 73 | 18.34 | 17.38 | 16.49 | 15.67 | 14.92 | 14.22 | 13.57 | 12.97 | 12.42 | 11.90 | 11.42 | 73 |
| 74 | 17.18 | 16.32 | 15.52 | 14.79 | 14.10 | 13.47 | 12.89 | 12.34 | 11.83 | 11.36 | 10.92 | 74 |
| 75 | 16.04 | 15.27 | 14.56 | 13.90 | 13.29 | 12.72 | 12.19 | 11.70 | 11.24 | 10.81 | 10.40 | 75 |
| 76 | 14.93 | 14.25 | 13.62 | 13.03 | 12.48 | 11.97 | 11.50 | 11.05 | 10.64 | 10.25 | 9.88 | 76 |
| 77 | 13.86 | 13.26 | 12.70 | 12.18 | 11.70 | 11.24 | 10.82 | 10.42 | 10.05 | 9.69 | 9.36 | 77 |
| 78 | 12.83 | 12.31 | 11.82 | 11.36 | 10.93 | 10.53 | 10.15 | 9.79 | 9.46 | 9.15 | 8.85 | 78 |
| 79 | 11.86 | 11.40 | 10.97 | 10.57 | 10.19 | 9.84 | 9.50 | 9.19 | 8.89 | 8.61 | 8.34 | 79 |
| 80 | 10.94 | 10.55 | 10.17 | 9.82 | 9.49 | 9.18 | 8.88 | 8.60 | 8.34 | 8.09 | 7.85 | 80 |
| 81 | 10.10 | 9.75 | 9.43 | 9.12 | 8.83 | 8.56 | 8.30 | 8.05 | 7.82 | 7.60 | 7.38 | 81 |
| 82 | 9.33 | 9.03 | 8.74 | 8.47 | 8.22 | 7.98 | 7.75 | 7.53 | 7.33 | 7.13 | 6.94 | 82 |
| 83 | 8.62 | 8.36 | 8.11 | 7.88 | 7.65 | 7.44 | 7.24 | 7.05 | 6.87 | 6.69 | 6.53 | 83 |
| 84 | 7.97 | 7.74 | 7.53 | 7.32 | 7.13 | 6.94 | 6.76 | 6.59 | 6.43 | 6.28 | 6.13 | 84 |
| 85 | 7.36 | 7.16 | 6.98 | 6.80 | 6.63 | 6.47 | 6.31 | 6.16 | 6.02 | 5.88 | 5.75 | 85 |
| 86 | 6.79 | 6.62 | 6.46 | 6.31 | 6.16 | 6.02 | 5.88 | 5.75 | 5.62 | 5.50 | 5.39 | 86 |
| 87 | 6.25 | 6.11 | 5.97 | 5.83 | 5.71 | 5.58 | 5.46 | 5.35 | 5.24 | 5.14 | 5.04 | 87 |
| 88 | 5.74 | 5.62 | 5.50 | 5.38 | 5.27 | 5.16 | 5.06 | 4.96 | 4.87 | 4.78 | 4.69 | 88 |
| 89 | 5.26 | 5.15 | 5.05 | 4.95 | 4.86 | 4.76 | 4.68 | 4.59 | 4.51 | 4.43 | 4.35 | 89 |
| 90 | 4.81 | 4.72 | 4.64 | 4.55 | 4.47 | 4.39 | 4.31 | 4.24 | 4.17 | 4.10 | 4.03 | 90 |
| 91 | 4.40 | 4.32 | 4.25 | 4.17 | 4.10 | 4.04 | 3.97 | 3.91 | 3.85 | 3.79 | 3.73 | 91 |
| 92 | 4.01 | 3.94 | 3.88 | 3.82 | 3.76 | 3.70 | 3.65 | 3.59 | 3.54 | 3.49 | 3.44 | 92 |
| 93 | 3.65 | 3.59 | 3.54 | 3.49 | 3.44 | 3.39 | 3.34 | 3.30 | 3.25 | 3.21 | 3.17 | 93 |
| 94 | 3.33 | 3.29 | 3.24 | 3.20 | 3.16 | 3.11 | 3.07 | 3.03 | 2.99 | 2.96 | 2.92 | 94 |
| 95 | 3.06 | 3.02 | 2.98 | 2.94 | 2.91 | 2.87 | 2.84 | 2.80 | 2.77 | 2.74 | 2.71 | 95 |
| 96 | 2.83 | 2.79 | 2.76 | 2.72 | 2.69 | 2.66 | 2.63 | 2.60 | 2.57 | 2.54 | 2.52 | 96 |
| 97 | 2.62 | 2.59 | 2.56 | 2.53 | 2.50 | 2.48 | 2.45 | 2.42 | 2.40 | 2.37 | 2.35 | 97 |
| 98 | 2.44 | 2.41 | 2.38 | 2.36 | 2.34 | 2.31 | 2.29 | 2.27 | 2.24 | 2.22 | 2.20 | 98 |
| 99 | 2.27 | 2.25 | 2.22 | 2.20 | 2.18 | 2.16 | 2.14 | 2.12 | 2.10 | 2.08 | 2.06 | 99 |
| 100 | 2.11 | 2.09 | 2.07 | 2.06 | 2.04 | 2.02 | 2.00 | 1.98 | 1.97 | 1.95 | 1.93 | 100 |

Table 2    Multipliers for pecuniary loss for life (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 285.20 | 208.39 | 155.57 | 118.70 | 92.57 | 73.74 | 59.95 | 49.69 | 41.92 | 35.94 | 31.26 | 0 |
| 1 | 279.01 | 204.72 | 153.41 | 117.45 | 91.86 | 73.36 | 59.76 | 49.62 | 41.91 | 35.97 | 31.32 | 1 |
| 2 | 271.81 | 200.28 | 150.65 | 115.73 | 90.77 | 72.67 | 59.33 | 49.34 | 41.73 | 35.86 | 31.24 | 2 |
| 3 | 264.75 | 195.89 | 147.91 | 114.00 | 89.68 | 71.97 | 58.88 | 49.05 | 41.55 | 35.73 | 31.16 | 3 |
| 4 | 257.83 | 191.56 | 145.19 | 112.28 | 88.58 | 71.27 | 58.43 | 48.75 | 41.35 | 35.60 | 31.08 | 4 |
| 5 | 251.06 | 187.30 | 142.49 | 110.56 | 87.49 | 70.56 | 57.97 | 48.45 | 41.15 | 35.47 | 30.99 | 5 |
| 6 | 244.43 | 183.11 | 139.83 | 108.85 | 86.38 | 69.85 | 57.50 | 48.14 | 40.95 | 35.34 | 30.89 | 6 |
| 7 | 237.94 | 178.98 | 137.18 | 107.15 | 85.28 | 69.13 | 57.03 | 47.83 | 40.74 | 35.19 | 30.80 | 7 |
| 8 | 231.59 | 174.92 | 134.57 | 105.46 | 84.18 | 68.40 | 56.55 | 47.51 | 40.52 | 35.05 | 30.70 | 8 |
| 9 | 225.38 | 170.93 | 131.98 | 103.77 | 83.07 | 67.67 | 56.06 | 47.18 | 40.30 | 34.90 | 30.60 | 9 |
| 10 | 219.31 | 167.00 | 129.43 | 102.10 | 81.97 | 66.94 | 55.57 | 46.85 | 40.08 | 34.75 | 30.49 | 10 |
| 11 | 213.37 | 163.14 | 126.90 | 100.43 | 80.86 | 66.20 | 55.07 | 46.52 | 39.85 | 34.59 | 30.38 | 11 |
| 12 | 207.57 | 159.34 | 124.40 | 98.78 | 79.76 | 65.46 | 54.57 | 46.18 | 39.62 | 34.42 | 30.27 | 12 |
| 13 | 201.89 | 155.60 | 121.92 | 97.13 | 78.65 | 64.71 | 54.07 | 45.83 | 39.38 | 34.26 | 30.15 | 13 |
| 14 | 196.33 | 151.93 | 119.48 | 95.49 | 77.55 | 63.96 | 53.55 | 45.47 | 39.13 | 34.09 | 30.03 | 14 |
| 15 | 190.91 | 148.32 | 117.06 | 93.86 | 76.44 | 63.21 | 53.03 | 45.12 | 38.88 | 33.91 | 29.90 | 15 |
| 16 | 185.61 | 144.77 | 114.67 | 92.25 | 75.34 | 62.45 | 52.51 | 44.75 | 38.62 | 33.73 | 29.77 | 16 |
| 17 | 180.42 | 141.28 | 112.31 | 90.64 | 74.24 | 61.70 | 51.99 | 44.38 | 38.37 | 33.55 | 29.64 | 17 |
| 18 | 175.36 | 137.86 | 109.98 | 89.05 | 73.14 | 60.94 | 51.46 | 44.01 | 38.10 | 33.36 | 29.51 | 18 |
| 19 | 170.42 | 134.50 | 107.68 | 87.46 | 72.05 | 60.17 | 50.92 | 43.63 | 37.83 | 33.16 | 29.37 | 19 |
| 20 | 165.60 | 131.20 | 105.42 | 85.89 | 70.96 | 59.41 | 50.38 | 43.25 | 37.56 | 32.97 | 29.22 | 20 |
| 21 | 160.88 | 127.95 | 103.17 | 84.33 | 69.86 | 58.64 | 49.84 | 42.86 | 37.28 | 32.76 | 29.08 | 21 |
| 22 | 156.26 | 124.76 | 100.95 | 82.78 | 68.77 | 57.86 | 49.28 | 42.47 | 36.99 | 32.56 | 28.92 | 22 |
| 23 | 151.72 | 121.60 | 98.74 | 81.22 | 67.67 | 57.08 | 48.72 | 42.06 | 36.70 | 32.34 | 28.76 | 23 |
| 24 | 147.29 | 118.50 | 96.56 | 79.68 | 66.59 | 56.29 | 48.16 | 41.65 | 36.40 | 32.12 | 28.60 | 24 |
| 25 | 142.97 | 115.46 | 94.41 | 78.15 | 65.48 | 55.50 | 47.58 | 41.23 | 36.09 | 31.89 | 28.43 | 25 |
| 26 | 138.74 | 112.47 | 92.28 | 76.63 | 64.38 | 54.71 | 47.01 | 40.81 | 35.78 | 31.66 | 28.26 | 26 |
| 27 | 134.61 | 109.53 | 90.18 | 75.12 | 63.29 | 53.92 | 46.43 | 40.38 | 35.46 | 31.42 | 28.08 | 27 |
| 28 | 130.57 | 106.65 | 88.11 | 73.62 | 62.20 | 53.13 | 45.84 | 39.95 | 35.14 | 31.18 | 27.90 | 28 |
| 29 | 126.63 | 103.81 | 86.05 | 72.13 | 61.11 | 52.32 | 45.25 | 39.51 | 34.81 | 30.93 | 27.71 | 29 |
| 30 | 122.78 | 101.02 | 84.03 | 70.65 | 60.02 | 51.52 | 44.65 | 39.06 | 34.47 | 30.68 | 27.51 | 30 |
| 31 | 119.02 | 98.29 | 82.03 | 69.18 | 58.94 | 50.71 | 44.05 | 38.61 | 34.13 | 30.41 | 27.31 | 31 |
| 32 | 115.34 | 95.60 | 80.06 | 67.72 | 57.86 | 49.90 | 43.44 | 38.15 | 33.78 | 30.15 | 27.11 | 32 |
| 33 | 111.75 | 92.97 | 78.11 | 66.27 | 56.77 | 49.09 | 42.83 | 37.68 | 33.42 | 29.87 | 26.89 | 33 |
| 34 | 108.24 | 90.37 | 76.18 | 64.83 | 55.69 | 48.27 | 42.21 | 37.21 | 33.06 | 29.59 | 26.67 | 34 |
| 35 | 104.80 | 87.81 | 74.27 | 63.40 | 54.61 | 47.45 | 41.58 | 36.73 | 32.69 | 29.31 | 26.45 | 35 |
| 36 | 101.45 | 85.31 | 72.39 | 61.98 | 53.53 | 46.63 | 40.95 | 36.24 | 32.31 | 29.01 | 26.22 | 36 |
| 37 | 98.17 | 82.84 | 70.53 | 60.57 | 52.46 | 45.81 | 40.31 | 35.75 | 31.93 | 28.71 | 25.98 | 37 |
| 38 | 94.97 | 80.42 | 68.69 | 59.17 | 51.38 | 44.98 | 39.67 | 35.25 | 31.54 | 28.40 | 25.74 | 38 |
| 39 | 91.83 | 78.04 | 66.88 | 57.78 | 50.31 | 44.15 | 39.03 | 34.74 | 31.14 | 28.09 | 25.48 | 39 |
| 40 | 88.77 | 75.71 | 65.08 | 56.39 | 49.24 | 43.31 | 38.37 | 34.23 | 30.73 | 27.76 | 25.23 | 40 |
| 41 | 85.78 | 73.41 | 63.31 | 55.03 | 48.17 | 42.48 | 37.71 | 33.71 | 30.32 | 27.43 | 24.96 | 41 |
| 42 | 82.86 | 71.16 | 61.56 | 53.66 | 47.10 | 41.64 | 37.05 | 33.18 | 29.90 | 27.09 | 24.69 | 42 |
| 43 | 80.01 | 68.94 | 59.84 | 52.31 | 46.04 | 40.80 | 36.38 | 32.65 | 29.47 | 26.75 | 24.41 | 43 |
| 44 | 77.23 | 66.77 | 58.14 | 50.97 | 44.98 | 39.95 | 35.71 | 32.11 | 29.03 | 26.39 | 24.12 | 44 |
| 45 | 74.52 | 64.65 | 56.46 | 49.64 | 43.93 | 39.11 | 35.03 | 31.56 | 28.59 | 26.03 | 23.82 | 45 |
| 46 | 71.87 | 62.56 | 54.81 | 48.32 | 42.87 | 38.27 | 34.35 | 31.01 | 28.14 | 25.67 | 23.52 | 46 |
| 47 | 69.28 | 60.51 | 53.17 | 47.02 | 41.83 | 37.42 | 33.67 | 30.45 | 27.69 | 25.29 | 23.21 | 47 |
| 48 | 66.77 | 58.50 | 51.57 | 45.73 | 40.79 | 36.58 | 32.98 | 29.89 | 27.23 | 24.91 | 22.90 | 48 |
| 49 | 64.32 | 56.54 | 50.00 | 44.46 | 39.76 | 35.74 | 32.30 | 29.33 | 26.76 | 24.53 | 22.58 | 49 |
| 50 | 61.93 | 54.62 | 48.44 | 43.20 | 38.73 | 34.90 | 31.61 | 28.76 | 26.29 | 24.14 | 22.25 | 50 |
| 51 | 59.60 | 52.73 | 46.91 | 41.95 | 37.71 | 34.06 | 30.91 | 28.19 | 25.81 | 23.74 | 21.92 | 51 |
| 52 | 57.33 | 50.88 | 45.40 | 40.71 | 36.69 | 33.22 | 30.22 | 27.61 | 25.33 | 23.33 | 21.57 | 52 |
| 53 | 55.11 | 49.07 | 43.92 | 39.49 | 35.68 | 32.38 | 29.52 | 27.02 | 24.84 | 22.92 | 21.22 | 53 |
| 54 | 52.96 | 47.30 | 42.46 | 38.28 | 34.68 | 31.55 | 28.82 | 26.44 | 24.34 | 22.50 | 20.87 | 54 |
| 55 | 50.86 | 45.57 | 41.02 | 37.09 | 33.68 | 30.71 | 28.12 | 25.84 | 23.84 | 22.07 | 20.51 | 55 |
| 56 | 48.83 | 43.88 | 39.61 | 35.91 | 32.69 | 29.88 | 27.42 | 25.25 | 23.34 | 21.64 | 20.14 | 56 |
| 57 | 46.84 | 42.22 | 38.23 | 34.75 | 31.71 | 29.05 | 26.72 | 24.65 | 22.83 | 21.21 | 19.76 | 57 |
| 58 | 44.89 | 40.60 | 36.86 | 33.59 | 30.74 | 28.22 | 26.01 | 24.05 | 22.31 | 20.76 | 19.37 | 58 |
| 59 | 42.99 | 38.99 | 35.50 | 32.44 | 29.76 | 27.39 | 25.29 | 23.43 | 21.78 | 20.30 | 18.98 | 59 |
| 60 | 41.12 | 37.41 | 34.16 | 31.30 | 28.78 | 26.55 | 24.57 | 22.81 | 21.24 | 19.83 | 18.57 | 60 |
| 61 | 39.30 | 35.86 | 32.83 | 30.16 | 27.80 | 25.70 | 23.84 | 22.18 | 20.69 | 19.35 | 18.15 | 61 |
| 62 | 37.52 | 34.33 | 31.52 | 29.03 | 26.83 | 24.86 | 23.11 | 21.54 | 20.13 | 18.86 | 17.72 | 62 |
| 63 | 35.79 | 32.84 | 30.24 | 27.92 | 25.86 | 24.02 | 22.38 | 20.90 | 19.57 | 18.37 | 17.28 | 63 |
| 64 | 34.11 | 31.39 | 28.98 | 26.83 | 24.91 | 23.19 | 21.65 | 20.26 | 19.01 | 17.87 | 16.84 | 64 |
| 65 | 32.50 | 29.99 | 27.76 | 25.77 | 23.98 | 22.38 | 20.93 | 19.63 | 18.45 | 17.38 | 16.40 | 65 |
| 66 | 30.94 | 28.64 | 26.58 | 24.73 | 23.07 | 21.58 | 20.23 | 19.00 | 17.89 | 16.88 | 15.96 | 66 |
| 67 | 29.44 | 27.32 | 25.43 | 23.72 | 22.18 | 20.78 | 19.52 | 18.38 | 17.34 | 16.39 | 15.52 | 67 |
| 68 | 27.99 | 26.05 | 24.30 | 22.72 | 21.29 | 20.00 | 18.83 | 17.76 | 16.78 | 15.89 | 15.07 | 68 |
| 69 | 26.57 | 24.80 | 23.19 | 21.74 | 20.42 | 19.22 | 18.13 | 17.13 | 16.22 | 15.39 | 14.62 | 69 |

*continued*

Table 2    Multipliers for pecuniary loss for life (females) *continued*

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 70 | 25.19 | 23.57 | 22.10 | 20.76 | 19.55 | 18.44 | 17.43 | 16.50 | 15.65 | 14.87 | 14.15 | 70 |
| 71 | 23.83 | 22.35 | 21.01 | 19.79 | 18.67 | 17.65 | 16.72 | 15.86 | 15.07 | 14.35 | 13.68 | 71 |
| 72 | 22.47 | 21.14 | 19.92 | 18.81 | 17.79 | 16.85 | 16.00 | 15.20 | 14.48 | 13.80 | 13.18 | 72 |
| 73 | 21.13 | 19.93 | 18.83 | 17.82 | 16.89 | 16.04 | 15.25 | 14.53 | 13.86 | 13.24 | 12.66 | 73 |
| 74 | 19.80 | 18.72 | 17.73 | 16.82 | 15.99 | 15.21 | 14.50 | 13.84 | 13.23 | 12.66 | 12.13 | 74 |
| 75 | 18.48 | 17.53 | 16.64 | 15.83 | 15.08 | 14.38 | 13.74 | 13.14 | 12.58 | 12.06 | 11.58 | 75 |
| 76 | 17.20 | 16.35 | 15.57 | 14.84 | 14.17 | 13.55 | 12.97 | 12.43 | 11.92 | 11.45 | 11.01 | 76 |
| 77 | 15.95 | 15.21 | 14.51 | 13.87 | 13.28 | 12.72 | 12.20 | 11.72 | 11.27 | 10.84 | 10.45 | 77 |
| 78 | 14.75 | 14.10 | 13.50 | 12.93 | 12.40 | 11.91 | 11.45 | 11.02 | 10.62 | 10.24 | 9.88 | 78 |
| 79 | 13.62 | 13.05 | 12.52 | 12.03 | 11.56 | 11.13 | 10.72 | 10.34 | 9.98 | 9.64 | 9.32 | 79 |
| 80 | 12.56 | 12.07 | 11.61 | 11.17 | 10.77 | 10.38 | 10.02 | 9.69 | 9.37 | 9.07 | 8.78 | 80 |
| 81 | 11.58 | 11.15 | 10.75 | 10.37 | 10.02 | 9.68 | 9.36 | 9.06 | 8.78 | 8.51 | 8.26 | 81 |
| 82 | 10.67 | 10.30 | 9.95 | 9.62 | 9.31 | 9.02 | 8.74 | 8.48 | 8.23 | 7.99 | 7.76 | 82 |
| 83 | 9.83 | 9.51 | 9.21 | 8.92 | 8.65 | 8.39 | 8.15 | 7.92 | 7.70 | 7.49 | 7.29 | 83 |
| 84 | 9.06 | 8.78 | 8.52 | 8.27 | 8.03 | 7.81 | 7.59 | 7.39 | 7.19 | 7.01 | 6.83 | 84 |
| 85 | 8.34 | 8.10 | 7.87 | 7.65 | 7.45 | 7.25 | 7.06 | 6.88 | 6.71 | 6.55 | 6.40 | 85 |
| 86 | 7.66 | 7.45 | 7.25 | 7.07 | 6.89 | 6.72 | 6.56 | 6.40 | 6.25 | 6.11 | 5.97 | 86 |
| 87 | 7.01 | 6.84 | 6.67 | 6.51 | 6.36 | 6.21 | 6.07 | 5.93 | 5.80 | 5.68 | 5.56 | 87 |
| 88 | 6.41 | 6.26 | 6.11 | 5.98 | 5.85 | 5.72 | 5.60 | 5.48 | 5.37 | 5.26 | 5.16 | 88 |
| 89 | 5.84 | 5.71 | 5.59 | 5.47 | 5.36 | 5.25 | 5.15 | 5.05 | 4.95 | 4.86 | 4.77 | 89 |
| 90 | 5.31 | 5.20 | 5.10 | 5.00 | 4.90 | 4.81 | 4.72 | 4.64 | 4.55 | 4.47 | 4.40 | 90 |
| 91 | 4.82 | 4.73 | 4.64 | 4.55 | 4.47 | 4.40 | 4.32 | 4.25 | 4.18 | 4.11 | 4.04 | 91 |
| 92 | 4.37 | 4.29 | 4.22 | 4.15 | 4.08 | 4.01 | 3.95 | 3.89 | 3.83 | 3.77 | 3.71 | 92 |
| 93 | 3.97 | 3.90 | 3.84 | 3.78 | 3.72 | 3.67 | 3.61 | 3.56 | 3.51 | 3.46 | 3.41 | 93 |
| 94 | 3.62 | 3.56 | 3.51 | 3.46 | 3.41 | 3.36 | 3.31 | 3.27 | 3.22 | 3.18 | 3.14 | 94 |
| 95 | 3.32 | 3.27 | 3.23 | 3.18 | 3.14 | 3.10 | 3.06 | 3.02 | 2.98 | 2.94 | 2.91 | 95 |
| 96 | 3.06 | 3.02 | 2.98 | 2.94 | 2.91 | 2.87 | 2.84 | 2.80 | 2.77 | 2.74 | 2.71 | 96 |
| 97 | 2.84 | 2.80 | 2.77 | 2.74 | 2.70 | 2.67 | 2.64 | 2.61 | 2.58 | 2.56 | 2.53 | 97 |
| 98 | 2.64 | 2.61 | 2.58 | 2.55 | 2.52 | 2.49 | 2.47 | 2.44 | 2.42 | 2.39 | 2.37 | 98 |
| 99 | 2.45 | 2.42 | 2.40 | 2.37 | 2.35 | 2.32 | 2.30 | 2.28 | 2.26 | 2.23 | 2.21 | 99 |
| 100 | 2.27 | 2.25 | 2.22 | 2.20 | 2.18 | 2.16 | 2.14 | 2.12 | 2.10 | 2.08 | 2.06 | 100 |

**Table 3    Multipliers for loss of earnings to pension age 50 (males)**

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 48.26 | 43.90 | 40.05 | 36.65 | 33.63 | 30.94 | 28.55 | 26.42 | 24.51 | 22.80 | 21.26 | 16 |
| 17 | 46.31 | 42.26 | 38.66 | 35.47 | 32.63 | 30.10 | 27.84 | 25.81 | 24.00 | 22.36 | 20.89 | 17 |
| 18 | 44.40 | 40.64 | 37.29 | 34.30 | 31.64 | 29.25 | 27.12 | 25.20 | 23.47 | 21.91 | 20.51 | 18 |
| 19 | 42.54 | 39.04 | 35.93 | 33.14 | 30.65 | 28.41 | 26.39 | 24.57 | 22.94 | 21.45 | 20.11 | 19 |
| 20 | 40.71 | 37.48 | 34.58 | 31.99 | 29.66 | 27.55 | 25.66 | 23.94 | 22.39 | 20.99 | 19.71 | 20 |
| 21 | 38.91 | 35.93 | 33.25 | 30.84 | 28.66 | 26.70 | 24.92 | 23.30 | 21.84 | 20.50 | 19.29 | 21 |
| 22 | 37.16 | 34.41 | 31.94 | 29.70 | 27.67 | 25.84 | 24.17 | 22.65 | 21.27 | 20.01 | 18.86 | 22 |
| 23 | 35.44 | 32.92 | 30.63 | 28.56 | 26.68 | 24.97 | 23.41 | 21.99 | 20.69 | 19.51 | 18.42 | 23 |
| 24 | 33.75 | 31.44 | 29.34 | 27.43 | 25.69 | 24.10 | 22.65 | 21.32 | 20.11 | 18.99 | 17.96 | 24 |
| 25 | 32.10 | 29.99 | 28.06 | 26.31 | 24.70 | 23.23 | 21.88 | 20.65 | 19.51 | 18.46 | 17.49 | 25 |
| 26 | 30.48 | 28.56 | 26.80 | 25.19 | 23.71 | 22.36 | 21.11 | 19.96 | 18.90 | 17.92 | 17.01 | 26 |
| 27 | 28.89 | 27.15 | 25.55 | 24.08 | 22.72 | 21.47 | 20.32 | 19.26 | 18.27 | 17.36 | 16.52 | 27 |
| 28 | 27.34 | 25.76 | 24.31 | 22.97 | 21.73 | 20.59 | 19.53 | 18.55 | 17.64 | 16.79 | 16.00 | 28 |
| 29 | 25.81 | 24.40 | 23.08 | 21.87 | 20.74 | 19.70 | 18.73 | 17.83 | 16.99 | 16.21 | 15.48 | 29 |
| 30 | 24.32 | 23.05 | 21.87 | 20.78 | 19.76 | 18.81 | 17.92 | 17.10 | 16.33 | 15.61 | 14.94 | 30 |
| 31 | 22.86 | 21.73 | 20.67 | 19.69 | 18.77 | 17.91 | 17.11 | 16.36 | 15.66 | 15.00 | 14.38 | 31 |
| 32 | 21.43 | 20.43 | 19.49 | 18.61 | 17.78 | 17.01 | 16.29 | 15.61 | 14.97 | 14.37 | 13.81 | 32 |
| 33 | 20.03 | 19.15 | 18.31 | 17.53 | 16.80 | 16.11 | 15.46 | 14.85 | 14.28 | 13.73 | 13.22 | 33 |
| 34 | 18.66 | 17.88 | 17.15 | 16.47 | 15.82 | 15.20 | 14.63 | 14.08 | 13.57 | 13.08 | 12.62 | 34 |
| 35 | 17.31 | 16.64 | 16.00 | 15.40 | 14.83 | 14.29 | 13.78 | 13.30 | 12.84 | 12.41 | 11.99 | 35 |
| 36 | 16.00 | 15.42 | 14.87 | 14.34 | 13.85 | 13.38 | 12.93 | 12.51 | 12.10 | 11.72 | 11.35 | 36 |
| 37 | 14.70 | 14.21 | 13.74 | 13.29 | 12.86 | 12.46 | 12.07 | 11.70 | 11.35 | 11.01 | 10.69 | 37 |
| 38 | 13.44 | 13.02 | 12.62 | 12.24 | 11.88 | 11.53 | 11.20 | 10.88 | 10.58 | 10.29 | 10.01 | 38 |
| 39 | 12.19 | 11.85 | 11.52 | 11.20 | 10.89 | 10.60 | 10.32 | 10.05 | 9.79 | 9.54 | 9.31 | 39 |
| 40 | 10.98 | 10.69 | 10.42 | 10.16 | 9.91 | 9.67 | 9.43 | 9.21 | 8.99 | 8.78 | 8.58 | 40 |
| 41 | 9.78 | 9.55 | 9.34 | 9.13 | 8.92 | 8.72 | 8.53 | 8.35 | 8.17 | 8.00 | 7.84 | 41 |
| 42 | 8.61 | 8.43 | 8.26 | 8.10 | 7.93 | 7.78 | 7.63 | 7.48 | 7.34 | 7.20 | 7.07 | 42 |
| 43 | 7.46 | 7.33 | 7.20 | 7.07 | 6.95 | 6.83 | 6.71 | 6.60 | 6.49 | 6.38 | 6.28 | 43 |
| 44 | 6.33 | 6.24 | 6.14 | 6.05 | 5.96 | 5.87 | 5.78 | 5.70 | 5.62 | 5.54 | 5.46 | 44 |
| 45 | 5.23 | 5.16 | 5.10 | 5.03 | 4.97 | 4.91 | 4.85 | 4.79 | 4.73 | 4.68 | 4.62 | 45 |
| 46 | 4.14 | 4.10 | 4.06 | 4.02 | 3.98 | 3.94 | 3.90 | 3.86 | 3.83 | 3.79 | 3.75 | 46 |
| 47 | 3.08 | 3.06 | 3.03 | 3.01 | 2.99 | 2.97 | 2.94 | 2.92 | 2.90 | 2.88 | 2.86 | 47 |
| 48 | 2.03 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.96 | 1.95 | 1.94 | 48 |
| 49 | 1.01 | 1.01 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 49 |

**204**

Table 4    Multipliers for loss of earnings to pension age 50 (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | –2.0% | –1.5% | –1.0% | –0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 48.58 | 44.19 | 40.30 | 36.87 | 33.82 | 31.12 | 28.71 | 26.56 | 24.63 | 22.91 | 21.36 | 16 |
| 17 | 46.62 | 42.53 | 38.91 | 35.69 | 32.82 | 30.27 | 27.99 | 25.95 | 24.12 | 22.47 | 20.99 | 17 |
| 18 | 44.71 | 40.91 | 37.53 | 34.52 | 31.83 | 29.42 | 27.27 | 25.33 | 23.59 | 22.02 | 20.60 | 18 |
| 19 | 42.83 | 39.30 | 36.16 | 33.35 | 30.83 | 28.57 | 26.54 | 24.71 | 23.06 | 21.56 | 20.21 | 19 |
| 20 | 40.98 | 37.73 | 34.81 | 32.19 | 29.83 | 27.72 | 25.80 | 24.08 | 22.51 | 21.09 | 19.80 | 20 |
| 21 | 39.18 | 36.17 | 33.47 | 31.03 | 28.84 | 26.85 | 25.06 | 23.43 | 21.96 | 20.61 | 19.39 | 21 |
| 22 | 37.41 | 34.64 | 32.14 | 29.89 | 27.84 | 25.99 | 24.31 | 22.78 | 21.39 | 20.12 | 18.96 | 22 |
| 23 | 35.68 | 33.13 | 30.83 | 28.74 | 26.85 | 25.12 | 23.55 | 22.12 | 20.81 | 19.61 | 18.51 | 23 |
| 24 | 33.98 | 31.65 | 29.53 | 27.60 | 25.85 | 24.25 | 22.78 | 21.44 | 20.22 | 19.09 | 18.06 | 24 |
| 25 | 32.31 | 30.18 | 28.24 | 26.47 | 24.85 | 23.37 | 22.01 | 20.76 | 19.61 | 18.56 | 17.59 | 25 |
| 26 | 30.68 | 28.74 | 26.97 | 25.35 | 23.86 | 22.49 | 21.23 | 20.07 | 19.00 | 18.01 | 17.10 | 26 |
| 27 | 29.08 | 27.33 | 25.71 | 24.23 | 22.86 | 21.60 | 20.44 | 19.37 | 18.37 | 17.45 | 16.60 | 27 |
| 28 | 27.52 | 25.93 | 24.46 | 23.11 | 21.87 | 20.71 | 19.64 | 18.65 | 17.74 | 16.88 | 16.09 | 28 |
| 29 | 25.98 | 24.55 | 23.23 | 22.01 | 20.87 | 19.82 | 18.84 | 17.93 | 17.08 | 16.30 | 15.56 | 29 |
| 30 | 24.48 | 23.20 | 22.01 | 20.90 | 19.88 | 18.92 | 18.03 | 17.20 | 16.42 | 15.70 | 15.02 | 30 |
| 31 | 23.01 | 21.86 | 20.80 | 19.81 | 18.88 | 18.02 | 17.21 | 16.45 | 15.74 | 15.08 | 14.46 | 31 |
| 32 | 21.56 | 20.55 | 19.60 | 18.72 | 17.89 | 17.11 | 16.38 | 15.70 | 15.05 | 14.45 | 13.88 | 32 |
| 33 | 20.15 | 19.26 | 18.42 | 17.63 | 16.89 | 16.20 | 15.55 | 14.93 | 14.35 | 13.80 | 13.29 | 33 |
| 34 | 18.76 | 17.98 | 17.25 | 16.55 | 15.90 | 15.28 | 14.70 | 14.15 | 13.63 | 13.14 | 12.68 | 34 |
| 35 | 17.41 | 16.73 | 16.09 | 15.48 | 14.91 | 14.37 | 13.85 | 13.36 | 12.90 | 12.46 | 12.05 | 35 |
| 36 | 16.08 | 15.49 | 14.94 | 14.41 | 13.92 | 13.44 | 12.99 | 12.56 | 12.16 | 11.77 | 11.40 | 36 |
| 37 | 14.77 | 14.28 | 13.80 | 13.35 | 12.92 | 12.51 | 12.12 | 11.75 | 11.40 | 11.06 | 10.73 | 37 |
| 38 | 13.50 | 13.08 | 12.68 | 12.30 | 11.93 | 11.58 | 11.25 | 10.93 | 10.62 | 10.33 | 10.05 | 38 |
| 39 | 12.25 | 11.90 | 11.56 | 11.24 | 10.94 | 10.64 | 10.36 | 10.09 | 9.83 | 9.58 | 9.34 | 39 |
| 40 | 11.02 | 10.73 | 10.46 | 10.20 | 9.95 | 9.70 | 9.47 | 9.24 | 9.02 | 8.82 | 8.61 | 40 |
| 41 | 9.82 | 9.59 | 9.37 | 9.16 | 8.95 | 8.76 | 8.56 | 8.38 | 8.20 | 8.03 | 7.86 | 41 |
| 42 | 8.64 | 8.46 | 8.29 | 8.12 | 7.96 | 7.80 | 7.65 | 7.51 | 7.36 | 7.22 | 7.09 | 42 |
| 43 | 7.48 | 7.35 | 7.22 | 7.09 | 6.97 | 6.85 | 6.73 | 6.62 | 6.51 | 6.40 | 6.29 | 43 |
| 44 | 6.35 | 6.25 | 6.16 | 6.06 | 5.97 | 5.89 | 5.80 | 5.72 | 5.63 | 5.55 | 5.48 | 44 |
| 45 | 5.24 | 5.17 | 5.11 | 5.04 | 4.98 | 4.92 | 4.86 | 4.80 | 4.74 | 4.69 | 4.63 | 45 |
| 46 | 4.15 | 4.11 | 4.07 | 4.03 | 3.99 | 3.95 | 3.91 | 3.87 | 3.83 | 3.80 | 3.76 | 46 |
| 47 | 3.08 | 3.06 | 3.04 | 3.01 | 2.99 | 2.97 | 2.95 | 2.93 | 2.90 | 2.88 | 2.86 | 47 |
| 48 | 2.04 | 2.03 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 48 |
| 49 | 1.01 | 1.01 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 49 |

**Table 5      Multipliers for loss of earnings to pension age 55 (males)**

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 58.33 | 52.26 | 47.00 | 42.43 | 38.44 | 34.96 | 31.90 | 29.22 | 26.85 | 24.76 | 22.90 | 16 |
| 17 | 56.17 | 50.49 | 45.54 | 41.22 | 37.44 | 34.13 | 31.22 | 28.65 | 26.38 | 24.37 | 22.58 | 17 |
| 18 | 54.07 | 48.74 | 44.09 | 40.02 | 36.45 | 33.30 | 30.53 | 28.08 | 25.90 | 23.97 | 22.24 | 18 |
| 19 | 52.00 | 47.03 | 42.67 | 38.83 | 35.46 | 32.48 | 29.84 | 27.50 | 25.42 | 23.56 | 21.90 | 19 |
| 20 | 49.99 | 45.34 | 41.26 | 37.65 | 34.47 | 31.65 | 29.14 | 26.91 | 24.92 | 23.14 | 21.55 | 20 |
| 21 | 48.01 | 43.68 | 39.86 | 36.48 | 33.48 | 30.81 | 28.44 | 26.31 | 24.42 | 22.72 | 21.19 | 21 |
| 22 | 46.07 | 42.04 | 38.47 | 35.31 | 32.49 | 29.97 | 27.72 | 25.71 | 23.90 | 22.28 | 20.82 | 22 |
| 23 | 44.17 | 40.43 | 37.11 | 34.14 | 31.49 | 29.13 | 27.00 | 25.10 | 23.38 | 21.83 | 20.43 | 23 |
| 24 | 42.31 | 38.84 | 35.75 | 32.98 | 30.50 | 28.28 | 26.28 | 24.47 | 22.85 | 21.37 | 20.04 | 24 |
| 25 | 40.49 | 37.28 | 34.41 | 31.83 | 29.52 | 27.43 | 25.54 | 23.84 | 22.30 | 20.90 | 19.63 | 25 |
| 26 | 38.70 | 35.74 | 33.08 | 30.69 | 28.53 | 26.57 | 24.81 | 23.20 | 21.75 | 20.42 | 19.21 | 26 |
| 27 | 36.95 | 34.23 | 31.77 | 29.55 | 27.54 | 25.71 | 24.06 | 22.55 | 21.18 | 19.93 | 18.78 | 27 |
| 28 | 35.24 | 32.74 | 30.47 | 28.42 | 26.55 | 24.85 | 23.30 | 21.89 | 20.60 | 19.42 | 18.34 | 28 |
| 29 | 33.56 | 31.27 | 29.18 | 27.29 | 25.56 | 23.98 | 22.54 | 21.22 | 20.01 | 18.91 | 17.89 | 29 |
| 30 | 31.91 | 29.82 | 27.91 | 26.17 | 24.57 | 23.11 | 21.78 | 20.55 | 19.42 | 18.38 | 17.42 | 30 |
| 31 | 30.30 | 28.40 | 26.66 | 25.06 | 23.59 | 22.24 | 21.00 | 19.86 | 18.81 | 17.83 | 16.94 | 31 |
| 32 | 28.73 | 27.00 | 25.41 | 23.95 | 22.61 | 21.37 | 20.22 | 19.17 | 18.19 | 17.28 | 16.44 | 32 |
| 33 | 27.19 | 25.63 | 24.19 | 22.86 | 21.63 | 20.49 | 19.44 | 18.46 | 17.56 | 16.72 | 15.94 | 33 |
| 34 | 25.68 | 24.27 | 22.97 | 21.76 | 20.65 | 19.61 | 18.65 | 17.75 | 16.92 | 16.14 | 15.41 | 34 |
| 35 | 24.20 | 22.94 | 21.77 | 20.68 | 19.67 | 18.72 | 17.85 | 17.03 | 16.26 | 15.55 | 14.88 | 35 |
| 36 | 22.75 | 21.63 | 20.58 | 19.60 | 18.69 | 17.83 | 17.04 | 16.29 | 15.59 | 14.94 | 14.32 | 36 |
| 37 | 21.33 | 20.33 | 19.40 | 18.52 | 17.71 | 16.94 | 16.22 | 15.55 | 14.91 | 14.32 | 13.76 | 37 |
| 38 | 19.94 | 19.06 | 18.23 | 17.46 | 16.73 | 16.04 | 15.40 | 14.79 | 14.22 | 13.68 | 13.17 | 38 |
| 39 | 18.57 | 17.80 | 17.07 | 16.39 | 15.75 | 15.14 | 14.56 | 14.02 | 13.51 | 13.02 | 12.56 | 39 |
| 40 | 17.23 | 16.56 | 15.93 | 15.33 | 14.76 | 14.23 | 13.72 | 13.24 | 12.79 | 12.35 | 11.94 | 40 |
| 41 | 15.92 | 15.34 | 14.79 | 14.28 | 13.78 | 13.32 | 12.87 | 12.45 | 12.05 | 11.67 | 11.30 | 41 |
| 42 | 14.63 | 14.14 | 13.67 | 13.23 | 12.80 | 12.40 | 12.01 | 11.65 | 11.30 | 10.96 | 10.64 | 42 |
| 43 | 13.37 | 12.96 | 12.56 | 12.18 | 11.82 | 11.48 | 11.15 | 10.83 | 10.53 | 10.24 | 9.96 | 43 |
| 44 | 12.13 | 11.79 | 11.46 | 11.14 | 10.84 | 10.55 | 10.27 | 10.01 | 9.75 | 9.50 | 9.26 | 44 |
| 45 | 10.92 | 10.64 | 10.37 | 10.11 | 9.86 | 9.62 | 9.39 | 9.17 | 8.95 | 8.74 | 8.54 | 45 |
| 46 | 9.73 | 9.51 | 9.29 | 9.08 | 8.88 | 8.68 | 8.50 | 8.31 | 8.14 | 7.97 | 7.80 | 46 |
| 47 | 8.57 | 8.39 | 8.22 | 8.06 | 7.90 | 7.74 | 7.59 | 7.45 | 7.31 | 7.17 | 7.04 | 47 |
| 48 | 7.43 | 7.29 | 7.17 | 7.04 | 6.92 | 6.80 | 6.68 | 6.57 | 6.46 | 6.35 | 6.25 | 48 |
| 49 | 6.31 | 6.21 | 6.12 | 6.02 | 5.93 | 5.85 | 5.76 | 5.68 | 5.60 | 5.52 | 5.44 | 49 |
| 50 | 5.21 | 5.14 | 5.08 | 5.01 | 4.95 | 4.89 | 4.83 | 4.77 | 4.72 | 4.66 | 4.60 | 50 |
| 51 | 4.13 | 4.09 | 4.05 | 4.01 | 3.97 | 3.93 | 3.89 | 3.85 | 3.81 | 3.78 | 3.74 | 51 |
| 52 | 3.07 | 3.05 | 3.03 | 3.00 | 2.98 | 2.96 | 2.94 | 2.91 | 2.89 | 2.87 | 2.85 | 52 |
| 53 | 2.03 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 1.93 | 53 |
| 54 | 1.01 | 1.01 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 54 |

Table 6    Multipliers for loss of earnings to pension age 55 (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 58.83 | 52.69 | 47.37 | 42.75 | 38.72 | 35.20 | 32.11 | 29.40 | 27.01 | 24.90 | 23.03 | 16 |
| 17 | 56.66 | 50.91 | 45.90 | 41.54 | 37.72 | 34.37 | 31.43 | 28.84 | 26.54 | 24.51 | 22.70 | 17 |
| 18 | 54.54 | 49.15 | 44.45 | 40.34 | 36.72 | 33.55 | 30.74 | 28.26 | 26.07 | 24.11 | 22.37 | 18 |
| 19 | 52.46 | 47.43 | 43.02 | 39.14 | 35.73 | 32.71 | 30.05 | 27.68 | 25.58 | 23.71 | 22.03 | 19 |
| 20 | 50.43 | 45.73 | 41.60 | 37.95 | 34.73 | 31.88 | 29.35 | 27.09 | 25.09 | 23.29 | 21.68 | 20 |
| 21 | 48.43 | 44.05 | 40.19 | 36.77 | 33.73 | 31.04 | 28.64 | 26.50 | 24.58 | 22.86 | 21.32 | 21 |
| 22 | 46.48 | 42.41 | 38.80 | 35.59 | 32.74 | 30.20 | 27.92 | 25.89 | 24.06 | 22.42 | 20.95 | 22 |
| 23 | 44.56 | 40.78 | 37.42 | 34.42 | 31.74 | 29.35 | 27.20 | 25.27 | 23.54 | 21.97 | 20.56 | 23 |
| 24 | 42.69 | 39.18 | 36.05 | 33.25 | 30.74 | 28.49 | 26.47 | 24.65 | 23.00 | 21.51 | 20.17 | 24 |
| 25 | 40.85 | 37.60 | 34.70 | 32.09 | 29.75 | 27.64 | 25.73 | 24.01 | 22.46 | 21.04 | 19.76 | 25 |
| 26 | 39.04 | 36.05 | 33.36 | 30.94 | 28.75 | 26.78 | 24.99 | 23.37 | 21.90 | 20.56 | 19.34 | 26 |
| 27 | 37.28 | 34.52 | 32.04 | 29.79 | 27.76 | 25.91 | 24.24 | 22.72 | 21.33 | 20.06 | 18.91 | 27 |
| 28 | 35.55 | 33.02 | 30.73 | 28.65 | 26.76 | 25.04 | 23.48 | 22.05 | 20.75 | 19.56 | 18.46 | 28 |
| 29 | 33.86 | 31.54 | 29.43 | 27.51 | 25.77 | 24.17 | 22.72 | 21.38 | 20.16 | 19.04 | 18.01 | 29 |
| 30 | 32.20 | 30.08 | 28.15 | 26.38 | 24.77 | 23.30 | 21.94 | 20.70 | 19.56 | 18.51 | 17.54 | 30 |
| 31 | 30.57 | 28.64 | 26.88 | 25.26 | 23.78 | 22.42 | 21.16 | 20.01 | 18.94 | 17.96 | 17.05 | 31 |
| 32 | 28.98 | 27.23 | 25.62 | 24.15 | 22.79 | 21.53 | 20.38 | 19.31 | 18.32 | 17.40 | 16.56 | 32 |
| 33 | 27.42 | 25.84 | 24.38 | 23.03 | 21.79 | 20.64 | 19.58 | 18.60 | 17.68 | 16.83 | 16.04 | 33 |
| 34 | 25.89 | 24.46 | 23.15 | 21.93 | 20.80 | 19.75 | 18.78 | 17.87 | 17.03 | 16.25 | 15.52 | 34 |
| 35 | 24.39 | 23.11 | 21.93 | 20.83 | 19.81 | 18.86 | 17.97 | 17.14 | 16.37 | 15.65 | 14.97 | 35 |
| 36 | 22.92 | 21.78 | 20.73 | 19.74 | 18.82 | 17.96 | 17.15 | 16.40 | 15.69 | 15.03 | 14.41 | 36 |
| 37 | 21.48 | 20.48 | 19.53 | 18.65 | 17.83 | 17.05 | 16.33 | 15.65 | 15.01 | 14.40 | 13.84 | 37 |
| 38 | 20.07 | 19.19 | 18.35 | 17.57 | 16.84 | 16.14 | 15.49 | 14.88 | 14.30 | 13.76 | 13.25 | 38 |
| 39 | 18.69 | 17.92 | 17.19 | 16.50 | 15.85 | 15.23 | 14.65 | 14.11 | 13.59 | 13.10 | 12.64 | 39 |
| 40 | 17.34 | 16.67 | 16.03 | 15.43 | 14.86 | 14.32 | 13.80 | 13.32 | 12.86 | 12.42 | 12.01 | 40 |
| 41 | 16.02 | 15.44 | 14.89 | 14.36 | 13.87 | 13.40 | 12.95 | 12.52 | 12.12 | 11.73 | 11.36 | 41 |
| 42 | 14.72 | 14.22 | 13.75 | 13.30 | 12.88 | 12.47 | 12.08 | 11.71 | 11.36 | 11.02 | 10.70 | 42 |
| 43 | 13.45 | 13.03 | 12.63 | 12.25 | 11.89 | 11.54 | 11.21 | 10.89 | 10.59 | 10.29 | 10.01 | 43 |
| 44 | 12.20 | 11.85 | 11.52 | 11.20 | 10.90 | 10.61 | 10.33 | 10.06 | 9.80 | 9.55 | 9.31 | 44 |
| 45 | 10.98 | 10.70 | 10.42 | 10.16 | 9.91 | 9.67 | 9.43 | 9.21 | 8.99 | 8.79 | 8.58 | 45 |
| 46 | 9.78 | 9.56 | 9.34 | 9.13 | 8.92 | 8.73 | 8.54 | 8.35 | 8.17 | 8.00 | 7.84 | 46 |
| 47 | 8.61 | 8.43 | 8.26 | 8.09 | 7.93 | 7.78 | 7.63 | 7.48 | 7.34 | 7.20 | 7.07 | 47 |
| 48 | 7.46 | 7.33 | 7.20 | 7.07 | 6.95 | 6.83 | 6.71 | 6.60 | 6.49 | 6.38 | 6.28 | 48 |
| 49 | 6.33 | 6.24 | 6.14 | 6.05 | 5.96 | 5.87 | 5.78 | 5.70 | 5.62 | 5.54 | 5.46 | 49 |
| 50 | 5.23 | 5.16 | 5.10 | 5.03 | 4.97 | 4.91 | 4.85 | 4.79 | 4.73 | 4.68 | 4.62 | 50 |
| 51 | 4.14 | 4.10 | 4.06 | 4.02 | 3.98 | 3.94 | 3.90 | 3.86 | 3.83 | 3.79 | 3.75 | 51 |
| 52 | 3.08 | 3.06 | 3.03 | 3.01 | 2.99 | 2.97 | 2.94 | 2.92 | 2.90 | 2.88 | 2.86 | 52 |
| 53 | 2.03 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.96 | 1.95 | 1.94 | 53 |
| 54 | 1.01 | 1.01 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 54 |

Table 7    Multipliers for loss of earnings to pension age 60 (males)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 69.28 | 61.13 | 54.18 | 48.26 | 43.18 | 38.81 | 35.03 | 31.77 | 28.93 | 26.46 | 24.29 | 16 |
| 17 | 66.90 | 59.22 | 52.65 | 47.02 | 42.18 | 38.00 | 34.38 | 31.24 | 28.50 | 26.11 | 24.01 | 17 |
| 18 | 64.58 | 57.34 | 51.13 | 45.79 | 41.18 | 37.19 | 33.73 | 30.71 | 28.07 | 25.75 | 23.72 | 18 |
| 19 | 62.30 | 55.49 | 49.63 | 44.57 | 40.19 | 36.38 | 33.06 | 30.17 | 27.62 | 25.39 | 23.42 | 19 |
| 20 | 60.08 | 53.68 | 48.15 | 43.36 | 39.20 | 35.57 | 32.40 | 29.62 | 27.17 | 25.02 | 23.11 | 20 |
| 21 | 57.90 | 51.89 | 46.68 | 42.15 | 38.21 | 34.75 | 31.72 | 29.06 | 26.71 | 24.64 | 22.80 | 21 |
| 22 | 55.76 | 50.13 | 45.23 | 40.95 | 37.21 | 33.93 | 31.04 | 28.50 | 26.25 | 24.25 | 22.47 | 22 |
| 23 | 53.66 | 48.40 | 43.79 | 39.76 | 36.22 | 33.11 | 30.36 | 27.93 | 25.77 | 23.85 | 22.14 | 23 |
| 24 | 51.61 | 46.69 | 42.37 | 38.57 | 35.23 | 32.28 | 29.66 | 27.35 | 25.28 | 23.44 | 21.80 | 24 |
| 25 | 49.60 | 45.01 | 40.96 | 37.40 | 34.24 | 31.45 | 28.97 | 26.76 | 24.79 | 23.02 | 21.44 | 25 |
| 26 | 47.64 | 43.35 | 39.57 | 36.22 | 33.25 | 30.61 | 28.26 | 26.16 | 24.28 | 22.59 | 21.08 | 26 |
| 27 | 45.71 | 41.72 | 38.19 | 35.06 | 32.27 | 29.77 | 27.55 | 25.56 | 23.77 | 22.16 | 20.71 | 27 |
| 28 | 43.82 | 40.12 | 36.83 | 33.90 | 31.28 | 28.93 | 26.83 | 24.94 | 23.24 | 21.71 | 20.32 | 28 |
| 29 | 41.97 | 38.54 | 35.48 | 32.74 | 30.29 | 28.09 | 26.10 | 24.32 | 22.70 | 21.25 | 19.92 | 29 |
| 30 | 40.15 | 36.99 | 34.14 | 31.59 | 29.30 | 27.24 | 25.37 | 23.69 | 22.16 | 20.78 | 19.52 | 30 |
| 31 | 38.38 | 35.46 | 32.83 | 30.46 | 28.32 | 26.39 | 24.64 | 23.05 | 21.61 | 20.29 | 19.10 | 31 |
| 32 | 36.65 | 33.96 | 31.53 | 29.33 | 27.34 | 25.53 | 23.89 | 22.40 | 21.04 | 19.80 | 18.67 | 32 |
| 33 | 34.96 | 32.48 | 30.24 | 28.21 | 26.36 | 24.68 | 23.15 | 21.75 | 20.47 | 19.30 | 18.23 | 33 |
| 34 | 33.30 | 31.03 | 28.97 | 27.09 | 25.38 | 23.82 | 22.39 | 21.09 | 19.89 | 18.79 | 17.78 | 34 |
| 35 | 31.67 | 29.60 | 27.71 | 25.98 | 24.40 | 22.96 | 21.63 | 20.42 | 19.30 | 18.27 | 17.32 | 35 |
| 36 | 30.07 | 28.19 | 26.46 | 24.88 | 23.43 | 22.09 | 20.87 | 19.74 | 18.69 | 17.73 | 16.84 | 36 |
| 37 | 28.51 | 26.80 | 25.23 | 23.78 | 22.45 | 21.22 | 20.09 | 19.04 | 18.08 | 17.18 | 16.35 | 37 |
| 38 | 26.98 | 25.43 | 24.01 | 22.69 | 21.48 | 20.35 | 19.31 | 18.34 | 17.45 | 16.61 | 15.84 | 38 |
| 39 | 25.48 | 24.08 | 22.80 | 21.60 | 20.50 | 19.47 | 18.52 | 17.63 | 16.81 | 16.04 | 15.32 | 39 |
| 40 | 24.00 | 22.76 | 21.60 | 20.52 | 19.52 | 18.59 | 17.72 | 16.91 | 16.15 | 15.44 | 14.78 | 40 |
| 41 | 22.56 | 21.45 | 20.41 | 19.45 | 18.54 | 17.70 | 16.91 | 16.17 | 15.48 | 14.84 | 14.23 | 41 |
| 42 | 21.15 | 20.16 | 19.24 | 18.38 | 17.57 | 16.81 | 16.10 | 15.43 | 14.80 | 14.21 | 13.66 | 42 |
| 43 | 19.76 | 18.90 | 18.08 | 17.31 | 16.59 | 15.92 | 15.28 | 14.68 | 14.11 | 13.58 | 13.07 | 43 |
| 44 | 18.41 | 17.65 | 16.93 | 16.26 | 15.62 | 15.02 | 14.45 | 13.91 | 13.41 | 12.93 | 12.47 | 44 |
| 45 | 17.08 | 16.42 | 15.79 | 15.20 | 14.64 | 14.12 | 13.61 | 13.14 | 12.69 | 12.26 | 11.85 | 45 |
| 46 | 15.78 | 15.21 | 14.67 | 14.16 | 13.67 | 13.21 | 12.77 | 12.35 | 11.95 | 11.58 | 11.22 | 46 |
| 47 | 14.50 | 14.02 | 13.56 | 13.12 | 12.70 | 12.30 | 11.92 | 11.55 | 11.21 | 10.88 | 10.56 | 47 |
| 48 | 13.26 | 12.85 | 12.46 | 12.08 | 11.73 | 11.38 | 11.06 | 10.75 | 10.45 | 10.16 | 9.89 | 48 |
| 49 | 12.03 | 11.69 | 11.37 | 11.05 | 10.75 | 10.47 | 10.19 | 9.93 | 9.67 | 9.43 | 9.19 | 49 |
| 50 | 10.83 | 10.56 | 10.29 | 10.03 | 9.78 | 9.55 | 9.32 | 9.10 | 8.88 | 8.68 | 8.48 | 50 |
| 51 | 9.66 | 9.44 | 9.22 | 9.01 | 8.81 | 8.62 | 8.43 | 8.25 | 8.08 | 7.91 | 7.75 | 51 |
| 52 | 8.51 | 8.34 | 8.17 | 8.00 | 7.84 | 7.69 | 7.54 | 7.40 | 7.26 | 7.12 | 6.99 | 52 |
| 53 | 7.38 | 7.25 | 7.12 | 7.00 | 6.87 | 6.76 | 6.64 | 6.53 | 6.42 | 6.32 | 6.21 | 53 |
| 54 | 6.27 | 6.18 | 6.08 | 5.99 | 5.90 | 5.82 | 5.73 | 5.65 | 5.57 | 5.49 | 5.41 | 54 |
| 55 | 5.18 | 5.12 | 5.05 | 4.99 | 4.93 | 4.87 | 4.81 | 4.75 | 4.69 | 4.64 | 4.58 | 55 |
| 56 | 4.12 | 4.07 | 4.03 | 3.99 | 3.95 | 3.91 | 3.87 | 3.84 | 3.80 | 3.76 | 3.73 | 56 |
| 57 | 3.06 | 3.04 | 3.02 | 2.99 | 2.97 | 2.95 | 2.93 | 2.91 | 2.89 | 2.86 | 2.84 | 57 |
| 58 | 2.03 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 1.93 | 58 |
| 59 | 1.01 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 0.98 | 59 |

**208**

Table 8     Multipliers for loss of earnings to pension age 60 (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | 70.04 | 61.77 | 54.73 | 48.72 | 43.57 | 39.14 | 35.32 | 32.02 | 29.14 | 26.64 | 24.45 | 16 |
| 17 | 67.65 | 59.85 | 53.18 | 47.48 | 42.57 | 38.33 | 34.67 | 31.49 | 28.72 | 26.29 | 24.17 | 17 |
| 18 | 65.30 | 57.96 | 51.66 | 46.24 | 41.57 | 37.52 | 34.01 | 30.96 | 28.28 | 25.94 | 23.88 | 18 |
| 19 | 63.01 | 56.10 | 50.15 | 45.02 | 40.57 | 36.71 | 33.35 | 30.41 | 27.84 | 25.58 | 23.59 | 19 |
| 20 | 60.76 | 54.27 | 48.66 | 43.80 | 39.57 | 35.90 | 32.68 | 29.87 | 27.39 | 25.21 | 23.28 | 20 |
| 21 | 58.56 | 52.46 | 47.18 | 42.58 | 38.58 | 35.08 | 32.01 | 29.31 | 26.93 | 24.83 | 22.97 | 21 |
| 22 | 56.40 | 50.69 | 45.71 | 41.37 | 37.58 | 34.25 | 31.32 | 28.74 | 26.46 | 24.44 | 22.64 | 22 |
| 23 | 54.29 | 48.94 | 44.26 | 40.17 | 36.58 | 33.42 | 30.64 | 28.17 | 25.98 | 24.04 | 22.31 | 23 |
| 24 | 52.21 | 47.21 | 42.83 | 38.98 | 35.58 | 32.59 | 29.94 | 27.59 | 25.50 | 23.63 | 21.97 | 24 |
| 25 | 50.18 | 45.51 | 41.41 | 37.79 | 34.59 | 31.75 | 29.24 | 27.00 | 25.00 | 23.21 | 21.61 | 25 |
| 26 | 48.19 | 43.84 | 40.00 | 36.60 | 33.59 | 30.91 | 28.53 | 26.40 | 24.49 | 22.78 | 21.25 | 26 |
| 27 | 46.24 | 42.20 | 38.61 | 35.43 | 32.59 | 30.07 | 27.81 | 25.79 | 23.98 | 22.34 | 20.87 | 27 |
| 28 | 44.33 | 40.58 | 37.24 | 34.26 | 31.60 | 29.22 | 27.09 | 25.17 | 23.45 | 21.89 | 20.49 | 28 |
| 29 | 42.46 | 38.98 | 35.87 | 33.09 | 30.60 | 28.37 | 26.36 | 24.55 | 22.91 | 21.43 | 20.09 | 29 |
| 30 | 40.63 | 37.41 | 34.53 | 31.94 | 29.61 | 27.51 | 25.62 | 23.91 | 22.37 | 20.96 | 19.69 | 30 |
| 31 | 38.83 | 35.86 | 33.19 | 30.79 | 28.62 | 26.65 | 24.88 | 23.27 | 21.81 | 20.48 | 19.27 | 31 |
| 32 | 37.08 | 34.34 | 31.87 | 29.64 | 27.62 | 25.79 | 24.13 | 22.62 | 21.24 | 19.98 | 18.83 | 32 |
| 33 | 35.35 | 32.84 | 30.57 | 28.50 | 26.63 | 24.93 | 23.37 | 21.96 | 20.66 | 19.48 | 18.39 | 33 |
| 34 | 33.67 | 31.37 | 29.28 | 27.37 | 25.64 | 24.06 | 22.61 | 21.29 | 20.07 | 18.96 | 17.93 | 34 |
| 35 | 32.01 | 29.91 | 28.00 | 26.25 | 24.65 | 23.18 | 21.84 | 20.60 | 19.47 | 18.43 | 17.46 | 35 |
| 36 | 30.40 | 28.48 | 26.73 | 25.13 | 23.66 | 22.30 | 21.06 | 19.91 | 18.86 | 17.88 | 16.98 | 36 |
| 37 | 28.81 | 27.08 | 25.48 | 24.02 | 22.67 | 21.42 | 20.28 | 19.21 | 18.23 | 17.32 | 16.48 | 37 |
| 38 | 27.26 | 25.69 | 24.24 | 22.91 | 21.68 | 20.54 | 19.48 | 18.50 | 17.60 | 16.75 | 15.97 | 38 |
| 39 | 25.73 | 24.32 | 23.02 | 21.81 | 20.69 | 19.65 | 18.68 | 17.78 | 16.95 | 16.17 | 15.44 | 39 |
| 40 | 24.24 | 22.98 | 21.81 | 20.72 | 19.70 | 18.76 | 17.88 | 17.05 | 16.29 | 15.57 | 14.90 | 40 |
| 41 | 22.78 | 21.66 | 20.61 | 19.63 | 18.71 | 17.86 | 17.06 | 16.31 | 15.61 | 14.96 | 14.34 | 41 |
| 42 | 21.35 | 20.35 | 19.42 | 18.55 | 17.73 | 16.96 | 16.24 | 15.56 | 14.93 | 14.33 | 13.77 | 42 |
| 43 | 19.95 | 19.07 | 18.24 | 17.47 | 16.74 | 16.05 | 15.41 | 14.80 | 14.23 | 13.69 | 13.18 | 43 |
| 44 | 18.58 | 17.81 | 17.08 | 16.40 | 15.75 | 15.15 | 14.57 | 14.03 | 13.52 | 13.03 | 12.57 | 44 |
| 45 | 17.24 | 16.57 | 15.93 | 15.33 | 14.77 | 14.23 | 13.73 | 13.25 | 12.79 | 12.36 | 11.95 | 45 |
| 46 | 15.92 | 15.34 | 14.80 | 14.28 | 13.79 | 13.32 | 12.87 | 12.45 | 12.05 | 11.67 | 11.30 | 46 |
| 47 | 14.63 | 14.14 | 13.67 | 13.23 | 12.80 | 12.40 | 12.01 | 11.65 | 11.30 | 10.96 | 10.64 | 47 |
| 48 | 13.37 | 12.95 | 12.56 | 12.18 | 11.82 | 11.48 | 11.15 | 10.83 | 10.53 | 10.24 | 9.96 | 48 |
| 49 | 12.13 | 11.79 | 11.46 | 11.14 | 10.84 | 10.55 | 10.27 | 10.00 | 9.75 | 9.50 | 9.26 | 49 |
| 50 | 10.92 | 10.64 | 10.37 | 10.11 | 9.86 | 9.62 | 9.39 | 9.17 | 8.95 | 8.74 | 8.54 | 50 |
| 51 | 9.73 | 9.51 | 9.29 | 9.08 | 8.88 | 8.69 | 8.50 | 8.31 | 8.14 | 7.97 | 7.80 | 51 |
| 52 | 8.57 | 8.39 | 8.22 | 8.06 | 7.90 | 7.75 | 7.60 | 7.45 | 7.31 | 7.17 | 7.04 | 52 |
| 53 | 7.43 | 7.30 | 7.17 | 7.04 | 6.92 | 6.80 | 6.68 | 6.57 | 6.46 | 6.36 | 6.25 | 53 |
| 54 | 6.31 | 6.21 | 6.12 | 6.03 | 5.94 | 5.85 | 5.76 | 5.68 | 5.60 | 5.52 | 5.44 | 54 |
| 55 | 5.21 | 5.14 | 5.08 | 5.02 | 4.95 | 4.89 | 4.83 | 4.77 | 4.72 | 4.66 | 4.61 | 55 |
| 56 | 4.13 | 4.09 | 4.05 | 4.01 | 3.97 | 3.93 | 3.89 | 3.85 | 3.82 | 3.78 | 3.74 | 56 |
| 57 | 3.07 | 3.05 | 3.03 | 3.00 | 2.98 | 2.96 | 2.94 | 2.92 | 2.89 | 2.87 | 2.85 | 57 |
| 58 | 2.03 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 1.93 | 58 |
| 59 | 1.01 | 1.01 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 59 |

Table 9    Multipliers for loss of earnings to pension age 65 (males)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 81.11 | 70.46 | 61.56 | 54.09 | 47.80 | 42.47 | 37.95 | 34.08 | 30.77 | 27.92 | 25.46 | 16 |
| 17 | 78.49 | 68.41 | 59.95 | 52.82 | 46.80 | 41.68 | 37.32 | 33.59 | 30.38 | 27.61 | 25.21 | 17 |
| 18 | 75.93 | 66.39 | 58.35 | 51.56 | 45.80 | 40.89 | 36.69 | 33.09 | 29.98 | 27.29 | 24.96 | 18 |
| 19 | 73.42 | 64.40 | 56.78 | 50.31 | 44.80 | 40.10 | 36.06 | 32.58 | 29.58 | 26.97 | 24.70 | 19 |
| 20 | 70.97 | 62.45 | 55.22 | 49.07 | 43.81 | 39.30 | 35.42 | 32.07 | 29.16 | 26.64 | 24.43 | 20 |
| 21 | 68.57 | 60.53 | 53.68 | 47.83 | 42.82 | 38.50 | 34.78 | 31.55 | 28.74 | 26.30 | 24.15 | 21 |
| 22 | 66.21 | 58.63 | 52.16 | 46.60 | 41.82 | 37.70 | 34.13 | 31.02 | 28.31 | 25.95 | 23.87 | 22 |
| 23 | 63.90 | 56.77 | 50.65 | 45.38 | 40.83 | 36.89 | 33.47 | 30.49 | 27.88 | 25.59 | 23.57 | 23 |
| 24 | 61.64 | 54.93 | 49.15 | 44.16 | 39.84 | 36.08 | 32.81 | 29.94 | 27.43 | 25.22 | 23.27 | 24 |
| 25 | 59.43 | 53.12 | 47.68 | 42.95 | 38.85 | 35.27 | 32.14 | 29.39 | 26.98 | 24.85 | 22.96 | 25 |
| 26 | 57.26 | 51.35 | 46.22 | 41.75 | 37.86 | 34.45 | 31.46 | 28.84 | 26.52 | 24.47 | 22.65 | 26 |
| 27 | 55.14 | 49.60 | 44.77 | 40.56 | 36.87 | 33.63 | 30.78 | 28.27 | 26.05 | 24.07 | 22.32 | 27 |
| 28 | 53.06 | 47.87 | 43.34 | 39.37 | 35.88 | 32.81 | 30.10 | 27.70 | 25.57 | 23.67 | 21.98 | 28 |
| 29 | 51.02 | 46.17 | 41.92 | 38.18 | 34.89 | 31.98 | 29.40 | 27.11 | 25.08 | 23.26 | 21.63 | 29 |
| 30 | 49.03 | 44.50 | 40.52 | 37.01 | 33.90 | 31.15 | 28.70 | 26.52 | 24.58 | 22.84 | 21.28 | 30 |
| 31 | 47.08 | 42.86 | 39.14 | 35.84 | 32.92 | 30.32 | 28.00 | 25.93 | 24.07 | 22.41 | 20.91 | 31 |
| 32 | 45.17 | 41.25 | 37.78 | 34.69 | 31.94 | 29.49 | 27.29 | 25.33 | 23.56 | 21.97 | 20.54 | 32 |
| 33 | 43.31 | 39.67 | 36.43 | 33.54 | 30.96 | 28.65 | 26.58 | 24.72 | 23.04 | 21.53 | 20.16 | 33 |
| 34 | 41.48 | 38.11 | 35.10 | 32.40 | 29.99 | 27.81 | 25.86 | 24.10 | 22.51 | 21.07 | 19.77 | 34 |
| 35 | 39.69 | 36.57 | 33.78 | 31.27 | 29.01 | 26.97 | 25.14 | 23.48 | 21.97 | 20.60 | 19.36 | 35 |
| 36 | 37.94 | 35.06 | 32.47 | 30.14 | 28.03 | 26.13 | 24.41 | 22.84 | 21.42 | 20.13 | 18.95 | 36 |
| 37 | 36.22 | 33.57 | 31.18 | 29.02 | 27.06 | 25.28 | 23.67 | 22.20 | 20.86 | 19.64 | 18.52 | 37 |
| 38 | 34.54 | 32.11 | 29.90 | 27.90 | 26.08 | 24.43 | 22.92 | 21.55 | 20.29 | 19.13 | 18.08 | 38 |
| 39 | 32.89 | 30.66 | 28.64 | 26.79 | 25.11 | 23.57 | 22.17 | 20.88 | 19.70 | 18.62 | 17.62 | 39 |
| 40 | 31.27 | 29.24 | 27.38 | 25.69 | 24.13 | 22.71 | 21.41 | 20.21 | 19.11 | 18.09 | 17.16 | 40 |
| 41 | 29.69 | 27.84 | 26.14 | 24.59 | 23.16 | 21.85 | 20.64 | 19.53 | 18.50 | 17.55 | 16.68 | 41 |
| 42 | 28.14 | 26.46 | 24.92 | 23.50 | 22.19 | 20.98 | 19.87 | 18.84 | 17.88 | 17.00 | 16.18 | 42 |
| 43 | 26.62 | 25.10 | 23.70 | 22.41 | 21.22 | 20.11 | 19.09 | 18.14 | 17.26 | 16.44 | 15.68 | 43 |
| 44 | 25.13 | 23.77 | 22.50 | 21.33 | 20.25 | 19.24 | 18.30 | 17.43 | 16.62 | 15.86 | 15.16 | 44 |
| 45 | 23.68 | 22.45 | 21.32 | 20.26 | 19.28 | 18.36 | 17.51 | 16.71 | 15.97 | 15.27 | 14.62 | 45 |
| 46 | 22.25 | 21.16 | 20.14 | 19.19 | 18.31 | 17.48 | 16.71 | 15.98 | 15.30 | 14.67 | 14.07 | 46 |
| 47 | 20.86 | 19.89 | 18.98 | 18.14 | 17.34 | 16.60 | 15.90 | 15.24 | 14.63 | 14.05 | 13.50 | 47 |
| 48 | 19.49 | 18.64 | 17.84 | 17.08 | 16.38 | 15.71 | 15.09 | 14.50 | 13.94 | 13.42 | 12.92 | 48 |
| 49 | 18.15 | 17.41 | 16.70 | 16.04 | 15.41 | 14.82 | 14.27 | 13.74 | 13.24 | 12.77 | 12.33 | 49 |
| 50 | 16.85 | 16.20 | 15.58 | 15.00 | 14.46 | 13.94 | 13.44 | 12.98 | 12.53 | 12.11 | 11.71 | 50 |
| 51 | 15.57 | 15.01 | 14.48 | 13.98 | 13.50 | 13.04 | 12.61 | 12.20 | 11.81 | 11.44 | 11.09 | 51 |
| 52 | 14.32 | 13.84 | 13.39 | 12.95 | 12.54 | 12.15 | 11.77 | 11.42 | 11.08 | 10.75 | 10.44 | 52 |
| 53 | 13.09 | 12.69 | 12.30 | 11.94 | 11.59 | 11.25 | 10.93 | 10.62 | 10.33 | 10.05 | 9.78 | 53 |
| 54 | 11.89 | 11.56 | 11.24 | 10.93 | 10.63 | 10.35 | 10.08 | 9.82 | 9.57 | 9.33 | 9.10 | 54 |
| 55 | 10.71 | 10.44 | 10.18 | 9.92 | 9.68 | 9.45 | 9.22 | 9.00 | 8.79 | 8.59 | 8.40 | 55 |
| 56 | 9.56 | 9.34 | 9.13 | 8.93 | 8.73 | 8.54 | 8.35 | 8.17 | 8.00 | 7.84 | 7.67 | 56 |
| 57 | 8.43 | 8.26 | 8.09 | 7.93 | 7.77 | 7.62 | 7.47 | 7.33 | 7.19 | 7.06 | 6.93 | 57 |
| 58 | 7.32 | 7.19 | 7.06 | 6.94 | 6.82 | 6.70 | 6.59 | 6.48 | 6.37 | 6.26 | 6.16 | 58 |
| 59 | 6.22 | 6.13 | 6.03 | 5.94 | 5.85 | 5.77 | 5.68 | 5.60 | 5.52 | 5.45 | 5.37 | 59 |
| 60 | 5.14 | 5.08 | 5.01 | 4.95 | 4.89 | 4.83 | 4.77 | 4.71 | 4.66 | 4.60 | 4.55 | 60 |
| 61 | 4.09 | 4.04 | 4.00 | 3.96 | 3.92 | 3.89 | 3.85 | 3.81 | 3.77 | 3.74 | 3.70 | 61 |
| 62 | 3.04 | 3.02 | 3.00 | 2.98 | 2.95 | 2.93 | 2.91 | 2.89 | 2.87 | 2.85 | 2.83 | 62 |
| 63 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 1.93 | 1.92 | 63 |
| 64 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 0.98 | 0.98 | 64 |

44

**Table 10    Multipliers for loss of earnings to pension age 65 (females)**

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 82.26 | 71.41 | 62.34 | 54.74 | 48.34 | 42.93 | 38.33 | 34.41 | 31.05 | 28.16 | 25.66 | 16 |
| 17 | 79.62 | 69.34 | 60.72 | 53.47 | 47.34 | 42.14 | 37.71 | 33.91 | 30.66 | 27.85 | 25.41 | 17 |
| 18 | 77.03 | 67.31 | 59.12 | 52.20 | 46.34 | 41.35 | 37.08 | 33.42 | 30.26 | 27.53 | 25.16 | 18 |
| 19 | 74.50 | 65.30 | 57.53 | 50.95 | 45.34 | 40.55 | 36.45 | 32.91 | 29.86 | 27.21 | 24.91 | 19 |
| 20 | 72.02 | 63.33 | 55.96 | 49.70 | 44.34 | 39.75 | 35.81 | 32.40 | 29.45 | 26.88 | 24.64 | 20 |
| 21 | 69.59 | 61.39 | 54.41 | 48.45 | 43.34 | 38.95 | 35.16 | 31.88 | 29.03 | 26.54 | 24.37 | 21 |
| 22 | 67.20 | 59.48 | 52.87 | 47.21 | 42.34 | 38.15 | 34.51 | 31.35 | 28.60 | 26.20 | 24.08 | 22 |
| 23 | 64.87 | 57.59 | 51.35 | 45.98 | 41.35 | 37.33 | 33.85 | 30.82 | 28.16 | 25.84 | 23.79 | 23 |
| 24 | 62.58 | 55.73 | 49.84 | 44.75 | 40.35 | 36.52 | 33.19 | 30.27 | 27.72 | 25.47 | 23.49 | 24 |
| 25 | 60.34 | 53.91 | 48.35 | 43.53 | 39.35 | 35.70 | 32.51 | 29.72 | 27.27 | 25.10 | 23.19 | 25 |
| 26 | 58.14 | 52.11 | 46.87 | 42.32 | 38.35 | 34.88 | 31.84 | 29.16 | 26.80 | 24.72 | 22.87 | 26 |
| 27 | 55.99 | 50.33 | 45.41 | 41.11 | 37.35 | 34.05 | 31.15 | 28.60 | 26.33 | 24.33 | 22.54 | 27 |
| 28 | 53.88 | 48.59 | 43.96 | 39.91 | 36.36 | 33.23 | 30.46 | 28.02 | 25.85 | 23.93 | 22.21 | 28 |
| 29 | 51.82 | 46.87 | 42.53 | 38.72 | 35.36 | 32.39 | 29.77 | 27.44 | 25.36 | 23.51 | 21.86 | 29 |
| 30 | 49.80 | 45.18 | 41.12 | 37.53 | 34.36 | 31.56 | 29.06 | 26.84 | 24.87 | 23.09 | 21.51 | 30 |
| 31 | 47.82 | 43.52 | 39.72 | 36.35 | 33.37 | 30.72 | 28.35 | 26.25 | 24.36 | 22.66 | 21.14 | 31 |
| 32 | 45.88 | 41.88 | 38.33 | 35.18 | 32.38 | 29.87 | 27.64 | 25.64 | 23.84 | 22.22 | 20.77 | 32 |
| 33 | 43.98 | 40.27 | 36.96 | 34.01 | 31.38 | 29.03 | 26.92 | 25.02 | 23.31 | 21.77 | 20.38 | 33 |
| 34 | 42.12 | 38.68 | 35.60 | 32.85 | 30.39 | 28.18 | 26.19 | 24.39 | 22.78 | 21.31 | 19.98 | 34 |
| 35 | 40.30 | 37.11 | 34.26 | 31.70 | 29.40 | 27.32 | 25.45 | 23.76 | 22.23 | 20.84 | 19.57 | 35 |
| 36 | 38.51 | 35.58 | 32.93 | 30.56 | 28.41 | 26.47 | 24.71 | 23.12 | 21.67 | 20.35 | 19.15 | 36 |
| 37 | 36.76 | 34.06 | 31.62 | 29.42 | 27.42 | 25.61 | 23.96 | 22.47 | 21.10 | 19.86 | 18.72 | 37 |
| 38 | 35.05 | 32.57 | 30.32 | 28.28 | 26.43 | 24.74 | 23.21 | 21.81 | 20.52 | 19.35 | 18.28 | 38 |
| 39 | 33.38 | 31.10 | 29.04 | 27.16 | 25.44 | 23.88 | 22.44 | 21.14 | 19.93 | 18.83 | 17.82 | 39 |
| 40 | 31.73 | 29.66 | 27.76 | 26.04 | 24.45 | 23.00 | 21.68 | 20.46 | 19.33 | 18.30 | 17.35 | 40 |
| 41 | 30.12 | 28.24 | 26.51 | 24.92 | 23.47 | 22.13 | 20.90 | 19.77 | 18.72 | 17.76 | 16.86 | 41 |
| 42 | 28.55 | 26.84 | 25.26 | 23.81 | 22.48 | 21.25 | 20.12 | 19.07 | 18.10 | 17.20 | 16.37 | 42 |
| 43 | 27.01 | 25.46 | 24.03 | 22.71 | 21.50 | 20.37 | 19.33 | 18.36 | 17.46 | 16.63 | 15.85 | 43 |
| 44 | 25.49 | 24.10 | 22.81 | 21.62 | 20.51 | 19.48 | 18.53 | 17.64 | 16.82 | 16.05 | 15.33 | 44 |
| 45 | 24.02 | 22.77 | 21.61 | 20.53 | 19.53 | 18.60 | 17.73 | 16.92 | 16.16 | 15.45 | 14.79 | 45 |
| 46 | 22.57 | 21.46 | 20.42 | 19.45 | 18.55 | 17.71 | 16.92 | 16.18 | 15.49 | 14.84 | 14.23 | 46 |
| 47 | 21.15 | 20.17 | 19.24 | 18.38 | 17.57 | 16.81 | 16.10 | 15.43 | 14.81 | 14.22 | 13.66 | 47 |
| 48 | 19.77 | 18.90 | 18.08 | 17.31 | 16.59 | 15.92 | 15.28 | 14.68 | 14.11 | 13.58 | 13.08 | 48 |
| 49 | 18.41 | 17.65 | 16.93 | 16.26 | 15.62 | 15.02 | 14.45 | 13.91 | 13.41 | 12.93 | 12.47 | 49 |
| 50 | 17.08 | 16.42 | 15.80 | 15.21 | 14.65 | 14.12 | 13.62 | 13.14 | 12.69 | 12.26 | 11.85 | 50 |
| 51 | 15.78 | 15.21 | 14.67 | 14.16 | 13.67 | 13.21 | 12.77 | 12.35 | 11.96 | 11.58 | 11.22 | 51 |
| 52 | 14.51 | 14.02 | 13.56 | 13.12 | 12.70 | 12.30 | 11.92 | 11.56 | 11.21 | 10.88 | 10.56 | 52 |
| 53 | 13.26 | 12.85 | 12.46 | 12.09 | 11.73 | 11.39 | 11.06 | 10.75 | 10.45 | 10.17 | 9.89 | 53 |
| 54 | 12.04 | 11.70 | 11.37 | 11.06 | 10.76 | 10.47 | 10.20 | 9.93 | 9.68 | 9.43 | 9.20 | 54 |
| 55 | 10.84 | 10.56 | 10.30 | 10.04 | 9.79 | 9.55 | 9.32 | 9.10 | 8.89 | 8.68 | 8.49 | 55 |
| 56 | 9.67 | 9.44 | 9.23 | 9.02 | 8.82 | 8.63 | 8.44 | 8.26 | 8.09 | 7.92 | 7.75 | 56 |
| 57 | 8.52 | 8.34 | 8.17 | 8.01 | 7.85 | 7.70 | 7.55 | 7.40 | 7.26 | 7.13 | 7.00 | 57 |
| 58 | 7.39 | 7.25 | 7.13 | 7.00 | 6.88 | 6.76 | 6.65 | 6.53 | 6.43 | 6.32 | 6.22 | 58 |
| 59 | 6.28 | 6.18 | 6.09 | 5.99 | 5.91 | 5.82 | 5.73 | 5.65 | 5.57 | 5.49 | 5.41 | 59 |
| 60 | 5.19 | 5.12 | 5.05 | 4.99 | 4.93 | 4.87 | 4.81 | 4.75 | 4.69 | 4.64 | 4.58 | 60 |
| 61 | 4.11 | 4.07 | 4.03 | 3.99 | 3.95 | 3.91 | 3.87 | 3.84 | 3.80 | 3.76 | 3.73 | 61 |
| 62 | 3.06 | 3.04 | 3.02 | 2.99 | 2.97 | 2.95 | 2.93 | 2.91 | 2.88 | 2.86 | 2.84 | 62 |
| 63 | 2.03 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 1.93 | 63 |
| 64 | 1.01 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 0.98 | 64 |

Table 11   Multipliers for loss of earnings to pension age 70 (males)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 93.75 | 80.18 | 69.05 | 59.87 | 52.26 | 45.93 | 40.62 | 36.16 | 32.38 | 29.18 | 26.44 | 16 |
| 17 | 90.86 | 77.97 | 67.35 | 58.57 | 51.26 | 45.15 | 40.02 | 35.69 | 32.02 | 28.89 | 26.22 | 17 |
| 18 | 88.04 | 75.80 | 65.68 | 57.27 | 50.25 | 44.37 | 39.41 | 35.22 | 31.65 | 28.61 | 25.99 | 18 |
| 19 | 85.28 | 73.67 | 64.03 | 55.99 | 49.26 | 43.59 | 38.81 | 34.74 | 31.28 | 28.31 | 25.76 | 19 |
| 20 | 82.58 | 71.57 | 62.39 | 54.71 | 48.26 | 42.81 | 38.19 | 34.26 | 30.90 | 28.01 | 25.52 | 20 |
| 21 | 79.94 | 69.50 | 60.78 | 53.44 | 47.26 | 42.03 | 37.58 | 33.78 | 30.52 | 27.71 | 25.28 | 21 |
| 22 | 77.35 | 67.47 | 59.17 | 52.18 | 46.27 | 41.24 | 36.95 | 33.28 | 30.12 | 27.39 | 25.03 | 22 |
| 23 | 74.81 | 65.46 | 57.59 | 50.93 | 45.27 | 40.45 | 36.32 | 32.78 | 29.72 | 27.07 | 24.77 | 23 |
| 24 | 72.32 | 63.49 | 56.02 | 49.68 | 44.27 | 39.65 | 35.68 | 32.26 | 29.31 | 26.74 | 24.50 | 24 |
| 25 | 69.89 | 61.55 | 54.47 | 48.44 | 43.28 | 38.85 | 35.04 | 31.75 | 28.89 | 26.40 | 24.23 | 25 |
| 26 | 67.50 | 59.64 | 52.93 | 47.20 | 42.29 | 38.05 | 34.39 | 31.22 | 28.47 | 26.06 | 23.95 | 26 |
| 27 | 65.17 | 57.76 | 51.42 | 45.98 | 41.29 | 37.25 | 33.74 | 30.69 | 28.03 | 25.70 | 23.66 | 27 |
| 28 | 62.88 | 55.91 | 49.92 | 44.76 | 40.30 | 36.44 | 33.08 | 30.15 | 27.59 | 25.34 | 23.36 | 28 |
| 29 | 60.64 | 54.08 | 48.43 | 43.54 | 39.31 | 35.63 | 32.41 | 29.61 | 27.14 | 24.97 | 23.05 | 29 |
| 30 | 58.45 | 52.29 | 46.96 | 42.34 | 38.32 | 34.81 | 31.74 | 29.05 | 26.68 | 24.59 | 22.74 | 30 |
| 31 | 56.31 | 50.53 | 45.51 | 41.14 | 37.33 | 34.00 | 31.07 | 28.49 | 26.22 | 24.20 | 22.42 | 31 |
| 32 | 54.21 | 48.80 | 44.08 | 39.96 | 36.35 | 33.18 | 30.39 | 27.93 | 25.75 | 23.81 | 22.09 | 32 |
| 33 | 52.17 | 47.10 | 42.67 | 38.79 | 35.37 | 32.37 | 29.71 | 27.36 | 25.27 | 23.41 | 21.75 | 33 |
| 34 | 50.16 | 45.43 | 41.28 | 37.62 | 34.40 | 31.55 | 29.02 | 26.78 | 24.79 | 23.00 | 21.41 | 34 |
| 35 | 48.20 | 43.78 | 39.89 | 36.46 | 33.42 | 30.73 | 28.33 | 26.20 | 24.29 | 22.58 | 21.05 | 35 |
| 36 | 46.28 | 42.16 | 38.53 | 35.31 | 32.45 | 29.90 | 27.63 | 25.60 | 23.79 | 22.15 | 20.69 | 36 |
| 37 | 44.39 | 40.57 | 37.18 | 34.16 | 31.47 | 29.07 | 26.93 | 25.00 | 23.27 | 21.72 | 20.31 | 37 |
| 38 | 42.55 | 39.00 | 35.84 | 33.02 | 30.50 | 28.24 | 26.21 | 24.39 | 22.75 | 21.27 | 19.93 | 38 |
| 39 | 40.74 | 37.45 | 34.51 | 31.88 | 29.52 | 27.40 | 25.49 | 23.77 | 22.21 | 20.80 | 19.53 | 39 |
| 40 | 38.96 | 35.92 | 33.20 | 30.75 | 28.55 | 26.56 | 24.76 | 23.14 | 21.67 | 20.33 | 19.12 | 40 |
| 41 | 37.23 | 34.42 | 31.90 | 29.63 | 27.57 | 25.71 | 24.03 | 22.50 | 21.11 | 19.85 | 18.70 | 41 |
| 42 | 35.53 | 32.95 | 30.62 | 28.51 | 26.60 | 24.87 | 23.29 | 21.86 | 20.55 | 19.36 | 18.26 | 42 |
| 43 | 33.86 | 31.50 | 29.35 | 27.40 | 25.63 | 24.02 | 22.55 | 21.20 | 19.98 | 18.85 | 17.82 | 43 |
| 44 | 32.23 | 30.07 | 28.10 | 26.30 | 24.66 | 23.17 | 21.80 | 20.54 | 19.39 | 18.34 | 17.36 | 44 |
| 45 | 30.64 | 28.66 | 26.86 | 25.21 | 23.70 | 22.31 | 21.04 | 19.87 | 18.80 | 17.81 | 16.90 | 45 |
| 46 | 29.08 | 27.28 | 25.63 | 24.12 | 22.73 | 21.45 | 20.28 | 19.19 | 18.19 | 17.27 | 16.41 | 46 |
| 47 | 27.55 | 25.92 | 24.42 | 23.04 | 21.77 | 20.59 | 19.51 | 18.51 | 17.58 | 16.72 | 15.92 | 47 |
| 48 | 26.06 | 24.58 | 23.22 | 21.97 | 20.81 | 19.73 | 18.74 | 17.81 | 16.95 | 16.16 | 15.41 | 48 |
| 49 | 24.60 | 23.27 | 22.04 | 20.91 | 19.85 | 18.87 | 17.96 | 17.11 | 16.32 | 15.58 | 14.90 | 49 |
| 50 | 23.17 | 21.98 | 20.88 | 19.85 | 18.90 | 18.01 | 17.18 | 16.40 | 15.68 | 15.00 | 14.37 | 50 |
| 51 | 21.78 | 20.72 | 19.73 | 18.81 | 17.95 | 17.14 | 16.39 | 15.69 | 15.02 | 14.40 | 13.82 | 51 |
| 52 | 20.42 | 19.48 | 18.60 | 17.78 | 17.00 | 16.28 | 15.60 | 14.96 | 14.36 | 13.80 | 13.27 | 52 |
| 53 | 19.09 | 18.26 | 17.48 | 16.75 | 16.06 | 15.41 | 14.81 | 14.23 | 13.69 | 13.18 | 12.70 | 53 |
| 54 | 17.79 | 17.06 | 16.38 | 15.73 | 15.12 | 14.55 | 14.01 | 13.49 | 13.01 | 12.55 | 12.11 | 54 |
| 55 | 16.51 | 15.88 | 15.29 | 14.72 | 14.19 | 13.68 | 13.20 | 12.75 | 12.31 | 11.90 | 11.52 | 55 |
| 56 | 15.27 | 14.73 | 14.21 | 13.72 | 13.25 | 12.81 | 12.39 | 11.99 | 11.61 | 11.25 | 10.90 | 56 |
| 57 | 14.05 | 13.59 | 13.14 | 12.72 | 12.32 | 11.94 | 11.57 | 11.22 | 10.89 | 10.57 | 10.27 | 57 |
| 58 | 12.85 | 12.46 | 12.09 | 11.73 | 11.39 | 11.06 | 10.75 | 10.45 | 10.16 | 9.88 | 9.62 | 58 |
| 59 | 11.68 | 11.35 | 11.04 | 10.74 | 10.45 | 10.17 | 9.91 | 9.66 | 9.41 | 9.18 | 8.95 | 59 |
| 60 | 10.52 | 10.26 | 10.00 | 9 75 | 9.51 | 9.28 | 9.06 | 8.85 | 8.65 | 8.45 | 8.26 | 60 |
| 61 | 9.39 | 9.18 | 8.97 | 8.77 | 8.58 | 8.39 | 8.21 | 8.04 | 7.87 | 7.71 | 7.55 | 61 |
| 62 | 8.28 | 8.11 | 7.95 | 7.79 | 7.64 | 7.49 | 7.35 | 7.21 | 7.07 | 6.94 | 6.82 | 62 |
| 63 | 7.19 | 7.06 | 6.94 | 6.82 | 6.70 | 6.59 | 6.48 | 6.37 | 6.27 | 6.16 | 6.06 | 63 |
| 64 | 6.12 | 6.03 | 5.94 | 5.85 | 5.77 | 5.68 | 5.60 | 5.52 | 5.44 | 5.36 | 5.29 | 64 |
| 65 | 5.07 | 5.01 | 4.95 | 4.89 | 4.83 | 4.77 | 4.71 | 4.65 | 4.60 | 4.54 | 4.49 | 65 |
| 66 | 4.04 | 4.00 | 3.96 | 3.92 | 3.88 | 3.84 | 3.81 | 3.77 | 3.73 | 3.70 | 3.66 | 66 |
| 67 | 3.02 | 3.00 | 2.97 | 2.95 | 2.93 | 2.91 | 2.89 | 2.86 | 2.84 | 2.82 | 2.80 | 67 |
| 68 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 1.93 | 1.92 | 1.91 | 68 |
| 69 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 0.98 | 0.98 | 0.98 | 69 |

**212**

Table 12     Multipliers for loss of earnings to pension age 70 (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | 95.47 | 81.58 | 70.18 | 60.79 | 53.01 | 46.54 | 41.12 | 36.57 | 32.73 | 29.47 | 26.68 | 16 |
| 17 | 92.56 | 79.35 | 68.47 | 59.48 | 52.01 | 45.76 | 40.53 | 36.11 | 32.37 | 29.19 | 26.46 | 17 |
| 18 | 89.71 | 77.16 | 66.79 | 58.18 | 51.00 | 44.99 | 39.93 | 35.65 | 32.01 | 28.91 | 26.24 | 18 |
| 19 | 86.92 | 75.00 | 65.12 | 56.89 | 50.00 | 44.21 | 39.32 | 35.18 | 31.64 | 28.62 | 26.02 | 19 |
| 20 | 84.18 | 72.88 | 63.47 | 55.61 | 49.00 | 43.43 | 38.71 | 34.70 | 31.27 | 28.32 | 25.79 | 20 |
| 21 | 81.50 | 70.79 | 61.84 | 54.33 | 48.00 | 42.64 | 38.09 | 34.21 | 30.88 | 28.02 | 25.55 | 21 |
| 22 | 78.87 | 68.73 | 60.22 | 53.06 | 47.00 | 41.83 | 37.47 | 33.72 | 30.49 | 27.71 | 25.30 | 22 |
| 23 | 76.30 | 66.70 | 58.62 | 51.79 | 46.00 | 41.06 | 36.84 | 33.22 | 30.09 | 27.39 | 25.04 | 23 |
| 24 | 73.77 | 64.70 | 57.04 | 50.53 | 44.99 | 40.26 | 36.20 | 32.71 | 29.68 | 27.06 | 24.78 | 24 |
| 25 | 71.30 | 62.73 | 55.47 | 49.28 | 43.99 | 39.46 | 35.56 | 32.19 | 29.27 | 26.73 | 24.51 | 25 |
| 26 | 68.88 | 60.80 | 53.91 | 48.03 | 42.99 | 38.65 | 34.91 | 31.67 | 28.85 | 26.39 | 24.23 | 26 |
| 27 | 66.51 | 58.89 | 52.38 | 46.80 | 41.99 | 37.85 | 34.26 | 31.13 | 28.41 | 26.03 | 23.95 | 27 |
| 28 | 64.19 | 57.01 | 50.86 | 45.56 | 40.99 | 37.03 | 33.59 | 30.60 | 27.98 | 25.68 | 23.65 | 28 |
| 29 | 61.91 | 55.17 | 49.36 | 44.34 | 39.99 | 36.22 | 32.93 | 30.05 | 27.53 | 25.31 | 23.35 | 29 |
| 30 | 59.68 | 53.35 | 47.87 | 43.12 | 39.00 | 35.40 | 32.25 | 29.50 | 27.07 | 24.93 | 23.04 | 30 |
| 31 | 57.50 | 51.56 | 46.40 | 41.91 | 38.00 | 34.58 | 31.58 | 28.94 | 26.61 | 24.55 | 22.72 | 31 |
| 32 | 55.37 | 49.79 | 44.94 | 40.71 | 37.01 | 33.75 | 30.89 | 28.37 | 26.13 | 24.15 | 22.39 | 32 |
| 33 | 53.27 | 48.06 | 43.51 | 39.52 | 36.01 | 32.92 | 30.20 | 27.79 | 25.65 | 23.75 | 22.05 | 33 |
| 34 | 51.22 | 46.35 | 42.08 | 38.33 | 35.02 | 32.09 | 29.50 | 27.21 | 25.16 | 23.34 | 21.70 | 34 |
| 35 | 49.22 | 44.67 | 40.67 | 37.14 | 34.02 | 31.26 | 28.80 | 26.61 | 24.66 | 22.91 | 21.35 | 35 |
| 36 | 47.25 | 43.02 | 39.28 | 35.97 | 33.03 | 30.42 | 28.09 | 26.01 | 24.15 | 22.48 | 20.98 | 36 |
| 37 | 45.32 | 41.39 | 37.90 | 34.80 | 32.04 | 29.58 | 27.37 | 25.40 | 23.63 | 22.04 | 20.60 | 37 |
| 38 | 43.44 | 39.79 | 36.54 | 33.64 | 31.05 | 28.73 | 26.65 | 24.78 | 23.10 | 21.58 | 20.21 | 38 |
| 39 | 41.59 | 38.21 | 35.19 | 32.48 | 30.06 | 27.88 | 25.92 | 24.16 | 22.56 | 21.12 | 19.81 | 39 |
| 40 | 39.78 | 36.66 | 33.85 | 31.34 | 29.07 | 27.03 | 25.19 | 23.52 | 22.01 | 20.65 | 19.40 | 40 |
| 41 | 38.01 | 35.13 | 32.53 | 30.20 | 28.08 | 26.18 | 24.45 | 22.88 | 21.46 | 20.16 | 18.98 | 41 |
| 42 | 36.28 | 33.62 | 31.23 | 29.06 | 27.10 | 25.32 | 23.70 | 22.23 | 20.89 | 19.66 | 18.54 | 42 |
| 43 | 34.58 | 32.14 | 29.94 | 27.93 | 26.11 | 24.46 | 22.95 | 21.57 | 20.31 | 19.15 | 18.10 | 43 |
| 44 | 32.92 | 30.69 | 28.66 | 26.81 | 25.13 | 23.59 | 22.19 | 20.90 | 19.72 | 18.63 | 17.64 | 44 |
| 45 | 31.29 | 29.26 | 27.40 | 25.70 | 24.15 | 22.73 | 21.42 | 20.22 | 19.12 | 18.10 | 17.17 | 45 |
| 46 | 29.70 | 27.85 | 26.15 | 24.60 | 23.17 | 21.86 | 20.65 | 19.54 | 18.51 | 17.56 | 16.68 | 46 |
| 47 | 28.15 | 26.47 | 24.92 | 23.50 | 22.19 | 20.99 | 19.87 | 18.84 | 17.89 | 17.01 | 16.19 | 47 |
| 48 | 26.63 | 25.11 | 23.71 | 22.41 | 21.22 | 20.11 | 19.09 | 18.14 | 17.26 | 16.44 | 15.68 | 48 |
| 49 | 25.14 | 23.77 | 22.51 | 21.34 | 20.25 | 19.24 | 18.30 | 17.43 | 16.62 | 15.86 | 15.16 | 49 |
| 50 | 23.68 | 22.46 | 21.32 | 20.27 | 19.28 | 18.36 | 17.51 | 16.71 | 15.97 | 15.27 | 14.62 | 50 |
| 51 | 22.26 | 21.17 | 20.15 | 19.20 | 18.31 | 17.49 | 16.71 | 15.99 | 15.31 | 14.67 | 14.07 | 51 |
| 52 | 20.87 | 19.90 | 18.99 | 18.14 | 17.35 | 16.60 | 15.91 | 15.25 | 14.63 | 14.05 | 13.51 | 52 |
| 53 | 19.50 | 18.65 | 17.85 | 17.09 | 16.39 | 15.72 | 15.09 | 14.50 | 13.95 | 13.42 | 12.93 | 53 |
| 54 | 18.17 | 17.42 | 16.72 | 16.05 | 15.43 | 14.83 | 14.28 | 13.75 | 13.25 | 12.78 | 12.33 | 54 |
| 55 | 16.86 | 16.21 | 15.60 | 15.02 | 14.47 | 13.95 | 13.45 | 12.99 | 12.54 | 12.12 | 11.72 | 55 |
| 56 | 15.58 | 15.02 | 14.49 | 13.99 | 13.51 | 13.05 | 12.62 | 12.21 | 11.82 | 11.45 | 11.09 | 56 |
| 57 | 14.33 | 13.85 | 13.40 | 12.96 | 12.55 | 12.16 | 11.78 | 11.43 | 11.09 | 10.76 | 10.45 | 57 |
| 58 | 13.10 | 12.70 | 12.31 | 11.95 | 11.59 | 11.26 | 10.94 | 10.63 | 10.34 | 10.05 | 9.78 | 58 |
| 59 | 11.89 | 11.56 | 11.24 | 10.93 | 10.64 | 10.35 | 10.08 | 9.82 | 9.57 | 9.33 | 9.10 | 59 |
| 60 | 10.71 | 10.44 | 10.18 | 9.92 | 9.68 | 9.44 | 9.22 | 9.00 | 8.79 | 8.59 | 8.39 | 60 |
| 61 | 9.55 | 9.33 | 9.12 | 8.92 | 8.72 | 8.53 | 8.35 | 8.17 | 8.00 | 7.83 | 7.67 | 61 |
| 62 | 8.42 | 8.25 | 8.08 | 7.92 | 7.76 | 7.61 | 7.46 | 7.32 | 7.18 | 7.05 | 6.92 | 62 |
| 63 | 7.30 | 7.17 | 7.05 | 6.92 | 6.80 | 6.69 | 6.57 | 6.47 | 6.36 | 6.25 | 6.15 | 63 |
| 64 | 6.21 | 6.12 | 6.02 | 5.93 | 5.85 | 5.76 | 5.68 | 5.59 | 5.51 | 5.44 | 5.36 | 64 |
| 65 | 5.14 | 5.07 | 5.01 | 4.95 | 4.89 | 4.83 | 4.77 | 4.71 | 4.65 | 4.60 | 4.54 | 65 |
| 66 | 4.08 | 4.04 | 4.00 | 3.96 | 3.92 | 3.88 | 3.85 | 3.81 | 3.77 | 3.74 | 3.70 | 66 |
| 67 | 3.04 | 3.02 | 3.00 | 2.98 | 2.95 | 2.93 | 2.91 | 2.89 | 2.87 | 2.85 | 2.83 | 67 |
| 68 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 1.93 | 1.92 | 68 |
| 69 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 0.98 | 0.98 | 69 |

Table 13    Multipliers for loss of earnings to pension age 75 (males)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | –2.0% | –1.5% | –1.0% | –0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 107.05 | 90.16 | 76.55 | 65.51 | 56.51 | 49.13 | 43.04 | 37.99 | 33.77 | 30.23 | 27.24 | 16 |
| 17 | 103.88 | 87.79 | 74.76 | 64.17 | 55.50 | 48.37 | 42.46 | 37.55 | 33.44 | 29.97 | 27.04 | 17 |
| 18 | 100.78 | 85.45 | 73.01 | 62.84 | 54.49 | 47.60 | 41.88 | 37.10 | 33.10 | 29.71 | 26.84 | 18 |
| 19 | 97.75 | 83.16 | 71.27 | 61.52 | 53.49 | 46.83 | 41.29 | 36.65 | 32.75 | 29.44 | 26.63 | 19 |
| 20 | 94.79 | 80.91 | 69.55 | 60.21 | 52.48 | 46.06 | 40.70 | 36.20 | 32.40 | 29.17 | 26.42 | 20 |
| 21 | 91.89 | 78.69 | 67.86 | 58.91 | 51.48 | 45.29 | 40.11 | 35.74 | 32.04 | 28.89 | 26.20 | 21 |
| 22 | 89.04 | 76.51 | 66.17 | 57.61 | 50.48 | 44.52 | 39.50 | 35.27 | 31.67 | 28.61 | 25.98 | 22 |
| 23 | 86.25 | 74.36 | 64.51 | 56.32 | 49.48 | 43.74 | 38.89 | 34.79 | 31.30 | 28.31 | 25.74 | 23 |
| 24 | 83.52 | 72.24 | 62.86 | 55.04 | 48.48 | 42.95 | 38.28 | 34.31 | 30.92 | 28.01 | 25.51 | 24 |
| 25 | 80.85 | 70.15 | 61.23 | 53.76 | 47.48 | 42.17 | 37.66 | 33.82 | 30.53 | 27.70 | 25.26 | 25 |
| 26 | 78.23 | 68.10 | 59.63 | 52.50 | 46.48 | 41.38 | 37.04 | 33.32 | 30.14 | 27.39 | 25.01 | 26 |
| 27 | 75.67 | 66.09 | 58.03 | 51.24 | 45.48 | 40.59 | 36.41 | 32.82 | 29.74 | 27.07 | 24.75 | 27 |
| 28 | 73.16 | 64.10 | 56.46 | 49.99 | 44.48 | 39.79 | 35.77 | 32.31 | 29.32 | 26.74 | 24.48 | 28 |
| 29 | 70.70 | 62.14 | 54.90 | 48.74 | 43.49 | 38.99 | 35.13 | 31.79 | 28.91 | 26.40 | 24.21 | 29 |
| 30 | 68.29 | 60.22 | 53.35 | 47.50 | 42.49 | 38.19 | 34.48 | 31.27 | 28.48 | 26.05 | 23.93 | 30 |
| 31 | 65.95 | 58.33 | 51.84 | 46.28 | 41.50 | 37.39 | 33.83 | 30.74 | 28.05 | 25.70 | 23.64 | 31 |
| 32 | 63.65 | 56.48 | 50.34 | 45.06 | 40.52 | 36.59 | 33.18 | 30.21 | 27.62 | 25.35 | 23.35 | 32 |
| 33 | 61.41 | 54.66 | 48.86 | 43.86 | 39.54 | 35.79 | 32.52 | 29.67 | 27.18 | 24.98 | 23.05 | 33 |
| 34 | 59.22 | 52.87 | 47.40 | 42.66 | 38.56 | 34.98 | 31.86 | 29.13 | 26.73 | 24.61 | 22.74 | 34 |
| 35 | 57.06 | 51.11 | 45.95 | 41.47 | 37.58 | 34.17 | 31.19 | 28.58 | 26.27 | 24.23 | 22.43 | 35 |
| 36 | 54.96 | 49.37 | 44.52 | 40.29 | 36.60 | 33.36 | 30.52 | 28.02 | 25.80 | 23.84 | 22.10 | 36 |
| 37 | 52.90 | 47.67 | 43.11 | 39.12 | 35.62 | 32.55 | 29.84 | 27.45 | 25.33 | 23.45 | 21.77 | 37 |
| 38 | 50.87 | 45.98 | 41.70 | 37.95 | 34.64 | 31.73 | 29.16 | 26.87 | 24.85 | 23.04 | 21.42 | 38 |
| 39 | 48.89 | 44.33 | 40.31 | 36.78 | 33.67 | 30.91 | 28.46 | 26.29 | 24.35 | 22.62 | 21.07 | 39 |
| 40 | 46.95 | 42.69 | 38.94 | 35.62 | 32.69 | 30.08 | 27.76 | 25.70 | 23.85 | 22.19 | 20.70 | 40 |
| 41 | 45.05 | 41.09 | 37.58 | 34.47 | 31.71 | 29.25 | 27.06 | 25.10 | 23.34 | 21.75 | 20.33 | 41 |
| 42 | 43.19 | 39.51 | 36.24 | 33.33 | 30.74 | 28.42 | 26.35 | 24.49 | 22.81 | 21.31 | 19.95 | 42 |
| 43 | 41.37 | 37.96 | 34.91 | 32.20 | 29.77 | 27.59 | 25.63 | 23.87 | 22.29 | 20.85 | 19.55 | 43 |
| 44 | 39.59 | 36.43 | 33.60 | 31.07 | 28.80 | 26.76 | 24.91 | 23.25 | 21.75 | 20.39 | 19.15 | 44 |
| 45 | 37.85 | 34.93 | 32.31 | 29.95 | 27.83 | 25.92 | 24.19 | 22.62 | 21.20 | 19.91 | 18.73 | 45 |
| 46 | 36.14 | 33.45 | 31.03 | 28.84 | 26.87 | 25.08 | 23.46 | 21.98 | 20.64 | 19.42 | 18.31 | 46 |
| 47 | 34.47 | 32.00 | 29.76 | 27.74 | 25.90 | 24.24 | 22.72 | 21.34 | 20.08 | 18.93 | 17.87 | 47 |
| 48 | 32.84 | 30.58 | 28.52 | 26.65 | 24.95 | 23.39 | 21.98 | 20.69 | 19.50 | 18.42 | 17.42 | 48 |
| 49 | 31.25 | 29.18 | 27.29 | 25.56 | 23.99 | 22.55 | 21.24 | 20.03 | 18.92 | 17.90 | 16.97 | 49 |
| 50 | 29.70 | 27.81 | 26.07 | 24.49 | 23.04 | 21.71 | 20.49 | 19.37 | 18.33 | 17.38 | 16.50 | 50 |
| 51 | 28.18 | 26.46 | 24.88 | 23.43 | 22.10 | 20.87 | 19.74 | 18.70 | 17.74 | 16.85 | 16.03 | 51 |
| 52 | 26.70 | 25.14 | 23.70 | 22.38 | 21.16 | 20.03 | 18.99 | 18.03 | 17.13 | 16.31 | 15.54 | 52 |
| 53 | 25.26 | 23.85 | 22.54 | 21.34 | 20.23 | 19.19 | 18.24 | 17.35 | 16.52 | 15.76 | 15.04 | 53 |
| 54 | 23.85 | 22.58 | 21.40 | 20.31 | 19.30 | 18.35 | 17.48 | 16.66 | 15.90 | 15.20 | 14.53 | 54 |
| 55 | 22.48 | 21.34 | 20.28 | 19.29 | 18.37 | 17.52 | 16.72 | 15.98 | 15.28 | 14.63 | 14.02 | 55 |
| 56 | 21.13 | 20.12 | 19.17 | 18.28 | 17.46 | 16.68 | 15.96 | 15.28 | 14.64 | 14.05 | 13.49 | 56 |
| 57 | 19.82 | 18.92 | 18.07 | 17.28 | 16.54 | 15.85 | 15.19 | 14.58 | 14.00 | 13.46 | 12.95 | 57 |
| 58 | 18.53 | 17.74 | 16.99 | 16.29 | 15.63 | 15.00 | 14.42 | 13.86 | 13.34 | 12.85 | 12.39 | 58 |
| 59 | 17.27 | 16.57 | 15.91 | 15.29 | 14.71 | 14.16 | 13.63 | 13.14 | 12.67 | 12.23 | 11.81 | 59 |
| 60 | 16.03 | 15.42 | 14.85 | 14.30 | 13.79 | 13.30 | 12.84 | 12.40 | 11.99 | 11.60 | 11.22 | 60 |
| 61 | 14.81 | 14.29 | 13.79 | 13.32 | 12.87 | 12.45 | 12.04 | 11.66 | 11.29 | 10.95 | 10.61 | 61 |
| 62 | 13.62 | 13.18 | 12.75 | 12.35 | 11.96 | 11.59 | 11.24 | 10.91 | 10.59 | 10.28 | 9.99 | 62 |
| 63 | 12.46 | 12.09 | 11.73 | 11.38 | 11.05 | 10.74 | 10.44 | 10.15 | 9.88 | 9.61 | 9.36 | 63 |
| 64 | 11.33 | 11.02 | 10.72 | 10.43 | 10.15 | 9.89 | 9.63 | 9.39 | 9.15 | 8.93 | 8.71 | 64 |
| 65 | 10.22 | 9.97 | 9.72 | 9.48 | 9.25 | 9.03 | 8.82 | 8.61 | 8.42 | 8.23 | 8.04 | 65 |
| 66 | 9.14 | 8.93 | 8.73 | 8.54 | 8.36 | 8.18 | 8.00 | 7.83 | 7.67 | 7.52 | 7.36 | 66 |
| 67 | 8.08 | 7.92 | 7.76 | 7.61 | 7.46 | 7.32 | 7.18 | 7.04 | 6.91 | 6.79 | 6.66 | 67 |
| 68 | 7.04 | 6.91 | 6.79 | 6.67 | 6.56 | 6.45 | 6.34 | 6.24 | 6.14 | 6.04 | 5.94 | 68 |
| 69 | 6.01 | 5.92 | 5.83 | 5.74 | 5.66 | 5.58 | 5.50 | 5.42 | 5.34 | 5.27 | 5.19 | 69 |
| 70 | 4.99 | 4.93 | 4.87 | 4.81 | 4.75 | 4.69 | 4.63 | 4.58 | 4.52 | 4.47 | 4.42 | 70 |
| 71 | 3.98 | 3.94 | 3.90 | 3.86 | 3.83 | 3.79 | 3.75 | 3.72 | 3.68 | 3.65 | 3.61 | 71 |
| 72 | 2.98 | 2.96 | 2.94 | 2.92 | 2.89 | 2.87 | 2.85 | 2.83 | 2.81 | 2.79 | 2.77 | 72 |
| 73 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 1.93 | 1.92 | 1.91 | 1.90 | 1.89 | 73 |
| 74 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 0.98 | 0.98 | 0.98 | 0.97 | 0.97 | 74 |

**Table 14    Multipliers for loss of earnings to pension age 75 (females)**

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 16 | 109.63 | 92.19 | 78.15 | 66.79 | 57.53 | 49.95 | 43.70 | 38.52 | 34.21 | 30.59 | 27.53 | 16 |
| 17 | 106.42 | 89.80 | 76.36 | 65.44 | 56.52 | 49.19 | 43.13 | 38.09 | 33.88 | 30.34 | 27.34 | 17 |
| 18 | 103.28 | 87.44 | 74.59 | 64.11 | 55.51 | 48.43 | 42.55 | 37.65 | 33.55 | 30.08 | 27.15 | 18 |
| 19 | 100.20 | 85.12 | 72.84 | 62.78 | 54.51 | 47.66 | 41.97 | 37.21 | 33.21 | 29.82 | 26.95 | 19 |
| 20 | 97.19 | 82.84 | 71.11 | 61.47 | 53.50 | 46.90 | 41.38 | 36.76 | 32.86 | 29.56 | 26.74 | 20 |
| 21 | 94.24 | 80.59 | 69.39 | 60.15 | 52.50 | 46.13 | 40.79 | 36.30 | 32.51 | 29.28 | 26.53 | 21 |
| 22 | 91.35 | 78.38 | 67.69 | 58.85 | 51.49 | 45.35 | 40.19 | 35.84 | 32.15 | 29.00 | 26.31 | 22 |
| 23 | 88.51 | 76.19 | 66.01 | 57.55 | 50.49 | 44.57 | 39.58 | 35.37 | 31.78 | 28.71 | 26.08 | 23 |
| 24 | 85.73 | 74.04 | 64.34 | 56.25 | 49.48 | 43.79 | 38.97 | 34.89 | 31.40 | 28.42 | 25.85 | 24 |
| 25 | 83.01 | 71.93 | 62.69 | 54.97 | 48.48 | 43.00 | 38.35 | 34.40 | 31.02 | 28.12 | 25.61 | 25 |
| 26 | 80.34 | 69.84 | 61.06 | 53.69 | 47.47 | 42.21 | 37.73 | 33.91 | 30.63 | 27.81 | 25.37 | 26 |
| 27 | 77.73 | 67.79 | 59.45 | 52.42 | 46.47 | 41.41 | 37.10 | 33.41 | 30.23 | 27.49 | 25.11 | 27 |
| 28 | 75.17 | 65.77 | 57.85 | 51.15 | 45.46 | 40.62 | 36.47 | 32.90 | 29.83 | 27.17 | 24.85 | 28 |
| 29 | 72.67 | 63.79 | 56.27 | 49.90 | 44.46 | 39.82 | 35.83 | 32.39 | 29.42 | 26.84 | 24.59 | 29 |
| 30 | 70.22 | 61.83 | 54.71 | 48.65 | 43.46 | 39.01 | 35.18 | 31.87 | 29.00 | 26.50 | 24.31 | 30 |
| 31 | 67.82 | 59.91 | 53.17 | 47.40 | 42.46 | 38.20 | 34.53 | 31.34 | 28.57 | 26.15 | 24.03 | 31 |
| 32 | 65.47 | 58.01 | 51.64 | 46.17 | 41.46 | 37.40 | 33.87 | 30.81 | 28.13 | 25.79 | 23.74 | 32 |
| 33 | 63.16 | 56.15 | 50.13 | 44.94 | 40.46 | 36.58 | 33.21 | 30.26 | 27.69 | 25.43 | 23.44 | 33 |
| 34 | 60.91 | 54.31 | 48.63 | 43.72 | 39.47 | 35.77 | 32.54 | 29.72 | 27.24 | 25.06 | 23.13 | 34 |
| 35 | 58.70 | 52.51 | 47.15 | 42.51 | 38.47 | 34.95 | 31.86 | 29.16 | 26.78 | 24.68 | 22.82 | 35 |
| 36 | 56.54 | 50.73 | 45.69 | 41.30 | 37.47 | 34.12 | 31.18 | 28.59 | 26.31 | 24.29 | 22.49 | 36 |
| 37 | 54.42 | 48.98 | 44.24 | 40.10 | 36.48 | 33.30 | 30.49 | 28.02 | 25.83 | 23.89 | 22.16 | 37 |
| 38 | 52.35 | 47.26 | 42.81 | 38.91 | 35.49 | 32.47 | 29.80 | 27.44 | 25.34 | 23.48 | 21.81 | 38 |
| 39 | 50.32 | 45.57 | 41.40 | 37.73 | 34.49 | 31.64 | 29.10 | 26.85 | 24.85 | 23.06 | 21.46 | 39 |
| 40 | 48.33 | 43.90 | 40.00 | 36.55 | 33.50 | 30.80 | 28.40 | 26.26 | 24.35 | 22.63 | 21.10 | 40 |
| 41 | 46.38 | 42.26 | 38.61 | 35.38 | 32.51 | 29.96 | 27.69 | 25.65 | 23.83 | 22.20 | 20.73 | 41 |
| 42 | 44.48 | 40.64 | 37.24 | 34.22 | 31.53 | 29.12 | 26.97 | 25.04 | 23.31 | 21.75 | 20.34 | 42 |
| 43 | 42.61 | 39.06 | 35.89 | 33.06 | 30.54 | 28.28 | 26.25 | 24.42 | 22.78 | 21.29 | 19.95 | 43 |
| 44 | 40.79 | 37.49 | 34.55 | 31.92 | 29.55 | 27.43 | 25.52 | 23.79 | 22.24 | 20.82 | 19.55 | 44 |
| 45 | 39.00 | 35.96 | 33.23 | 30.78 | 28.57 | 26.58 | 24.79 | 23.16 | 21.69 | 20.35 | 19.13 | 45 |
| 46 | 37.26 | 34.45 | 31.93 | 29.65 | 27.59 | 25.73 | 24.05 | 22.52 | 21.13 | 19.86 | 18.71 | 46 |
| 47 | 35.55 | 32.97 | 30.64 | 28.53 | 26.62 | 24.88 | 23.30 | 21.87 | 20.56 | 19.36 | 18.27 | 47 |
| 48 | 33.88 | 31.51 | 29.37 | 27.42 | 25.64 | 24.03 | 22.56 | 21.21 | 19.98 | 18.86 | 17.83 | 48 |
| 49 | 32.25 | 30.08 | 28.11 | 26.31 | 24.67 | 23.18 | 21.81 | 20.55 | 19.40 | 18.34 | 17.37 | 49 |
| 50 | 30.66 | 28.68 | 26.87 | 25.22 | 23.71 | 22.32 | 21.05 | 19.88 | 18.81 | 17.82 | 16.90 | 50 |
| 51 | 29.10 | 27.30 | 25.65 | 24.14 | 22.75 | 21.47 | 20.29 | 19.20 | 18.20 | 17.28 | 16.42 | 51 |
| 52 | 27.58 | 25.94 | 24.44 | 23.06 | 21.78 | 20.61 | 19.52 | 18.52 | 17.59 | 16.73 | 15.93 | 52 |
| 53 | 26.08 | 24.61 | 23.25 | 21.99 | 20.83 | 19.75 | 18.75 | 17.83 | 16.97 | 16.17 | 15.43 | 53 |
| 54 | 24.63 | 23.30 | 22.07 | 20.93 | 19.87 | 18.89 | 17.98 | 17.13 | 16.34 | 15.60 | 14.91 | 54 |
| 55 | 23.20 | 22.01 | 20.91 | 19.88 | 18.92 | 18.03 | 17.20 | 16.42 | 15.69 | 15.02 | 14.38 | 55 |
| 56 | 21.81 | 20.75 | 19.76 | 18.83 | 17.97 | 17.16 | 16.41 | 15.70 | 15.04 | 14.42 | 13.84 | 56 |
| 57 | 20.45 | 19.50 | 18.62 | 17.80 | 17.02 | 16.30 | 15.62 | 14.98 | 14.38 | 13.81 | 13.28 | 57 |
| 58 | 19.11 | 18.28 | 17.50 | 16.77 | 16.08 | 15.43 | 14.82 | 14.25 | 13.70 | 13.19 | 12.71 | 58 |
| 59 | 17.80 | 17.07 | 16.39 | 15.74 | 15.13 | 14.56 | 14.02 | 13.50 | 13.02 | 12.56 | 12.12 | 59 |
| 60 | 16.52 | 15.88 | 15.29 | 14.72 | 14.19 | 13.68 | 13.20 | 12.75 | 12.32 | 11.91 | 11.52 | 60 |
| 61 | 15.26 | 14.71 | 14.20 | 13.71 | 13.24 | 12.80 | 12.38 | 11.98 | 11.60 | 11.24 | 10.89 | 61 |
| 62 | 14.03 | 13.56 | 13.12 | 12.70 | 12.30 | 11.92 | 11.56 | 11.21 | 10.88 | 10.56 | 10.26 | 62 |
| 63 | 12.83 | 12.43 | 12.06 | 11.70 | 11.36 | 11.04 | 10.72 | 10.42 | 10.14 | 9.86 | 9.60 | 63 |
| 64 | 11.65 | 11.33 | 11.01 | 10.71 | 10.43 | 10.15 | 9.89 | 9.63 | 9.39 | 9.16 | 8.93 | 64 |
| 65 | 10.50 | 10.24 | 9.98 | 9.73 | 9.50 | 9.27 | 9.05 | 8.84 | 8.63 | 8.43 | 8.24 | 65 |
| 66 | 9.38 | 9.16 | 8.96 | 8.76 | 8.57 | 8.38 | 8.20 | 8.03 | 7.86 | 7.70 | 7.54 | 66 |
| 67 | 8.28 | 8.11 | 7.95 | 7.79 | 7.64 | 7.49 | 7.35 | 7.21 | 7.07 | 6.94 | 6.81 | 67 |
| 68 | 7.19 | 7.07 | 6.94 | 6.82 | 6.70 | 6.59 | 6.48 | 6.37 | 6.27 | 6.17 | 6.07 | 68 |
| 69 | 6.13 | 6.04 | 5.95 | 5.86 | 5.77 | 5.69 | 5.60 | 5.52 | 5.44 | 5.37 | 5.29 | 69 |
| 70 | 5.08 | 5.01 | 4.95 | 4.89 | 4.83 | 4.77 | 4.71 | 4.66 | 4.60 | 4.55 | 4.49 | 70 |
| 71 | 4.04 | 4.00 | 3.96 | 3.92 | 3.88 | 3.85 | 3.81 | 3.77 | 3.73 | 3.70 | 3.66 | 71 |
| 72 | 3.02 | 3.00 | 2.97 | 2.95 | 2.93 | 2.91 | 2.89 | 2.86 | 2.84 | 2.82 | 2.80 | 72 |
| 73 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 1.93 | 1.92 | 1.91 | 73 |
| 74 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 0.98 | 0.98 | 0.98 | 0.98 | 74 |

Table 15    Multipliers for loss of pension commencing age 50 (males)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 179.64 | 121.70 | 83.09 | 57.16 | 39.61 | 27.64 | 19.42 | 13.74 | 9.78 | 7.00 | 5.04 | 0 |
| 1 | 176.24 | 120.05 | 82.40 | 56.99 | 39.70 | 27.85 | 19.67 | 13.99 | 10.01 | 7.20 | 5.21 | 1 |
| 2 | 172.05 | 117.83 | 81.32 | 56.54 | 39.59 | 27.92 | 19.83 | 14.17 | 10.19 | 7.37 | 5.36 | 2 |
| 3 | 167.93 | 115.64 | 80.24 | 56.09 | 39.49 | 27.99 | 19.98 | 14.35 | 10.37 | 7.54 | 5.51 | 3 |
| 4 | 163.90 | 113.48 | 79.16 | 55.63 | 39.37 | 28.06 | 20.13 | 14.53 | 10.56 | 7.72 | 5.67 | 4 |
| 5 | 159.97 | 111.36 | 78.10 | 55.18 | 39.26 | 28.12 | 20.28 | 14.72 | 10.75 | 7.89 | 5.83 | 5 |
| 6 | 156.12 | 109.27 | 77.05 | 54.73 | 39.14 | 28.19 | 20.43 | 14.91 | 10.94 | 8.08 | 5.99 | 6 |
| 7 | 152.36 | 107.22 | 76.01 | 54.28 | 39.03 | 28.25 | 20.59 | 15.10 | 11.14 | 8.26 | 6.16 | 7 |
| 8 | 148.69 | 105.21 | 74.99 | 53.83 | 38.91 | 28.32 | 20.74 | 15.29 | 11.33 | 8.45 | 6.34 | 8 |
| 9 | 145.10 | 103.23 | 73.98 | 53.39 | 38.80 | 28.38 | 20.90 | 15.48 | 11.54 | 8.65 | 6.52 | 9 |
| 10 | 141.59 | 101.28 | 72.97 | 52.95 | 38.68 | 28.44 | 21.05 | 15.68 | 11.74 | 8.84 | 6.70 | 10 |
| 11 | 138.17 | 99.37 | 71.98 | 52.51 | 38.56 | 28.51 | 21.21 | 15.87 | 11.95 | 9.05 | 6.89 | 11 |
| 12 | 134.83 | 97.50 | 71.01 | 52.07 | 38.44 | 28.57 | 21.36 | 16.07 | 12.16 | 9.26 | 7.08 | 12 |
| 13 | 131.57 | 95.66 | 70.04 | 51.64 | 38.33 | 28.63 | 21.52 | 16.28 | 12.38 | 9.47 | 7.28 | 13 |
| 14 | 128.40 | 93.86 | 69.10 | 51.21 | 38.21 | 28.70 | 21.68 | 16.48 | 12.60 | 9.69 | 7.48 | 14 |
| 15 | 125.31 | 92.10 | 68.16 | 50.79 | 38.10 | 28.76 | 21.85 | 16.69 | 12.82 | 9.91 | 7.69 | 15 |
| 16 | 122.29 | 90.37 | 67.24 | 50.38 | 37.99 | 28.83 | 22.01 | 16.90 | 13.05 | 10.14 | 7.91 | 16 |
| 17 | 119.35 | 88.68 | 66.34 | 49.96 | 37.88 | 28.89 | 22.17 | 17.12 | 13.29 | 10.37 | 8.13 | 17 |
| 18 | 116.49 | 87.02 | 65.46 | 49.56 | 37.77 | 28.96 | 22.34 | 17.34 | 13.53 | 10.61 | 8.36 | 18 |
| 19 | 113.71 | 85.41 | 64.59 | 49.16 | 37.67 | 29.03 | 22.52 | 17.56 | 13.77 | 10.86 | 8.60 | 19 |
| 20 | 111.01 | 83.83 | 63.74 | 48.78 | 37.57 | 29.11 | 22.69 | 17.79 | 14.02 | 11.11 | 8.85 | 20 |
| 21 | 108.37 | 82.28 | 62.90 | 48.39 | 37.46 | 29.18 | 22.87 | 18.02 | 14.28 | 11.37 | 9.10 | 21 |
| 22 | 105.78 | 80.76 | 62.06 | 48.00 | 37.36 | 29.26 | 23.04 | 18.25 | 14.53 | 11.63 | 9.36 | 22 |
| 23 | 103.25 | 79.25 | 61.24 | 47.62 | 37.26 | 29.33 | 23.22 | 18.49 | 14.80 | 11.90 | 9.62 | 23 |
| 24 | 100.79 | 77.78 | 60.42 | 47.24 | 37.16 | 29.40 | 23.40 | 18.73 | 15.06 | 12.18 | 9.90 | 24 |
| 25 | 98.39 | 76.35 | 59.63 | 46.86 | 37.06 | 29.48 | 23.58 | 18.97 | 15.34 | 12.46 | 10.18 | 25 |
| 26 | 96.06 | 74.95 | 58.85 | 46.50 | 36.96 | 29.56 | 23.77 | 19.22 | 15.62 | 12.76 | 10.47 | 26 |
| 27 | 93.80 | 73.57 | 58.08 | 46.14 | 36.87 | 29.64 | 23.96 | 19.47 | 15.90 | 13.06 | 10.77 | 27 |
| 28 | 91.57 | 72.22 | 57.32 | 45.77 | 36.77 | 29.71 | 24.14 | 19.72 | 16.19 | 13.36 | 11.08 | 28 |
| 29 | 89.39 | 70.88 | 56.56 | 45.41 | 36.68 | 29.79 | 24.33 | 19.98 | 16.49 | 13.67 | 11.39 | 29 |
| 30 | 87.27 | 69.58 | 55.82 | 45.06 | 36.58 | 29.87 | 24.52 | 20.24 | 16.79 | 13.99 | 11.72 | 30 |
| 31 | 85.23 | 68.32 | 55.10 | 44.71 | 36.50 | 29.96 | 24.72 | 20.51 | 17.10 | 14.33 | 12.05 | 31 |
| 32 | 83.24 | 67.09 | 54.41 | 44.38 | 36.42 | 30.05 | 24.93 | 20.79 | 17.42 | 14.67 | 12.40 | 32 |
| 33 | 81.32 | 65.90 | 53.73 | 44.06 | 36.35 | 30.15 | 25.14 | 21.07 | 17.75 | 15.02 | 12.77 | 33 |
| 34 | 79.44 | 64.72 | 53.05 | 43.74 | 36.27 | 30.24 | 25.35 | 21.36 | 18.08 | 15.38 | 13.14 | 34 |
| 35 | 77.60 | 63.57 | 52.39 | 43.42 | 36.20 | 30.34 | 25.56 | 21.65 | 18.42 | 15.75 | 13.52 | 35 |
| 36 | 75.82 | 62.44 | 51.74 | 43.11 | 36.13 | 30.44 | 25.78 | 21.95 | 18.77 | 16.13 | 13.92 | 36 |
| 37 | 74.08 | 61.34 | 51.09 | 42.81 | 36.06 | 30.54 | 26.00 | 22.25 | 19.12 | 16.51 | 14.32 | 37 |
| 38 | 72.37 | 60.25 | 50.46 | 42.50 | 35.99 | 30.64 | 26.22 | 22.55 | 19.49 | 16.91 | 14.74 | 38 |
| 39 | 70.70 | 59.18 | 49.83 | 42.19 | 35.92 | 30.74 | 26.45 | 22.86 | 19.85 | 17.32 | 15.17 | 39 |
| 40 | 69.07 | 58.13 | 49.21 | 41.89 | 35.85 | 30.85 | 26.67 | 23.18 | 20.23 | 17.74 | 15.62 | 40 |
| 41 | 67.49 | 57.11 | 48.61 | 41.60 | 35.79 | 30.96 | 26.91 | 23.50 | 20.62 | 18.17 | 16.08 | 41 |
| 42 | 65.95 | 56.11 | 48.01 | 41.31 | 35.73 | 31.07 | 27.14 | 23.83 | 21.01 | 18.61 | 16.55 | 42 |
| 43 | 64.46 | 55.14 | 47.44 | 41.03 | 35.68 | 31.18 | 27.39 | 24.16 | 21.42 | 19.07 | 17.04 | 43 |
| 44 | 63.01 | 54.19 | 46.87 | 40.76 | 35.63 | 31.30 | 27.63 | 24.51 | 21.84 | 19.54 | 17.55 | 44 |
| 45 | 61.60 | 53.26 | 46.32 | 40.49 | 35.58 | 31.42 | 27.89 | 24.86 | 22.26 | 20.02 | 18.07 | 45 |
| 46 | 60.22 | 52.36 | 45.77 | 40.23 | 35.54 | 31.55 | 28.14 | 25.22 | 22.70 | 20.52 | 18.62 | 46 |
| 47 | 58.88 | 51.47 | 45.24 | 39.98 | 35.50 | 31.68 | 28.41 | 25.59 | 23.15 | 21.03 | 19.18 | 47 |
| 48 | 57.59 | 50.62 | 44.73 | 39.73 | 35.47 | 31.83 | 28.69 | 25.97 | 23.62 | 21.56 | 19.76 | 48 |
| 49 | 56.34 | 49.79 | 44.23 | 39.50 | 35.46 | 31.98 | 28.97 | 26.37 | 24.10 | 22.11 | 20.37 | 49 |
| 50 | 55.14 | 48.99 | 43.76 | 39.29 | 35.45 | 32.14 | 29.27 | 26.78 | 24.60 | 22.69 | 21.01 | 50 |

Table 16    Multipliers for loss of pension commencing age 50 (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 199.59 | 134.37 | 91.19 | 62.37 | 42.98 | 29.85 | 20.87 | 14.70 | 10.42 | 7.43 | 5.33 | 0 |
| 1 | 195.74 | 132.49 | 90.40 | 62.16 | 43.07 | 30.06 | 21.13 | 14.95 | 10.65 | 7.64 | 5.51 | 1 |
| 2 | 191.18 | 130.11 | 89.25 | 61.69 | 42.97 | 30.15 | 21.30 | 15.16 | 10.85 | 7.82 | 5.67 | 2 |
| 3 | 186.71 | 127.75 | 88.10 | 61.23 | 42.87 | 30.24 | 21.48 | 15.36 | 11.05 | 8.00 | 5.83 | 3 |
| 4 | 182.34 | 125.44 | 86.97 | 60.76 | 42.77 | 30.32 | 21.65 | 15.56 | 11.26 | 8.19 | 6.00 | 4 |
| 5 | 178.06 | 123.16 | 85.85 | 60.30 | 42.67 | 30.41 | 21.82 | 15.77 | 11.46 | 8.39 | 6.17 | 5 |
| 6 | 173.88 | 120.92 | 84.74 | 59.84 | 42.56 | 30.49 | 22.00 | 15.97 | 11.67 | 8.58 | 6.35 | 6 |
| 7 | 169.79 | 118.72 | 83.65 | 59.38 | 42.46 | 30.58 | 22.17 | 16.18 | 11.89 | 8.78 | 6.53 | 7 |
| 8 | 165.80 | 116.55 | 82.56 | 58.92 | 42.36 | 30.66 | 22.35 | 16.40 | 12.10 | 8.99 | 6.72 | 8 |
| 9 | 161.89 | 114.43 | 81.49 | 58.47 | 42.25 | 30.75 | 22.53 | 16.61 | 12.33 | 9.20 | 6.91 | 9 |
| 10 | 158.08 | 112.34 | 80.43 | 58.02 | 42.15 | 30.83 | 22.70 | 16.83 | 12.55 | 9.42 | 7.11 | 10 |
| 11 | 154.36 | 110.29 | 79.39 | 57.57 | 42.04 | 30.92 | 22.89 | 17.05 | 12.78 | 9.64 | 7.31 | 11 |
| 12 | 150.73 | 108.28 | 78.36 | 57.12 | 41.94 | 31.00 | 23.07 | 17.27 | 13.01 | 9.86 | 7.52 | 12 |
| 13 | 147.17 | 106.30 | 77.34 | 56.68 | 41.83 | 31.08 | 23.25 | 17.50 | 13.25 | 10.09 | 7.73 | 13 |
| 14 | 143.71 | 104.36 | 76.34 | 56.24 | 41.73 | 31.17 | 23.43 | 17.73 | 13.49 | 10.33 | 7.95 | 14 |
| 15 | 140.33 | 102.45 | 75.35 | 55.81 | 41.62 | 31.25 | 23.62 | 17.96 | 13.74 | 10.57 | 8.18 | 15 |
| 16 | 137.02 | 100.58 | 74.37 | 55.38 | 41.52 | 31.34 | 23.81 | 18.20 | 13.99 | 10.82 | 8.41 | 16 |
| 17 | 133.80 | 98.75 | 73.41 | 54.95 | 41.42 | 31.42 | 24.00 | 18.44 | 14.25 | 11.07 | 8.65 | 17 |
| 18 | 130.66 | 96.95 | 72.46 | 54.53 | 41.32 | 31.51 | 24.19 | 18.68 | 14.51 | 11.33 | 8.90 | 18 |
| 19 | 127.60 | 95.19 | 71.52 | 54.11 | 41.22 | 31.60 | 24.38 | 18.92 | 14.78 | 11.60 | 9.16 | 19 |
| 20 | 124.61 | 93.47 | 70.61 | 53.70 | 41.12 | 31.69 | 24.58 | 19.18 | 15.05 | 11.87 | 9.42 | 20 |
| 21 | 121.70 | 91.78 | 69.70 | 53.30 | 41.03 | 31.78 | 24.78 | 19.43 | 15.32 | 12.15 | 9.69 | 21 |
| 22 | 118.85 | 90.11 | 68.80 | 52.89 | 40.93 | 31.87 | 24.97 | 19.69 | 15.61 | 12.44 | 9.97 | 22 |
| 23 | 116.05 | 88.47 | 67.91 | 52.48 | 40.82 | 31.96 | 25.17 | 19.94 | 15.89 | 12.73 | 10.25 | 23 |
| 24 | 113.32 | 86.85 | 67.03 | 52.08 | 40.72 | 32.05 | 25.37 | 20.21 | 16.18 | 13.03 | 10.54 | 24 |
| 25 | 110.66 | 85.27 | 66.16 | 51.68 | 40.62 | 32.14 | 25.57 | 20.47 | 16.48 | 13.33 | 10.85 | 25 |
| 26 | 108.06 | 83.73 | 65.31 | 51.28 | 40.53 | 32.23 | 25.78 | 20.74 | 16.78 | 13.65 | 11.16 | 26 |
| 27 | 105.53 | 82.21 | 64.47 | 50.89 | 40.43 | 32.32 | 25.99 | 21.02 | 17.09 | 13.97 | 11.48 | 27 |
| 28 | 103.06 | 80.72 | 63.64 | 50.50 | 40.33 | 32.41 | 26.19 | 21.29 | 17.40 | 14.30 | 11.81 | 28 |
| 29 | 100.65 | 79.26 | 62.82 | 50.12 | 40.24 | 32.50 | 26.41 | 21.58 | 17.72 | 14.64 | 12.14 | 29 |
| 30 | 98.30 | 77.82 | 62.02 | 49.74 | 40.15 | 32.60 | 26.62 | 21.86 | 18.05 | 14.98 | 12.49 | 30 |
| 31 | 96.01 | 76.42 | 61.23 | 49.37 | 40.06 | 32.69 | 26.84 | 22.15 | 18.38 | 15.33 | 12.85 | 31 |
| 32 | 93.78 | 75.05 | 60.46 | 49.00 | 39.97 | 32.79 | 27.06 | 22.45 | 18.73 | 15.70 | 13.22 | 32 |
| 33 | 91.61 | 73.71 | 59.69 | 48.64 | 39.88 | 32.89 | 27.28 | 22.75 | 19.07 | 16.07 | 13.61 | 33 |
| 34 | 89.48 | 72.38 | 58.93 | 48.28 | 39.79 | 32.99 | 27.50 | 23.05 | 19.43 | 16.45 | 14.00 | 34 |
| 35 | 87.39 | 71.08 | 58.18 | 47.92 | 39.70 | 33.09 | 27.73 | 23.36 | 19.79 | 16.84 | 14.40 | 35 |
| 36 | 85.37 | 69.81 | 57.45 | 47.57 | 39.62 | 33.19 | 27.96 | 23.68 | 20.16 | 17.24 | 14.82 | 36 |
| 37 | 83.40 | 68.57 | 56.73 | 47.22 | 39.54 | 33.29 | 28.19 | 24.00 | 20.53 | 17.65 | 15.25 | 37 |
| 38 | 81.47 | 67.35 | 56.02 | 46.87 | 39.45 | 33.40 | 28.43 | 24.32 | 20.92 | 18.07 | 15.69 | 38 |
| 39 | 79.59 | 66.15 | 55.31 | 46.53 | 39.37 | 33.50 | 28.66 | 24.65 | 21.31 | 18.50 | 16.14 | 39 |
| 40 | 77.75 | 64.97 | 54.62 | 46.19 | 39.29 | 33.61 | 28.90 | 24.99 | 21.71 | 18.95 | 16.61 | 40 |
| 41 | 75.96 | 63.82 | 53.94 | 45.86 | 39.22 | 33.72 | 29.15 | 25.33 | 22.11 | 19.40 | 17.10 | 41 |
| 42 | 74.22 | 62.69 | 53.27 | 45.54 | 39.14 | 33.83 | 29.40 | 25.67 | 22.53 | 19.87 | 17.60 | 42 |
| 43 | 72.53 | 61.59 | 52.62 | 45.22 | 39.07 | 33.95 | 29.65 | 26.03 | 22.96 | 20.35 | 18.11 | 43 |
| 44 | 70.88 | 60.52 | 51.98 | 44.90 | 39.01 | 34.07 | 29.91 | 26.39 | 23.40 | 20.84 | 18.64 | 44 |
| 45 | 69.28 | 59.47 | 51.35 | 44.60 | 38.94 | 34.19 | 30.17 | 26.76 | 23.85 | 21.35 | 19.19 | 45 |
| 46 | 67.72 | 58.45 | 50.74 | 44.30 | 38.89 | 34.32 | 30.44 | 27.14 | 24.31 | 21.87 | 19.76 | 46 |
| 47 | 66.20 | 57.45 | 50.14 | 44.01 | 38.83 | 34.45 | 30.72 | 27.53 | 24.78 | 22.41 | 20.35 | 47 |
| 48 | 64.73 | 56.48 | 49.56 | 43.73 | 38.79 | 34.59 | 31.01 | 27.93 | 25.27 | 22.97 | 20.96 | 48 |
| 49 | 63.31 | 55.54 | 48.99 | 43.46 | 38.76 | 34.74 | 31.30 | 28.34 | 25.77 | 23.54 | 21.59 | 49 |
| 50 | 61.93 | 54.62 | 48.44 | 43.20 | 38.73 | 34.90 | 31.61 | 28.76 | 26.29 | 24.14 | 22.25 | 50 |

**217**

Table 17  Multipliers for loss of pension commencing age 55 (males)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | –2.0% | –1.5% | –1.0% | –0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 165.74 | 111.07 | 74.94 | 50.90 | 34.80 | 23.94 | 16.57 | 11.54 | 8.08 | 5.69 | 4.02 | 0 |
| 1 | 162.56 | 109.52 | 74.30 | 50.73 | 34.87 | 24.11 | 16.78 | 11.74 | 8.26 | 5.85 | 4.16 | 1 |
| 2 | 158.64 | 107.46 | 73.29 | 50.31 | 34.76 | 24.17 | 16.90 | 11.89 | 8.41 | 5.98 | 4.27 | 2 |
| 3 | 154.79 | 105.43 | 72.29 | 49.89 | 34.66 | 24.22 | 17.02 | 12.04 | 8.56 | 6.12 | 4.39 | 3 |
| 4 | 151.03 | 103.43 | 71.30 | 49.47 | 34.54 | 24.27 | 17.15 | 12.19 | 8.71 | 6.26 | 4.52 | 4 |
| 5 | 147.35 | 101.46 | 70.32 | 49.05 | 34.43 | 24.31 | 17.27 | 12.34 | 8.86 | 6.40 | 4.64 | 5 |
| 6 | 143.76 | 99.52 | 69.35 | 48.63 | 34.32 | 24.36 | 17.39 | 12.49 | 9.02 | 6.54 | 4.77 | 6 |
| 7 | 140.25 | 97.62 | 68.39 | 48.22 | 34.20 | 24.41 | 17.52 | 12.64 | 9.17 | 6.69 | 4.90 | 7 |
| 8 | 136.83 | 95.76 | 67.44 | 47.80 | 34.09 | 24.45 | 17.64 | 12.80 | 9.33 | 6.84 | 5.04 | 8 |
| 9 | 133.48 | 93.92 | 66.51 | 47.39 | 33.97 | 24.50 | 17.77 | 12.96 | 9.50 | 7.00 | 5.18 | 9 |
| 10 | 130.21 | 92.11 | 65.58 | 46.98 | 33.86 | 24.54 | 17.89 | 13.11 | 9.66 | 7.15 | 5.32 | 10 |
| 11 | 127.02 | 90.34 | 64.67 | 46.57 | 33.74 | 24.59 | 18.02 | 13.27 | 9.83 | 7.32 | 5.47 | 11 |
| 12 | 123.91 | 88.61 | 63.77 | 46.17 | 33.63 | 24.63 | 18.14 | 13.44 | 10.00 | 7.48 | 5.62 | 12 |
| 13 | 120.87 | 86.91 | 62.88 | 45.77 | 33.51 | 24.68 | 18.27 | 13.60 | 10.18 | 7.65 | 5.78 | 13 |
| 14 | 117.91 | 85.24 | 62.00 | 45.37 | 33.40 | 24.72 | 18.40 | 13.77 | 10.35 | 7.82 | 5.94 | 14 |
| 15 | 115.03 | 83.61 | 61.14 | 44.98 | 33.29 | 24.77 | 18.53 | 13.94 | 10.53 | 8.00 | 6.10 | 15 |
| 16 | 112.22 | 82.01 | 60.30 | 44.60 | 33.17 | 24.81 | 18.66 | 14.11 | 10.72 | 8.18 | 6.27 | 16 |
| 17 | 109.49 | 80.45 | 59.47 | 44.22 | 33.06 | 24.86 | 18.79 | 14.28 | 10.90 | 8.37 | 6.45 | 17 |
| 18 | 106.83 | 78.92 | 58.65 | 43.84 | 32.96 | 24.91 | 18.93 | 14.46 | 11.10 | 8.56 | 6.63 | 18 |
| 19 | 104.24 | 77.42 | 57.85 | 43.47 | 32.85 | 24.96 | 19.07 | 14.64 | 11.29 | 8.75 | 6.81 | 19 |
| 20 | 101.73 | 75.97 | 57.07 | 43.11 | 32.75 | 25.02 | 19.21 | 14.82 | 11.49 | 8.95 | 7.00 | 20 |
| 21 | 99.28 | 74.54 | 56.29 | 42.76 | 32.65 | 25.07 | 19.35 | 15.01 | 11.70 | 9.16 | 7.20 | 21 |
| 22 | 96.87 | 73.13 | 55.52 | 42.40 | 32.55 | 25.12 | 19.49 | 15.19 | 11.90 | 9.37 | 7.40 | 22 |
| 23 | 94.52 | 71.74 | 54.76 | 42.04 | 32.45 | 25.17 | 19.63 | 15.38 | 12.11 | 9.58 | 7.61 | 23 |
| 24 | 92.23 | 70.38 | 54.02 | 41.69 | 32.34 | 25.23 | 19.77 | 15.58 | 12.33 | 9.80 | 7.82 | 24 |
| 25 | 90.00 | 69.05 | 53.28 | 41.34 | 32.24 | 25.28 | 19.92 | 15.77 | 12.54 | 10.02 | 8.04 | 25 |
| 26 | 87.84 | 67.76 | 52.56 | 41.00 | 32.15 | 25.34 | 20.07 | 15.97 | 12.77 | 10.25 | 8.27 | 26 |
| 27 | 85.73 | 66.49 | 51.86 | 40.67 | 32.06 | 25.40 | 20.22 | 16.17 | 13.00 | 10.49 | 8.50 | 27 |
| 28 | 83.67 | 65.24 | 51.16 | 40.33 | 31.96 | 25.45 | 20.37 | 16.38 | 13.23 | 10.73 | 8.74 | 28 |
| 29 | 81.64 | 64.01 | 50.46 | 39.99 | 31.86 | 25.51 | 20.52 | 16.58 | 13.46 | 10.97 | 8.98 | 29 |
| 30 | 79.68 | 62.81 | 49.78 | 39.66 | 31.76 | 25.56 | 20.67 | 16.79 | 13.70 | 11.23 | 9.24 | 30 |
| 31 | 77.78 | 61.65 | 49.12 | 39.35 | 31.68 | 25.63 | 20.83 | 17.01 | 13.95 | 11.49 | 9.50 | 31 |
| 32 | 75.95 | 60.52 | 48.48 | 39.04 | 31.60 | 25.69 | 20.99 | 17.23 | 14.20 | 11.76 | 9.77 | 32 |
| 33 | 74.17 | 59.42 | 47.86 | 38.74 | 31.52 | 25.77 | 21.16 | 17.46 | 14.46 | 12.03 | 10.05 | 33 |
| 34 | 72.42 | 58.34 | 47.24 | 38.44 | 31.44 | 25.84 | 21.33 | 17.69 | 14.73 | 12.32 | 10.34 | 34 |
| 35 | 70.72 | 57.27 | 46.62 | 38.15 | 31.36 | 25.91 | 21.50 | 17.92 | 15.00 | 12.61 | 10.64 | 35 |
| 36 | 69.07 | 56.24 | 46.03 | 37.86 | 31.29 | 25.98 | 21.68 | 18.16 | 15.28 | 12.90 | 10.94 | 36 |
| 37 | 67.45 | 55.22 | 45.44 | 37.57 | 31.22 | 26.06 | 21.85 | 18.40 | 15.56 | 13.21 | 11.26 | 37 |
| 38 | 65.87 | 54.22 | 44.85 | 37.29 | 31.14 | 26.13 | 22.03 | 18.65 | 15.85 | 13.52 | 11.58 | 38 |
| 39 | 64.33 | 53.23 | 44.27 | 37.00 | 31.07 | 26.21 | 22.21 | 18.89 | 16.14 | 13.84 | 11.91 | 39 |
| 40 | 62.82 | 52.27 | 43.70 | 36.72 | 31.00 | 26.28 | 22.38 | 19.14 | 16.44 | 14.17 | 12.26 | 40 |
| 41 | 61.36 | 51.33 | 43.15 | 36.45 | 30.93 | 26.36 | 22.57 | 19.40 | 16.74 | 14.50 | 12.61 | 41 |
| 42 | 59.93 | 50.41 | 42.60 | 36.18 | 30.86 | 26.45 | 22.76 | 19.66 | 17.06 | 14.85 | 12.98 | 42 |
| 43 | 58.55 | 49.51 | 42.07 | 35.92 | 30.80 | 26.53 | 22.95 | 19.93 | 17.38 | 15.21 | 13.36 | 43 |
| 44 | 57.21 | 48.64 | 41.55 | 35.66 | 30.74 | 26.62 | 23.15 | 20.21 | 17.71 | 15.57 | 13.75 | 44 |
| 45 | 55.90 | 47.78 | 41.04 | 35.41 | 30.69 | 26.71 | 23.35 | 20.49 | 18.04 | 15.95 | 14.15 | 45 |
| 46 | 54.63 | 46.95 | 40.54 | 35.16 | 30.64 | 26.81 | 23.55 | 20.77 | 18.39 | 16.34 | 14.57 | 46 |
| 47 | 53.39 | 46.14 | 40.05 | 34.93 | 30.59 | 26.91 | 23.76 | 21.06 | 18.74 | 16.74 | 15.00 | 47 |
| 48 | 52.20 | 45.35 | 39.58 | 34.70 | 30.55 | 27.01 | 23.98 | 21.37 | 19.11 | 17.15 | 15.45 | 48 |
| 49 | 51.04 | 44.58 | 39.12 | 34.48 | 30.52 | 27.12 | 24.20 | 21.68 | 19.49 | 17.58 | 15.92 | 49 |
| 50 | 49.93 | 43.85 | 38.68 | 34.27 | 30.50 | 27.25 | 24.44 | 22.00 | 19.88 | 18.03 | 16.40 | 50 |
| 51 | 48.86 | 43.14 | 38.26 | 34.08 | 30.49 | 27.38 | 24.69 | 22.34 | 20.29 | 18.49 | 16.91 | 51 |
| 52 | 47.83 | 42.46 | 37.86 | 33.91 | 30.49 | 27.53 | 24.95 | 22.69 | 20.72 | 18.98 | 17.44 | 52 |
| 53 | 46.84 | 41.81 | 37.48 | 33.74 | 30.50 | 27.68 | 25.22 | 23.06 | 21.16 | 19.48 | 17.99 | 53 |
| 54 | 45.90 | 41.19 | 37.12 | 33.60 | 30.53 | 27.86 | 25.51 | 23.44 | 21.62 | 20.01 | 18.57 | 54 |
| 55 | 44.99 | 40.60 | 36.79 | 33.47 | 30.58 | 28.04 | 25.81 | 23.85 | 22.11 | 20.56 | 19.18 | 55 |

Table 18    Multipliers for loss of pension commencing age 55 (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 185.47 | 123.56 | 82.90 | 56.01 | 38.10 | 26.08 | 17.97 | 12.46 | 8.69 | 6.09 | 4.30 | 0 |
| 1 | 181.85 | 121.80 | 82.16 | 55.81 | 38.16 | 26.26 | 18.19 | 12.68 | 8.88 | 6.26 | 4.44 | 1 |
| 2 | 177.57 | 119.58 | 81.09 | 55.37 | 38.06 | 26.33 | 18.33 | 12.84 | 9.05 | 6.41 | 4.57 | 2 |
| 3 | 173.37 | 117.58 | 80.03 | 54.94 | 37.96 | 26.40 | 18.48 | 13.01 | 9.21 | 6.56 | 4.69 | 3 |
| 4 | 169.26 | 115.23 | 78.98 | 54.51 | 37.86 | 26.47 | 18.62 | 13.18 | 9.38 | 6.71 | 4.83 | 4 |
| 5 | 165.25 | 113.10 | 77.94 | 54.08 | 37.76 | 26.54 | 18.76 | 13.35 | 9.55 | 6.87 | 4.97 | 5 |
| 6 | 161.33 | 111.01 | 76.92 | 53.65 | 37.66 | 26.60 | 18.91 | 13.52 | 9.72 | 7.03 | 5.11 | 6 |
| 7 | 157.49 | 108.96 | 75.90 | 53.23 | 37.56 | 26.67 | 19.05 | 13.69 | 9.89 | 7.19 | 5.25 | 7 |
| 8 | 153.74 | 106.95 | 74.89 | 52.79 | 37.45 | 26.73 | 19.20 | 13.87 | 10.07 | 7.36 | 5.40 | 8 |
| 9 | 150.08 | 104.96 | 73.90 | 52.37 | 37.35 | 26.80 | 19.35 | 14.04 | 10.25 | 7.53 | 5.55 | 9 |
| 10 | 146.51 | 103.02 | 72.92 | 51.95 | 37.24 | 26.86 | 19.49 | 14.22 | 10.44 | 7.70 | 5.71 | 10 |
| 11 | 143.02 | 101.11 | 71.95 | 51.53 | 37.14 | 26.93 | 19.64 | 14.41 | 10.63 | 7.88 | 5.87 | 11 |
| 12 | 139.61 | 99.24 | 71.00 | 51.12 | 37.04 | 26.99 | 19.79 | 14.59 | 10.82 | 8.06 | 6.04 | 12 |
| 13 | 136.29 | 97.39 | 70.05 | 50.71 | 36.93 | 27.06 | 19.94 | 14.78 | 11.01 | 8.25 | 6.21 | 13 |
| 14 | 133.04 | 95.59 | 69.12 | 50.30 | 36.83 | 27.12 | 20.09 | 14.97 | 11.21 | 8.44 | 6.38 | 14 |
| 15 | 129.87 | 93.82 | 68.21 | 49.90 | 36.72 | 27.19 | 20.25 | 15.16 | 11.41 | 8.63 | 6.56 | 15 |
| 16 | 126.78 | 92.08 | 67.30 | 49.50 | 36.62 | 27.26 | 20.40 | 15.35 | 11.61 | 8.83 | 6.75 | 16 |
| 17 | 123.76 | 90.37 | 66.41 | 49.10 | 36.52 | 27.32 | 20.55 | 15.55 | 11.82 | 9.03 | 6.94 | 17 |
| 18 | 120.82 | 88.70 | 65.53 | 48.71 | 36.42 | 27.39 | 20.71 | 15.75 | 12.03 | 9.24 | 7.13 | 18 |
| 19 | 117.96 | 87.07 | 64.67 | 48.32 | 36.32 | 27.46 | 20.87 | 15.95 | 12.25 | 9.46 | 7.34 | 19 |
| 20 | 115.17 | 85.47 | 63.82 | 47.94 | 36.23 | 27.53 | 21.03 | 16.16 | 12.47 | 9.68 | 7.54 | 20 |
| 21 | 112.45 | 83.90 | 62.98 | 47.56 | 36.13 | 27.60 | 21.20 | 16.37 | 12.70 | 9.90 | 7.76 | 21 |
| 22 | 109.78 | 82.35 | 62.15 | 47.19 | 36.03 | 27.67 | 21.36 | 16.58 | 12.93 | 10.13 | 7.98 | 22 |
| 23 | 107.16 | 80.82 | 61.33 | 46.81 | 35.93 | 27.73 | 21.52 | 16.79 | 13.16 | 10.37 | 8.20 | 23 |
| 24 | 104.61 | 79.32 | 60.51 | 46.43 | 35.83 | 27.80 | 21.68 | 17.00 | 13.40 | 10.61 | 8.43 | 24 |
| 25 | 102.12 | 77.86 | 59.71 | 46.06 | 35.73 | 27.87 | 21.85 | 17.22 | 13.64 | 10.85 | 8.67 | 25 |
| 26 | 99.70 | 76.42 | 58.92 | 45.69 | 35.63 | 27.94 | 22.02 | 17.44 | 13.88 | 11.10 | 8.92 | 26 |
| 27 | 97.34 | 75.01 | 58.15 | 45.33 | 35.54 | 28.01 | 22.19 | 17.67 | 14.13 | 11.36 | 9.17 | 27 |
| 28 | 95.02 | 73.63 | 57.38 | 44.97 | 35.44 | 28.08 | 22.36 | 17.89 | 14.39 | 11.62 | 9.43 | 28 |
| 29 | 92.77 | 72.27 | 56.62 | 44.61 | 35.34 | 28.15 | 22.53 | 18.12 | 14.65 | 11.89 | 9.70 | 29 |
| 30 | 90.58 | 70.94 | 55.88 | 44.26 | 35.25 | 28.22 | 22.71 | 18.36 | 14.91 | 12.17 | 9.97 | 30 |
| 31 | 88.45 | 69.65 | 55.15 | 43.92 | 35.16 | 28.29 | 22.88 | 18.60 | 15.18 | 12.45 | 10.26 | 31 |
| 32 | 86.37 | 68.38 | 54.44 | 43.58 | 35.07 | 28.37 | 23.06 | 18.84 | 15.46 | 12.74 | 10.55 | 32 |
| 33 | 84.34 | 67.13 | 53.73 | 43.24 | 34.98 | 28.45 | 23.24 | 19.09 | 15.74 | 13.04 | 10.85 | 33 |
| 34 | 82.35 | 65.90 | 53.03 | 42.90 | 34.89 | 28.52 | 23.43 | 19.33 | 16.03 | 13.35 | 11.16 | 34 |
| 35 | 80.41 | 64.70 | 52.34 | 42.57 | 34.80 | 28.60 | 23.61 | 19.59 | 16.32 | 13.66 | 11.48 | 35 |
| 36 | 78.53 | 63.52 | 51.66 | 42.24 | 34.72 | 28.67 | 23.80 | 19.84 | 16.62 | 13.98 | 11.80 | 36 |
| 37 | 76.69 | 62.37 | 51.00 | 41.92 | 34.63 | 28.75 | 23.99 | 20.10 | 16.92 | 14.30 | 12.14 | 37 |
| 38 | 74.89 | 61.24 | 50.34 | 41.60 | 34.55 | 28.83 | 24.18 | 20.37 | 17.23 | 14.64 | 12.49 | 38 |
| 39 | 73.14 | 60.13 | 49.69 | 41.28 | 34.46 | 28.91 | 24.37 | 20.64 | 17.55 | 14.98 | 12.85 | 39 |
| 40 | 71.43 | 59.04 | 49.05 | 40.97 | 34.38 | 29.00 | 24.57 | 20.91 | 17.87 | 15.34 | 13.22 | 40 |
| 41 | 69.76 | 57.97 | 48.43 | 40.66 | 34.30 | 29.08 | 24.77 | 21.19 | 18.20 | 15.70 | 13.60 | 41 |
| 42 | 68.14 | 56.93 | 47.81 | 40.35 | 34.23 | 29.17 | 24.97 | 21.47 | 18.54 | 16.07 | 13.99 | 42 |
| 43 | 66.56 | 55.91 | 47.21 | 40.05 | 34.15 | 29.25 | 25.17 | 21.76 | 18.88 | 16.45 | 14.39 | 43 |
| 44 | 65.03 | 54.92 | 46.62 | 39.76 | 34.08 | 29.35 | 25.38 | 22.05 | 19.23 | 16.84 | 14.81 | 44 |
| 45 | 63.54 | 53.95 | 46.04 | 39.48 | 34.02 | 29.44 | 25.60 | 22.35 | 19.60 | 17.25 | 15.24 | 45 |
| 46 | 62.09 | 53.00 | 45.47 | 39.20 | 33.95 | 29.54 | 25.82 | 22.66 | 19.97 | 17.66 | 15.68 | 46 |
| 47 | 60.68 | 52.07 | 44.91 | 38.93 | 33.89 | 29.64 | 26.04 | 22.97 | 20.35 | 18.09 | 16.14 | 47 |
| 48 | 59.31 | 51.18 | 44.38 | 38.66 | 33.84 | 29.75 | 26.27 | 23.30 | 20.74 | 18.53 | 16.62 | 48 |
| 49 | 57.99 | 50.31 | 43.85 | 38.41 | 33.80 | 29.87 | 26.51 | 23.63 | 21.14 | 18.99 | 17.12 | 49 |
| 50 | 56.70 | 49.46 | 43.35 | 38.17 | 33.76 | 29.99 | 26.76 | 23.97 | 21.56 | 19.46 | 17.63 | 50 |
| 51 | 55.46 | 48.63 | 42.85 | 37.93 | 33.73 | 30.12 | 27.01 | 24.32 | 21.99 | 19.95 | 18.16 | 51 |
| 52 | 54.25 | 47.83 | 42.37 | 37.70 | 33.70 | 30.25 | 27.27 | 24.68 | 22.43 | 20.45 | 18.71 | 52 |
| 53 | 53.08 | 47.05 | 41.90 | 37.49 | 33.68 | 30.40 | 27.54 | 25.06 | 22.88 | 20.97 | 19.29 | 53 |
| 54 | 51.95 | 46.30 | 41.45 | 37.28 | 33.68 | 30.55 | 27.83 | 25.44 | 23.35 | 21.51 | 19.88 | 54 |
| 55 | 50.86 | 45.57 | 41.02 | 37.09 | 33.68 | 30.71 | 28.12 | 25.84 | 23.84 | 22.07 | 20.51 | 55 |

Table 19    Multipliers for loss of pension commencing age 60 (males)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 150.59 | 99.76 | 66.49 | 44.58 | 30.06 | 20.38 | 13.89 | 9.52 | 6.56 | 4.54 | 3.16 | 0 |
| 1 | 147.63 | 98.33 | 65.89 | 44.41 | 30.10 | 20.52 | 14.06 | 9.69 | 6.70 | 4.66 | 3.26 | 1 |
| 2 | 144.02 | 96.44 | 64.97 | 44.02 | 30.00 | 20.55 | 14.16 | 9.80 | 6.82 | 4.77 | 3.35 | 2 |
| 3 | 140.47 | 94.58 | 64.06 | 43.63 | 29.89 | 20.59 | 14.26 | 9.92 | 6.94 | 4.88 | 3.44 | 3 |
| 4 | 137.00 | 92.74 | 63.15 | 43.25 | 29.78 | 20.62 | 14.35 | 10.04 | 7.06 | 4.98 | 3.54 | 4 |
| 5 | 133.61 | 90.93 | 62.25 | 42.86 | 29.67 | 20.65 | 14.45 | 10.16 | 7.18 | 5.10 | 3.63 | 5 |
| 6 | 130.29 | 89.16 | 61.36 | 42.47 | 29.56 | 20.68 | 14.54 | 10.28 | 7.30 | 5.21 | 3.73 | 6 |
| 7 | 127.06 | 87.42 | 60.49 | 42.09 | 29.45 | 20.71 | 14.64 | 10.40 | 7.42 | 5.32 | 3.83 | 7 |
| 8 | 123.91 | 85.71 | 59.63 | 41.71 | 29.34 | 20.74 | 14.74 | 10.52 | 7.55 | 5.44 | 3.94 | 8 |
| 9 | 120.82 | 84.03 | 58.77 | 41.33 | 29.22 | 20.77 | 14.84 | 10.65 | 7.68 | 5.56 | 4.05 | 9 |
| 10 | 117.81 | 82.38 | 57.93 | 40.95 | 29.11 | 20.80 | 14.93 | 10.77 | 7.81 | 5.68 | 4.16 | 10 |
| 11 | 114.87 | 80.76 | 57.09 | 40.58 | 29.00 | 20.82 | 15.03 | 10.90 | 7.94 | 5.81 | 4.27 | 11 |
| 12 | 112.01 | 79.17 | 56.27 | 40.21 | 28.88 | 20.85 | 15.13 | 11.03 | 8.07 | 5.94 | 4.39 | 12 |
| 13 | 109.22 | 77.62 | 55.46 | 39.84 | 28.77 | 20.88 | 15.23 | 11.16 | 8.21 | 6.07 | 4.50 | 13 |
| 14 | 106.50 | 76.10 | 54.67 | 39.48 | 28.66 | 20.91 | 15.33 | 11.29 | 8.35 | 6.20 | 4.63 | 14 |
| 15 | 103.85 | 74.61 | 53.88 | 39.12 | 28.55 | 20.94 | 15.43 | 11.42 | 8.49 | 6.34 | 4.75 | 15 |
| 16 | 101.27 | 73.15 | 53.11 | 38.77 | 28.44 | 20.96 | 15.53 | 11.55 | 8.63 | 6.48 | 4.88 | 16 |
| 17 | 98.76 | 71.72 | 52.36 | 38.42 | 28.33 | 20.99 | 15.63 | 11.69 | 8.78 | 6.62 | 5.02 | 17 |
| 18 | 96.32 | 70.32 | 51.61 | 38.07 | 28.23 | 21.03 | 15.74 | 11.83 | 8.93 | 6.77 | 5.15 | 18 |
| 19 | 93.94 | 68.96 | 50.88 | 37.74 | 28.12 | 21.06 | 15.84 | 11.97 | 9.08 | 6.92 | 5.30 | 19 |
| 20 | 91.64 | 67.63 | 50.17 | 37.41 | 28.02 | 21.09 | 15.95 | 12.11 | 9.24 | 7.08 | 5.44 | 20 |
| 21 | 89.39 | 66.33 | 49.47 | 37.08 | 27.92 | 21.13 | 16.06 | 12.26 | 9.40 | 7.23 | 5.59 | 21 |
| 22 | 87.18 | 65.04 | 48.77 | 36.75 | 27.82 | 21.16 | 16.17 | 12.41 | 9.56 | 7.40 | 5.74 | 22 |
| 23 | 85.02 | 63.77 | 48.08 | 36.42 | 27.72 | 21.19 | 16.28 | 12.55 | 9.72 | 7.56 | 5.90 | 23 |
| 24 | 82.92 | 62.54 | 47.40 | 36.09 | 27.62 | 21.23 | 16.39 | 12.70 | 9.89 | 7.73 | 6.06 | 24 |
| 25 | 80.88 | 61.33 | 46.73 | 35.78 | 27.52 | 21.26 | 16.50 | 12.86 | 10.06 | 7.90 | 6.23 | 25 |
| 26 | 78.91 | 60.15 | 46.08 | 35.46 | 27.42 | 21.30 | 16.61 | 13.01 | 10.23 | 8.08 | 6.40 | 26 |
| 27 | 76.98 | 59.00 | 45.44 | 35.16 | 27.33 | 21.34 | 16.73 | 13.17 | 10.41 | 8.26 | 6.58 | 27 |
| 28 | 75.09 | 57.86 | 44.80 | 34.85 | 27.23 | 21.37 | 16.84 | 13.33 | 10.59 | 8.45 | 6.76 | 28 |
| 29 | 73.23 | 56.74 | 44.17 | 34.54 | 27.13 | 21.41 | 16.96 | 13.49 | 10.77 | 8.63 | 6.95 | 29 |
| 30 | 71.44 | 55.65 | 43.55 | 34.24 | 27.04 | 21.44 | 17.08 | 13.65 | 10.96 | 8.83 | 7.14 | 30 |
| 31 | 69.70 | 54.59 | 42.95 | 33.95 | 26.95 | 21.48 | 17.20 | 13.82 | 11.15 | 9.03 | 7.34 | 31 |
| 32 | 68.02 | 53.56 | 42.37 | 33.66 | 26.86 | 21.53 | 17.32 | 13.99 | 11.35 | 9.23 | 7.54 | 32 |
| 33 | 66.40 | 52.56 | 41.80 | 33.39 | 26.79 | 21.58 | 17.45 | 14.17 | 11.55 | 9.45 | 7.75 | 33 |
| 34 | 64.81 | 51.58 | 41.24 | 33.12 | 26.71 | 21.63 | 17.58 | 14.35 | 11.76 | 9.66 | 7.97 | 34 |
| 35 | 63.25 | 50.61 | 40.68 | 32.84 | 26.63 | 21.67 | 17.71 | 14.53 | 11.96 | 9.89 | 8.20 | 35 |
| 36 | 61.74 | 49.67 | 40.14 | 32.58 | 26.55 | 21.72 | 17.85 | 14.72 | 12.18 | 10.11 | 8.43 | 36 |
| 37 | 60.27 | 48.75 | 39.60 | 32.31 | 26.47 | 21.78 | 17.98 | 14.90 | 12.40 | 10.35 | 8.66 | 37 |
| 38 | 58.83 | 47.84 | 39.07 | 32.05 | 26.40 | 21.83 | 18.12 | 15.09 | 12.62 | 10.58 | 8.91 | 38 |
| 39 | 57.42 | 46.95 | 38.55 | 31.79 | 26.32 | 21.88 | 18.25 | 15.28 | 12.84 | 10.83 | 9.16 | 39 |
| 40 | 56.04 | 46.07 | 38.03 | 31.53 | 26.24 | 21.93 | 18.39 | 15.48 | 13.07 | 11.08 | 9.42 | 40 |
| 41 | 54.71 | 45.22 | 37.53 | 31.28 | 26.17 | 21.98 | 18.53 | 15.68 | 13.31 | 11.33 | 9.68 | 41 |
| 42 | 53.42 | 44.38 | 37.04 | 31.03 | 26.10 | 22.03 | 18.67 | 15.88 | 13.55 | 11.60 | 9.96 | 42 |
| 43 | 52.16 | 43.57 | 36.55 | 30.79 | 26.03 | 22.09 | 18.82 | 16.09 | 13.80 | 11.87 | 10.24 | 43 |
| 44 | 50.93 | 42.78 | 36.08 | 30.55 | 25.97 | 22.15 | 18.97 | 16.30 | 14.05 | 12.15 | 10.54 | 44 |
| 45 | 49.74 | 42.01 | 35.62 | 30.32 | 25.91 | 22.22 | 19.12 | 16.51 | 14.31 | 12.44 | 10.84 | 45 |
| 46 | 48.58 | 41.25 | 35.16 | 30.09 | 25.85 | 22.28 | 19.28 | 16.73 | 14.57 | 12.73 | 11.15 | 46 |
| 47 | 47.46 | 40.51 | 34.72 | 29.87 | 25.79 | 22.35 | 19.44 | 16.96 | 14.84 | 13.05 | 11.48 | 47 |
| 48 | 46.37 | 39.80 | 34.29 | 29.65 | 25.74 | 22.42 | 19.60 | 17.19 | 15.12 | 13.35 | 11.81 | 48 |
| 49 | 45.32 | 39.10 | 33.87 | 29.45 | 25.70 | 22.50 | 19.77 | 17.43 | 15.41 | 13.67 | 12.16 | 49 |
| 50 | 44.30 | 38.43 | 33.47 | 29.26 | 25.66 | 22.59 | 19.95 | 17.68 | 15.71 | 14.01 | 12.52 | 50 |
| 51 | 43.33 | 37.79 | 33.09 | 29.07 | 25.64 | 22.69 | 20.14 | 17.94 | 16.03 | 14.36 | 12.90 | 51 |
| 52 | 42.39 | 37.17 | 32.72 | 28.91 | 25.62 | 22.79 | 20.34 | 18.21 | 16.35 | 14.72 | 13.30 | 52 |
| 53 | 41.49 | 36.58 | 32.37 | 28.75 | 25.62 | 22.91 | 20.55 | 18.49 | 16.69 | 15.11 | 13.71 | 53 |
| 54 | 40.63 | 36.01 | 32.04 | 28.61 | 25.63 | 23.04 | 20.77 | 18.79 | 17.04 | 15.50 | 14.14 | 54 |
| 55 | 39.81 | 35.48 | 31.73 | 28.48 | 25.65 | 23.18 | 21.01 | 19.10 | 17.41 | 15.92 | 14.60 | 55 |
| 56 | 39.03 | 34.97 | 31.45 | 28.37 | 25.69 | 23.31 | 21.26 | 19.43 | 17.80 | 16.36 | 15.07 | 56 |
| 57 | 38.29 | 34.49 | 31.18 | 28.28 | 25.74 | 23.50 | 21.52 | 19.77 | 18.21 | 16.82 | 15.57 | 57 |
| 58 | 37.56 | 34.02 | 30.92 | 28.20 | 25.80 | 23.68 | 21.79 | 20.12 | 18.63 | 17.29 | 16.09 | 58 |
| 59 | 36.86 | 33.56 | 30.67 | 28.12 | 25.86 | 23.86 | 22.07 | 20.49 | 19.06 | 17.79 | 16.64 | 59 |
| 60 | 36.17 | 33.12 | 30.42 | 28.04 | 25.92 | 24.04 | 22.36 | 20.86 | 19.51 | 18.30 | 17.20 | 60 |

Table 20    Multipliers for loss of pension commencing age 60 (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 169.99 | 112.01 | 74.27 | 49.55 | 33.26 | 22.45 | 15.24 | 10.40 | 7.14 | 4.92 | 3.41 | 0 |
| 1 | 166.62 | 110.38 | 73.58 | 49.35 | 33.30 | 22.59 | 15.42 | 10.58 | 7.30 | 5.06 | 3.52 | 1 |
| 2 | 162.64 | 108.33 | 72.60 | 48.95 | 33.20 | 22.65 | 15.53 | 10.71 | 7.43 | 5.17 | 3.62 | 2 |
| 3 | 158.74 | 106.30 | 71.62 | 48.55 | 33.10 | 22.70 | 15.65 | 10.85 | 7.56 | 5.29 | 3.72 | 3 |
| 4 | 154.93 | 104.31 | 70.66 | 48.15 | 33.00 | 22.75 | 15.77 | 10.98 | 7.69 | 5.41 | 3.83 | 4 |
| 5 | 151.21 | 102.36 | 69.71 | 47.75 | 32.90 | 22.80 | 15.88 | 11.12 | 7.83 | 5.54 | 3.93 | 5 |
| 6 | 147.57 | 100.43 | 68.76 | 47.36 | 32.80 | 22.85 | 16.00 | 11.26 | 7.97 | 5.66 | 4.04 | 6 |
| 7 | 144.01 | 98.54 | 67.83 | 46.96 | 32.70 | 22.89 | 16.11 | 11.40 | 8.11 | 5.79 | 4.16 | 7 |
| 8 | 140.54 | 96.68 | 66.91 | 46.57 | 32.60 | 22.94 | 16.23 | 11.54 | 8.25 | 5.92 | 4.27 | 8 |
| 9 | 137.14 | 94.85 | 65.99 | 46.18 | 32.49 | 22.99 | 16.35 | 11.69 | 8.39 | 6.06 | 4.39 | 9 |
| 10 | 133.83 | 93.06 | 65.09 | 45.79 | 32.39 | 23.03 | 16.47 | 11.83 | 8.54 | 6.20 | 4.51 | 10 |
| 11 | 130.60 | 91.31 | 64.21 | 45.41 | 32.29 | 23.08 | 16.59 | 11.98 | 8.69 | 6.34 | 4.64 | 11 |
| 12 | 127.45 | 89.58 | 63.33 | 45.02 | 32.18 | 23.13 | 16.71 | 12.13 | 8.84 | 6.48 | 4.77 | 12 |
| 13 | 124.36 | 87.89 | 62.47 | 44.65 | 32.08 | 23.17 | 16.83 | 12.28 | 9.00 | 6.63 | 4.90 | 13 |
| 14 | 121.36 | 86.23 | 61.62 | 44.27 | 31.98 | 23.22 | 16.95 | 12.43 | 9.16 | 6.78 | 5.04 | 14 |
| 15 | 118.43 | 84.60 | 60.77 | 43.90 | 31.88 | 23.27 | 17.07 | 12.58 | 9.32 | 6.93 | 5.18 | 15 |
| 16 | 115.57 | 83.00 | 59.95 | 43.53 | 31.78 | 23.31 | 17.19 | 12.74 | 9.48 | 7.09 | 5.32 | 16 |
| 17 | 112.78 | 81.44 | 59.13 | 43.16 | 31.67 | 23.36 | 17.32 | 12.90 | 9.65 | 7.25 | 5.47 | 17 |
| 18 | 110.06 | 79.90 | 58.33 | 42.80 | 31.58 | 23.41 | 17.44 | 13.06 | 9.82 | 7.42 | 5.62 | 18 |
| 19 | 107.41 | 78.40 | 57.53 | 42.45 | 31.48 | 23.46 | 17.57 | 13.22 | 9.99 | 7.58 | 5.78 | 19 |
| 20 | 104.83 | 76.93 | 56.76 | 42.10 | 31.38 | 23.51 | 17.70 | 13.38 | 10.17 | 7.76 | 5.94 | 20 |
| 21 | 102.32 | 75.49 | 55.99 | 41.75 | 31.29 | 23.56 | 17.83 | 13.55 | 10.35 | 7.93 | 6.11 | 21 |
| 22 | 99.85 | 74.07 | 55.23 | 41.40 | 31.19 | 23.61 | 17.96 | 13.72 | 10.53 | 8.12 | 6.28 | 22 |
| 23 | 97.44 | 72.67 | 54.48 | 41.05 | 31.09 | 23.66 | 18.09 | 13.89 | 10.71 | 8.30 | 6.45 | 23 |
| 24 | 95.08 | 71.29 | 53.73 | 40.70 | 30.99 | 23.70 | 18.22 | 14.06 | 10.90 | 8.49 | 6.63 | 24 |
| 25 | 92.79 | 69.95 | 53.00 | 40.36 | 30.89 | 23.75 | 18.35 | 14.24 | 11.09 | 8.68 | 6.82 | 25 |
| 26 | 90.55 | 68.63 | 52.28 | 40.03 | 30.79 | 23.80 | 18.48 | 14.41 | 11.29 | 8.88 | 7.01 | 26 |
| 27 | 88.37 | 67.34 | 51.57 | 39.69 | 30.70 | 23.85 | 18.62 | 14.59 | 11.49 | 9.08 | 7.20 | 27 |
| 28 | 86.24 | 66.07 | 50.87 | 39.36 | 30.60 | 23.90 | 18.75 | 14.77 | 11.69 | 9.29 | 7.41 | 28 |
| 29 | 84.17 | 64.83 | 50.18 | 39.03 | 30.51 | 23.95 | 18.89 | 14.96 | 11.90 | 9.50 | 7.61 | 29 |
| 30 | 82.15 | 63.61 | 49.50 | 38.71 | 30.41 | 24.00 | 19.03 | 15.15 | 12.11 | 9.71 | 7.83 | 30 |
| 31 | 80.18 | 62.43 | 48.84 | 38.39 | 30.32 | 24.05 | 19.17 | 15.34 | 12.32 | 9.94 | 8.04 | 31 |
| 32 | 78.27 | 61.26 | 48.19 | 38.08 | 30.23 | 24.11 | 19.31 | 15.53 | 12.54 | 10.16 | 8.27 | 32 |
| 33 | 76.40 | 60.12 | 47.54 | 37.77 | 30.14 | 24.16 | 19.45 | 15.72 | 12.76 | 10.40 | 8.50 | 33 |
| 34 | 74.57 | 59.00 | 46.90 | 37.46 | 30.05 | 24.22 | 19.60 | 15.92 | 12.99 | 10.64 | 8.74 | 34 |
| 35 | 72.79 | 57.90 | 46.27 | 37.15 | 29.96 | 24.27 | 19.74 | 16.12 | 13.22 | 10.88 | 8.99 | 35 |
| 36 | 71.05 | 56.82 | 45.66 | 36.85 | 29.88 | 24.33 | 19.89 | 16.33 | 13.45 | 11.13 | 9.24 | 36 |
| 37 | 69.36 | 55.77 | 45.05 | 36.55 | 29.79 | 24.38 | 20.04 | 16.53 | 13.69 | 11.38 | 9.50 | 37 |
| 38 | 67.71 | 54.73 | 44.45 | 36.26 | 29.71 | 24.44 | 20.19 | 16.74 | 13.94 | 11.65 | 9.77 | 38 |
| 39 | 66.10 | 53.72 | 43.86 | 35.97 | 29.62 | 24.50 | 20.34 | 16.96 | 14.19 | 11.92 | 10.04 | 39 |
| 40 | 64.53 | 52.73 | 43.28 | 35.68 | 29.54 | 24.56 | 20.50 | 17.17 | 14.44 | 12.19 | 10.32 | 40 |
| 41 | 63.00 | 51.75 | 42.70 | 35.39 | 29.46 | 24.62 | 20.65 | 17.39 | 14.70 | 12.47 | 10.62 | 41 |
| 42 | 61.51 | 50.80 | 42.14 | 35.11 | 29.38 | 24.68 | 20.81 | 17.62 | 14.97 | 12.76 | 10.92 | 42 |
| 43 | 60.06 | 49.87 | 41.59 | 34.84 | 29.30 | 24.74 | 20.97 | 17.85 | 15.24 | 13.06 | 11.23 | 43 |
| 44 | 58.65 | 48.97 | 41.06 | 34.57 | 29.23 | 24.81 | 21.14 | 18.08 | 15.52 | 13.36 | 11.55 | 44 |
| 45 | 57.28 | 48.08 | 40.53 | 34.31 | 29.16 | 24.88 | 21.31 | 18.32 | 15.80 | 13.68 | 11.88 | 45 |
| 46 | 55.95 | 47.21 | 40.01 | 34.05 | 29.09 | 24.95 | 21.48 | 18.56 | 16.09 | 14.00 | 12.22 | 46 |
| 47 | 54.65 | 46.37 | 39.50 | 33.79 | 29.02 | 25.02 | 21.65 | 18.81 | 16.39 | 14.33 | 12.57 | 47 |
| 48 | 53.40 | 45.55 | 39.01 | 33.55 | 28.97 | 25.10 | 21.84 | 19.06 | 16.70 | 14.67 | 12.93 | 48 |
| 49 | 52.19 | 44.75 | 38.54 | 33.32 | 28.92 | 25.19 | 22.03 | 19.33 | 17.01 | 15.03 | 13.32 | 49 |
| 50 | 51.01 | 43.98 | 38.07 | 33.09 | 28.87 | 25.28 | 22.22 | 19.60 | 17.34 | 15.39 | 13.71 | 50 |
| 51 | 49.86 | 43.22 | 37.62 | 32.87 | 28.83 | 25.38 | 22.42 | 19.87 | 17.67 | 15.77 | 14.11 | 51 |
| 52 | 48.76 | 42.49 | 37.17 | 32.65 | 28.79 | 25.47 | 22.62 | 20.16 | 18.02 | 16.16 | 14.53 | 52 |
| 53 | 47.68 | 41.78 | 36.75 | 32.45 | 28.76 | 25.58 | 22.83 | 20.45 | 18.38 | 16.56 | 14.97 | 53 |
| 54 | 46.65 | 41.09 | 36.34 | 32.26 | 28.74 | 25.70 | 23.06 | 20.76 | 18.74 | 16.98 | 15.43 | 54 |
| 55 | 45.65 | 40.43 | 35.94 | 32.08 | 28.73 | 25.82 | 23.29 | 21.07 | 19.13 | 17.41 | 15.90 | 55 |
| 56 | 44.69 | 39.79 | 35.57 | 31.91 | 28.73 | 25.95 | 23.53 | 21.40 | 19.52 | 17.86 | 16.39 | 56 |
| 57 | 43.76 | 39.18 | 35.20 | 31.75 | 28.73 | 26.09 | 23.78 | 21.74 | 19.93 | 18.33 | 16.91 | 57 |
| 58 | 42.86 | 38.57 | 34.85 | 31.59 | 28.74 | 26.24 | 24.04 | 22.09 | 20.35 | 18.81 | 17.44 | 58 |
| 59 | 41.98 | 37.99 | 34.50 | 31.44 | 28.76 | 26.39 | 24.30 | 22.44 | 20.79 | 19.31 | 17.99 | 59 |
| 60 | 41.12 | 37.41 | 34.16 | 31.30 | 28.78 | 26.55 | 24.57 | 22.81 | 21.24 | 19.83 | 18.57 | 60 |

Table 21    Multipliers for loss of pension commencing age 65 (males)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 134.16 | 87.81 | 57.78 | 38.22 | 25.41 | 16.98 | 11.40 | 7.69 | 5.21 | 3.54 | 2.42 | 0 |
| 1 | 131.46 | 86.50 | 57.23 | 38.06 | 25.44 | 17.08 | 11.53 | 7.82 | 5.32 | 3.64 | 2.50 | 1 |
| 2 | 128.17 | 84.80 | 56.40 | 37.70 | 25.33 | 17.10 | 11.60 | 7.91 | 5.41 | 3.72 | 2.57 | 2 |
| 3 | 124.95 | 83.11 | 55.57 | 37.35 | 25.23 | 17.12 | 11.67 | 8.00 | 5.50 | 3.80 | 2.64 | 3 |
| 4 | 121.80 | 81.45 | 54.76 | 37.00 | 25.12 | 17.14 | 11.75 | 8.09 | 5.59 | 3.88 | 2.71 | 4 |
| 5 | 118.72 | 79.82 | 53.95 | 36.64 | 25.01 | 17.15 | 11.82 | 8.18 | 5.68 | 3.97 | 2.78 | 5 |
| 6 | 115.71 | 78.22 | 53.15 | 36.29 | 24.90 | 17.17 | 11.89 | 8.27 | 5.78 | 4.05 | 2.85 | 6 |
| 7 | 112.78 | 76.65 | 52.36 | 35.95 | 24.80 | 17.18 | 11.96 | 8.36 | 5.87 | 4.14 | 2.93 | 7 |
| 8 | 109.92 | 75.11 | 51.59 | 35.60 | 24.69 | 17.20 | 12.03 | 8.46 | 5.97 | 4.23 | 3.01 | 8 |
| 9 | 107.13 | 73.60 | 50.82 | 35.26 | 24.58 | 17.21 | 12.11 | 8.55 | 6.07 | 4.32 | 3.09 | 9 |
| 10 | 104.40 | 72.11 | 50.06 | 34.91 | 24.47 | 17.22 | 12.18 | 8.65 | 6.17 | 4.41 | 3.17 | 10 |
| 11 | 101.74 | 70.65 | 49.31 | 34.57 | 24.36 | 17.23 | 12.25 | 8.74 | 6.27 | 4.51 | 3.26 | 11 |
| 12 | 99.15 | 69.23 | 48.57 | 34.24 | 24.25 | 17.25 | 12.32 | 8.84 | 6.37 | 4.60 | 3.34 | 12 |
| 13 | 96.62 | 67.83 | 47.84 | 33.91 | 24.14 | 17.26 | 12.39 | 8.94 | 6.47 | 4.70 | 3.43 | 13 |
| 14 | 94.16 | 66.46 | 47.13 | 33.58 | 24.03 | 17.27 | 12.47 | 9.04 | 6.58 | 4.80 | 3.52 | 14 |
| 15 | 91.77 | 65.12 | 46.43 | 33.25 | 23.92 | 17.28 | 12.54 | 9.14 | 6.68 | 4.91 | 3.62 | 15 |
| 16 | 89.44 | 63.81 | 45.74 | 32.93 | 23.82 | 17.30 | 12.62 | 9.24 | 6.79 | 5.01 | 3.71 | 16 |
| 17 | 87.17 | 62.53 | 45.06 | 32.61 | 23.71 | 17.31 | 12.69 | 9.34 | 6.90 | 5.12 | 3.81 | 17 |
| 18 | 84.97 | 61.27 | 44.39 | 32.30 | 23.61 | 17.33 | 12.77 | 9.45 | 7.02 | 5.23 | 3.91 | 18 |
| 19 | 82.83 | 60.05 | 43.74 | 32.00 | 23.51 | 17.34 | 12.85 | 9.55 | 7.13 | 5.34 | 4.02 | 19 |
| 20 | 80.75 | 58.86 | 43.10 | 31.70 | 23.41 | 17.36 | 12.93 | 9.66 | 7.25 | 5.46 | 4.13 | 20 |
| 21 | 78.72 | 57.69 | 42.47 | 31.40 | 23.31 | 17.38 | 13.01 | 9.77 | 7.37 | 5.58 | 4.24 | 21 |
| 22 | 76.73 | 56.54 | 41.84 | 31.10 | 23.21 | 17.39 | 13.09 | 9.88 | 7.49 | 5.70 | 4.35 | 22 |
| 23 | 74.79 | 55.40 | 41.22 | 30.80 | 23.11 | 17.41 | 13.17 | 9.99 | 7.61 | 5.82 | 4.47 | 23 |
| 24 | 72.90 | 54.29 | 40.61 | 30.51 | 23.01 | 17.42 | 13.25 | 10.11 | 7.74 | 5.95 | 4.59 | 24 |
| 25 | 71.06 | 53.21 | 40.01 | 30.22 | 22.91 | 17.44 | 13.33 | 10.22 | 7.87 | 6.08 | 4.71 | 25 |
| 26 | 69.28 | 52.16 | 39.43 | 29.94 | 22.82 | 17.46 | 13.41 | 10.34 | 8.00 | 6.21 | 4.83 | 26 |
| 27 | 67.55 | 51.13 | 38.86 | 29.66 | 22.73 | 17.48 | 13.50 | 10.46 | 8.13 | 6.34 | 4.97 | 27 |
| 28 | 65.85 | 50.11 | 38.29 | 29.38 | 22.63 | 17.50 | 13.58 | 10.58 | 8.26 | 6.48 | 5.10 | 28 |
| 29 | 64.18 | 49.10 | 37.72 | 29.10 | 22.53 | 17.51 | 13.66 | 10.69 | 8.40 | 6.62 | 5.23 | 29 |
| 30 | 62.57 | 48.13 | 37.17 | 28.82 | 22.44 | 17.53 | 13.75 | 10.82 | 8.54 | 6.76 | 5.38 | 30 |
| 31 | 61.01 | 47.18 | 36.64 | 28.56 | 22.35 | 17.55 | 13.83 | 10.94 | 8.68 | 6.91 | 5.52 | 31 |
| 32 | 59.50 | 46.27 | 36.12 | 28.30 | 22.26 | 17.58 | 13.93 | 11.07 | 8.83 | 7.07 | 5.67 | 32 |
| 33 | 58.05 | 45.38 | 35.61 | 28.06 | 22.18 | 17.61 | 14.02 | 11.20 | 8.98 | 7.22 | 5.83 | 33 |
| 34 | 56.62 | 44.50 | 35.11 | 27.81 | 22.10 | 17.63 | 14.12 | 11.34 | 9.14 | 7.38 | 5.99 | 34 |
| 35 | 55.23 | 43.64 | 34.61 | 27.56 | 22.02 | 17.66 | 14.21 | 11.47 | 9.29 | 7.55 | 6.15 | 35 |
| 36 | 53.87 | 42.80 | 34.13 | 27.32 | 21.94 | 17.69 | 14.31 | 11.61 | 9.45 | 7.72 | 6.32 | 36 |
| 37 | 52.56 | 41.97 | 33.65 | 27.08 | 21.87 | 17.72 | 14.41 | 11.75 | 9.61 | 7.89 | 6.49 | 37 |
| 38 | 51.26 | 41.16 | 33.18 | 26.84 | 21.79 | 17.75 | 14.50 | 11.89 | 9.78 | 8.07 | 6.67 | 38 |
| 39 | 50.00 | 40.37 | 32.71 | 26.60 | 21.71 | 17.77 | 14.60 | 12.03 | 9.95 | 8.24 | 6.85 | 39 |
| 40 | 48.77 | 39.59 | 32.25 | 26.36 | 21.63 | 17.80 | 14.70 | 12.18 | 10.12 | 8.43 | 7.04 | 40 |
| 41 | 47.58 | 38.83 | 31.80 | 26.13 | 21.55 | 17.83 | 14.80 | 12.32 | 10.29 | 8.62 | 7.24 | 41 |
| 42 | 46.42 | 38.09 | 31.36 | 25.91 | 21.48 | 17.86 | 14.90 | 12.47 | 10.47 | 8.81 | 7.44 | 42 |
| 43 | 45.30 | 37.36 | 30.93 | 25.69 | 21.41 | 17.90 | 15.01 | 12.63 | 10.65 | 9.01 | 7.64 | 43 |
| 44 | 44.21 | 36.66 | 30.51 | 25.47 | 21.34 | 17.93 | 15.12 | 12.78 | 10.84 | 9.21 | 7.86 | 44 |
| 45 | 43.15 | 35.97 | 30.09 | 25.26 | 21.27 | 17.97 | 15.23 | 12.94 | 11.03 | 9.43 | 8.08 | 45 |
| 46 | 42.11 | 35.30 | 29.69 | 25.05 | 21.21 | 18.01 | 15.34 | 13.10 | 11.22 | 9.64 | 8.30 | 46 |
| 47 | 41.11 | 34.64 | 29.29 | 24.85 | 21.15 | 18.05 | 15.46 | 13.27 | 11.42 | 9.86 | 8.54 | 47 |
| 48 | 40.14 | 34.01 | 28.91 | 24.65 | 21.09 | 18.10 | 15.57 | 13.44 | 11.63 | 10.09 | 8.78 | 48 |
| 49 | 39.20 | 33.39 | 28.53 | 24.46 | 21.04 | 18.15 | 15.70 | 13.62 | 11.84 | 10.33 | 9.03 | 49 |
| 50 | 38.29 | 32.79 | 28.18 | 24.28 | 20.99 | 18.20 | 15.83 | 13.80 | 12.07 | 10.58 | 9.29 | 50 |
| 51 | 37.42 | 32.22 | 27.83 | 24.11 | 20.96 | 18.27 | 15.97 | 13.99 | 12.29 | 10.83 | 9.56 | 51 |
| 52 | 36.58 | 31.67 | 27.50 | 23.96 | 20.93 | 18.34 | 16.11 | 14.19 | 12.53 | 11.10 | 9.85 | 52 |
| 53 | 35.78 | 31.14 | 27.19 | 23.81 | 20.91 | 18.41 | 16.26 | 14.40 | 12.78 | 11.37 | 10.15 | 53 |
| 54 | 35.01 | 30.64 | 26.89 | 23.67 | 20.90 | 18.50 | 16.42 | 14.62 | 13.04 | 11.66 | 10.46 | 54 |
| 55 | 34.28 | 30.15 | 26.61 | 23.55 | 20.90 | 18.60 | 16.59 | 14.85 | 13.31 | 11.97 | 10.78 | 55 |
| 56 | 33.59 | 29.70 | 26.35 | 23.44 | 20.91 | 18.71 | 16.78 | 15.09 | 13.60 | 12.29 | 11.13 | 56 |
| 57 | 32.92 | 29.27 | 26.10 | 23.35 | 20.94 | 18.83 | 16.97 | 15.34 | 13.90 | 12.62 | 11.49 | 57 |
| 58 | 32.28 | 28.85 | 25.87 | 23.26 | 20.97 | 18.95 | 17.18 | 15.60 | 14.21 | 12.97 | 11.86 | 58 |
| 59 | 31.65 | 28.44 | 25.64 | 23.17 | 21.00 | 19.08 | 17.38 | 15.87 | 14.53 | 13.32 | 12.25 | 59 |
| 60 | 31.03 | 28.04 | 25.41 | 23.09 | 21.03 | 19.21 | 17.59 | 16.14 | 14.85 | 13.69 | 12.65 | 60 |
| 61 | 30.43 | 27.65 | 25.19 | 23.01 | 21.07 | 19.35 | 17.81 | 16.43 | 15.19 | 14.08 | 13.07 | 61 |
| 62 | 29.87 | 27.28 | 24.99 | 22.94 | 21.12 | 19.50 | 18.04 | 16.73 | 15.55 | 14.48 | 13.51 | 62 |
| 63 | 29.34 | 26.94 | 24.81 | 22.90 | 21.20 | 19.67 | 18.29 | 17.05 | 15.93 | 14.91 | 13.98 | 63 |
| 64 | 28.85 | 26.63 | 24.65 | 22.88 | 21.29 | 19.86 | 18.56 | 17.39 | 16.33 | 15.37 | 14.49 | 64 |
| 65 | 28.40 | 26.37 | 24.54 | 22.90 | 21.42 | 20.08 | 18.87 | 17.77 | 16.77 | 15.86 | 15.03 | 65 |

**222**

**Table 22  Multipliers for loss of pension commencing age 65 (females)**

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 153.09 | 99.71 | 65.31 | 43.01 | 28.47 | 18.95 | 12.67 | 8.52 | 5.75 | 3.90 | 2.66 | 0 |
| 1 | 149.98 | 98.22 | 64.68 | 42.82 | 28.50 | 19.06 | 12.81 | 8.66 | 5.87 | 4.00 | 2.74 | 1 |
| 2 | 146.34 | 96.35 | 63.78 | 42.45 | 28.40 | 19.10 | 12.90 | 8.76 | 5.98 | 4.09 | 2.82 | 2 |
| 3 | 142.77 | 94.51 | 62.90 | 42.08 | 28.30 | 19.13 | 12.99 | 8.87 | 6.08 | 4.19 | 2.90 | 3 |
| 4 | 139.29 | 92.70 | 62.02 | 41.72 | 28.21 | 19.16 | 13.08 | 8.98 | 6.18 | 4.28 | 2.98 | 4 |
| 5 | 135.88 | 90.92 | 61.16 | 41.36 | 28.11 | 19.20 | 13.17 | 9.08 | 6.29 | 4.38 | 3.06 | 5 |
| 6 | 132.55 | 89.17 | 60.30 | 40.99 | 28.01 | 19.23 | 13.26 | 9.19 | 6.40 | 4.47 | 3.14 | 6 |
| 7 | 129.30 | 87.45 | 59.46 | 40.63 | 27.91 | 19.26 | 13.35 | 9.30 | 6.51 | 4.57 | 3.23 | 7 |
| 8 | 126.13 | 85.76 | 58.62 | 40.27 | 27.81 | 19.29 | 13.45 | 9.41 | 6.62 | 4.68 | 3.32 | 8 |
| 9 | 123.03 | 84.10 | 57.80 | 39.92 | 27.70 | 19.32 | 13.54 | 9.53 | 6.73 | 4.78 | 3.41 | 9 |
| 10 | 120.00 | 82.48 | 56.98 | 39.56 | 27.60 | 19.35 | 13.63 | 9.64 | 6.85 | 4.89 | 3.50 | 10 |
| 11 | 117.06 | 80.89 | 56.18 | 39.21 | 27.50 | 19.38 | 13.72 | 9.75 | 6.97 | 4.99 | 3.60 | 11 |
| 12 | 114.18 | 79.32 | 55.39 | 38.87 | 27.40 | 19.41 | 13.81 | 9.87 | 7.08 | 5.11 | 3.69 | 12 |
| 13 | 111.37 | 77.79 | 54.61 | 38.52 | 27.30 | 19.44 | 13.90 | 9.99 | 7.20 | 5.22 | 3.79 | 13 |
| 14 | 108.63 | 76.28 | 53.84 | 38.18 | 27.20 | 19.47 | 14.00 | 10.11 | 7.33 | 5.33 | 3.90 | 14 |
| 15 | 105.96 | 74.81 | 53.08 | 37.84 | 27.10 | 19.50 | 14.09 | 10.23 | 7.45 | 5.45 | 4.00 | 15 |
| 16 | 103.35 | 73.36 | 52.33 | 37.50 | 27.00 | 19.53 | 14.19 | 10.35 | 7.58 | 5.57 | 4.11 | 16 |
| 17 | 100.81 | 71.94 | 51.59 | 37.17 | 26.90 | 19.56 | 14.28 | 10.47 | 7.71 | 5.70 | 4.23 | 17 |
| 18 | 98.33 | 70.55 | 50.86 | 36.84 | 26.80 | 19.59 | 14.38 | 10.60 | 7.84 | 5.82 | 4.34 | 18 |
| 19 | 95.92 | 69.19 | 50.15 | 36.52 | 26.71 | 19.62 | 14.47 | 10.72 | 7.97 | 5.95 | 4.46 | 19 |
| 20 | 93.58 | 67.87 | 49.45 | 36.20 | 26.61 | 19.65 | 14.57 | 10.85 | 8.11 | 6.09 | 4.58 | 20 |
| 21 | 91.29 | 66.56 | 48.76 | 35.88 | 26.52 | 19.69 | 14.67 | 10.98 | 8.25 | 6.22 | 4.71 | 21 |
| 22 | 89.05 | 65.28 | 48.07 | 35.56 | 26.42 | 19.72 | 14.77 | 11.11 | 8.39 | 6.36 | 4.84 | 22 |
| 23 | 86.86 | 64.01 | 47.39 | 35.24 | 26.32 | 19.74 | 14.87 | 11.24 | 8.53 | 6.50 | 4.97 | 23 |
| 24 | 84.71 | 62.77 | 46.72 | 34.93 | 26.23 | 19.77 | 14.97 | 11.38 | 8.68 | 6.65 | 5.11 | 24 |
| 25 | 82.63 | 61.55 | 46.06 | 34.62 | 26.13 | 19.80 | 15.07 | 11.51 | 8.83 | 6.79 | 5.25 | 25 |
| 26 | 80.60 | 60.37 | 45.41 | 34.31 | 26.03 | 19.83 | 15.17 | 11.65 | 8.98 | 6.94 | 5.39 | 26 |
| 27 | 78.62 | 59.20 | 44.77 | 34.01 | 25.94 | 19.86 | 15.27 | 11.79 | 9.13 | 7.10 | 5.54 | 27 |
| 28 | 76.69 | 58.06 | 44.14 | 33.71 | 25.84 | 19.89 | 15.38 | 11.93 | 9.29 | 7.26 | 5.69 | 28 |
| 29 | 74.81 | 56.94 | 43.52 | 33.41 | 25.75 | 19.93 | 15.48 | 12.07 | 9.44 | 7.42 | 5.84 | 29 |
| 30 | 72.98 | 55.84 | 42.91 | 33.12 | 25.66 | 19.96 | 15.58 | 12.21 | 9.61 | 7.58 | 6.00 | 30 |
| 31 | 71.20 | 54.77 | 42.32 | 32.83 | 25.57 | 19.99 | 15.69 | 12.36 | 9.77 | 7.75 | 6.17 | 31 |
| 32 | 69.46 | 53.73 | 41.73 | 32.54 | 25.48 | 20.03 | 15.80 | 12.51 | 9.94 | 7.92 | 6.34 | 32 |
| 33 | 67.77 | 52.70 | 41.15 | 32.26 | 25.39 | 20.06 | 15.91 | 12.66 | 10.11 | 8.10 | 6.51 | 33 |
| 34 | 66.12 | 51.69 | 40.58 | 31.98 | 25.30 | 20.09 | 16.02 | 12.81 | 10.28 | 8.28 | 6.69 | 34 |
| 35 | 64.50 | 50.70 | 40.01 | 31.70 | 25.21 | 20.13 | 16.13 | 12.97 | 10.46 | 8.47 | 6.88 | 35 |
| 36 | 62.93 | 49.73 | 39.45 | 31.43 | 25.13 | 20.16 | 16.24 | 13.12 | 10.64 | 8.66 | 7.06 | 36 |
| 37 | 61.41 | 48.78 | 38.91 | 31.15 | 25.04 | 20.20 | 16.35 | 13.28 | 10.83 | 8.85 | 7.26 | 37 |
| 38 | 59.91 | 47.85 | 38.37 | 30.89 | 24.95 | 20.23 | 16.47 | 13.44 | 11.01 | 9.05 | 7.46 | 38 |
| 39 | 58.46 | 46.94 | 37.84 | 30.62 | 24.87 | 20.27 | 16.58 | 13.61 | 11.20 | 9.25 | 7.67 | 39 |
| 40 | 57.04 | 46.05 | 37.32 | 30.36 | 24.79 | 20.31 | 16.70 | 13.77 | 11.40 | 9.46 | 7.88 | 40 |
| 41 | 55.66 | 45.17 | 36.80 | 30.10 | 24.70 | 20.35 | 16.81 | 13.94 | 11.60 | 9.67 | 8.10 | 41 |
| 42 | 54.31 | 44.32 | 36.30 | 29.84 | 24.62 | 20.38 | 16.93 | 14.11 | 11.80 | 9.89 | 8.32 | 42 |
| 43 | 53.01 | 43.48 | 35.81 | 29.59 | 24.54 | 20.43 | 17.05 | 14.29 | 12.00 | 10.12 | 8.55 | 43 |
| 44 | 51.74 | 42.67 | 35.33 | 29.35 | 24.47 | 20.47 | 17.18 | 14.46 | 12.22 | 10.35 | 8.79 | 44 |
| 45 | 50.50 | 41.88 | 34.85 | 29.11 | 24.40 | 20.51 | 17.31 | 14.65 | 12.43 | 10.58 | 9.04 | 45 |
| 46 | 49.30 | 41.10 | 34.39 | 28.87 | 24.32 | 20.56 | 17.44 | 14.83 | 12.65 | 10.83 | 9.29 | 46 |
| 47 | 48.13 | 40.34 | 33.93 | 28.64 | 24.26 | 20.61 | 17.57 | 15.02 | 12.88 | 11.08 | 9.55 | 47 |
| 48 | 47.00 | 39.61 | 33.49 | 28.42 | 24.19 | 20.66 | 17.70 | 15.22 | 13.11 | 11.33 | 9.82 | 48 |
| 49 | 45.91 | 38.89 | 33.06 | 28.20 | 24.14 | 20.72 | 17.85 | 15.42 | 13.35 | 11.60 | 10.10 | 49 |
| 50 | 44.85 | 38.20 | 32.64 | 27.99 | 24.08 | 20.78 | 17.99 | 15.62 | 13.60 | 11.88 | 10.40 | 50 |
| 51 | 43.82 | 37.52 | 32.23 | 27.79 | 24.03 | 20.85 | 18.14 | 15.83 | 13.85 | 12.16 | 10.70 | 51 |
| 52 | 42.82 | 36.86 | 31.84 | 27.59 | 23.99 | 20.92 | 18.29 | 16.05 | 14.12 | 12.45 | 11.01 | 52 |
| 53 | 41.85 | 36.22 | 31.45 | 27.40 | 23.95 | 20.99 | 18.45 | 16.27 | 14.38 | 12.75 | 11.33 | 53 |
| 54 | 40.92 | 35.60 | 31.08 | 27.22 | 23.91 | 21.07 | 18.62 | 16.50 | 14.66 | 13.06 | 11.67 | 54 |
| 55 | 40.02 | 35.01 | 30.73 | 27.05 | 23.89 | 21.16 | 18.80 | 16.74 | 14.95 | 13.39 | 12.02 | 55 |
| 56 | 39.16 | 34.44 | 30.38 | 26.89 | 23.87 | 21.26 | 18.98 | 16.99 | 15.25 | 13.73 | 12.38 | 56 |
| 57 | 38.32 | 33.88 | 30.05 | 26.74 | 23.86 | 21.36 | 19.17 | 17.25 | 15.56 | 14.08 | 12.76 | 57 |
| 58 | 37.51 | 33.34 | 29.73 | 26.59 | 23.86 | 21.46 | 19.36 | 17.51 | 15.88 | 14.44 | 13.16 | 58 |
| 59 | 36.72 | 32.81 | 29.42 | 26.45 | 23.85 | 21.57 | 19.56 | 17.78 | 16.21 | 14.81 | 13.56 | 59 |
| 60 | 35.94 | 32.29 | 29.10 | 26.31 | 23.85 | 21.68 | 19.76 | 18.06 | 16.54 | 15.19 | 13.98 | 60 |
| 61 | 35.18 | 31.78 | 28.80 | 26.17 | 23.85 | 21.79 | 19.97 | 18.34 | 16.89 | 15.59 | 14.42 | 61 |
| 62 | 34.46 | 31.29 | 28.51 | 26.04 | 23.86 | 21.91 | 20.18 | 18.63 | 17.25 | 16.00 | 14.87 | 62 |
| 63 | 33.76 | 30.83 | 28.23 | 25.93 | 23.88 | 22.05 | 20.41 | 18.94 | 17.62 | 16.43 | 15.35 | 63 |
| 64 | 33.10 | 30.39 | 27.98 | 25.83 | 23.92 | 22.20 | 20.66 | 19.27 | 18.02 | 16.89 | 15.86 | 64 |
| 65 | 32.50 | 29.99 | 27.76 | 25.77 | 23.98 | 22.38 | 20.93 | 19.63 | 18.45 | 17.38 | 16.40 | 65 |

**Table 23    Multipliers for loss of pension commencing age 70 (males)**

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 116.52 | 75.30 | 48.89 | 31.89 | 20.90 | 13.76 | 9.09 | 6.04 | 4.02 | 2.69 | 1.81 | 0 |
| 1 | 114.10 | 74.13 | 48.39 | 31.74 | 20.91 | 13.83 | 9.19 | 6.13 | 4.11 | 2.76 | 1.87 | 1 |
| 2 | 111.17 | 72.62 | 47.66 | 31.42 | 20.81 | 13.84 | 9.24 | 6.20 | 4.17 | 2.82 | 1.91 | 2 |
| 3 | 108.30 | 71.12 | 46.93 | 31.10 | 20.70 | 13.84 | 9.29 | 6.27 | 4.24 | 2.88 | 1.96 | 3 |
| 4 | 105.50 | 69.65 | 46.20 | 30.78 | 20.60 | 13.85 | 9.34 | 6.33 | 4.31 | 2.94 | 2.02 | 4 |
| 5 | 102.76 | 68.21 | 45.49 | 30.47 | 20.50 | 13.85 | 9.39 | 6.40 | 4.37 | 3.00 | 2.07 | 5 |
| 6 | 100.08 | 66.80 | 44.78 | 30.16 | 20.39 | 13.85 | 9.44 | 6.46 | 4.44 | 3.06 | 2.12 | 6 |
| 7 | 97.48 | 65.41 | 44.09 | 29.84 | 20.29 | 13.85 | 9.49 | 6.53 | 4.51 | 3.13 | 2.18 | 7 |
| 8 | 94.95 | 64.05 | 43.40 | 29.54 | 20.19 | 13.85 | 9.54 | 6.60 | 4.58 | 3.19 | 2.23 | 8 |
| 9 | 92.47 | 62.71 | 42.72 | 29.23 | 20.08 | 13.85 | 9.59 | 6.67 | 4.65 | 3.26 | 2.29 | 9 |
| 10 | 90.04 | 61.40 | 42.05 | 28.92 | 19.97 | 13.85 | 9.64 | 6.74 | 4.73 | 3.33 | 2.35 | 10 |
| 11 | 87.69 | 60.11 | 41.39 | 28.62 | 19.87 | 13.85 | 9.69 | 6.81 | 4.80 | 3.39 | 2.41 | 11 |
| 12 | 85.39 | 58.86 | 40.74 | 28.32 | 19.76 | 13.85 | 9.74 | 6.88 | 4.87 | 3.46 | 2.47 | 12 |
| 13 | 83.16 | 57.63 | 40.10 | 28.02 | 19.66 | 13.85 | 9.79 | 6.95 | 4.95 | 3.54 | 2.54 | 13 |
| 14 | 80.98 | 56.42 | 39.47 | 27.73 | 19.56 | 13.85 | 9.84 | 7.02 | 5.02 | 3.61 | 2.60 | 14 |
| 15 | 78.87 | 55.24 | 38.85 | 27.44 | 19.45 | 13.85 | 9.89 | 7.09 | 5.10 | 3.68 | 2.67 | 15 |
| 16 | 76.81 | 54.09 | 38.25 | 27.15 | 19.35 | 13.85 | 9.94 | 7.16 | 5.18 | 3.76 | 2.74 | 16 |
| 17 | 74.80 | 52.96 | 37.65 | 26.87 | 19.25 | 13.85 | 9.99 | 7.24 | 5.26 | 3.84 | 2.81 | 17 |
| 18 | 72.86 | 51.86 | 37.06 | 26.59 | 19.15 | 13.85 | 10.05 | 7.31 | 5.34 | 3.92 | 2.88 | 18 |
| 19 | 70.97 | 50.79 | 36.49 | 26.32 | 19.06 | 13.85 | 10.10 | 7.39 | 5.43 | 4.00 | 2.95 | 19 |
| 20 | 69.13 | 49.74 | 35.93 | 26.05 | 18.96 | 13.85 | 10.15 | 7.47 | 5.51 | 4.08 | 3.03 | 20 |
| 21 | 67.34 | 48.71 | 35.38 | 25.79 | 18.87 | 13.85 | 10.21 | 7.55 | 5.60 | 4.17 | 3.11 | 21 |
| 22 | 65.59 | 47.70 | 34.82 | 25.52 | 18.77 | 13.85 | 10.26 | 7.63 | 5.69 | 4.25 | 3.19 | 22 |
| 23 | 63.88 | 46.71 | 34.28 | 25.25 | 18.67 | 13.85 | 10.31 | 7.70 | 5.77 | 4.34 | 3.27 | 23 |
| 24 | 62.22 | 45.74 | 33.75 | 24.99 | 18.58 | 13.85 | 10.37 | 7.78 | 5.86 | 4.43 | 3.36 | 24 |
| 25 | 60.60 | 44.79 | 33.22 | 24.74 | 18.48 | 13.86 | 10.42 | 7.87 | 5.96 | 4.52 | 3.44 | 25 |
| 26 | 59.04 | 43.87 | 32.71 | 24.48 | 18.39 | 13.86 | 10.48 | 7.95 | 6.05 | 4.62 | 3.53 | 26 |
| 27 | 57.52 | 42.97 | 32.21 | 24.24 | 18.30 | 13.86 | 10.54 | 8.03 | 6.14 | 4.71 | 3.63 | 27 |
| 28 | 56.02 | 42.07 | 31.71 | 23.99 | 18.21 | 13.86 | 10.59 | 8.12 | 6.24 | 4.81 | 3.72 | 28 |
| 29 | 54.56 | 41.20 | 31.22 | 23.74 | 18.11 | 13.86 | 10.65 | 8.20 | 6.34 | 4.91 | 3.82 | 29 |
| 30 | 53.15 | 40.34 | 30.73 | 23.49 | 18.02 | 13.87 | 10.70 | 8.29 | 6.44 | 5.01 | 3.92 | 30 |
| 31 | 51.78 | 39.52 | 30.27 | 23.26 | 17.93 | 13.87 | 10.76 | 8.38 | 6.54 | 5.12 | 4.02 | 31 |
| 32 | 50.46 | 38.72 | 29.81 | 23.03 | 17.85 | 13.88 | 10.82 | 8.47 | 6.64 | 5.23 | 4.12 | 32 |
| 33 | 49.19 | 37.94 | 29.37 | 22.81 | 17.77 | 13.89 | 10.89 | 8.56 | 6.75 | 5.34 | 4.23 | 33 |
| 34 | 47.94 | 37.18 | 28.93 | 22.59 | 17.69 | 13.90 | 10.95 | 8.66 | 6.86 | 5.45 | 4.35 | 34 |
| 35 | 46.72 | 36.43 | 28.50 | 22.37 | 17.61 | 13.91 | 11.02 | 8.75 | 6.97 | 5.57 | 4.46 | 35 |
| 36 | 45.54 | 35.70 | 28.08 | 22.15 | 17.53 | 13.92 | 11.08 | 8.85 | 7.08 | 5.69 | 4.58 | 36 |
| 37 | 44.39 | 34.98 | 27.66 | 21.94 | 17.45 | 13.93 | 11.15 | 8.95 | 7.20 | 5.81 | 4.70 | 37 |
| 38 | 43.26 | 34.27 | 27.24 | 21.72 | 17.37 | 13.94 | 11.21 | 9.04 | 7.32 | 5.93 | 4.82 | 38 |
| 39 | 42.16 | 33.58 | 26.84 | 21.51 | 17.30 | 13.95 | 11.28 | 9.14 | 7.43 | 6.06 | 4.95 | 39 |
| 40 | 41.09 | 32.90 | 26.43 | 21.30 | 17.22 | 13.95 | 11.34 | 9.24 | 7.55 | 6.19 | 5.08 | 40 |
| 41 | 40.05 | 32.24 | 26.04 | 21.10 | 17.14 | 13.97 | 11.41 | 9.35 | 7.68 | 6.32 | 5.22 | 41 |
| 42 | 39.04 | 31.60 | 25.66 | 20.90 | 17.07 | 13.98 | 11.48 | 9.45 | 7.80 | 6.46 | 5.36 | 42 |
| 43 | 38.06 | 30.97 | 25.28 | 20.70 | 16.99 | 13.99 | 11.55 | 9.56 | 7.93 | 6.60 | 5.50 | 43 |
| 44 | 37.11 | 30.36 | 24.92 | 20.51 | 16.92 | 14.01 | 11.62 | 9.67 | 8.06 | 6.74 | 5.65 | 44 |
| 45 | 36.18 | 29.76 | 24.56 | 20.32 | 16.85 | 14.02 | 11.69 | 9.78 | 8.20 | 6.89 | 5.80 | 45 |
| 46 | 35.28 | 29.18 | 24.20 | 20.13 | 16.79 | 14.04 | 11.77 | 9.89 | 8.33 | 7.04 | 5.96 | 46 |
| 47 | 34.41 | 28.61 | 23.86 | 19.95 | 16.72 | 14.06 | 11.85 | 10.01 | 8.47 | 7.19 | 6.12 | 47 |
| 48 | 33.57 | 28.06 | 23.52 | 19.77 | 16.66 | 14.08 | 11.92 | 10.13 | 8.62 | 7.35 | 6.29 | 48 |
| 49 | 32.75 | 27.52 | 23.19 | 19.60 | 16.60 | 14.11 | 12.01 | 10.25 | 8.77 | 7.52 | 6.46 | 49 |
| 50 | 31.96 | 27.01 | 22.88 | 19.43 | 16.55 | 14.13 | 12.09 | 10.38 | 8.92 | 7.69 | 6.64 | 50 |
| 51 | 31.21 | 26.51 | 22.58 | 19.28 | 16.51 | 14.17 | 12.19 | 10.51 | 9.08 | 7.87 | 6.83 | 51 |
| 52 | 30.48 | 26.03 | 22.29 | 19.13 | 16.47 | 14.20 | 12.28 | 10.65 | 9.25 | 8.05 | 7.02 | 52 |
| 53 | 29.79 | 25.57 | 22.01 | 19.00 | 16.43 | 14.25 | 12.39 | 10.79 | 9.42 | 8.24 | 7.23 | 53 |
| 54 | 29.12 | 25.13 | 21.75 | 18.87 | 16.41 | 14.30 | 12.50 | 10.94 | 9.60 | 8.44 | 7.44 | 54 |
| 55 | 28.48 | 24.71 | 21.50 | 18.75 | 16.39 | 14.36 | 12.61 | 11.10 | 9.79 | 8.65 | 7.66 | 55 |
| 56 | 27.88 | 24.32 | 21.27 | 18.65 | 16.39 | 14.43 | 12.74 | 11.27 | 9.99 | 8.88 | 7.90 | 56 |
| 57 | 27.30 | 23.94 | 21.05 | 18.55 | 16.39 | 14.51 | 12.88 | 11.45 | 10.20 | 9.11 | 8.15 | 57 |
| 58 | 26.74 | 23.58 | 20.84 | 18.46 | 16.40 | 14.59 | 13.02 | 11.63 | 10.42 | 9.35 | 8.40 | 58 |
| 59 | 26.19 | 23.22 | 20.63 | 18.38 | 16.40 | 14.68 | 13.16 | 11.82 | 10.64 | 9.59 | 8.67 | 59 |
| 60 | 25.65 | 22.86 | 20.42 | 18.29 | 16.41 | 14.76 | 13.30 | 12.01 | 10.86 | 9.85 | 8.94 | 60 |
| 61 | 25.13 | 22.52 | 20.22 | 18.20 | 16.42 | 14.84 | 13.44 | 12.20 | 11.10 | 10.11 | 9.23 | 61 |
| 62 | 24.63 | 22.19 | 20.03 | 18.13 | 16.44 | 14.94 | 13.60 | 12.41 | 11.34 | 10.38 | 9.52 | 62 |
| 63 | 24.16 | 21.88 | 19.86 | 18.07 | 16.47 | 15.04 | 13.77 | 12.63 | 11.60 | 10.67 | 9.84 | 63 |
| 64 | 23.72 | 21.60 | 19.71 | 18.03 | 16.52 | 15.17 | 13.95 | 12.86 | 11.87 | 10.98 | 10.18 | 64 |
| 65 | 23.33 | 21.35 | 19.59 | 18.01 | 16.59 | 15.31 | 14.16 | 13.12 | 12.17 | 11.32 | 10.54 | 65 |
| 66 | 22.97 | 21.14 | 19.50 | 18.02 | 16.69 | 15.48 | 14.39 | 13.40 | 12.50 | 11.68 | 10.93 | 66 |
| 67 | 22.66 | 20.96 | 19.44 | 18.06 | 16.81 | 15.68 | 14.65 | 13.71 | 12.86 | 12.07 | 11.36 | 67 |
| 68 | 22.38 | 20.82 | 19.40 | 18.12 | 16.96 | 15.90 | 14.93 | 14.05 | 13.24 | 12.50 | 11.82 | 68 |
| 69 | 22.13 | 20.70 | 19.40 | 18.21 | 17.13 | 16.15 | 15.24 | 14.42 | 13.66 | 12.96 | 12.31 | 69 |
| 70 | 21.91 | 20.60 | 19.41 | 18.32 | 17.32 | 16.41 | 15.58 | 14.81 | 14.10 | 13.44 | 12.84 | 70 |

Table 24    Multipliers for loss of pension commencing age 70 (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | -2.0% | -1.5% | -1.0% | -0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 134.74 | 86.70 | 56.06 | 36.43 | 23.78 | 15.60 | 10.28 | 6.80 | 4.52 | 3.01 | 2.02 | 0 |
| 1 | 131.93 | 85.35 | 55.49 | 36.25 | 23.79 | 15.68 | 10.38 | 6.91 | 4.61 | 3.09 | 2.08 | 1 |
| 2 | 128.66 | 83.68 | 54.69 | 35.92 | 23.69 | 15.70 | 10.45 | 6.99 | 4.69 | 3.16 | 2.14 | 2 |
| 3 | 125.45 | 82.03 | 53.90 | 35.58 | 23.60 | 15.72 | 10.52 | 7.07 | 4.77 | 3.23 | 2.20 | 3 |
| 4 | 122.32 | 80.42 | 53.12 | 35.25 | 23.50 | 15.74 | 10.58 | 7.15 | 4.85 | 3.30 | 2.25 | 4 |
| 5 | 119.26 | 78.83 | 52.35 | 34.93 | 23.41 | 15.76 | 10.65 | 7.23 | 4.93 | 3.37 | 2.32 | 5 |
| 6 | 116.28 | 77.27 | 51.59 | 34.60 | 23.31 | 15.77 | 10.72 | 7.31 | 5.01 | 3.44 | 2.38 | 6 |
| 7 | 113.36 | 75.74 | 50.83 | 34.27 | 23.21 | 15.79 | 10.78 | 7.39 | 5.09 | 3.52 | 2.44 | 7 |
| 8 | 110.51 | 74.23 | 50.09 | 33.95 | 23.11 | 15.80 | 10.85 | 7.48 | 5.18 | 3.59 | 2.51 | 8 |
| 9 | 107.73 | 72.75 | 49.35 | 33.63 | 23.01 | 15.82 | 10.92 | 7.56 | 5.26 | 3.67 | 2.57 | 9 |
| 10 | 105.03 | 71.30 | 48.63 | 33.31 | 22.92 | 15.83 | 10.98 | 7.65 | 5.35 | 3.75 | 2.64 | 10 |
| 11 | 102.39 | 69.89 | 47.92 | 33.00 | 22.82 | 15.85 | 11.05 | 7.73 | 5.43 | 3.83 | 2.71 | 11 |
| 12 | 99.81 | 68.49 | 47.21 | 32.68 | 22.72 | 15.86 | 11.12 | 7.82 | 5.52 | 3.92 | 2.79 | 12 |
| 13 | 97.30 | 67.13 | 46.52 | 32.37 | 22.62 | 15.87 | 11.18 | 7.91 | 5.61 | 4.00 | 2.86 | 13 |
| 14 | 94.85 | 65.79 | 45.83 | 32.07 | 22.53 | 15.89 | 11.25 | 8.00 | 5.71 | 4.09 | 2.94 | 14 |
| 15 | 92.46 | 64.48 | 45.16 | 31.76 | 22.43 | 15.90 | 11.32 | 8.09 | 5.80 | 4.17 | 3.01 | 15 |
| 16 | 90.13 | 63.19 | 44.49 | 31.46 | 22.33 | 15.92 | 11.39 | 8.18 | 5.89 | 4.26 | 3.09 | 16 |
| 17 | 87.86 | 61.93 | 43.84 | 31.16 | 22.24 | 15.93 | 11.46 | 8.27 | 5.99 | 4.36 | 3.18 | 17 |
| 18 | 85.65 | 60.70 | 43.19 | 30.86 | 22.14 | 15.95 | 11.53 | 8.36 | 6.09 | 4.45 | 3.26 | 18 |
| 19 | 83.51 | 59.49 | 42.56 | 30.57 | 22.05 | 15.96 | 11.60 | 8.46 | 6.19 | 4.55 | 3.35 | 19 |
| 20 | 81.42 | 58.32 | 41.94 | 30.29 | 21.96 | 15.98 | 11.67 | 8.55 | 6.29 | 4.64 | 3.44 | 20 |
| 21 | 79.38 | 57.16 | 41.33 | 30.00 | 21.86 | 15.99 | 11.74 | 8.65 | 6.40 | 4.74 | 3.53 | 21 |
| 22 | 77.38 | 56.02 | 40.72 | 29.72 | 21.77 | 16.01 | 11.81 | 8.75 | 6.50 | 4.85 | 3.62 | 22 |
| 23 | 75.43 | 54.90 | 40.12 | 29.43 | 21.67 | 16.02 | 11.88 | 8.85 | 6.61 | 4.95 | 3.72 | 23 |
| 24 | 73.52 | 53.80 | 39.52 | 29.15 | 21.58 | 16.03 | 11.95 | 8.94 | 6.71 | 5.06 | 3.82 | 24 |
| 25 | 71.67 | 52.72 | 38.94 | 28.87 | 21.48 | 16.05 | 12.03 | 9.04 | 6.82 | 5.16 | 3.92 | 25 |
| 26 | 69.86 | 51.67 | 38.37 | 28.60 | 21.39 | 16.06 | 12.10 | 9.14 | 6.93 | 5.28 | 4.03 | 26 |
| 27 | 68.11 | 50.64 | 37.80 | 28.32 | 21.30 | 16.07 | 12.17 | 9.25 | 7.05 | 5.39 | 4.13 | 27 |
| 28 | 66.39 | 49.63 | 37.25 | 28.05 | 21.21 | 16.09 | 12.24 | 9.35 | 7.16 | 5.50 | 4.24 | 28 |
| 29 | 64.72 | 48.64 | 36.70 | 27.79 | 21.11 | 16.10 | 12.32 | 9.46 | 7.28 | 5.62 | 4.36 | 29 |
| 30 | 63.09 | 47.68 | 36.16 | 27.52 | 21.03 | 16.12 | 12.39 | 9.56 | 7.40 | 5.74 | 4.47 | 30 |
| 31 | 61.51 | 46.73 | 35.63 | 27.27 | 20.94 | 16.13 | 12.47 | 9.67 | 7.52 | 5.87 | 4.59 | 31 |
| 32 | 59.98 | 45.81 | 35.11 | 27.01 | 20.85 | 16.15 | 12.55 | 9.78 | 7.65 | 6.00 | 4.72 | 32 |
| 33 | 58.48 | 44.91 | 34.60 | 26.76 | 20.76 | 16.16 | 12.62 | 9.89 | 7.77 | 6.13 | 4.84 | 33 |
| 34 | 57.02 | 44.02 | 34.10 | 26.51 | 20.68 | 16.18 | 12.70 | 10.00 | 7.90 | 6.26 | 4.97 | 34 |
| 35 | 55.59 | 43.14 | 33.60 | 26.26 | 20.59 | 16.20 | 12.78 | 10.12 | 8.03 | 6.39 | 5.10 | 35 |
| 36 | 54.20 | 42.29 | 33.11 | 26.01 | 20.50 | 16.21 | 12.86 | 10.23 | 8.16 | 6.53 | 5.24 | 36 |
| 37 | 52.85 | 41.45 | 32.63 | 25.77 | 20.42 | 16.23 | 12.94 | 10.35 | 8.30 | 6.67 | 5.38 | 37 |
| 38 | 51.53 | 40.64 | 32.16 | 25.53 | 20.33 | 16.25 | 13.02 | 10.46 | 8.44 | 6.82 | 5.53 | 38 |
| 39 | 50.24 | 39.83 | 31.69 | 25.29 | 20.25 | 16.26 | 13.10 | 10.58 | 8.57 | 6.97 | 5.67 | 39 |
| 40 | 48.99 | 39.05 | 31.23 | 25.06 | 20.17 | 16.28 | 13.18 | 10.70 | 8.72 | 7.12 | 5.83 | 40 |
| 41 | 47.77 | 38.28 | 30.78 | 24.82 | 20.08 | 16.30 | 13.27 | 10.83 | 8.86 | 7.27 | 5.98 | 41 |
| 42 | 46.58 | 37.53 | 30.34 | 24.60 | 20.00 | 16.32 | 13.35 | 10.95 | 9.01 | 7.43 | 6.14 | 42 |
| 43 | 45.43 | 36.80 | 29.91 | 24.37 | 19.93 | 16.34 | 13.44 | 11.08 | 9.16 | 7.59 | 6.31 | 43 |
| 44 | 44.31 | 36.08 | 29.48 | 24.15 | 19.85 | 16.36 | 13.52 | 11.21 | 9.31 | 7.76 | 6.48 | 44 |
| 45 | 43.23 | 35.39 | 29.06 | 23.94 | 19.78 | 16.39 | 13.61 | 11.34 | 9.47 | 7.93 | 6.66 | 45 |
| 46 | 42.17 | 34.70 | 28.65 | 23.73 | 19.70 | 16.41 | 13.70 | 11.47 | 9.63 | 8.11 | 6.84 | 46 |
| 47 | 41.14 | 34.04 | 28.25 | 23.52 | 19.63 | 16.44 | 13.80 | 11.61 | 9.80 | 8.29 | 7.03 | 47 |
| 48 | 40.14 | 33.39 | 27.86 | 23.32 | 19.57 | 16.47 | 13.89 | 11.75 | 9.97 | 8.47 | 7.22 | 48 |
| 49 | 39.18 | 32.77 | 27.49 | 23.12 | 19.51 | 16.50 | 13.99 | 11.90 | 10.14 | 8.67 | 7.42 | 49 |
| 50 | 38.25 | 32.16 | 27.12 | 22.93 | 19.45 | 16.54 | 14.10 | 12.05 | 10.32 | 8.86 | 7.63 | 50 |
| 51 | 37.34 | 31.56 | 26.76 | 22.75 | 19.39 | 16.57 | 14.20 | 12.20 | 10.51 | 9.07 | 7.84 | 51 |
| 52 | 36.46 | 30.99 | 26.41 | 22.57 | 19.34 | 16.62 | 14.31 | 12.36 | 10.69 | 9.28 | 8.06 | 52 |
| 53 | 35.61 | 30.43 | 26.07 | 22.40 | 19.29 | 16.66 | 14.42 | 12.52 | 10.89 | 9.49 | 8.30 | 53 |
| 54 | 34.79 | 29.89 | 25.74 | 22.23 | 19.25 | 16.71 | 14.54 | 12.69 | 11.09 | 9.72 | 8.53 | 54 |
| 55 | 34.00 | 29.36 | 25.43 | 22.08 | 19.21 | 16.77 | 14.67 | 12.86 | 11.30 | 9.95 | 8.78 | 55 |
| 56 | 33.24 | 28.86 | 25.12 | 21.93 | 19.19 | 16.83 | 14.80 | 13.04 | 11.52 | 10.19 | 9.04 | 56 |
| 57 | 32.51 | 28.37 | 24.83 | 21.79 | 19.16 | 16.89 | 14.93 | 13.23 | 11.74 | 10.44 | 9.31 | 57 |
| 58 | 31.79 | 27.90 | 24.54 | 21.65 | 19.14 | 16.96 | 15.07 | 13.42 | 11.97 | 10.70 | 9.59 | 58 |
| 59 | 31.10 | 27.43 | 24.26 | 21.51 | 19.12 | 17.03 | 15.21 | 13.61 | 12.21 | 10.97 | 9.88 | 59 |
| 60 | 30.41 | 26.97 | 23.98 | 21.37 | 19.10 | 17.10 | 15.35 | 13.81 | 12.44 | 11.24 | 10.17 | 60 |
| 61 | 29.74 | 26.52 | 23.71 | 21.24 | 19.08 | 17.17 | 15.49 | 14.01 | 12.69 | 11.52 | 10.48 | 61 |
| 62 | 29.10 | 26.09 | 23.44 | 21.11 | 19.06 | 17.25 | 15.64 | 14.22 | 12.94 | 11.81 | 10.80 | 62 |
| 63 | 28.48 | 25.67 | 23.19 | 21.00 | 19.06 | 17.33 | 15.80 | 14.43 | 13.21 | 12.11 | 11.13 | 63 |
| 64 | 27.90 | 25.28 | 22.96 | 20.90 | 19.07 | 17.43 | 15.97 | 14.67 | 13.49 | 12.43 | 11.48 | 64 |
| 65 | 27.36 | 24.92 | 22.75 | 20.82 | 19.10 | 17.55 | 16.17 | 14.92 | 13.79 | 12.78 | 11.86 | 65 |
| 66 | 26.86 | 24.60 | 22.58 | 20.77 | 19.15 | 17.69 | 16.38 | 15.19 | 14.12 | 13.15 | 12.26 | 66 |
| 67 | 26.40 | 24.30 | 22.43 | 20.74 | 19.22 | 17.85 | 16.61 | 15.49 | 14.47 | 13.54 | 12.69 | 67 |
| 68 | 25.97 | 24.04 | 22.30 | 20.73 | 19.32 | 18.03 | 16.87 | 15.81 | 14.84 | 13.96 | 13.15 | 68 |
| 69 | 25.57 | 23.79 | 22.19 | 20.74 | 19.43 | 18.23 | 17.14 | 16.15 | 15.24 | 14.40 | 13.64 | 69 |
| 70 | 25.19 | 23.57 | 22.10 | 20.76 | 19.55 | 18.44 | 17.43 | 16.50 | 15.65 | 14.87 | 14.15 | 70 |

**Table 25    Multipliers for loss of pension commencing age 75 (males)**

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 0 | 97.81 | 62.36 | 39.93 | 25.68 | 16.58 | 10.74 | 6.99 | 4.57 | 2.99 | 1.97 | 1.30 | 0 |
| 1 | 95.69 | 61.34 | 39.49 | 25.52 | 16.56 | 10.79 | 7.06 | 4.63 | 3.05 | 2.02 | 1.34 | 1 |
| 2 | 93.15 | 60.03 | 38.85 | 25.24 | 16.47 | 10.79 | 7.09 | 4.68 | 3.10 | 2.06 | 1.37 | 2 |
| 3 | 90.66 | 58.74 | 38.22 | 24.97 | 16.37 | 10.78 | 7.12 | 4.73 | 3.15 | 2.10 | 1.41 | 3 |
| 4 | 88.23 | 57.47 | 37.59 | 24.69 | 16.28 | 10.77 | 7.16 | 4.77 | 3.19 | 2.14 | 1.44 | 4 |
| 5 | 85.86 | 56.23 | 36.98 | 24.41 | 16.18 | 10.76 | 7.19 | 4.82 | 3.24 | 2.19 | 1.48 | 5 |
| 6 | 83.55 | 55.01 | 36.37 | 24.14 | 16.08 | 10.75 | 7.22 | 4.86 | 3.29 | 2.23 | 1.52 | 6 |
| 7 | 81.31 | 53.82 | 35.77 | 23.86 | 15.98 | 10.74 | 7.25 | 4.91 | 3.33 | 2.27 | 1.55 | 7 |
| 8 | 79.12 | 52.65 | 35.18 | 23.59 | 15.88 | 10.73 | 7.28 | 4.95 | 3.38 | 2.32 | 1.59 | 8 |
| 9 | 76.97 | 51.50 | 34.59 | 23.32 | 15.79 | 10.72 | 7.31 | 5.00 | 3.43 | 2.36 | 1.63 | 9 |
| 10 | 74.89 | 50.37 | 34.02 | 23.06 | 15.69 | 10.71 | 7.34 | 5.05 | 3.48 | 2.41 | 1.67 | 10 |
| 11 | 72.85 | 49.27 | 33.45 | 22.79 | 15.59 | 10.70 | 7.37 | 5.09 | 3.53 | 2.46 | 1.71 | 11 |
| 12 | 70.88 | 48.19 | 32.89 | 22.53 | 15.49 | 10.69 | 7.40 | 5.14 | 3.58 | 2.50 | 1.76 | 12 |
| 13 | 68.96 | 47.14 | 32.34 | 22.27 | 15.39 | 10.67 | 7.43 | 5.19 | 3.63 | 2.55 | 1.80 | 13 |
| 14 | 67.09 | 46.10 | 31.80 | 22.02 | 15.29 | 10.66 | 7.46 | 5.23 | 3.68 | 2.60 | 1.84 | 14 |
| 15 | 65.27 | 45.10 | 31.27 | 21.76 | 15.20 | 10.65 | 7.49 | 5.28 | 3.74 | 2.65 | 1.89 | 15 |
| 16 | 63.50 | 44.11 | 30.75 | 21.51 | 15.10 | 10.64 | 7.52 | 5.33 | 3.79 | 2.71 | 1.94 | 16 |
| 17 | 61.78 | 43.15 | 30.24 | 21.27 | 15.01 | 10.63 | 7.55 | 5.38 | 3.85 | 2.76 | 1.98 | 17 |
| 18 | 60.12 | 42.21 | 29.74 | 21.03 | 14.92 | 10.62 | 7.58 | 5.43 | 3.90 | 2.81 | 2.03 | 18 |
| 19 | 58.50 | 41.29 | 29.25 | 20.79 | 14.82 | 10.61 | 7.61 | 5.48 | 3.96 | 2.87 | 2.08 | 19 |
| 20 | 56.93 | 40.40 | 28.77 | 20.55 | 14.74 | 10.60 | 7.65 | 5.53 | 4.02 | 2.92 | 2.13 | 20 |
| 21 | 55.40 | 39.52 | 28.29 | 20.32 | 14.65 | 10.59 | 7.68 | 5.59 | 4.08 | 2.98 | 2.19 | 21 |
| 22 | 53.90 | 38.66 | 27.82 | 20.09 | 14.55 | 10.58 | 7.71 | 5.64 | 4.13 | 3.04 | 2.24 | 22 |
| 23 | 52.44 | 37.81 | 27.36 | 19.86 | 14.46 | 10.57 | 7.74 | 5.69 | 4.19 | 3.10 | 2.30 | 23 |
| 24 | 51.02 | 36.99 | 26.90 | 19.63 | 14.37 | 10.55 | 7.77 | 5.74 | 4.25 | 3.16 | 2.35 | 24 |
| 25 | 49.64 | 36.18 | 26.46 | 19.41 | 14.28 | 10.54 | 7.81 | 5.80 | 4.31 | 3.22 | 2.41 | 25 |
| 26 | 48.31 | 35.40 | 26.02 | 19.19 | 14.20 | 10.53 | 7.84 | 5.85 | 4.38 | 3.29 | 2.47 | 26 |
| 27 | 47.02 | 34.64 | 25.60 | 18.98 | 14.11 | 10.52 | 7.87 | 5.91 | 4.44 | 3.35 | 2.53 | 27 |
| 28 | 45.74 | 33.88 | 25.17 | 18.76 | 14.02 | 10.51 | 7.90 | 5.96 | 4.51 | 3.42 | 2.60 | 28 |
| 29 | 44.50 | 33.14 | 24.75 | 18.54 | 13.93 | 10.50 | 7.94 | 6.01 | 4.57 | 3.48 | 2.66 | 29 |
| 30 | 43.30 | 32.41 | 24.34 | 18.33 | 13.85 | 10.49 | 7.97 | 6.07 | 4.64 | 3.55 | 2.73 | 30 |
| 31 | 42.14 | 31.71 | 23.94 | 18.13 | 13.76 | 10.48 | 8.00 | 6.13 | 4.70 | 3.62 | 2.79 | 31 |
| 32 | 41.02 | 31.04 | 23.56 | 17.93 | 13.69 | 10.48 | 8.04 | 6.19 | 4.77 | 3.69 | 2.86 | 32 |
| 33 | 39.94 | 30.38 | 23.18 | 17.74 | 13.61 | 10.47 | 8.08 | 6.25 | 4.85 | 3.77 | 2.94 | 33 |
| 34 | 38.89 | 29.74 | 22.81 | 17.54 | 13.53 | 10.47 | 8.12 | 6.31 | 4.92 | 3.84 | 3.01 | 34 |
| 35 | 37.86 | 29.10 | 22.44 | 17.35 | 13.45 | 10.46 | 8.15 | 6.37 | 4.99 | 3.92 | 3.09 | 35 |
| 36 | 36.86 | 28.49 | 22.08 | 17.16 | 13.38 | 10.46 | 8.19 | 6.43 | 5.07 | 4.00 | 3.16 | 36 |
| 37 | 35.88 | 27.88 | 21.73 | 16.98 | 13.30 | 10.45 | 8.23 | 6.50 | 5.14 | 4.08 | 3.24 | 37 |
| 38 | 34.93 | 27.29 | 21.38 | 16.79 | 13.23 | 10.44 | 8.27 | 6.56 | 5.22 | 4.16 | 3.33 | 38 |
| 39 | 34.00 | 26.71 | 21.03 | 16.61 | 13.15 | 10.44 | 8.31 | 6.62 | 5.30 | 4.24 | 3.41 | 39 |
| 40 | 33.10 | 26.14 | 20.69 | 16.43 | 13.07 | 10.43 | 8.34 | 6.69 | 5.38 | 4.33 | 3.49 | 40 |
| 41 | 32.22 | 25.58 | 20.36 | 16.25 | 13.00 | 10.43 | 8.38 | 6.75 | 5.46 | 4.42 | 3.58 | 41 |
| 42 | 31.38 | 25.04 | 20.04 | 16.07 | 12.93 | 10.42 | 8.42 | 6.82 | 5.54 | 4.51 | 3.67 | 42 |
| 43 | 30.55 | 24.51 | 19.72 | 15.90 | 12.86 | 10.42 | 8.46 | 6.89 | 5.62 | 4.60 | 3.77 | 43 |
| 44 | 29.75 | 24.00 | 19.41 | 15.73 | 12.79 | 10.42 | 8.50 | 6.96 | 5.71 | 4.69 | 3.86 | 44 |
| 45 | 28.98 | 23.50 | 19.10 | 15.57 | 12.72 | 10.41 | 8.55 | 7.03 | 5.79 | 4.79 | 3.96 | 45 |
| 46 | 28.22 | 23.01 | 18.80 | 15.41 | 12.65 | 10.41 | 8.59 | 7.10 | 5.88 | 4.88 | 4.06 | 46 |
| 47 | 27.49 | 22.53 | 18.51 | 15.25 | 12.59 | 10.41 | 8.63 | 7.17 | 5.97 | 4.99 | 4.17 | 47 |
| 48 | 26.78 | 22.07 | 18.23 | 15.09 | 12.52 | 10.41 | 8.68 | 7.25 | 6.07 | 5.09 | 4.28 | 48 |
| 49 | 26.10 | 21.62 | 17.95 | 14.94 | 12.46 | 10.42 | 8.73 | 7.33 | 6.16 | 5.20 | 4.39 | 49 |
| 50 | 25.44 | 21.18 | 17.68 | 14.80 | 12.41 | 10.43 | 8.78 | 7.41 | 6.26 | 5.31 | 4.50 | 50 |
| 51 | 24.80 | 20.77 | 17.43 | 14.66 | 12.36 | 10.44 | 8.83 | 7.49 | 6.37 | 5.42 | 4.62 | 51 |
| 52 | 24.20 | 20.37 | 17.18 | 14.53 | 12.31 | 10.45 | 8.89 | 7.58 | 6.48 | 5.54 | 4.75 | 52 |
| 53 | 23.61 | 19.98 | 16.95 | 14.41 | 12.27 | 10.47 | 8.96 | 7.67 | 6.59 | 5.67 | 4.88 | 53 |
| 54 | 23.05 | 19.61 | 16.72 | 14.29 | 12.23 | 10.50 | 9.02 | 7.77 | 6.70 | 5.80 | 5.02 | 54 |
| 55 | 22.52 | 19.26 | 16.51 | 14.18 | 12.20 | 10.53 | 9.09 | 7.87 | 6.83 | 5.93 | 5.16 | 55 |
| 56 | 22.01 | 18.93 | 16.31 | 14.08 | 12.18 | 10.56 | 9.17 | 7.98 | 6.96 | 6.08 | 5.31 | 56 |
| 57 | 21.53 | 18.61 | 16.12 | 13.99 | 12.17 | 10.60 | 9.26 | 8.10 | 7.09 | 6.23 | 5.47 | 57 |
| 58 | 21.06 | 18.30 | 15.94 | 13.91 | 12.16 | 10.65 | 9.34 | 8.21 | 7.23 | 6.38 | 5.64 | 58 |
| 59 | 20.60 | 18.00 | 15.76 | 13.82 | 12.15 | 10.69 | 9.43 | 8.33 | 7.38 | 6.54 | 5.81 | 59 |
| 60 | 20.15 | 17.70 | 15.58 | 13.73 | 12.13 | 10.74 | 9.52 | 8.45 | 7.52 | 6.70 | 5.98 | 60 |
| 61 | 19.71 | 17.41 | 15.40 | 13.65 | 12.12 | 10.78 | 9.61 | 8.58 | 7.67 | 6.87 | 6.16 | 61 |
| 62 | 19.29 | 17.13 | 15.23 | 13.57 | 12.12 | 10.84 | 9.71 | 8.71 | 7.83 | 7.04 | 6.35 | 62 |
| 63 | 18.89 | 16.86 | 15.08 | 13.51 | 12.12 | 10.89 | 9.81 | 8.85 | 7.99 | 7.23 | 6.55 | 63 |
| 64 | 18.52 | 16.62 | 14.94 | 13.45 | 12.13 | 10.96 | 9.92 | 8.99 | 8.16 | 7.42 | 6.76 | 64 |
| 65 | 18.18 | 16.40 | 14.82 | 13.41 | 12.16 | 11.05 | 10.05 | 9.16 | 8.35 | 7.63 | 6.99 | 65 |
| 66 | 17.87 | 16.21 | 14.73 | 13.40 | 12.21 | 11.15 | 10.20 | 9.34 | 8.56 | 7.86 | 7.23 | 66 |
| 67 | 17.60 | 16.04 | 14.65 | 13.40 | 12.28 | 11.27 | 10.36 | 9.53 | 8.79 | 8.11 | 7.50 | 67 |
| 68 | 17.35 | 15.90 | 14.60 | 13.42 | 12.37 | 11.41 | 10.54 | 9.75 | 9.03 | 8.38 | 7.78 | 68 |
| 69 | 17.12 | 15.78 | 14.56 | 13.46 | 12.47 | 11.56 | 10.73 | 9.98 | 9.30 | 8.67 | 8.09 | 69 |

*continued*

**Table 25     Multipliers for loss of pension commencing age 75 (males)** *continued*

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 70 | 16.92 | 15.67 | 14.54 | 13.51 | 12.58 | 11.72 | 10.94 | 10.23 | 9.58 | 8.97 | 8.42 | 70 |
| 71 | 16.72 | 15.57 | 14.53 | 13.57 | 12.70 | 11.90 | 11.17 | 10.49 | 9.87 | 9.30 | 8.77 | 71 |
| 72 | 16.53 | 15.48 | 14.52 | 13.64 | 12.83 | 12.08 | 11.40 | 10.77 | 10.18 | 9.64 | 9.14 | 72 |
| 73 | 16.36 | 15.40 | 14.52 | 13.71 | 12.97 | 12.28 | 11.64 | 11.05 | 10.51 | 10.00 | 9.53 | 73 |
| 74 | 16.19 | 15.33 | 14.53 | 13.80 | 13.12 | 12.49 | 11.90 | 11.56 | 10.86 | 10.39 | 9.95 | 74 |
| 75 | 16.04 | 15.27 | 14.56 | 13.90 | 13.29 | 12.72 | 12.19 | 11.70 | 11.24 | 10.81 | 10.40 | 75 |

**227**

Table 26    Multipliers for loss of pension commencing age 75 (females)

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 0 | 114.99 | 73.05 | 46.61 | 29.87 | 19.22 | 12.42 | 8.06 | 5.25 | 3.43 | 2.25 | 1.48 | 0 |
| 1 | 112.51 | 71.86 | 46.09 | 29.69 | 19.21 | 12.48 | 8.13 | 5.33 | 3.50 | 2.31 | 1.53 | 1 |
| 2 | 109.64 | 70.40 | 45.40 | 29.40 | 19.12 | 12.48 | 8.18 | 5.38 | 3.56 | 2.36 | 1.57 | 2 |
| 3 | 106.83 | 68.96 | 44.71 | 29.10 | 19.02 | 12.49 | 8.23 | 5.44 | 3.61 | 2.41 | 1.61 | 3 |
| 4 | 104.08 | 67.55 | 44.02 | 28.81 | 18.93 | 12.49 | 8.27 | 5.50 | 3 67 | 2.46 | 1.65 | 4 |
| 5 | 101.41 | 66.16 | 43.35 | 28.52 | 18.84 | 12.49 | 8.32 | 5.56 | 3.73 | 2.51 | 1.69 | 5 |
| 6 | 98.79 | 64.80 | 42.69 | 28.23 | 18.75 | 12.50 | 8.36 | 5.62 | 3.79 | 2.56 | 1.74 | 6 |
| 7 | 96.24 | 63.47 | 42.03 | 27.94 | 18.65 | 12.50 | 8.41 | 5.67 | 3.84 | 2.61 | 1.78 | 7 |
| 8 | 93.75 | 62.16 | 41.38 | 27.66 | 18.56 | 12.50 | 8.45 | 5.73 | 3.90 | 2.67 | 1.83 | 8 |
| 9 | 91.32 | 60.87 | 40.74 | 27.37 | 18.46 | 12.50 | 8.50 | 5.79 | 3.97 | 2.72 | 1.88 | 9 |
| 10 | 88.95 | 59.61 | 40.11 | 27.09 | 18.37 | 12.50 | 8.54 | 5.85 | 4.03 | 2.78 | 1.92 | 10 |
| 11 | 86.65 | 58.38 | 39.49 | 26.82 | 18.28 | 12.50 | 8.59 | 5.92 | 4.09 | 2.84 | 1.97 | 11 |
| 12 | 84.41 | 57.17 | 38.88 | 26.54 | 18.18 | 12.51 | 8.63 | 5.98 | 4.15 | 2.90 | 2.03 | 12 |
| 13 | 82.21 | 55.99 | 38.27 | 26.26 | 18.09 | 12.51 | 8.68 | 6.04 | 4.22 | 2.96 | 2.08 | 13 |
| 14 | 80.08 | 54.83 | 37.68 | 25.99 | 18.00 | 12.51 | 8.72 | 6.10 | 4.28 | 3.02 | 2.13 | 14 |
| 15 | 78.00 | 53.69 | 37.09 | 25.73 | 17.91 | 12.51 | 8.77 | 6.16 | 4 35 | 3.08 | 2.19 | 15 |
| 16 | 75.98 | 52.58 | 36.52 | 25.46 | 17.81 | 12.51 | 8.81 | 6.23 | 4.42 | 3.14 | 2.24 | 16 |
| 17 | 74.00 | 51.48 | 35.95 | 25.20 | 17.72 | 12.51 | 8.86 | 6.29 | 4.49 | 3.21 | 2.30 | 17 |
| 18 | 72.08 | 50.42 | 35.39 | 24.94 | 17.63 | 12.51 | 8.90 | 6.36 | 4.55 | 3.27 | 2.36 | 18 |
| 19 | 70.22 | 49.37 | 34.84 | 24.68 | 17.54 | 12.51 | 8.95 | 6.42 | 4.63 | 3.34 | 2.42 | 19 |
| 20 | 68.41 | 48.36 | 34.31 | 24.43 | 17.45 | 12.51 | 9.00 | 6.49 | 4.70 | 3.41 | 2.48 | 20 |
| 21 | 66.64 | 47.36 | 33.78 | 24.18 | 17.36 | 12.51 | 9.05 | 6.56 | 4.77 | 3.48 | 2.55 | 21 |
| 22 | 64.91 | 46.38 | 33.26 | 23.93 | 17.27 | 12.51 | 9.09 | 6.63 | 4.85 | 3.55 | 2.61 | 22 |
| 23 | 63.22 | 45.41 | 32.73 | 23.68 | 17.18 | 12.51 | 9.14 | 6.69 | 4.92 | 3.63 | 2.68 | 23 |
| 24 | 61.56 | 44.46 | 32.22 | 23.43 | 17.09 | 12.51 | 9.18 | 6.76 | 4.99 | 3.70 | 2.75 | 24 |
| 25 | 59.96 | 43.53 | 31.71 | 23.18 | 17.00 | 12.51 | 9.23 | 6.83 | 5.07 | 3.78 | 2.82 | 25 |
| 26 | 58.40 | 42.63 | 31.22 | 22.94 | 16.91 | 12.51 | 9.28 | 6.90 | 5.15 | 3.85 | 2.89 | 26 |
| 27 | 56.88 | 41.74 | 30.73 | 22.70 | 16.82 | 12.51 | 9.32 | 6.97 | 5.23 | 3.93 | 2.97 | 27 |
| 28 | 55.40 | 40.87 | 30.25 | 22.47 | 16.74 | 12.50 | 9.37 | 7.04 | 5.31 | 4.01 | 3.04 | 28 |
| 29 | 53.96 | 40.02 | 29.78 | 22.23 | 16.65 | 12.50 | 9.42 | 7.12 | 5.39 | 4.10 | 3.12 | 29 |
| 30 | 52.56 | 39.19 | 29.32 | 22.00 | 16.56 | 12.50 | 9.47 | 7.19 | 5.47 | 4.18 | 3.20 | 30 |
| 31 | 51.20 | 38.38 | 28.86 | 21.78 | 16.48 | 12 50 | 9.52 | 7.26 | 5.56 | 4.27 | 3.28 | 31 |
| 32 | 49.88 | 37.59 | 28.42 | 21.55 | 16.39 | 12.51 | 9.57 | 7.34 | 5.65 | 4.35 | 3.37 | 32 |
| 33 | 48.59 | 36.82 | 27.98 | 21.33 | 16.31 | 12.51 | 9.62 | 7.42 | 5 73 | 4.44 | 3.45 | 33 |
| 34 | 47.33 | 36.05 | 27.55 | 21.11 | 16.23 | 12.51 | 9.67 | 7.49 | 5.82 | 4.54 | 3.54 | 34 |
| 35 | 46.10 | 35.30 | 27.12 | 20.89 | 16.14 | 12.51 | 9.72 | 7.57 | 5.91 | 4.63 | 3.63 | 35 |
| 36 | 44.91 | 34.57 | 26.70 | 20.68 | 16.06 | 12.51 | 9.77 | 7.65 | 6.00 | 4.73 | 3.73 | 36 |
| 37 | 43.75 | 33.86 | 26.29 | 20.47 | 15.98 | 12.51 | 9.82 | 7.73 | 6.10 | 4.82 | 3.82 | 37 |
| 38 | 42.62 | 33.16 | 25.88 | 20.26 | 15.90 | 12.51 | 9.87 | 7.81 | 6.19 | 4.92 | 3.92 | 38 |
| 39 | 41.52 | 32.48 | 25.48 | 20.05 | 15.82 | 12.51 | 9.92 | 7.89 | 6.29 | 5.02 | 4.02 | 39 |
| 40 | 40.44 | 31.81 | 25.09 | 19.84 | 15.73 | 12.51 | 9.97 | 7.97 | 6.39 | 5.13 | 4.13 | 40 |
| 41 | 39.40 | 31.15 | 24.70 | 19.64 | 15.66 | 12.51 | 10.03 | 8.05 | 6.49 | 5.23 | 4.23 | 41 |
| 42 | 38.38 | 30.51 | 24.32 | 19.44 | 15.58 | 12.52 | 10.08 | 8.14 | 6.59 | 5.34 | 4.34 | 42 |
| 43 | 37.40 | 29.89 | 23.95 | 19.24 | 15 50 | 12.52 | 10.13 | 8.22 | 6.69 | 5.45 | 4.46 | 43 |
| 44 | 36.44 | 29.28 | 23.59 | 19.05 | 15.43 | 12.52 | 10.19 | 8.31 | 6.80 | 5.57 | 4.57 | 44 |
| 45 | 35.52 | 28.69 | 23.23 | 18.86 | 15.35 | 12.53 | 10.25 | 8.40 | 6.90 | 5.69 | 4.69 | 45 |
| 46 | 34.61 | 28.10 | 22.88 | 18.68 | 15.28 | 12.53 | 10.31 | 8.49 | 7.01 | 5.81 | 4.82 | 46 |
| 47 | 33.75 | 27.54 | 22.54 | 18.49 | 15.21 | 12.54 | 10.36 | 8.58 | 7.13 | 5.93 | 4.94 | 47 |
| 48 | 32.89 | 26.99 | 22.21 | 18.32 | 15.14 | 12.55 | 10.43 | 8.68 | 7.24 | 6.06 | 5.07 | 48 |
| 49 | 32.07 | 26.46 | 21.88 | 18.15 | 15.08 | 12.56 | 10.49 | 8.78 | 7.36 | 6 19 | 5.21 | 49 |
| 50 | 31.27 | 25.94 | 21.57 | 17.98 | 15.02 | 12.58 | 10.56 | 8.88 | 7.48 | 6.32 | 5.35 | 50 |
| 51 | 30.50 | 25.43 | 21.26 | 17.81 | 14.96 | 12.59 | 10.62 | 8.98 | 7.61 | 6.46 | 5.49 | 51 |
| 52 | 29.75 | 24.94 | 20.96 | 17.65 | 14.90 | 12.61 | 10.69 | 9.09 | 7.74 | 6.60 | 5.64 | 52 |
| 53 | 29.03 | 24.47 | 20.67 | 17.50 | 14.85 | 12.63 | 10.77 | 9.20 | 7.87 | 6.75 | 5.80 | 53 |
| 54 | 28.33 | 24.01 | 20.39 | 17.35 | 14.80 | 12.66 | 10.84 | 9.31 | 8.01 | 6.90 | 5.96 | 54 |
| 55 | 27.66 | 23.56 | 20.12 | 17.21 | 14.76 | 12.69 | 10.92 | 9.43 | 8.15 | 7.06 | 6.12 | 55 |
| 56 | 27.02 | 23.14 | 19.86 | 17.08 | 14.72 | 12.72 | 11.01 | 9.55 | 8.30 | 7.22 | 6.30 | 56 |
| 57 | 26.39 | 22.72 | 19.60 | 16.95 | 14.69 | 12.75 | 11.10 | 9.67 | 8.45 | 7.39 | 6.48 | 57 |
| 58 | 25.78 | 22.32 | 19.36 | 16.83 | 14.66 | 12.79 | 11.19 | 9.80 | 8.60 | 7.56 | 6.66 | 58 |
| 59 | 25.19 | 21.92 | 19.11 | 16.70 | 14.62 | 12.83 | 11.28 | 9.93 | 8.76 | 7.74 | 6.85 | 59 |
| 60 | 24.61 | 21.53 | 18.87 | 16.57 | 14.59 | 12.86 | 11.37 | 10.06 | 8 92 | 7.92 | 7.05 | 60 |
| 61 | 24.04 | 21.14 | 18.63 | 16.45 | 14.55 | 12.90 | 11.46 | 10.19 | 9.08 | 8.11 | 7.25 | 61 |
| 62 | 23.49 | 20.77 | 18.40 | 16.33 | 14.52 | 12.94 | 11.55 | 10.33 | 9.25 | 8.30 | 7.46 | 62 |
| 63 | 22.96 | 20.41 | 18.17 | 16.22 | 14.50 | 12.99 | 11.65 | 10.47 | 9.43 | 8.50 | 7.68 | 63 |
| 64 | 22.46 | 20.07 | 17.97 | 16.12 | 14.48 | 13.04 | 11.76 | 10.63 | 9.62 | 8.71 | 7.91 | 64 |
| 65 | 22.00 | 19.76 | 17.78 | 16.04 | 14.49 | 13.11 | 11.89 | 10.79 | 9.82 | 8.94 | 8.16 | 65 |
| 66 | 21.56 | 19.48 | 17.62 | 15.97 | 14.51 | 13.20 | 12.03 | 10.98 | 10.03 | 9.19 | 8.42 | 66 |
| 67 | 21.16 | 19.22 | 17.48 | 15.93 | 14.54 | 13.30 | 12.18 | 11.17 | 10.27 | 9.45 | 8.71 | 67 |
| 68 | 20.79 | 18.98 | 17.36 | 15.90 | 14.59 | 13.41 | 12.35 | 11.39 | 10.51 | 9.72 | 9.01 | 68 |
| 69 | 20.44 | 18.76 | 17.25 | 15.88 | 14.65 | 13.54 | 12.53 | 11.61 | 10.78 | 10.02 | 9.33 | 69 |

*continued*

**228**

Table 26    Multipliers for loss of pension commencing age 75 (females) *continued*

| Age at date of trial | Multiplier calculated with allowance for projected mortality from the 2008-based population projections and rate of return of | | | | | | | | | | | Age at date of trial |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | |
| 70 | 20.11 | 18.55 | 17.15 | 15.87 | 14.72 | 13.67 | 12.72 | 11.85 | 11.05 | 10.33 | 9.66 | 70 |
| 71 | 19.78 | 18.35 | 17.05 | 15.87 | 14.79 | 13.81 | 12.91 | 12.09 | 11.34 | 10.65 | 10.01 | 71 |
| 72 | 19.46 | 18.14 | 16.95 | 15.86 | 14.86 | 13.95 | 13.11 | 12.34 | 11.63 | 10.98 | 10.38 | 72 |
| 73 | 19.13 | 17.93 | 16.84 | 15.84 | 14.93 | 14.08 | 13.31 | 12.59 | 11.93 | 11.32 | 10.75 | 73 |
| 74 | 18.80 | 17.72 | 16.74 | 15.83 | 15.00 | 14.23 | 13.51 | 12.86 | 12.24 | 11.68 | 11.15 | 74 |
| 75 | 18.48 | 17.53 | 16.64 | 15.83 | 15.08 | 14.38 | 13.74 | 13.14 | 12.58 | 12.06 | 11.58 | 75 |

**Table 27    Discounting factors for term certain**

Factor to discount value of multiplier for a period of deferment

| Term | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | Term |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1.0204 | 1.0152 | 1.0101 | 1.0050 | 1.0000 | 0.9950 | 0.9901 | 0.9852 | 0.9804 | 0.9756 | 0.9709 | 1 |
| 2 | 1.0412 | 1.0307 | 1.0203 | 1.0101 | 1.0000 | 0.9901 | 0.9803 | 0.9707 | 0.9612 | 0.9518 | 0.9426 | 2 |
| 3 | 1.0625 | 1.0464 | 1.0306 | 1.0152 | 1.0000 | 0.9851 | 0.9706 | 0.9563 | 0.9423 | 0.9286 | 0.9151 | 3 |
| 4 | 1.0842 | 1.0623 | 1.0410 | 1.0203 | 1.0000 | 0.9802 | 0.9610 | 0.9422 | 0.9238 | 0.9060 | 0.8885 | 4 |
| 5 | 1.1063 | 1.0785 | 1.0515 | 1.0254 | 1.0000 | 0.9754 | 0.9515 | 0.9283 | 0.9057 | 0.8839 | 0.8626 | 5 |
| 6 | 1.1289 | 1.0949 | 1.0622 | 1.0305 | 1.0000 | 0.9705 | 0.9420 | 0.9145 | 0.8880 | 0.8623 | 0.8375 | 6 |
| 7 | 1.1519 | 1.1116 | 1.0729 | 1.0357 | 1.0000 | 0.9657 | 0.9327 | 0.9010 | 0.8706 | 0.8413 | 0.8131 | 7 |
| 8 | 1.1754 | 1.1285 | 1.0837 | 1.0409 | 1.0000 | 0.9609 | 0.9235 | 0.8877 | 0.8535 | 0.8207 | 0.7894 | 8 |
| 9 | 1.1994 | 1.1457 | 1.0947 | 1.0461 | 1.0000 | 0.9561 | 0.9143 | 0.8746 | 0.8368 | 0.8007 | 0.7664 | 9 |
| 10 | 1.2239 | 1.1632 | 1.1057 | 1.0514 | 1.0000 | 0.9513 | 0.9053 | 0.8617 | 0.8203 | 0.7812 | 0.7441 | 10 |
| 11 | 1.2489 | 1.1809 | 1.1169 | 1.0567 | 1.0000 | 0.9466 | 0.8963 | 0.8489 | 0.8043 | 0.7621 | 0.7224 | 11 |
| 12 | 1.2743 | 1.1989 | 1.1282 | 1.0620 | 1.0000 | 0.9419 | 0.8874 | 0.8364 | 0.7885 | 0.7436 | 0.7014 | 12 |
| 13 | 1.3004 | 1.2171 | 1.1396 | 1.0673 | 1.0000 | 0.9372 | 0.8787 | 0.8240 | 0.7730 | 0.7254 | 0.6810 | 13 |
| 14 | 1.3269 | 1.2356 | 1.1511 | 1.0727 | 1.0000 | 0.9326 | 0.8700 | 0.8118 | 0.7579 | 0.7077 | 0.6611 | 14 |
| 15 | 1.3540 | 1.2545 | 1.1627 | 1.0781 | 1.0000 | 0.9279 | 0.8613 | 0.7999 | 0.7430 | 0.6905 | 0.6419 | 15 |
| 16 | 1.3816 | 1.2736 | 1.1745 | 1.0835 | 1.0000 | 0.9233 | 0.8528 | 0.7880 | 0.7284 | 0.6736 | 0.6232 | 16 |
| 17 | 1.4098 | 1.2930 | 1.1863 | 1.0889 | 1.0000 | 0.9187 | 0.8444 | 0.7764 | 0.7142 | 0.6572 | 0.6050 | 17 |
| 18 | 1.4386 | 1.3126 | 1.1983 | 1.0944 | 1.0000 | 0.9141 | 0.8360 | 0.7649 | 0.7002 | 0.6412 | 0.5874 | 18 |
| 19 | 1.4679 | 1.3326 | 1.2104 | 1.0999 | 1.0000 | 0.9096 | 0.8277 | 0.7536 | 0.6864 | 0.6255 | 0.5703 | 19 |
| 20 | 1.4979 | 1.3529 | 1.2226 | 1.1054 | 1.0000 | 0.9051 | 0.8195 | 0.7425 | 0.6730 | 0.6103 | 0.5537 | 20 |
| 21 | 1.5285 | 1.3735 | 1.2350 | 1.1110 | 1.0000 | 0.9006 | 0.8114 | 0.7315 | 0.6598 | 0.5954 | 0.5375 | 21 |
| 22 | 1.5596 | 1.3944 | 1.2475 | 1.1166 | 1.0000 | 0.8961 | 0.8034 | 0.7207 | 0.6468 | 0.5809 | 0.5219 | 22 |
| 23 | 1.5915 | 1.4157 | 1.2601 | 1.1222 | 1.0000 | 0.8916 | 0.7954 | 0.7100 | 0.6342 | 0.5667 | 0.5067 | 23 |
| 24 | 1.6240 | 1.4372 | 1.2728 | 1.1278 | 1.0000 | 0.8872 | 0.7876 | 0.6995 | 0.6217 | 0.5529 | 0.4919 | 24 |
| 25 | 1.6571 | 1.4591 | 1.2856 | 1.1335 | 1.0000 | 0.8828 | 0.7798 | 0.6892 | 0.6095 | 0.5394 | 0.4776 | 25 |
| 26 | 1.6909 | 1.4814 | 1.2986 | 1.1392 | 1.0000 | 0.8784 | 0.7720 | 0.6790 | 0.5976 | 0.5262 | 0.4637 | 26 |
| 27 | 1.7254 | 1.5039 | 1.3117 | 1.1449 | 1.0000 | 0.8740 | 0.7644 | 0.6690 | 0.5859 | 0.5134 | 0.4502 | 27 |
| 28 | 1.7606 | 1.5268 | 1.3250 | 1.1507 | 1.0000 | 0.8697 | 0.7568 | 0.6591 | 0.5744 | 0.5009 | 0.4371 | 28 |
| 29 | 1.7966 | 1.5501 | 1.3384 | 1.1565 | 1.0000 | 0.8653 | 0.7493 | 0.6494 | 0.5631 | 0.4887 | 0.4243 | 29 |
| 30 | 1.8332 | 1.5737 | 1.3519 | 1.1623 | 1.0000 | 0.8610 | 0.7419 | 0.6398 | 0.5521 | 0.4767 | 0.4120 | 30 |
| 31 | 1.8706 | 1.5976 | 1.3656 | 1.1681 | 1.0000 | 0.8567 | 0.7346 | 0.6303 | 0.5412 | 0.4651 | 0.4000 | 31 |
| 32 | 1.9088 | 1.6220 | 1.3793 | 1.1740 | 1.0000 | 0.8525 | 0.7273 | 0.6210 | 0.5306 | 0.4538 | 0.3883 | 32 |
| 33 | 1.9478 | 1.6467 | 1.3933 | 1.1799 | 1.0000 | 0.8482 | 0.7201 | 0.6118 | 0.5202 | 0.4427 | 0.3770 | 33 |
| 34 | 1.9875 | 1.6717 | 1.4074 | 1.1858 | 1.0000 | 0.8440 | 0.7130 | 0.6028 | 0.5100 | 0.4319 | 0.3660 | 34 |
| 35 | 2.0281 | 1.6972 | 1.4216 | 1.1918 | 1.0000 | 0.8398 | 0.7059 | 0.5939 | 0.5000 | 0.4214 | 0.3554 | 35 |
| 36 | 2.0695 | 1.7230 | 1.4359 | 1.1978 | 1.0000 | 0.8356 | 0.6989 | 0.5851 | 0.4902 | 0.4111 | 0.3450 | 36 |
| 37 | 2.1117 | 1.7493 | 1.4504 | 1.2038 | 1.0000 | 0.8315 | 0.6920 | 0.5764 | 0.4806 | 0.4011 | 0.3350 | 37 |
| 38 | 2.1548 | 1.7759 | 1.4651 | 1.2098 | 1.0000 | 0.8274 | 0.6852 | 0.5679 | 0.4712 | 0.3913 | 0.3252 | 38 |
| 39 | 2.1988 | 1.8030 | 1.4799 | 1.2159 | 1.0000 | 0.8232 | 0.6784 | 0.5595 | 0.4619 | 0.3817 | 0.3158 | 39 |
| 40 | 2.2437 | 1.8304 | 1.4948 | 1.2220 | 1.0000 | 0.8191 | 0.6717 | 0.5513 | 0.4529 | 0.3724 | 0.3066 | 40 |
| 41 | 2.2894 | 1.8583 | 1.5099 | 1.2282 | 1.0000 | 0.8151 | 0.6650 | 0.5431 | 0.4440 | 0.3633 | 0.2976 | 41 |
| 42 | 2.3362 | 1.8866 | 1.5252 | 1.2343 | 1.0000 | 0.8110 | 0.6584 | 0.5351 | 0.4353 | 0.3545 | 0.2890 | 42 |
| 43 | 2.3838 | 1.9153 | 1.5406 | 1.2405 | 1.0000 | 0.8070 | 0.6519 | 0.5272 | 0.4268 | 0.3458 | 0.2805 | 43 |
| 44 | 2.4325 | 1.9445 | 1.5561 | 1.2468 | 1.0000 | 0.8030 | 0.6454 | 0.5194 | 0.4184 | 0.3374 | 0.2724 | 44 |
| 45 | 2.4821 | 1.9741 | 1.5719 | 1.2530 | 1.0000 | 0.7990 | 0.6391 | 0.5117 | 0.4102 | 0.3292 | 0.2644 | 45 |
| 46 | 2.5328 | 2.0042 | 1.5877 | 1.2593 | 1.0000 | 0.7950 | 0.6327 | 0.5042 | 0.4022 | 0.3211 | 0.2567 | 46 |
| 47 | 2.5845 | 2.0347 | 1.6038 | 1.2657 | 1.0000 | 0.7910 | 0.6265 | 0.4967 | 0.3943 | 0.3133 | 0.2493 | 47 |
| 48 | 2.6372 | 2.0657 | 1.6200 | 1.2720 | 1.0000 | 0.7871 | 0.6203 | 0.4894 | 0.3865 | 0.3057 | 0.2420 | 48 |
| 49 | 2.6911 | 2.0971 | 1.6363 | 1.2784 | 1.0000 | 0.7832 | 0.6141 | 0.4821 | 0.3790 | 0.2982 | 0.2350 | 49 |
| 50 | 2.7460 | 2.1291 | 1.6529 | 1.2848 | 1.0000 | 0.7793 | 0.6080 | 0.4750 | 0.3715 | 0.2909 | 0.2281 | 50 |
| 51 | 2.8020 | 2.1615 | 1.6696 | 1.2913 | 1.0000 | 0.7754 | 0.6020 | 0.4680 | 0.3642 | 0.2838 | 0.2215 | 51 |
| 52 | 2.8592 | 2.1944 | 1.6864 | 1.2978 | 1.0000 | 0.7716 | 0.5961 | 0.4611 | 0.3571 | 0.2769 | 0.2150 | 52 |
| 53 | 2.9175 | 2.2278 | 1.7035 | 1.3043 | 1.0000 | 0.7677 | 0.5902 | 0.4543 | 0.3501 | 0.2702 | 0.2088 | 53 |
| 54 | 2.9771 | 2.2617 | 1.7207 | 1.3109 | 1.0000 | 0.7639 | 0.5843 | 0.4475 | 0.3432 | 0.2636 | 0.2027 | 54 |
| 55 | 3.0378 | 2.2962 | 1.7381 | 1.3174 | 1.0000 | 0.7601 | 0.5785 | 0.4409 | 0.3365 | 0.2572 | 0.1968 | 55 |
| 56 | 3.0998 | 2.3312 | 1.7556 | 1.3241 | 1.0000 | 0.7563 | 0.5728 | 0.4344 | 0.3299 | 0.2509 | 0.1910 | 56 |
| 57 | 3.1631 | 2.3667 | 1.7733 | 1.3307 | 1.0000 | 0.7525 | 0.5671 | 0.4280 | 0.3234 | 0.2448 | 0.1855 | 57 |
| 58 | 3.2277 | 2.4027 | 1.7913 | 1.3374 | 1.0000 | 0.7488 | 0.5615 | 0.4217 | 0.3171 | 0.2388 | 0.1801 | 58 |
| 59 | 3.2935 | 2.4393 | 1.8094 | 1.3441 | 1.0000 | 0.7451 | 0.5560 | 0.4154 | 0.3109 | 0.2330 | 0.1748 | 59 |
| 60 | 3.3607 | 2.4764 | 1.8276 | 1.3509 | 1.0000 | 0.7414 | 0.5504 | 0.4093 | 0.3048 | 0.2273 | 0.1697 | 60 |
| 61 | 3.4293 | 2.5141 | 1.8461 | 1.3577 | 1.0000 | 0.7377 | 0.5450 | 0.4032 | 0.2988 | 0.2217 | 0.1648 | 61 |
| 62 | 3.4993 | 2.5524 | 1.8647 | 1.3645 | 1.0000 | 0.7340 | 0.5396 | 0.3973 | 0.2929 | 0.2163 | 0.1600 | 62 |
| 63 | 3.5707 | 2.5913 | 1.8836 | 1.3713 | 1.0000 | 0.7304 | 0.5343 | 0.3914 | 0.2872 | 0.2111 | 0.1553 | 63 |
| 64 | 3.6436 | 2.6308 | 1.9026 | 1.3782 | 1.0000 | 0.7267 | 0.5290 | 0.3856 | 0.2816 | 0.2059 | 0.1508 | 64 |
| 65 | 3.7180 | 2.6708 | 1.9218 | 1.3852 | 1.0000 | 0.7231 | 0.5237 | 0.3799 | 0.2761 | 0.2009 | 0.1464 | 65 |
| 66 | 3.7938 | 2.7115 | 1.9412 | 1.3921 | 1.0000 | 0.7195 | 0.5185 | 0.3743 | 0.2706 | 0.1960 | 0.1421 | 66 |
| 67 | 3.8713 | 2.7528 | 1.9608 | 1.3991 | 1.0000 | 0.7159 | 0.5134 | 0.3688 | 0.2653 | 0.1912 | 0.1380 | 67 |
| 68 | 3.9503 | 2.7947 | 1.9806 | 1.4061 | 1.0000 | 0.7124 | 0.5083 | 0.3633 | 0.2601 | 0.1865 | 0.1340 | 68 |
| 69 | 4.0309 | 2.8373 | 2.0007 | 1.4132 | 1.0000 | 0.7088 | 0.5033 | 0.3580 | 0.2550 | 0.1820 | 0.1301 | 69 |
| 70 | 4.1132 | 2.8805 | 2.0209 | 1.4203 | 1.0000 | 0.7053 | 0.4983 | 0.3527 | 0.2500 | 0.1776 | 0.1263 | 70 |

*continued*

**230**

**Table 27    Discounting factors for term certain** *continued*

Factor to discount value of multiplier for a period of deferment

| Term | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | Term |
|------|-------|-------|-------|-------|------|------|------|------|------|------|------|------|
| 71 | 4.1971 | 2.9243 | 2.0413 | 1.4275 | 1.0000 | 0.7018 | 0.4934 | 0.3475 | 0.2451 | 0.1732 | 0.1226 | 71 |
| 72 | 4.2827 | 2.9689 | 2.0619 | 1.4346 | 1.0000 | 0.6983 | 0.4885 | 0.3423 | 0.2403 | 0.1690 | 0.1190 | 72 |
| 73 | 4.3702 | 3.0141 | 2.0827 | 1.4418 | 1.0000 | 0.6948 | 0.4837 | 0.3373 | 0.2356 | 0.1649 | 0.1156 | 73 |
| 74 | 4.4593 | 3.0600 | 2.1038 | 1.4491 | 1.0000 | 0.6914 | 0.4789 | 0.3323 | 0.2310 | 0.1609 | 0.1122 | 74 |
| 75 | 4.5503 | 3.1066 | 2.1250 | 1.4564 | 1.0000 | 0.6879 | 0.4741 | 0.3274 | 0.2265 | 0.1569 | 0.1089 | 75 |
| 76 | 4.6432 | 3.1539 | 2.1465 | 1.4637 | 1.0000 | 0.6845 | 0.4694 | 0.3225 | 0.2220 | 0.1531 | 0.1058 | 76 |
| 77 | 4.7380 | 3.2019 | 2.1682 | 1.4710 | 1.0000 | 0.6811 | 0.4648 | 0.3178 | 0.2177 | 0.1494 | 0.1027 | 77 |
| 78 | 4.8347 | 3.2507 | 2.1901 | 1.4784 | 1.0000 | 0.6777 | 0.4602 | 0.3131 | 0.2134 | 0.1457 | 0.0997 | 78 |
| 79 | 4.9333 | 3.3002 | 2.2122 | 1.4859 | 1.0000 | 0.6743 | 0.4556 | 0.3084 | 0.2092 | 0.1422 | 0.0968 | 79 |
| 80 | 5.0340 | 3.3504 | 2.2345 | 1.4933 | 1.0000 | 0.6710 | 0.4511 | 0.3039 | 0.2051 | 0.1387 | 0.0940 | 80 |

Table 28    Multipliers for pecuniary loss for term certain

Multiplier for regular frequent payments for a term certain at rate of return of

| Term | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | Term |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1.01 | 1.01 | 1.01 | 1.00 | 1.00 | 1.00 | 1.00 | 0.99 | 0.99 | 0.99 | 0.99 | 1 |
| 2 | 2.04 | 2.03 | 2.02 | 2.01 | 2.00 | 1.99 | 1.98 | 1.97 | 1.96 | 1.95 | 1.94 | 2 |
| 3 | 3.09 | 3.07 | 3.05 | 3.02 | 3.00 | 2.98 | 2.96 | 2.93 | 2.91 | 2.89 | 2.87 | 3 |
| 4 | 4.17 | 4.12 | 4.08 | 4.04 | 4.00 | 3.96 | 3.92 | 3.88 | 3 85 | 3.81 | 3.77 | 4 |
| 5 | 5.26 | 5.19 | 5.13 | 5.06 | 5.00 | 4.94 | 4.88 | 4.82 | 4.76 | 4.70 | 4.65 | 5 |
| 6 | 6.38 | 6.28 | 6.18 | 6.09 | 6.00 | 5.91 | 5.82 | 5.74 | 5.66 | 5.58 | 5.50 | 6 |
| 7 | 7.52 | 7.38 | 7.25 | 7.12 | 7.00 | 6.88 | 6.76 | 6.65 | 6.54 | 6.43 | 6.32 | 7 |
| 8 | 8.68 | 8.50 | 8.33 | 8.16 | 8.00 | 7.84 | 7.69 | 7.54 | 7.40 | 7.26 | 7.12 | 8 |
| 9 | 9.87 | 9.64 | 9.42 | 9.21 | 9.00 | 8.80 | 8.61 | 8.42 | 8.24 | 8.07 | 7.90 | 9 |
| 10 | 11.08 | 10.80 | 10.52 | 10.25 | 10.00 | 9.75 | 9.52 | 9.29 | 9.07 | 8.86 | 8.66 | 10 |
| 11 | 12.32 | 11.97 | 11.63 | 11.31 | 11.00 | 10.70 | 10.42 | 10.15 | 9.88 | 9.63 | 9.39 | 11 |
| 12 | 13.58 | 13.16 | 12.75 | 12.37 | 12.00 | 11.65 | 11.31 | 10.99 | 10.68 | 10.39 | 10.10 | 12 |
| 13 | 14.87 | 14.37 | 13.89 | 13.43 | 13.00 | 12.59 | 12.19 | 11.82 | 11.46 | 11.12 | 10.79 | 13 |
| 14 | 16.18 | 15.59 | 15.03 | 14.50 | 14.00 | 13.52 | 13.07 | 12.64 | 12.23 | 11.84 | 11.46 | 14 |
| 15 | 17.52 | 16.84 | 16.19 | 15.58 | 15.00 | 14.45 | 13.93 | 13.44 | 12.98 | 12.54 | 12.12 | 15 |
| 16 | 18.89 | 18.10 | 17.36 | 16.66 | 16.00 | 15.38 | 14.79 | 14.24 | 13.71 | 13.22 | 12.75 | 16 |
| 17 | 20.28 | 19.38 | 18.54 | 17.75 | 17.00 | 16.30 | 15.64 | 15.02 | 14.43 | 13.88 | 13.36 | 17 |
| 18 | 21.71 | 20.69 | 19.73 | 18.84 | 18.00 | 17.22 | 16.48 | 15.79 | 15.14 | 14.53 | 13.96 | 18 |
| 19 | 23.16 | 22.01 | 20.94 | 19.93 | 19.00 | 18.13 | 17.31 | 16.55 | 15.83 | 15.17 | 14.54 | 19 |
| 20 | 24.64 | 23.35 | 22.15 | 21.04 | 20.00 | 19.03 | 18.14 | 17.30 | 16.51 | 15.78 | 15.10 | 20 |
| 21 | 26.16 | 24.71 | 23.38 | 22.15 | 21.00 | 19.94 | 18.95 | 18.03 | 17.18 | 16.39 | 15.65 | 21 |
| 22 | 27.70 | 26.10 | 24.62 | 23.26 | 22.00 | 20.84 | 19.76 | 18.76 | 17.83 | 16.97 | 16.17 | 22 |
| 23 | 29.28 | 27.50 | 25.88 | 24.38 | 23.00 | 21.73 | 20.56 | 19.48 | 18.47 | 17.55 | 16.69 | 23 |
| 24 | 30.88 | 28.93 | 27.14 | 25.50 | 24.00 | 22.62 | 21.35 | 20.18 | 19.10 | 18.11 | 17.19 | 24 |
| 25 | 32.53 | 30.38 | 28.42 | 26.63 | 25.00 | 23.50 | 22.13 | 20.87 | 19.72 | 18.65 | 17.67 | 25 |
| 26 | 34.20 | 31.85 | 29.71 | 27.77 | 26.00 | 24.38 | 22.91 | 21.5o | 20.32 | 19.19 | 18.14 | 26 |
| 27 | 35.91 | 33.34 | 31.02 | 28.91 | 27.00 | 25.26 | 23.68 | 22.23 | 20.91 | 19.71 | 18.60 | 27 |
| 28 | 37.65 | 34.86 | 32.34 | 30.06 | 28.00 | 26.13 | 24.44 | 22.90 | 21.49 | 20.21 | 19.04 | 28 |
| 29 | 39.43 | 36.40 | 33.67 | 31.21 | 29.00 | 27.00 | 25.19 | 23.55 | 22.06 | 20.71 | 19.47 | 29 |
| 30 | 41.24 | 37.96 | 35.01 | 32.37 | 30.00 | 27.86 | 25.94 | 24.20 | 22.62 | 21.19 | 19.89 | 30 |
| 31 | 43.10 | 39.54 | 36.37 | 33.54 | 31.00 | 28.72 | 26.67 | 24.83 | 23.17 | 21.66 | 20.30 | 31 |
| 32 | 44.99 | 41.15 | 37.74 | 34.71 | 32.00 | 29.58 | 27.41 | 25.46 | 23.70 | 22.12 | 20.69 | 32 |
| 33 | 46.91 | 42.79 | 39.13 | 35.89 | 33.00 | 30.43 | 28.13 | 26.07 | 24.23 | 22.57 | 21.08 | 33 |
| 34 | 48.88 | 44.45 | 40.53 | 37.07 | 34.00 | 31.27 | 28.85 | 26.68 | 24.74 | 23.01 | 21.45 | 34 |
| 35 | 50.89 | 46.13 | 41.95 | 38.26 | 35.00 | 32.12 | 29.56 | 27.28 | 25.25 | 23.43 | 21.81 | 35 |
| 36 | 52.94 | 47.84 | 43.37 | 39.45 | 36.00 | 32.95 | 30.26 | 27.87 | 25.74 | 23.85 | 22.16 | 36 |
| 37 | 55.03 | 49.58 | 44.82 | 40.65 | 37.00 | 33.79 | 30.95 | 28.45 | 26.23 | 24.26 | 22.50 | 37 |
| 38 | 57.16 | 51.34 | 46.28 | 41.86 | 38.00 | 34.62 | 31.64 | 29.02 | 26.70 | 24.65 | 22.83 | 38 |
| 39 | 59.34 | 53.13 | 47.75 | 43.07 | 39.00 | 35.44 | 32.32 | 29.58 | 27.17 | 25.04 | 23.15 | 39 |
| 40 | 61.56 | 54.95 | 49.24 | 44.29 | 40.00 | 36.26 | 33.00 | 30.14 | 27.63 | 25.42 | 23.46 | 40 |
| 41 | 63.83 | 56.79 | 50.74 | 45.52 | 41.00 | 37.08 | 33.67 | 30.69 | 28.08 | 25.78 | 23.76 | 41 |
| 42 | 66.14 | 58.66 | 52.26 | 46.75 | 42.00 | 37.89 | 34.33 | 31.23 | 28.52 | 26.14 | 24.06 | 42 |
| 43 | 68.50 | 60.56 | 53.79 | 47.99 | 43.00 | 38.70 | 34.98 | 31.76 | 28.95 | 26.49 | 24.34 | 43 |
| 44 | 70.91 | 62.49 | 55.34 | 49.23 | 44.00 | 39.51 | 35.63 | 32.28 | 29.37 | 26.83 | 24.62 | 44 |
| 45 | 73.36 | 64.45 | 56.90 | 50.48 | 45.00 | 40.31 | 36.27 | 32.80 | 29.78 | 27.17 | 24.88 | 45 |
| 46 | 75.87 | 66.44 | 58.48 | 51.74 | 46.00 | 41.10 | 36.91 | 33.30 | 30.19 | 27.49 | 25.15 | 46 |
| 47 | 78.43 | 68.46 | 60.08 | 53.00 | 47.00 | 41.90 | 37.54 | 33.80 | 30.59 | 27.81 | 25.40 | 47 |
| 48 | 81.04 | 70.51 | 61.69 | 54.27 | 48.00 | 42.69 | 38.16 | 34.30 | 30.98 | 28.12 | 25.64 | 48 |
| 49 | 83.70 | 72.59 | 63.32 | 55.54 | 49.00 | 43.47 | 38.78 | 34.78 | 31.36 | 28.42 | 25.88 | 49 |
| 50 | 86.42 | 74.70 | 64.96 | 56.82 | 50.00 | 44.25 | 39.39 | 35.26 | 31.74 | 28.72 | 26.11 | 50 |
| 51 | 89.20 | 76.85 | 66.62 | 58.11 | 51.00 | 45.03 | 40.00 | 35.73 | 32.10 | 29.00 | 26.34 | 51 |
| 52 | 92.03 | 79.03 | 68.30 | 59.41 | 52.00 | 45.80 | 40.60 | 36.20 | 32.47 | 29.28 | 26.56 | 52 |
| 53 | 94.92 | 81.24 | 69.99 | 60.71 | 53.00 | 46.57 | 41.19 | 36.66 | 32.82 | 29.56 | 26.77 | 53 |
| 54 | 97.86 | 83.48 | 71.71 | 62.01 | 54.00 | 47.34 | 41.78 | 37.11 | 33.17 | 29.82 | 26.97 | 54 |
| 55 | 100.87 | 85.76 | 73.44 | 63.33 | 55.00 | 48.10 | 42.36 | 37.55 | 33.51 | 30.08 | 27.17 | 55 |
| 56 | 103.94 | 88.08 | 75.18 | 64.65 | 56.00 | 48.86 | 42.93 | 37.99 | 33.84 | 30.34 | 27.37 | 56 |
| 57 | 107.07 | 90.43 | 76.95 | 65.98 | 57.00 | 49.61 | 43.50 | 38.42 | 34.17 | 30.59 | 27.56 | 57 |
| 58 | 110.27 | 92.81 | 78.73 | 67.31 | 58.00 | 50.36 | 44.07 | 38.84 | 34.49 | 30.83 | 27.74 | 58 |
| 59 | 113.53 | 95.23 | 80.53 | 68.65 | 59.00 | 51.11 | 44.63 | 39.26 | 34.80 | 31.06 | 27.92 | 59 |
| 60 | 116.85 | 97.69 | 82.35 | 70.00 | 60.00 | 51.85 | 45.18 | 39.67 | 35.11 | 31.29 | 28.09 | 60 |
| 61 | 120.25 | 100.18 | 84.19 | 71.35 | 61.00 | 52.59 | 45.73 | 40.08 | 35.41 | 31.52 | 28.26 | 61 |
| 62 | 123.71 | 102.72 | 86.04 | 72.71 | 62.00 | 53.33 | 46.27 | 40.48 | 35.70 | 31.74 | 28.42 | 62 |
| 63 | 127.25 | 105.29 | 87.91 | 74.08 | 63.00 | 54.06 | 46.81 | 40.88 | 36.00 | 31.95 | 28.58 | 63 |
| 64 | 130.85 | 107.90 | 89.81 | 75.46 | 64.00 | 54.79 | 47.34 | 41.26 | 36.28 | 32.16 | 28.73 | 64 |
| 65 | 134.53 | 110.55 | 91.72 | 76.84 | 65.00 | 55.52 | 47.86 | 41.65 | 36.56 | 32.36 | 28.88 | 65 |
| 66 | 138.29 | 113.24 | 93.65 | 78.23 | 66.00 | 56.24 | 48.39 | 42.02 | 36.83 | 32.56 | 29.02 | 66 |
| 67 | 142.12 | 115.97 | 95.60 | 79.62 | 67.00 | 56.95 | 48.90 | 42.40 | 37.10 | 32.75 | 29.16 | 67 |
| 68 | 146.03 | 118.75 | 97.57 | 81.03 | 68.00 | 57.67 | 49.41 | 42.76 | 37.36 | 32.94 | 29.30 | 68 |
| 69 | 150.02 | 121.56 | 99.56 | 82.44 | 69.00 | 58.38 | 49.92 | 43.12 | 37.62 | 33.13 | 29.43 | 69 |
| 70 | 154.10 | 124.42 | 101.57 | 83.85 | 70.00 | 59.09 | 50.42 | 43.48 | 37.87 | 33.31 | 29.56 | 70 |

*continued*

**232**

Table 28    Multipliers for pecuniary loss for term certain *continued*

Multiplier for regular frequent payments for a term certain at rate of return of

| Term | −2.0% | −1.5% | −1.0% | −0.5% | 0.0% | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 3.0% | Term |
|------|-------|-------|-------|-------|------|------|------|------|------|------|------|------|
| 71 | 158.25 | 127.32 | 103.61 | 85.28 | 71.00 | 59.79 | 50.91 | 43.83 | 38.12 | 33.48 | 29.68 | 71 |
| 72 | 162.49 | 130.27 | 105.66 | 86.71 | 72.00 | 60.49 | 51.41 | 44.17 | 38.36 | 33.65 | 29.80 | 72 |
| 73 | 166.82 | 133.26 | 107.73 | 88.15 | 73.00 | 61.19 | 51.89 | 44.51 | 38.60 | 33.82 | 29.92 | 73 |
| 74 | 171.23 | 136.30 | 109.82 | 89.59 | 74.00 | 61.88 | 52.37 | 44.85 | 38.83 | 33.98 | 30.03 | 74 |
| 75 | 175.74 | 139.38 | 111.94 | 91.04 | 75.00 | 62.57 | 52.85 | 45.18 | 39.06 | 34.14 | 30.15 | 75 |
| 76 | 180.33 | 142.51 | 114.07 | 92.50 | 76.00 | 63.26 | 53.32 | 45.50 | 39.29 | 34.30 | 30.25 | 76 |
| 77 | 185.02 | 145.69 | 116.23 | 93.97 | 77.00 | 63.94 | 53.79 | 45.82 | 39.51 | 34.45 | 30.36 | 77 |
| 78 | 189.81 | 148.92 | 118.41 | 95.45 | 78.00 | 64.62 | 54.25 | 46.14 | 39.72 | 34.60 | 30.46 | 78 |
| 79 | 194.69 | 152.19 | 120.61 | 96.93 | 79.00 | 65.29 | 54.71 | 46.45 | 39.93 | 34.74 | 30.56 | 79 |
| 80 | 199.68 | 155.52 | 122.83 | 98.42 | 80.00 | 65.97 | 55.16 | 46.75 | 40.14 | 34.88 | 30.65 | 80 |

**233**

**234**

## ACTUARIAL FORMULAE AND BASIS

The functions tabulated are:

Tables 1 and 2 $\qquad \bar{a}_x$

Tables 3 and 4 $\qquad \bar{a}_x \cdot \overline{\phantom{xx}}_{\overline{50-x}|}$

Tables 5 and 6 $\qquad \bar{a}_x \cdot \overline{\phantom{xx}}_{\overline{55-x}|}$

Tables 7 and 8 $\qquad \bar{a}_x \colon \overline{\phantom{xx}}_{\overline{60-x}|}$

Tables 9 and 10 $\qquad \bar{a}_x \cdot \overline{\phantom{xx}}_{\overline{65-x}|}$

Tables 11 and 12 $\qquad \bar{a}_x \cdot \overline{\phantom{xx}}_{\overline{70-x}|}$

Tables 13 and 14 $\qquad \bar{a}_x \overline{\phantom{xx}}_{\overline{75-x}|}$

Tables 15 and 16 $\qquad _{(50-x)|}\bar{a}_x$

Tables 17 and 18 $\qquad _{(55-x)|}\bar{a}_x$

Tables 19 and 20 $\qquad _{(60-x)|}\bar{a}_x$

Tables 21 and 22 $\qquad _{(65-x)|}\bar{a}_x$

Tables 23 and 24 $\qquad _{(70-x)|}\bar{a}_x$

Tables 25 and 26 $\qquad _{(75-x)|}\bar{a}_x$

**235**

Table 27:                                 $1 / (1+i)^n$

Table 28:                                 $\bar{a}_{\overline{n|}}$

- Mortality assumptions for 2008-based official population projections for the United Kingdom.

- Loadings: None.

- Rate of return: As stated in the Tables.

**236**

**237**

ACTUARIAL TABLES FOR PERSONAL INJURY AND FATAL ACCIDENT CASES

ISBN 978-0-11-560146-0





9 780115 601460

EXHIBIT "TT-17"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

MDL Docket No. 2712

Misc. No. 16-1184 (KBJ)

This Document Relates To:
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv-01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

**Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ**
**Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ**
**Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ**

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-17"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

2 1 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

**238**

Exhibit TT-17



# THE STATUTES OF THE REPUBLIC OF SINGAPORE

## CIVIL LAW ACT

## (CHAPTER 43)

(Original Enactment: Ordinance 8 of 1909)

REVISED EDITION 1999

(1st August 1999)

*Prepared and Published by*

THE LAW REVISION COMMISSION
UNDER THE AUTHORITY OF
THE REVISED EDITION OF THE LAWS ACT (CHAPTER 275)

Informal Consolidation – version in force from 1/3/2017

which would be enforceable apart from sections 15 to 18 (or render enforceable any agreement for indemnity or contribution which would not be enforceable apart from sections 15 to 18).

[11D
*[45/98]*

### Right of action for wrongful act causing death

**20.**—(1) If death is caused by any wrongful act, neglect or default which is such as would (if death has not ensued) have entitled the person injured to maintain an action and recover damages in respect thereof, the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured.

*[11/87]*

(2) Subject to section 21(2), every such action shall be for the benefit of the dependants of the person (referred to in this section and in sections 21 and 22 as the deceased) whose death has been so caused.

*[11/87]*

(3) Every action brought under this section shall be brought by and in the name of the executor or administrator of the deceased.

*[11/87]*

(4) If —

    (*a*) there is no executor or administrator of the deceased; or

    (*b*) no action is brought within 6 months after the death by and in the name of an executor or administrator of the deceased,

the action may be brought by and in the name of all or any of the persons for whose benefit an executor or administrator could have brought it.

*[11/87]*

(5) Not more than one action shall lie for or in respect of the same subject-matter of complaint and every such action shall be brought within 3 years after the death of such deceased person.

*[11/87]*

(6) The plaintiff in every such action brought under this section shall be required to deliver to the defendant or his solicitor full particulars of the persons for whom and on whose behalf the action is brought and of

the nature of the claim in respect of which damages are sought to be recovered.

[11/87]

(7) In any action brought under this section, the executor of the deceased may insert a claim for and recover any pecuniary loss to the estate of the deceased occasioned by such wrongful act, neglect or default, which sum when recovered shall be deemed part of the assets of the estate of the deceased.

[11/87]

(8) In this section, "dependant" means —

   (*a*) the wife or husband or former wife of the deceased;

[7/2009 wef 01/03/2009]

   (*b*) any parent, grandparent or great-grandparent of the deceased;

   (*c*) any child, grandchild or great-grandchild of the deceased;

   (*d*) any person (not being a child of the deceased) who, in the case of any marriage to which the deceased was at any time a party, was treated by the deceased as a child of the family in relation to that marriage;

   (*e*) any person who is, or is the issue of, a brother, sister, uncle or aunt of the deceased.

[11/87]

(9) In deducing any relationship for the purposes of subsection (8) —

   (*a*) an adopted person shall be treated as the child of the person or persons by whom he was adopted and not as the child of any other person; and

   (*b*) subject to paragraph (*a*), any relationship by affinity shall be treated as a relationship by consanguinity, any relationship of the half blood as a relationship of the whole blood, and the stepchild of any person as his child and an illegitimate person shall be treated as the legitimate child of his mother and reputed father.

[11/87]

(10) In subsection (9)(*a*), "adopted" means adopted in pursuance of an adoption order made under the Adoption of Children Act (Cap. 4) or of any adoption recognised as valid by the law of Singapore.

*[11/87]*

(11) Any reference in this section to injury includes any disease and any impairment of a person's physical or mental condition.

[12

*[11/87]*

**Bereavement**

**21.**—(1) An action under section 20 may consist of or include a claim for damages for bereavement.

*[11/87]*

(2) A claim for damages for bereavement shall only be for the benefit of such of the following persons as survive the deceased:

(*a*) the wife or husband of the deceased;

(*b*) where there is no spouse by or for whom a claim can be made under paragraph (*a*), the children of the deceased;

(*c*) where there is no person by or for whom a claim can be made under paragraph (*a*) or (*b*), the parents of the deceased or, if the deceased was illegitimate, his mother;

(*d*) where there is no person by or for whom a claim can be made under paragraph (*a*), (*b*) or (*c*), but the deceased was at the date of his death a minor, any person who during any marriage to which that person was a party treated the deceased as a child of the family in relation to that marriage; or

(*e*) where there is no other person by or for whom a claim can be made under this subsection, any brother or sister of the deceased.

(3) The right of a person to claim under this section for damages for bereavement shall not survive for the benefit of his estate.

*[11/87]*

(4) Subject to subsection (6), the sum to be awarded as damages under this section shall be $15,000.

*[11/87]*

*[7/2009 wef 01/03/2009]*

(5) Where there is a claim for damages under this section for the benefit of 2 or more persons, the sum awarded shall be divided equally between them (subject to any deduction falling to be made in respect of costs not recovered from the defendant).

*[11/87]*

(6) The Minister may, by order published in the *Gazette*, substitute the sum specified in subsection (4) with such other sum as he thinks fit.

*[7/2009 wef 01/03/2009]*

### Assessment of damages

**22.**—(1) In every action brought under section 20, the court may award such damages as are proportioned to the losses resulting from the death to the dependants respectively except that in assessing the damages there shall not be taken into account —

(*a*) any sum paid or payable on the death of the deceased under any contract of assurance or insurance;

(*b*) any sum payable as a result of the death under the Central Provident Fund Act (Cap. 36); or

(*c*) any pension or gratuity which has been or will or may be paid as a result of the death.

*[11/87]*

(1A) In assessing the damages under subsection (1), the court shall take into account any moneys or other benefits which the deceased would be likely to have given to the dependants by way of maintenance, gift, bequest or devise or which the dependants would likely to have received by way of succession from the deceased had the deceased lived beyond the date of the wrongful death.

*[7/2009 wef 01/03/2009]*

(2) Where damages are awarded under subsection (1), any costs not recovered from the defendant shall be deducted from those damages

and thereafter those damages shall be divided among the dependants in such proportions as has been decided under that subsection.

*[11/87]*

(3)  In an action brought under section 20 where there fall to be assessed damages payable to a widow in respect of the death of her husband, there shall not be taken into account the remarriage of the widow or her prospect of remarriage.

*[11/87]*

(3A)  In an action brought under section 20, the damages payable to a former wife of the deceased shall only be in respect of a subsisting maintenance order against the deceased at the time of his death.

*[7/2009 wef 01/03/2009]*

(4)  If the dependants have incurred funeral expenses in respect of the deceased, damages may be awarded in respect of those expenses.

*[11/87]*

(5)  Money paid into court in satisfaction of a cause of action under this Act may be in one sum without specifying any person's share.

[14

*[11/87]*

## Appointments to be valid notwithstanding one or more objects excluded, or only take an unsubstantial share

**23.**—(1)  Where by any deed, will or other instrument a power is given to appoint movable or immovable property amongst several objects in such manner that no one of the objects of the power can be excluded, or some one or more of the objects of the power cannot be excluded by the donee of the power from a share of that property, but without requiring a substantial share of that property to be given to each object of the power or to each object of the power who cannot be excluded, no appointment, which has been or is after 23rd July 1909 made in exercise of any such power or authority, shall be invalid on the ground that an unsubstantial, illusory or nominal share only is thereby appointed, or left unappointed to devolve upon any one or more of the objects of the power or on the ground that any object of that power has been altogether excluded.

(2)  Every  such  appointment  shall  be  valid  and  effectual notwithstanding that any one or more of the objects does or do not

EXHIBIT "TT-18"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: AIR CRASH OVER THE
SOUTHERN INDIAN OCEAN, ON
MARCH 8, 2014

MDL Docket No. 2712

Misc. No. 16-1184 (KBJ)

This Document Relates To:
Wood v. Malaysia Airlines Berhad, et al., C.A., No.: 1:16-cv-00053 KBJ
Gaspard v. Malaysia Airlines Berhad, et al., C.A. No.: 16-cv-00419 KBJ
Wood v. The Boeing Company, C.A. No. 1: 16-cv-01149-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv–01296-KBJ
Gaspard v. The Boeing Company, C.A. No. 1:16-cv-01148-KBJ
Gaspard v. The Boeing Company, C.A. No. 1: 16-cv-01299-KBJ
Jia v. The Boeing Company, , C.A. No. 1: 16-cv-01147-KBJ
Wang v. Boeing Company, The, C.A. No. 1: 16-cv-01140-KBJ
Hu v. The Boeing Co., C.A. No. 1: 16-cv-01137-KBJ
Shirsath v. The Boeing Company, C.A. No. 1:16-cv-01146-KBJ
Gao v. The Boeing Co., C.A. No. 1: 16–cv-01130-KBJ
Xiao v. The Boeing Company, C.A. No. 1: 16-cv-01129-KBJ
Li v. The Boeing Company, C.A. No. 1:16–cv–01145-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01153-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01306-KBJ
Liang v. The Boeing Company, C.A. No. 1: 16-cv-01136-KBJ
Kolekar v. The Boeing Company, C.A. No. 1: 16-cv-01166-KBJ
Li v. The Boeing Company, C.A. No. 1: 16-01128-KBJ
Zhang v. The Boeing Company, C.A. No. 1: 16-cv-01164-KBJ
Santhanam v. The Boeing Company, C.A. No. 1: 16-cv-01151-KBJ
Feng v. The Boeing Co., C.A. No. 1: 16–cv-01131-KBJ
Han v. The Boeing Company, C.A. No. 1: 16-cv-01161-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01134-KBJ
Tian v. The Boeing Company, C.A. No. 1: 16-cv-01144-KBJ
Zhou v. The Boeing Company, C.A. No. 1: 16-cv-01138-KBJ
Kokekar v. The Boeing Company, C.A. No. 1: 16-cv-01143-KBJ
Yuan v. The Boeing Company, C.A. No. 1: 16-cv-01307-KBJ
Pang v. The Boeing Company, C.A. No. 1: 16-cv-01135-KBJ
Chen v. The Boeing Company, C.A. No. 1:16-cv-01165-KBJ
Wang v. The Boeing Company, C.A. No. 1: 16-cv-01132-KBJ
Huang v. The Boeing Company, C.A. No. 1: 16-cv-01152-KBJ

Hu v. The Boeing Company, C.A. No. 1: 16-cv-01139-KBJ
Weeks, et al. v. The Boeing Company, CA No. 1:16-1167-KBJ
Richards, et al. v. The Boeing Company, C.A. No. 1:17-cv-00503-KBJ

## CERTIFICATE IDENTIFYING EXHIBIT

I, hereby certify that the document marked as Exhibit **"TT-18"** referred to in the Declaration of **TOMMY THOMAS** was affirmed on

2 7 JUL 2017

Commissioner for Oaths

W 661
TAN KIM CHOOI
MALAYSIA

16TH FLOOR, WISMA SIME DARBY
JALAN RAJA LAUT, 50350 KUALA LUMPUR

[2016] 5 SLR 412 [CA]    Certified    TT-18 **244**

# Zhu Xiu Chun (alias Myint Myint Kyi)

v

# Rockwills Trustee Ltd
# (administrators of the estate of and on behalf of the dependants of Heng Ang Tee Franklin, deceased) and other appeals

### [2016] SGCA 52

Court of Appeal — Civil Appeals Nos 127, 131 and 132 of 2015 and Summons No 318 of 2015
Sundaresh Menon CJ, Chao Hick Tin JA and Andrew Phang Boon Leong JA
8 March; 1 September 2016

*Damages — Measure of damages — Personal injuries cases — Negligently conducted liposuction surgery leading to death — Appropriate methodology for computing loss of inheritance*

*Damages — Measure of damages — Personal injuries cases — Negligently conducted liposuction surgery leading to death — Whether coroner's inquiry fees claimable*

Facts

Civil Appeals Nos 127, 131 and 132 of 2015 arose out of a negligently conducted liposuction surgery which resulted in the demise of one Heng Ang Tee, Franklin ("the Deceased") at the age of 44 years. The administrator of the Deceased's estate ("the Administrator") commenced proceedings for damages against the doctors and the clinic responsible for the debacle. The Administrator acted on behalf of the estate of the Deceased as well as the Deceased's dependants, who comprised the Deceased's mother, his former wife ("Ms Quek") and his two children, Jo-Ann and Ryan ("the Children").

In the proceedings below, the two doctors who were involved in the surgery, Dr Zhu Xiu Chun (alias Myint Myint Kyi) ("Dr Zhu") and Dr Wong Meng Hang ("Dr Wong"), admitted liability for negligence whereas interlocutory judgment was entered against Reves Clinic Pte Ltd in default of appearance. The High Court judge ("the Judge") awarded a total sum of $5,260,653.58 to the Deceased's estate and dependants. Of relevance in the appeals were the following heads of damages which were awarded by the Judge: (a) $190,513.05 for the Coroner's inquiry fees; (b) $302,400 for Ms Quek's dependency claim; (c) a total of $814,500 for the Children's dependency claims; and (d) a total of $3,883,005 for the Children's loss of inheritance claims.

Dissatisfied with the awards rendered, the Administrator, Dr Zhu and Dr Wong each commenced appeals against the Judge's decision. As part of its appeal, the Administrator also filed Summons No 318 of 2015 ("SUM 318/2015") to adduce further evidence which pertained to the published fee schedules of (a) three driving schools for driving lessons in Singapore; (b) various undergraduate degree programmes at three local universities; and (c) residential colleges and/or hostels/halls or residences of the National University of Singapore and the Nanyang Technological University.

Held, dismissing SUM 318/2015 and allowing CA 127/2015, CA 131/2015 and CA 132/2015 in part:

(1)    For further evidence to be adduced at the appellate stage pursuant to s 37(4) of the Supreme Court of Judicature Act (Cap 322, 2007 Rev Ed) and O 57 r 13(2) of the Rules of Court (Cap 322, R 5, 2014 Rev Ed), there had to be "special grounds" which justified the introduction of such evidence. To establish that special grounds existed, the applicant had to satisfy the three conditions laid down in *Ladd v Marshall* [1954] 1 WLR 1489 and the conditions had to be applied strictly. As there was no change which substantially affected a basic assumption made at trial, there was no reason to justify the relaxation of the *Ladd v Marshall* conditions: at [54], [58] and [60].

(2)    The Administrator was denied leave to adduce the further evidence as the first *Ladd v Marshall* condition was not satisfied; the evidence could have been adduced at trial with reasonable diligence. There were no exceptional circumstances or improprieties in the nature of fraud for the court to overlook the Administrator's failure to satisfy the first *Ladd v Marshall* condition: at [61] and [66].

(3)    The Administrator was entitled to claim for the coroner's inquiry fees so long as they were proven to be reasonably incurred: at [78].

(4)    As a general proposition, it would be in line with reason and logic that the longer the dependency period the higher should be the rate of discount. This was because, where the dependency period was longer, there would be greater uncertainties as far as vicissitudes of life were concerned. However, a longer dependency period would not *always* result in a higher discount rate; each case had to be determined on its unique circumstances. Parties should not merely rely on the multipliers set out in previous cases but should also seek to assist the court further by providing relevant actuarial data to justify the discounts which they were advocating for. In the present case, the discount rate of 40% applied by the Judge for Ms Quek's dependency claim was not one which deviated significantly, if at all, from the general trend of discounts which courts had applied in previous cases. Accordingly, the multiplier of 12.6 years applied by the Judge was not so excessive as to warrant appellate intervention: at [85] to [87].

(5)    When dealing with any dependency claim, including the claim of a "former wife", the principle of a "reasonable expectation of pecuniary benefit" was fundamental to the inquiry (as it was in any other dependency claim). The focus was not placed on the need, but on the reasonable expectation of the dependant. At the time the maintenance order was agreed upon, Ms Quek was already generating an income of approximately US$10,000 a month. This showed that the Deceased, being an individual of significant earning power, was content to pay a maintenance sum of $9,000 a month *despite* Ms Quek's ability to earn a substantial income of her own and despite the fact that Ms Quek was given a share of the properties under the divorce proceedings which amounted to about $500,000. Therefore, Ms Quek had a reasonable expectation of receiving this maintenance sum for the rest of the Deceased's working life: at [91]

(6)    With respect to Ryan's dependency claim, prior to his demise, the Deceased was *already* providing a sum of $3,500 a month as maintenance to

meet each child's expenses. This sum was agreed upon, notwithstanding that Ms Quek had an earning capacity of her own. Therefore, Ryan could reasonably expect to continue receiving the sum of $3,500 to meet his expenses up till the end of his tertiary education. The earning capacity of Ms Quek should not affect this conclusion: at [96] and [98].

(7)    With respect to the Children's claim for the costs of vacation and similar expenses (which would include the costs of gifts, computers and school trips), it would suffice to show that there was some basis of fact from which the inference could be drawn that there was a reasonable expectation of pecuniary benefit. On the present facts, an inference could be drawn from the evidence that the Deceased would have catered for such expenses. The same could also be said of the driving lesson fees of the Children: at [102] and [106].

(8)    As for the university fees of the Children, the increase in $500 per month which the Judge awarded to reflect the higher fees in a university education appeared to be insufficient. Given the Deceased's commitment to taking care of the Children, the court had no reason to doubt that he would have made provision for the Children's increased expenses and that they could reasonably expect to receive such a benefit. Accordingly, an additional increase of $500 a month was awarded to the Children during their university years: at [107] and [108].

(9)    The conventional multiplier-multiplicand approach was relevant in quantifying a loss of inheritance claim. The court had reservations that there should be an additional step where compound interest from the savings during the multiplier period would be factored in. While an assessment of damages was necessarily an exercise which involved an element of prediction and often required the courts to grapple with various imponderables, to factor in the potential returns that a deceased could generate *if he decided to invest* his notional annual savings would be delving a step too far into the realm of speculation. Even if the assumption could be made that a deceased would invest his notional annual savings, factoring in compound interest assumed further that he would generate a steady rate of returns on this investment. Factoring in compound interest would add a further layer of uncertainty to what was already an imprecise methodology and the court was not prepared do so: at [115], [119] and [121].

(10)    While the general methodology for computing a loss of inheritance claim was similar to the computation of a loss of dependency claim, there was an additional factor which had to be taken into account and which was unique to a loss of inheritance claim – the post-retirement expenditure of the deceased. To summarise, when computing a loss of inheritance claim, the following three steps should be applied: (a) first, an appropriate multiplicand should be derived which would reflect the savings of the deceased per annum; (b) second, this multiplicand should be multiplied by an appropriate multiplier which would be discounted for accelerated receipt and vicissitudes of life, along with an adjustment to reflect the post-retirement expenses of the deceased; and (c) third, an appropriate percentage of this inheritance should be attributed to the dependant: at [123] and [125].

(11)    The Judge had erred in applying the same 40% discount as he did for Ms Quek's dependency claim to the Children's loss of inheritance claim. This

was so for several reasons. First, the discount that was applied to a dependency claim was based on both uncertainties in the future (due to vicissitudes of life) *and* accelerated receipt of a lump sum payment. While the uncertainty with respect to the Deceased's ability to earn the same income during his working years (*ie*, up to the age of 65 years old) was similar for both Ms Quek's dependency claim and the Children's loss of inheritance claim, the accelerated receipt component was not the same. By applying the same 40% discount, the Judge failed to take into account the additional 15 years' acceleration (*ie*, from the date of the Deceased's notional retirement at 65 years old to the date of his notional death at 80 years old), which the Children would benefit from by receiving a lump sum award. Second, further adjustments had to be made to account for the post-retirement expenses of the Deceased. In the circumstances, a total discount of 70% was appropriate: at [137], [138], [139] and [141].

[Observation: The court would have been better assisted by parties if actuarial data had been furnished to enable the court to determine the additional discount which should be adopted on account of accelerated receipt and also if expert evidence had been provided to project the *post-retirement expenses* of the Deceased: at [140].]

### Case(s) referred to

*Cheng-Wong Mei Ling Theresa v Oei Hong Leong* [2006] 2 SLR(R) 637; [2006] 2 SLR 637 (refd)

*Cheong Gim Fah v Murugian s/o Rangasamy* [2004] SGHC 93 (refd)

*Chong Khin Ngen v Lim Djoe Phing* [1993] SGHC 154 (refd)

*Gul Chandiram Mahtani v Chain Singh* [1998] 2 SLR(R) 801; [1999] 1 SLR 154 (refd)

*Hanson Ingrid Christina v Tan Puey Tze* [2008] 1 SLR(R) 409; [2008] 1 SLR 409 (refd)

*Kim Anseok v Shi Sool Hee* [2010] SGHC 124 (refd)

*Ladd v Marshall* [1954] 1 WLR 1489 (refd)

*Lai Wai Keong Eugene v Loo Wei Yen* [2014] 3 SLR 702 (refd)

*Lai Wee Lian v Singapore Bus Service (1978) Ltd* [1983–1984] SLR(R) 388; [1984–1985] SLR 10 (refd)

*Lam Pak Chiu v Tsang Mei Ying* [2001] HKCFA 28 (refd)

*Lassiter Ann Masters v To Keng Lam* [2005] 2 SLR(R) 8; [2005] 2 SLR 8 (refd)

*Lynch v Chief Constable of Warwickshire Police* 2014 WL 5833974 (refd)

*Ng Siew Choo v Tan Kian Choon* [1990] 1 SLR(R) 235; [1990] SLR 331 (refd)

*Poh Huat Heng Corp Pte Ltd v Hafizul Islam Kofil Uddin* [2012] 3 SLR 1003 (refd)

*Roach v Home Office* [2010] QB 256; [2010] 2 WLR 746 (refd)

*Su Sh-Hsyu v Wee Yue Chew* [2007] 3 SLR(R) 673; [2007] 3 SLR 673 (refd)

*Tan Harry v Teo Chee Yeow Aloysius* [2004] 1 SLR(R) 513; [2004] 1 SLR 513 (refd)

*Taylor v O'Connor* [1971] AC 115 (refd)

*Yeo Chong Lin v Tay Ang Choo Nancy* [2011] 2 SLR 1157 (refd)

*Zhang Xiao Ling v Er Swee Poo* [2004] SGHC 21 (refd)

Legislation referred to
    Civil Law Act (Cap 43, 1999 Rev Ed) s 22(1A) (consd);
       s 10(1)
    Rules of Court (Cap 322, R 5, 2014 Rev Ed) O 57 r 13(2), O 59 r 2(2)
    Supreme Court of Judicature Act (Cap 322, 2007 Rev Ed) s 37(4)
    Senior Courts Act 1981 (c 54) (UK) s 51(1)

*Dr Myint Soe, Srinivasan Selvaraj and Edward Leong (MyintSoe & Selvaraj) for*
*the appellant in CA 127/2015 and the respondent in CA 131/2015;*
*Kuah Boon Theng, Felicia Chain, Gerald Soo, Karen Yong (Legal Clinic LLC) for*
*the appellant in CA 131/2015 and the respondent in CA 127/2015 and CA 132/2015;*
*Christopher Chong Fook Choy and Melvin See (Dentons Rodyk & Davidson LLP) for*
*the appellant in CA 132/2015 and the respondent in CA 131/2015;*
*Third respondent in CA 131/2015 not present.*

[Editorial note: The decision from which this appeal arose is reported at [2015] 4 SLR 239.]

1 September 2016                                              Judgment reserved.

**Chao Hick Tin JA (delivering the judgment of the court):**

Introduction

1       The present appeals arise from an unfortunate incident. Due to a negligently conducted liposuction surgery, one Heng Ang Tee, Franklin ("the Deceased") met his demise. The Deceased died on the day the surgery was carried out, *ie*, 30 December 2009. He was then 44 years old. The administrator of his estate brought the present proceeding for damages against the doctors and the clinic responsible for the debacle. In *Rockwills Trustee Ltd v Wong Meng Hang* [2015] 4 SLR 239 ("the Judgment"), the High Court judge ("the Judge") awarded a total sum of $5,260,653.58 to the Deceased's estate and dependants. Dissatisfied with the sum awarded, the administrator of the Deceased's estate, as well as the two doctors who performed the surgery, has appealed against the Judge's award, with the administrator contending that the sum awarded is inadequate and the doctors arguing that it is excessive. These are the first appeals in which this court has had to consider a claim for loss of inheritance pursuant to s 22(1A) of the Civil Law Act (Cap 43, 1999 Rev Ed).

Facts

*Parties to the dispute*

2       The doctors who performed the liposuction surgery are Dr Zhu Xiu Chun (alias Myint Myint Kyi) ("Dr Zhu") and Dr Wong Meng Hang ("Dr Wong"). They are the appellants in Civil Appeal No 127 of 2015 ("CA 127/2015") and Civil Appeal No 132 of 2015 ("CA 132/2015"),

respectively. Along with Reves Clinic Pte Ltd, the two doctors are the respondents in Civil Appeal No 131 of 2015 ("CA 131/2015"). We will refer to these parties collectively as "the Defendants". The appellant in CA 131/2015 is Rockwills Trustee Ltd, the administrator of the Deceased's estate ("the Administrator"). Reves Clinic Pte Ltd does not play a substantial part in any of the present appeals.

3      The Administrator acts on behalf of both the estate of the Deceased as well as the Deceased's dependants. The Deceased's dependants comprise the following persons:

    (a)   Mdm Tan Siak Cheng – the Deceased's mother;

    (b)   Ms Peggy Quek ("Ms Quek") – the Deceased's former wife;

    (c)   Ms Jo-Ann Heng Hui Lyn ("Jo-Ann") – the Deceased's daughter; and

    (d)   Mr Ryan Heng Chun Kye ("Ryan") – the Deceased's son.

4      Jo-Ann was born on 9 June 1996; she was 13 years old at the time of the Deceased's demise and she turned 19 years old in the year in which the Judgment was rendered. Ryan was born on 19 May 1999; he was 10 years old at the time of the Deceased's demise and he turned 16 years old in the year the Judgment was delivered. Collectively, Jo-Ann and Ryan will be referred to as "the Children".

5      With respect to the relationship between the Deceased and Ms Quek, a decree *nisi* for divorce was obtained on 23 February 2006. Prior to his death, the Deceased was paying a maintenance sum of $9,000 a month to Ms Quek and the Children. Since the decree *nisi*, the Deceased has had a relationship with his live-in girlfriend, Ms Mabel Leong ("Ms Leong").

6      Prior to his demise, the Deceased was the chief executive officer of YTL Starhill Global REIT Management Ltd, a property management firm. The Deceased was then also the owner of three properties – a property at Marigold Drive, a property at Duchess Avenue and a property at Tanglin View.

*Background to the dispute*

7      Following the death of the Deceased on 30 December 2009, the Administrator commenced Suit No 165 of 2011 against the Defendants on 11 March 2011, alleging that the Deceased's death was caused by their negligence. A coroner's inquiry was carried out over 15 days. The coroner issued his report on 4 January 2012 and in it he concluded that:

> The deceased sustained multiple iatrogenic punctures of the intestines due to the liposuction procedure and died of the effects of asphyxia due to airway obstruction, secondary to intravenous Propofol administered. [MEDICAL MISADVENTURE].

8    Interlocutory judgment was entered against Reves Clinic Pte Ltd in default of appearance on 30 March 2011. Liability was admitted by Dr Wong and Dr Zhu on 15 August 2012. Therefore, the only issue that the Judge had to determine was the quantum of damages to be awarded.

## Summary of the pleadings

9    The different heads of claim, as well as the quantum that each party alleged should be awarded by the court for each head of claim, were summarised as follows at the hearing below:

| Head of Claim | The Administrator | Dr Wong | Dr Zhu |
|---|---|---|---|
| Damages for pain and suffering | $10,000.00 | $5,000.00 | $0 |
| Medical expenses paid | $8,120.00 | $0 | $0 |
| Car-related charges | $47.02 | $0 | $0 |
| Coroner's inquiry fees | $190,513.05 | Agreed | $22,500.00 |
| Trustee and administrator fees | $228,762.66 | $0 | $0 |
| Loss and expenses incurred on properties | $1,279,354.39 | $0 | $0 |
| Dependency claim of mother | $67,200.00 | $0 | $20,000.00 |
| Dependency claim of former wife and children | $1,664,000.00 | $844,800.00 | $849,600.00 |
| Loss of inheritance and/or savings | $9,484,000.00 | $525,127.58 | $600,000.00 |

The items highlighted in bold are those which form the subject-matter of the present appeals.

10    There were also further heads of claim such as funeral expenses, legal fees and disbursements incurred for obtaining letters of administration, and damages for bereavement which were undisputed by the parties.

## Decision below

11    The Judge granted an award of damages in favour of the Deceased's estate and dependants as follows (the Judgment at [29]):

| Head of claim | Amount of award |
|---|---|
| Damages for pain and suffering | $5,000 |
| Coroner's inquiry fees | $190,513.05 |
| Funeral expenses | $14,813.95 |
| Letters of Administration fees | $15,421.58 |

| Bereavement | $15,000 |
| Dependency claim of Mdm Tan | $20,000 |
| Dependency claim of Ms Quek and the children | $1,116,900 |
| Loss of inheritance claim of dependants | $3,883,005 |
| Total sum | $5,260,653.58 |

12    As indicated above, the four main heads of claim which are being contested by the parties in the appeals are first, the coroner's inquiry fees, secondly, the dependency claim of Ms Quek, thirdly, the dependency claim of the Children, and fourthly, the loss of inheritance claim of the Children.

13    With respect to the coroner's inquiry fees, the Judge found that the professional fees charged by the Administrator's counsel, Ms Kuah Boon Theng, were clearly set out in an invoice dated 12 September 2012 and were reasonably incurred. The Judge therefore awarded the Administrator's claim of $190,513.05 for the coroner's inquiry fees.

14    As for the dependency claim of Ms Quek, the Judge accepted that she would set aside approximately $2,000 of the $9,000 under the maintenance order for herself, leaving $3,500 for each child. This led the Judge to use $2,000 as the multiplicand for Ms Quek's dependency claim. The Judge further found that the Deceased would most probably have continued to work until the age of 65 years but for his death and hence arrived at a multiplier of 21. The Judge then applied a 40% discount to fix the discounted multiplier at 12.6. Applying this multiplier to the multiplicand of $2,000, the Judge awarded a total sum of $302,400 to Ms Quek for her dependency claim.

15    With respect to the dependency claim of the Children, the Judge rejected Ms Quek's and the Children's averments that on top of the maintenance which was paid, the Deceased had also paid $20,000 a year to cover additional expenses such as gifts, computers and school trips. He therefore only used the $3,500 maintenance amount as the multiplicand for each child's dependency claim.

16    The Judge adopted a multiplier of ten years for Jo-Ann since she was 13 years old at the time of the Deceased's demise and would be 23 years old when she completed her tertiary education. As for Ryan, the Judge adopted a multiplier of 15 years as he would complete his tertiary education at the age of 25 years. The Judge then applied a 25% discount to reach a discounted multiplier of 7.5 years and 11.25 years for Jo-Ann and Ryan respectively.

17    Additionally, the Judge decided that a higher multiplicand of $4,000 (*ie*, an additional $500) would be appropriate for three years to reflect the higher amount of maintenance needed for the Children during their years of tertiary education. The Judge, however, found that there was insufficient

evidence to show that the Deceased had intended to send the Children *overseas* for tertiary education.

18    As a result, he awarded a total sum of $328,500 for Jo-Ann's dependency claim (*ie*, $4,000 per month for three years, and $3,500 a month for seven years, with a discount of 25%) and awarded a total sum of $486,000 for Ryan's dependency claim (*ie*, $4,000 per month for three years, and $3,500 per month for 12 years, with a discount of 25%).

19    As regards the loss of inheritance claim, the Judge reviewed the respective methodologies for quantifying the lump sum award as advanced by the Administrator's expert, Mr Keoy Soo Earn, and the Defendants' expert, Mr Yin Kum Choy. The Judge was also assisted by the views of the court assessor, Mr Harsha Basnayake.

20    The Judge took the view that a balanced approach would be to calculate the amount of wealth that the Deceased would have accumulated, but for his death. By utilising the information from both experts' reports and after making certain adjustments, the Judge came to a range of $524,000 to $650,000 of savings per annum and took the average of the two sums to reach a figure of $587,000 worth of savings per annum. He used this figure as the multiplicand.

21    The Judge applied a discount rate of 40%, as he did with the dependency claim of Ms Quek, to the multiplier of 21 years (*ie*, the remaining working life of the Deceased) and multiplied this sum by $587,000 per annum to come to a total figure of $7,396,200. The Judge then applied 52.5% to this figure as the Deceased had intended, under the will which he had executed prior to his death, to give the Children 52.5% of his estate. Accordingly, the Judge awarded the sum of $3,883,005 as the loss of inheritance of the Children.

The appeals

22    As noted above, the appeals have been brought to challenge the quantum of damages awarded by the Judge in respect of several heads of claim:

(a)    In CA 127/2015, Dr Zhu is seeking a *reduction* of the amount awarded for:

(i)    the coroner's inquiry fees;

(ii)    the dependency claim of Ms Quek;

(iii)    the dependency claim of the Children; and

(iv)    the loss of inheritance claim of the Children.

(b)    In CA 131/2015, the Administrator is seeking an *increase* of the amount awarded for:

     (i)    the dependency claim of the Children; and

     (ii)   the loss of inheritance claim of the Children.

    (c)   In CA 132/2015, Dr Wong is seeking a *reduction* of the amount awarded for:

     (i)    the dependency claim of Ms Quek;

     (ii)   the dependency claim of the Children; and

     (iii)  the loss of inheritance claim of the Children.

23    As part of CA 131/2015, the Administrator has also filed Summons No 318 of 2015 ("SUM 318/2015") seeking leave to adduce certain documents for the purposes of the appeal. These documents are published information relating to fee schedules for tuition and university accommodation fees of local tertiary institutions and the fee schedules of driving schools in Singapore which are meant to substantiate a greater sum to be awarded for the dependency claim of the Children.

**Defendants' cases / Administrator's case**

**Dr Zhu's case**

*Adducing of further evidence*

24    Dr Zhu objects to the adducing of the further evidence and has indicated via a letter to the Registrar of the Supreme Court that they will be relying on the submissions of Dr Wong in this regard (see below at [32]).

*Coroner inquiry fees*

25    Dr Zhu first argues that based on s 10(1) of the Civil Law Act, there must be a subsisting cause of action for there to be a claim for such fees. Since there was no such subsisting cause of action at the time of the coroner's inquiry, the Administrator has to bear such expenses itself.

26    Dr Zhu further contends that, in any event, the fees charged by the Administrator's solicitors are excessive.

*Dependency claim for Ms Quek*

27    Dr Zhu avers that although the Civil Law Act regards a former wife as a dependant, Ms Quek should not be paid the same amount until the end of the normal working life of the Deceased. As Ms Quek was earning $21,000 a month at the time of the suit and was given a significant amount of assets from the divorce, it would be appropriate for Ms Quek to be paid another $24,000 as maintenance for only one year as a dependant.

*Dependency claim for the Children*

28    With respect to the dependency claim for Ryan, Dr Zhu argues that since Ms Quek is earning a substantial amount, the Judge should have applied a further discount of 20% to reflect Ms Quek's share in contributing to his expenses. Finally, the court should also consider that Ryan would be receiving a substantial sum for his loss of inheritance. Accordingly, the award for Ryan's dependency claim should be reduced to $384,000.

29    Dr Zhu is not appealing against the sum awarded for Jo-Ann's dependency claim.

*Loss of inheritance*

30    Dr Zhu submits that the Judge had erred in failing to take into account the fact that the Children would not remain as dependants for very much longer and that if the Deceased had passed away at the end of his natural life, the Children would not even be entitled to make a dependency claim. Dr Zhu therefore argues that a reduction should be made to the sum awarded by the Judge.

31    With respect to Mr Keoy's expert evidence, Dr Zhu contends that Mr Keoy had reached his proposed figure on the basis of several erroneous assumptions and conjectures:

(a)    First, he had wrongly assumed that certain bonus figures would be paid to the Deceased until the latter attained the age of 65. Instead, the bonuses were one-time payments due to transfers of ownership in 2005 and 2009.

(b)    Secondly, he had wrongly assumed that the Deceased would be receiving a salary of $57,200 per month till he turned 65.

(c)    Thirdly, he did not take into account the personal expenses of Ms Leong.

(d)    Fourthly, post-retirement expenses had not been taken into account.

Therefore, the Judge should not have relied on Mr Keoy's projections.

**Dr Wong's case**

*Adducing of further evidence*

32    Dr Wong argues that leave should not be granted to adduce the further evidence as first, the evidence could have been obtained with reasonable diligence at trial, and secondly, the evidence would not likely have had an important influence on the outcome of the action.

*Dependency claim for Ms Quek*

33    Dr Wong argues that, based on a correct application of case precedents, the appropriate multiplier for Ms Quek's dependency claim should be ten instead of 12.6 (*ie*, a discount rate of 52% instead of the 40% applied by the Judge).

*Dependency claim for the Children*

34    On the same basis that the case precedents had been applied incorrectly, Dr Wong contends that the appropriate multiplier for Ryan's dependency claim should be ten instead of 11.25.

35    Dr Wong also argues that there should not have been any adjustment to the multiplicand during the years of the Children's tertiary education as no evidence was adduced to show that there would be such increased costs.

*Loss of inheritance*

36    Dr Wong submits that the sum awarded for loss of inheritance was erroneously inflated for the following reasons:

(a)    First, the Judge had failed to factor in the post-retirement expenses of the Deceased which would include maintaining both himself and Ms Leong. The Deceased's expenditure during retirement should be assumed as being the same as before retirement.

(b)    Secondly, although the Judge stated that a discount rate of 4% should be applied to determine the Deceased's wealth, this discount rate did not feature any further in the Judgment.

(c)    Thirdly, the Judge should not have used the bonuses received by the Deceased in the four years preceding his demise as a benchmark for the bonuses he would receive in the subsequent years. This is because the bonuses which the Deceased received during that period were illegitimate as they were not authorised by any board resolution. The appropriate multiplicand should therefore have only been $299,116.

(d)    Fourthly, the Judge had erred in applying a multiplier of 12.6 years; an appropriate multiplier would be eight years as there should be an adjustment downwards to take into account the fact that the Deceased would have had to maintain Ms Leong as well.

37    After making the necessary adjustments, Dr Wong contends that the Children should only inherit a total of $525,127.58.

### The Administrator's case

#### Adducing of further evidence

38    The Administrator argues that there has been a material change in the factual circumstances since the time of the trial as Jo-Ann has decided to commence her university education locally. The conditions in *Ladd v Marshall* [1954] 1 WLR 1489, therefore, should not be applied strictly.

39    The Administrator also submits that, in any event, the *Ladd v Marshall* conditions are met. Further, it is necessary in the interests of justice for this evidence to be admitted as it is relevant and accurate information.

#### Coroner's inquiry fees

40    With respect to Dr Zhu's objections to the coroner's inquiry fees, the Administrator argues that the authority of *Chong Khin Ngen v Lim Djoe Phing* [1993] SGHC 154 ("*Chong Khin Ngen*"), which was also relied upon by Dr Zhu, stands for the proposition that such fees are recoverable.

41    As for the quantum which was awarded by the Judge, the Administrator submits that it was a reasonable amount as its counsel had played a significant role in the coroner's inquiry.

#### Dependency claim for the Children

42    The Administrator argues that the Judge had applied a correct multiplier – the discount rates derived by Dr Wong from the precedents are erroneous.

43    As for the multiplicand, the Administrator submits that the sum of S$3,500 per month for each child is inadequate. The Judge failed to adequately consider the evidence relating to other additional expenses incurred by the Children that were not part of this monthly maintenance sum. Given the generosity of the Deceased, the Children should be entitled to the following increases in the sum awarded:

> (a)    an additional sum of $7,000 per child per annum for costs of vacation and similar expenses;

> (b)    an additional one-off sum of $3,000 per child for the cost of driving lessons;

> (c)    an additional sum of $15,000 per annum for each child for their university tuition fees; and

> (d)    an additional sum of $6,000 per annum for each child for their accommodation during university.

44    The Administrator also argues that the Judge had erred in providing for only three years for the Children to obtain a university degree as a good

number of undergraduate degree courses in Singapore take at least four years to complete.

*Dependency claim for Ms Quek*

45    The Administrator argues the sum of $302,400 awarded to Ms Quek as dependency claim was appropriate. The evidence showed that the Deceased had a strong commitment to provide for Ms Quek even after their divorce.

46    Further, the Administrator contends that the discount rates proffered by Dr Wong based on precedents are erroneous. The Administrator also emphasises that it is not desirable for courts to blindly adhere to the multipliers adopted in previous cases. Rather, the court should focus on the individual facts of each case.

*Loss of inheritance*

47    With respect to both Dr Zhu's and Dr Wong's submissions that the sum awarded for loss of inheritance should be *reduced*, the Administrator responds as follows:

> (a)    It is irrelevant that the Children would no longer be dependants prior to the end of the natural death of the Deceased when computing the loss of inheritance.

> (b)    The Judge did take into account what the Deceased was capable of earning after his official retirement and was satisfied that he would be able to meet his expenses and even earn income.

> (c)    Ms Leong's expenditure was taken into account as it was subsumed under the Deceased's own expenditure.

> (d)    The bonuses received by the Deceased in the four years preceding his demise were not illegitimate.

48    The Administrator argues that the sum awarded should instead be *increased* for the following reasons:

> (a)    In relation to the loss of inheritance, the Judge should have adopted Mr Keoy's multiplicand value of $592,957.24 per annum as he was the more credible expert witness.

> (b)    The Judge should have applied a compounded interest rate of 4% per annum over the multiplier of 21 years to reflect the future value of an annuity.

49    Taking all these adjustments into account, the Children should be awarded a total of $5,971,256.53.

Issues before this court

50      The main issue in contention from the three appeals is whether the sums awarded under the following heads are appropriate:

    (a)      the coroner's inquiry fees;

    (b)      the dependency claim of Ms Quek;

    (c)      the dependency claim of the Children; and

    (d)      the loss of inheritance claim of the Children.

51      An ancillary issue, which also arises from CA 131/2015, is whether the Administrator should be allowed to adduce further evidence for the purposes of the appeals (*ie*, SUM 318/2015).

Our decision

52      As our determination of SUM 318/2015 may have a bearing on the analysis of the appropriateness of the various awards, we first address this application.

*Whether leave should be granted for further evidence to be adduced*

53      The further evidence which the Administrator is seeking to adduce comprises the following:

    (a)      the published fee schedules of three driving schools for driving lessons in Singapore;

    (b)      the published fee schedules for various undergraduate degree programmes at three local universities; and

    (c)      the published fee schedules for the residential colleges and/or hostels/halls of residences of the National University of Singapore and the Nanyang Technological University.

54      For further evidence to be adduced at the appellate stage pursuant to s 37(4) of the Supreme Court of Judicature Act (Cap 322, 2007 Rev Ed) and O 57 r 13(2) of the Rules of Court (Cap 322, R 5, 2014 Rev Ed), there must be "special grounds" which justify the introduction of such evidence. To establish that special grounds exist, the applicant must satisfy the three conditions laid down in *Ladd v Marshall* ([38] *supra*) and the conditions are to be applied strictly (see *Singapore Civil Procedure 2015: vol I* (G P Selvam gen ed) (Sweet & Maxwell, 2015) ("*Singapore Civil Procedure*") at para 57/13/11). The Administrator has sought to rely on the decision of the Court of Appeal in *Yeo Chong Lin v Tay Ang Choo Nancy* [2011] 2 SLR 1157 ("*Yeo Chong Lin*") to argue that where the further evidence relates to matters which have occurred after the date of the decision from which the appeal is brought, the satisfaction of special grounds is not required for such evidence to be admitted. According to the Administrator, the further

evidence sought to be adduced relates to Jo-Ann's decision to pursue her university education locally, a decision which was only made after the date of the Judgment.

55    In our view, the Administrator's reliance on *Yeo Chong Lin* is misplaced. In that case, the judge who heard the matter at first instance had to decide the question of who had beneficial ownership over certain shares (*ie*, the father or the daughters) to determine whether these shares should be included in the pool of matrimonial assets. Although it was known to the judge that the daughters were alleging that they were the owners of the shares and that they intended to challenge their father's act in taking away their ownership of the shares, no suit had been commenced by the daughters at that time. Subsequently, after the judgment of the High Court was delivered, the daughters commenced a suit in the High Court to claim for these shares. The fresh evidence sought to be admitted on appeal related to the new action that was instituted by the daughters.

56    In allowing the evidence to be admitted, the Court of Appeal made the following observations (*Yeo Chong Lin* at [11]–[13]):

> 11    However, the fact of the matter is that the filing of S 373/2010 was certainly an event which occurred after the judgment was delivered. *The documents filed in the writ would not have been documents which the Husband could have produced to the Judge.* It cannot be gainsaid that the institution of this writ is directly relevant to the question as to whether the Judge is correct to have treated the Daughters' Shares as belonging to the Husband and thus formed part of the matrimonial assets. ...
>
> 12    ... The fresh evidence which the Husband seeks to adduce *clearly relates to events which occurred after the decision of the Judge and thus do not need to satisfy the requirement of special grounds.* The fact that the daughters' claim to be entitled to those shares was a matter which was brought to the attention of the Judge does not mean that S 373/2010, which was instituted after the decision of the Judge, is not an event which occurred after the decision.
>
> 13    Obviously while this court has the general discretion to allow a party to adduce fresh evidence, the principle of *finis litium* should not be lightly disregarded. In the English House of Lord cases of *Mulholland v Mitchell* [1971] AC 666 and *Murphy v Stone-Wallwork (Charlton) Ltd* [1969] 1 WLR 1023, it was held that no precise formulation should be laid down regarding the admission of further evidence on matters that occurred after the decision. Clearly further evidence which will materially alter the basis of the decision should be allowed. It stands to reason that the conditions governing the admission of further evidence on matters that occurred after the trial should not be more restrictive than the special grounds laid down in *Ladd v Marshall.* The second special ground enunciated in *Ladd v Marshall* only requires the further evidence to have an important influence on the outcome of the appeal, but it need not be determinative. Therefore, perhaps, the test

should be: would the further evidence have a *perceptible impact* on the decision such that it is in the interests of justice that it should be admitted?

[emphasis in original in italics; emphasis added in bold italics]

57    From the above, it is evident that in *Yeo Chong Lin*, the event which arose after the judgment was delivered was the commencement of the new suit by the daughters. Significantly, this meant that the further documents sought to be adduced on appeal were documents which *could not have been produced* to the judge below. This is a factor which is absent from the facts of the present case since the documents which the Administrator is seeking to adduce could have been produced at the trial below.

58    It should also be emphasised that the justification behind admitting further evidence as to matters occurring after the date of the judgment is that the further evidence "materially affects the basis of the earlier decision" and "the change must substantially affect a basic assumption made at the trial" (see *Singapore Civil Procedure* at para 57/13/16).

59    The Administrator argues that the fact that Jo-Ann has now chosen to pursue her education locally instead of overseas is a material change in the factual circumstances. We do not see how this can be so. In the present case, in arriving at his decision, the Judge did not make any assumptions as to whether the Children would be pursuing their university education locally or overseas when awarding the quantum for their dependency claims – rather, the Judge's focus was on whether the Deceased *intended* to send the Children abroad for their tertiary education and to fund the same and he found that no such intention had been proven. Whether Jo-Ann eventually chose to study locally or overseas was irrelevant to the inquiry.

60    It should also be emphasised that with respect to the fee schedules for the driving schools, there is no explanation as to how any event which arose after the Judge's decision would be relevant to justify the relaxation of the *Ladd v Marshall* ([38] *supra*) conditions.

61    Applying the *Ladd v Marshall* conditions, in our judgment, the first condition is not satisfied. The evidence could have been adduced at trial with reasonable diligence. By Ms Quek's own averments in her supporting affidavit dated 6 November 2015 for this application, "[t]he documents … were also all easily obtained from the internet and are publicly available" (at para 10).

62    The Administrator argues that because it was Dr Zhu and Dr Wong who were contending that the Children could complete their education locally instead of overseas, the onus should have been on them to adduce the evidence pertaining to the fees charged by local tertiary education institutions. We disagree with this assertion. It was the Administrator, as plaintiff, who was claiming for the tertiary school fees of the Children. Accordingly, it was open to the Administrator, and indeed incumbent upon it, to produce fees relating to *both* overseas and local tertiary education

institutions to support its claim. By choosing to hang its hat on a successful claim for the former, and therefore omitting to adduce the fee schedules of local universities, the Administrator has to bear the consequences of its litigation strategy or oversight.

63    The Administrator has also sought to rely on the cases of *Cheng-Wong Mei Ling Theresa v Oei Hong Leong* [2006] 2 SLR(R) 637 ("*Oei Hong Leong*") and *Su Sh-Hsyu v Wee Yue Chew* [2007] 3 SLR(R) 673 ("*Su Sh-Hysu*") to argue that the *Ladd v Marshall* conditions should not always be applied rigidly in all circumstances and that the court should allow the introduction of the evidence as it is in the interests of justice to do so. In our judgment, the authorities do not support the Administrator's contention.

64    Although the Court of Appeal held in *Oei Hong Leong* (at [39]) that the rule in *Ladd v Marshall* is "not a statutory provision to be applied rigidly in all circumstances", there are no exceptional circumstances in the present case to justify adopting a relaxed approach to the *Ladd v Marshall* conditions. In *Oei Hong Leong*, the plaintiff was seeking to adduce evidence which showed that the Singapore Improvement Trust (the predecessor of the Housing and Development Board) had approved the development of certain houses in 1956. At the trial below, both the plaintiff and defendant assumed that the houses which had been erected were authorised which explained why the defendant did not raise any objection in this respect. The judge below, however, took a stricter stance and found that although the subdivision plan showed the existing houses, it did not show that permission was granted for their actual development. This point was only brought up for the first time in the grounds of decision of the judge. Therefore, the Court of Appeal found that because the judge had taken up a new point which the parties had not raised, and did not give notice of this new point to the parties, evidence should be allowed in the appeal to show that approval had been obtained. It was found (at [43]) that "[h]ad the point been brought up during the hearing, the plaintiff could easily have brought in the new evidence to seal the point".

65    As for *Su Sh-Hysu*, the Court of Appeal allowed the further evidence to be adduced, notwithstanding that the first condition of the *Ladd v Marshall* ([38] *supra*) test was not satisfied, on the basis that the fresh evidence uncovered the fraud and deception of the other party and such fraud struck at the very root of the litigation. In that case, the appellant was seeking leave to adduce an expert report to corroborate her account of events. The Court of Appeal held that although, at the time of trial, the appellant did have testimonies which supported her case, she should still have gone ahead to obtain the expert report as she had a duty to obtain the *best evidence* in support of her case. She should not have assumed that the judge would wholly accept her version of the facts and the Court of Appeal therefore found that she had failed the first *Ladd v Marshall* condition. However, due to the fraud that was present in *Su Sh-Hysu*, the Court of

Appeal allowed the admission of the expert report notwithstanding the appellant's failure to fulfil the first *Ladd v Marshall* condition.

66    In our view, an analogy may indeed be drawn between the present case and that of *Su Sh-Hysu*, but to the Administrator's detriment. The Administrator had assumed that the Judge would simply allow the claim for the overseas university expenses and had therefore omitted to produce the fee schedules of the local universities at the trial below. This is precisely why the Administrator cannot legitimately say that the first *Ladd v Marshall* condition has been satisfied. In the present case, however, we cannot overlook the failure to meet this condition as there are no exceptional circumstances or improprieties in the nature of fraud to justify a similar result as in *Su Sh-Hysu*.

67    Accordingly, we dismiss SUM 318/2015 and refuse leave for the Administrator to adduce the further evidence.

### Whether the sum awarded for the coroner's inquiry fees is appropriate

68    We turn now to consider the main issues in the appeals, beginning first with a consideration of the sum awarded for the coroner's inquiry fees.

69    It appears to us that while there is support for the view that such fees should be claimable, our courts have not spoken consistently with one voice on this issue. In *Chong Khin Ngen* ([40] *supra*), the High Court allowed a claim for counsel's fees in connection with a coroner's inquiry. There, Amarjeet Singh JC noted that:

> In *Halsbury's Laws of England* 4th Edn. Vol. 12 pg 423 para 1120, it is clearly stated that 'where as a result of the Defendant's wrong, the Plaintiff has incurred costs in other proceedings, the Plaintiff may, subject to the rules of remoteness, recover these costs from the Defendant as damages'. The proceedings before the Coroner were an adjunct and necessary step leading to the present proceedings. The Coroner's Inquiry proceedings flowed from the wrongful act of the Defendant and the Plaintiffs were entitled to retain Counsel for the effective presentation of the evidence there …

70    *Chong Khin Ngen*, however, is not the final word on this matter. In *Tan Harry v Teo Chee Yeow Aloysius* [2004] 1 SLR(R) 513, some doubt was cast over whether such fees should be claimable. In that case, the defendants objected to the plaintiff's claim for his counsel's attendance costs at the coroner's inquiry, arguing that such costs were not claimable. Woo Bih Li J disallowed the claim for the costs of the coroner's inquiry fees on the basis that it had not been pleaded as special damages but declined to adjudge on the question as to whether costs for attending a coroner's inquiry are claimable as special damages (at [75]):

> In my view, Mr Wang should not have been allowed to adduce the bills as evidence in view of the pleadings and his initial withdrawal of this item as special damages. The plaintiffs should not have been awarded anything by

*way of special damages for costs in respect of the [coroner's inquiry]. Accordingly, it was not necessary for me to decide whether, as a matter of principle, costs for attending a [coroner's inquiry] are claimable as special damages, and, if so, whether such costs should be allowed where the Coroner's findings do not attribute any negligence to any party.* [emphasis added]

In reaching his conclusion, Woo J also observed (at [72]) that the defendant in *Chong Khin Ngen* had not been present before the court and therefore no argument to object to the claiming of such fees had been presented to the court.

71     In a later decision of *Kim Anseok v Shi Sool Hee* [2010] SGHC 124, Kan Ting Chiu J allowed the plaintiff's claim for its solicitors' bill of costs and disbursements for attending the coroner's inquiry although there, the defendant similarly did not dispute that such costs were recoverable.

72     Therefore, while previous decisions of the High Court have allowed plaintiffs to recover such fees, their determinations had been made without the benefit of any objections being raised by the defendants in those cases. Having considered the matter, we see no reason, and Dr Zhu has raised no valid objection, for us to conclude that such fees cannot be claimed.

73     We find support for the above conclusion in the English jurisprudence. In *Roach v Home Office* [2010] QB 256 ("*Roach*"), Davis J sitting in the English High Court held that such costs were recoverable. In that case, the claimants, who were the parents of a man who had committed suicide in prison, instructed solicitors and counsel to attend the inquest into his death and subsequently brought a claim against the Home Office for damages in negligence. Davis J allowed the claim for costs relating to the inquest on the basis that costs of attendance at an inquest were capable of being recovered as costs incidental to subsequent civil proceedings.

74     In the more recent decision of *Amelda Helen Lynch (Representation of the Estate of Colette Lynch) v Chief Constable of Warwickshire Police* 2014 WL 5833974 ("*Lynch*"), Master Rowley, sitting in the Senior Courts Costs Office of the English High Court of Justice, affirmed and elaborated on the decision of *Roach* by emphasising (at [61]) that in assessing the recoverable inquest costs, the court should look towards whether the costs were disproportionate and only those necessarily incurred and reasonable in amount would be allowed.

75     It should be noted that the source of the power to award such incidental costs in the United Kingdom may be found in s 51(1) of the Senior Courts Act 1981 (c 54) (UK) which provides that:

    Subject to the provisions of this or any other enactment and to rules of court,
    the costs of and incidental to all proceedings in –

> (a)    the civil division of the Court of Appeal;
>
> (b)    the High Court; and
>
> (c)    any county court,
>
> shall be in the discretion of the court.

Similarly, O 59 r 2(2) of the Rules of Court provides that:

> Subject to the express provisions of any written law and of these Rules, the costs of and incidental to proceedings in the Supreme Court or the State Courts, including the administration of estates and trusts, shall be in the discretion of the Court, and the Court shall have full power to determine by whom and to what extent the costs are to be paid.

76    We therefore find that the coroner's inquiry fees are claimable by the Administrator. The key question which arises then is whether the amount awarded is reasonable and proportionate. On the facts of the present case, and based on the submissions before us, we find that there is insufficient evidence to make a determination one way or the other. Dr Zhu has sought to argue that the amount of $190,513.05 awarded for a 15-day coroner's inquiry was excessive by reference to *Chong Khin Ngen* ([40] *supra*), wherein a sum of $50,914.20 was awarded for a 36-day coroner's inquiry. However, we do not think that a simple comparison may be made between the cases based purely on the number of days that the inquiries had spanned. The scope of work undertaken in that case and the present one may have been significantly different. As was emphasised by the Administrator, at the coroner's inquiry, the Senior State Counsel requested and/or allowed the Administrator's counsel to lead evidence from various important witnesses called by the State and the time allowed for the Administrator's counsel to question each of the witnesses was often equal to, if not more than, the time taken by the State Counsel.

77    In the present case, all that has been presented before this court is a tax invoice prepared by the Administrator's counsel. The tax invoice shows that a fee of $112,500 was charged for counsel's attendance at the coroner's inquiry for 15 days and that $45,000 was charged for the preparation of written submissions for the inquiry. These two specific heads of fees are disputed by Dr Zhu. However, the tax invoice does not suffice to demonstrate the full extent of the Administrator's counsel's participation in the inquiry so as to enable the court to make a determination as to the reasonableness of the costs incurred.

78    Therefore, in the circumstances here, we find that the Administrator is entitled to claim for the coroner's inquiry fees so long as they are proven to be reasonably incurred. The parties will be allowed to tax the amount being claimed for that purpose.

*Whether the sum awarded for the dependency claim of Ms Quek is appropriate*

79    As noted above (at [14]), the Judge had awarded a sum of $302,400 to Ms Quek for her dependency claim. This amount was calculated by using $2,000 a month as the multiplicand, with a multiplier of 12.6 years on the basis of a remaining working life of 21 years (*ie*, with a 40% discount).

80    The parties do not dispute the multiplicand applied by the Judge. Dr Wong, however, argues that the Judge should have applied a discount of 52% which would amount to a multiplier of ten years. Dr Wong relies on the following case authorities to support his point:

| Case | Dependency Period | Discount | Multiplier |
|---|---|---|---|
| *Hanson Ingrid Christina v Tan Puey Tze* [2008] 1 SLR(R) 409 ("*Hanson*") | 12 | 25% | 9 |
| *Cheong Gim Fah v Murugian s/o Rangasamy* [2004] SGHC 93 ("*Cheong*") | 16 | 50% | 8 |
| *The present case* | 21 | 40% | 12.6 |
| *Lassiter Ann Masters v To Keng Lam* [2005] 2 SLR(R) 8 ("*Lassiter*") | 22 | 54% | 10 |
| *Zhang Xiao Ling v Er Swee Poo* [2004] SGHC 21 ("*Zhang*") | 33 | 57% | 14 |

81    A closer perusal of the above cases, however, shows that some of the discount rates reflected in the table are inaccurate.

82    In *Cheong*, contrary to Dr Wong's submissions, the discount rate applied was not 50%. This is because the retirement age at that time was set at 62 years, and not 65 years. This meant that the deceased in that case, having passed away at the age of 49 years, had a remaining working life of 13 years. The assistant registrar had also demarcated the pre-trial and post-trial dependency claims of the wife and thereafter applied a multiplier of eight years for the *post-trial dependency claim alone*. It should be noted that the remaining work life of the deceased in relation to the post-trial dependency claim was approximately only 11 years, and the multiplier of eight years therefore meant that the assistant registrar had applied a discount rate of approximately 27.3%.

83    With respect to *Zhang*, this was also a case decided when the retirement age was 62 years. The deceased in that case passed away at the age of 32 years. The deceased's remaining working life amounted to 30 years, and by eventually applying a multiplier of 14 years, the assistant registrar therefore applied a discount of approximately 53%.

84    A more accurate representation of the discounts awarded in the various case authorities cited would therefore be as follows:

| Case | Dependency period | Discount | Multiplier |
|------|-------------------|----------|------------|
| *Hanson* | 12 | 25% | 9 |
| *Cheong* | 11 | 27.3% | 8 |
| *The present case* | 21 | 40% | 12.6 |
| *Lassiter* | 22 | 54% | 10 |
| *Zhang* | 30 | 53% | 14 |

85    From the above, the precedents show that a longer dependency period will not *always* result in a higher discount rate. For example, although the dependency period in *Zhang* ([80] *supra*) was eight years longer than in *Lassiter*, a greater discount was awarded in *Lassiter* ([80] *supra*). Such occurrences reflect the principle that each case must be determined on its unique circumstances and this dovetails with the observations of the Court of Appeal in *Poh Huat Heng Corp Pte Ltd v Hafizul Islam Kofil Uddin* [2012] 3 SLR 1003 ("*Hafizul*") (at [54]) that:

> ... a blind adherence to the multipliers in previous cases is not desirable. The court should consider in each case whether the previous cases are truly comparable, and should not hesitate to depart from the multipliers used in previous cases if the circumstances call for it.

86    In the more recent decision of *Lai Wai Keong Eugene v Loo Wei Yen* [2014] 3 SLR 702 ("*Lai Wai Keong*"), the Court of Appeal had further opined (at [38]) that whilst it would have been inappropriate to effect a radical and sweeping revision of the discount rate embedded in the multipliers used under the conventional approach, this would not preclude courts from adopting a lower or higher discount rate, and thereby departing from the trend of multipliers in previous cases, if the court found it appropriate to do so on the facts of the particular case before it. In this regard, we emphasise that parties should not merely rely on the multipliers set out in previous cases but should also seek to assist the court further by providing relevant actuarial data to justify the discounts which they are advocating for.

87    Having said that, and as a general proposition, we would agree that it would be in line with reason and logic that the longer the dependency period the higher should be the rate of discount. This is because, where the dependency period is longer, there would be greater uncertainties as far as vicissitudes of life are concerned. In our judgment, the discount rate of 40% applied by the Judge is not one which deviates significantly, if at all, from the general trend of discounts which courts have applied in previous cases. Accordingly, we do not think that the multiplier of 12.6 years is so excessive as to warrant appellate intervention.

88    Dr Zhu has raised a further argument that because Ms Quek is a high-earning individual, a lump sum of $24,000 would suffice for the purpose of her dependency claim. Dr Zhu relies heavily on the fact that during the parliamentary debates for the amendments to the Civil Law Act which expanded the scope of "dependants" to include a former wife, the Senior Minister of State moving the bill stated as follows (*Singapore Parliamentary Debates, Official Report* (19 January 2009) vol 85 at col 1139 (Assoc Prof Ho Peng Kee, Senior Minister of State for Law)):

> … [T]he definition of 'dependant' will be extended to cover a 'former wife'. This will enable ex-wives who have been supported by the deceased prior to his death pursuant to maintenance orders to file dependency claims when their ex-husbands die. Indeed these ex-wives may still be dependent on the deceased *at least for some time* after the marriage has ended. [emphasis added]

According to Dr Zhu, the use of the phrase "at least for some time" shows that the legislature never intended for a surviving ex-wife to be paid the same amount until the end of the normal working life of the deceased ex-husband.

89    In our judgment, Dr Zhu's reliance on the above excerpt from the parliamentary debates is misconceived and should not be read out of context. The genesis of the amendment to include a former wife as a "dependant" stemmed from the suggestions in the report of the Law Reform Committee ("the Committee") where reference was made to the decision of *Hanson* ([80] *supra*), which was decided at a time when ex-wives did not fall within the ambit of a "dependant" under the Civil Law Act (see Law Reform Committee, Singapore Academy of Law, *Loss of Inheritance or Savings: A Proposal for Law Reform* (April 2008) (Authors: Michael Hwang SC and Fong Lee Cheng) ("the Committee Report")). In *Hanson*, at the time of the husband's demise, a decree *nisi* had been issued but not the decree absolute. This led the court to conclude that since the legal form of the marriage was still intact, the deceased's "former" wife was still considered his wife and could therefore maintain her claim as a dependant. In its report, the Committee considered the case of *Hanson* and stated (at para 29) that:

> It is foreseeable that future cases may similarly involve a recent divorce but the divorce may be rendered absolute such that a former wife, who would have received maintenance had the deceased been living, would be barred from bringing a dependency claim due to his death. This is an unfair result which also needs to be corrected.

90    From the above, it is clear that the intention behind the proposal was to ensure that former wives would be able to claim for dependency under the Civil Law Act, *even* where the divorce has been rendered absolute, just as the "former" wife in *Hanson* was able to do. It is therefore instructive to look at what was awarded to the "former" wife in *Hanson*. There, prior to

his demise, the deceased had been ordered to pay a monthly maintenance of $4,200 to his "former" wife. In ordering that the defendant had to pay a total of $453,600 to the "former" wife (*ie*, $4,200 per month over nine years), Judith Prakash J (as then was) noted (at [54]–[56]) that:

> 54    Ingrid Hanson stopped working after she married Sandy Eu in 1985. Sandy Eu was the sole breadwinner of the family. Having left the workforce for so long (22 years), it is the plaintiffs' case that Ingrid Hanson could no longer find gainful employment and should be maintained for the rest of her life (calculated at 25 years).

> 55    The [assistant registrar] declined to fix the multiplier suggested by the plaintiffs. While the [assistant registrar] found that Ingrid Hanson was entitled, as Sandy Eu's wife, to sustain a dependency claim under the Act, she fixed the multiplier at a mere four years. This was because the [assistant registrar] was of the view that Ingrid Hanson should be compensated only for the loss as a wife until the point when her marriage would have been finally dissolved, and this was estimated at about four years.

> 56    I take a different view. *Even after the decree absolute had been granted, Ingrid Hanson would have continued receiving maintenance payments from Sandy Eu. These would be over and above the matrimonial assets she received in the division. The critical point to note is that the court, in assessing dependency, inquires into the likely pecuniary support that the deceased would have provided for the dependent if he or she had remained alive. If Sandy Eu had remained alive, Ingrid Hanson would reasonably have expected to be maintained for the rest of Sandy Eu's life (subject to any material change of circumstances that might have occurred).* It was thus erroneous for the [assistant registrar] to calculate dependency only until the estimated date of grant of decree absolute.

> [emphasis added]

91    From the above, it is clear, and indeed trite, that when dealing with any dependency claim, including the claim of a "former wife", the principle of a "reasonable expectation of pecuniary benefit" is fundamental to the inquiry (as it is in any other dependency claim) (see *Gul Chandiram Mahtani v Chain Singh* [1998] 2 SLR(R) 801 at [17]–[18] ("*Gul Chandiram Mahtani*")). The focus is not placed on the need, but on the reasonable expectation of the dependant. In the present case, at the time the maintenance order was agreed upon, Ms Quek was already generating an income of approximately US$10,000 a month. This goes to show that the Deceased, being an individual of significant earning power, was content to pay a maintenance sum of $9,000 a month *despite* Ms Quek's ability to earn a substantial income of her own and despite the fact that Ms Quek was given a share of the properties under the divorce proceedings which amounted to about $500,000. In our judgment, Ms Quek has a reasonable expectation of receiving this maintenance sum for the rest of the Deceased's working life.

92    Accordingly, we decline to vary the Judge's award of $302,400 for Ms Quek's dependency claim.

### Whether the sum awarded for the dependency claim for the Children is appropriate

93    The appropriateness of the sum awarded for the Children's dependency claim is a point of contention in all three appeals. Dr Zhu and Dr Wong submit that the total sum of $814,500 awarded for the Children's dependency claim is excessive and *should be reduced*. On the other hand, the Administrator argues that this sum is inadequate and *should be increased*. We will consider each of these contentions in turn.

### Whether the sums awarded should be reduced

94    Dr Zhu and Dr Wong do not seek to disturb the Judge's award of $328,500 for Jo-Ann's dependency claim; their main submission is that the sum of $486,000 which was awarded for Ryan's claim is excessive.

95    Dr Zhu argues that the Judge should have applied a further 20% discount to reflect Ms Quek's share in contributing to Ryan's expenses and places heavy reliance on the decision of *Cheong* ([80] *supra*) where a discount of 23% was applied in the light of the mother's ability to contribute to the children's expenses.

96    Dr Zhu has failed, however, to appreciate that the factual matrix in *Cheong* was materially distinct from the present case. In *Cheong*, the assistant registrar applied the discount on the basis that the expenses of the children would not have been solely borne by the deceased father and therefore legitimately took into account the earning capacity of the mother to ascertain what would have been her contribution to such expenses. In the present case, however, prior to his demise, the Deceased was *already* providing for a sum of $3,500 a month as maintenance to meet each child's expenses. This sum was agreed upon, notwithstanding that Ms Quek had an earning capacity of her own. The starting points of *Cheong* and the present case are therefore markedly different.

97    As already noted above, the focus must be placed on a "reasonable expectation of pecuniary benefit, as of right or otherwise, from the continuance of life" (see *Gul Chandiram Mahtani* ([91] *supra*) at [17]). This principle was central, and indeed correctly so, to the Judge's mind when he rejected Dr Zhu's submission in the suit below. He concluded (at [23] of the Judgment) that:

> I do not think it appropriate to make provision for Ms Quek's contribution to the family as I am not calculating the total expenses of each child ... I am, instead *focussing on what pecuniary benefit the children would have received from the deceased, but for his death.* [emphasis added]

In our judgment, there is nothing erroneous about the approach taken by the Judge.

98    In the present case, Ryan reasonably expected to continue to receiving this sum of $3,500 to meet his expenses up till the end of his tertiary education. The earning capacity of Ms Quek should not affect this conclusion.

99    As for Dr Wong, he relies on the same precedent table referred to above (at [80]) to argue that a greater discount should have been applied to the multiplier for Ryan's dependency claim. However, as already noted, Dr Wong's analysis of the precedents was inaccurate. By applying the revised table as set out at [84] above, with a dependency period of 14 years, the discount of 25% cannot be regarded as being excessive so as to warrant appellate intervention. We therefore conclude that the sums awarded for the Children's dependency claims should not be reduced.

*Whether the sums awarded should be increased*

100    We turn now to consider the Administrator's contentions that the sums awarded to the Children should be *increased*. As noted above (at [43]), the Administrator is asking for additional sums to be awarded, first, for the Children's costs of vacation and similar expenses, secondly, for the cost of the Children's driving lessons, thirdly, for the Children's university tuition fees and fourthly, for the Children's accommodation during university.

(1)    Costs of vacation and similar expenses

101    With respect to the Children's claim for the costs of vacation and similar expenses (which would include the cost of gifts, computers and school trips), the Judge found that there was no evidence that the Deceased intended to pay for such expenses for the foreseeable future (see the Judgment at [22]). We do not share that view as we think the Judge had taken too narrow a perspective of the evidence.

102    As was held in *Ng Siew Choo v Tan Kian Choon* [1990] 1 SLR(R) 235 (at [15]), there does not have to be "distinct evidence of pecuniary advantage in existence prior to or at the time of death". Rather, it would suffice to show that there is "some basis of fact from which the inference could be drawn that there was a reasonable expectation of pecuniary benefit". In our judgment, an inference could be drawn from the evidence before us that the Deceased would have catered for such expenses.

103    Quite apart from the fact that Ms Quek and the Children have consistently attested to the fact that the Deceased was a generous father who would pay for the Children's holiday trips and shower gifts on them, even his own lawyer, Ms Foo Siew Fong, who represented him during the

divorce proceedings, attested to his generosity. We reproduce relevant excepts of Ms Foo's affidavit:

> 5      … The Deceased was anxious to ensure that Peggy and the children would be adequately provided for. His attitude was that while he had not been able to make his marriage work, he could at least look after them as best he could.
>
> 6      When I first received Peggy's proposal for maintenance from her lawyer, I had been of the opinion that the amount requested could be reduced and I advised the Deceased accordingly. However the Deceased told me that he was willing to pay whatever Peggy asked for, and that there was no need to negotiate for a lower quantum in maintenance. This was not typical as far as divorce clients are concerned. …
>
> 7      … *I had highlighted to the Deceased that Peggy may in future ask for an increase in maintenance and seek a variation in the maintenance order, especially as his children grow up and have additional needs, for example, additional expenses related to their further education, trips abroad etc. The Deceased assured me that he was aware of this and he had every intention to ensure that his children were well provided for and would be able to take advantage of opportunities that may come their way.*
>
> [emphasis added]

104  It must be emphasised that Ms Foo is an independent party in the proceedings and would have no interest in vouching for the generosity of the Deceased. The Deceased's girlfriend, Ms Leong, who is also an independent party to the proceedings, similarly attested to the generosity of the Deceased. She noted that "[the Deceased] remained committed to looking after … his children … financially, as he felt it was his responsibility" and that "[h]e took pride in looking after the people around him … [and] [h]is children were, of course his first priority".

105  Accordingly, in our judgment, an additional $7,000 per annum should be awarded for each child to meet their costs of vacation and other expenses.

(2)    Driving lessons

106  As for the driving lesson fees, we similarly take the view that this should have been allowed by the Judge. As was held by Prakash J in *Hanson* ([80] *supra* at [52]), "in the modern context, learning to drive can be regarded as a normal part of the education of middle-class children [and] [t]hese expenses should be allowed". Prakash J then proceeded to award a sum of $2,386.65 for each child's driving lessons. Using that figure as a benchmark and taking into account that the fees would have increased since that time, in our judgment, a one-off sum of $2,500 for each child for their driving lessons would be appropriate.

(3)    University fees

107    Turning now to the university fees for the Children, in our judgment, the increase in $500 per month which the Judge awarded to reflect the higher fees in a university education appears to be insufficient. We agree with the Administrator that the costs incurred during a student's university life would be significantly higher than during the previous years of education. Given the Deceased's commitment to taking care of the Children, we have no reason to doubt that he would have made provision for the Children's increased expenses and that they could reasonably expect to receive such a benefit.

108    Accordingly, we adjust the award given by the Judge such that there would be an *additional* increase of $500 per month for the Children during their university years. This would result in them receiving $4,500 per month during that period of time.

109    At this juncture, it is necessary to address an inconsistency in the Judgement *vis-à-vis* the age at which the Children would complete their tertiary education. The Judge indicated that Jo-Ann and Ryan would be 23 years old and 25 years old respectively when they complete their tertiary education and this was evidently on the basis of a three-year university degree course. However, on the premise of a three-year university education, Jo-Ann would in fact be 22 years old when she completes her degree and Ryan would be 24 years old. In our judgment, quite apart from the above miscalculation, the Judge should have taken into account the fact that many undergraduate degree courses take four years to complete (*eg*, degrees with honours). At the time of the trial, both Jo-Ann and Ryan were doing well in school and it would be reasonable, in our view, for them to receive financial support for a four-year university education. The result of this is that the Judge's conclusion that Jo-Ann and Ryan would be 23 years old and 25 years old respectively when they complete their tertiary education remains unchanged.

110    Therefore, after making the necessary adjustments, the Children should be awarded the following amounts for their respective dependency claims:

(a)    Jo-Ann – [(($7,000 x ten years) + ($3,500 x 12 x six years) + ($4,500 x 12 x four years)) x 75%] + $2,500 = <u>$406,000</u>

(b)    Ryan – [(($7,000 x 15 years) + ($3,500 x 12 x 11 years) + ($4,500 x 12 x four years)) x 75%] + $2,500 = <u>$589,750</u>

It should be noted that we do not apply a 25% discount to the $2,500 which we award for the Children's driving lessons since that sum is a one-off expense not subject to any multiplier.

*Whether the sum awarded for loss of inheritance is appropriate*

111   As the parties have highlighted, this is the first time in which this court has had to consider a claim for loss of inheritance pursuant to s 22(1A) of the Civil Law Act. Section 22(1A) was enacted in 2009 and provides as follows:

> In assessing the damages under subsection (1), the court shall take into account any moneys or other benefits which the deceased would be likely to have given to the dependants by way of maintenance, gift, bequest or devise or which the dependants would likely to have received by way of succession from the deceased had the deceased lived beyond the date of the wrongful death.

The impetus for such a legislative change also stemmed from the recommendations of the Committee Report as evidenced by the parliamentary debates surrounding the enactment of this new provision (see *Singapore Parliamentary Debates, Official Report* (19 January 2009) vol 85 at col 1138–1139 (Assoc Prof Ho Peng Kee, Senior Minister of State for Law)):

> *(a) Law Reform Committee's proposals on loss of inheritance and savings and the definition of 'dependant'*
>
> Clauses 3 and 5 of the Bill arise out of the recommendations of the Singapore Academy of Law's Law Reform Committee chaired by Justice Judith Prakash.
>
> The Committee has recommended, and [the Ministry of Law] agrees, that in computing claims filed by dependants, account should be taken of any savings or inheritance that they could have received from the deceased. This is because such sums are traditionally put aside by deceased persons, when alive, to eventually benefit their family. Hence, to leave them out of the computation would under-compensate the dependants. The current method of assessment, which is based largely on the annual or monthly sum given to the dependants, is inadequate where there is divergence between what the deceased actually gave and what he could afford to give, or where the deceased preferred to reinvest the moneys instead of disbursing them to his dependants. This amendment will bring us in line with the approach taken in the UK, Australia, Hong Kong, USA and Canada.

112   Given that there has hitherto not been any case which has invoked s 22(1A), we take this opportunity to express our views on the appropriate methodology that should be applied in the computation of a loss of inheritance claim.

*The appropriate methodology*

113   The Judge took the view that a balanced approach would be to calculate the amount of wealth which the Deceased would have accumulated, but for his death. He sought to do so by applying the conventional multiplier-multiplicand approach which essentially consists of three steps:

(a)    First, select an appropriate multiplicand which represents the savings of the Deceased per annum.

(b)    Second, multiply that by an appropriate multiplier which would be discounted for accelerated receipt and vicissitudes of life.

(c)    Third, take into account the appropriate percentage of this inheritance which should be attributed to the dependant. In this case, the Judge applied a percentage of 52.5% as the Deceased had indicated in his will that he intended to leave that percentage of his estate to the Children.

114    The Administrator and Dr Wong have not objected to this general approach which was taken by the Judge. Dr Zhu has, however, raised concerns over this approach on the basis that it ignores the possibility that the Children may cease to be dependants well before the end of the Deceased's natural life. Dr Zhu's objections will be considered at a later part of this judgment (see below at [142]–[150]).

115    As a matter of general methodology, we agree with the Judge that the conventional multiplier-multiplicand approach would be relevant in quantifying a loss of inheritance claim. It is apposite to note that in the Committee Report, three possible methods for computing such claims were recommended, of which two were based on the application of the conventional multiplier-multiplicand approach. These two methods were described in the following terms (at pp 49–50):

> II.    Method B ([Central Provident Fund] assessment applied *mutatis mutandis* to other types of savings)
>
> The current method of taking future [Central Provident Fund (CPF)] contributions into account can be extended to non-CPF future savings. This can be done by setting a percentage rate of savings relative to earned income for the various stages in life. It can function as a rough and ready alternative to Method A.
>
> *Assessment of Damages* (2005)
>
> > Contributions to the CPF may be included in the figure of annual dependency to be multiplied by the multiplier or excluded from the figure of annual dependency and a separate and additional sum awarded in respect of them. In *Teoh Mee Sun & Anor v Asia-Pacific Shipyard Pte Ltd* [1991] SGHC 171, the pre-trial CPF loss was arrived at by applying the percentage rates of contribution over the period to the average of estimated earnings over the period. The post-trial loss was arrived at in a similar fashion using the rate at the date of the trial and the post-trial multiplier. A discount was then given on the total to allow for uncertainties and the fact that it would be an accelerated payment. The total was then divided among the dependants according to the rules of intestate succession. A discount may be given for the fact that not all the CPF monies would necessarily go to the dependants if

the deceased were alive: *Ng Lim Lian v PSA* [[1997] SGHC 62], *Guo Xiuhua v Lee Chin Ngee* [2001] SGHC 190.

III.    Method C (adapted from method used by Hong Kong courts)

The Hong Kong courts calculate the available surplus after monthly family contributions and then deduct a sum for personal expenses to determine the monthly saving. To adapt this to a dependency claim, the monthly saving can be multiplied by the multiplier, then a percentage for acceleration, personal post-retirement expenses and other uncertainties deducted to arrive at a fund representing savings which would be available to be spent on dependants either in the later years of the deceased's life or as inheritance. The court can then determine what proportion would benefit which dependant and apportion accordingly.

116   In our view, there is merit in adopting the multiplier-multiplicand approach which is in line with the way loss of Central Provident Funds ("CPF") contributions are computed since, as was noted in the Committee Report (at para 84), "normal savings should be treated similarly to CPF, as there is no logical distinction between the two".

117   Adopting this approach would also dovetail with the Court of Appeal's recent endorsement of the continued application of the conventional multiplier-multiplicand approach when quantifying loss of future earnings. In *Lai Wai Keong* ([86] *supra*), the Court of Appeal was asked to address the question as to whether it should depart from the conventional approach when assessing the loss of future earnings for a tort victim who was *injured* in an accident in the light of changes to the statutory minimum retirement age and the prevailing real interest rates. The Court of Appeal saw no reason to depart from the conventional approach and it observed (at [18] and [20]) that:

> 18   Although the Board did not say that local courts should use the conventional approach (and indeed opined that the present value approach was more accurate), our Court of Appeal in *Tay Cheng Yan* held (... at [16]) that *the conventional approach should be used by local courts as both the courts and local practitioners were more familiar with it. Thereafter, the conventional approach has held sway in local courts to this day.*
>
> ...
>
> 20   Against this backdrop, we turn to consider the issue at hand. *Mr Wee submits that our decision in Hafizul (which was issued only four days before the [assistant registrar] made his award) has paved the way for local courts to jettison the conventional approach in favour of the present value approach, which is presented as a more accurate method of calculating future losses. We disagree.* ... [B]oth the approach described at [48(a)] of [*Hafizul*] ('the first approach') and the approach described at [48(b)] thereof ('the second approach') deal with *the selection of the multiplier* to be used under *the conventional approach.* Under the first approach, the multiplier is selected by reference to the multipliers used in comparable cases; under the second approach, the multiplier is derived by taking the plaintiff's expected working life (expressed as a number of years) and then discounting that figure for

accelerated receipt and the vicissitudes of life. It would therefore be incorrect to read *Hafizul* as endorsing an approach that dispenses with the use of multipliers altogether and relies entirely on present value calculations. We accept that in practice, the second approach would require the court to make present value calculations to determine the appropriate discount to be applied for accelerated receipt, and there is indeed nothing wrong with using present value tables for this purpose. *But the ultimate purpose of the exercise remains the derivation of a multiplier that can be cross-checked with the multipliers used in past cases so as to achieve consistency with cases involving similarly-situated plaintiffs.*

[emphasis in original in italics; emphasis added in bold italics]

118    While *Lai Wai Leong* dealt with the loss of future earnings for a personal injury case and not a loss of inheritance claim as part of a dependency claim, the observations with respect to the familiarity of the courts in applying the conventional multiplier-multiplicand approach applies with equal force in the present context.

119    According to the Administrator, however, there is an important distinction between a loss of inheritance claim as compared to a loss of future earnings claim which would impact the methodology of quantifying such claims. When calculating loss of inheritance, the court is determining the future value of an annuity; in other words, the future value of a recurring amount of savings that can be invested or can generate interest. Such a consideration does not arise in the usual loss of support or loss of future earnings claims as those claims are concerned with the present value of an annuity. According to the Administrator, this distinction means that there should be an extra step to the conventional multiplier-multiplicand methodology – factoring in compounded interest from the savings during the multiplier period. We have reservations that such an additional step should feature in the analysis.

120    The Administrator has sought to justify the incorporation of this additional step on the basis that factoring in compounded interest is "a paired assumption" with the discount which courts award for accelerated receipt of a lump sum payment. As is well-established, an appropriate discount must be made to account for possible investment gains that a dependant would be expected to make as a result of the accelerated receipt of a lifetime payment (see, *eg*, *Hafizul* ([85] *supra*) at [57]). According to the Administrator:

> If the Courts are to assume that claimants are to invest money at a rate of 4% per annum, a paired and corresponding assumption must follow: The Deceased too could have invested the money to obtain returns at the rate of 4% per annum.

In our judgment, this submission is misconceived. It should be noted that the reason the courts apply a discount for accelerated receipt is due to the *fact* that a dependant is receiving a lifetime payment earlier. The discount is

therefore meant to account for the dependant having *immediate access* to these monies which he could use to generate returns on. The court is not making any assumption as to whether the dependant would, as a matter of fact or even as a matter of likelihood, be applying the monies in a manner that would generate returns; rather, the discount is awarded to reflect that this *could be done.*

121   This is wholly different from adding compounded interest to the annual savings of a deceased which assumes, as a matter of fact, that the deceased *would, or would more likely than not*, invest his savings in a manner that would generate a steady rate of returns. In our view, while an assessment of damages is necessarily an exercise which involves an element of prediction and often requires the courts to grapple with various imponderables, to factor in the potential returns that a deceased could generate *if he decided to invest* his notional annual savings would be delving a step too far into the realm of speculation. It should be noted that even if the assumption could be made that a deceased would invest his notional annual savings, factoring in compound interest assumes further that he would generate a steady rate of returns on this investment. It should go without saying that this is highly speculative – it is first uncertain how a deceased would choose to invest his savings and it is equally likely that if a deceased had made investments, it could have resulted in a *reduction*, instead of an increase, in his overall wealth. In our judgment, factoring in compound interest would add a further layer of uncertainty to what is already an imprecise methodology and we are not prepared do so. This is not to say, however, that should the evidence establish that a deceased was an investor who generated a consistent rate of returns on his investments, this will not be taken into account. This would be factored in when the court considers what the appropriate multiplicand should be as his investment returns would form part of his annual earnings (and his savings as well). However, we cannot accept the Administrator's suggestion that when computing a loss of inheritance claim, compounded interest should be taken into account, as a matter of course, such that there should be an extra step added to the multiplier-multiplicand approach.

122   Indeed, the Administrator has been unable to point us to any authorities where such a step had been applied. As is evident from the Committee Report (which was the impetus for the legislative change), the learned authors had never considered that it would be appropriate for such a methodology to be utilised. As noted above, the Committee had proposed two different methods for calculating the loss of inheritance which are essentially based on the multiplier-multiplicand approach. Neither of these proposed methods accommodate, nor do they contemplate, the taking of an *additional step* based on the income which could potentially be generated from a deceased's future savings. In our judgment, this must be correct.

123    Therefore, the conventional multiplier-multiplicand approach is the appropriate methodology to be applied when computing a loss of inheritance claim. It must be noted, however, that while the general methodology is similar to the computation of a loss of dependency claim, there is an additional factor which must be taken into account and which is unique to a loss of inheritance claim – the post-retirement expenditure of the deceased. In this regard, we found the observations of the Hong Kong Court of Final Appeal in *Lam Pak Chiu v Tsang Mei Ying* [2001] HKCFA 28 to be particular instructive (at [34]–[35]):

> Thus if the court were to find in any given case that an accumulation of wealth would have been achieved by the notional time of retirement, the realistic possibilities, factoring in probable inflation, would then be as follows:
>
> > (i)    expenditure during retirement may exceed the income from the accumulation plus any pension and the like received during retirement so as to exhaust the accumulation some time before the notional time of death, thus leaving the deceased dependent upon state, family or other help during his notional final years; or
> >
> > (ii)    post-retirement expenditure may exceed post-retirement receipts but only so as to diminish the accumulation without exhausting it; or
> >
> > (iii)    such receipts may more or less match such expenditure so as to leave the deceased's financial position at the notional time of death much the same as it had been at the notional time of retirement; or
> >
> > (iv)    it may even be that such receipts would exceed such expenditure so as to leave his financial position better at the notional time of death than it had been at the notional time of retirement.
>
> *It would be for the court to select from these possibilities the one which it considers the most realistic in the particular circumstances of the case, remembering that the burden lies on the party who asserts.*
>
> [emphasis added]

124    While we note that the above observations were made in the context of an *estate* claim for loss of accumulation of wealth (as compared to a *dependency* claim for loss of inheritance), it was suggested in the Committee Report (at p 57) that the above framework would be "a useful reference for our courts if an award is made for loss of inheritance/savings in a dependency claim". We find it to be so. What this means is that when adjustments are made at the second stage of the multiplier-multiplicand approach, the court must be alive to the fact that post-retirement expenses may result in a decrease, an increase or no change in the notional wealth of the deceased as reckoned from the time of his notional retirement up to the time of his notional death.

125    To summarise, when computing a loss of inheritance claim, the following three steps should be applied:

(a)    First, an appropriate multiplicand should be derived which would reflect the savings of the deceased per annum.

(b)    Second, this multiplicand should be multiplied by an appropriate multiplier which would be discounted for accelerated receipt and vicissitudes of life, along with an adjustment to reflect the post-retirement expenses of the deceased.

(c)    Third, an appropriate percentage of this inheritance should be attributed to the dependant.

We turn now to apply these three steps to the present case.

### Stage 1: Ascertaining the multiplicand

126    The Judge had derived the average savings per annum of the Deceased on the basis of the court assessor's report, which was produced after studying both the reports of Mr Keoy and Mr Yin, and after conducting three rounds of discussions with the two experts. This led the Judge to adopt the figure of $587,000 per annum as the multiplicand for the loss of inheritance claim.

127    Although the figures used by the Judge were taken from the court assessor's report, the court assessor had used Mr Keoy's report as a base for his calculations. This is evident from p 13 of the court assessor's report, which states:

> 54.    It is important to highlight that during the meeting held on 9 September 2014, the Defendants' Expert [ie, Mr Yin] agreed that the methodology adopted by the Plaintiff's Expert [ie, Mr Keoy] is acceptable. However, without traceable documents to prove that the assumptions that the Plaintiff's Expert made is factual, the Defendant's Expert was not willing to accept the assumptions in Annex 6.

> …

> 57.    However, for the purposes of this Memorandum, I am inclined to accept the Plaintiff's Expert's workings and assumptions set out in Annex 6. I found these assumptions to be logical in the absence of any further evidence.

> [emphasis in original]

128    Therefore, it would be apposite to address some of the objections raised by Dr Zhu and Dr Wong against the findings of Mr Keoy as they did have a bearing on the eventual figures relied upon by the Judge. The salient issues raised are as follows:

(a)    whether it was correct to assume that the Deceased would be paid a monthly salary of $57,200 per month and whether he would receive the same bonus figures from the four years preceding his death annually until he turned 65; and

(b)    whether Ms Leong's expenditure had been taken into account.

Each of these objections will be addressed in turn.

*Monthly salary and bonus payments*

129   We reject Dr Zhu's argument that there is no basis to show that the Deceased would have continued earning the same monthly income and receive the same annual bonus payments if he had not met his premature demise. As it stands, the monthly salary which the Deceased was drawing prior to his demise represents the most viable and reliable basis upon which to calculate the Deceased's monthly salary. Dr Zhu has suggested no other alternative method of computation. Additionally, the risk that the Deceased could lose his job would be accounted for by the discount which is applied at the end of the computation and should not affect the multiplicand to be applied.

130   As for the bonus payments, it should be emphasised that even the Defendants' own expert (*ie*, Mr Yin) had accepted the legitimacy of these bonuses and used them as a basis for his own financial projections. It was for that reason that the values derived by both experts *vis-à-vis* the deceased's average net operating cash flow per annum were relatively similar. Although Dr Wong is now asserting that these bonuses should not have been included into the computation, there has not been sufficient evidence brought to our attention to find that these bonuses were illegitimate in nature.

*Ms Leong's personal expenditure*

131   In our view, Ms Leong's personal expenses had been sufficiently taken into account *as part of the Deceased's own expenses* in the computation. Ms Leong had been the Deceased's partner since his divorce in 2006 which coincided with the start of the four-year review period which was utilised by both Mr Keoy and the court assessor to calculate the Deceased's financial arrangements and obligations. In his report, Mr Keoy considered all credit card charges, cash withdrawals, personal purchases, utility bill payments and others as part of the Deceased's "personal expenses". These "personal expenses" would have logically included the amounts he was spending on Ms Leong, especially considering that she was his live-in partner. This conclusion is further buttressed by para 7.2 of his report where he states that:

> I noted from the Affidavit of Mabel Leong Mun Yee ('Ms Leong') dated 7th May 2014, that the Audi TT was purchased for the purpose of supporting Ms Leong, his then fiancée, who was selling Audi cars. I assumed the Deceased will maintain this car until the expiration of the COE and then deregister the car.

It is evident that Mr Keoy did not leave Ms Leong out of consideration when computing the Deceased's expenses. Therefore, the projection of the Deceased's expenses would have included Ms Leong's expenses as well.

132   Accordingly, we find that the Judge was justified in using the figure of $587,000 per annum as the multiplicand for the loss of inheritance claim.

*Stage 2: Factoring in the multiplier*

133   However, in our judgment, the 40% discount applied by the Judge (to reach a multiplier of 12.6 years) was insufficient. Before detailing our reasons for so finding, we address a few contentions made by Dr Wong which are, in our judgment, unmeritorious.

134   First, we reject Dr Wong's submission that there should have been a smaller multiplier applied due to the expenses of Ms Leong. As we have noted above, Ms Leong's expenses had already been included as part of the computation of the multiplicand. Such expenses should not affect the multiplier.

135   Further, contrary to what was submitted by Dr Wong, the Judge's observation that a discount rate of 4% per annum better reflects the risk attached to the cash flows as compared to Mr Keoy's suggested rate of 1.1% did not mean that he intended to apply a *further* discount on top of the overall 40% discount to the global sum. We disagree with Dr Wong's submission that the Judge may have muddled the 4% discount rate which is meant to reflect future cash flows with the 40% discount which is meant to account for vicissitudes of life and a lump sum payment. Rather, the 4% discount rate was the *basis* on which the 40% discount was derived as it is precisely the fact that there is such a discount rate at play which justifies an overall discount being applied to reflect the accelerated receipt of such monies and other vicissitudes of life. This point was also made in the Court of Appeal decision of *Lai Wai Keong* ([86] *supra*) where it was observed (at [28]) that "the cases indicate that the multipliers used under the conventional approach have been based on the assumption that the lump sum award can be invested to achieve real rates of return of 4–5%".

136   In the present case, the Judge was applying the conventional multiplier-multiplicand approach and therefore his reference to the 4% discount rate per annum was simply an explanation as to why he had applied an overall 40% discount, which is in line with the discounts applied in the precedents (see above at [84]). Dr Wong is therefore incorrect in asserting that, based on a 4% discount rate, a further discount has to be applied.

137   However, as noted above, we are of the view that the Judge had erred in applying the same discount (*ie*, 40%) as he did for Ms Quek's dependency claim to the Children's loss of inheritance claim. This is so for several reasons.

138   First, it should be noted that the discount that is applied to a dependency claim is based both on uncertainties in the future (due to vicissitudes of life) *and* for accelerated receipt of a lump sum payment (see

*Lai Wee Lian v Singapore Bus Service (1978) Ltd* [1983–1984] SLR(R) 388 at [20]). While the uncertainty with respect to the Deceased's ability to earn the same income during his working years (*ie*, up to the age of 65 years old) is similar for both Ms Quek's dependency claim and the Children's loss of inheritance claim, the accelerated receipt component is not the same. This is because the Children are only expected to receive their inheritance at the time of the Deceased's notional death, which as accepted by the Judge, would be when he reached the age of 80 years. By being awarded a lump sum now, the Children are effectively receiving their inheritance 36 years earlier than they would have if the Deceased had not met a premature demise. This must be contrasted with the multiplier which was applied to Ms Quek's dependency claim which was based *only* on the remainder of the Deceased's income earning years (*ie*, 21 years). By applying the same 40% discount, the Judge failed to take into account the additional 15 years acceleration (*ie*, from the date of the Deceased's notional retirement at 65 years old to the date of his notional death at 80 years old) which the Children would benefit from by receiving a lump sum award.

139   Second, in our judgment, further adjustments had to be made to account for the post-retirement expenses of the Deceased. We note that the Judge did not expressly direct his mind to this issue. The Administrator contends, however, that it was implicit in the Judge's conclusion that he had found that the Deceased was capable of generating funds even after his official retirement and was satisfied that the Deceased would be able to meet his expenses and even earn surplus income. In this regard, the Administrator points out that the Deceased would have continued to receive rental income, post-retirement, from the Tanglin View and Duchess Avenue properties to meet his future expenses. While it may be the case that the Deceased would have received such rental income, we do not think that it would have been sufficient to match the post-retirement expenditure of the Deceased. It should be emphasised that the Deceased was also responsible for meeting the expenses of Ms Leong and this was likely to be the case even post-retirement. Therefore, in our view, a further discount has to be made to reflect the diminishment of the Deceased's notional wealth during his post-retirement years.

140   In the light of the need to take the above two factors into consideration, and following the observations made above at [86], we would have been better assisted by parties if actuarial data had been furnished to enable us to determine the additional discount which should be adopted on account of accelerated receipt and also if expert evidence had been provided to project the *post-retirement expenses* of the Deceased.

141   Be that as it may, notwithstanding the limited evidence available to us, we are of the view that a total discount of 70% would be appropriate. By applying this discount to the sum of $587,000 per annum multiplied by 21 years (*ie*, $12,327,000), the figure which we derive at the end of Stage 2 is

$3,698,100. We countercheck the reasonableness of applying this 70% discount on the basis that by applying a more conservative rate of return of 3% per annum (as compared to the 4% suggested by the court assessor), the future value of $3,698,100 after 36 years would amount to approximately $10,720,000. While this is a smaller figure than $12,327,000 which is the notional wealth of the Deceased at the end of his working life, as noted above, a discount has to be applied to account for the vicissitudes of life and the fact that his notional wealth would likely, to an extent, be diminished by his post-retirement expenses. It is our hope that in future cases parties would heed this call for better evidence and place the same before the court to enable it to arrive at a more objective and reasoned determination of the discount that should be adopted.

### Stage 3: Apportioning the savings to the dependant

142  Both Dr Wong and the Administrator do not contest the Judge's decision to attribute 52.5% of the calculated savings to the Children based on what was reflected in the Deceased's last known will. Dr Zhu, however, raises a conceptual objection on the basis that the court should take into account the fact that although the Children may be dependants now, they may no longer be dependants at the end of the Deceased's notional natural life.

143  Dr Zhu argues that as the law reforms were proposed with the decision of *Lassiter* ([80] *supra*) in mind, no consideration was given to a case where a child may be a dependant now, but would no longer be a dependant at the end of the deceased's natural life. In this respect, Dr Zhu relies heavily on the observations of Woo J in *Lassiter* (at [74]–[75]):

> 74    I would mention that to allow dependants to claim for loss of inheritance would be to introduce a host of complexities. Supposing a child dependant would remain a dependant for only one more year after the death of the deceased but nevertheless has a reasonable expectation of being a beneficiary of the estate as she is named as a beneficiary in the deceased's will. Will that child be entitled to claim her entire share of the loss of inheritance proportionate to what was given to her in the will or only a small percentage thereof, and if the latter, how would that percentage be calculated? Take another example. Supposing a wife has her own successful career and is dependent on her husband to a small extent, but enough to qualify her as a dependant. There are child dependants who enjoy more financial support from the deceased when he was living than the wife but the children will not remain as dependants for very much longer. The wife is named as the main beneficiary in the deceased's will. Would that mean that she is entitled to claim more for herself than the children in the loss of inheritance claim?

> 75    Perhaps it is preferable to allow an estate claim for loss of inheritance with a cap on the quantum and with a qualification that such a claim is permissible only to the extent that the beneficiaries of the estate are also dependants so as to avoid benefiting distant relatives of the deceased. That

will not address all the complexities I have mentioned and others not mentioned … *In any event, that is a matter for the Legislature, as I have said.*

[emphasis added]

144   While *Lassiter* does call into focus some difficulties with a loss of inheritance claim, it is imperative to note that Woo J expressed the view that ultimately these complexities would be for Parliament to resolve. In response to this decision, s 22(1A) of the Civil Law Act was enacted. This provides the clearest indication that Parliament did not think that the complexities which Woo J foresaw should bar a dependant from claiming for a loss of inheritance. More importantly, it is also telling that Parliament did not see the need to place a cap on the quantum which may be recovered as was tentatively suggested by Woo J.

145   The fact that Woo J expressly detailed these concerns also militates against Dr Zhu's objections that when the new subsection was proposed by the Committee, it was done without consideration being given to the situation of a child-dependant who may no longer be a dependant at the end of the Deceased's natural life. To the contrary, such a consideration was, in our view, very much alive in the Committee's mind when proposing the amendments to the Civil Law Act. Quite apart from the fact that the proposals were made to *specifically* respond to the decision of *Lassiter*, which meant that Woo J's observations must have been taken into account, several of the case authorities relied upon in the Committee Report involved factual matrixes where there was a child-dependant who might not be dependant for much longer.

146   For example, in the House of Lords' decision of *Taylor v O'Connor* [1971] AC 115, a claim for loss of inheritance was allowed for a wife and a daughter who was 18 years old at the time when her father passed away at the age of 53 years. In this respect, Lord Reid noted (at 128) that:

> She or her daughter would also have an interest in any capital which the deceased might have accumulated before his death. She might not have survived him but her daughter probably would have and it is not suggested that there was any substantial likelihood that the deceased would have done other than bequeath his estate to his wife or daughter. …

147   Such an approach would also be consistent with the way that our courts have quantified claims relating to loss of CPF contributions, which as noted above, should be viewed similarly to a loss of inheritance claim. In *Assessment of Damages: Personal Injuries and Fatal Accidents* (LexisNexis, 2nd Ed, 2015), the learned authors noted that (at para 9-46):

> The loss attributable to the cessation of contributions to the CPF forms part of a dependency claim: *Singapore Bus Service (1978) Ltd v Lim Soon Yong* [1985] 2 MLJ 267; *Lee Wee Hiong & Anor (administrators of the estate of Lee Liak Meng (decd) & Ors v Victor Koh Ah Sai & Ors* [1989] SLR 1029; *Ang Song Huay v Chu Yong Thiam* [1995] SGHC 116. *In the latter two cases, the*

*children were granted a share of the estimated loss attributable to the cessation of CPF contributions even though they would have attained majority before the deceased, if he had lived, could withdraw his CPF monies.* However, in *Gul Chandiram Mahtani v Chain Singh* …, the court found it highly unlikely that the daughter would be financially dependant on the contributor at the time the monies were withdrawn or that any part of the CPF monies would remain to constitute part of the deceased's estate. As such, the likelihood of the daughter getting a pecuniary benefit from the monies in the deceased's CPF account either when the monies were withdrawn or by inheritance was a matter too speculative and too remote for any award of damages to be made. [emphasis added in bold italics]

148    Therefore, with respect to claiming for loss of CPF contributions, the fact that the dependants would cease to be dependants at the time when the monies could actually be withdrawn is not fatal to the claim. This should similarly be the case for a claim for loss of inheritance. This factor would only be relevant in so far as it affects the *reasonable expectation* of the dependant to receive the monies at the end of the deceased's natural life. This was precisely the case in *Gul Chandiram Mahtani* ([91] *supra*) where the court refused the daughter's claim for loss of CPF contributions. In *Gul Chandiram Mahtani*, after considering all the circumstances, S Rajendran J concluded (at [32]–[33]) that:

32    It is accepted law that the 'lost' CPF moneys of the deceased may, in appropriate cases, form part of the dependency claim (*Lee Wee Hiong v Koh Ah Sai Victor* [1989] 2 SLR(R) 486; *Singapore Bus Services (1978) Ltd v Lim Soon Yong* [1983–1984] SLR(R) 159). *The question that has to be asked is whether it can be said that the daughter, at the time the deceased would have withdrawn the CPF moneys, would have a reasonable expectation of benefitting from these funds.*

33    In *Singapore Bus Services (1978) Ltd v Lim Soon Yong*, there was a real possibility of pecuniary loss since the dependants making the claim were the wife and the deceased's parents who are all dependent on the deceased for their daily requirements. They could therefore expect that the CPF funds would have been used for their benefit. A child may not be in that position. By the time the parent withdraws the CPF moneys the child may have grown up and be self-supporting. In fact, the stage may have come when it is the child that is supporting the parents. In this case, it is highly unlikely that the daughter would be financially dependent on the contributor at the time the moneys are withdrawn. It is therefore difficult to say that the daughter had a reasonable expectation of benefitting from the CPF funds. *Considering the income bracket that the deceased was in and considering that she had hardly any savings to show for the years she had worked, it also seems unlikely that any part of the CPF moneys would remain to constitute part of her estate or indeed that the deceased would have had very much other assets in her estate. In the circumstances of the present appeal, I find that the likelihood of the daughter getting a pecuniary benefit from the moneys in the deceased's CPF account either when the moneys were withdrawn or by inheritance to be a*

*matter that is too speculative and too remote for any award of damages to be made.*

[emphasis added]

149    From the above, it can be seen that the focus is still entirely on the "reasonable expectation" of the dependant and the fact that the child would no longer have been dependent on the deceased mother by the time she could have withdrawn her CPF monies was only one factor which the court took into account. It was also relevant in that case that the deceased hardly had any savings to begin with, which evidenced that it was unlikely that her CPF monies would constitute part of her estate.

150    The same cannot be said about the present case where the Deceased was an individual of substantial means and would have left a sum for the Children to inherit at the time of his death despite the fact that they may be financially independent by that time. We therefore agree with the Judge's decision to award 52.5% of the Deceased's accumulated savings for the Children's loss of inheritance claim.

151    By applying 52.5% to the sum of $3,698,100 (see above at [141]), the Children are to receive $1,941,502.50 for their loss of inheritance claim.

Conclusion

152    In the light of the above reasons, we allow CA 127/2015 and CA 132/2015 in part by reducing the sum awarded for the Children's loss of inheritance claim and by directing that the coroner's inquiry fees be taxed. We also allow CA 131/2015 in part by increasing the sum awarded for the Children's dependency claims. To summarise, the sums to be awarded to the respective dependants are as follows:

(a)    dependency claim of Ms Quek: $302,400.

(b)    dependency claim of the Children: $406,000 for Jo-Ann and $589,750 for Ryan.

(c)    loss of inheritance claim of the Children: $1,941,502.50.

153    On the issue of costs, parties are requested to make their submission in writing (not to exceed 15 pages) within two weeks of the date of this judgment.

Reported by Kenny Lau Hui Ming.