**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: AIR CRASH OVER THE SOUTHERN INDIAN OCEAN ON MARCH 8, 2014 | |
| | MDL Docket No. 2712 |
| This Document Relates To: | Misc. No. 16-1184 (KBJ) |
| ALL CASES | |

**JOINT REPLY IN SUPPORT OF MOTION TO DISMISS ON THE GROUND OF
*FORUM NON CONVENIENS***

136864437.4

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

I.     Focusing on the core facts and legal principles, dismissal is warranted............... 3

II.    In assessing the private interests, plaintiffs never provide a credible analysis of the evidence necessary to prove their claims or a realistic trial scenario. ................................................................................................................. 5

III.   Plaintiffs' attempt to distinguish the case law by emphasizing the residence of parties and location of wreckage is not legally or factually credible........................................................................................................................ 12

     A.    Proper consideration of the residence of parties strongly favors Malaysia. ............................................................................................... 12

     B.    The location of wreckage and site of the disappearance favor Malaysia. ............................................................................................... 15

IV.   Plaintiffs concede that Malaysia is an adequate and available foreign forum, and their criticism of Malaysian law gets no weight under *Piper*............ 18

V.    Consideration of the public interest strongly favors Malaysia over the U.S. ...... 20

     A.    Malaysia's public interest is compelling given the official Malaysian investigation and the criminal investigation.......................... 21

     B.    The U.S. interest cited by plaintiffs is the same insufficient U.S. interest as in *Piper*, *Pain*, and many other cases..................................... 24

CONCLUSION..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

### CASES

*Capital Currency Exch., NV. v. Nat'l Westminster Bank PLC*,
  155 F.3d 603 (2d Cir. 1998) ..................................................................................8

*Cheng v. Boeing Co.*,
  708 F.2d 1406 (9th Cir. 1983) .............................................................................14

*Clerides v. Boeing Co.*,
  534 F.3d 623 (7th Cir. 2008) .......................................................................9, 21, 24

*Forsythe v. Saudi Arabian Airlines Corp.*,
  885 F.2d 285 (5th Cir. 1989) ...............................................................................20

*Gambra v. Int'l Lease Fin. Corp.*,
  377 F. Supp. 2d 810 (C.D. Cal. 2005) ...................................................................8

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ..............................................................................5, 6, 9, 12

*In re Air Crash Near Athens, Greece on Aug. 14, 2005*,
  479 F. Supp. 2d 792 (N.D. Ill. 2007) ...........................................................6, 13, 21

*In re Air Crash Over Mid-Atl. on June 1, 2009*,
  760 F. Supp. 2d 832 (N.D. Cal. 2010) ........................................................... passim

*In re Air Crash Over the Mid-Atl. on June 1, 2009*,
  792 F. Supp. 2d 1090 (N.D. Cal. 2011) ...............................................................16

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz*
  *of Ukraine*,
  §311 F.3d 488 (2d Cir. 2002) ..............................................................................20

*King v. Cessna Aircraft Co.*,
  562 F.3d 1374 (11th Cir. 2009) ...........................................................................13

*Kryvicky v. Scandinavian Airlines Sys.*,
  807 F.2d 514 (6th Cir. 1986) ...............................................................................14

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) .............................................................................21

*Marra v. Papandreou*,
  59 F. Supp. 2d 65 (D.D.C. 1999), *aff'd*, 216 F.3d 1119 (D.C. Cir. 2000) ..............19

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Miller v. Boston Scientific Corp.*,
   380 F. Supp. 2d 443 (D.N.J. 2005) ....................................................................6

*Pain v. United Techs. Corp.*,
   637 F.2d 775 (D.C. Cir. 1980) ................................................................... passim

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981).................................................................................. passim

*Van Schijndel v. Boeing Co.*,
   434 F. Supp. 2d 766 (C.D. Cal. 2006), *aff'd sub nom. Schijndel v. Boeing Co.*,
   263 F. App'x 555 (9th Cir. 2008) ................................................................2, 13

**OTHER AUTHORITIES**

Convention on International Civil Aviation, Annex 13, §5.12 ................................11, 18

http://jacc.gov.au ........................................................................................................22

http://jacc.gov.au/families/operational_reports/files/MH370_Operational_Search_
   Update_ 20150805_EN.pdf .............................................................................18

http://jacc.gov.au/media/ photos/files/HISHAMMUDDIN-01.jpg ...............................22

http://jacc.gov.au/media/interviews/ 2014/may/tr013.aspx ........................................22

http://jacc.gov.au/media/interviews/2014/april/tr005.aspx.........................................22

http://jacc.gov.au/media/interviews/2014/april/tr011.aspx.........................................22

http://jacc.gov.au/media/interviews/2014/august/tr016.aspx......................................22

http://jacc.gov.au/media/interviews/2014/june/tr014.aspx .........................................22

http://jacc.gov.au/media/interviews/2014/march/tr001.aspx ......................................22

http://mh370.gov.my/...........................................................................................17, 19

http://mh370.gov.my/index.php/en/media2/transcript/category/21-3rd-interim-
   statement-8-march-2017?download=105:3rd-interim-statement-english-
   version ..............................................................................................................23

http://mh370.gov.my/phocadownload/3rd_IS/Debris%20Examination%20300417
   .pdf ...................................................................................................................17

http://minister.infrastructure.gov.au/chester/interviews/2017/dci015_2017.aspx ........23

https://www.atsb.gov.au/publications/investigation_reports/2014/aair/ae-2014-
   054/debris-reports/ ............................................................................................18

**INTRODUCTION**

Notwithstanding plaintiffs' efforts to muddy the waters, the following key facts and

principles remain clear and establish that these cases are properly dismissed on *forum non*

*conveniens* grounds. This tragedy involved a Malaysian national carrier, flying from Malaysia to

China, and Malaysia is responsible for the civil and criminal investigations into the incident.

Nearly all of the plaintiffs and represented decedents reside or resided far closer to Malaysia than

the U.S. and nearly all are already litigating in Malaysia. In any realistic assessment of a fair

trial, plaintiffs and defendants both will need evidence from Malaysia about the operation of the

airline, the flight, the people on the flight, and the investigation. Boeing has offered to bring

evidence in its possession to a Malaysian court. And because nearly all of the decedents are

already represented in litigation in Malaysia, relevant damages evidence already will be

presented there. Trial in Malaysia would be overwhelmingly more convenient.

The inconvenience in the U.S. is compounded for Boeing because MAS's likely

absence—for the jurisdictional reasons presented by MAS's pending motions—means that

Boeing would stand alone, unable to implead the operator or compel evidence for its defense.

