# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: AIR CRASH OVER THE SOUTHERN
INDIAN OCEAN ON MARCH 8, 2014

---

This Document Relates To:
1:16-cv-00053-KBJ,
*Wood v. Malaysia Airlines Berhad;*
1:16-cv-00419-KBJ,
*Gaspard v. Malaysia Airlines Berhad;*
1:16-cv-00439-KBJ,
*Smith v. Malaysia Airlines Berhad;*
1:16-cv-01048-KBJ,
*Zhang v. Malaysia Airlines Berhad;*
1:16-cv-01061-KBJ,
*Kanan v. Malaysia Airlines System Berhad;*
1:16-cv-01063-KBJ,
*Huang v. Malaysia Airlines Berhad.*

MDL Docket No:  2712

Misc. No. 16-1184 (KBJ)

**DEFENDANTS MALAYSIAN AIRLINE SYSTEM BERHAD'S (ADMINISTRATOR APPOINTED) AND MALAYSIA AIRLINES BERHAD'S REPLY MEMORANDUM IN SUPPORT OF THEIR RULE 12(b)(1) MOTION TO DISMISS PLAINTIFFS' COMPLAINTS ON THE GROUND OF FOREIGN SOVEREIGN IMMUNITY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iv

INDEX OF EXHIBITS ......................................................................................... viii

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 4

I.      Even If the Permit Waiver Condition Were Lawful, It Was Not Triggered Since Flight MH370 Had No Nexus with the United States ........................................ 4

II.     The DOT Had No Statutory Authority to Require Any Waiver of Sovereign Immunity ........................................................................................................... 8

       A.     The DOT's Usurpation of Sovereign Immunity Determinations Flouts the FSIA's Transfer of That Power from the Executive to the Judicial Branch .......... 9

            1.     The FSIA Transferred All Executive Authority over Sovereign Immunity and Placed It Exclusively in the Courts .................................... 9

            2.     Congress Always Limited Civil Aviation Authority by Territory and the DOT's Statutory Authority to Regulate Delimited "Foreign Air Transportation" Did Not Permit Regulation of <u>Other</u> International Air Transportation with No U.S. Connection ..................... 11

            3.     Broad Regulatory Authority Granted to the DOT Could Never Override the FSIA's Language That "Claims of Foreign States to Immunity Should Henceforth Be Decided by Courts" ............................ 14

            4.     The DOT Acknowledged the Waiver Condition Was Intended to Impede Judicial Rejection of the DOT's Position on Sovereign Immunity ...................................................................................... 15

            5.     The DOT's Usurpation of Sovereign Immunity Decisions Deprives State-Owned Carriers of Their Statutory FSIA Right to Judicial Hearing ....................................................................................... 16

            6.     MAS's and MAB's Challenge to the Order Is Timely ............................ 18

            7.     The Coerced Waiver as a Condition in a Foreign Air Carrier Permit Is an Unconstitutional Denial of Due Process .............................. 21

B.      MAB Is a Separate Legal Entity Incorporated after the Accident and No Activity Undertaken Before Its Incorporation Can Eliminate MAB's Right to Immunity Without Disregarding Malaysian Law Act 765 ............................... 24

III.   The Montreal Convention Does Not Constitute an Implicit Waiver of Sovereign Immunity ........................................................................................................................ 26

A.      The Convention Shows No Evidence of Any Intent to Waive Sovereign Immunity ............................................................................................................... 27

B.      The FSIA Itself Restricts Waiver by Treaty More Narrowly Than Waiver by Transaction .................................................................................................... 30

C.      Plaintiffs' Cases Neither Address These Controlling Principles nor Support Any Contrary Outcome ........................................................................ 31

IV.    Immunity under the FSIA Must Be Made on a Case-by-Case Basis; Prior Suits Against MAS Are Irrelevant to Determining Immunity in These Cases ........................ 33

CONCLUSION .................................................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*Aerolineas Argentinas S.A. v. U.S. Dept. of Transp.*, 415 F.3d 1 (D.C. Cir. 2005).......... 19, 21, 23

*Air New Zealand Ltd. v. C.A.B.*, 726 F.2d 832 (D.C. Cir. 1984)................................................. 19

*American Airlines, Inc. v. Department of Transportation*, 202 F.3d 788 (5th Cir. 2000).............. 9

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ........................ 18, 29

*Ashraf-Hassan v. Embassy of France in the United States,*
    40 F. Supp. 3d 94 (D.D.C. 2014) .................................................................................... 29

*Auer v. Robbins*, 519 U.S. 452 (1997) ................................................................................ 17, 20

*Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398 (1964) ...................................................... 25

*Blue Ridge Investments L.L.C. v. Republic of Argentina*, 735 F.2d  (2d Cir. 2013).................... 33

*Brink's Limited v. South African Airways*, 93 F.3d 1022 (2d Cir. 1996)............................... 30, 33

*Callanan Road Improvement Co. v. United States*, 345 U.S. 507 (1953) ................................... 19

*Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989) ................................................................ 28

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) ................... 17

*Civil Aeronautics Board v. Delta Airlines, Inc.*, 367 U.S. 316 (1961) ........................................ 16

*Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999)........................................................................................................ 22

*Compania Mexicana de Aviacion, S.A. v. United States Dist. Court*
    *for the Central Dist. Of California*, 859 F.2d 1354 (9th Cir. 1988) .......................... 31, 32

*Coyle v. P.T. Garuda Indonesia* ,363 F.3d 979 (9th Cir. 2004) ................................................. 7, 8

*Dan-Air Services, Ltd. v. Civil Aeronautics Board*, 475 F.2d 408 (D.C. Cir. 1973)........ 18, 19, 20

*Dar-el Bina Eng'g & Contracting Co. v. Republic of Iraq,*
    79 F. Supp. 2d 374 (S.D.N.Y. 2000)............................................................................... 33

*Dia Navigation Co. v. Pomeroyl*, 34 F.3d 1255 (3d Cir.1994).................................................... 16

*El Al Israel Airlines Limited*, Amendment of Permit, 14 C.A.B. 962 (1951).............................. 17

*Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438 (D.C.Cir.1990) ............... 29

*FPC v. Colorado Interstate Gas Co.*, 348 U.S. 492 (1955)............................................. 19

*Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370 (7th Cir. 1985) ........................... 31

*Frost v. Railroad Commission*, 271 U.S. 583 (1926) .................................................. 22

*Gayda v. LOT Polish Airlines*, 702 F.2d 424 (2d Cir. 1983)............................................ 30

*Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000 (9th Cir. 1987) ................................. 30, 33

*Howe v. Smith*, 452 U.S. 473 (1981)............................................................. 17, 18

*Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190 (E.D.N.Y. 2012) ................................. 7

*In re Tamimi*, 176 F.3d 274 (4th Cir. 1999) ....................................................... 29

*Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018 (9th Cir.1987) ...................... 29

*Meade Tp. v. Andrus*, 695 F.2d 1006 (6th Cir. 1982) ......................................... 9, 17, 23

*Mexichem Fluor, Inc. v. EPA*, 866 F.3d 451 (D.C. Cir. 2017) ...................................... 15

*OBB Personenverkehr AG v. Sachs*, 577 U.S. ---, 136 S. Ct. 390 (2015) .................................. 13

*Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.*, 509 F.3d 347 (7th Cir. 2007)................. 24

*Philipp v. Fed. Republic of Germany,* CV 15 15-266 (CKK),
    2017 WL 1207408 (D.D.C. Mar. 31, 2017)......................................................... 33

*Rite Aid Corp. v. U.S.*, 255 F.3d 1357 (Fed. Cir. 2001)............................................. 21

*Rodriguez v. Transnave Inc.*, 8 F.3d 284 (5th Cir. 1993) ........................................... 31

*SACE S.p.A. v. Republic of Paraguay*, No. 15-CV-1042 (KBJ), 2017 WL 1066564
    (D.D.C. Mar. 21, 2017).......................................................................... 6

*Sarei v. Rio Tinto, PLC*, 487 F.3d 1193 (9th Cir. 2007)............................................. 25

*Seetransport Wiking Trader Schiffarhtgesellschaft MBH & Co. v. Navimpex Centrala
    Navala*, 989 F.2d 572 (2d Cir. 1993) .................................................. 31, 32, 33

*Shapiro v. Republic of Bolivia*, 930 F.2d 1013 (2d Cir. 1991) ..................................... 29

*Siderman de Blake v. Republic of Argentina,* 965 F.2d 699 ......................................... 33

*Simon v. Republic of Hungary,* 812 F.3d 127 (D.C. Cir. 2016)....................................... 33

*Southern Pacific Co. v. Denton*, 146 U.S. 202 (1892) ................................................. 22

*Standard Airlines v. Civil Aeronautics Board*, 177 F.2d 18 (D.C. Cir. 1949) ........................... 23

*Steenholdt v. FAA*, 314 F.3d 633 (D.C. Cir. 2003) ....................................................... 21

*Taylor v. Huerta*, 586 F.3d 1089 (D.C. Cir. 2017) ....................................................... 16

*Tennessee Valley Authority v. Hill*, 437 U.S. 153 (1978) ....................................... 3, 9, 18

*Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976) ................................... 21

*Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7 (D.D.C. 2014) ...................... 25

*Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983) ............................... 10, 11

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154 (D.C. Cir. 2002) ........ 6, 29

*Zuber v. Allen*, 396 U.S. 168 (1969) .......................................................... 17

**Statutes**

28 U.S.C. § 1330(a) .......................................................... 3, 26, 27, 35

28 U.S.C. § 1602 ................................................................. *passim*

28 U.S.C. § 1603(e) .................................................................. 13

28 U.S.C. § 1605(a) .......................................................... 5, 26, 30, 31

28 U.S.C. § 1605(a)(1) ............................................................. *passim*

28 U.S.C. § 1605(a)(2) .................................................. 1, 13, 18, 30, 32

49 U.S.C. § 1486(a) .................................................................. 19

49 U.S.C. § 40101 ................................................................... 11

49 U.S.C. § 40102(a)(23) ........................................................... 2, 4

49 U.S.C. § 41305(b) .............................................................. 12, 14

49 U.S.C. § 41307 ................................................................... 19

49 U.S.C. § 46110(a) .......................................................... 19, 20, 21

**Rules**

Fed. R. Civ. P. 5 ................................................................... 37

Fed. R. Civ. P. 12(b)(1) .................................................................................... 24