That same potential unfairness to an American manufacturer was a "major factor" in dismissal in

*Pain v. United Techs. Corp.*, 637 F.2d 775, 789 (D.C. Cir. 1980), and "crucial" to the analysis in

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 (1981). Also, the inconvenience of U.S. litigation

for those accidents, involving a small, light-aircraft in Scotland and a helicopter in the North Sea,

was far less than in the complicated, mysterious disappearance of MH370.

Plaintiffs do not present a credible or trustworthy response to that straightforward

application of controlling precedent. First, they never analyze the evidence that they would

realistically use to prove the claims they have pleaded, nor do they assess the evidence Boeing

would require to defend itself, much less how necessary third-party evidence would be obtained. At times, they seem to imply that a trial here would be equally convenient because there is no evidence anywhere of what caused this loss, a bizarre statement at odds with their claims against Boeing and MAS. (*See*, *e.g.*, ECF 68 at 2 ("No one knows why the plane crashed or where it is today.")). Second, they raise false and often irrelevant distinctions regarding the case law. In so doing, they make numerous inaccurate factual statements trying to diminish Malaysia's role in the search and investigation, and even inaccurate legal representations about key cases—in particular Judge Breyer's opinion granting *forum non conveniens* dismissal in the Air France 447 litigation, *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832 (N.D. Cal. 2010).

A *forum non conveniens* dismissal is not a "transfer" to Malaysia (as plaintiffs repeatedly say), nor would it unfairly "ship them out to a far-off country most of them have never been to before" (ECF 68 at 1), a statement probably far more true of the U.S. than Malaysia for many of the plaintiffs. Dismissal merely says that the U.S. is not a proper forum, which the case law makes abundantly clear is the correct conclusion. Plaintiffs raise no serious dispute about the adequacy of the Malaysian forum and Malaysia's public interest. And given the pending litigation in Malaysia, there is no reason to have duplicative, possibly inconsistent, liability proceedings taking place on two different continents. The interests of judicial efficiency and economy, and the avoidance of inconsistent results and double recovery, strongly favor dismissal in favor of Malaysia. *E.g.*, *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 780 (C.D. Cal. 2006), *aff'd sub nom. Schijndel v. Boeing Co.*, 263 F. App'x 555 (9th Cir. 2008). The U.S. is not a convenient, fair, or proper place to litigate this Malaysian tragedy, and the U.S. should not be competing with the proceedings already underway in Malaysia.

## I.     Focusing on the core facts and legal principles, dismissal is warranted.

Plaintiffs take considerable liberties with the facts and case law, and generally stay away

from the core facts and controlling cases of *Piper* and *Pain*. Thus, it is important to return to

those core facts and principles. There is no dispute over the following core facts:

- The event involved Malaysia's national carrier;
- the flight left Malaysia's capital for Beijing with hundreds of passengers, at least 38 of whom were Malaysian citizens, and a Malaysian crew;
- the official civil investigation, which is still ongoing, is being led by Malaysia;
- there is a separate criminal investigation in Malaysia;
- the search area for the aircraft is in the southern Indian Ocean;
- nearly all of the plaintiffs and represented decedents in this MDL proceeding are from countries far closer to Malaysia than to the U.S., primarily China; and
- nearly all of the 107 decedents represented in this MDL proceeding are currently litigating the loss of MH370 in Malaysia or other forums.

From those indisputable facts, the country with the most connections to MH370 is Malaysia. The

critical liability evidence is in Malaysia. All documents chronicling the maintenance and

operation of the plane are in Malaysia. The evidence of what the aircraft did in flight is in

Malaysia. The results of the investigations and the people who did them are in Malaysia. And

this Court, of course, cannot compel third-party documents or people in Malaysia to appear here.

There are three *forum non conveniens* inquiries: (1) is there an adequate and available

alternative forum? (2) what is the balance of the private interests? (3) what is the balance of the

public interests? Two of those inquiries are not seriously disputed, although plaintiffs offer some

distractions and misleading arguments.

First, Malaysia is an adequate and available forum. It is adequate because it provides

acceptable remedies under the standards of *Piper*. It is available because defendants have

consented to jurisdiction, and in fact, representatives of most of the decedents in this litigation

are already litigating in Malaysia.[1]

Second, Malaysia has the far superior public interest compared to the U.S. because of the core facts just presented: the event involved Malaysia's national carrier and numerous Malaysian citizens, and Malaysia is leading both the civil and criminal investigations. The U.S. interest is almost entirely tied to Boeing as a manufacturer, and under *Piper* and *Pain*, that U.S. interest does not outweigh the overwhelming interest that Malaysia has in this event and the litigation.

The available, adequate forum in Malaysia and Malaysia's superior public interest are not seriously disputed. This leaves only plaintiffs' implausible contentions regarding convenience and the balance of the private interests. There are two enormous gaps in plaintiffs' argument: (a) plaintiffs never undertake a credible analysis of what an actual trial on liability and damages would look like, and (b) plaintiffs simultaneously cite no remotely similar case holding that an aviation case this massive, complicated, and dependent on foreign evidence should be litigated in the U.S., while also failing to credibly distinguish the similar cases granting dismissal.

That would be enough on its own to support dismissal. But plaintiffs also fail to explain how it would be convenient, fair, or acceptable to have a trial solely against Boeing, given the likely lack of U.S. jurisdiction over MAS. For such a trial, the Court could not order the production of critical evidence from Malaysia. As described below, Plaintiffs' own *res ipsa*

---

[1] Malaysian law provides a well-settled statutory regime to compensate passengers who sustain personal injuries or death in an accident while on board an aircraft. *See* ECF Doc. 37-12, ¶¶ 37-44. Malaysian Courts would apply (i) liability regimes provided in the Montreal Convention to plaintiffs' claims against MAS and (ii) Malaysian negligence law to plaintiffs' product liability claims against Boeing. *Id*. at ¶¶ 41-42. With respect to compensation, wrongful death plaintiffs generally are entitled to recover under Malaysian law for funeral expenses, lost future earnings based on the decedent's pre-death earnings and age, and bereavement compensation for certain classes of surviving relatives. *Id*. at ¶¶ 43-44. Moreover, as a practical matter, it is no secret that MAS holds an insurance policy, which provides coverage for MH370 in excess of $2 billion. A copy of the relevant portions of the Etiqa Insurance Berhad policy was produced in discovery. *See also* ECF Doc. 35-02, Declaration of Brendan Baxter, at ¶ 21.

*loquitur* theory depends, in significant part, on evidence in the airline's possession in Malaysia. Plaintiffs also raise the specter of intentional wrongdoing as an explanation for this loss (ECF 68 at 24, 25 n.65, 40-41), and that evidence, too, is in Malaysia either from MAS and its employees, documents held by the Malaysian investigation, or from the testimony of third parties who know something about the individuals potentially involved. Yet in the very last sentence of the Podhurst/Wisner plaintiffs' discussion of private interests, they essentially ask the Court to ignore the unfairness to Boeing of such a trial. They assert that "even if this factor did weigh in Boeing's favor, it is typically given lesser weight than other 'private interest factors' and is not considered 'determinative.'" (ECF 68 at 36.) That is not true. That exact scenario—inability of an American manufacturer to implead the operator—was a "***major factor***" in dismissal in *Pain*, 637 F.2d at 789 (emphasis added), and was "***crucial***" in *Piper*, 454 U.S. at 259 (emphasis added). That is a core legal principle, and those cases are controlling.