Fed. R. Civ. P. 12(b)(6) .................................................................................... 24

**Regulations**

14 C.F.R. §129.1 ............................................................................................... 12

**Other Authorities**

1938 Congressional Record 8913, 8914, May 12, 1938 .................................... 11

1976 U.S. Code Cong. & Ad. News 6604 .................................................... 3, 10

Convention on International Civil Aviation, Dec. 7, 1944, 61 Stat. 1180, T.I.A.S. No.
   1591 (Chicago Convention) ........................................................................ 15

DOT Order 87-8-8, 1987 WL 111215 ..................................................... *passim*

DOT Order to Show Cause 86-1-38 at *1, 1986 WL 69761 ........................... 12

H.R. Rep. No. 94-1487 ............................................................................ *passim*

*Immunities of Foreign States: Hearing on H.R. 3493 Before the Subcomm. on Claims and
   Governmental Relations of the House Comm. on the Judiciary*, 93rd Cong., 1st
   Sess. 16-17 (1973) ..................................................................................... 17

International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003),
   reprinted in S. Treaty Doc. 106-45, 1999 WL 33292734 ............................... 1

Restatement (Third) of Foreign Relations Law §§ 453, 456 ............................. 8

## INDEX OF EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 1 | Excerpt of Plaintiff, Thomas Wood, as Personal Representative of the Estate of Philip Talmadge Wood, Deceased Notice of Filing Unverified Answers to Defendants, Malaysian Airlines System Berhad (Administrator Appointed) and Malaysia Airlines Berhad's First Set of Interrogatories Regarding Threshold Issues |
| 2 | Excerpt of Plaintiff, Thomas C. Gaspard, as Personal Representative of the Estate of Rui Wang, Deceased Answers to Defendants, Malaysian Airlines System Berhad (Administrator Appointed) and Malaysia Airlines Berhad's First Set of Interrogatories Regarding Threshold Issues |
| 3 | Etihad Airlines Permit - Hunter v. Deutsche Lufthansa |
| 4 | DOT Permit to Norwegian Airlines |
| 5 | UNDER SEAL - Correspondence to Podhurst Orseck re Confidential SOAL Agreement |

## INTRODUCTION

Before this court can entertain the claims of Plaintiffs, three jurisdictional requirements must be met: (a) subject matter jurisdiction exists under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq*. ("FSIA") because of an exception to sovereign immunity; (b) a sufficient nexus exists between the accident on which the lawsuits are based and the United States; and (c) treaty jurisdiction exists under the Montreal Convention.[1] None of the Plaintiffs can satisfy the first two requirements and only two of the Plaintiffs, Wood and Gaspard (on behalf of four decedents), even argue that they satisfy the requirement for treaty jurisdiction under the Montreal Convention.[2]

All plaintiffs accept that Malaysian Airline System Berhad (Administrator Appointed) ("MAS") and Malaysia Airlines Berhad ("MAB") are agencies or instrumentalities of a foreign state within the meaning of the FSIA. All plaintiffs also accept that none of the commercial activity exceptions in 28 U.S.C. § 1605(a)(2) applies to this case. Accordingly, no factual issues exist regarding the motion to dismiss based upon the FSIA. Only legal issues involving the proper interpretation and application of the relevant statutes and regulations are presented by the FSIA motion.

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003), reprinted in S. Treaty Doc. 106-45, 1999 WL 33292734 ("Montreal Convention" or "Convention"). Hereafter citations to Articles of the Montreal Convention are cited simply as "Article" or "Art."

[2] *See*, [ECF 63] Plaintiffs Opposition to MAS's Motion to Dismiss for Lack of Subject Matter Jurisdiction under the Montreal Convention filed by the *Wood* and *Gaspard* Plaintiffs ("Wood-Gaspard Plaintiffs"). The remaining Plaintiffs do not even allege or argue treaty jurisdiction exists pursuant to Article 33 of the Montreal Convention. For that reason alone the Court need not consider the FSIA Response of the *Smith, Zhang, Kanan* and *Huang* Plaintiffs ("SZKH Plaintiffs"). The SZKH Plaintiffs rely only on arguments under Article 32 that have been fully briefed for six months. *See* [ECF 66] Plaintiffs Opposition to MAS's Motion to Dismiss for Lack of Subject Matter Jurisdiction under the Montreal Convention. In any event, Plaintiffs arguing the existence of treaty jurisdiction are wrong. *See* [ECF 38-1] and MAS's Reply Brief in Support of its Rule 12(b)(1) Motion to Dismiss on the Ground of Lack of Subject Matter Jurisdiction under the Montreal Convention ("Montreal Convention Reply Brief") filed contemporaneously herewith. The Plaintiffs in the *Keith* case who purport to join in the SZKH Plaintiffs' Response have not even sued MAS or MAB as defendants in their separate suit against Boeing.

With respect to the first two jurisdictional requirements, foremost is whether Condition 7 in the Foreign Air Carrier Permit (the "Permit") issued by the United States Department of Transportation ("DOT") to MAS in 2002, and in effect on the date of the loss of MAS Flight MH370 ("Flight MH370" and the "Accident"), constitutes an explicit waiver of MAS's sovereign immunity under 28 U.S.C. §1605(a)(1). [ECF 64] at 22-42; [ECF 65] at 6-13.[3] Plaintiffs argue the DOT was fully empowered to issue the Permit containing Condition 7, which imposes a waiver of sovereign immunity under certain circumstances (the "Waiver Condition"), on the basis that the DOT correctly interpreted its governing statutes. [ECF 64] at 24-33; [ECF 65] at 12-13.  On its face, however, the waiver condition was not triggered by MAS's operation of Flight MH370 even assuming the Condition was lawfully imposed by the DOT in the first instance.

The Wood-Gaspard Plaintiffs wrongly argue that neither the FSIA generally nor MAS's specific Permit required a nexus with the United States for a valid waiver of sovereign immunity, *see* [ECF 64] at 13-15, and that the DOT has authority to impose a waiver of sovereign immunity on international air transportation even though transportation to and from the United States, i.e., "foreign air transportation" as defined by 49 U.S.C. § 40102(a)(23), is not involved. In so arguing, Plaintiffs ignore an issue crucial to the proper determination of that question: what authority does any agency of the Executive branch of the United States government have to coerce and impose a condition affecting sovereign immunity, arguably pursuant to its governing statute, when that condition directly conflicts with the clear mandate of the statutory provisions of the FSIA? The Supreme Court has answered that question, holding that an Executive agency

---

[3] Page-number citations to MAS's moving papers and Plaintiffs' Response Brief refer to the page numbers in the document header assigned by the Court's Electronic Court Filing system. [ECF 64] is the Opposition to MAS's and MAB's Rule 12(b)(1) Motion to Dismiss on the Ground of Foreign Sovereign Immunity [ECF 39] filed by the Wood-Gaspard Plaintiffs. [ECF 65] is the Opposition filed by the SZKH Plaintiffs.

has no authority to pursue a course of action that would "ignore the ordinary meaning of plain language" in an applicable statute. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 173 (1978).[4] The FSIA is a separate statute that completely and comprehensively governs the subject matter of sovereign immunity (1) that was intended to preempt any federal law or regulation affecting sovereign immunity, and; (2) whose "principal purpose…is to transfer the determination of sovereign immunity from the executive branch to the judicial branch."[5]  28 U.S.C. § 1602. And there can be no doubt that a direct conflict exists between the FSIA and the DOT's adoption of Permit Condition 7.

Plaintiffs' secondary argument is that the Government of Malaysia's ratification of the Montreal Convention waived MAS's right to invoke sovereign immunity by implication[6] pursuant to either 28 U.S.C. § 1330(a) or 28 U.S.C. § 1605(a)(1). [ECF 64] at 43-54; [ECF 65] at 13-16. Defendants MAS and MAB have been unable to find, and none of the Plaintiffs have cited, any case that holds the Montreal Convention, or its predecessor the Warsaw Convention, constituted a waiver of sovereign immunity.[7] Those few cases that have construed a convention or treaty as constituting an implicit waiver of sovereign immunity did not involve any airline and have been confined to the examples enumerated in the legislative history of the FSIA: arbitration

---

[4] Other than in a footnote, Plaintiffs do not address this controlling opinion which prohibits the DOT's action. [ECF 64] at 31 n.17.

[5] H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. 7 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad. News 6604, 6606 (hereafter "House Report")

[6] The Wood-Gaspard Plaintiffs concede that the Montreal Convention does not constitute an explicit waver of sovereign immunity. [ECF 64] at 43 n.28. The SZKH Plaintiffs do not indicate whether they argue that the ratification of the Montreal Convention by the Malaysian Government amounted to an explicit or implicit waiver. However, the suggestion that "the Montreal Convention contains precisely such language [mentioning a waiver of immunity to suit in United States courts] . . ." is wrong. *See*, [ECF 65] at 14 n.4.

[7] The only authority cited by Plaintiffs is a statement by the DOT in its Order 87-8-8 that IATA (the International Air Transportation Association) submitted a comment to the effect that the waiver in Condition 7 was unnecessary because governments relinquished their right to claim sovereign immunity by ratifying the Warsaw Convention. But even the DOT did not agree with IATA's position, stating that "this matter is far from settled." DOT Order 87-8-8 at *3.

conventions; treaties of friendship, commerce, and navigation. Any holding by this Court construing the Montreal Convention as an implicit waiver of immunity would have to ignore entirely such lack of authority and the FSIA legislative history. Plaintiffs' arguments of explicit and implicit waiver of sovereign immunity should be rejected in all respects.

Finally, the Wood-Gaspard Plaintiffs again assert that MAB may be deemed the successor-in-interest to MAS and that the Act of State Doctrine does not preclude this Court from making that determination in the first instance. [ECF 64] at 15-22. That argument is meritless and must be rejected because doing so requires a predicate determination that would be in derogation of a legislative enactment of the Government of Malaysia. For these reasons, MAS and MAB are entitled to dismissal on the ground of sovereign immunity.

## ARGUMENT

### I. Even If the Permit Waiver Condition Were Lawful, It Was Not Triggered Since Flight MH370 Had No Nexus with the United States

For the multitude of reasons in Part II, the DOT did not have authority to require MAS to waive its sovereign immunity for its operations in international air transportation that were neither operations authorized by the permit nor operations in "foreign air transportation."[8] However, even if the waiver is a condition the DOT may lawfully impose on foreign air carriers for operations that did not constitute "foreign air transportation," MAS's operation of Flight MH370 did not trigger the purported waiver under the plain terms of the Permit's Condition 7 because Plaintiffs' claims have no connection to the United States.