Focusing on the facts and issues that *Piper* and *Pain* have held to be major and crucial resolves the *forum non conveniens* questions in this case. Plaintiffs go to great lengths to distract from the indisputable facts and principles, and those tangents will be addressed below. But the controlling principles are easily applied to the core facts, and these cases should be dismissed because the U.S. is not a convenient, fair, or appropriate forum.

## II.    In assessing the private interests, plaintiffs never provide a credible analysis of the evidence necessary to prove their claims or a realistic trial scenario.

This Court must assess the relative convenience of a trial in the U.S. versus a trial in Malaysia, and the framework for doing so is the seven private interest factors from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Those factors are: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost

of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) other practical problems that make trial of a case easy, expeditious, and inexpensive.

The Podhurst/Wisner plaintiffs set forth those factors (ECF 68 at 9) and purport to analyze them, but their discussion is distorted by plaintiffs' failure to analyze a credible trial scenario in the U.S. First, plaintiffs decline to analyze their own claims as pleaded and the evidence that would be required to prove them. Second, as already noted, plaintiffs decline to analyze the most likely trial scenario, a trial solely against Boeing where both plaintiffs and Boeing would need evidence from Malaysia but this Court would have no power to compel that third-party evidence. The Court cannot short-circuit its inquiry that way. Instead, it must weigh all evidence relevant to the "likely contours of the case," including "any potential defenses, and the essential sources of proof." *Miller v. Boston Scientific Corp.*, 380 F. Supp. 2d 443, 454 (D.N.J. 2005); *see also In re Air Crash Near Athens, Greece on Aug. 14, 2005*, F. Supp. 2d 792 (N.D. Ill. 2007) (recognizing need to consider location of evidence relevant to defenses because the "defendant is entitled to pursue its defense.") Plaintiffs' other distortions and misapplications of the *Gulf Oil* factors related to the residence of the parties and the location of evidence are addressed *infra*.

For the most basic tort claims against MAS and Boeing, plaintiffs must present evidence covering the following essential topics and elements: (1) evidence regarding the underlying events and background (the nature of the aircraft, the flight, the likely descent into the Indian Ocean); (2) evidence of whatever theory of negligence or culpability is plaintiffs' pleaded or preferred theory; and (3) evidence of causation and damages. The Podhurst claims against Boeing allege that all *non*-Boeing causes can be ruled out. The Podhurst complaint, for example, pleads that "there is simply no evidence that the disappearance and crash of Flight MH370 was in any way caused by intentional pilot misconduct" (ECF 19 at ¶ 132), and also purportedly rules

out the crew, terrorism, maintenance, and weather (*id.* at ¶¶ 140, 147, 149, 159). That is the *res ipsa loquitur* theory that defendants noted in their motion. (ECF 37-1 at 3, 18.) The Motley Rice plaintiffs even oppose *forum non conveniens* claiming that there are no issues with the airline's "personnel and systems" and thus "no records pertaining to problems with the pilots, crew, training, maintenance and security and cargo in Malaysia." (ECF 67 at 5-6.) But, of course, the Motley Rice plaintiffs must present evidence for their claims beyond those bare assertions.

To *prove* those allegations at trial, plaintiffs must put on evidence that rules out the pilot, the crew, terrorism, maintenance, and the weather. That would obviously require evidence from Malaysia, and not just from MAS. To be sure, it would require airline records and testimony from airline personnel, but it would also require individual testimony about the pilot, the crew, and others associated with the flight from people who worked with and observed them or investigated them. Any issue of misconduct could require testimony about the mental state and actions of the relevant individuals leading up to the flight.

The Podhurst/Wisner brief, contradicting their own complaints, notes several times the possibility of intentional wrongdoing by someone operating the aircraft. Plaintiffs cite press reports that the FBI went to Malaysia and may have reviewed evidence concerning one of the pilots. (ECF 68 at 24, 25 n.65, 40-41.) Plaintiffs treat the mention of the FBI in a press account as if it showed abundant U.S. evidence that is convenient to obtain for a U.S. trial. But the underlying theory obviously shows the opposite. If there were evidence of intentional wrongdoing in Malaysia, it would be extraordinarily unfair and inconvenient if trial were to proceed solely against Boeing in the U.S. where this court could not compel production of that evidence. Evidence concerning a Malaysian pilot, what he may or may not have done in the days or months before the flight, what his motivations might have been, what people observed about

-7-

him—*admissible* evidence of those things must come from *Malaysia*. Even if an FBI agent could be found and made to testify, she cannot simply offer a bunch of translated hearsay about statements or documents in Malaysia. Even if MAS had admissible evidence on that point, it is unlikely that MAS is subject to jurisdiction here. Moreover, there is no reason to think that all relevant evidence and testimony would be in MAS's possession and thus it would be outside this Court's power to compel even if MAS were to stay in this litigation. Even if the evidence were voluntarily made available here, the fact remains that it is all located in Malaysia and the burden and cost of bringing Malaysian evidence and witnesses to the U.S. would still tip the balance of convenience in favor of dismissal.[2]

Going further, plaintiffs do not even assert that there is any ability to compel live testimony from individuals in Malaysia on critical liability issues. Plaintiffs acknowledge that the only resort would be letters rogatory, but they claim a silver lining in U.S. litigation because there might be more damages evidence available by way of the Hague Evidence Convention from other signatory countries (not Malaysia). (ECF 68 at 31-32.) But none of that third-country evidence is critical to determining liability, and none of it is live witnesses.

Boeing's defenses rely on a huge number of nonparty witnesses in Malaysia, including accident investigators, engineers that maintained the plane prior to its disappearance, and regulators who certified the plane as airworthy. Malaysia is not a signatory to the Hague Evidence Convention. Accordingly, the only way for a U.S. court to compel testimony from these witnesses will be expensive and time-consuming letters rogatory. Letters rogatory are

---

[2] *See Capital Currency Exch., NV. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 611 (2d Cir. 1998) (private interests strongly favor dismissal where "most of the witnesses in this case reside in England, and the cost of transporting these witnesses to New York could be enormous"); *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 820 (C.D. Cal. 2005) (the "great" cost of transporting voluntary French witnesses to the U.S. favors dismissal).

written questions that are sent to a foreign court through consular process. They take between six months and a year to execute and yield written answers, not deposition tapes or transcripts. And as the Supreme Court found, even depositions are an inadequate substitute for live testimony. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947); *Clerides v. Boeing Co.*, 534 F.3d 623, 630 (7th Cir. 2008). Litigation in the U.S. would force Boeing to mount virtually its entire defense with what are essentially answers to interrogatories. That weighs heavily in favor of dismissal.