By virtue of its Foreign Air Carrier Permit, MAS was authorized on the date of the Accident to operate foreign air transportation of persons, property and mail, "from points behind

---

[8] "Foreign Air Transportation" is defined, in relevant part, as "the transportation of passengers or property by aircraft as a common carrier for compensation . . . between a place in the United States and a place outside the United States when any part of the transportation is by aircraft." 49 U.S.C. § 40102(a)(23) (2012).

4

Malaysia via Malaysia and intermediate points to a point or points in the United States and beyond. . ." (the "Operations Authorized"). *See* [ECF 64-3] at 6. The purported waiver of sovereign immunity set forth in MAS's Foreign Air Carrier Permit states:

> In the conduct of the operations authorized, the holder shall:
>
> * * *
>
> (7) Agree that *operations under this authority* constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are:
>
> (a) based on its operations in international air transportation that, according to the contract of carriage, include [1] a point in the United States as a point of origin, point of destination, or agreed stopping place, or [2] for which the contract of carriage was purchased in the United States; or
>
> (b) based on a claim under any international agreement or treaty cognizable in any court or other tribunal in the United States.
>
> * * *

*Id.* at p. 8 (emphasis added).

There is no dispute that Flight MH370 – from Kuala Lumpur, Malaysia to Beijing, China – was not one of the Operations Authorized by MAS's Foreign Air Carrier Permit. Nor is there any dispute that Flight MH370 was international air transportation or that these lawsuits are governed by the Montreal Convention – an international treaty. But Plaintiffs lose because none of the requirements of subpart (a)[1] or [2] or subpart (b) of the Permit, which necessarily require some nexus with the United States on their face, is satisfied in any of these cases. Plaintiffs do not argue that the United States was a point of origin, point of destination or agreed stopping place on any Decedents' contract of carriage. Therefore subpart (a)[1] does not trigger any waiver. The requirement of Subpart (a)[2] was not triggered because the *Wood* and *Gaspard* Plaintiffs admit that the Decedents were not in the United States when they purchased their

contracts of carriage for Flight MH370[9] and none of the SZKH Plaintiffs makes any argument that any decedent purchased their contract of carriage in the United States. Likewise, subpart (b) was not triggered because not one of these lawsuits is cognizable in the United States under the Montreal Convention.[10]

As this Court has recognized, "[w]hen addressing a foreign sovereign's explicit waiver of sovereign immunity under the FSIA, courts have been clear that '[a] foreign sovereign will not be found to have waived its immunity unless it has clearly and unambiguously done so.'" *SACE S.p.A. v. Republic of Paraguay*, No. 15-CV-1042 (KBJ), 2017 WL 1066564, at *7 (D.D.C. Mar. 21, 2017) (quoting *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002)) (second alteration in original). The Waiver Condition at issue here is not a clear and unambiguous statement MAS renounced its right to invoke sovereign immunity in cases *not* arising out of the Operations Authorized by the Permit. Indeed, even if the DOT had authority to require MAS to agree to a waiver for operations not involving a point in the United States, the requirements of subparts (a) and (b) still require a nexus with the United States, and that nexus is entirely lacking here. Therefore, the waiver of sovereign immunity set forth in Condition 7 was not triggered by MAS's operation of Flight MH370. And the fact that MAS held a permit allowing it to operate in the United States, and does not by itself create a sufficient

---

[9] *See*, Wood's Answers to MAS's Interrogatories on behalf of Decedent Wood, at Answer to Interrogatory No. 10, attached hereto as **Exhibit 1**; Gaspard's Answers to MAS's Interrogatories on behalf of Decedent Wang, Answer to Interrogatory Nos. 8, attached hereto as **Exhibit 2**.

[10] *See* MAS's Motion to Dismiss for Lack of Subject Matter Jurisdiction under the Montreal Convention [ECF 38-1] and its Reply Brief filed contemporaneously herewith. Briefly, the Wood-Gaspard Plaintiffs cannot establish jurisdiction under Article 33.1 because the Decedents were in Malaysia or China when they purchased their contract of carriage, and those contracts were not made through any MAS place of business in the United States. The *Wood* Plaintiff also cannot establish jurisdiction under Article 33.2 because the *Wood* Decedent was living in Malaysia and had no residence in the United States. The remaining Plaintiffs neglected to identify any basis for jurisdiction in the United States under Article 33 of the Montreal Convention in their Response to MAS's Memorandum in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction under the Montreal Convention [ECF 39-1], *see*, [ECF 66]. Therefore any such waiver DOT could impose would not save the remaining Plaintiffs from dismissal and their contention that "all Plaintiffs assert claims cognizable in U.S. Courts pursuant to the Montreal Convention" may be summarily rejected. [ECF 65] at 7.

nexus between these lawsuits and the United States. *See Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 204 (E.D.N.Y. 2012) ("Both Etihad's alleged waiver and the commercial activity exception require a significant nexus between the commercial activity in the United States upon which the exception is based and a plaintiff's cause of action . . . Thus the fact that Etihad conducts business in the United States is insufficient *by itself* to defeat sovereign immunity, contrary to plaintiff's suggestion.") (internal alterations, quotations and citations omitted).[11]

Plaintiffs' reliance on *Coyle v. P.T. Garuda Indonesia* does not require a different conclusion. 363 F.3d 979, 984-85 (9th Cir. 2004). As an initial matter, the Ninth Circuit's discussion of the permit waiver in *Coyle* was *dicta* – it did not need to decide whether the permit could operate as a waiver for operations other than the operations authorized under the permit because the flight at issue was not "international transportation" as defined by the applicable Warsaw Convention. *Id.* at 993-94. The decision in *Coyle* also is not binding on this Court. And because MAS's operation of the international air transportation at issue here did not have a nexus with the United States sufficient to trigger a waiver of sovereign immunity under the Permit, Condition 7 does not strip MAS of its immunity and MAS is entitled to dismissal of all Plaintiffs' claims on that ground.

MAS's argument in its opening Memorandum that the waiver condition cannot be validly interpreted to apply to international operations outside the permit with no U.S. connection was

---

[11] The Wood-Gaspard Plaintiffs mischaracterize the district court's opinion and erroneously suggests that the waiver imposed by the DOT in Etihad's operating authority differed in any meaningful respect from the Waiver Condition attached to MAS's Permit. There, contrary to Plaintiffs' representation that the Plaintiff there "had not purchased his ticket in the United States, and his 'contract of carriage' did not include any stopping point in the United States," *see* [ECF 64] at 15, the district court explained that "[w]hether Etihad has immunity . . . turns on whether Etihad took over plaintiff's contract of carriage with United and Lufthansa, which was purchased in the United States and included as a point of origin and/or destination Spokane." 863 F. Supp. 2d at 204. The condition imposing the waiver in Etihad's operating authority was also identical to the language of the Waiver Condition here. *See*, Etihad Permit, attached hereto as **Exhibit 3.**

recognized by the DOT itself in 1987. *see* DOT Order 87-8-8, at *4,[12] Indeed, a nexus requirement for adjudication is a hallmark of international law. Restatement (Third) of Foreign Relations Law §§ 453, 456. For these reasons, the Waiver Condition is inapplicable to MAS's operation of Flight MH370 and cannot strip MAS of its sovereign immunity in any of these cases.

## II.    The DOT Had No Statutory Authority to Require Any Waiver of Sovereign Immunity

Notwithstanding the Permit's facial inapplicability, Plaintiffs allege in their Complaints and argue in their oppositions that MAS waived its right to sovereign immunity in the United States in any case arising out of any and all international operations having no connection to the United States, *see, e.g.*, [ECF 64] at 15, and they further assume that the DOT's curt dismissal of the FSIA as an obstacle to adoption of the purported waiver in Condition 7 of a foreign air carrier permit should be treated with deference. [ECF 64] at 24-33. That is so, Plaintiffs argue, because the DOT is empowered by its governing statute to regulate foreign air transportation, issue a permit to foreign airlines to engage in such transportation, and impose conditions on the issued permit. *Id.* at [ECF 64] at 25-26; [ECF 65] at 6-8.; *see also*, DOT Order 87-8-8 at *2 ("We

---

[12] In implementing Condition 7, the DOT explained that:

> Clause (a) is intended to preclude foreign air carriers from asserting immunity in cases arising from their operations in international air transportation that have a *substantial contact* with the United States.[] Clause (b) forecloses an air carrier from frustrating the intent of an international treaty or agreement to permit certain suits in *specified jurisdictions*. This clause responds directly to the concern of some commentators that our proposal might be interpreted to permit U.S. courts to assert jurisdiction over cases which, under applicable treaties or agreements, may not be heard in the United States. It is our intention that if jurisdiction *properly lies* in the United States under an international treaty or agreement, a foreign air carrier will not be able to defeat that jurisdiction by claiming sovereign immunity. In particular, it would ensure that, under the Montreal Protocols (upon their entry into force), U.S. citizens may have their *legitimate Warsaw Convention claims* heard in their own courts.

DOT Order 87-8-8, at *4 (emphasis added). The Wood-Gaspard Plaintiffs quote this as well but omit the critical sentence that Clause 7(b) "responds directly to the concern of some commentators that our proposal might be interpreted to permit U.S. courts to assert jurisdiction over cases which . . . may not be heard in the United States." *See* [ECF 64] at 36-37.

disagree also with those commenters that suggested that the Department's flexibility to condition authority for air service operations by foreign airlines to our country on a waiver of sovereign immunity is circumscribed by the FSIA. The proposition must be rejected under a reasonable interpretation of the FSIA itself").

Plaintiffs' argument, however, ignores that an Executive agency's interpretation of statutes – other than the statute entrusted to the agency for administration by Congress in the agency's authorizing legislation – is not entitled to any level of deference. *American Airlines, Inc. v. Department of Transportation*, 202 F.3d 788, 796 (5th Cir. 2000) ("However, we only engage in the *Chevron* analysis when reviewing an agency's interpretation of a statute it was charged with administering. When reviewing DOT's interpretation of a statute it is not charged with administering, we do not grant DOT *Chevron* deference"). And a regulation or condition adopted by the agency pursuant to its authorizing legislation is struck down if the agency's interpretation is wrong or it is inconsistent with the intent of Congress. *TVA v. Hill*, 437 U.S. 153, 185-90; *see also*, *Meade Tp. v. Andrus*, 695 F.2d 1006, 1009 (6th Cir. 1982) ("federal courts bear the ultimate responsibility for interpreting federal statutes. If an administrator promulgates a regulation which is inconsistent with the plain language of the governing statute, we are constrained to declare that regulation invalid.") Here, the FSIA is not one of the DOT's governing statutes and its interpretation of the FSIA is not entitled to any deference. Moreover, the DOT's interpretation flies in the face of the intent of Congress in the FSIA and its legislative history.