Plaintiffs likewise stray from the claims they pleaded when they discuss Boeing evidence. As the Podhurst/Wisner plaintiffs describe it, the evidence in the U.S. includes the "testimonies of hundreds of Boeing employees." (ECF 68 at 24-25.) But the complaints allege either a *res ipsa loquitur* theory (which requires ruling out fault by MAS or other non-Boeing actors) or specific defects, which would not require "hundreds" of employees or "thousands" of pieces of evidence regarding "every aspect" of the aircraft and its history. *Id.*

Further, Boeing has agreed to make Boeing evidence available in Malaysia, so plaintiffs do not require litigation in the U.S. in order to obtain that evidence. In virtually every foreign aviation accident *forum non conveniens* case involving an American manufacturer, including *Piper* and *Pain*, the plaintiffs have emphasized product defect theories and the need for evidence located in the U.S. But when the defendant agrees to make that evidence available in the foreign forum, that resolves the issue. *See, e.g.*, *Clerides*, 534 F.3d at 629 (affirming dismissal) ("[Given] Boeing's agreement to produce its documents and witnesses in Cyprus and Greece and the location of the majority of other evidence in Cyprus and Greece, the relative ease of access to proof favored those forums over the United States.").

Instead of addressing the issues critical to a trial against Boeing, plaintiffs most prominently analyze a damages-only trial against MAS. (ECF 68 at 19-25.) That makes no sense.

First and foremost, the Wisner plaintiffs did not even sue MAS, and the remaining plaintiffs sued

Boeing as well as MAS. There is, thus, no scenario where MAS will stand alone for trial.

Second, there is no basis for the Podhurst plaintiffs, who have separate suits against MAS (suits

that contradict their *res ipsa* lawsuits against Boeing), to treat the liability of MAS as a foregone

conclusion, allowing this Court to put aside the need for liability evidence regarding MAS. The

Podhurst attorneys and their local counsel have made the exact opposite representation in

Malaysian proceedings, where they said determining liability was "critical,"[3] while pursuing

liability discovery from MAS.[4]

Moreover, MAS has raised substantive defenses to liability in this matter. *See* ECF 50. In

the unlikely scenario that a trial proceeds against MAS or MAB or AGCS SE in the U.S., such a

trial would be fundamentally unfair and inconvenient because MAS would be forced to defend

itself at trial before a tribunal that is unable to compel the appearance of foreign non-party

witnesses (e.g., Malaysian governmental parties involved in the investigations) or evidence (e.g.,

documents in those entities' possession). Even in a "damages only" trial, the Court could not

compel production of documents from or the appearance of non-party witnesses—primarily

Chinese and Malaysian in origin—necessary to evaluating the plaintiffs' claimed economic

losses (e.g., the testimony of employers, documents such as tax returns and bank records, and life

---

[3] *See* Ex. A, Declaration of Richard A. Walker, Exhibits 1 and 2, at ¶¶ 9-11 of the Affidavits of Yap Chih Hong filed in the High Court of Malaysia on behalf of the same plaintiffs represented by Podhurst Orseck in this matter seeking the Admission as Counsel in Malaysia of Steven C. Marks and Roy K. Altman.

[4] The Podhurst plaintiffs have sought discovery in Malaysia of essentially all documents related to the incident, medical files regarding the pilots, and other materials that could only be relevant to liability. *Id.* at Ex. 3 (*see, for example*, paragraph (1)(x), seeking "[a] copy of the pilots' licenses, log books, airman files, medical files"). Those discovery requests in the Malaysian litigation are at direct odds with what plaintiffs have told the Court here, which is that "[w]hatever happens in this case [i.e., the MDL], these Plaintiffs will never have any need to avail themselves of any evidence of Malaysia Airlines' liability, whether in Malaysia or elsewhere." (ECF 54 at 3.)

expectancy evidence), and non-economic losses (like the testimony of family and friends). Even a "damages only" trial in the U.S. against MAS would be inconvenient. Considering that nearly all of the decedents are already represented in Malaysian proceedings, and their damages evidence will be available in Malaysia, further underscores Malaysia's convenience.[5]

The best, most convenient place to obtain Malaysian evidence is in Malaysia. Only a Malaysian court can compel the production of the other critical records or witnesses located in Malaysia. Further, *only* authorities in Malaysia may order the release of investigative records. *See* Section 5.12 of Annex 13 to the Convention on International Civil Aviation ("The State conducting the investigation of an accident shall not make the following records available for purposes other than accident or incident investigation, *unless the appropriate authority for the administration of justice in that State* determines that their disclosure outweighs the adverse domestic and international impact such action may have on that or any future investigations.") (emphasis added); *see Mid-Atl.*, 760 F. Supp. 2d at 843 (citing Section 5.12 in noting that U.S. court had no power to order the production of investigation records held in France).

Plaintiffs cannot alter the core reality that this case is centered in Malaysia—no differently than Air France 447 was centered in France, or *Pain* was in Norway, or *Piper* was in the UK. Realistically, a trial on liability and damages—for numerous foreign plaintiffs—would require a massive amount of evidence either already present in Malaysia or that will be brought to Malaysia for litigation already pending. And if Boeing cannot join MAS as a co-defendant or

---

[5] In another omission regarding the claims pleaded, the Motley Rice plaintiffs have sued MAB and AGCS SE, yet never explain how pursuing those claims would not rely on Malaysian evidence. All information relevant to MAB's status as a separate entity and whether it is a successor in interest to MAS would be in Malaysia, notwithstanding the fact that the Act of State doctrine likely precludes such an expedition by a U.S. court. (ECF 36 at 20-22.) Likewise, any evidence relevant to AGCS SE's defense as an involuntary legal representative of MAS would be in Malaysia. (ECF 37-1 at 8-9.)

obtain Malaysian evidence for Boeing's defense, the burden, inconvenience, and unfairness of such a trial is an additional reason to dismiss.

**III.     Plaintiffs' attempt to distinguish the case law by emphasizing the residence of parties and location of wreckage is not legally or factually credible.**

The *Gulf Oil* factors, as noted above, include the residence of parties and location of evidence, and there is no dispute that the Court should assess the convenience of parties and of obtaining evidence. The Podhurst/Wisner plaintiffs, however, begin their brief with an emphatic claim of three "decisively" important differences between this case and the dozens of foreign aviation accident cases granting dismissal. Plaintiffs speak of their points of distinction as if they were additional rules or factors, as opposed to issues of convenience. The allegedly "decisively" important facts are: (a) the plaintiffs and decedents here are not Malaysian (they are mostly Chinese), and thus, not residents of the country of the alternative forum being analyzed (Malaysia); (b) very little wreckage has been found (which means very little is in Malaysia, though plaintiffs egregiously misrepresent the facts in saying that "*not one* piece" is in Malaysia); and (c) the aircraft presumably crashed in the ocean far from Malaysia. (ECF 68 at 1.)