A. **The DOT's Usurpation of Sovereign Immunity Determinations Flouts the FSIA's Transfer of That Power from the Executive to the Judicial Branch**

1. **The FSIA Transferred All Executive Authority over Sovereign Immunity and Placed It Exclusively in the Courts**

Before the FSIA was enacted, the process for a court to consider a defendant's claim to

"sovereign immunity fell primarily upon the Executive acting through the State Department. . . . As a consequence, foreign nations often placed diplomatic pressure on the State Department in seeking immunity." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 487 (1983).  The FSIA legislative history makes clear that the involvement of the Executive branch in any determination of sovereign immunity was to be eliminated.

> When Congress enacted the FSIA in 1976, the legislative intent was explained as follows:
>
> > This bill, entitled the "Foreign Sovereign Immunities Act of 1976," sets forth the sole and exclusive standards to be used in resolving questions of sovereign immunity raised by foreign states before Federal and State courts in the United States. It is intended *to preempt any other State or Federal law* (excluding applicable international agreements) for according immunity to foreign sovereigns, their political subdivisions, their agencies, and their instrumentalities. It is also designed to bring U.S. practice into conformity with that of most other nations *by leaving sovereign immunity decisions exclusively to the courts*, thereby discontinuing the practice of judicial deference to "suggestions of immunity" from the executive branch.

H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. 12 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad. News 6604, 6610 (emphasis added, citation omitted) (hereafter "House Report"). *Accord*, *Verlinden,* 461 U.S. at 488. In order to insure uniform application of the legal standards the FSIA declares that "Claims of foreign states to immunity should henceforth be decided by courts of the United States … in conformity with the principles set forth in this chapter." 28 U.S.C. § 1602. And in order to avoid the possibility that the statutory language might be misinterpreted, the House Report says: "A principal purpose of this bill is to transfer the determination of sovereign immunity from the executive branch to the judicial branch." House Report at 7.

Plaintiffs ignore that explicit language and turn the words of the statute and its legislative history on their head claiming: (1) the FSIA only requires courts, including this court, to act in conformity with the FSIA (ECF 64 at 31-32); (2) Plaintiffs are not asking the Executive branch to adjudicate the applicability of the permit waiver (*id.*); and (3) Congress already contemplated

10

that in dealing with the DOT airlines could waive their sovereign immunity (*id.*). A determination by the DOT that a foreign air carrier must waive sovereign immunity as a condition for a permit, and Plaintiffs' claim that blocks this Court's *de novo* waiver determination makes a mockery of the wholesale transfer of decision-making authority to the courts.

      **2.**    **Congress Always Limited Civil Aviation Authority by Territory and the DOT's Statutory Authority to Regulate Delimited "Foreign Air Transportation" Did Not Permit Regulation of <u>Other</u> International Air Transportation with No U.S. Connection**

Even assuming *arguendo* that the DOT retained authority to somehow affect an airline's sovereign immunity claim, the waiver condition in the permit went far beyond DOT's authority over "foreign air transportation."[13] *See* [ECF 39-1] at 44-54.

In the first place, Congress always saw aviation regulation as bounded by territory. In the Senate debates which preceded the passage of the Civil Aeronautics Act of 1938, the predecessor of the Federal Aviation Act of 1958 that was re-codified at 49 U.S.C. § 40101 *et seq.*, there was discussion of the scope of Congress' authority to legislate with respect to air commerce in a foreign country. Senator Copeland, a member of the conference committee which drafted the bill in final form, stated as follows:

> Mr. President, the committee has a few other amendments it desires to offer. The first one is on page 7, lines 18 and 19. As the language reads it would seem that we have the right to determine the routes of a foreign air service even over a foreign country. Of course, we cannot do that. So the committee suggests, . . . [an amendment] [t]hat will simply confine our activities to our own country.

1938 Congressional Record 8913, 8914, May 12, 1938 (emphasis added). The amendment

---

[13] The Wood-Gaspard Plaintiffs make a nonsensical argument, *see* [ECF 64] at 33-34, that because MAS and MAB argue that the plain text of the Waiver Condition is limited to the Operations Authorized they cannot argue, in the alternative, that even if it is not so limited by the text, its application to operations other than the Operations Authorized would be invalid and in excess of the DOT's regulatory authority. The Wood-Gaspard Plaintiffs themselves engage in the exact same "even if" argumentation in their Response. *See*, *id.* at 29-30.

passed without further discussion. *See also*, *id*. at 9031 (statement of Senator McCarran, author of the original Senate bill: "[T]he Authority *cannot* control in foreign parts.") (emphasis added).

Thus, Congress has always recognized the territorial limits of civil aviation regulations and the impropriety of extending those regulations to matters occurring completely outside of the United States or, in the language of the statute, matters of "international" as opposed to "foreign" transport. If Congress lacks such authority, an agency created by and deriving its power from Congress also is without such authority.

The DOT does have the authority to impose reasonable "terms" on the permits it issues to foreign air carriers under 49 U.S.C. § 41305(b)  to engage in "foreign air transportation" when such conditions are required by "the public interest." Any such "terms" must reasonably be related to the *foreign air transportation* which is the subject of the permit in order to fall within the boundary of DOT authority under, and within the bounds of reasonableness required by, § 41305(b). Thus, a requirement to comply with Part 129 of the Federal Aviation Administration Regulations, which "prescribes rules governing the operation *within the United States* of each air carrier holding a permit . . ." is reasonably related to the operations of a foreign air carrier to and from the United States. 14 C.F.R. §129.1 (emphasis added).

Arguably, the permit waiver condition imposed by the CAB in 1951 and continued by the DOT until 1987 fell within the CAB's regulatory remit prior to adoption of the FSIA because it was confined to "any claim arising out of operations under this [permit or exemption]." DOT Order to Show Cause 86-1-38 at *1, 1986 WL 69761 at *1.  In amending the Waiver Condition, the DOT indicated that its interpretation of its authority, however, extended well beyond regulation of purely foreign air transportation. *See* DOT Order 87-8-8 at *3-4, 1987 WL 111215 at *3-4. Specifically, Condition 7(a) purportedly applies to "international" – not foreign – air

transportation and the DOT contemplated application to air transportation entirely between two foreign points with no meaningful connection to the United States. The DOT claimed that the purpose of Condition 7(a) was "to preclude foreign air carriers from asserting immunity in cases arising from their operations in international air transportation that have substantial contact with the United States." DOT Order 87-8-8 at *4, 1987 WL 111215 at *4. The "substantial contact" phrase is found in the definition of "commercial activity in the United States" under the FSIA's Section 1603(e), which provides a basis for one of the commercial activities exceptions in 1605(a)(2).

In other words, the DOT substituted a point in the United States on a passenger's itinerary or the mere purchase of the contract of carriage within the United States for the substantial contact requirements of the "commercial activity" exceptions to sovereign immunity in the FSIA in the context of a waiver under Section 1605(a)(1).[14]  Condition 7(a) is nothing more than the DOT rewriting the FSIA to suit DOT's idea of the public interest.

Condition 7(b) fares no better and further demonstrates the extremes to which the DOT believed it could go when it adopted the current Waiver Condition. The DOT explained that 7(b) "forecloses a foreign air carrier from frustrating the intent of an international treaty or agreement to permit certain suits in specified jurisdictions." What statute gave the DOT the authority to determine whether an international treaty does or does not permit suits in specified jurisdictions? Not any statute the DOT pointed to other than its authority over foreign air transportation. The jurisprudence of the U.S. establishes that a *court* has the authority to interpret an international

---

[14] Whether the purchase of a contract of carriage in the United States was sufficient to satisfy the commercial activity exception in 1987, the Supreme Court's unanimous decision in *OBB Personenverkehr AG v. Sachs*, 577 U.S. ---, 136 S. Ct. 390 (2015)  establishes that the purchase of a ticket for transportation in the United States from a travel agent in the United States does not create a substantial contact with the United States for purposes of establishing an exception to sovereign immunity under the first commercial activity exception in Section 1605(a)(2) when the accident on which the suit is based occurred entirely outside the United States.

13

treaty and apply it in accordance with the plain meaning of the text as the signatories intended, not how the DOT would like the treaty to be applied.

Even more egregious, the DOT purported to expand the definition of "international transportation" in the Warsaw Convention – which requires determining whether a nation is a High Contracting Party to (i.e., ratified) that convention – to include all countries in the world regardless of whether a particular country is in fact a High Contracting Party. So the DOT not only rewrote the FSIA but also went on to rewrite the Warsaw Convention when it adopted the current permit waiver condition. The DOT's interpretation of its own authority over international air transportation is apparently without any statutory bound and must be rejected.

Assuming, solely *arguendo*, that the DOT has any authority to impose any waiver of sovereign immunity after passage of the FSIA, the applicable Waiver Condition can only be interpreted as applicable to foreign air transportation and to operations authorized under a particular foreign air carrier permit for the condition to remain within the limited statutory bounds of DOT authority. *See*, ECF 39-1 at 51-54.

> ### 3. Broad Regulatory Authority Granted to the DOT Could Never Override the FSIA's Language That "Claims of Foreign States to Immunity Should Henceforth Be Decided by Courts"

The DOT is authorized to "impose terms for providing foreign air transportation [between a place in the United States and a place outside the United States] under the permit that the [DOT] finds to be in the public interest." 49 U.S.C. § 41305(b). Using what appears to be no more than circular reasoning, the DOT dismissed the concerns of commenters arguing that a term imposing a waiver condition must be limited by the FSIA. According to the DOT, because the FSIA contemplates that sovereign immunity may be waived, the DOT is authorized to impose a waiver as a condition of granting authority to operate "foreign air transportation" to and from the United States. DOT Order 87-8-8 at *2.