Legally, plaintiffs have no case support for the rhetorical flourish they give to those facts, and none of those facts makes Washington, DC or anywhere else in the U.S. more convenient for litigation than Malaysia. Factually, plaintiffs make multiple, significant misstatements.

**A.     Proper consideration of the residence of parties strongly favors Malaysia.**

Plaintiffs present no case holding that there is anything "decisive" about whether the plaintiffs or decedents are or were citizens or residents of the proposed alternative forum, and nothing in *Piper* or *Pain* supports that view. "[T]he central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper,* 454 U.S. at 256. In *Pain*, the D.C. Circuit affirmed *forum non conveniens* dismissal even though

one of the decedents was a U.S. citizen residing in Norway, and the plaintiff on his behalf was his mother, a U.S. citizen residing in New Hampshire. 637 F.2d at 779-80, 795-99. Other cases have granted *forum non conveniens* dismissal when there were plaintiffs from countries other than the alternative forum.[6]

Because the central question is convenience, the analysis is straightforward. For the given parties, which forum is more convenient? Plaintiffs emphasize decedents from China, India, and Australia. (ECF 68 at 13.) But the U.S. is not more convenient than Malaysia for anyone from China, India, or Australia. And, in fact, 78 of these decedents already have litigation filed in Malaysia on their behalf and all relevant damages evidence will be presented there. In *Mid-Atl.*, Judge Breyer faced a similar scenario. There were plaintiffs from Brazil and the alternative forum was France. Judge Breyer assessed the question, quite properly, as one of practical convenience: "France is a more physically convenient forum for the French Defendants and any European Plaintiff or witness and is equally as convenient as the United States for any Plaintiffs from South America." *Mid-Atl.*, 760 F. Supp. 2d at 845 n.11; *see also In re Air Crash Near Athens*, 479 F. Supp. 2d at 798 (finding Greece a more convenient forum than the U.S. even though 92 of 99 plaintiffs were from Cyprus).

Perhaps because *Mid-Atl.* is so directly on point, plaintiffs badly overreach in attempting to distinguish it. Plaintiffs here say that in *Mid-Atl.* "the vast majority of the decedents were from France." (ECF 68 at 28.) But that is not how the plaintiffs in that

---

[6] In *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1383 (11th Cir. 2009), the claims of 69 European plaintiffs—21 Swedish, 19 Italians, 19 Danish, 4 Finnish, 3 Norwegian, 1 Romanian, and 1 British—were all dismissed for refiling in Italy. Similarly, in *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 768 (C.D. Cal. 2006), *aff'd sub nom. Schijndel v. Boeing Co.*, 263 F. App'x 555 (9th Cir. 2008), the court dismissed lawsuits by Dutch citizens arising from an accident in Taiwan in favor of trial in Singapore.

case—also represented by the Podhurst firm—stated the facts, asserting in their briefing that "over 85% of [plaintiffs] are not French and almost 60% of [plaintiffs] are Brazilian." 2010 WL 3581640 (Introduction). And Judge Breyer noted that although "[t]he *plurality* of passengers and crew onboard were French, a substantial number were Brazilian, and the majority of the remaining passengers were from European countries outside of France." 760 F. Supp. 2d at 832 n.1 (emphasis added). Plaintiffs here make the same arguments that were unpersuasive to Judge Breyer in *Mid-Atl.*

Also as in *Mid-Atl.*, plaintiffs emphasize an American decedent. In the motion, defendants noted that there were three decedents of alleged U.S. citizenship. (ECF 37-1 at 24.) Two of them were very young children allegedly born in the U.S. who lived in China with their Chinese parents. Motley Rice did not address those decedents in its response. The Podhurst/Wisner plaintiffs, however, focus upon decedent Philip Wood. Mr. Wood worked in China and moved to Malaysia in the three years preceding the disappearance of MH370. The details regarding Mr. Wood's lack of a residence of any kind in the U.S. are addressed in the Montreal Convention briefing. It is a stark contrast with *Mid-Atl.*, where the Americans had a physical residence in Texas that they used. *See Mid-Atl.* 760 F. Supp. 2d at 837. Because Mr. Wood lived entirely abroad, many records and witnesses for his damages case will be located abroad. (ECF 38-1 at 39.) His claim to a U.S. forum receives less deference. *See Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 517 (6th Cir. 1986) (dismissing claim brought by U.S. plaintiff on behalf of American expatriate decedent living abroad); *see also Cheng v. Boeing Co.*, 708 F.2d 1406, 1410, 1411 (9th Cir. 1983) (affirming dismissal of American plaintiffs because their presence

"is not in and of itself sufficient to bar a district court from dismissing a case on the ground of *forum non conveniens*").

Plaintiffs seek a heavy presumption in favor of the forum choice of a U.S. resident or citizen, essentially the "unthinking orientation overly protective of American plaintiffs" discussed at length and rejected in *Pain*. 637 F.2d at 795-99. Plaintiffs do not discuss or attempt to distinguish *Pain*'s controlling discussion of the issue. Whatever the proper weight to be given, it is overcome when the balance of convenience still favors a foreign forum. There is no talismanic, territorial line drawing. "[T]he central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper*, 454 U.S. at 256. Plaintiffs do not explain how the few Americans make a trial in the U.S. convenient or justify the remaining foreign plaintiffs representing foreign decedents. As noted above, the D.C. Circuit concluded *forum non conveniens* dismissal was clearly appropriate notwithstanding an American decedent and plaintiff in *Pain*, 637 F.2d at 779-80, 795-99. Similarly, in *Mid-Atl.*, Judge Breyer recognized that the representatives of the two American decedents may be inconvenienced but still dismissed because France was the "superior" forum under the full analysis. *Mid-Atl.*, 760 F. Supp. 2d at 845 n.11, 847.

Here, one American expatriate decedent should not justify proceeding with claims tied to 104 non-U.S. decedents. And on balance, the presence of the American representatives does not alter the overwhelming inconvenience of proceeding in the U.S. given all of the evidence that would be required from Malaysia and elsewhere abroad.

**B.     The location of wreckage and site of the disappearance favor Malaysia.**

Plaintiffs cite no case claiming any "decisive" significance as to the absence of wreckage or whether the aircraft crashed in the alternative forum country. For example, nothing in *Piper*

suggests that it would have come out differently if the aircraft had crashed in the North Sea and never been recovered. The issue is convenience, and the U.S. is a far less convenient forum here than it was in *Piper* where the UK was closer and provided easier access to people and evidence.