14

But no matter how expansive the grant of its rulemaking authority is, the DOT is not authorized to override Congress's express intent to leave "sovereign immunity decisions exclusively to the courts" (House Report at 12). And in order to implement its view of the public interest, the DOT inserted itself into the process and ignored the intent of Congress that the courts should be the sole arbiters of sovereign immunity and the Executive branch should be removed from the equation altogether. Good intentions, however, are not a basis for exerting agency authority. *Mexichem Fluor, Inc. v. EPA*, 866 F.3d 451, 460 (D.C. Cir. 2017) ("EPA's well-intentioned policy objectives with respect to climate change do not on their own authorize the agency to regulate. The agency must have statutory authority for the regulations it wants to issue").

### 4. The DOT Acknowledged the Waiver Condition Was Intended to Impede Judicial Rejection of the DOT's Position on Sovereign Immunity

In its comments submitted to the DOT with respect to the proposed permit condition waiving sovereign immunity, the International Air Transport Association ("IATA") "argued that the condition is unnecessary because, by acceding to an international agreement such as the Warsaw [the predecessor to the Montreal Convention] and Chicago[15] Conventions, governments relinquished their rights to claim immunity in cases arising under those agreements."[16] DOT Order 87-8-8 at *3, 1987 WL 111215 at *3. However, the DOT was not persuaded "that the courts would uphold a waiver on this analysis" because the "matter is far from settled." *Id.* In what can justly be described as an egregious affront to the intent of Congress and the FSIA's plain language, the DOT took the sovereign immunity decision from the courts and adopted the permit waiver condition declaring "the public interest demands that we impose on the licenses

---

[15] Convention on International Civil Aviation, Dec. 7, 1944, 61 Stat. 1180, T.I.A.S. No. 1591 (Chicago Convention).
[16] MAS and MAB expressly disagree IATA's position for the reasons expressed below in Section III.

granted to foreign air carriers a clear and explicit requirement." *Id.* With the stroke of a pen, the DOT rewrote the law and took away the decision making power transferred to the courts by Congress to "serve the interests of justice" (49 U.S.C. § 1602), because the DOT did not believe the courts would agree with the decision on sovereign immunity made by the DOT applying its view of the public interest.

Neither the DOT nor the Plaintiffs here identify any statute by which Congress gave the DOT authority for its action which was openly undertaken in direct contradiction to the FSIA. While the waiver may represent a desirable result to the DOT, "the fact is that the… [DOT] is entirely a creature of Congress and the determinative question is not what the [DOT] thinks it should do but what Congress has said it can do." *Civil Aeronautics Board v. Delta Airlines, Inc.*, 367 U.S. 316, 322 (1961); *see also*, *Dia Navigation Co. v. Pomeroyl*, 34 F.3d 1255, 1263 (3d Cir.1994) ("Congress clearly wished to shift the bulk of financial responsibility for detention to INS."). And it seems that DOT organs blatantly continue to defy the intent and will of Congress using the same incomprehensible logic that an agency's view of the public interest trumps any congressional declaration of Congress' intent. *See Taylor v. Huerta*, 586 F.3d 1089 (D.C. Cir. 2017) (court struck down regulation issued by FAA requiring registration of "model aircraft" because FAA ignored statute explicitly prohibiting FAA regulation of "model aircraft").

### 5.   The DOT's Usurpation of Sovereign Immunity Decisions Deprives State-Owned Carriers of Their Statutory FSIA Right to Judicial Hearing

Other than its authority to regulate foreign air transportation, the DOT could not point to any statute that authorizes it to determine under what circumstances a claim of sovereign immunity may be made by a foreign state agency or instrumentality. Instead, the DOT relied upon the historical fact that its predecessor agency, the Civil Aeronautics Board ("CAB"), had imposed a narrower waiver in 1951 under which a carrier agreed to waive any right it may have

possessed to "assert any defense of sovereign immunity from suit ... based upon any claim arising out of operations under the permit…." *El Al Israel Airlines Limited*, Amendment of Permit, 14 C.A.B. 962, 966 (1951). The DOT also gave significant weight to testimony during 1973 hearings on a predecessor bill to the FSIA advising the House Subcommittee on Claims and Government Relations and the House Subcommittee on Administrative Law of the existence of the airline's waiver of sovereign immunity imposed in a foreign air carrier permit. DOT Order 87-8-8 at *4 nn.16&17, *citing*, *inter alia*, *Immunities of Foreign States: Hearing on H.R. 3493 Before the Subcomm. on Claims and Governmental Relations of the House Comm. on the Judiciary*, 93rd Cong., 1st Sess. 16-17 (1973). Official committee reports, however, are more persuasive of legislative intent than testimony in the context of a predecessor bill. *Meade Tp. v. Andrus*, 695 F.2d 1006, 1011 (6th Cir. 1982) (citing *Zuber v. Allen*, 396 U.S. 168, 186 (1969)).

Plaintiffs adopt the DOT's theme in the context of an analysis under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), to argue that the DOT's interpretation of its authority is entitled to deference. *See* [ECF 64] at 25-31. In that analysis, however, Plaintiffs leave out any consideration of the FSIA in the first step of the analysis and begin with the DOT's statutory authority to impose terms on a foreign air carrier permit. [ECF 64] at 26. The first step in a *Chevron* analysis, however, requires looking at whether Congress has unambiguously indicated its intent on the precise issue. *Auer v. Robbins*, 519 U.S. 452, 457 (1997). Congress did so with passage of the FSIA providing that courts only should decide issues of sovereign immunity to the exclusion of the Executive branch and preempting any laws or regulations that purport to impinge on the comprehensive provisions of the FSIA. House Report at 7, 12.

In light of the FSIA, no further analysis under *Chevron* is required or permitted. *Howe v.*

*Smith*, 452 U.S. 473, 483 (1981) ("When the terms of a statute are unambiguous our inquiry comes to an end except 'in "rare and exceptional circumstances,"'") (quoting *TVA v. Hill*, 437 U.S. 153, 187, n.33 (1978)).  Plaintiffs' argument and analysis to the contrary is nothing more than a smoke screen to hide its lack of substance. DOT's and Plaintiffs' analysis clearly conflicts with the plain language of the FSIA and must be rejected. *TVA v. Hill*, *supra.*

As to DOT's position that the aviation industry presented unique problems, the commercial activity exceptions in § 1605(a)(2) clearly cover "foreign air transportation," i.e., air transportation to or from the United States, and the permit waiver of sovereign immunity first imposed by the predecessor CAB was no longer necessary after 1976. When the FSIA was enacted, however, whatever authority the CAB (and now the DOT) may have had to impose conditions in a foreign air carrier permit affecting an assertion of sovereign immunity was preempted, and the FSIA invalidated any CAB or DOT order *ab initio*. The DOT's and Plaintiffs' position is precluded by the Supreme Court in *Verlinden*, *supra*, and *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989), that the FSIA comprehensively and exclusively governs the issue of sovereign immunity and the plain language in the FSIA committing the resolution of claims of sovereign immunity to "the courts" in § 1602.

### 6.    MAS's and MAB's Challenge to the Order Is Timely

Plaintiffs argue that MAS and MAB cannot now challenge the validity of the Permit's Waiver Condition because neither challenged the DOT order issuing their respective foreign air carrier permits with Condition 7 attached.  The Wood-Gaspard Plaintiffs rely primarily on the case of *Dan-Air Services, Ltd. v. Civil Aeronautics Board*, 475 F.2d 408, 412 (D.C. Cir. 1973), to argue that under equity principles review would be inappropriate because MAS and MAB have

enjoyed the benefits conferred upon them by their permits.[17] ECF 64 at 23-24. In *Dan-Air* it was concluded that the DOT order issuing the permit was valid and was not subject to judicial review because the order was subject to approval by the President. 475 F.2d at 412; *see* 49 U.S.C. § 1486(a) (1973). Orders issuing foreign air carrier permits, including the order issuing the Permit to MAS 2002, were and continue to be subject to disapproval by the President (49 U.S.C. § 41307) and the same prohibition on judicial review, now codified at 49 U.S.C. § 46110(a), applied. It was not until 2005 that this Circuit rejected the DOT's argument that the issuance or amendment of a Foreign Air Carrier Permit was unreviewable. *Aerolineas Argentinas S.A. v. U.S. Dept. of Transp.*, 415 F.3d 1, 5 (D.C. Cir. 2005). There, the Court made explicit that effective orders issued by the DOT – i.e. orders under which the time for disapproval has expired and the President can no longer disapprove – are subject to judicial review. *Id.*

Although *Aerolineas* clarified the reviewability of the DOT's order issuing the Permit, the sixty day period in which MAS could have petitioned for review of its Permit had long expired. *See* 49 U.S.C. § 46110(a). Moreover, MAS had no reason to challenge or object to the imposition of Condition 7 following that decision because neither the DOT nor any other person (until now) ever attempted to invoke the Waiver Condition against it – and particularly not in an action where there was no nexus between the claim and MAS's operations in the United States. *See*, *e.g.*, *Air New Zealand Ltd. v. C.A.B.*, 726 F.2d 832, 837 (D.C. Cir. 1984) (dismissing petition for review of condition imposed in foreign carrier exemption authority as not ripe for

---

[17] In addition, Plaintiffs cite *FPC v. Colorado Interstate Gas Co.*, 348 U.S. 492 (1955), and *Callanan Road Improvement Co. v. United States*, 345 U.S. 507 (1953), to support their "equities" argument. Gaspard Memorandum at 15. Both are factually distinguishable. In *FPC*, the challenged condition for the merger was proposed by the company making the challenge. *FPC*, 348 U.S. at 502. In *Callanan*, the company challenging the condition, Callanan, did so on the basis that the Interstate Commerce Commission had no authority to impose the condition while in an earlier proceeding Callanan took the position that the condition imposed by the ICC could not be challenged. The Court held Callanan was estopped from challenging the condition. *Callanan*, 345 U.S. at 513 ("The appellant [Callanan] cannot blow hot and cold and take now a position contrary to that taken in the proceedings it invoked to obtain the Commission's approval.").

review where "[n]o one asserts . . . that the Board's condition is, in all its applications, substantively invalid. Yet petitioner would have us examine it and strike it down on its face, despite its valid applications, because of an allegedly invalid application which does not now and may never exist."). As set forth in MAS's original Memorandum [ECF 39-1] Condition 7 is arguably capable of substantively valid application if strictly applied to claims based on the Operations Authorized.