Again, perhaps because it is directly on point, plaintiffs make another glaring mistake regarding the wreckage in *Mid-Atl.* In the Air France 447 accident, the accident was in the middle of the Atlantic Ocean (not the alternative forum country) and the most significant wreckage had not been found when *forum non conveniens* was decided. But plaintiffs say that "all of the wreckage (including the critical FDR and CVR) were located in France." (ECF 68 at 28.) That is false. At the time of dismissal, the FDR and CVR had not been found and Judge Breyer then thought it "likely" they would not be. *Mid-Atl.*, 760 F. Supp. 2d at 843 n.7. That is also what plaintiffs' counsel (the Podhurst firm) informed the court. *See* 2010 WL 3581640 (Introduction states that the black boxes had not been found and "probably never will be"). Here, plaintiffs emphasize that the FDR and CVR have not been located and are not in Malaysia. (ECF 68 at 1.) The same situation did not affect Judge Breyer's analysis. The important point was that the *investigation* was in France. *See Mid-Atl.*, 760 F. Supp. 2d at 843, 845-46 & n.13. And again, the absence of the FDR and CVR does not make the U.S. any more convenient.

Even if the FDR and CVR *were* recovered, they would be under the control of the Malaysian investigation, just as the recorders were under the control of the French in *Mid-Atl.* When the FDR and CVR were found and became part of the French investigation after the initial dismissal, Judge Breyer held on reconsideration that the discovery tipped the balance of private and public factors "even more strongly toward dismissal" because "[a]ccess to that evidence will be easier in France." *In re Air Crash Over the Mid-Atl. on June 1, 2009*, 792 F. Supp. 2d 1090, 1102 (N.D. Cal. 2011). Even if the black boxes are recovered in the future, they would be

available only in Malaysia—exactly the kind of impediment to fair and convenient litigation that

*forum non conveniens* is designed to avoid.

Finally, the Podhurst/Wisner plaintiffs repeatedly misstate the location of the wreckage

that has been found. For instance, they prominently discuss debris washing ashore and misinform

this Court, with emphasis on the first page of their brief, that "*not one* piece of evidence from the

Subject Aircraft … can be found in *any one* of the 127,724 square miles that comprise

Malaysia." (ECF 68 at 1 (emphases in original).) That is false and also easily checked.

The official website for the Malaysian investigation is http://mh370.gov.my/. It includes

updated Debris Examination Reports. Many pieces of debris have been examined in Malaysia,

and the report notes each one.[7] Here is just one example from a report issued before plaintiffs

filed their brief. The example below appears on ***Page 1***:



**Malaysia Airlines Boeing B777-200ER (9M-MRO), 08 March 2014**

**Identification of Debris (Item 6 in the "Summary of Possible MH370 Debris Recovered") recovered south of Chidenguele, Mozambique on 24 April 2016**

**1.0     Introduction**

This item was recovered south of Chidenguele in Mozambique on 24 April 2016. It is identified as Item No. 6 from the items recovered; refer to the *"Summary of Possible MH370 Debris Recovered"*.

The item was brought back to Malaysia for identification and further examination by the *"Malaysian ICAO Annex 13 Safety Investigation Team for MH370"*.

---

[7] http://mh370.gov.my/phocadownload/3rd_IS/Debris%20Examination%20300417.pdf.

More importantly, wreckage in France and Australia has been part of the Malaysian investigation. The Malaysian investigators were part of the team examining the flaperon recovered by the French on August 5-6, 2015, along with the French judicial authorities.[8] Similarly, the suspected wreckage taken to Australia was done so at the direction of the Malaysian investigation and the wreckage remains under the control of the Malaysian investigators, even if located in Australia.[9] With the exception of the flaperon, access to all wreckage will be through the authorities in Malaysia since it is under the investigation's control. *See* Section 5.6 of Annex 13 to the Convention on International Civil Aviation (investigator-in-charge shall have "unrestricted control" over wreckage).

The site of the disappearance and the absence of the most critical wreckage make this case most like Air France 447, though it is far less convenient vis-à-vis the United States. There is certainly no "decisive" difference, especially after plaintiffs' factual errors are corrected.

## IV.     Plaintiffs concede that Malaysia is an adequate and available foreign forum, and their criticism of Malaysian law gets no weight under *Piper*.

As explained at the outset, the availability and adequacy of Malaysia as an alternative forum is not seriously disputed. But plaintiffs do attempt to inject irrelevant issues about the forum into the private interest analysis. Those arguments are easily rejected.

Representatives of nearly all of the decedents in these actions are already litigating claims in Malaysian courts. (*See* ECF No. 37-13, Declaration of Saranjit Singh at ¶¶ 7, 10-13 and Ex. A thereto (identifying corresponding U.S. cases and counsel and for Malaysian actions).) The Podhurst/Wisner plaintiffs concede that Malaysia is an adequate alternative forum. (ECF 68 at 9

---

[8] http://jacc.gov.au/families/operational_reports/files/MH370_Operational_Search_Update_20150805_EN.pdf.

[9] https://www.atsb.gov.au/publications/investigation_reports/2014/aair/ae-2014-054/debris-reports/.

n.30.) But then as a purported analysis of "private interests," the Podhurst/Wisner plaintiffs argue at length that various aspects of the Malaysian legal system that they find unfavorable are thereby "inconvenient" and assert that defendants are "reverse forum shopping" to obtain more favorable law. (*Id.* at 16-18, 35.) The Motley Rice plaintiffs, for their part, seem to concede that Malaysia is an available and adequate forum as to Boeing. (ECF 67 at 14.) But regarding MAS and MAB, they argue that Malaysian law does not permit them to hold MAS and MAB liable the way that they would prefer. (ECF 67 at 9-14.) In addition, they argue that they are entitled to stipulations of liability and U.S.-style discovery. (*Id.* at 14.)

Malaysia is adequate and available by the standards of *Piper* and its progeny because Malaysian law provides a remedy and defendants have consented to jurisdiction and to pay any judgment subject to a right of appeal (ECF 37-1 at 12 & n.5), which plaintiffs do not dispute. That is the end of the assessment of the Malaysian forum. *See Piper*, 454 U.S. at 254 & n.22. Contrary to the Podhurst/Wisner attempt, the law of Malaysia does not get smuggled back in as a "private interest." Plaintiffs cannot have a "private interest" in U.S. law. The Motley Rice plaintiffs are likewise incorrect in arguing that an "adequate" forum must permit them to sue a particular defendant or to engage in a particular type of litigation. *Piper* is very clear: "***the possibility of a change in law favorable to defendant should not be considered***." *See Piper*, 454 U.S. at 251-52 & n.19 (emphasis added). "Federal courts around the country overwhelmingly agree that a foreign forum's restrictive discovery or procedural rules do not render that forum inadequate." *See Marra v. Papandreou*, 59 F. Supp. 2d 65, 73 (D.D.C. 1999), *aff'd*, 216 F.3d 1119 (D.C. Cir. 2000) (collecting cases).