What is in any event reviewable by this court is Plaintiffs' attempt to invoke the permit waiver condition to preclude MAS and MAB from asserting the sovereign immunity defense made available to them under the FSIA. *See Dan-Air*, 475 F.2d at 412 ("Distinct from the nonreviewable order originally granting petitioners' permits is the order in question here invoking condition (5) which all concede is reviewable"). Indeed, to the extent § 46110 is invoked to prevent review here of the DOT Order regarding sovereign immunity, it is in direct conflict with 28 U.S.C. § 1602 placing sovereign immunity determinations with the Judicial branch in the first instance and § 46110 was repealed to such extent. Moreover, the equities clearly lie with MAS and MAB. It is unconscionable to prevent MAS and MAB from challenging a condition to their permits that was adopted without authority and which could not be challenged in the first place. *Auer v. Robbins*, 519 U.S. 452, 459 (1997) ("A court may certainly be asked by parties in respondents' position to disregard an agency regulation that is contrary to the substantive requirements of the law").

This is particularly so when the foreign relations of the United States is implicated and when an agency of the Executive branch ignores a mandate of the Legislative branch to transfer the determination of sovereign immunity to the Judicial branch. Foreign governments can justifiably complain that the Executive branch ignores the rule of law (its own law) – a rule so

important to the United States and its place in the world. The DOT's interpretation of its authority and disregard of the FSIA and its legislative history is a tremendously poor example that flouts the very principles the United States invokes with foreign governments and the international legal community. These unique concerns are more than sufficient to require an exception to whatever force § 46110 might otherwise have to constrain consideration of the sovereign immunity issue in this court because § 46110 and 28 U.S.C. § 1602 must be read together. *See Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345 (1976) ("We disagree with that conclusion. Section 1447(d) is not dispositive of the reviewability of remand orders in and of itself. That section and s 1447(c) must be construed together").

Applying Plaintiffs' logic would result in all foreign air carriers forever being bound by a condition in their respective permits that was imposed by the DOT without statutory authority and in violation of the substantive and procedural Due Process rights to which MAS is entitled. *See Aerolineas*, 415 F.3d at 5 ("We should not lightly presume the Congress intended to grant the DoT an unreviewable discretion to engage in otherwise noxious decision making.") (citing *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003)); *see also*, *Rite Aid Corp. v. U.S.*, 255 F.3d 1357, 1360 (Fed. Cir. 2001) (IRS regulation was declared invalid because in excess of authority granted by Congress to Treasury and "there is no requirement that a taxpayer acquiesce in a regulation promulgated outside the authority delegated by Congress. The 'bitter with the sweet' does not include the invalid."). Therefore, and as demonstrated below, contrary to the Plaintiffs' position the equities in this case favor MAS.

### 7.   The Coerced Waiver as a Condition in a Foreign Air Carrier Permit Is an Unconstitutional Denial of Due Process

Nor are Plaintiffs correct that MAS and MAB voluntarily accepted the permit waiver condition. [ECF 64] at 25 n.13; [ECF 65] at 12-13. The DOT imposes the Waiver Condition on

every foreign air carrier that applies for a permit. It can hardly be imagined that the Government

of Malaysia, or MAS or MAB, voluntarily agreed to waive a claim of sovereign immunity for an

accident occurring on a flight from Malaysia to China because MAS and MAB received a permit

from the DOT to fly between Malaysia and the U.S.[18]   In fact, the Waiver Condition is imposed

in every Foreign Air Carrier Permit granted by the DOT – regardless of whether the foreign

carrier is state-owned or not. *See, e.g.*, DOT Foreign Air Carrier Permit issued to Norwegian

Airlines, dated November 22, 2016, attached hereto as **Exhibit 4** (including Waiver Condition).

Notably, the DOT does not impose a waiver of personal jurisdiction on privately owned

carriers as a condition of obtaining operating authority to/from the United States – most likely

because the coercion of such a waiver would be unconstitutional. It is well-established that it is

unlawful for a federal agency to coerce a party applying for authority from the agency to require

the applying party to waive, as a condition to obtaining the desired authority, a right to which it

is otherwise entitled by law. *See Frost v. Railroad Commission*, 271 U.S. 583, 593-94 (1926)

(holding California's requirement that private carriers comply with regulations applicable to

public carriers to obtain authority to use public highways for transportation purposes, "one of the

limitations [State may impose in granting a privilege] is that it may not impose conditions which

require relinquishment of constitutional rights"); *Southern Pacific Co. v. Denton*, 146 U.S. 202,

207 (1892) (declaring unconstitutional and void Texas statute requiring foreign corporation

seeking authority to do business in Texas to agree not to remove suit to federal court although

such removal permitted by law; Court "could give no validity or effect to any agreement or

---

[18] *See, e.g.*, *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 687 (1999) ("in cases involving conditions attached to federal funding . . . the financial inducement offered . . . might be so coercive as to pass the point at which 'pressure turns into compulsion . . . .  where the constitutionally guaranteed protection of the States' sovereign immunity is involved, the point of coercion is automatically passed—and the voluntariness of waiver destroyed—when what is attached to the refusal to waive is the exclusion of the State from otherwise lawful activity.").

action of the corporation in obedience to [statute's] provisions").

In *Standard Airlines v. Civil Aeronautics Board*, 177 F.2d 18, 20 (D.C. Cir. 1949), the D.C. Circuit held invalid a CAB "letter of registration" which required the registrant, an "irregular air carrier," to waive any rights it may have had to notice and hearing in connection with suspension of its operating authority. The Court of Appeals held that the CAB could not properly require such a waiver as a condition of granting authority.

> The controlling practicality, in our view, is that the suspension would destroy property, not a license property but investment and business property. The Government cannot make a business dependent upon a permit and make an otherwise unconstitutional requirement a condition to the permit….An administrative agency cannot make an otherwise invalid proviso a condition to the grant of a permit. We think the same principles apply here.

*Standard Airlines*, 177 F.2d at 20 (footnotes omitted).

The DOT's requirement that foreign air carriers waive sovereign immunity as a condition of granting such authority is a similarly unconstitutional and an invalid proviso and cannot be countenanced by this Court regardless of the amount of discretion Congress delegated to the DOT to regulate "foreign air transportation." *See*, *Aerolineas Argentinas v. United States*, *supra* at 1576 ("The irrefutable force of the repeal of INA § 233 cannot be overcome by reference to the obligations that are imposed by the Form I-426 agreement that all airlines must sign in order to participate in in the TWOV program. The Form I-426 agreement does not provide authorization for requiring the airlines to incur the obligations imposed on the INS by enactment of the 1986 statute and the repeal of INA § 233"); *Meade Tp.*, 695 F.2d at 1009-10 ("The Secretary's discretion to define "units of general government" is undoubtedly broad; this discretion does not, however, extend to the creation of a rule which subverts the legislative policy favoring smaller "units." . . . [Accordingly] we . . . must . . . require him to conform his administrative regulations to the plain language of [the statute].").

23

As the above discussions demonstrate, the DOT is without authority to coerce a waiver of a right to sovereign immunity as a condition of obtaining authority to operate in the United States; its attempt to do so was in direct conflict with the FSIA's text and purpose; and any interpretation by the DOT – or advanced by Plaintiffs in these lawsuits – is both wrong and reviewable. Accordingly, MAS is entitled to dismissal.

**B.     MAB Is a Separate Legal Entity Incorporated after the Accident and No Activity Undertaken Before Its Incorporation Can Eliminate MAB's Right to Immunity Without Disregarding Malaysian Law Act 765**

With respect to MAB, the Wood-Gaspard Plaintiffs' Response goes on at some length to argue that the MAB may be held liable for the loss of Flight MH370 merely because MAB existed at the time these lawsuits were filed; and that MAB can and should be treated as the successor-in-interest to MAS, notwithstanding that Plaintiffs do not offer any admissible evidence to establish this point, and notwithstanding that Plaintiffs do not dispute that MAB is a separate legal entity incorporated under Malaysian law. *See* [ECF 64] pp. 15-22. MAS and MAB do not dispute that the relevant time for determining *sovereign status* depends on the facts existing at the time the lawsuit in question was filed. *Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.*, 509 F.3d 347, 349 (7th Cir. 2007); *see also* [ECF 39-1] at pp. 16-30, and in particular, at p. 18. MAB merely established that it was temporally impossible for MAB to have waived FSIA immunity or to have committed any act coming within one of the statutory exceptions to immunity *because MAB did not exist on the date of the Accident* and could not have waived or otherwise lost an immunity that it did not yet have.

Plaintiffs' also misunderstand MAB's argument regarding the Act of State Doctrine, arguing about motions governed by Fed. R. Civ. P. 12(b)(6) and claiming that doctrine is not cognizable under MAS and MAB's Motion based on Fed. R. Civ. P. 12(b)(1). MAS and MAB's

Motion is based on the lack of subject matter jurisdiction but as part of their joint motion, MAB noted that the Act of State Doctrine – a doctrine which "prevents U.S. courts from inquiring into the validity of the public acts of a recognized sovereign power committed within its own territory." *Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1208 (9th Cir. 2007) (citing *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401 (1964)) – was a legal impediment to making the predicate determination Plaintiffs seek here, namely, that MAB is the successor-in-interest to MAS. That is because accepting Plaintiffs' mere allegations that MAB is the successor-in-interest to MAS requires disregarding or invalidating the legislative act of the Malaysian government – Act 765 and its implementing documents – that called for MAB's incorporation as a separate legal entity. *See* [ECF 39-1] at 32-33.

MAS and MAB agree that the Act of State Doctrine is not itself jurisdictional, but it precludes this Court from resolving a factual question in Plaintiffs' favor in order to sustain jurisdiction over MAB. Plaintiffs have not come forward with any evidence controverting the Declarations of Rizani Bin Hassan [ECF 39-3] and Nik Azli Abu Zahar [ECF 39-4].[19] Surely the Court is entitled to take notice of the Act of State Doctrine and its implications in this matter.