Likewise, the Motley Rice plaintiffs' argument that Malaysia is not an adequate forum because MAS is state-owned "must be rejected as without foundation. It is hardly unusual … for

a finding of forum non conveniens to be made in favor of the forum of a state whose entity is a party litigant." *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002); *see also Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 291 (5th Cir. 1989) (dismissal of action against state-owned airline).

Plaintiffs also inaccurately characterize the nature of a *forum non conveniens* motion. Plaintiffs frame the issue as whether the cases should be **transferred** to Malaysia, saying several times that defendants have moved for a "transfer" to Malaysia. (ECF 68 at 13, 14, 22, 30.) Defendants have not moved for a transfer, and this Court has no power to transfer cases to Malaysia. Granting a *forum non conveniens* motion results only in a dismissal. Plaintiffs are free to re-file someplace other than Malaysia. If they genuinely believe that China, India, or Australia are better forums than Malaysia (*see id.* at 13), they can file there. In the Air France 447 litigation, the focus was on litigation in France but some plaintiffs insisted it should have been Brazil instead. In the end, all that mattered was that France was adequate and available and more convenient than the U.S.; the plaintiffs were free to proceed in Brazil if they preferred. *See Mid-Atl.*, 760 F. Supp. 2d at 845 n.10 ("Counsel for some of the foreign Plaintiffs said at oral argument that his clients would not pursue their actions in France if this case is dismissed on *forum non conveniens* grounds and would instead commence actions in Brazil. … Such is, of course, their prerogative."). The same options exist here and have no bearing on the analysis.

## V.     Consideration of the public interest strongly favors Malaysia over the U.S.

There is no serious dispute regarding Malaysia's superior public interest. The Podhurst/Wisner plaintiffs acknowledge as they must that "Malaysia has a compelling interest in the outcome of this case." (ECF 68 at 41.) But starting at the beginning of their brief, they offer several inaccurate representations designed to diminish the Malaysian role in the search and

investigation. Once corrected, there is no basis for treating this case any differently than *Piper*, *Pain*, or many others because the asserted U.S. interest—the presence of an American manufacturer—is no different or greater than in those cases.

> **A.  Malaysia's public interest is compelling given the official Malaysian investigation and the criminal investigation.**

Malaysia is conducting both the official civil investigation and a criminal investigation. Plaintiffs attempt to equate the FBI's assistance in a Malaysian criminal investigation with the fact that Malaysia is leading a criminal investigation. (ECF 68 at 40-41.) Malaysia's criminal investigation shows a much greater public interest than mere assistance from another country. And plaintiffs do not offer a case in which a federal court has denied a motion to dismiss for *forum non conveniens* in the aviation accident context where a criminal investigation is pending in the alternative forum. Many cases cite the presence of a foreign criminal investigation as an important factor favoring dismissal. *See*, *e.g.*, *Mid-Atl.*, 760 F. Supp. 2d at 846 ("France's interest is especially obvious here because it is also conducting the official civil investigation *and an official criminal investigation*.") (emphasis added).[10]

Plaintiffs nevertheless try to diminish the role of the Malaysian government in the search and investigation with false representations. Plaintiffs' misrepresentations regarding the custody and examination of wreckage have already been discussed. In addition, the Podhurst/Wisner brief says early on that Malaysia contributed no aircraft or vessels to the search for MH370 and was otherwise shirking its responsibility:

> In the weeks following Flight MH370's disappearance, some 13 countries sent vessels or airplanes to participate in the search for the Boeing Airplane. Notably, Malaysia was not one of these.

---

[10] *See also*, *e.g.*, *Clerides,* 534 F.3d at 630 (noting that pending criminal investigations reflect national interest in aviation accident); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1174 (9th Cir. 2001) (same); *In re Air Crash Near Athens, Greece*, 479 F. Supp. 2d at 804 (same).

> Indeed, at least one news source has noted that the Malaysian government was not pulling its own weight, so to speak, in the international search for the Boeing Airplane. On March 12, 2014, four days after the accident, Malaysia "scaled back" its search efforts. On March 31, 2014, just 23 days after the accident, the Malaysian government ceded control over the search effort to Australia. Meanwhile, the United States continued its search for Flight MH370 for almost three years after Malaysia stopped looking, spending millions of dollars of its own money.

ECF 68 at 3 (citations and footnotes omitted). Plaintiffs' citations do not support what plaintiffs say. There is, for example, a list of countries sending ships, but it does not say that Malaysia sent none, and the article mentioning "scal[ing] back" is referring to Vietnam.

What plaintiffs tell the Court is false and easily checked. The official website for the search (http://jacc.gov.au) recounts the following:

- **Malaysia contributed aircraft.** The Malaysian Air Force was thanked on March 31, 2014, for its "extraordinary work … it's been in the air searching for three weeks now and it really has been an extraordinary effort by the aviators from Malaysia to come down here over the last few days after all the efforts they've put in earlier in this search."[11]

- **Malaysia contributed ships.** On April 3 and 4, 2014, Malaysia was thanked for contributing "the Malaysian frigate *Lekiu*," which had aboard a "Super Lynx 300" helicopter.[12] Malaysia later procured another search vessel, the *Go Phoenix*. There is a photo of that vessel on the search website.[13]

- **Malaysia was part of a coordinated search effort.** On April 28 and May 5, 2014, "a dedicated team of vessels from Australia, Malaysia and China" was noted, and on June 26, 2014, it was noted that Malaysia had provided search equipment.[14] In the summer of 2014, Australia, Malaysia, and China reached a Memorandum of Understanding regarding the search.

- **Malaysia contributed more financially than any other country.** In January 2017, the Australian Minister for Infrastructure and Transport said of the search effort: "There is no question this has been a very costly exercise—in the order of

---

[11] http://jacc.gov.au/media/interviews/2014/march/tr001.aspx.
[12] http://jacc.gov.au/media/interviews/2014/april/tr005.aspx.
[13] http://jacc.gov.au/media/interviews/2014/august/tr016.aspx, and http://jacc.gov.au/media/photos/files/HISHAMMUDDIN-01.jpg.
[14] http://jacc.gov.au/media/interviews/2014/april/tr011.aspx, http://jacc.gov.au/media/interviews/2014/may/tr013.aspx, http://jacc.gov.au/media/interviews/2014/june/tr014.aspx.