Finally, the Wood-Gaspard Plaintiffs' argue that the Act of State Doctrine is also inapplicable because they are not really asking this Court to declare Act 765 invalid. [ECF 64] at pp. 19-22. Rather than seeking to invalidate Act 765, Plaintiffs suggest, they are simply asking this Court to determine (which requires the Court to make a factual finding based on admissible evidence) that MAB is the successor of MAS's liability for Flight MH370 because Act 765 does

---

[19] Even under U.S. law, courts give effect to corporate separateness and would require the Wood-Gaspard Plaintiffs to come forward with actual evidence to justify piercing the corporate veil. *See Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 20–21 (D.D.C. 2014) (rejecting Plaintiffs attempt to pierce the corporate veil, explaining that "[i]n support of these allegations . . . plaintiffs again offer only conclusory statements in place of factual allegations"). Here, Plaintiffs have the burden of coming forward with such evidence in the context of an FSIA jurisdictional determination and they have not. *See* [ECF 39-1] at 30.

not explicitly address that liability.[20]   Plaintiffs' argument on this point is contradicted by information and documents, provided to them at their request, confirming that the liability for Flight MH370 was not among the liabilities transferred from MAS to MAB pursuant to Act 765. *See*, **Exhibit 5** (filed under seal).  For these reasons, the Wood-Gaspard Plaintiffs' arguments at pp. 15-22 of their Response should be rejected.

## III.   The Montreal Convention Does Not Constitute an Implicit Waiver of Sovereign Immunity

Plaintiffs alternatively argue MAS waived sovereign immunity by implication pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1605(a)(1); and these arguments were addressed in the prior briefs. In addition to Section 1605(a)(1)'s language regarding the foreign sovereign's waiver of immunity "explicitly or by implication," Section 1330(a) provides:

> The district courts shall have original jurisdiction . . . of any nonjury civil action against a foreign state . . .  with respect to which the foreign state **is not entitled to immunity either** *under sections 1605-1607* of this title **or** *under any applicable international agreement*.

Section 1330(a) thus treats the waiver by implication set forth under Section 1605(a)(1) as a separate matter from an applicable international agreement pursuant to which a foreign state is not entitled to immunity. The language of both statutes distinguishes implied waiver from treaty waiver. Section 1605(a)'s wording likewise suggests that waiver by implication under Section 1605(a)(1) is purely transactional, occurring only by a foreign state's specific conduct in specific transactions or litigation. Under either statute, the Malaysian Government's ratification of the Montreal Convention did not waive by implication MAS's right to invoke sovereign immunity.

---

[20] The Wood-Gaspard Plaintiffs erroneously cite the Declaration of Rizani Bin Hassan [ECF 39-3] at ¶ 18 for the statement that "certain assets and liabilities of MAS have been acquired by and transferred to MAB pursuant to Act 765, but liability for Flight MH370 was specifically excluded from the transfer." That statement is instead found at [ECF 39-3] ¶ 61 of the Declaration, preceding the statement that MAS is insured under a liability policy with coverage in excess of all passenger claims arising out of the loss of Flight MH370. *See*, ¶ 62.

The Plaintiffs admit they could not find any case in support of their position, and MAS and MAB are likewise unaware of any cases that support Plaintiffs' argument. But what the Wood-Gaspard Plaintiffs hint at here[21] – that this Court is writing on a clean slate, and since it is a "tie," precedent-wise, all Plaintiffs need to avoid sovereign immunity dismissal is a lucky coin toss – is wrong, and, as discussed below, there are fairly clear precedents that Courts have always rejected Plaintiffs' generic "waiver by treaty" argument.

A.      **The Convention Shows No Evidence of Any Intent to Waive Sovereign Immunity**

MAS and MAB have argued that the Montreal Convention was neither an explicit nor an implicit waiver of immunity within the meaning of the § 1330(a) or § 1605(a)(1). [ECF 39-1] at pp. 39-44. In response, the Wood-Gaspard Plaintiffs agreed that the Montreal Convention was not an explicit waiver of FSIA immunity, but they argued the Montreal Convention constituted an implicit waiver of sovereign immunity. As set forth in MAS's moving papers, Section 1330(a) applies only when a foreign sovereign or its agency or instrumentality *is not entitled to immunity* under an applicable international agreement. *See* [ECF 39-1] at 39-44. And while these wrongful death lawsuits are governed by the terms of the Montreal Convention, which admittedly applies to international operations conducted by a foreign state, the Convention says nothing about a state-owned carrier's right to invoke sovereign immunity in the forum in which the Plaintiffs choose to file suit.

Starting with a review of the language of the Montreal Convention itself, the phrase "sovereign immunity" and the word "immunity" do not appear anywhere in the text or in the *travaux préparatoires* cited by Plaintiffs, and MAS has not discovered any such discussion of

---

[21] *See* [ECF 64,] at p. 41:  [MAS] points out that the Plaintiffs have found no case in support of our view that, by ratifying the Montreal Convention, the Malaysian government implicitly waived its sovereign immunity. This we concede, though we note with not-a-little irony that Malaysia Airlines has likewise cited no case for the opposite position."

those concepts. The U.S. Supreme Court tells us the inquiry should simply stop at this point. If neither "sovereign immunity" nor its "waiver," or any synonym appears in a treaty, a court simply lacks the power to insert those words on grounds of logical consistency alone. "[T]o alter, amend, or add to any treaty, by inserting any clause, . . . important or trivial, would be on our part an usurpation of power. *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134–35 (1989) (quoting Story, J.).[22] Accordingly, this Court should refuse Plaintiffs' request to read into the Convention terms about waiving sovereign immunity that nowhere appear in the text.

Plaintiffs essentially argue that MAS, through the Government of Malaysia, psychologically intended, as a subjective matter, to waive its immunity when it agreed to the Fifth Jurisdiction, *see* [ECF 64] at 40 ("the Malaysian government's ratification . . . strongly conveyed the Malaysian government's understanding that [MAS might be sued in the U.S.] . . [u]nderstanding all this, Malaysia signed and ratified"). This description of the Government of Malaysia's thinking or what it understood in signing the Convention is purely imaginative and wholly implausible. The basis for Plaintiffs' argument, i.e., discussions about the Fifth Jurisdiction, would apply to every government ratifying the Montreal Convention – an even more fanciful proposition. Malaysia and all other signatories knew that they were agreeing to certain rules for aviation litigation, and that passenger claims against legions of carriers (both sovereign and non-sovereign) would be adjudicated under the Convention's rules. All signatories would assume future litigation against sovereign and non-sovereign carriers could invoke the Fifth Jurisdiction when it was legally proper.

There is not a shred of authority, either in the language of the Montreal Convention or the cited *travaux préparatoires*, that even suggests any signatory would also assume that, in such future litigation, legal rules not addressed by the Convention (e.g., legal rules of civil procedure,

---

[22] *See also*, discussion in MAS's Montreal Convention Reply Brief filed contemporaneously herewith.

proof of damages, sovereign immunity, or anything else) would be modified by the Convention *sub silentio*. The only inference that can be drawn from an extended discussion of the Fifth Jurisdiction was that it may have been hotly debated: no inference can logically be drawn about the thinking or intention of any particular government when it ratified the Convention. The entire equitable premise of the Wood-Gaspard Plaintiffs' argument (that "MAS must have known it was surrendering sovereign immunity merely by signing the Montreal Convention") lacks even imaginative credibility.[23]

Once it is established that there is no basis to infer the Government of Malaysia intended in any way whatever to waive immunity from suit, it follows that Malaysia certainly did not evince that imagined purpose "in absolutely clear and unmistakable terms," as another unanimous Supreme Court decision, *Amerada Hess*, requires. See *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442–43 (1989) (unanimously finding no waiver under § 1605(a)(1) when international agreement did not mention "a waiver of immunity to suit in United States courts"). *Amerada Hess* rejected reasoning much like Plaintiffs' here because the treaty in question did not mention any waiver of immunity; nor does the Montreal Convention. In other words, there cannot be any implied waiver of sovereign immunity unless that waiver is unmistakable, i.e., the evidence in question of waiver must be susceptible of no possible rational interpretation other than waiver of immunity.[24]

Moreover, there are separate affirmative reasons to take the Montreal Convention's actual

---

[23] *See* [ECF 64] at p. 45. But the Malaysian Government might have imagined exactly the opposite and found comfort in the immediately succeeding thought that the settled rules of sovereign immunity, untouched by the Convention, would lead to the prompt dismissal that MAS requests in this Motion.

[24] See, e.g., *World Wide Minerals, Ltd. v. Republic of Kazakhstan,* 296 F.3d 1154, 1162 (D.C.Cir.2002); *In re Tamimi,* 176 F.3d 274, 278 (4th Cir. 1999); *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1017 (2d Cir. 1991); *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 444 (D.C.Cir.1990); *Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018, 1022 (9th Cir.1987); *Ashraf-Hassan v. Embassy of France in the United States,* 40 F. Supp. 3d 94, 100 (D.D.C. 2014), *aff'd sub nom. Ashraf-Hassan v. Embassy of France, in the U.S.,* 610 F. App'x 3 (D.C. Cir. 2015)

silence on immunity waiver to mean that it was not adopted implicitly.  First, the laws of different nations on sovereign immunity vary so widely, that it would require both explicit and very detailed discussion and drafting for this to be covered.   This silence itself – in an international agreement intended to provide uniform rules over the subject matter addressed but to leave other matters to be resolved in accordance with the domestic law of the forum in which the suit is filed – powerfully suggests no intention to address immunity. Second, Plaintiffs' argument for implicit waiver would violate the FSIA's intent to treat equally commercial activities by both state and private foreign actors. Second, construing the Montreal Convention to address topics that were not addressed would lead to anomalous results because privately-owned carriers could end up being treated differently from state-owned carriers on otherwise identical facts. Section 1606 of the FSIA did not intend such disparate treatment. And the Montreal Convention should not be interpreted to conflict with another applicable statute.[25]

**B.      The FSIA Itself Restricts Waiver by Treaty More Narrowly Than Waiver by Transaction**

Section 1605's wording likewise suggests that the waiver by implication envisioned under Section 1605(a)(1) is purely transactional, occurring only by specific conduct in specific transactions or litigation. By repeating the phrase "any case in which" in the following exceptions, it is evident that the "case in which" phrase refers to a specific action in a court docket.  *See* 1605(a)(2), (3) & (5) ("in any case" . . . "(2) in which the action is based upon a

---

[25] In cases where both Montreal (or the predecessor Warsaw) Convention and the FSIA apply, a plaintiff must establish an independent ground subject matter jurisdiction under each. *See Brink's Limited v. South African Airways*, 93 F.3d 1022, 1026-27 (2d Cir. 1996); *see also, Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1002 (9th Cir. 1987) (Convention gives U.S. jurisdiction vis-à-vis the courts of other countries, but only FSIA district court jurisdiction vis-à-vis other U.S. courts); *Gayda v. LOT Polish Airlines*, 702 F.2d 424, 425 (2d Cir. 1983)  In this case subject matter jurisdiction does not exist under the FSIA because no implicit waiver can be inferred from the Montreal Convention. Likewise, treaty jurisdiction does not exist because none of the places identified in Article 33.1 or 33.2 is in the United States for any of the Plaintiffs' Decedents. *See* [ECF 39-1] and MAS's Montreal Convention Reply Brief filed concurrently herewith.

commercial activity," "(3) in which rights in property taken in violation of international law are in issue"; "(5) in which money damages are sought").  As such, the wording alone implies the "implied waiver" of 1605(a)(1) cannot be something that occurs "outside the case" i.e. the ratification of a treaty that itself does not address immunity at all.