$200 million Australian dollars has been spent on the underwater search effort, of which $60 million has been provided by the Australian Government. Malaysia has contributed more than anyone else in that regard."[15]

Plaintiffs' depiction of a report by the Australian Transportation Safety Board (ATSB) is also inaccurate. Plaintiffs falsely claim that "only the ATSB has ventured an evidence-based guess as to the causes of Flight MH370's disappearance." (ECF 68 at 6.) Defendants addressed these errors in an earlier submission and the ATSB itself has confirmed (in a statement called "Correcting the Record") that the ATSB only evaluated hypothetical scenarios and confirmed that "[it] has not needed to determine—and has made no claims—about what might have caused the disappearance of the aircraft." (ECF 28 at 6-7.) Plaintiffs should not say that the ATSB has opined on "the causes of MH370's disappearance" when the ATSB has disavowed that claim.

Finally, both sets of plaintiffs mischaracterize the nature and status of the Malaysian civil investigation. In support of the motion to dismiss, defendants submitted the Declaration of Hillary Barr, Director of Product Safety for The Boeing Company discussing the Malaysian investigation. (ECF 37-7.) "The Malaysian Annex 13 team has control over the investigation and maintains the complete investigation file," and Ms. Barr is not aware of any entity in the U.S. with access to the complete investigation file. *Id.* ¶ 10. The investigation is ongoing. On March 8, 2017, the investigation issued its Third Interim Statement regarding MH370 and said that a final report would be issued in the "months ahead."[16]

With no final report, the Podhurst/Wisner plaintiffs try to minimize the ongoing investigation. In addition to the examples noted above, the Podhurst/Wisner plaintiffs also assert that "neither the ICAO Investigation nor the Malaysian criminal probe has revealed material

---

[15] http://minister.infrastructure.gov.au/chester/interviews/2017/dci015_2017.aspx.
[16] http://mh370.gov.my/index.php/en/media2/transcript/category/21-3rd-interim-statement-8-march-2017?download=105:3rd-interim-statement-english-version.

clues as to what actually happened." (ECF 68 at 1, 5-6.) "Neither the ICAO Investigation nor the Malaysian criminal probe has posited even a single relevant data point by which a judge or jury could conclude that the cause of the Boeing Airplane's disappearance was, as the case may be, one thing or another." (*Id.* at 24.) The Podhurst/Wisner plaintiffs never acknowledge that the Malaysian investigators are still working on their final report, where all of those items would naturally appear. The Motley Rice plaintiffs, by contrast, incorrectly argue as if the Malaysian investigation is concluded and that no evidence can be found in Malaysia. (ECF 67 at 6.)

It is understandable, but unfortunate, that plaintiffs seek to diminish the role of the Malaysian government in an attempt to alter the analysis of private and public interests. But this case is no different than other cases where the local authority is in charge of the investigation, a critical factor in assessing public interest. *See Mid-Atl.*, 760 F. Supp. 2d at 843, 845-46 & n.13.

**B.     The U.S. interest cited by plaintiffs is the same insufficient U.S. interest as in *Piper*, *Pain*, and many other cases.**

The Supreme Court and other federal courts (including *Mid-Atl.*) have repeatedly rejected plaintiffs' arguments that U.S. interests prevail in foreign aviation accident cases just because the airplane or its components were designed and built here. *See, e.g.*, *Piper*, 454 U.S. at 261; *Pain*, 637 F.2d at 793; *Clerides*, 534 F.3d at 630; *Mid-Atl.*, 760 F. Supp. 2d at 845. Plaintiffs' argument that the U.S. has a greater interest in this litigation because similar model aircraft are operated here is equally unavailing. As the Supreme Court summarized in *Piper*, "the American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." 454 U.S. at 260-61. There is no defensible reason why the balance should come out differently here.

The Podhurst/Wisner plaintiffs reprise their view that it matters whether the event occurred in the territory of the foreign forum and whether residents of the foreign forum are in

the litigation. (ECF 68 at 38-39.) Those factors do not make it more convenient to litigate in the

U.S., and Judge Breyer did not accept those arguments in *Mid-Atl.* More importantly, those

factors cannot diminish Malaysia's significant and overwhelming public interest in this litigation.

This case arises from the mysterious disappearance of an airplane that was operated and

maintained exclusively by the Malaysian flag carrier. The flight was piloted by Malaysian pilots,

maintained by Malaysian engineers, and certified as airworthy by Malaysian regulators. The last,

tragic flight took off from the Malaysian capital of Kuala Lumpur en route to Beijing, carrying

dozens of Malaysian nationals. The Malaysian authorities are conducting and controlling the

official investigation to determine the probable cause of the aircraft's disappearance. In addition,

Malaysian criminal authorities are conducting their own, separate examination. No other nation,

let alone the U.S., has a public interest in this event that comes close to Malaysia's.

Indeed, the minimal U.S. interest that exists because the aircraft was manufactured by a

U.S. manufacturer and the same model is operated in U.S. airspace cannot tip the balance of

public interests against dismissal. Plaintiffs would have this Court reach a conclusion that is

directly contrary to the controlling precedent of *Piper* and *Pain* and at odds with Judge Breyer's

well-reasoned appraisal of very similar facts and arguments in *Mid-Atl.* That would be

unfounded. The public interest factors strongly favor dismissal.

## CONCLUSION

Plaintiffs' claims should be dismissed on the ground of *forum non conveniens* for refiling

in the courts of Malaysia.

DATED: September 8, 2017

Respectfully submitted,

**KAPLAN, MASSAMILLO & ANDREWS, LLC**

By:  /s/ Richard A. Walker

Telly Andrews, IL Bar No. 6242431
tandrews@kmalawfirm.com
Richard A. Walker, IL Bar No. 6196947
rwalker@kmalawfirm.com
200 W. Madison Street, 16th Floor
Chicago, Illinois 60606
Telephone: (312) 345-3000
Facsimile: (312) 345-3119

Attorneys for Defendants Malaysian Airline System Berhad (Administrator Appointed); Malaysia Airlines Berhad; Allianz Global Corporate & Specialty SE

**PERKINS COIE LLP**

DATED: September 8, 2017

By:  /s/ Mack H. Shultz

John D. Dillow, WA Bar No. 5979
JDillow@perkinscoie.com
Eric B. Wolff, D.C. Bar No. 477730
EWolff@perkinscoie.com
Mack H. Shultz, WA Bar No. 27190
MShultz@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Attorneys for Defendant The Boeing Company

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on September 8, 2017, pursuant to Fed. R. Civ. P. 5 and

LCvR 5.3, a true and correct copy of the foregoing **Joint Reply in Support of Motion to**

**Dismiss on the Ground of Forum Non Conveniens** and the supporting **Declaration of**

**Richard A. Walker** was filed with the Clerk of the Court using the CM/ECF System, which will

send notification of such filing to the attorneys of record at the email addresses on file with the

court.


/s/ Mack H. Shultz
                    Mack H. Shultz