The limited sense of "in any case . . . in which" is confirmed by Section 1605's legislative history and many appellate decisions.  The legislative history indicates that implied waiver occurs only by virtue of a state's specific actions in particular litigation, when it identifies the following examples: (i) a foreign state has agreed to arbitration in another country; (ii) where a foreign state has agreed that the law of a particular country should govern a contract; [or] (iii) where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity. House Report at 18.

In fact, appellate courts have regularly limited 1605(a)(1) implied waivers to only those instances mentioned in the legislative history.  See *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993) ("[s]ince the FSIA became law, courts have been reluctant to stray beyond the three examples given in the legislative history when considering claims that a nation has explicitly waived its defense of sovereign immunity"); *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 377 (7th Cir. 1985) (similar). None of those instances is applicable here and thus there is no waiver by implication under Section 1605(a)(1).

### C.     Plaintiffs' Cases Neither Address These Controlling Principles nor Support Any Contrary Outcome

Plaintiffs' mainly rely on *Compania Mexicana de Aviacion, S.A. v. United States Dist. Court for the Central Dist. Of California*, 859 F.2d 1354 (9th Cir. 1988), and on *Seetransport Wiking Trader Schiffarhtgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993).  Neither of these decisions has any holding on, nor any significant analysis, of the

31

implied waiver issues in this Motion.

In *Compania Mexicana*, the Ninth Circuit summarized plaintiffs' argument: "Mexicana Airlines… is a foreign state… [and] thus immune from suit in this case unless: (1) it has waived its immunity; (2) the action is based upon a commercial activity…; or (3) the action is based upon a treaty conferring jurisdiction…." *Compania Mexicana*, 859 F.2d at 1359. The waiver argument, however, was based upon the old version of the DOT permit waiver, *id.*, and the Ninth Circuit rejected the argument because the action did not arise out of an operation authorized by the permit. *Id.* The Circuit Court then analyzed whether treaty jurisdiction existed under Article 28 of the Warsaw Convention (now Article 33 of the Montreal Convention) and concluded no treaty jurisdiction existed. *Id.*   Finally, the court considered whether any § 1605(a)(2) commercial activity exception to sovereign immunity existed and concluded  none did. *Id.* Nowhere did the plaintiffs argue or the Ninth Circuit fail to discuss whether the Warsaw Convention constituted an **implied** waiver of immunity. *Id.* Plaintiffs' claim to the contrary is patently wrong.[26]

In *Seetransport,* plaintiff sought recognition and enforcement of an arbitral award issued by the International Chamber of Commerce in Paris against a foreign state instrumentality entitled to sovereign immunity unless an exception applied. The Second Circuit dealt with whether the Convention on the Recognition and Enforcement of Arbitral Awards was an implicit waive of sovereign immunity. The court found it was because the Convention at issue provided it "shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought…[and]

---

[26] Even if the plaintiffs in *Compania Mexicana* had made the argument claimed by Plaintiffs here and that the Ninth Circuit did not reject it but decided the case on wholly different grounds, such a so-called failure to reject an argument cannot logically constitute a basis for Plaintiffs' proposition that the case supports Plaintiffs: it is not even *obiter dicta*. At most it merely implies the court did not consider whatever the argument was.

shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon…." 989 F.2d at 578. The Montreal Convention does not contain any such explicit provisions and the *Seetransport* case does not support Plaintiffs' position.[27] Plaintiffs' remaining authorities are even more remote from the FSIA issues in this case and involve only well-settled rules which the parties do not dispute.[28]

## IV. Immunity under the FSIA Must Be Made on a Case-by-Case Basis; Prior Suits Against MAS Are Irrelevant to Determining Immunity in These Cases

Finally, the SZKH Plaintiffs, who also do not contest MAS and MAB's status under the FSIA, also assert the unusual argument that because MAS has been sued in the U.S. in some past cases, MAS and MAB cannot now avail themselves of immunity from suit under the FSIA. This argument can be disregarded summarily because prior cases where MAS has been sued in the United States are irrelevant for determining whether MAS or MAB are entitled to immunity *from these lawsuits*. As this Court has repeatedly held, it is required to "make FSIA immunity determinations on a claim-by-claims basis." *Philipp v. Fed. Republic of Germany,* CV 15 15-266 (CKK), 2017 WL 1207408, at *4 (D.D.C. Mar. 31, 2017) (quoting *Simon v. Republic of Hungary,* 812 F.3d 127, 141 (D.C. Cir. 2016)).[29] Accordingly, citations to prior cases where MAS has been sued in the United States get the SZKH Plaintiffs nowhere in establishing that an exception to immunity exists here, and in fact, only serve to confirm that waiver of immunity

---

[27] *Blue Ridge Investments L.L.C. v. Republic of Argentina*, 735 F.2d 72 (2d Cir. 2013), is therefore also unhelpful, since there the Second Circuit just followed *Seetransport* for arbitration under the International Convention on the Settlement of Investment Disputes ("ICSID") in which waiver unmistakably followed from a treaty on arbitration enforcement.

[28] For example, their *Brinks* and *Harris* citations only show what both sides here agree on, namely that the Montreal Convention and the FSIA operate concurrently and independently, *see* [ECF 39-1] at pp. 40-41; [ECF 64] at pp. 50-51.

[29] *See also Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 706 ("As a threshold matter ... a court adjudicating a claim against a foreign state must determine whether the FSIA provides subject matter jurisdiction over the claim."); *Dar-el Bina Eng'g & Contracting Co. v. Republic of Iraq,* 79 F. Supp. 2d 374, 386 (S.D.N.Y. 2000) (noting that the text of the FSIA "strongly suggests that Congress meant to confer jurisdiction on the district courts only with respect to specific claims as to which immunity was lacking")

under Section 1605(a)(1) occurs only by way of transaction- or litigation-specific conduct. *See* Part III.B. Accordingly, the SZKH Plaintiffs' argument should be disregarded.

## CONCLUSION

For all the reasons set forth above, MAS and MAB are entitled to sovereign immunity from the Courts of the United States and of the States under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, *et seq*. Plaintiffs have failed to satisfy their burden of establishing any treaty or exception under the FSIA that applies to strip either defendant of their right to invoke that immunity in these wrongful death lawsuits. Flight MH370 had no connection to the United States. Therefore, MAS's operation of that flight did not trigger the waiver of sovereign immunity contained in MAS's Foreign Air Carrier Permit issued by the DOT – even on the charitable assumption that the DOT had authority to impose such a condition.

More importantly, the DOT's extraterritorial interpretation of its own regulatory authority is unlawful. Its usurpation of the power to determine claims of sovereign immunity from the Judicial branch is even more egregious and directly conflicts with the Congressional mandate contained in the FSIA. The DOT's interpretation of that statute is entitled to no deference and the unique circumstances of this case – touching on matters of foreign relations – renders the DOT's Permit and the Waiver Condition subject to judicial review. With respect to MAB, it did not exist on the date of the Accident and it is temporally impossible that it could have waived or engaged in any activity that stripped it of its immunity. And to determine that MAB is the successor-in-interest to MAS to avoid that result would violate the Act of State Doctrine and would be in derogation of legislation enacted by the Malaysian Government in the national interest.

Finally, the Montreal Convention – which governs liability in these cases – nowhere addresses the question of sovereign immunity. Therefore, it neither eliminates immunity for

purposes of 28 U.S.C. § 1330(a) nor waives immunity by implication pursuant to 28 U.S.C. § 1605(a)(1). Plaintiffs have failed to come forward with any evidence or authority to support their position and therefore cannot establish it here. MAS's amenability to suit in the United States in other instances is wholly irrelevant and the SZKH Plaintiffs who raise that issue can be summarily dismissed on the ground that their FSIA arguments are moot in light of their concession that no basis exists for the exercise of treaty jurisdiction in the United States under the Montreal Convention.

As noted in MAS's Reply in Support of its Motion to Dismiss on the Ground of Lack of Subject Matter Jurisdiction under the Montreal Convention, MAS's and MAB's pursuit of this and other jurisdictional defenses is not an attempt by MAS to *avoid* liability for Flight MH370 – it is merely an assertion of the right to have claims determined by a court with lawful authority over the parties and the controversy. A finding of jurisdiction to resolve these entirely foreign wrongful death lawsuits would fly in the face of the Supreme Court's recent jurisprudence demanding a territorial nexus between the cause of action and the forum. For all these reasons and as set forth MAS's and MAB's Memorandum [ECF 39-1] this Court should grant MAS's and MAB's motion to dismiss all of the plaintiffs' claims against MAS and MAB.

Dated: September 8, 2017                        Respectfully submitted,

                                                KAPLAN, MASSAMILLO & ANDREWS LLC


                                        By:     /s/ Richard A. Walker
                                                Telly Andrews, IL Bar No. 6242431
                                                tandrews@kmalawfirm.com
                                                Richard A. Walker, IL Bar No. 6196947
                                                rwalker@kmalawfirm.com
                                                200 W. Madison Street, 16th Floor
                                                Chicago, Illinois 60606
                                                Telephone:  (312) 345-3000
                                                Facsimile:  (312) 345-3119

*Attorneys for Defendants*
Malaysian Airline System Berhad
(Administrator Appointed) and
Malaysia Airlines Berhad

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on September 8, 2017, pursuant to Fed. R. Civ. P. 5 and LCvR 5.3, a true and correct copy of the foregoing Defendants Malaysian Airline System Berhad (Administrator Appointed) and Malaysia Airlines Berhad's Reply in Support of Rule 12(b)(1) Motion to Dismiss Plaintiffs' Complaints on the Ground of Foreign Sovereign Immunity was filed with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the attorneys of record at the email addresses on file with the Court.

/s/ Richard A. Walker
Richard A. Walker